# EXHIBIT A

Return Date: No return date scheduled
Hearing Date: 5/11/2021 9:45 AM - 9:45 AM
Courtroom Number: 2508
Location: District 1 Court
        Cook County, IL

FILED
1/11/2021 7:33 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH00106

11624454

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

**Chancery Division Civil Cover Sheet**
**General Chancery Section**                                    (12/01/20) CCCH 0623

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

Fahad Syed

                                        Plaintiff

        v.                                              Case No: 2021CH00106

Northwestern University

                                        Defendant

### CHANCERY DIVISION CIVIL COVER SHEET
### GENERAL CHANCERY SECTION

A Chancery Division Civil Cover Sheet - General Chancery Section shall be filed with the initial complaint in all actions filed in the General Chancery Section of Chancery Division. The information contained herein is for administrative purposes only. Please check the box in front of the appropriate category which best characterizes your action being filed.

**Only one (1) case type may be checked with this cover sheet.**

| | | | | | |
|---|---|---|---|---|---|
| 0005 | ☐ Administrative Review | | 0017 | ☐ Mandamus |
| 0001 | ☐ Class Action | | 0018 | ☐ Ne Exeat |
| 0002 | ☐ Declaratory Judgment | | 0019 | ☐ Partition |
| 0004 | ☑ Injunction | | 0020 | ☐ Quiet Title |
| | | | 0021 | ☐ Quo Warranto |
| 0007 | ☐ General Chancery | | 0022 | ☐ Redemption Rights |
| 0010 | ☐ Accounting | | 0023 | ☐ Reformation of a Contract |
| 0011 | ☐ Arbitration | | 0024 | ☐ Rescission of a Contract |
| 0012 | ☐ Certiorari | | 0025 | ☐ Specific Performance |
| 0013 | ☐ Dissolution of Corporation | | 0026 | ☐ Trust Construction |
| 0014 | ☐ Dissolution of Partnership | | 0050 | ☐ Internet Take Down Action (Compromising Images) |
| 0015 | ☐ Equitable Lien | | | |
| 0016 | ☐ Interpleader | | | ☐ Other (specify) _____ |

○ Atty. No.: _____   ● Pro Se 99500

Atty Name: Fahad Syed

Atty. for: Self

Address: 244 E Pearson St. Apt. 711

City: Chicago          State: IL

Zip: 60611

Telephone: 773-564-0325

Primary Email: Syed.216@gmail.com

Pro Se Only:   ☑ I have read and agree to the terms of the Clerk's Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address:

Email: Syed.216@gmail.com

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**

FILED DATE: 1/11/2021 7:33 AM  2021CH00106

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| FAHAD SYED, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )   Case No.   2021CH00106 |
| | ) |
| NORTHWESTERN UNIVERSITY, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S APPLICATION FOR PRELIMINARY INJUNCTION, TEMPORARY**

**RESTRAINING ORDER, AND EXPEDITED DISCOVERY AGAINST NORTHWESTERN**

**UNIVERSITY**

NOW INTO COURT comes plaintiff, FAHAD SYED, Pro Se, and for the reasons set forth fully in the Memorandum in Support of Plaintiffs' Motion for Temporary Restraining Order, moves this court, pursuant to 735 ILCS 5/11-101 of the Illinois Code of Civil Procedure, for a temporary restraining order, restraining, enjoining and/or prohibiting defendants, NORTHWESTERN UNIVERSITY ("NU") and/or any of their agents, representatives, or anyone acting on their behalf, from taking any action adverse to plaintiffs status as a student at Northwestern University resulting from his EXPULSION pending disposition of plaintiffs' claim that defendants, and others, violated his rights guaranteed by the Constitution and laws of the United States of American and the state of Illinois.

Plaintiff also seeks an order requiring defendants and their employees, agents and all others acting in concert with them: to immediately place Fahad Syed into a regular class at Northwestern University School of Law for Spring 2021 Semester or find some suitable alternative learning arrangement. In addition, Plaintiff moves the Court for entry of an order permitting expedited discovery of records related to his claims.

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

On the facts in the Complaint, the attached Memorandum of Law and the affidavits of expert witnesses, plaintiff will demonstrate that immediate injunctive relief should issue because defendants are unlawfully discriminating against an otherwise qualified individual with a disability from participation in an educational program which receives federal financial assistance, in violation of Section 504 of the Rehabilitation Act of 1973 (Section 504), 29 U.S.C. § 794, and its implementing regulation at 34 C.F.R. Part 104, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181–12189, and its implementing regulation at 28 C.F.R. Part 36 prohibiting discrimination on the basis of disability by public accommodations and in commercial facilities; and because defendants are unlawfully discriminating against an otherwise qualified male individual from participation in an educational program which receives federal financial assistance in violation of Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. §§ 1681–1688, and its implementing regulation, 34 C.F.R. Part 106 prohibiting discrimination on the basis of sex in any education program or activity operated by a recipient of Federal financial assistance (FFA) from the Department of Education.

In support of this motion, plaintiff states the following:

1.      Plaintiff is a 31-year-old brown Muslim man living within the jurisdiction of Cook County, Chicago. On or about 11/1/19, plaintiff was diagnosed as having Bi-Polar disorder, in conjunction with previously diagnosed Attention Deficit Hyperactivity Disorder, and co-morbid anxiety and depression disorders.

2.      As more fully described in the Complaint, during the week of August 17th-21st, 2020, Defendant Northwestern University ("NU") has excluded plaintiff from the regular class for the entire duration of the 2020 incoming JD class orientation period based on NU's perceived threat resulting from its knowledge of his previously existing mental health treatment history with Northwestern Memorial Hospital regarding his initial diagnosis of bi-polar. NU offered no alternative learning opportunities to the plaintiff.

3.      Thereafter, on or about August 23rd, 2020, NU placed Plaintiff on a special "interim suspension" for the entire duration of Fall 2020 semester based on comments he made on two audio recordings of his private phone calls with another NU student,   REDACTED   a white transgender student, which were recorded without his consent or knowledge and wherein he made no articulable threat of violence. Following this interim

suspension, on 12/22/20, NU expelled the Plaintiff, pending any internal appeal to be submitted by 1/4/21. It should be noted that Plaintiff requested NU for an extension of the date due to contemporaneous holiday season, however they denied his request without adequate explanation.

4.     Plaintiff is likely to prevail on the merits of his claim. Defendants discriminated against plaintiff solely because of threat from his perceived disability, he is "otherwise qualified" to participate in a regular classroom education pursuant to § 504, and defendants' actions are unsupported by reliable medical or scientific evidence and are irrational and based solely on vague, undifferentiated fears.

5.     Defendants' decision is causing plaintiff irreparable harm for which there is no adequate remedy at law. Because NU expulsion decisions are permanent, there is a substantial risk that plaintiff will be unable to attend school before the merits of this action are concluded and a permanent injunction is entered. The educational restrictions imposed by defendants are presently causing plaintiff psychological harm and substantially diminishing the quality of his life.

6.     The threat of injury to plaintiff outweighs any harm to defendants. Placing plaintiff in a regular classroom poses no significant health or safety risk to himself, his classmates or his teachers. Permitting plaintiff to participate in classroom education will enhance the quality of his education as well as that of his fellow students.

7.     Granting a temporary restraining order will serve the public interest. Defendants' irrational and unlawful conduct has caused confusion and unwarranted fear in a manner which damages the public health every day it is permitted to continue. In addition, the students in Northwestern University Community are being deprived of plaintiff's contribution to their educational experience and social development.

## **PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION**

### I.     **STATEMENT OF FACTS**

8.     Plaintiff is Fahad Syed, a first-generation college graduate from a low-income, racial and ethnic minority household and was raised by a single mother, and the first in his family to attend law

FILED DATE: 1/11/2021 7:33 AM    2021CH00106

school. Plaintiff's parents legally separated when he was 8 years old due to his father's violence towards the children, and Plaintiff grew up in an inner-city low-income housing project, a crime-laden environment devoid of positive male role-models and influences.

9.      Plaintiff suffers from multiple ADA learning and cognitive disabilities of bipolar disorder and ADHD, as well as anxiety and depression. One of the major "episodic manifestations" of Plaintiffs bipolar disorder are "psychotic episodes" triggered by stress, which induce varying levels of anger, paranoia, frustration, irritability, temper, etc.

10.     Plaintiff first made the decision to pursue law school in 2015, at the age of 25. Plaintiff had a successful career managing IT operations at a Fortune 100 company after graduating in 2012 with a 3.0 overall GPA from a Top 50 undergrad with a Top 10 undergrad business ranking with dual bachelors degrees in busines economics and political science and 3.3 and 3.9 major GPA's respectively. In addition, plaintiff holds multiple industry standard IT certifications, further illustrating his professional competency and capabilities. Plaintiff is actively involved in community building efforts and helped found a non-profit for refugee assistance (Iraqi Mutual Aid Society) during college and is currently affiliated with another non-profit (Inner-City Muslim Action Network) for which he does volunteering and other work.

### NU Law Class of 2017 Admission and Rejection

11.     Plaintiff always wanted to attend law school at NU, and his studying eventually paid off as he took the LSAT two times in 2017, receiving two 166 (93rd Percentile) scores on both attempts, and applied for Early Decision Admission to NU Law School in 2017 by the age of 27, but subsequently received a rejection.

### NU Law Class of 2018 Early-Decision Admission

12.     Despite the rejection, Plaintiff was still determined to attend law school at NU, and studied and retook the LSAT again on two separate occasions, scoring 168 (96rd Percentile) and 170 (98rd Percentile) and successfully re-applied for admission through Early Decision ("ED") to Northwestern

FILED DATE: 1/11/2021 7:33 AM    2021CH00106

University Law School JD class of 2018 with 150K scholarship on December 13th, 2017 at the age of 28. This was the happiest moment of Plaintiff's life.

## 2018 Discriminatory Conduct

13.     On April 26th, 2018 Plaintiff's 2018 Early-Decision Application and subsequent admission was subject to an unannounced post admission review which was highly irregular in process and was on the basis of "alleged inaccurate information in [Plaintiff's] Fall 2018 JD application related to [Plaintiff's] employment history, collegiate extracurricular activities, and family background." As far as plaintiff knows, no other 2018 early decision admit, nor 2018 general admit was subject to this kind of irregular "verification" based on "alleged inaccurate information" related to "employment history, collegiate extracurricular activities, and family background."

14.     The source or intended meaning of allegations in paragraph 6 was never revealed, even after Plaintiff successfully cleared the investigation on May 21, 2018. As far as plaintiff knows, no other 2018 early decision admit, nor 2018 general admit who's application was subject to this kind of irregular "verification" based on "alleged inaccurate information" related to "employment history, collegiate extracurricular activities, and family background" ever successfully completed the verification without learning the source of the allegation nor the allegations themselves.

## 2018 Adverse Action and Discriminatory Sanctions

15.     As a result of this investigation, Plaintiff was forced to "defer" his admission and enrollment to 2019.

## 2019 Re-Enrollment at NU Law

16.     In August 2019, Plaintiff enrolled in the class of entering JD class of 2019 at NU Law School at the age of 29 and started Fall 2019 Semester.

17.     During Fall 2019 Semester, Plaintiff was dealing with tremendous family concerns as Plaintiff watched his mother slowly start to pass away from ovarian cancer because she had finally become resistant to treatment.

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

18.     During the months September and October of 2019, Plaintiff watched his mother slowly starved to death because she had finally become resistant to treatment, and metastatic ovarian cancer had filled her entire stomach and esophagus with tumors which made it so painful to eat that she chose to starve to death rather than be placed on a feeding machine. Because she elected his other siblings as her power of attorney and power to make health decisions, and specifically indicated a do not resuscitate order (DNR) and no life support options in her will, he was unable by law, to even suggest that if she tried to eat or find some way to get nutrition into her body, that she would live.

19.     Despite her impending passing and knowing that this was the last remaining time that he would have with her, because of his enrollment and commitment to law school, he sacrificed much of the precious time that he had left with his mother in order to attend classes and pursue coursework. Plaintiff would attend classes and complete coursework during the weekday working hours, come home and complete homework assignments, then travel up to Skokie from his apartment in

20.     Streeterville (1-hour trip on average) in order to spend time with his mother during the night. He sacrificed spending this time with her because his legal education and future legal career was the most important thing to him next to his late mother.

21.     Despite his family issues, Plaintiff tried to attend school and try to have relatively normal social experience by participating in social outings, joining student organizations and religious student groups, and trying to participate in the school group chat for the entering JD class of 2019.

22.     Despite the difficult learning environment Plaintiff was faced with, he was performing academically well in his courses, and had attended all 10 weeks of classes every day with good attendance and with satisfactory grades and was actively involved in class discussions, submitted coursework for credit and also submitted the mid-term writing assignment. Plaintiff was attending professors office-hours and spending significant time and effort attending to his academic responsibilities, indeed his Torts professor, Emily Kadens, saved the Palsgraff (a difficult torts case) case for his in-class discussion turn, and referred to him as the "smartest" person in the class in front of all the students on one occasion, and no

one objected. In addition, plaintiff actively enjoyed interacting with staff and teachers, and frequently and enthusiastically expressed his interest and enjoyment in the academic subject matter and quality of instruction to staff.

23.     Plaintiff's mother passed away on October 23rd, 2019, and after arranging her funeral and attending her burial, he spent a few days trying to rest and recover. Plaintiff then attempted to rejoin classes and school activities the next week.

### 2019 Discriminatory Conduct and Hostile Environment– False Imprisonment

24.     On November 1, 2019, roughly one week after his mother died on October 23rd, 2019, at approximately 6:37 PM CST Plaintiff attended a law school event in the Levy Mayer wing of the law school building located at 357 E Chicago Ave., Chicago IL 6061 attended by defendant and University of Chicago (3L) law student REC     REDACTED     and defendants and fellow Northwestern University law students REDACTED (3L) ("REDACTED and REDACTED (2L) ("REDACTED and approximately 60 other fellow law students from mine and other law schools in total.

25.     Plaintiff had attended the event to seek consolation for his mother's death and had not slept in 2-3 days prior to his attendance due to emotional distress. While at the event, Plaintiff was repeatedly targeted and harassed with threatening and invasive questioning and unwanted physical contact by an unknown male (REDACTED REDACTED on 4 separate occasions, culminating in a vicious physical attack where he kicked Plaintiff several times on the leg, then tackled Plaintiff onto the ground, and choked Plaintiff in a headlock until Plaintiff nearly lost consciousness. Defendant REDACTED A. took these actions acting in agency for Northwestern University and based directly on his perception of his mental impairment. As far as plaintiff knows, no other similarly situated 2019 early decision admit without disabilities, nor similarly situated 2019 general admit without disabilities was subject to this kind of vicious attack based directly on his perceived threat from their disability.

26.     No one witnessed this vicious physical assault. He then called out to his two friends (REDACTED and REDACTED who were nearby, and together the three physically restrained

FILED DATE: 1/11/2021 7:33 AM    2021CH00106

Plaintiff, restricting his freedom of movement to leave the premises and with intent to initiate his imprisonment of plaintiff based on perceived mental impairment to Plaintiff. They then called NUPD and unlawfully told them that plaintiff was suffering from "mental illness" and falsely reported to police that Plaintiff attacked [REDACTED]

27.    Plaintiff was twice certified for involuntary inpatient admission by Jeremy Banker RN and Eugene Lozza MD of Northwestern Memorial Hospital on 11/2/19 within 2 hours of each other, while sedated and not in a reasonable capacity to understand the situation, not presented an explanation of rights in the situation, and without identification of clear and convincing evidence of imminent threat to the physical safety of self or others, in violation of 405 ILCS 5/3 admissions, hearing, and notice procedures. Defendants Northwestern Memorial Hospital and its agents took this action based on perceived mental impairment of plaintiff and hostility towards plaintiff's religion, perceived mental impairment and national origin and with willful failure to contact plaintiff's close family or relatives or make alternative arraignments for patient care.  The sole evidence that staff had supporting any threat to the safety of myself or others was the police report which falsely stated that Plaintiff had committed a battery.

## 2019 Adverse Action and Discriminatory Sanctions

28.    On 11/1/19, [REDACTED] then called the law school Dean of Students Susie Spies-Roth and initiated a separate, school disciplinary process.

29.    NUPD Officer Healy #22 then notified his law school of the false narrative of this incident as it was recorded in the police report due directly to prejudice against his perceived mental health disability or threat he perceived as a result of his mental health disability and to save himself from disciplinary action as a result of his brutal unnecessary and excessive force perpetrated against

30.    Plaintiff due to his [Healy's] perceived threat from his ADA mental health disability status.

31.    Plaintiff was served with an interim-suspension and notice papers on November 6th 2019 stating that the school had received a report that Plaintiff struck an individual in the "mouth" during a law

FILED DATE: 1/11/2021 7:33 AM    2021CH00106

school event, while Plaintiff was still inside the hospital, and Plaintiff was requested to evacuate his university-affiliated residence within 5 days of leaving the hospital on November 8th 2019, under penalty of trespass and further school sanctions.

32.    After Plaintiff was released from the hospital Plaintiff received two separate letters in the mail from his insurance company denying the hospitals requests on November 5th and November 7th of 2019 for insurance coverage of continued inpatient stay, stating on both occasions, that "an independent review organization medical doctor, board certified in Psychiatry" reviewed the requests and determined that "continued inpatient stay has not been shown to be medically necessary to improve or correct your bipolar disorder."

33.    Following Plaintiffs return from medical leave, Plaintiff was forced to undergo a brutal defamatory student conduct interviews, wherein the attackers explicitly and in writing, admitted to harassing Plaintiff on the basis perceived threat from his disabilities, and Plaintiff made every effort to attempt highlight the fact that the University had failed to uphold its duty to provide students with disabilities the opportunity to pursue education free of harassment and discrimination by reporting all of the discriminatory conduct to the university.

34.    As part of the continuing pattern of harassment and discrimination, On December 19, 2019 DePilla and Cohen found Plaintiff guilty of "endangering myself or others" based off the testimony of his three attackers, and the police report which stated that Plaintiff battered REDACTED and REDACTED witnessed the battery, despite having full knowledge REDACTED had confessed to not witnessing anything except seeing Plaintiff being choked by REDACTED as he entered the room, and confessed to then aiding him [REDACTED in physically restraining Plaintiff. Student conduct found that his attacker's repeated targeted and predatory harassment was justified because he was one of the "organizers" of the event and was concerned for vague and unspecified "safety" reasons.

35.    Despite his strong disagreements and providing copious amounts of convincing and compelling evidence against his accusers, Plaintiff again worked with the administration of the law school

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

a year in order to complete mental health assessments and a variety of other pre-conditions which would allow Plaintiff to return to school, this is because his legal education is the most important thing to Plaintiff in the entire world. As far as Plaintiff knows, no other similarly situated student without disabilities was subjected the pre-conditions discussed in this paragraph prior to their re-enrollment in the law school following a medical leave of absence directly related to their disability.

### 2020 Re-Enrollment at NU Law

36.     In mid-July of 2020 Plaintiff finally completed the last of his mandatory pre-conditions, and eagerly re-enrolled in the entering JD class of 2020.

37.     Plaintiff's Facebook is currently set to "private" mode for various reasons, as opposed to "public" mode, and no one outside of individuals who he is "friends" with on the application, and who shares "groups" with on the application can search or find his information.

38.     Plaintiff currently shares "Official Northwestern Pritzker Class of 2023 Admitted Students Page" with   REDACTED   a white female transgender incoming 1L student at NU Law. It is a "private" group with 280 members because only members can see who is in the group and what they post.

39.     It is solely on account of his sharing the aforementioned Facebook group with REDACTED that she was able to cyberstalk Plaintiff as indicated in the upcoming paragraphs, this is because only members can see who is in the group and what they post. Members who are outside of this group cannot search or find my profile because it is not in "public" mode.

40.     Plaintiff wishes to make abundantly clear that he has never met or interacted with   REDACTED   prior to these incidents in any way, shape, or form.

### 2020 Cyberstalking and Hate Crimes

41.     On or around 8/21/20 I was cyberstalked by   REDACTED   a white female transgender incoming 1L student at NU Law, in violation of cyberstalking 720 ILCS 5/12-7.5. She committed a Hate crime in violation of 720 ILCS 5/12-7.1 (a) by cyberstalking me on the basis of actual or perceived mental disability. She conducted surveillance of me on "Google" and "Facebook" and other

FILED DATE: 1/11/2021 7:33 AM    2021CH00106

possibly hitherto unknown locations, observing and monitoring those sites with information, and gathered my personal and private information such as: my photograph, work history, contact information, dates about my school history, and dates about my pictures on a group chat and on Facebook, and educational history. She gathered my personal data, including my photo, from "Facebook," "Google," and other possible locations for malicious personal use on or around 8/22/20, and also to post it in first-year Law GroupMe chat titled "NU Kids on the Block '23" on or around 8/21/20.

42.     On 8/22/20 at 2:22 AM she committed a Hate crime in violation of 720 ILCS 5/12-7.1 (a) by Transmission of obscene messages in violation of 720 ILCS 5/26.5-1(a), Harassment through electronic communications in violation of 720 ILCS 5/26.5-3 by posting my private information which she gathered through surveillance in first-year Law GroupMe chat titled "NU Kids on the Block '23" in committing harassment based on ADA disabilities and Her actions caused me significant emotional distress by bringing up my last year in school, which was when my mother died, I was hospitalized for grief, and I had to withdraw from school for mental health concerns.

43.     On 8/22/20 at 2:22 AM She committed a Hate crime in violation of 720 ILCS 5/12-7.1 (a) by Transmission of obscene messages in violation of 720 ILCS 5/26.5-1(a) harassing me through electronic communications in violation of 720 ILCS 5/26.5-3 in a first-year Law GroupMe chat titled "NU Kids on the Block '23," wherein she committed the following acts:

44.     She committed by transmission of obscene messages in violation of 720 ILCS 5/26.5-1(a) when she posted a disparaging image of a frog with the title "NO THOUGHTS EMPTY HEAD" in direct reference to a stereotype about people with mental health problems and disabilities in a first-year Law GroupMe chat titled "NU Kids on the Block '23" on 8/21/20; directly comparing my mental capacity to that of a frog, insinuating that my mental capacity was equivalent to a frog which is a direct reference to my mental health and disability status and is a stereotype about people with mental health problems and disabilities

FILED DATE: 1/11/2021 7:33 AM  2021CH00106

45.    She posted my private Facebook information on the chat, which included such as: my photograph, work history, contact information, dates about my school history, and dates about my pictures on a group chat and on Facebook, and educational history.

46.    She committed transmission of obscene messages in violation of 720 ILCS 5/26.5-1(a) when she inappropriately suggested I was under an "assumed identity," which is a stereotype about people with mental disabilities.

47.    She committed transmission of obscene messages in violation of 720 ILCS 5/26.5-1(a) when she posted the word "psyop" which was a direct reference to my mental capabilities and was directly related to my mental health, and she insinuated that I was undertaking a psychological operation, which is a blatant stereotype about people with mental health disabilities and other problems.

48.    **She committed Educational intimidation in violation of  720 ILCS 5/12-7.**2(a)(3) when she committed a violation of intimidation statutes 720 ILCS 5/12-6(a)(7) and 720 ILCS 5/126(a)(5) when she encouraged rampant negative speculation among the class about my mental health status by making several mischaracterizing and intentionally malicious comments aimed at making people think I was doing multiple stereotypical activities of people with mental health problems By posting my work history and by making all of the inappropriate suggestions and bringing up dates about my pictures, she encouraged the negative stereo type that people with mental health problems are not able to hold jobs, and that somehow my work and education history was something that I could not possibly have because of my mental health status and cognitive capacity. Therefore, by ridiculing and trying to poke holes in my work history and inciting hatred and speculation about me, they directed comments at my ADA disabilities.

49.    **She committed Educational intimidation in violation of  720 ILCS 5/12-7.**2(a)(2) when her harassment "created a hostile environment and/or substantially interfered" with my "access to a University program or activity from an objective perspective" when I was banned immediately from group chat and discord after my comments in the chat, furthermore I was immediately suspended from school, thereby effectively impeded from those university activities directly resulting from REDACTED influence

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

and injured in my property in educational opportunities and law career due to her malicious intent to get me expelled from school.

50.      **She committed Educational intimidation in violation of  720 ILCS 5/12-7.**2(a)(1) and **720 ILCS 5/12-7.**2(a)(3) when she Engaged in intimidation in violation of 720 ILCS 5/12-6 (a)(1) by Indirectly threatening my safety when she posted my personal information in the first-year Law GroupMe chat titled "NU Kids on the Block '23" on 8/22/20, thereby exposing me to unnecessary exposure and risk which I did not consent to by exposing me to risk of someone who could use that information to track me down and hurt me, both inside and outside of the law school. This is because the group me is not officially a school moderated activity, and other people from outside of the law school can request and gain access to it, this is proven by a total list of the chat members and comparison to the total number of law students in the class, specifically there are many more members of the chat than there are members of the incoming 1L class. At least some of those who were in the group chat were exposed to my private information as a result of <sup>REDACTED</sup> posts who would not otherwise have seen my information, absent <sup>REDACTED</sup> defamatory hate crime of posting my private information on the basis of my perceived disability.

51.      On or around 8/22/20, after she had harassed me on the Group chat, and I had been removed from both the Discord and Group Me by other biased students, I made a legitimate offer to <sup>REDACTED</sup> to settle our grievances offline by offering my personal number and asking her to call me "if there was an issue."

52.      **She committed assault in violation of 720 ILCS 5/12-**1(a) when she put Plaintiff in imminent fear of battery when she **committed Educational intimidation in violation of  720 ILCS 5/127.**2(a)(1) and Engaged in intimidation in violation of 720 ILCS 5/12-6 (a)(1) when she engaged in harassment by telephone in violation of 720 ILCS 5/26.5-2 and directly threatened my safety by calling me at 1:08 AM on 8/23/20 in a threatening manner due to the late-night hour, menacingly asking "Is this

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

Fahad Syed?" then paused and breathed into the phone menacingly, then failed to identify herself after repeated inquiry, replying only "you gave me your number" and "you told me to call you." She took my legitimate offer to settle our grievances offline to call me 1:08 AM threateningly and menacingly, instead of trying to arrange a meeting at normal hours via email or text. She took these actions in order to take advantage of my learning disability and vulnerability to bait and entrap me into responding, and then misleadingly misrepresent that situation to report to NU that I had threatened her safety. She also committed Aggravated assault in violation of 720 ILCS 5/12-2(a) by committing the assault resulting from gaining my information in "NU Kids on the Block '23" which is a school affiliated group, or a "place of public accommodation." She also committed aggravated assault in violation of 720 ILCS 5/12-2(b)(1) by knowingly assaulting a person with ADA disabilities.

53.     REDACTED committed intimidation in violation of 20 ILCS 5/12-6 (a) (1) when she engaged in harassment by telephone in violation of 720 ILCS 5/26.5-2 by illegally recording the phone conversation without my knowledge or consent in violation of Eavesdropping 720 ILCS 5/14-2(a)(2) when she used an eavesdropping device, her phone and/or another recording devise, in a surreptitious manner, for the purpose of transmitting or recording all or any part of any private conversation to which he or she is a party unless he or she does so with the consent of all other parties to the private conversation and Eavesdropping 720 ILCS 5/14-2(a)(3)  when she  recorded, or transcribed, in a surreptitious manner, any private electronic communication to which he or she is not a party unless he or she does so with the consent of all parties to the private electronic communication in order to maliciously and deceitfully get me expelled from law school.

54.     **She committed Educational intimidation in violation of  720 ILCS 5/12-7.**2(a)(2) when REDACTED committed Eavesdropping in violation of 720 ILCS 5/14-2(a)(5) when she engaged in harassment by telephone in violation of 720 ILCS 5/26.5-2  and Harassment through electronic communications in violation of 720 ILCS 5/26.5-3 when she used or disclosed any information which he or she knows or reasonably should know was obtained from a private conversation or private electronic

FILED DATE: 1/11/2021 7:33 AM    2021CH00106

communication in violation of the Article, doing so without the consent of all of the parties and disclosing that information to NU representatives Ish Faith-Orkar and Heather Cohen on 8/27/20 and 10/29/20 in order to maliciously and deceitfully get me expelled from law school.

55.    **She committed Educational intimidation in violation of <u>720 ILCS 5/12-7.</u>**2(a)(3) and she committed intimidation in violation of <u>720 ILCS 5/12-6</u>(a)(7) and <u>720 ILCS 5/12-6</u>(a)(5) by inciting, encouraging, and/or influencing 'REDACTED ," an incoming female 1L , to speculate negatively "According to 2Ls, last year he escalated in his aggressive behavior and speech after being kicked out of the group me. Unfortunately in person at times. If he messages any of you, rather than engaging with him I recommend emailing [NU] with screenshots," in the first-year Law GroupMe chat titled "NU Kids on the Block '23" on 8/22/20. Where REDACTED and REDACTED had previously met and spoken.

56.    **She committed Educational intimidation in violation of <u>720 ILCS 5/12-7.</u>**2(a)(1) and <u>**720 ILCS 5/12-7.**</u>2(a)(3) when and she committed intimidation in violation of <u>720 ILCS 5/12-6</u>(a)(7) and 720 <u>ILCS 5/12-6</u>(a)(5) by inciting, encouraging, and/or influencing "REDACTED," an incoming white male 1L , to state "Please keep further discussion about Fahad at a respectful level, and preferably at a minimum, outside of what is necessary" after removing me from in the first-year Law GroupMe chat titled "NU Kids on the Block '23" on 8/22/20. Where REDACTED and REDACTED had previously met and spoken.

57.    **She committed Educational intimidation in violation of <u>720 ILCS 5/12-7.</u>**2(a)(1) and <u>**720 ILCS 5/12-7.**</u>2(a)(3)and she committed intimidation in violation of <u>720 ILCS 5/12-6</u>(a)(7) and <u>720 ILCS 5/12-6</u>(a)(5) by inciting, encouraging, and/or influencing "REDACTED a white female lesbian NU LGBTQ Student Organization Leader to an current 2L , to unfairly influence school administration to suspend me from NU on Behalf of REDACTED on 8/23/20, where REDACTED forwarded messages and screenshots and called Shannon Bartellete, the associate dean of Inclusion and

58.    Engagement to speak to Associate Dean and Dean of Students Susie Spies Roth and others. Where REDACTED sent REDACTED and email falsely indicating that Plaintiff had initiated the phone

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

contact between REDACTED and Plaintiff and where REDACTED and REDACTED had previously met and were both part of the LGBTQ affinity group.

59. **She committed Educational intimidation in violation of 720 ILCS 5/12-7.**2(a)(3) and she committed intimidation in violation of 720 ILCS 5/12-6(a)(7) and 720 ILCS 5/12-6(a)(5) by inciting, encouraging, and/or influencing "REDACTED a female transgender 2L student at Northwestern Law, to harass me six separate times with unwanted comments on Facebook on 8/23/20, where she made repeated reference to me "sliding into white girls dm's" and other harassing comments on my status posts. Where REDACTED and REDACTED had previously met and were both part of the LGBTQ affinity group.

60. **She committed Educational intimidation in violation of 720 ILCS 5/12-7.**2(a)(3) and she committed intimidation in violation of 720 ILCS 5/12-6(a)(7) and 720 ILCS 5/12-6(a)(5) by inciting, encouraging, and/or influencing REDACTED," a white female incoming 1L student, to harass me with offensive statements on Discord on 8/23/20 on Behalf of REDACTED where both REDACTED and REDACTED had previously spoken and met.

61. **She committed Educational intimidation in violation of 720 ILCS 5/12-7.**2(a)(1) and **720 ILCS 5/12-7.**2(a)(3) when and she committed intimidation in violation of 720 ILCS 5/12-6(a)(7) and 720 ILCS 5/12-6(a)(5) by inciting, encouraging, and/or influencing "REDACTED an incoming white female male-transgender 1L , to participate in a student disciplinary hearing against me where she stated during an interview on 9/1/20 that "while this semester is largely remote, [I] don't want to be in the hall with him to and from class and have some sort of confrontation," and where she said it would be "Very easy to imagine using the women's restroom" and seeing him go in and out of the restroom at the same time, "and… start a confrontation." Where REDACTED and REDACTED had previously met and were both part of the LGBTQ affinity group.

62. **She committed Educational intimidation in violation of 720 ILCS 5/12-7.**2(a)(1) and **720 ILCS 5/12-7.**2(a)(3)and she committed intimidation in violation of 720 ILCS 5/12-6(a)(7) and 720 ILCS 5/12-6(a)(5) by inciting, encouraging, and/or influencing "REDACTED a white female lesbian NU

FILED DATE: 1/11/2021 7:33 AM    2021CH00106

LGBTQ Student Organization Leader to an current 2L , to participate in a student disciplinary hearing against me where she stated during an interview on 9/2/20 that "she is working on an action plan so this doesn't happen again." She also stated "(This feeling is) reciprocated among our board, because they were all taking about it [the group chat altercation] as it happened" further indicating the defamatory rumors and hate and ridicule REDACTED incited about me to the law school. Where REDACTED and REDACTED had previously met and were both part of the LGBTQ affinity group.

63.    **She committed Educational intimidation in violation of  720 ILCS 5/12-7.**2(a)(1) and **720 ILCS 5/12-7.**2(a)(3) when and she committed intimidation in violation of 720 ILCS 5/12-6(a)(7) and ILCS 5/12-6(a)(5) by inciting, encouraging, and/or influencing "  REDACTED  ," an incoming gay 1L , to participate in a student disciplinary hearing against me where he falsely claimed during an interview on 10/27/20 that I was making comments "geared directly at a person's attributes" in attempting to mischaracterize and defame me as a transphobic person. Where REDACTED and REDACTED had previously met and were both part of the LGBTQ affinity group.

64.    **She committed Educational intimidation in violation of  720 ILCS 5/12-7.**2(a)(1) and **720 ILCS 5/12-7.**2(a)(3) when and she committed intimidation in violation of 720 ILCS 5/12-6(a)(7) and 720 ILCS 5/12-6(a)(5) by inciting, encouraging, and/or influencing "REDACTED," an incoming 1L , to participate in a student disciplinary hearing against me where she stated during an interview on 10/27/20 that "there were rumors concerning the first time Fahad was in law school two years ago." REDACTED indicated that it was "rumored that due to inappropriate physical conduct, Fahad left law school two years in a row and this fall was placed in section 4." Where REDACTED and REDACTED had previously met and knew each other.

65.    **She committed Educational intimidation in violation of 720 ILCS 5/12-7.2 (a)(2),** when she engaged in harassment by telephone in violation of 720 ILCS 5/26.5-2  and Harassment through electronic communications in violation of 720 ILCS 5/26.5-3 by texting me at 8:34 PM on 8/23/20, after

FILED DATE: 1/11/2021 7:33 AM  2021CH00106

knowingly cooperating with NU to have me suspended earlier that day, in order to further target my ADA learning disabilities and associated vulnerability to maliciously provoke and entrap me into a response. She knew that she had been suspended with a no-contact order, and was attempting to again lure me into responding because, due to my ADA disability, she knew I had a irritable disposition, so then she could maliciously report me for violating the no-contact order which she was fully aware was in place resulting directly from her actions and cooperation with NU.

66.     **She committed Educational intimidation in violation of <u>720 ILCS 5/12-7.2 (a)(2)</u>**, when she engaged in harassment by telephone in violation of <u>720 ILCS 5/26.5-2</u>  and Harassment through electronic communications in violation of <u>720 ILCS 5/26.5-3</u> by communicating to the law class about me by posting my private information in the first-year Law GroupMe chat titled "NU Kids on the Block '23 from 8/22/20-8/23/20, communicating to others about me by making and encouraging defamatory speculation and remarks directed towards ADA disabilities for the purposes of having me maliciously expelled from law school.

67.     She committed **Criminal damage to property in violation of <u>720 ILCS 5/21-1)(a)(1)</u> in excess of $100,000, she committed Educational intimidation in violation of <u>720 ILCS 5/12-7.2 (a)(2)</u>** and **<u>ILCS 5/12-7.2 (a)(3)</u>** and she committed intimidation in violation of <u>720 ILCS 5/12-6</u>(a)(7) and 720 ILCS 5/12-6(a)(5) by damaging to my property in the form of my personal and professional reputation within the law school and legal profession by defaming me and inciting hatred and speculation against me in first-year Law discord chat on 8/21/20 or 8/22/20 in order to get me maliciously expelled from law school.

68.     She committed **Criminal damage to property in violation of <u>720 ILCS 5/21-1(a)(1)</u> in excess of $100,000, she committed Educational intimidation in violation of <u>720 ILCS 5/12-7.2 (a)(2)</u>** and **<u>720 ILCS 5/12-7.2 (a)(3)</u>** and she committed intimidation in violation of <u>720 ILCS 5/126</u>(a)(7) and 720 <u>ILCS 5/12-6</u>(a)(5) when she damaged my property in terms of my character through defamatory

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

statement and inciting hatred and speculation against me in first-year Law GroupMe chat titled "NU Kids on the Block '23" on 8/21/20 or 8/22/20 in order to get me maliciously expelled from law school.

69.     She committed **Criminal damage to property in violation of <u>720 ILCS 5/21-1(a)(1)</u> in excess of $100,000, she committed Educational intimidation in violation of <u>720 ILCS 5/12-7.2 (a)(2)</u>** when she damaged my property in the form of my educational opportunities by having me suspended through lies and deceit and defaming me in first-year Law GroupMe chat titled "NU Kids on the Block '23" on 8/21/20 or 8/22/20.

### 2020 Conspiratorial Disability Harassment and Unlawful Obstruction of Justice

70.     On information and belief, sometime around 8/23/20, The Interim University Dean of Students, Mona Dugo ("Dugo"), and the Deputy Chief Eric Chin ("Chin") of Northwestern University Police Department (NUPD) negligently suspended Plaintiff (Fahad Syed: Current 1L Law Student) from Northwestern University Law School, and reported Plaintiff to the Northwestern University Police Department (NUPD), for a perceived threat from his disability which resulted from communications between Plaintiff and fellow current 1L REDACTED and occurred between 8/22/20-8/23/20. She called Plaintiff on 8/23/20 and explicitly stated "we've been watching your Facebook and other social medial posts" and on a 3-way call with Chin, Dugo, and Plaintiff.

71.     On 8/27/20, Plaintiff filed Department of Education, Office of Civil Rights Complaint #05-202444 alleging discrimination on multiple grounds, including disability discrimination and hostile environment.

72.     On 9/3/20 at 7:45 AM, Plaintiff informally and indirectly notified the university via email to Lucas Christian of the Office of Community Standards that the Plaintiff had complained about the University to an outside entity, Illinois Department of Human Rights and Illinois Guardianship and Advocacy Commission.

73.     On 9/3/20 at 9:05 AM, Plaintiff wrote an email addressed, in part, to Dugo and Chin, requesting the chat transcripts of the incident which resulted in his suspension on 8/23/20.

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

74.     On 9/13/20 at 1:49 PM Plaintiff formally notified the University via email to The Office of Equity, its employees Amanda DeSilva and Ish Faith Orkar, and Lucas Christian and Heather Cohen of the Office of Community Standards, that the Plaintiff had complained about the University to an outside entity: The Department of Education, Illinois Department of Human Rights, and Illinois Guardianship and Advocacy Commission.

75.     On 9/14/20 at 5:29 PM, Chin had unauthorized telephone communications with Plaintiff's private psychiatrist(s) in violation of the IMHDDCA and HIPAA. Chin left Tobin a voicemail specifically, twice, acknowledging that he did not have an ROI for contacting him [Tobin], and requesting to "share information" with him and requesting Tobin call him back on his cell phone.

76.     On 9/14/20 at 6:11 PM PLAINTIFF was notified via email by his therapist, Brian Tobin ("Tobin"), that Deputy Chief Chin had contacted him, and he [Tobin] subsequently asked Plaintiff to sign an ROI form.

77.     On 9/15/20 at 12:11 PM, during a 6-minute incoming phone call, NUPD Detective Sanghoon Lee ("Lee") inappropriately contacted and aggressively questioned Plaintiff regarding Plaintiff's Facebook post about his discrimination complaint with the Department of Education, in order to retaliate against Plaintiff for making said complaint, and to threaten, intimidate, and coerce Plaintiff into dropping said complaint. During this call, Lee said "you know why I'm calling," mentioned Dugo by name, and instructed Plaintiff not to post anything about Dugo without "running it by [Lee's] office first." Plaintiff indicated to Lee that Plaintiff had filed the DOE complaint, gave Lee the complaint number, and directed Lee to "contact [Plaintiff's] attorney regarding the posts if he had any other questions."

78.     On 9/16/20 at 3:03 PM, Dugo had unauthorized email communications with Plaintiff's private psychiatrist, Brian Tobin, in violation of the Illinois Mental Health and Developmental Disabilities Confidentiality Act (IMHDDCA) and Health Insurance Portability and Accountability Act (HIPAA) under the pretext of responding to Plaintiff's 9/3/20 email requesting group transcripts. In the communication,

FILED DATE: 1/11/2021 7:33 AM    2021CH00106

she stated: "I'm not sure if Fahad signed a release of information when he made this request. I would like to be able to share some information with you as we have a lot of on going concerns about Fahad."

79.     On 9/22/20, The Dean knowingly and inappropriately shared an illegally obtained audio recording of Plaintiff, of a phone call with another current law student (1L  REDACTED  from 8/22/20, with Plaintiff's medical providers in order to assassinate his character in retaliation for the Department of Education complaint which she referenced during the call and is discussed in the letter from the his therapist. The Dean discriminated against me on the basis of his mental health, in retaliation for the Department of Education complaint which, and which she was fully aware through the university on 9/3/20 through an email to Lucas Christian and 9/13/20 through an email to the Office of Equity.

80.     On or around 9/28/20, during their next session, Plaintiff's therapist, Brian Tobin, informed Plaintiff of the audio recording. It was at this time that Plaintiff realized that this was audio which was illegally submitted to his university by  REDACTED  and illegally resulted in his suspension sometime around 8/23/20.

81.     On or around 9/28/20 as a result of the aforementioned unlawful contact with Plaintiff's therapist, Mona Dugo, Eric Chin, and Sanghoon Lee were repeatedly informed not to contact Plaintiffs family members via text messages from plaintiff to their cells phones.

82.     On 10/10/20, at 8:33 PM PLAINTIFF attempted to file an eavesdropping charge with Northwestern University Police Deputy Chief Eric Chin via text message for a phone call which PLAINTIFF took at his apartment in the 18th district (244 E Pearson St), which was illegally recorded and submitted to his law school, resulting in his suspension. At 8:44 PM Chin responded via text and instructed Plaintiff to file a report with Chicago Police Department (CPD) because NUPD did not have jurisdiction in the matter.

83.     On 10/11/20, PLAINTIFF filed a police report for Eavesdropping in the CPD 18th district, with the non-emergency line (312-746-6000) because they have jurisdiction over a phone call which PLAINTIFF took at his apartment in the 18th district (244 E Pearson St) which was illegally recorded and

FILED DATE: 1/11/2021 7:33 AM    2021CH00106

submitted to his law school, resulting in his suspension. Reporting Officer Aldahhondo (Star 5142) took the report and Supervisor O Shaughnessy (Star 1829) approved it. (Report JD 395786 attached.)

84.     On 10/14/29, NUPD Detective Lee called Plaintiff and brutally interrogated Plaintiff for 18 minutes about exactly how and when Plaintiff found out about the illegal audio tape. Had the illegal audio tape not been made and the university not knowingly suspended me over it, Plaintiff would never have received such an intimidating and harassing interrogation. During the call the detective asked my CPD report number and claimed that he was filing a report with NUPD. Approximately 3 days later he called Plaintiff provided him with report 2020-0356 which he claimed was filed for the eavesdropping case.

85.     On 10/19/2020, at approximately 3:00 PM PLAINTIFF called CPD non-emergency (312746-6000) and was told by the officer on duty, Philp (Emp #19035)  that the report had been "cancelled without investigation," citing a "lengthy cancellation report" involving "NUPD Deputy Chief Chin and the sergeant" as the reason.

86.     Sometime between 10/11/20 – 10/19/20, Chin cancelled his report illegally by illegally revealing his mental health history to the detective without having an ROI in violation of the Illinois Mental Health and Developmental Disabilities Confidentiality Act and Health Insurance Portability and Accountability Act of 1996 (HIPAA), discriminating against Plaintiff on the basis of his mental health, in retaliation for the Department of Education complaint which PLAINTIFF filed on 8/27/20, and which he [Chin] was fully aware through the university on 9/3/20 through an email to Lucas Christian and 9/13/20 through an email to the Office of Equity. The call in question never took place on University property, and DC Chin knew that due to the prior text conversation.

87.     He [Chin] revealing that plaintiff had involuntarily committed to a hospital in November 2019 for an involuntary mental evaluation, directly and deliberately implying or stating to the detective that PLAINTIFF was crazy and his lawful report shouldn't be investigated on the basis of his mental health status.

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

88.     He also told the detective and express lie about his consent during the recording in question: telling the detective that PLAINTIFF consented having his conversation recording when PLAINTIFF did not, as was the very reason why PLAINTIFF filed the eavesdropping report. PLAINTIFF did not consent to having his conversation recorded, nor did PLAINTIFF have knowledge of the recording at any time, and DC Chin knew that because I attempted to file the report with him first.

89.     As a result of the call, plaintiffs report (JD 395768) was cancelled.

90.     In approximately 10 separate follow-up calls and 50 text messages to Lee, which occurred in the weeks after my CPD report was cancelled, he never responded to my follow-ups about report 2020-0356. This proves that his purpose in interrogating me was under the false pretext of filing a report whereas in reality he was retaliating for my CPD report and my DOE complaint. The university has deliberately failed to provide that report on my multiple email requests.

91.     On information and belief, sometime between 10/11/20 – 10/19/20, Chin called and told CPD non-emergency response officers (312-746-6000), between 12pm-6pm, not to respond to reports about eavesdropping from students at Northwestern, or informed the desk sergeant of such.

92.     PLAINTIFF called CPD non-emergency (312-746-6000) 6-7 times in a row between 3p-5pm on 10/19/2020 in order to file another report, and as soon as PLAINTIFF told them PLAINTIFF was a student from NU filing an eavesdropping report, they hung up.

93.     On information and belief, on or around on the week of 10/19/2020, Chin called Area 3 Supervising Detective Rose #982 at (312-744-8263) and asked him not to respond to reports about eavesdropping from students at Northwestern or related cancellations. On 10/19/2020 PLAINTIFF called Area 3 Supervising Detective Rose #982 at (312-744-8263) from 4-5PM , to report the incident of improper cancellation of my report, citing jurisdiction, and he refused to disclose any details about why the report was cancelled, telling me to "file another report."

94.     On information and belief, on or around on the week of 10/19/2020, Chin called and told 18th District Supervisor Sergeant Vogt at (312-742-5870) and asked him not to respond to reports about

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

eavesdropping from students at Northwestern or related cancellations. On 10/19/2020 PLAINTIFF called

18th District Supervisor Sergeant Vogt at (312-742-5870) from 4-5PM , to report the incident of improper

cancellation of my report, citing jurisdiction, and he refused to disclose any details about why the report

was cancelled, telling me telling me "civil litigation" is an option.

95.    Deputy Chief Eric Chin took these actions to prevent the illegal audio tape from being

revealed in retaliation for the Department of Education complaint which PLAINTIFF filed, in order to

conceal his and the universities negligence, and their knowing harboring and supporting of a malicious

96.    criminal,   REDACTED   Chin also took these actions to conceal the fact that he and

Dugo were aware of the illegality of the audio tape, and still suspended me over it, which is also why

PLAINTIFF filed his Department of Education Complaint, and to punish Plaintiff for filing said

complaint.

97.    All of the actions taken by Dugo, Chin, and Lee, including slandering ones reputation to

their therapist, especially given mental disabilities, brutal interrogation, and causing a report to be

cancelled without informing them, would deter a reasonable person from complaining.

98.    The illegal conduct of the   REDACTED   illegally recording me and illegally

submitting the tape to the university in order to have me suspended, caused the university to knowingly

use it to suspend me due to bias. That suspension then caused me to file a discrimination claim with the

DOE and ultimately to file the police report with CPD.

99.    The discrimination claim with the DOE caused Chin to illegally contact Plaintiff's

therapist in order to slander him with an illegal audio tape, Dugo to illegally contact Plaintiff's therapist

and slander Plaintiff's reputation maliciously with an illegal audio tape, Lee to aggressively and

harassingly call me once, and Lee to brutally and menacingly interrogate me another time.

100.    Filing the DOE complaint about discriminatory and bias suspension later caused me to file

the CPD report about the discriminatory use of the illegal audio tape in order to strengthen my

discrimination complaint for legal proceedings which would occur during litigation.

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

101.    Filing the CPD report caused Chin to have my CPD report cancelled. Therefore, the filing DOE complaint caused me to file the CPD report, which caused Chin to have my CPD report cancelled through disability discrimination

102.    On 11/2/20 Plaintiff filed a report with the Civilian Office of Police Accountability about Chins illegal disclosure of my mental health history. On 11/5/20 the complaint Log 2020-0004964 was assigned to Sgt. Mark K Lamberg (Star# 1847) to be investigated by Chicago Police Department Bureau of Internal Affairs Division Officer Lambert, with whom I interviewed 11/9/20 at CPD Headquarters regarding the incident.

103.    On 11/3/20 Plaintiff filed an eavesdropping report again with Chicago Police Department, JD 419862. The report is currently assigned to Detective Lee of CPD with an unnamed offender.

104.    Mona Dugo, Eric Chin, and Sanghoon Lee were repeatedly informed not to contact Plaintiffs family members via text messages from plaintiff to their cells phones occurring on or around 9/28/20.

105.    On or around 11/3/20, Plaintiff learned from his brother-in-law Azam Hussien (312-303-3736) via text message that someone person or persons from the university had contacted my sister, Sophia Syed (847-347-3736) and requested discussion for "hours" about Plaintiff and his school situation without Plaintiff's knowledge or consent. This is after Plaintiff expressly forbade the university, through text message to Mona Dugo after she shared the illegal audio with Plaintiffs therapist, that no one who Plaintiff "knows" should be contacted, including most importantly: plaintiff's family members. NU and NUPD and its representatives contacted Plaintiff's sister in retaliation for his COPA report, his police report, and his DOE Report.

106.    Shortly after learning that someone had contacted Plaintiff's family in direct conflict with his wished, Plaintiff texted Defendants NU, Dugo, Chin, and Lee to determine why they had contacted Plaintiff's family and who had authorized such unlawful contact.

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

107.    On 11/4/20, Plaintiff received Official Northwestern Correspondence email from the Office of Community Standards indicating several more disciplinary sanctions and another UHAS hearing in retaliation for the filing of plaintiff's police report and DOE complaint. The stated pretext for this disciplinary action was that Plaintiff was being disciplined for texting Chin, Dugo, and Lee about his DOE complaint and about the police report, about the various retaliatory measures taken against plaintiff and for the contacting of Plaintiff's sister without Plaintiff's permission. NU and NUPD and its representatives sanctioned plaintiff in retaliation for his COPA report, his police report, and his DOE Report. NU displayed awareness of the multitude of illegal and discriminatory and illegal conduct which I texted Chin, Dugo, and Lee and were in a position to take corrective action and failed to do so.

108.    On 11/6/20 Plaintiff was served with a protection order ("PO") (Case 200P20532) for harassment and Stalking from the Cook County Sheriffs office, in which Dugo made several misleading allegations as to my contact with her due to her official capacity as dean of students. The stated pretext was that I was sending her "100's harassing messages" whereas in reality I was informing her of discrimination which is ongoing and pleading for her to step in and stop it due to her duty as dean of students. This pretext was a cover for her requesting both a threat assessment and a protecting order against me based SOLEY off threat from my perceived disability in retaliation for my DOE complaint. The stalking no contact order was taken especially to label me as a sexual offender in retaliation for my DOE complaint.

109.    The PO revealed that Dugo, through her official capacity at the University, contracted with "Sigma Threat" in order to harass Plaintiff in retaliation for filing his DOE Complaint and retaliation complaints to the university. The stated pretext for this was to "help evaluate his threat level" and was a cover for her contracting the service on the basis of threat from my perceived disability in retaliation for filing his DOE Complaint.

110.    In addition, she made derogatory and misleading accusations in PO about the Holy Quran Chapter 33, Verses 60-68: referring to them as "translated as sinners will die in a fire". She took the protection order for harassment and stalking based on perceived threat from Plaintiffs religion.

111.    Her allegations in support or PO were misleading or defamatory in the following ways:

a.    She claims she "had to issue" Plaintiff "interim suspension for threatening a fellow law student w/ physical violence." This is false, she knows that the student in question, REDACTED  stalked me and then posted my information to a group chat and made derogatory statements about my disability, then called me at 1:08 am in a threatening manner and recorded BOTH the call that she made to me and the call that I made in response. These two illegal audio tapes are what Dugo actually suspended me over. She misrepresented this fact deliberately in order to make me seem like a dangerous person.

b.    She claims I was on probation for "physically assaulting another student." This is false, she knows that there was absolutely no evidence whatsoever that I assaulted anyone aside from that single persons unsubstantiated allegations. She misrepresented this fact deliberately in order to make me seem like a dangerous person. I have filed Attorney General Case 20cv1772 pursuant to this allegation.

c.    She claims that I have sent her "more than 150 unanswered text messages with increasingly aggressive language." This is without indicating that the messages are sent to her because of her official capacity as dean of students, and because I am telling her about discrimination committed by Deputy Chief Eric Chin of NUPD, Lee of NUPD, and others in the University and asking her to stop them. The "aggressive language" she is referring to is the increasing amount of litigation and legal proceedings that I am threatening her with if she does not cease her illegal conduct.

d.    She claims she "has not" monitored my Facebook. This is blatantly false, because she on 8/23/20 she called me and explicitly stated  "we've been watching your facebook and

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

other social medial posts" and she also directed detective Lee to call me and interrogate me on the basis of her perceived threat from my Facebook post about my Department of Education Complaint.

e.  She claims that I am sending her "harassing" messages to her work email when in reality I sent her two follow emails demanding to know who contacted my sister when I told her not to.

f.  She claims that Plaintiff called her and that she hung up the phone, which is a lie. Plaintiff called her and HE hung up the phone, not Dugo. She deliberately misrepresented this fact to make it seem like Plaintiff was harassing her, when in reality she was harassing Plaintiff and his sister, acting far beyond the scope of her responsibilities as Dean of Students, and escalating the situation to the current severity level.

112.    On 11/11/19 at approximately 3:00 PM Plaintiff attempted to file a police report in order to get  REDACTED  named as the offender on the police report at Chicago 18th District and two officers obstructed me from doing so, as a result I filed COPA complaint Log 2020-0005122.

113.    On 11/17/20, Plaintiff went to domestic violence court at 555 W Harrison and stated claims for SNCO against both  REDACTED  (20OP78283) and Mona Dugo (20OP78277), which were deemed worth of a hearing by the Honorable Judge Thomas M. Cushing #2258.

114.    On 11/18/20 Log 2020-0005122 was assigned CPD Sergeant Lisa Eitel (Star #2075) and on 11/22/20 I interviewed with Eitel about the incident of report obstruction, and at that time she included an amendment for report JD 419862 to include  REDACTED  name as the suspect.

115.    On or around 11/19/20, Mona Dugo falsely reported to Evanston Police that Plaintiff had violated the PO which she unlawfully had placed on me as a result of one my previously sent emails to the school asking for them to address the unlawful contact with my family which had taken place earlier in the month of October and which Plaitiff had reported to DOE and the University. She maliciously had the

FILED DATE: 1/11/2021 7:33 AM    2021CH00106

Plaintiff falsely imprisoned pursuant to case 20DV2080601, the only arrest on Plaintiff's entire criminal record, in order to retaliate against Plaintiff for his DOE report and for 20OP78277 which Plaintiff had secured on 11/17/20.

116.    On 11/19/20, four officers of the Evanston Police Department, including Detective Jones, came to my apartment at 244 E Pearson St. Chicago, IL 60611 at approximately 11:00 AM CST and arrested me without telling me what charges they were arresting me for, without letting me take my prescribed medicine, and without reading me my rights.

117.    When I answered the door, they said they needed to "talk to me about the discrimination by Northwestern University," so I let them come into my apartment.

118.    While they were inside my apartment they repeatedly and purposefully stepped on my prayer rug even after I asked the first officer not to step on in, in direct disrespect of my religious beliefs, and laughed as they did it and I asked them not to. They made derogatory statements about the rug, saying it was "beautiful" after repeatedly stomping on it and laughing.

119.    Detective Jones arrested me inside me house without ever telling me what I was under arrest for or reading me my rights.

120.    The four officers took me to Evanston police station and the four officers made me sit in an interrogation room and made me make incriminating statements without the presence of a lawyer, while under duress, which I did not understand.

121.    During this interrogation, they said that calling a lawyer would take "several hours" and made it seem like if I requested a lawyer, that I would have to get on myself. They said they "might" be able to call the public defender, but that it would take hours. In order to clear myself of the charges, I was misled into saying that they could question me without a lawyer. This is because I was not on my medication and not in the right state of mind to understand what was happening.

122.    They never mirandized me before arresting me and they never explained what I was charged with until they had brought me to the station and questioned me in a room with four officers

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

yelling at me, and while I did not have medication and did not know what was happening, in this way they took advantage of my ADA learning disabilities in order to force me to make incriminating statements in violation of my constitutional rights to be free of self-incriminating statements. They repeatedly told me that "they knew my people" and that they would "take care of me" in apparent reference to my sister Sgt. Syed of Evanston Police.

123.   Jones called repeatedly called me "little bro" and other derogatory statements while I was in his custody.

124.   They never allowed me to take my medicine prior to arresting me without reading me my rights, and they knowingly forced me to undergo questioning while not on my medication or in the right state of mind to adequately represent myself. This is despite them knowing that I take medications, which they learned at my apartment.

125.   They never established probable cause for the arrest and never showed me the alleged probable cause when I asked for it, despite the fact that I asked for it at least four separate times. They simply asked me what my email was, and when I told them, they falsely claimed that I had admitted to sending the alleged email in question to the states attorney.

126.   They then took my property and refused to give it back, including court documents which evidenced that I had requested a no contact order against the person who alleged that I violated the no contact order and had me arrested. They took this property without ever intending on reviewing it for the purposed of assessing the charges against me, and without ever intending on returning the paperwork. In this way they deprived me of my right to the materials I needed to adequately represent my defense during the court proceedings for this case.

127.   Despite the fact that I told them that Mona Dugo, the complaining witness for this arrest was retaliating against me for Department of Education complaint 05-20-2444 which I had provided to them, in addition to the stalking no contact hearing, they still charged me with the offenses.  The Dean reported me and discriminated against me on the basis of his mental health, in retaliation for the

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

Department of Education complaint, which she was fully aware through the university on 9/3/20 through an email to Lucas Christian and 9/13/20 through an email to the Office of Equity.

**Continuing Misconduct and Malicious Misrepresentation**

128.     On  11/24/20 at or around 1:30 PM, Plaintiff attended a court hearing for Case 200P20532. During the hearing, the judge asked if anyone had Plaintiff's allegations, and opposing counsel representing Mona Dugo for Case 200P20532 indicated that she had the complaint in front of her.

129.     The judge asked whether Plaintiff had "stated any facts" in support of his petition.

130.     The opposing counsel representing Mona Dugo for Case 200P20532 replied that he [Plaintiff] had "not stated any facts." This was a blatant act of perjury to the court, for Plaintiff had alleged over 25 separate, distinct, and numbered allegations containing many facts. Opposing counsel had the complaint in her possession and lied about the fact that Plaintiff had "stated facts" in support of his SNCO petition in order to mislead the judge.

131.     Opposing counsel, after committing perjury to the court, then requested that Plaintiff's SNCO be dismissed, without the judge ever having read Plaintiff's factual allegations, which were deemed worthy of a hearing (20 OP 78277) by the Honorable Judge Thomas M. Cushing #2258 during a hearing held on 11/17/20 at 555 W Harrison St, Chicago, IL and subsequently transferred to the Honorable Stephanie D. Saltouros #2161 for review.

132.     Opposing counsel and the complaining witness Mona Dugo violated the following pertinent section of Rule 137: "The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other document; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass."

133.     The allegations brought by Dugo and her attorney were not well-grounded in fact and not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing

FILED DATE: 1/11/2021 7:33 AM    2021CH00106

law, but in fact were misleading attempts to retaliate against and harass plaintiff for his SNCO (20 OP 78277) and for his DOE complaint.

134.    All of this evidence notwithstanding, plaintiff was found responsible [guilty] for the student disciplinary violations. She was ordered to "return the original journal, complete and unaltered, to the Office of zEquity byJune 29, 2005," and placed on "University Disciplinary Probation effective immediately and continuing through December 31, 2005." Plaintiff has. timely appealed the decision, however, "[t]he rendered sanction is in effect as of the date identified on the sanction, or until an appeal is granted."

135.    It is plaintiff's contention that all of the actions taken against him, as set forth above, were as a result of him raising questions regarding defendants Chin, [REDACTED] and Healy's activities which violated the Fourth Amendment to the United States Constitution, and Dugo's activities which violated the First Amendment to the United States Constitution. Plaintiff seeks a temporary restraining order from this court restraining, enjoining and prohibiting defendants' from expelling him until a preliminary injunction hearing can be held evaluating his claims.

## II. *LEGAL ARGUMENT*

### 1. *Plaintiff Is Entitled To A Temporary Restraining Order*

The test for whether this Court should issue a temporary restraining order focuses on: (1) whether there is a substantial likelihood of ultimate success on the merits; (2) whether the temporary restraining order is necessary to prevent irreparable injury; (3) whether the threatened injury outweighs the harm the temporary restraining order would inflict on the non-movant; and (4) the temporary restraining order would serve the public interest. *Gresham Park Community Org. v. Howell,* 652 F.2d 1227, 1232 n.7 (5th Cir. 1981).

### A. *Substantial Likelihood That Plaintiff Will Prevail On The Merits*

Plaintiff contends, *inter alia,* that defendants Dugo, Chin, Lee, and [REDACTED] retaliated against him for voicing objection to the discrimination on the basis of disability and sex. This retaliation, according to plaintiff, took the form of: (1) withdrawing him from classes for Fall 2020 Semester, (2) placing him on interim suspension for Fall 2020 Semester without any hearing or investigation (3) re-accusing him of assault and battery for the Fall

FILED DATE: 1/11/2021 7:33 AM    2021CH00106

2019 Semester incident – an incident where the findings of the university investigation revealed that <sup>REDACTED</sup> had falsely testified to witnessing the battery on the NUPD police report, (4) imposing a variety of sanctions in the form of charges of violating over six different policies resulting from the Fall 2020 incident, and (5) imposing sanctions in the form of ultimate expulsion against him after a hearing before a "stacked" tribunal.

It is plaintiff's contention that all of the actions taken against him, as set forth above, were as a result of his raising questions regarding defendant Dugo's activities which violated the First Amendment to the United States Constitution. Plaintiff seeks a temporary restraining order from this court restraining, enjoining and prohibiting defendants' from expelling Plaintiff from school pending a hearing on the disposition on Plaintiffs claims.

## II. *LEGAL ARGUMENT*

### 1. *Plaintiff Is Entitled To A Temporary Restraining Order*

The test for whether this Court should issue a temporary restraining order focuses on: (1) whether there is a substantial likelihood of ultimate success on the merits; (2) whether the temporary restraining order is necessary to prevent irreparable injury; (3) whether the threatened injury outweighs the harm the temporary restraining order would inflict on the non-movant; and (4) the temporary restraining order would serve the public interest. *Gresham Park Community Org. v. Howell,* 652 F.2d 1227, 1232 n.7 (5th Cir. 1981).

### A. *Substantial Likelihood That Plaintiff Will Prevail On The Merits*

Plaintiff is likely to prevail on the merits of his claim. Defendants discriminated against plaintiff solely because of threat from his perceived disability, he is "otherwise qualified" to participate in a regular classroom education pursuant to § 504, and defendants' actions are unsupported by reliable medical or scientific evidence and are irrational and based solely on vague, undifferentiated fears.

Plaintiff contends, *inter alia,* that defendants Dugo, Chin, Lee, and <sup>REDACTED</sup> retaliated against him for voicing objection to discrimination. This retaliation, according to plaintiff, took the form of: (1) forcibly withdrawing him from classes for Fall 2020 Semester, (2) placing him on interim suspension for Fall 2020 Semester without any hearing or investigation (3) re-accusing him of assault and battery for a Fall 2019 Semester

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

incident – an incident where the findings of the university investigation revealed that REDACTED had falsely testified to witnessing the battery on the NUPD police report, (4) imposing a variety of sanctions in the form of charges of violating five different policies resulting from the Fall 2020 incident, and (5) imposing sanctions in the form of ultimate expulsion against him after a hearing before a "stacked" tribunal.

The Supreme Court has made it abundantly clear that "colleges and universities are not enclaves immune from the sweep of the First Amendment." *Healy v. James,* 408 U.S. 169, 180 (1972). They may not be "enclaves of totalitarianism." *Tinker v. Des Moines Indep. Community Sch. Dist.,* 393 U.S. 503, 511 (1969). It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Id.* at 506. The court applied those well-established legal principles in concluding that the plaintiff in *Qvyjt v. Chhiu-TSU Lin,* 932 F.Supp. 1100 (N.D. Ill. 1996), was engaged in constitutionally protected speech when he reported acts of faculty misappropriation and research misconduct.

Fernando Qvyjt, a graduate student in chemistry at Northern Illinois University, filed a formal complaint alleging that his dissertation director was "misappropriating his research." 953 F. Supp. at 246. Subsequent to making the allegation, he was (1) barred from using the laboratory, (2) informed by his dissertation committee that his dissertation was unsatisfactory, (3) required to select a new dissertation topic and advisor, (4) for a period of four months, denied permission to select an advisor from another university, and (5) terminated from the program. In denying defendants' motion for summary judgment, the court stated that "[d]rawing all reasonable inferences in favor of plaintiff... the court finds that plaintiff has presented evidence from which a reasonable trier of fact could find that defendants retaliated against plaintiff for his accusations of misconduct against Dr. Lin." *Id.* at 247.

A review of the facts in the case at bar leads one to the inescapable conclusion that defendants did in fact retaliate against plaintiff. First, in all of his 2019 law courses leading up to the student suspension he received passing grades. Second, he received a satisfactory mid-term evaluation in his CLR class, which is legal writing and analysis; and he was never declared to be a marginal student, as required for student who are not progressing satisfactorily; he was never remediated academically, which is a requirement for students who have been declared

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

marginal. These facts notwithstanding, plaintiff was suspended two weeks prior to the end of the school year in November 2019 and given an ultimatum - withdraw or face further "discipline" and a litany of retaliatory conduct.

Following his refusal to withdraw, he was suspended for the duration of Fall 2019 and Spring 2020 Semester. He initiated internal complaints against Christine DePilla, Heather Cohen, and REDACTED on December, 10th and 12th, 2019. On May 11th, 2020 he initiated a complaint against Eric Chin.

On August 23rd, 2020 he was suspended by Interim Dean of Students Mona Dugo, in part, due to allegations relating to REDACTED from his role in student conduct hearings regarding the November 2019 incident. Three of the individuals participating in the decision were suspend him were defendant Eric Chin, whom plaintiff had accused of violating NU disability discrimination for not properly handling the violation of 405 ILCS 5/3-606 by OFFICER T. HEALY (Badge #22), and defendants DePilla and Cohen, who proceeded to initiate a coverup when told by plaintiff of defendant REDACTED unconstitutional actions in 2019. On August 27th, 2020 Plaintiff initiated an outside complaint with the Department of Education about Defendant Dugo. On September 9th, 2020 NU additionally sanctioned him with "unauthorized report sharing" regarding his reports of REDACTED DePilla, and Cohen.

Dugo first hid the existence of two illegal audio tapes made by REDACTED which caused her to suspend Plaintiff originally on August 23rd. Dugo then directly contacted Plaintiffs therapist without his knowledge or consent to share the tapes with him. When the Plaintiff found out about the tapes, Chin, Lee and Dugo obstructed his reports to the police. When Plaintiff complained about the conduct, Chin, Dugo, and Lee requested no-contact orders through the school on November 4th, 2020. When Plaintiff complained about their conduct, Dugo contacted, either directly or indirectly, Plaintiffs sister. When Plaintiff complained about their conduct, on November 6th, 2020, Dugo initiated a Stalking No Contact Order against him, 20 OP 20532, which is scheduled for hearing on January 6th, 2021.

On November 17th, 2020, Plaintiff attempted to secure a Stalking No Contact Order against Dugo restraining her from contacting his family. On November 19th, 2020 Plaintiff was arrested for allegedly violating 20 OP 20532 resulting from an email he had sent on November 4th, 2020. On December 22nd, 2020, Plaintiff was

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

expelled resulting from the illegal audio tapes pending an appeal which will be timely submitted by January 4th, 2020.

A retaliation claim can be established through indirect evidence by proving a chronology of events from which retaliation can be inferred. *Qvjyt,* 953 F.Supp. at 246 (citation omitted). The events set forth above allow such an inference. There is a total absence of documented proof supportive of defendants' contention that plaintiff was "Endangering Self or Others." If anyone endangered themselves or others, it was Chin and Depilla, for they failed to document properly plaintiff's 2019 complaints.

Based on plaintiff's proven academic record, and defendants' failure to document any significant deficiencies on plaintiff's part, together with the university's failure to follow its own policy respective to students deemed to be marginal, one can only conclude that the adverse actions taken with respect to plaintiff were taken in retaliation for his complaints regarding Mr. REDACTED Mr. Chin, Ms. DePilla, and Ms. Dugo, all of which were constitutionally protected by the First Amendment. Plaintiff has more than a substantial likelihood of prevailing on this issue.

Regarding the issue of the 2019 false imprisonment, there is a substantial likelihood Plaintiff will prevail on his claims. In Illinois a false imprisonment "is defined as an unlawful restraint of an individual's personal liberty or freedom of locomotion," in which "a person is compelled to remain where he does not wish to remain or to go where he does not wish to go." ***Lopez v. Winchell's Donut House,* 126 Ill.App.3d 46, 81 Ill.Dec. 507, 466 N.E.2d 1309, 1311 (1984)** It may be accomplished by "words alone, by acts alone or both." ***Id.*** **Shea v. Winnebago County Sheriff's Dep't, 746 Fed. Appx. 541, 548 (7th Cir. 2018), cert. denied sub nom. Shea v. Winnebago County Sheriff's Office, 139 S. Ct. 1200, 203 L. Ed. 2d 204 (2019) 285.**   The unlawful restraint by one person of the liberty or freedom of movement of another constitutes "false imprisonment". **Hughes v. New York Cent. Sys., 20 Ill. App. 2d 224, 155 N.E.2d 809 (1st Dist. 1959)** Defendants REDACTED REDACTED and REDACTED physically restrained the plaintiff's movement during the 2019 incident until Officer Healy and two other officers arrived on scene and forcefully transported Plaintiff to Northwestern Memorial Hospital, based solely on the false eyewitness testimony given by REDACTED at the scene. Due to these facts, Defendants REDACTED

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

REDACTED REDACTED and Defendant Healy (Badge #22), along with the two other officers and paramedics, are liable for false imprisonment.

Because Mental Health and Developmental Disabilities Code protects liberty interests, strict compliance with statutory procedures is required.  **In re Amanda H., App. 3 Dist.2017, 413 Ill.Dec. 866, 79 N.E.3d 215, appeal denied 417 Ill.Dec. 835, 89 N.E.3d 754.  Appeal And Error  181** The procedural safeguards in place for civil commitment are not mere technicalities to be sidestepped; rather, the legislature created them to protect people from the deprivation of a liberty interest.  **In re Demir, App. 4 Dist.2001, 256 Ill.Dec. 226, 322 Ill.App.3d 989, 751 N.E.2d 616.  Mental Health  37.1** Involuntary admission procedures represent the legislature's attempt to balance the individual's interest in liberty against society's dual interests in protecting itself from dangerous mentally ill persons and caring for those who are unable to care for themselves; the Mental Health and Developmental Disabilities Code's procedural safeguard's are not mere technicalities but are essential tools to safeguard the liberty interests of respondents in mental health cases.  **In re Joseph P., App. 4 Dist.2010, 348 Ill.Dec. 107, 406 Ill.App.3d 341, 943 N.E.2d 715.  Constitutional Law  4337;  Mental Health  37.1**

The law against involuntarily committing people based on threat from their perceived disability is clearly established, and neither the police nor the paramedics are immune from suit. Police officers and paramedics failed to prove either that law was not clearly established or, if law was clearly established, that defendants neither knew nor should have known of relevant legal standard with respect to plaintiff's claims of illegal search and use of force in removing her from her home and subjecting her to involuntary mental examination precluding dismissal of § 1983 action on qualified immunity grounds.  **Anderson v. Village of Forest Park, App. 1 Dist.1992, 179 Ill.Dec. 373, 238 Ill.App.3d 83, 606 N.E.2d 205.  Civil Rights  1376(4);  Civil Rights  1376(6)** Because the police officers and paramedics in the instant case knew that the right to be free of discrimination and imprisonment based off threat from perceived disability and to participate freely in school related activities without fear of harassment, and because they knew the relevant legal standard with respect to Plaintiffs claims of illegal search and use of force in removing him from the scene of the school during the 2019 incident, they are liable violation of Plaintiffs Fourth Amendment rights against unreasonable searches and seizure.

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

Failure to complete the petition constitutes prejudice to the patient. Omission of the transporting officer's names and contact information from the petition for involuntary admission could not be presumed to be harmless under Mental Health and Developmental Disabilities Code; failing to provide such information deprived patient of using testimony by the transporting officers that might have been beneficial to her, and that resulted in potential prejudice to patient. **In re Amanda H., App. 3 Dist.2017, 413 Ill.Dec. 866, 79 N.E.3d 215, appeal denied 417 Ill.Dec. 835, 89 N.E.3d 754. Mental Health** 🔑 **45** Mental Health and Developmental Disabilities Code required that the transporting officers' names, badge numbers, and employer be identified in the petition for involuntary admission so that the officers could be called as potential witnesses … the police played an active role in restraining patient and in transporting her to the hospital against her will. *Id.*

In the instant case, Officer Healy (Badge #22) failed to complete the petition for commitment. Patient could not be found to be person subject to involuntary admission to mental health facility, where peace officer, who took patient into custody and transported patient to mental health facility, failed to complete petition for involuntary admission. **In re John N., App. 3 Dist.2006, 302 Ill.Dec. 278, 364 Ill.App.3d 996, 848 N.E.2d 577, modified on denial of rehearing. Mental Health** 🔑 **38** 286. Initially authorized detention of individual pursuant to Mental Health Code may be followed by unlawful detention, that is actionable as false imprisonment, if detention is continued despite failure to comply with filing requirements of Code. **S.H.A. 405 ILCS 5/1–100 et seq. Sassali v. DeFauw, 297 Ill. App. 3d 50, 696 N.E.2d 1217 (2d Dist. 1998)**

Although Healy may have partially competed a petition later, the petition in the instant case was still invalid as it was completed by a social worker, and not Healy. Petition for involuntary commitment of patient to mental hospital was invalid, where petition was completed by social worker at hospital, not by police who brought patient to hospital. **In re Demir, App. 4 Dist.2001, 256 Ill.Dec. 226, 322 Ill.App.3d 989, 751 N.E.2d 616. Mental Health** 🔑 **38** Under statute on involuntary admission to mental health facility, when peace officer takes person who is subject of emergency petition for involuntary admission to mental health care facility into custody and transports person to mental health facility, failure of peace officer to complete petition for involuntary admission is reversible error. **In re John N., App. 3 Dist.2006, 302 Ill.Dec. 278, 364 Ill.App.3d 996, 848**

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

**N.E.2d 577, modified on denial of rehearing.**   **Mental Health** 🔑 **38**;   **Mental Health** 🔑 **45** In the case at bar, Healy was the peace officer who brought the Plaintiff to the hospital yet never completed the petition. Therefore, the involuntary admission in this case was "reversable error." 287. Fact that original detention of individual may be lawful, and thus will not support false imprisonment claim, does not mean that subsequent detention is also lawful and thus not actionable. **Sassali v. DeFauw, 297 Ill. App. 3d 50, 696 N.E.2d 1217 (2d Dist. 1998); Fulford v. O'Connor, 3 Ill.2d 490, 500–01, 121 N.E.2d 767 (1954); Weimann v. County of Kane, 150 Ill.App.3d 962, 968, 104 Ill.Dec. 110, 502 N.E.2d 373 (1986); see also Hyatt v. United States, 968 F.Supp. 96, 110 (E.D.N.Y.1997) (applying Illinois law to a false imprisonment claim).**

In addition, in the case at bar, the petition for commitment was never filed and therefore patient was never served. Involuntary commitment order had to be reversed, where petition for involuntary commitment was filed 48 hours after involuntary admission and hospitalization of person, rather than within the statutorily mandated 24 hours, and where record failed to indicate that committed person was served with copy of petition within 12 hours of admission as required by statute.   **Matter of Riviere, App. 3 Dist.1989, 132 Ill.Dec. 141, 183 Ill.App.3d 456, 539 N.E.2d 451.**   **Mental Health** 🔑 **38**;   **Mental Health** 🔑 **39**;   **Mental Health** 🔑 **45** 288.   Under involuntary commitment provisions of Mental Health Code, failure to timely file commitment petition after individual is taken into custody is error that cannot be waived, and if director of facility to which individual has been taken does not comply with requirement, he or she must either release individual, or initiate new involuntary commitment proceedings. **S.H.A. 405 ILCS 5/3–611. Sassali v. DeFauw, 297 Ill. App. 3d 50, 696 N.E.2d 1217 (2d Dist. 1998) 290.** False imprisonment does not necessarily depend on the legality of the arrest, and an unlawful detention following an arrest can itself be false imprisonment. **Hughes v. New York Cent. Sys., 20 Ill. App. 2d 224, 155 N.E.2d 809 (1st Dist. 1959) 289.** Individual who had been forcibly taken to hospital for initiation of involuntary commitment proceedings under Mental Health Code, but for whom hospital had not timely filed involuntary commitment petition, could plead false imprisonment claim for time between when 24-hour period for filing petition expired, and time when court issued order setting hearing date and authorizing sheriff to transport individual. **S.H.A. 405 ILCS 5/1–100 et seq. Sassali v. DeFauw, 297 Ill. App. 3d 50, 696 N.E.2d 1217**

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

**(2d Dist. 1998)**

This court has jurisdiction over the issue of false imprisonment due to the procedural violations committed as part of Plaintiffs petition for commitment. Trial court had subject matter jurisdiction over petitions for involuntary admission and involuntary administration of psychotropic medication, where petition set forth required allegations that patient was subject to involuntary admission to a mental health facility, was 18 years or older, and was in need of immediate hospitalization. S.H.A. ILCS 5/3–600. In re Megan G., 2015 IL App (2d) 140148, 48 N.E.3d 118. The court in *Megan* reasoned that if the three criteria specified were met, then it has jurisdiction in the matter. In the instant case, the Petition states that Plaintiff was subjected to involuntary admission, was over 18 at the time, and was need of immediate hospitalization. Therefore, the court should have jurisdiction on the issue of false imprisonment.

Regarding the 2020 discrimination allegation and sanctions, there is a substantial likelihood that plaintiff will prevail on those matters. Of course, if he proves his eavesdropping and disability discrimination claims, the allegations would become moot. As set forth in plaintiffs affidavit, he was harassed by Defendant [REDACTED] His version is corroborated by another student, Shen Peng, who stated that she encouraged plaintiff emotionally after he was subjected to disability harassment. Pursuant to the policies and procedures, an investigation should be done when a student has been (1) subjected to alleged harassment based on a protected class, and (b) objective evidence supports the harassment being based on a protected class. The university did not initiate an investigation with regards to Plaintiff's claims, Amanda DeSilva and Colleen Johnston simply decided that there wasn't enough evidence to warrant an investigation, despite the fact that Plaintiff had provided over 30 pages of information regarding his claims. With a proper investigation regarding Plaintiffs discrimination claims, any claim by the university as to Plaintiff's alleged discriminatory acts vanishes in thin air.

The Plaintiff's claim of Eavesdropping is without question. [REDACTED] made specific admission to recording both of the phone calls based on threat from perceived disability. The university provided Plaintiff the evidence in the form of two MP3 audio files which they attached the investigation report for the Plaintiff's hearing. If that is the case, then it stands to reason that the [REDACTED] and not the Plaintiff, should be on trial for expulsion. The

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

university cannot have it both ways. It cannot state that it wants to expel Plaintiff for his alleged discriminatory acts, while ignoring the blatant discrimination and eavesdropping which was inflicted upon him. If the university actually cared about discrimination, then a proper investigation into Plaintiffs claims, and not the bias musings of DeSilva and Johnston, would determine if, and when, a student could retain his place at the university.

Plaintiff states in his affidavit that only he, but not other students known to be making inappropriate comments on the group chat, has been subjected to student disciplinary action in any way. Assuming the correctness of that statement, plaintiff is being singled out for different treatment. Pursuant to the equal protection clause of the Fourteenth Amendment to the United States Constitution, "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." The equal protection clause mandates similar treatment of persons in similar situations. *Arceneaux v. Treen,* 671 F.2d 128, 131 (5th Cir. 1982). [T]he crucial question is whether the [university] treats similarly situated people unequally. *Id.* at 137 (Goldberg, specially concurring).

There can be no dispute as to the fact that Plaintiff, although similarly situated to other students, was treated differently. It now becomes a question as to whether the university's "action rationally furthers a legitimate state purpose." *San Antonio Independent School District v. Rodriquez,* 93 S.Ct. 1278, 1308 (1973). Obviously, there can be no legitimate state purpose to deviate from established policy to demand that plaintiff, and only plaintiff, be required to submit to student disciplinary proceedings.

Since plaintiff was never declared to be a marginal student, and his discrimination claims were not properly investigated, the university's policy of disciplining students who have allegedly violated Equity Policy not apply to him. Therefore, there is no basis for the university to impose a sanction on him. Further, respective to the investigation of competing discrimination claims, the university clearly treats Plaintiff differently from similarly situated students. Based on these important factors, plaintiff has a strong likelihood of success on the merits.

**B. *Plaintiff Faces A Substantial Threat of Irreparable Injury***

Defendants' decision is causing plaintiff irreparable harm for which there is no adequate remedy at law. Because NU expulsion decisions are permanent, there is a substantial risk that plaintiff will be unable to attend

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

school before the merits of this action are concluded and a permanent injunction is entered. The educational restrictions imposed by defendants are presently causing plaintiff psychological harm and substantially diminishing the quality of his life.

Irreparable harm is established any time a movant's First Amendment rights are violated. *Marcus v. Iowa Pub. Tele.,* 97 F.3d 1137, 1140-41 (8th Cir. 1996). The loss of First Amendment freedoms, for even a minimal period of time, unquestionably constitutes irreparable injury. *Elrod v. Burns,* 427 U.S. 347, 373 (1976) (plurality opinion). Based on the facts of the case, it is very likely that plaintiff will be able to prove that his First Amendment rights were violated when he was suspended.

Further, plaintiff received an expulsion and was not allowed to graduate notwithstanding the fact that he met all of the requirements for pursuing coursework. This constitutes irreparable injury, for it delayed plaintiff's fulfillment of his requirements for a degree. *See Phillips v. Marsh,* 687 F.2d 620, 622 (2d Cir. 1982); *Doe v. New York University,* 666 F.2d 761, 773 (2nd Cir. 1981); *Yusuf v. Vassar College,* 1992 U.S. Dist. LEXIS 13029, No. 92 Civ. 5462, 1992 WL 230143 at *1 (S.D.N.Y. Sep. 1, 1992)

The notion of irreparable harm in the circumstances of this case is firmly established through precedent. Here, Plaintiff's final semester has been disrupted by his emergency suspension and he is at risk of being unable to complete the final semester of [university] work, or having to repeat it. In *Doe v. Vassar College*, the district court noted that, although the Second Circuit has held that the harms that result in a delay in graduation can adequately be remedied by damages, "[w]hether an interruption in coursework is irreparable harm is a closer question, which the Second Circuit has not squarely addressed, and on which it appears that district courts have disagreed." 2019 WL 6222918, at *6, 2019 U.S. Dist. LEXIS 203418, at *16 (citing *Phillips v. Marsh*, 687 F.2d 620 (2d Cir. 1982) and collecting cases). The Court concludes that Plaintiff's allegations that he will lose the work he completed prior to his mid-semester suspension if he is unable to return is sufficient to show irreparable harm. *Compare Bhandari v. Trustees of Columbia Univ.*, No. 00-cv-1735, 2000 WL 310344, at *5, 2000 U.S. Dist. LEXIS 3720, at *15–16 (S.D.N.Y. Mar. 27, 2000) (finding irreparable harm where the plaintiff was suspended midway through the semester and would lose "the benefit of the work he has already performed this semester"), *with Vassar Coll.*,

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

2019 WL 6222918, at *6, 2019 U.S. Dist. LEXIS 203418, at *15 (finding no irreparable harm where plaintiff claimed suspension "for a single semester at the *beginning* of his senior year") (emphasis added). <u>Doe v. Rensselaer Polytechnic Inst.</u>, 120CV01359BKSCFH, 2020 WL 6544607, at *6 (N.D.N.Y. Nov. 6, 2020) The courts have reasoned that completion of coursework established irreparable harm necessary for a grant of preliminary injunction or temporary restraining order. In the instant case, the Plaintiff already completed 10-weeks of coursework prior to his late semester 2019 suspension, the conditions precedent for the establishment of irreparable harm required for a preliminary injunction have been achieved.

Succinctly stated, if plaintiff does not submit to blatant discrimination by the university, he faces additional sanctions, up to and including permanent expulsion from the university. If a temporary restraining order is not issued, the university will in all likelihood permanently expel plaintiff and make notations of the incident on his permanent record, resulting in a further disruption in his legal education. It is without dispute that the expulsion constitutes irreparable harm.

### C. *The Threatened Injury to Plaintiff Outweighs Any Harm To Defendants*

The threat of injury to plaintiff outweighs any harm to defendants. Placing plaintiff in a regular classroom poses no significant health or safety risk to himself, his classmates or his teachers. Permitting plaintiff to participate in classroom education will enhance the quality of his education as well as that of his fellow students.

Clearly, the balance of the equities tilts in favor of plaintiff. He has been pursuing a law degree at NU since 2018. He has pending litigation (20 OP 20532 and 20 DV 2080601) in which the allegations of retaliation from Dugo, Chin, and Lee play a prominent role. He has a pending legal action (20 CV 1772) in which the allegations of battery from 2019 have a prominent role. He is willing to work with university on an alternative resolution plan to expulsion, but he is not prepared to give up on his dream of legal education at university. If necessary, plaintiff is willing to defer his enrollment until next fall, but not to be expelled from the university. Since plaintiff is willing to make concessions to NU, an order prohibiting the university from expelling him until a judicial determination can be rendered imposes no substantial burden on the university.

With regards to    REDACTED    noting the quantity, severity, relative complexity, and maliciousness

FILED DATE: 1/11/2021 7:33 AM    2021CH00106

involved in her crimes the can be no telling what other things this person may be capable of, which poses a serious threat to the safety of the general community. This except taken from <u>Spinka v. Drake</u>, 14-CV-583-DRH-PMF, 2016 WL 1258460, at *4 (S.D. Ill. Mar. 31, 2016) illustrates the nature of these concerns, which have been shared by others in similar cases: "With regard to District 77, the plaintiff's second amended complaint alleges that District 77 had received complaints about defendant E.H.'s behavior toward fellow students and failed to prevent E.H.'s attack on the plaintiff, despite knowledge of the risks. The plaintiff argues that these allegations are sufficient to survive dismissal, citing *Doe ex rel. Ortega-Piron v. Chicago Board Of Education,* 213 Ill.2d 19, 289 Ill.Dec. 642, 820 N.E.2d 418, 420 (2004), as support. Spinka now argues that, as in *Doe*, the circumstances of the case made the assault foreseeable for District 77 such that it was willful and wanton in failing to intervene. However, the complaint in *Doe* revealed that the school board in that case had far more extensive knowledge of the assailant's deviant sexual history compared to the case at issue. In *Doe*, the plaintiff pled that the defendant knew the student assailant "had been declared a sexually aggressive child" and was "under a 'Protective Plan' requiring that he never be left unsupervised among other children." *Doe ex rel. Ortega-Piron v. Chicago Bd. Of Educ.*, 213 Ill.2d 19, 22, 289 Ill.Dec. 642, 820 N.E.2d 418, 420. <u>Spinka v. Drake</u>, 14-CV-583-DRH-PMF, 2016 WL 1258460, at *4 (S.D. Ill. Mar. 31, 2016) The argument about the foreseeability of future crimes committed by

REDACTED    should be weighed with the context of the information in this case as favorable factors supporting the notion the threat of injury to the Plaintiff outweighs the threat of harm to the defendants, which is non-existent from Plaintiff attending courses in his degree.

### D. *There Will Be No Disservice To The Public If Temporary Relief Is Granted*

Granting a temporary restraining order will serve the public interest. Defendants' irrational and unlawful conduct has caused confusion and unwarranted fear in a manner which damages the public health every day it is permitted to continue. In addition, the students in Northwestern University Community are being deprived of plaintiff's contribution to their educational experience and social development. Plaintiff is actually advancing the interest of the public, for the public has an interest in its colleges and university adhering to their internal rules and regulations. The public has a paramount interest in making certain that an individual is not deprived of

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

property which is his.

### E. *Plaintiff Has No Adequate Remedy At Law*

Plaintiff has cooperate with the university to the fullest extent. However, the university proceeded to initiate disciplinary action against him, claiming that he had not been discriminated against and expelling him. The university has demanded that he appeal the decision by January 4th, 2021. Plaintiff intends to do so, however without outside intervention the result will be the same. If not immediately restrained, the university will proceed to take further disciplinary action against plaintiff, which, in all likelihood, will result in his permanent expulsion from the university. This would result in a further delay in Plaintiff's education.

### REQUEST FOR EXPEDITED DISCOVERY

3.      The parties to the Dugo Petition are scheduled to appear for a hearing on January 6th, 2021. *See* Exhibit A (Dec. 16, 2020 Disposition Order).

5.      NU has received two subpoenas from Plaintiff in connection with the Dugo Petition (referred to collectively as "the Syed Subpoenas"). The first subpoena, attached as Exhibit B, was issued by the Clerk of Court and filed with the Court on December 1, 2020, with a return date of December 8, 2020. This subpoena seeks copies of Northwestern University Police Department report numbers 2019-0595 and 2020-0356.  *See* Ex. B. This subpoena indicates that the matters on which examination are requested are 20DV20806 and 20OP20532. *Id.* at pg. 2. It was served on December 1, 2020, via email and NU both accepted it and acknowledged its receipt. *See* Exhibit C.

6.      The second subpoena, attached as Exhibit D, is dated December 1, 2020, with a return date of December 9, 2020 and seeks the following: "All records of any kind, paper, electronic, or otherwise, which related in any, shape or form to: Fahad Syed or Fahad Bilal Syed or Fahad B Syed (D/O/B: 8/28/1989). Includes Admission Records and Northwestern Police Department Records." This second subpoena was issued by the Clerk of Court and filed with the Court on December 1, 2020, with a return date of December 9, 2020. *See* Ex. D. This subpoena indicates that the matters on which examination are requested are 20DV20806 and 20OP20532. *Id.*

FILED DATE: 1/11/2021 7:33 AM    2021CH00106

at pg. 2. It was served on December 3, 2020, via email and NU both accepted it and acknowledged its receipt.  *See* Exhibit E.

7.      On December 8, 2020, at 4:47 PM Scott Warner filed a motion to quash the Syed Subpoenas with the Clerk of the Circuit Court of Cook County, Chicago, Illinois, filing for an Appearance on behalf of Third-Party Northwestern University for case 20 OP 20532.  *See* Exhibit F.

8.      On December 9, 2020, at 9:16 AM Defendant filed a motion pursuant to Ill. Sup. Ct. Rule 214 compelling NU to disclose the content of the requests for information contained in the Syed Subpoenas with IRIS Y. MARTINEZ CIRCUIT CLERK COOK COUNTY, IL for case 2020OP20532. *See* Exhibit G.

9.      As an initial matter, both subpoenas were properly issued and should therefore be enforced. **The clerk of any court in which an action is pending shall, from time to time, issue subpoenas for those witnesses and to those counties in the State *as may be required by either party*.** 735 ILCS 5/2-1101 (emphasis supplied). As the Defendant is a party to case 2020OP20532, he should be granted the subpoenas. **For good cause shown**, the court on motion may quash or modify any subpoena or, in the case of a subpoena duces tecum, condition the denial of the motion upon payment in advance by the person in whose behalf the subpoena is issued of the reasonable expense of producing any item therein specified.  *Id.* (emphasis supplied.) NU has not shown good cause, and indeed is motioning to quash Defendant's subpoena's as part of an ongoing pattern of harassment and intimidation by NU.

10.      Both subpoenas should be enforced for reasons beyond procedural correctness.  The Defendant notes that ensuring proper issuance of any subpoenas from Syed in this matter is an absolute necessity given the persistent, threatening, and harassing nature of Dugo's conduct that led Defendant to seek a Stalking No Contact Order, and her similar persistent, threatening, and harassing behaviors towards members of Defendant's family and therapist. Indeed, the Defendant views the subpoenas as part of an ongoing effort to hold the University's employees legally accountable for negligently failing to do their doing their jobs, including addressing NU's longstanding pattern of disparate discriminatory treatment of Defendant, in addition to NU deliberately and maliciously retaliating against Defendant for reporting his concerns.

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

11.     An e-mail dated November 4, 2020 from the Defendant to NU's Behavioral Consultation Team, attached as Exhibit H, illustrates just some of Dugo's recent misconduct in this regard. Courts are empowered to limit discovery to prevent abuse.  *See* Ill. S. Ct. R. 201(c)(1) ("The court may at any time on its own initiative, or on motion of any party or witness, make a protective order as justice requires, denying, limiting, conditioning, or regulating discovery to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or oppression."). In sum, Dugo and NU should not be permitted to use the legal process – particularly an oppressive motion to quash the legitimate subpoenas Defendant needs in order to defend himself in two separate legal cases – to perpetuate their misconduct and to further harass and threaten the Plaintiff and his family.

12.     Fundamentally, both of the Syed Subpoenas should be enforced because they seek information from the University that is relevant to the subject matter of cases 20DV20806, 20OP20532. They also apply to case 2020CH2546 and 20CV1772. *See* Exhibit I. A party may obtain discovery regarding "any matter relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking disclosure." Ill. S. Ct. R. 201(b)(1).

13.     With respect to the first subpoena, both of the police reports requested in that subpoena are relevant to the Dugo Petition. *See* Ex. B.  Report number 2019-0595 relates to an incident in the fall of 2019 that was referred to in the Dugo Petition as the reason Defendant was on disciplinary probation. This report relates to proving Defendants innocence of the unfounded allegation in the Dugo Petition that he "was on probation for physically assaulting another student." That report lists REDACTED as a witness to an alleged act of battery and is directly contradicted by an interview which REDACTED gave to NU during which he explicitly admitted to not actually witnessing the alleged act named in the report. Defendant notes that NU was repeatedly made fully aware of this witness discrepancy and failed to investigate or action upon in in any way, despite the incident directly resulting the Defendants illegal involuntary commitment to Northwestern Memorial Hospital from November 1-8th, 2019. *See* Exhibit J.

14.     The other police report, number 2020-0356, focuses on a report that Plaintiff made in October 2020 about another student. Specifically, the police report is about a transgender student who he never met before

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

or had any kind of relationship with who recorded two of her telephone conversations with him without his consent. The telephone conversations in question are the reason Dugo placed Defendant on interim suspension, and are directly relevant to the following allegation in the petition: "I had to issue him an interim suspension for threatening a fellow law student w/ physical violence." Dugo reported that Defendant threatened this other student on said recordings, and the student shared these recordings with Ms. Dugo. However, the report contains the details of the actual events for which Dugo suspended Defendant. Therefore, it is relevant to defense of the Dugo Petition.

15. As demonstrated above, ALL of the information sought in the Syed Subpoenas is relevant to the Plaintiff's defense in cases 20DV20806, 20OP20532, 20CV1772. Indeed, the Motion to Quast appears to be part of an ongoing pattern of conduct to harass and threaten the Defendant and his family and mental health provider. NU should not be permitted to use the legal process to perpetuate this illegal conduct.

## CONCLUSION

There is a strong likelihood of success on the merits by plaintiff, he will sustain irreparable injury if a temporary restraining order is not issued; the balance of the equities is in his favor; no disservice to the public will result in the granting of the temporary restraining order; and plaintiff has no adequate remedy at law. THEREFORE, plaintiff requests that this court issue a Temporary Restraining Order to protect the plaintiff's rights.

## PRAYER FOR RELIEF

FOR THESE REASONS, Plaintiff respectfully requests that the Court enter a Temporary Restraining Order:

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

227. Restraining and enjoining Defendants Northwestern University ("NU") from Expelling Plaintiff and Compelling Defendants NU to place Plaintiff in regular class at NU Law School or find some suitable alternative learning arrangement, pending the disposition and outcome of his claims.

228. Allowing the Plaintiff to commence discovery immediately on the following schedule: NU should immediately surrender all records and/or communications regarding Plaintiff, Fahad B. Syed, including NUPD Reports 2019-0595 and 2020-0356, to Plaintiff's email address at syed.216@gmail.com.

229. Setting Plaintiff's Motion for Preliminary Injunction for hearing on a date certain; and

230. Granting such further relief as the Court deems just and proper.

Dated: December 29th 2020                    Respectfully submitted,

By: _____

Fahad Syed

Pro Se

244 E Pearson St. Apt. 711

Chicago, IL 60611

Tel: 773-564-0325

Syed.216@gmail.com

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

## VERIFICATION BY CERTIFICATION PURSUANT TO SECTION 1-109

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief, and as to such matters the undersigned certifies as aforesaid that [he/she] verily believes the same to be true.

_____

Fahad Syed                                   **1/11/21**

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

## ORDER TO SHOW CAUSE FOR TEMPORARY RESTRAINING ORDER

Upon (i) the Affidavit of Fahad Syed sworn to the 11th of January, 2021, and the exhibits annexed thereto, and (ii) Plaintiff's Memorandum of Law in Support of its MOTION FOR TEMPORARY RESTRAINING ORDER, it is hereby

ORDERED, that the above named defendant[s] show cause before this Court, at Room 802, 50 West Washington Street Chicago, IL 60602 on _____, _____ at _____ a.m./p.m. or as soon thereafter as counsel may be heard, why an order should not be issued pursuant to 735 ILCS 5/11-101 of the Illinois Code of Civil Procedure enjoining the defendant[s] during the pendency of this action from EXPULSION OF FAHAD B. SYED FROM NORTHWESTERN UNIVERSITY LAW SCHOOL; and it is further

ORDERED that, sufficient reason having been shown pending the hearing of the plaintiff's application for a preliminary injunction, but in no event beyond TEN DAYS days from the entry of this order, unless extended by the Court, the defendant[s] are temporarily restrained and enjoined from taking any disciplinary action, including but not limited to expulsion from Northwestern University, against plaintiff, FAHAD B. SYED, resulting from his recorded phone conversation pending final disposition of plaintiffs' claim that defendants, and others, violated his rights guaranteed by the Constitution and laws of the United States of American and the state of Illinois, and his false imprisonment, retaliation and eavesdropping claims; and it is further

ORDERED, that security in the amount of $100 be posted by the plaintiff[s] prior to ____January_15th_____, _____2021_____ at _____5 _____ **p.m.**; and it is further

ORDERED, that the Defendants shall place Fahad Syed in regular class at Northwestern University Law School or find a suitable alternative learning arrangement and that NORTHWESTERN UNIVERSITY SHOULD SURRENDER ALL RECORDS OR COMMUNICATIONS OF ANY KIND REGARDING FAHAD SYED BEFORE 1/4/21; and it is further

ORDERED, that personal service of a copy of this order upon the defendant[s] or his counsel on or before

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

_____January 15th_____, _____2021_____ at _____9_____ at p.m. shall be deemed good and sufficient service thereof; and it is further ORDERED, that opposing papers, if any, shall be served by EMAIL upon FAHAD B. SYED, [syed.216@gmail.com], received to his email on or before ___January 15th_____, _____2021_____ at _____9_____ a.m.

DATED:           [DATE]

              [CITY], [STATE]                          _____

                                           United States District Judge

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

# Exhibit A

Disposition Order/Stalking No Contact Order        (Rev. 12/16/14) CCDV N009

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## DOMESTIC VIOLENCE DIVISION

Mona Dugo

_____

Petitioner

v.

Fahad Syed

_____

Respondent

Any Stalking No Contact Order which would expire on a court holiday shall instead expire at the close of the next court business day. (Stalking No Contact Order Act, Section 105(d))

Case No. 20 OP 20532

Leads No. _____

Respondent's D.O.B. _____

**DISPOSITION ORDER**
Stalking No Contact Order

☒ EMERGENCY    ☐ PLENARY

☒ INDEPENDENT PETITION
☐ CRIMINAL PROCEEDING
☐ DELINQUENCY PETITION

### THE COURT FINDS THAT:

☐ The averments presented are insufficient to grant relief requested.

☒ An (Emergency/Plenary) Stalking No Contact Order was issued on  11/5/20

☐ An (Emergency/Plenary) Stalking No Contact Order was previously extended on  11/24/20

### THE COURT HAVING JURISDICTION OF THE SUBJECT MATTER IT IS HEREBY ORDERED THAT:

☐ An (Emergency/Plenary) Stalking No Contact Order is **DENIED.**

☒ An (Emergency/Plenary) Stalking No Contact Order is extended to:  1/6/21  at 5:00pm a.m./p.m.

☒ A hearing on the Stalking No Contact Order is set for: Status 1/6/21  at 9:30 a.m./p.m.

     Court located at: 555 W. Harrison St. Chicago, IL    Calendar 90

     (Address)                        (Room No.)

☐ A hearing on the Stalking No Contact Order was held and the Stalking No Contact Order is **DENIED.**

☐ The Stalking No Contact Order is terminated.  Respondent's motion for substitution of judge is granted. Case transferred to the Domestic Violence Division, Presiding Judge's Office for reassignment

☐ The Stalking No Contact Order is vacated.

☐ The Stalking No Contact Order is modified as follows:

_____

_____

☐ Alias Summons to issue.

☐ Service by publication.

☐ Case Number _____ is dismissed.

☐ Atty. No.: _____    ☐ Pro se 99500

Name: Petitioner Attorney's email: MHickey@schiffhardin.com

Atty. for: Respondent's email: syed.216@gmail.com

Address: Third-Party (Northwestern University) Attorney email: scott.warner@huschblackwell.com

City/State/Zip Code: _____

Telephone: _____

**ENTERED**
Judge Stephanie Saltouros-2161

DEC 16 2020

IRIS Y. MARTINEZ
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

The date of 1/13/21 in District 2 is stricken.

I hereby certify that the document to which this certification is affixed is a true copy.

Date 12-16-20's Iris Martinez

Dorothy Brown
Clerk of the Circuit Court
of Cook County, IL

ENTERED:

Dated: 12/16/20

Judge                    #2161

Judge's No.

### IRIS MARTINEZ, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

FILED DATE: 1/11/2021 7:33 AM  2021CH00106

FILED DATE: 1/11/2021 7:33 AM 2021CH00106

Transfer Order Substitution of Judge/Recusal                   (10/31/11) CCDV N003

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## DOMESTIC VIOLENCE DIVISION

PEOPLE OF THE STATE OF ILLINOIS

         or

**Mona Dugo**

_____

                 Petitioner

         **v.**

**Fahad Syed**

_____

            Defendant/Respondent

No.   20 OP 20532

### TRANSFER ORDER SUBSTITUTION OF JUDGE/RECUSAL

This case coming on to be heard on ☐ petitioner's ☒ respondent's ☐ state's ☐ court's motion

☒ **To transfer the above entitled to another courtroom due to:**    Petitioner Attorney's email: MHickey@schiffhardin.com
                                           Respondent's email: syed.216@gmail.com

   ☒ **Substitution of Judge**      ☐ **Substitution of Judge for Cause**

   ☐ **Recusal**                          Third-Party (Northwestern University) Attorney email:
                                       scott.warner@huschblackwell.com

☒ **The cause is hereby transferred to the Presiding Judge of the Domestic Violence Division for consideration of the transfer of this case.**

**OR**

☐ **This cause is hereby transferred to**_____**, Presiding Judge, Municipal**

   **District**_____**for consideration of the transfer of this case.**

**ENTERED:**

Dated:   12/16/20 _____, _____              #2161

                                     Judge                            Judge's No.

### ORDER

IT HEREBY ORDERED that the motion is granted and this case is hereby transferred to

Courtroom_____ Calendar_____ Date_____, _____ Time_____ a.m./p.m.

**ENTERED:**

Dated:_____, _____

                                Presiding Judge                  Judge's No.

ENTERED
Judge Stephanie Saltouros 2161
DEC 16 2020
IRIS Y. MARTINEZ
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

### IRIS MARTINEZ, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

1) 8/23/20 11:44am

I began my interaction with Fahad Syed on 8/23/20 at 11:44am. In my capacity as interim dean of students for Northwest University I had to issue him an interi suspension for threatening a fellow law student w/ physical violence. Mr. Syed was on probation for physically assaultin another student.

Between 8/23 - 11/2/2020 Mr. Syed has sent me more than 150 unanswered text messages with increasingly aggressive language.

2) 10-12-20 → 10-19-20

Mr. Syed sends approximately 100 text messages to me. I responded once & told him to stop. The tone is increasingly hostile & aggressive. He accuses me of monitoring his facebook page (I have not). He sends me text from the Quaran which translated says that sinners will die in a fire, he says he will "ruin me", he makes a sexual reference implying I give our deputy chief of police blow jobs & tells me to "suck his dick." There is a lot of foul & aggressive language.

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

3) 11-2-2020   10:28pm
mr. Syed calls me & accuses me of
calling his sister, yells at me for
4 minutes until I hang up on him
& block his phone number. at northwest
we have contracted with a threat
assessment group (Sigma threat) to
help evaluate his threat level. They
talked to his sister, who is a police
officer.

4) He continues to send me harassing
email through my northwestern
email address.

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

# Exhibit B

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
12/1/2020 12:25 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2020OP20532

FILED DATE: 1/11/2021 7:33 AM   2021CH00106
FILED DATE: 12/1/2020 12:25 PM   2020OP20532

**Subpoena in a Civil Matter (For Testimony and/or Documents)**          **(06/05/20) CCG 0106 A**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Fahad Syed
_____
                              Plaintiff/Petitioner

                    v.                                    Case No. ___20OP20532___

Mona Dugo
_____
                              Defendant/Respondent

### SUBPOENA IN A CIVIL MATTER
### (For Testimony and/or Documents)

To:   Northwestern University Police Department
      211 East Superior Street
      Chicago, IL 60611

1. ☐   YOU ARE COMMANDED to appear to give your testimony before the

   Honorable _____ in Room _____ ,

   _____ , Illinois on _____

   at _____   ○ AM   ○ PM

2. ☐   YOU ARE COMMANDED to appear and give your deposition testimony before a Notary Public

   at: _____ in Room _____ ,

   _____ , Illinois on _____

   at _____   ○ AM   ○ PM

3. YOU ARE COMMANDED to mail the following documents in your possession or control
   Fahad Syed
   to _____ at   syed.216@gmail.com _____ ,

   on or before ___12/8/20___ at ___9:00___   ● AM   ○ PM
   (THIS IS FOR RECORDS ONLY.  THERE WILL BE NO ORAL INTERROGATORIES.):

   Report JD 2019-0595   (Police Reports)
   Report JD 2020-0356

   ☐   Description continued on attached page(s).

**Your failure to respond to this subpoena will subject you to punishment for contempt of this Court.**

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**
Page 1 of 2

**Subpoena in a Civil Matter (For Testimony and/or Documents)**     **(06/05/20) CCG 0106 B**

Notice to Deponent:

1. ☑  The deponent is a public or private corporation, partnership, association, or governmental agency. The matter(s) on which examination is requested are as follows:
   20DV20806
   20OP20532
   _____

   ☐   Description continued on attached page(s).
      (A nonparty organization has a duty to designate one or more officers, directors, or managing agents, or other persons to testify on its behalf, and may set forth, for each person designated, the matters on which that person will testify. Ill. Sup. Ct. Rule 206.)

2. ☐  The deponent's testimony will be recorded by use of an audio-visual recording device, operated

   by _____ .
      (Name of Recording Device Operator)

3. No discovery deposition of any party or witnesses shall exceed three hours regardless of the number of parties involved in the case, except by stipulation of the parties or by order upon showing that good cause warrants a lengthier examination. Ill. Sup. Ct. Rule 206(d).

○ Atty. No.: _____          12/1/2020 12:25 PM IRIS Y. MARTINEZ
◉ Pro Se 99500
Name: Fahad Syed _____
Atty. for (if applicable):

_____     Issued by: /s/_____
                                                      Signature
Address: 244 E Pearson St. Apt. 711      Text       ○ Attorney   ○ Clerk of Court
City: Chicago _____            Date: 12/1/20 _____
State: IL ___ Zip: 60611 ___
Telephone: 773-564-0325 _____
Primary Email: syed.216@gmail.com _____

☐  I served this subpoena by mailing a copy, as required by Ill. Sup. Ct. Rules 11, 12 and 204(a) (2),

   to _____ by certified mail, return receipt requested

   (Receipt # _____) on _____ . I paid the witness $ _____ for
   witness and mileage fees.

☐  I served this subpoena by handing a copy to _____

   on _____ . I paid the witness $ _____ for witness and mileage fees.

/s/ _____     _____
      (Signature of Server)                        (Print Name)

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**

**cookcountyclerkofcourt.org**

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

# Exhibit C

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

**From:** **Threat Assessment** threatassessment@northwestern.edu
**Subject:** RE: Subpoena
**Date:** December 3, 2020 at 1:28 PM
**To:** Fahad Syed fahad-syed@law.northwestern.edu

Mr. Syed, your email and attachment have been received.

**From:** Fahad Syed <fahad-syed@law.northwestern.edu>
**Sent:** Thursday, December 3, 2020 10:49 AM
**To:** Threat Assessment <threatassessment@northwestern.edu>
**Subject:** Subpoena

Hi,

I have another subpoena, I think I'm just supposed to email this to you?

Thanks,

Fahad Syed

> On Dec 2, 2020, at 9:52 PM, Threat Assessment
> <threatassessment@northwestern.edu> wrote:
>
> Mr. Syed, your email and attachment have been received.
>
> **From:** Fahad Syed <fahad-syed@law.northwestern.edu>
> **Sent:** Tuesday, December 1, 2020 4:02 PM
> **To:** Threat Assessment <threatassessment@northwestern.edu>
> **Subject:** Re: Office of Equity-Request for Interview.11.30.20
>
> Hi,
>
> Do I just give this to you?
>
> Thanks,
>
> Fahad Syed

> On Dec 1, 2020, at 2:09 PM, Threat Assessment
> <threatassessment@northwestern.edu> wrote:
>
> Thank you Mr. Syed for the response.  Please review the
> attachment for updated information.
>
> **From:** Fahad Syed <fahad-syed@law.northwestern.edu>

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

# Exhibit D

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
12/1/2020 5:27 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2020OP20532

*(left margin, rotated)* FILED DATE: 1/11/2021 7:33 AM 2021CH00106   FILED DATE: 12/1/2020 5:27 PM 2020OP20532

**Subpoena in a Civil Matter (For Testimony and/or Documents)**          **(06/05/20) CCG 0106 A**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Fahad Syed
_____
                                    Plaintiff/Petitioner

                    v.                                    Case No.  20OP20532

Mona Dugo
_____
                                    Defendant/Respondent

### SUBPOENA IN A CIVIL MATTER
### (For Testimony and/or Documents)

To:      Northwestern University
         633 Clark Street
         Evanston, IL 60208

1.  ☐   YOU ARE COMMANDED to appear to give your testimony before the

    Honorable _____ in Room _____ ,

    _____ , Illinois on _____

    at _____   ○ AM   ○ PM

2.  ☐   YOU ARE COMMANDED to appear and give your deposition testimony before a Notary Public

    at: _____ in Room _____ ,

    _____ , Illinois on _____

    at _____   ○ AM   ○ PM

3.      YOU ARE COMMANDED to mail the following documents in your possession or control

    to   Fahad Syed _____ at   syed.216@gmail.com _____ ,

    on or before ____12/9/20____ at ____9:00____  ◉ AM   ○ PM

    (THIS IS FOR RECORDS ONLY.  THERE WILL BE NO ORAL INTERROGATORIES.):
      All records of any kind, paper, electronic, or otherwise, which related in any, shape or form to:
      Fahad Syed or Fahad Bilal Syed or Fahad B Syed (D/O/B: 8/28/1989). Includes Admission
      Records and Northwestern Police Department Records.

    ☐   Description continued on attached page(s).

**Your failure to respond to this subpoena will subject you to punishment for contempt of this Court.**

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

**Subpoena in a Civil Matter (For Testimony and/or Documents)**      **(06/05/20) CCG 0106 B**

FILED DATE: 1/11/2021 7:33 AM  2021CH00106
FILED DATE: 12/1/2020 5:27 PM  2020OP20532

Notice to Deponent:

1. ☑   The deponent is a public or private corporation, partnership, association, or governmental agency. The matter(s) on which examination is requested are as follows:

   20DV20806

   20OP20532

   _____

   ☐   Description continued on attached page(s).

   (A nonparty organization has a duty to designate one or more officers, directors, or managing agents, or other persons to testify on its behalf, and may set forth, for each person designated, the matters on which that person will testify. Ill. Sup. Ct. Rule 206.)

2. ☐   The deponent's testimony will be recorded by use of an audio-visual recording device, operated

   by _____ .

        (Name of Recording Device Operator)

3. No discovery deposition of any party or witnesses shall exceed three hours regardless of the number of parties involved in the case, except by stipulation of the parties or by order upon showing that good cause warrants a lengthier examination. Ill. Sup. Ct. Rule 206(d).

○ Atty. No.: _____

◉ Pro Se 99500

Name:   Fahad Syed
_____

Atty. for (if applicable):

_____

Address:   244 E Pearson St. Apt. 711
_____

City:   Chicago
_____

State:   IL    Zip:   60611

Telephone:   773-564-0325
_____

Primary Email:   syed.216@gmail.com
_____

Issued by: /s/_____

Text           Signature

     ○ Attorney   ○ Clerk of Court

Date:   12/1/20

☐   I served this subpoena by mailing a copy, as required by Ill. Sup. Ct. Rules 11, 12 and 204(a) (2),

to _____ by certified mail, return receipt requested

(Receipt # _____) on _____ . I paid the witness $ _____ for witness and mileage fees.

☐   I served this subpoena by handing a copy to _____

on _____ . I paid the witness $ _____ for witness and mileage fees.

/s/ _____    _____

      (Signature of Server)                       (Print Name)

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**

**cookcountyclerkofcourt.org**

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

# Exhibit E

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

**From:** **Threat Assessment** threatassessment@northwestern.edu
**Subject:** RE: Subpoena
**Date:** December 3, 2020 at 1:28 PM
**To:** Fahad Syed fahad-syed@law.northwestern.edu

Mr. Syed, your email and attachment have been received.

**From:** Fahad Syed <fahad-syed@law.northwestern.edu>
**Sent:** Thursday, December 3, 2020 10:49 AM
**To:** Threat Assessment <threatassessment@northwestern.edu>
**Subject:** Subpoena

Hi,

I have another subpoena, I think I'm just supposed to email this to you?

Thanks,

Fahad Syed

> On Dec 2, 2020, at 9:52 PM, Threat Assessment
> <threatassessment@northwestern.edu> wrote:
>
> Mr. Syed, your email and attachment have been received.
>
> **From:** Fahad Syed <fahad-syed@law.northwestern.edu>
> **Sent:** Tuesday, December 1, 2020 4:02 PM
> **To:** Threat Assessment <threatassessment@northwestern.edu>
> **Subject:** Re: Office of Equity-Request for Interview.11.30.20
>
> Hi,
>
> Do I just give this to you?
>
> Thanks,
>
> Fahad Syed

> On Dec 1, 2020, at 2:09 PM, Threat Assessment
> <threatassessment@northwestern.edu> wrote:
>
> Thank you Mr. Syed for the response. Please review the
> attachment for updated information.
>
> **From:** Fahad Syed <fahad-syed@law.northwestern.edu>

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

# Exhibit F

FILED DATE: 1/11/2021 7:33 AM  2021CH00106
FILED DATE: 12/8/2020 5:01 PM  2020OP78277

FILED
12/8/2020 5:01 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2020OP78277

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**SECOND MUNICIPAL DISTRICT**

| | | |
|---|---|---|
| FAHAD SYED, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 20 OP 78277 |
| | ) | |
| MONA DUGO, | ) | Hon. Stephanie D. Saltouros |
| | ) | |
| Defendants. | ) | |

**NORTHWESTERN UNIVERSITY'S MOTION TO QUASH SUBPOENAS**
**FROM PETITIONER FAHAD SYED**

Third-party Northwestern University ("University"), by and through its undersigned counsel, hereby moves to quash the two subpoenas it has received from Petitioner Fahad Syed and requests that the Court preclude Syed from issuing any additional subpoenas or other requests for discovery directed at the University or its employees without leave of court. In support of this Motion, the University states as follows:

1. On November 5, 2020, the Respondent in this matter, the University's Dean of Students Mona Dugo, filed a Petition for Stalking No Contact Order directed at University student Fahad Syed, the Petitioner in this matter, in Case No. 20 OP 20532 ("Dugo Petition"). A copy of the Dugo Petition is attached as Exhibit A. The Dugo Petition details just some of the hundreds of disturbing text messages and other communications that Syed has directed at Ms. Dugo, causing her to fear for her own safety and that of her family. *Id.* at pp. 8-9.

2. The Dugo Petition resulted in the Court issuing an Emergency Stalking No Contact Order ("Emergency Order") directed at Syed on November 5, 2020. *See* Nov. 5, 2020 Stalking No Contact Order, attached as Exhibit B.

3. On November 17, 2020, Syed violated the Emergency Order by contacting Ms. Dugo.

HB: 4833-2663-1124.1

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

# Exhibit G

Return Date: No return date scheduled
Hearing Date: No hearing scheduled (this form replaces CCMD-39)    (12/01/20) CCG 0702
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

FILED
12/9/2020 9:16 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2020OP20532

Mona Dugo
_____
                         **Plaintiff(s)**

                v.                              No. ___20OP20532_____

Fahad Syed
_____
                         **Defendant(s)**

**TO:** ___The Honorable Stephanie D. Saltouros #2161_____

**MOTION BY** _Defendant_____ **FOR** _Compel Discovery_____

Motion to Compel Discovery

Defendant, Fahad Syed, Pro Se, moves the court to enter an order pursuant to Ill. Sup. Ct. Rule 214 compelling, Northwestern University, a body politic and corporate, one of the 3rd parties in the above-entitled cause to answer Defendants request for production of documents served on 12/1/20 and 12/3/20, filed with the clerk on 12/1/20, a true and correct copy of which is attached to this motion. In support of this motion, defendant certifies:

1. The attached request for production of documents was served in accordance with the certificate of service.

2. Following 8 days, Defendant failed to produce the documents or to make discovery otherwise.

3. The documents are relevant and material to Defendants cause of action in case 20DV20806 and 20OP20532. Defendant will be irreparably injured if they are not produced by plaintiff.

For these reasons, Plaintiff moves the court for an order compelling Defendant to produce the documents in the attached request for production pursuant to Ill. Sup. Ct. Rule 214.

**I (We) do hereby certify that a copy of this instrument was served upon all parties who have appeared and have not previously been found by the Court to be in default for failure to plead.**

**Dated:** _12/9/20_____, _____ /s/_____
                                                                    **Attorney Certification**

**Atty. No.:** _99500_____
**Name:** _Fahad Syed_____
**Atty. for:** _Self_____
**Address:** _244 E Pearson St. Apt. 711_____
**City/State/Zip:** _Chicago, IL, 60611_____
**Telephone:** _773-564-0325_____

**IRIS Y. MARTINEZ, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

FILED DATE: 1/11/2021 7:33 AM 2021CH00106
FILED DATE: 12/9/2020 9:16 AM 2020OP20532

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

# Exhibit H

FILED DATE: 1/11/2021 7:33 AM    2021CH00106

**From:** **Fahad Syed** fahad-syed@law.northwestern.edu
**Subject:** Re: Family Contact is OFF BOUNDS
**Date:** November 4, 2020 at 8:48 AM
**To:** Office of Equity equity@northwestern.edu, Mona Dugo Mona.Dugo@northwestern.edu
**Cc:** Puja Singh Patel puja-patel@law.northwestern.edu, Emily Kadens kadens@law.northwestern.edu

Hello,

I asked this question yesterday and haven't gotten a response.

I don't think it takes that long to figure out which one of you has been contacting my sister in express violation of my instructions to Mona Dugo not to contact anyone I know, after she illegally contacted my therapist to slander me. I want an answer to this question, and believe me, just like the audio tape, I am not to stop asking until someone gives me the information.

Thanks,

Fahad Syed

> On Nov 3, 2020, at 7:10 AM, Fahad Syed <fahad-syed@law.northwestern.edu> wrote:
>
> Hello,
>
> I understand that the university has been contacting my sister without my knowledge or consent. Do you have an explanation for this?<Screen Shot 2020-10-31 at 7.59.44 PM.png><Screen Shot 2020-10-31 at 8.07.26 PM.png>
>
> Thanks,
>
> Fahad Syed

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

# Exhibit I

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

Northwestern

September 24, 2020

**Sent Via Electronic Mail**

Ms. Venus M. Brown
Illinois Department of Human Rights
Fair Housing Division
Venus.Brown@illinois.gov

  *Re: IDHR Charge No. 2020CH2546 – Fahad Syed*

Dear Ms. Brown,

   Northwestern University respectfully submits this letter and the attached documents in response to the IDHR's request for information concerning the above-referenced charge.

   Mr. Syed is a current student at Northwestern University's Pritzker School of Law.  Mr. Syed alleges that Northwestern University discriminated against him on the basis of religion (Islam) and national origin (Pakistani) by requesting that he vacate University housing in November 2019 within five days and "without any investigation . . . or wrongdoing on Complainant's part."  Mr. Syed further alleges "that non-Pakistani students whose religion is not Islam have not been given a similar notice without prior investigation of complaints."  Both allegations are false.

   Mr. Syed was interim suspended from the University on November 6, 2019 because it was alleged that he became incoherent and struck a student in the mouth with his fist at a University event.  *See* **11.06.19 letter to F. Syed, attached hereto.**  Northwestern University's Student Handbook states that students may be placed on interim suspension while the University investigates a matter when such action is necessary for reasons related to the safety and well-being of the University community.  *See* **Northwestern University Student Handbook, pages 110-11**.  The Handbook specifically states that students may be interim suspended for engaging in "[a]ction or threat of action that endangers or threatens to endanger the health, safety, or well-being of any person."

   As set forth in the handbook, students placed on interim suspension must "remove themselves immediately from the residence halls and/or fraternity or sorority residences, will not be permitted to attend class, and will be excluded from University property and University events." Mr. Syed's

1

**CONFIDENTIAL:** Northwestern University's Response to IDHR Charge No. 2020CH2546

FILED DATE: 1/11/2021 7:33 AM 2021CH00106

allegation that other students who are interim suspended do not face the same consequence is absolutely false; all students placed on interim suspension must follow the same policy.

If anything, Mr. Syed was treated more favorably than similarly situated students placed on interim suspension. Indeed, Mr. Syed's allegation that he was forced to leave the property in five days is not true. Todd Adams (then Associate Vice President and Dean of Students) told Mr. Syed he would "be given a period of time to find alternative housing," and individuals in the law school also offered to help Mr. Syed with housing concerns. *See* **11.08.19 email from T. Adams, attached hereto**. Moreover, as noted on the Charge, Mr. Syed's current address appears to be 244 East Pearson Street, Apartment 711, Chicago, Illinois 60611. This is the address Mr. Syed was supposed to vacate in November 2019. Accordingly, it does not appear that he actually left the property.

Following the process in the Handbook, the University conducted a full investigation into Mr. Syed's conduct and notified him of the outcome of the related administrative hearing on December 19, 2019. The University concluded Mr. Syed struck a student in the face and acted in a way that was combative toward the police officers who responded to the incident. *See* **12.19.19 letter from C. DePilla, attached hereto.**[1] Mr. Syed was then suspended from the University for one semester.

Accordingly, far from discriminating against Mr. Syed, the University followed its policy designed to protect the health, safety, and well-being of the University community in the same way it does when interim suspending any student.

In response to questions set forth in IDHR's July 28, 2020 letter, Northwestern offers the following additional information:

- Northwestern University does not currently own or manage this building.
- Northwestern University does not know whether the owners of the building receive federal financial assistance from the U.S. Department of Housing and Urban Development.
- The following individual has knowledge of the discipline imposed against Mr. Syed after he struck another student: Lucas Christain, Assistant Dean and Director of Student Conduct. If IDHR would like to schedule an interview with Mr. Christain, please let me know and I will coordinate the meeting.

Sincerely,

---

[1] Mr. Syed returned from his suspension in fall 2020. He was once again interim suspended on August 23, 2020 based on allegations that he violated the terms of his disciplinary probation, threatened to retaliate against a student, and verbally harassed and threatened another student on the basis of a protected class. Notably, it appears Mr. Syed is still living at 244 East Pearson St. *See* **8.23.20 letter from Julie Payne-Kirchmeier, attached hereto.**

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

**Certificate of Service**

The undersigned certifies that a copy of the foregoing response to IDHR Charge No. 2020CH2546 was served upon:

Fahad Syed
244 East Pearson Street
Apt. 711
Chicago, Illinois 60611

By depositing the same in the United States Mail in Evanston, Illinois on the 25th day of September, 2020.



Peter J. Birnbaum
Chief Justice

STATE OF ILLINOIS

# COURT OF CLAIMS

630 SOUTH COLLEGE
SPRINGFIELD, ILLINOIS 62756

———

217/782-7101

Jesse White
Secretary of State
and Ex Officio Clerk
of The Court of Claims

Erica L. Katava
Deputy Clerk

NOVEMBER 24, 2020

SYED, FAHAD
244 E PEARSON AVE APT 711
CHICAGO  IL  60611-0000

RE: 20CV1772 - SYED, FAHAD

      You are hereby notified that the above entitled claim has been
assigned to a commissioner.  The commissioner is:

            SERPICO, RON
            1807 N BROADWAY
            MELROSE PARK  IL  60160

      The commissioner will conduct a hearing on your claim if necessary.
You will be contacted by the commissioner at a later date concerning the
time and place of any hearing that may be required.

      All pleadings should be filed with the Clerk's office. A copy of
each pleading must be sent to any opposing counsel (e.g the Illinois
Attorney General's Office). Each pleading may also be sent directly to
the commissioner. Motions must be accompanied by a proposed order.
Please refer to 74 IL.ADM.CODE 790.200.

                  Sincerely,

                  Illinois Court of Claims

EK: KS
CC: ATTORNEY GENERAL - CHICAGO
    COMM. SERPICO, RON

FILED DATE: 1/11/2021 7:33 AM  2021CH00106

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

# Exhibit J

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

**From: Fahad Syed** fahadsyed2021@nlaw.northwestern.edu
**Subject:** VIOLATION: 405 ILCS 5/3-606 by OFFICER T. HEALY #22
**Date:** May 11, 2020 at 3:36 PM
**To:** Bruce Andre Lewis  balewis@northwestern.edu,  Cindy L Benson  cindy.benson@northwestern.edu,  Kenneth Jones
k-jones@northwestern.edu

To whom it may concern,

I would like to bring to the attention of the Northwestern University Police Department and Internal Affairs the violation of 405 ILCS 5/3-606 by Officer T. Healy #22 on 11/1/19 with regard to case 2019-00000595.

(405 ILCS 5/3-606) (from Ch. 91 1/2, par. 3-606)

   Sec. 3-606. A peace officer may take a person into custody and transport him to a mental health facility when the peace officer has reasonable grounds to believe that the person is subject to involuntary admission on an inpatient basis and in need of immediate hospitalization to protect such person or others from physical harm. Upon arrival at the facility, the peace officer may complete the petition under Section 3-601. **If the petition is not completed by the peace officer transporting the person, the transporting officer's name, badge number, and employer shall be included in the petition as a potential witness as provided in Section 3-601 of this Chapter.**

(Source: P.A. 96-1399, eff. 7-29-10; 96-1453, eff. 8-20-10.)

Below is a copy of the official petition with which I was served, clearly documenting (pg. 3) the violation of this statute through the absence of any identifying information from Officer Healy #22.

**Additionally, I would like to report the deliberate failure by Deputy Chief Chin to address this indisputable violation of state law despite repeated requests for investigation.**



Original
Petition.pdf

Best,

Fahad Syed