# EXHIBIT B – PART 1

# List of Documents Received by Northwestern for Cook County Case No. 2021 CH 00106

| **Exhibit B – Part 1** |
|---|---|---|---|
| **Tab No.** | **Filing Date and Time** | **Envelope No.** | **Document Description** |
| 1. | 1/11/2021 7:33 | 11624454 | Plaintiff's Application for Preliminary Injunction, Temporary Restraining Order, and Expedited Discovery Against Northwestern University_Redacted |
| 2. | 1/11/2021 7:33 | 11624454 | Affidavit in Support Plaintiff's Application for Preliminary Injunction, Temporary Restraining Order, and Expedited Discovery Against Northwestern University |
| 3. | 1/11/2021 7:33 | 11624454 | Exhibits 11-15 to Plaintiff's Application for Preliminary Injunction, Temporary Restraining Order, and Expedited Discovery Against Northwestern University_Redacted |
| 4. | 1/11/2021 7:33 | 11624454 | Plaintiff's Application for Fee Waiver Petition against NU |
| 5. | 1/11/21 10:17 | 11775023 | Plaintiff's Motion for Preliminary Injunction, Temporary Restraining Order, and Expedited Discovery Against Northwestern University_Redacted |
| 6. | 1/11/21 10:17 | 11775023 | Exhibits 1-10 to Plaintiff's Motion for Preliminary Injunction, Temporary Restraining Order, and Expedited Discovery Against Northwestern University |
| 7. | 1/11/21 10:17 | 11775023 | Exhibits 45-75 to Plaintiff's Motion for Preliminary Injunction, Temporary Restraining Order, and Expedited Discovery Against Northwestern University_Redacted |
| **Exhibit B – Part 2** |
| **Tab No.** | **Filing Date and Time** | **Envelope No.** | **Document Description** |
| 8. | 1/12/2021 12:47 | 11799352 | Plaintiff's Notice of Motion Filed for Special Process Server |
| 9. | 1/12/2021 12:47 | 11799352 | Plaintiff's Motion to Appoint Special Process Server |
| 10. | 1/12/2021 1:37 | 11800146 | Plaintiff's Notice of Motion for Preliminary Injunction, Temporary Restraining Order, and Expedited Discovery Against Northwestern University_Redacted |
| 11. | 1/12/2021 1:37 | 11800146 | Plaintiff's Motion for Preliminary Injunction, Temporary Restraining Order, and Expedited Discovery Against Northwestern University_Redacted |
| 12. | 1/12/2021 1:37 | 11800146 | Affidavit in Support Plaintiff's Application for Preliminary Injunction, Temporary Restraining Order, and Expedited Discovery Against Northwestern University |
| 13. | 1/12/2021 1:37 | 11800146 | Exhibits 11-15 to Plaintiff's Motion for Preliminary Injunction, Temporary Restraining Order, and Expedited Discovery Against Northwestern University_Redacted |
| 14. | 1/12/2021 1:37 | 11800146 | Plaintiff's Exhibits 16-30 to Plaintiff's Motion for Preliminary Injunction, Temporary Restraining Order, and Expedited Discovery Against Northwestern University_Redacted |

# EXHIBIT B – TAB 1

Return Date: No return date scheduled
Hearing Date: 5/11/2021 9:45 AM - 9:45 AM
Courtroom Number: 2508
Location: District 1 Court
    Cook County, IL

FILED
1/11/2021 7:33 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH00106

11624454

**Chancery Division Civil Cover Sheet**
**General Chancery Section**                                 (12/01/20) CCCH 0623

FILED DATE: 1/11/2021 7:33 AM  2021CH00106

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

Fahad Syed

                                      Plaintiff

          v.                    Case No: **2021CH00106**

Northwestern University

                                      Defendant

### CHANCERY DIVISION CIVIL COVER SHEET
### GENERAL CHANCERY SECTION

A Chancery Division Civil Cover Sheet - General Chancery Section shall be filed with the initial complaint in all actions filed in the General Chancery Section of Chancery Division. The information contained herein is for administrative purposes only. Please check the box in front of the appropriate category which best characterizes your action being filed.

**Only one (1) case type may be checked with this cover sheet.**

| | | |
|---|---|---|
| 0005 | ☐ | Administrative Review |
| 0001 | ☐ | Class Action |
| 0002 | ☐ | Declaratory Judgment |
| 0004 | ☑ | Injunction |
| | | |
| 0007 | ☐ | General Chancery |
| 0010 | ☐ | Accounting |
| 0011 | ☐ | Arbitration |
| 0012 | ☐ | Certiorari |
| 0013 | ☐ | Dissolution of Corporation |
| 0014 | ☐ | Dissolution of Partnership |
| 0015 | ☐ | Equitable Lien |
| 0016 | ☐ | Interpleader |

| | | |
|---|---|---|
| 0017 | ☐ | Mandamus |
| 0018 | ☐ | Ne Exeat |
| 0019 | ☐ | Partition |
| 0020 | ☐ | Quiet Title |
| 0021 | ☐ | Quo Warranto |
| 0022 | ☐ | Redemption Rights |
| 0023 | ☐ | Reformation of a Contract |
| 0024 | ☐ | Rescission of a Contract |
| 0025 | ☐ | Specific Performance |
| 0026 | ☐ | Trust Construction |
| 0050 | ☐ | Internet Take Down Action (Compromising Images) |

☐ Other (specify) _____

◯ Atty. No.: _____ ⦿ Pro Se 99500

Atty Name:   Fahad Syed

Atty. for:   Self

Address:   244 E Pearson St. Apt. 711

City:   Chicago         State:   IL

Zip:   60611

Telephone:   773-564-0325

Primary Email:   Syed.216@gmail.com

Pro Se Only:   ☑ I have read and agree to the terms of the Clerk's
Clerk's Office Electronic Notice Policy and
choose to opt in to electronic notice from the
Clerk's office for this case at this email address:

Email:   Syed.216@gmail.com

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| FAHAD SYED, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 2021CH00106 |
| | ) |
| NORTHWESTERN UNIVERSITY, | ) |
| | ) |
| Defendants. | ) |

## PLAINTIFF'S APPLICATION FOR PRELIMINARY INJUNCTION, TEMPORARY RESTRAINING ORDER, AND EXPEDITED DISCOVERY AGAINST NORTHWESTERN UNIVERSITY

NOW INTO COURT comes plaintiff, FAHAD SYED, Pro Se, and for the reasons set forth fully in the Memorandum in Support of Plaintiffs' Motion for Temporary Restraining Order, moves this court, pursuant to 735 ILCS 5/11-101 of the Illinois Code of Civil Procedure, for a temporary restraining order, restraining, enjoining and/or prohibiting defendants, NORTHWESTERN UNIVERSITY ("NU") and/or any of their agents, representatives, or anyone acting on their behalf, from taking any action adverse to plaintiffs status as a student at Northwestern University resulting from his EXPULSION pending disposition of plaintiffs' claim that defendants, and others, violated his rights guaranteed by the Constitution and laws of the United States of American and the state of Illinois.

Plaintiff also seeks an order requiring defendants and their employees, agents and all others acting in concert with them: to immediately place Fahad Syed into a regular class at Northwestern University School of Law for Spring 2021 Semester or find some suitable alternative learning arrangement. In addition, Plaintiff moves the Court for entry of an order permitting expedited discovery of records related to his claims.

FILED DATE: 1/11/2021 7:33 AM    2021CH00106

On the facts in the Complaint, the attached Memorandum of Law and the affidavits of expert witnesses, plaintiff will demonstrate that immediate injunctive relief should issue because defendants are unlawfully discriminating against an otherwise qualified individual with a disability from participation in an educational program which receives federal financial assistance, in violation of Section 504 of the Rehabilitation Act of 1973 (Section 504), 29 U.S.C. § 794, and its implementing regulation at 34 C.F.R. Part 104, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181–12189, and its implementing regulation at 28 C.F.R. Part 36 prohibiting discrimination on the basis of disability by public accommodations and in commercial facilities; and because defendants are unlawfully discriminating against an otherwise qualified male individual from participation in an educational program which receives federal financial assistance in violation of Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. §§ 1681–1688, and its implementing regulation, 34 C.F.R. Part 106 prohibiting discrimination on the basis of sex in any education program or activity operated by a recipient of Federal financial assistance (FFA) from the Department of Education.

In support of this motion, plaintiff states the following:

1.      Plaintiff is a 31-year-old brown Muslim man living within the jurisdiction of Cook County, Chicago. On or about 11/1/19, plaintiff was diagnosed as having Bi-Polar disorder, in conjunction with previously diagnosed Attention Deficit Hyperactivity Disorder, and co-morbid anxiety and depression disorders.

2.      As more fully described in the Complaint, during the week of August 17th-21st, 2020, Defendant Northwestern University ("NU") has excluded plaintiff from the regular class for the entire duration of the 2020 incoming JD class orientation period based on NU's perceived threat resulting from its knowledge of his previously existing mental health treatment history with Northwestern Memorial Hospital regarding his initial diagnosis of bi-polar. NU offered no alternative learning opportunities to the plaintiff.

3.      Thereafter, on or about August 23rd, 2020, NU placed Plaintiff on a special "interim suspension" for the entire duration of Fall 2020 semester based on comments he made on two audio recordings of his private phone calls with another NU student,  REDACTED  a white transgender student, which were recorded without his consent or knowledge and wherein he made no articulable threat of violence. Following this interim

FILED DATE: 1/11/2021 7:33 AM    2021CH00106

suspension, on 12/22/20, NU expelled the Plaintiff, pending any internal appeal to be submitted by 1/4/21. It should be noted that Plaintiff requested NU for an extension of the date due to contemporaneous holiday season, however they denied his request without adequate explanation.

4.      Plaintiff is likely to prevail on the merits of his claim. Defendants discriminated against plaintiff solely because of threat from his perceived disability, he is "otherwise qualified" to participate in a regular classroom education pursuant to § 504, and defendants' actions are unsupported by reliable medical or scientific evidence and are irrational and based solely on vague, undifferentiated fears.

5.      Defendants' decision is causing plaintiff irreparable harm for which there is no adequate remedy at law. Because NU expulsion decisions are permanent, there is a substantial risk that plaintiff will be unable to attend school before the merits of this action are concluded and a permanent injunction is entered. The educational restrictions imposed by defendants are presently causing plaintiff psychological harm and substantially diminishing the quality of his life.

6.      The threat of injury to plaintiff outweighs any harm to defendants. Placing plaintiff in a regular classroom poses no significant health or safety risk to himself, his classmates or his teachers. Permitting plaintiff to participate in classroom education will enhance the quality of his education as well as that of his fellow students.

7.      Granting a temporary restraining order will serve the public interest. Defendants' irrational and unlawful conduct has caused confusion and unwarranted fear in a manner which damages the public health every day it is permitted to continue. In addition, the students in Northwestern University Community are being deprived of plaintiff's contribution to their educational experience and social development.

### **PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION**

I.      **STATEMENT OF FACTS**

8.      Plaintiff is Fahad Syed, a first-generation college graduate from a low-income, racial and ethnic minority household and was raised by a single mother, and the first in his family to attend law

FILED DATE: 1/11/2021 7:33 AM    2021CH00106

school. Plaintiff's parents legally separated when he was 8 years old due to his father's violence towards the children, and Plaintiff grew up in an inner-city low-income housing project, a crime-laden environment devoid of positive male role-models and influences.

9.      Plaintiff suffers from multiple ADA learning and cognitive disabilities of bipolar disorder and ADHD, as well as anxiety and depression. One of the major "episodic manifestations" of Plaintiffs bipolar disorder are "psychotic episodes" triggered by stress, which induce varying levels of anger, paranoia, frustration, irritability, temper, etc.

10.     Plaintiff first made the decision to pursue law school in 2015, at the age of 25. Plaintiff had a successful career managing IT operations at a Fortune 100 company after graduating in 2012 with a 3.0 overall GPA from a Top 50 undergrad with a Top 10 undergrad business ranking with dual bachelors degrees in busines economics and political science and 3.3 and 3.9 major GPA's respectively. In addition, plaintiff holds multiple industry standard IT certifications, further illustrating his professional competency and capabilities. Plaintiff is actively involved in community building efforts and helped found a non-profit for refugee assistance (Iraqi Mutual Aid Society) during college and is currently affiliated with another non-profit (Inner-City Muslim Action Network) for which he does volunteering and other work.

**NU Law Class of 2017 Admission and Rejection**

11.     Plaintiff always wanted to attend law school at NU, and his studying eventually paid off as he took the LSAT two times in 2017, receiving two 166 (93rd Percentile) scores on both attempts, and applied for Early Decision Admission to NU Law School in 2017 by the age of 27, but subsequently received a rejection.

**NU Law Class of 2018 Early-Decision Admission**

12.     Despite the rejection, Plaintiff was still determined to attend law school at NU, and studied and retook the LSAT again on two separate occasions, scoring 168 (96th Percentile) and 170 (98th Percentile) and successfully re-applied for admission through Early Decision ("ED") to Northwestern

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

University Law School JD class of 2018 with 150K scholarship on December 13th, 2017 at the age of 28. This was the happiest moment of Plaintiff's life.

## 2018 Discriminatory Conduct

13.     On April 26th, 2018 Plaintiff's 2018 Early-Decision Application and subsequent admission was subject to an unannounced post admission review which was highly irregular in process and was on the basis of "alleged inaccurate information in [Plaintiff's] Fall 2018 JD application related to [Plaintiff's] employment history, collegiate extracurricular activities, and family background." As far as plaintiff knows, no other 2018 early decision admit, nor 2018 general admit was subject to this kind of irregular "verification" based on "alleged inaccurate information" related to "employment history, collegiate extracurricular activities, and family background."

14.     The source or intended meaning of allegations in paragraph 6 was never revealed, even after Plaintiff successfully cleared the investigation on May 21, 2018. As far as plaintiff knows, no other 2018 early decision admit, nor 2018 general admit who's application was subject to this kind of irregular "verification" based on "alleged inaccurate information" related to "employment history, collegiate extracurricular activities, and family background" ever successfully completed the verification without learning the source of the allegation nor the allegations themselves.

## 2018 Adverse Action and Discriminatory Sanctions

15.     As a result of this investigation, Plaintiff was forced to "defer" his admission and enrollment to 2019.

## 2019 Re-Enrollment at NU Law

16.     In August 2019, Plaintiff enrolled in the class of entering JD class of 2019 at NU Law School at the age of 29 and started Fall 2019 Semester.

17.     During Fall 2019 Semester, Plaintiff was dealing with tremendous family concerns as Plaintiff watched his mother slowly start to pass away from ovarian cancer because she had finally become resistant to treatment.

FILED DATE: 1/11/2021 7:33 AM    2021CH00106

18.     During the months September and October of 2019, Plaintiff watched his mother slowly starved to death because she had finally become resistant to treatment, and metastatic ovarian cancer had filled her entire stomach and esophagus with tumors which made it so painful to eat that she chose to starve to death rather than be placed on a feeding machine. Because she elected his other siblings as her power of attorney and power to make health decisions, and specifically indicated a do not resuscitate order (DNR) and no life support options in her will, he was unable by law, to even suggest that if she tried to eat or find some way to get nutrition into her body, that she would live.

19.     Despite her impending passing and knowing that this was the last remaining time that he would have with her, because of his enrollment and commitment to law school, he sacrificed much of the precious time that he had left with his mother in order to attend classes and pursue coursework. Plaintiff would attend classes and complete coursework during the weekday working hours, come home and complete homework assignments, then travel up to Skokie from his apartment in

20.     Streeterville (1-hour trip on average) in order to spend time with his mother during the night. He sacrificed spending this time with her because his legal education and future legal career was the most important thing to him next to his late mother.

21.     Despite his family issues, Plaintiff tried to attend school and try to have relatively normal social experience by participating in social outings, joining student organizations and religious student groups, and trying to participate in the school group chat for the entering JD class of 2019.

22.     Despite the difficult learning environment Plaintiff was faced with, he was performing academically well in his courses, and had attended all 10 weeks of classes every day with good attendance and with satisfactory grades and was actively involved in class discussions, submitted coursework for credit and also submitted the mid-term writing assignment. Plaintiff was attending professors office-hours and spending significant time and effort attending to his academic responsibilities, indeed his Torts professor, Emily Kadens, saved the Palsgraff (a difficult torts case) case for his in-class discussion turn, and referred to him as the "smartest" person in the class in front of all the students on one occasion, and no

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

one objected. In addition, plaintiff actively enjoyed interacting with staff and teachers, and frequently and enthusiastically expressed his interest and enjoyment in the academic subject matter and quality of instruction to staff.

23.     Plaintiff's mother passed away on October 23rd, 2019, and after arranging her funeral and attending her burial, he spent a few days trying to rest and recover. Plaintiff then attempted to rejoin classes and school activities the next week.

**2019 Discriminatory Conduct and Hostile Environment– False Imprisonment**

24.     On November 1, 2019, roughly one week after his mother died on October 23rd, 2019, at approximately 6:37 PM CST Plaintiff attended a law school event in the Levy Mayer wing of the law school building located at 357 E Chicago Ave., Chicago IL 6061 attended by defendant and University of Chicago (3L) law student  REC    REDACTED      and defendants and fellow Northwestern University law students REDACTED (3L) ("REDACTED and REDACTED (2L) ("REDACTED and approximately 60 other fellow law students from mine and other law schools in total.

25.     Plaintiff had attended the event to seek consolation for his mother's death and had not slept in 2-3 days prior to his attendance due to emotional distress. While at the event, Plaintiff was repeatedly targeted and harassed with threatening and invasive questioning and unwanted physical contact by an unknown male (REDACTED REDACTED on 4 separate occasions, culminating in a vicious physical attack where he kicked Plaintiff several times on the leg, then tackled Plaintiff onto the ground, and choked Plaintiff in a headlock until Plaintiff nearly lost consciousness. Defendant REDACTED A. took these actions acting in agency for Northwestern University and based directly on his perception of his mental impairment. As far as plaintiff knows, no other similarly situated 2019 early decision admit without disabilities, nor similarly situated 2019 general admit without disabilities was subject to this kind of vicious attack based directly on his perceived threat from their disability.

26.     No one witnessed this vicious physical assault. He then called out to his two friends (REDACTED and REDACTED who were nearby, and together the three physically restrained

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

Plaintiff, restricting his freedom of movement to leave the premises and with intent to initiate his imprisonment of plaintiff based on perceived mental impairment to Plaintiff. They then called NUPD and unlawfully told them that plaintiff was suffering from "mental illness" and falsely reported to police that Plaintiff attacked [REDACTED]

27.     Plaintiff was twice certified for involuntary inpatient admission by Jeremy Banker RN and Eugene Lozza MD of Northwestern Memorial Hospital on 11/2/19 within 2 hours of each other, while sedated and not in a reasonable capacity to understand the situation, not presented an explanation of rights in the situation, and without identification of clear and convincing evidence of imminent threat to the physical safety of self or others, in violation of 405 ILCS 5/3 admissions, hearing, and notice procedures. Defendants Northwestern Memorial Hospital and its agents took this action based on perceived mental impairment of plaintiff and hostility towards plaintiff's religion, perceived mental impairment and national origin and with willful failure to contact plaintiff's close family or relatives or make alternative arraingments for patient care.  The sole evidence that staff had supporting any threat to the safety of myself or others was the police report which falsely stated that Plaintiff had committed a battery.

### 2019 Adverse Action and Discriminatory Sanctions

28.     On 11/1/19, [REDACTED] then called the law school Dean of Students Susie Spies-Roth and initiated a separate, school disciplinary process.

29.     NUPD Officer Healy #22 then notified his law school of the false narrative of this incident as it was recorded in the police report due directly to prejudice against his perceived mental health disability or threat he perceived as a result of his mental health disability and to save himself from disciplinary action as a result of his brutal unnecessary and excessive force perpetrated against

30.     Plaintiff due to his [Healy's] perceived threat from his ADA mental health disability status.

31.     Plaintiff was served with an interim-suspension and notice papers on November 6th 2019 stating that the school had received a report that Plaintiff struck an individual in the "mouth" during a law

FILED DATE: 1/11/2021 7:33 AM    2021CH00106

school event, while Plaintiff was still inside the hospital, and Plaintiff was requested to evacuate his university-affiliated residence within 5 days of leaving the hospital on November 8th 2019, under penalty of trespass and further school sanctions.

32.     After Plaintiff was released from the hospital Plaintiff received two separate letters in the mail from his insurance company denying the hospitals requests on November 5th and November 7th of 2019 for insurance coverage of continued inpatient stay, stating on both occasions, that "an independent review organization medical doctor, board certified in Psychiatry" reviewed the requests and determined that "continued inpatient stay has not been shown to be medically necessary to improve or correct your bipolar disorder."

33.     Following Plaintiffs return from medical leave, Plaintiff was forced to undergo a brutal defamatory student conduct interviews, wherein the attackers explicitly and in writing, admitted to harassing Plaintiff on the basis perceived threat from his disabilities, and Plaintiff made every effort to attempt highlight the fact that the University had failed to uphold its duty to provide students with disabilities the opportunity to pursue education free of harassment and discrimination by reporting all of the discriminatory conduct to the university.

34.     As part of the continuing pattern of harassment and discrimination, On December 19, 2019 DePilla and Cohen found Plaintiff guilty of "endangering myself or others" based off the testimony of his three attackers, and the police report which stated that Plaintiff battered <sup>REDACTED</sup> and <sup>REDACTED</sup> witnessed the battery, despite having full knowledge <sup>REDACTED</sup> had confessed to not witnessing anything except seeing Plaintiff being choked by <sup>REDACTED</sup> as he entered the room, and confessed to then aiding him [<sup>REDACTED</sup> in physically restraining Plaintiff. Student conduct found that his attacker's repeated targeted and predatory harassment was justified because he was one of the "organizers" of the event and was concerned for vague and unspecified "safety" reasons.

35.     Despite his strong disagreements and providing copious amounts of convincing and compelling evidence against his accusers, Plaintiff again worked with the administration of the law school

FILED DATE: 1/11/2021 7:33 AM  2021CH00106

a year in order to complete mental health assessments and a variety of other pre-conditions which would allow Plaintiff to return to school, this is because his legal education is the most important thing to Plaintiff in the entire world. As far as Plaintiff knows, no other similarly situated student without disabilities was subjected the pre-conditions discussed in this paragraph prior to their re-enrollment in the law school following a medical leave of absence directly related to their disability.

### 2020 Re-Enrollment at NU Law

36.     In mid-July of 2020 Plaintiff finally completed the last of his mandatory pre-conditions, and eagerly re-enrolled in the entering JD class of 2020.

37.     Plaintiff's Facebook is currently set to "private" mode for various reasons, as opposed to "public" mode, and no one outside of individuals who he is "friends" with on the application, and who he shares "groups" with on the application can search or find his information.

38.     Plaintiff currently shares "Official Northwestern Pritzker Class of 2023 Admitted Students Page" with   REDACTED   a white female transgender incoming 1L student at NU Law. It is a "private" group with 280 members because only members can see who is in the group and what they post.

39.     It is solely on account of his sharing the aforementioned Facebook group with REDACTED that she was able to cyberstalk Plaintiff as indicated in the upcoming paragraphs, this is because only members can see who is in the group and what they post. Members who are outside of this group cannot search or find my profile because it is not in "public" mode.

40.     Plaintiff wishes to make abundantly clear that he has never met or interacted with REDACTED   prior to these incidents in any way, shape, or form.

### 2020 Cyberstalking and Hate Crimes

41.     On or around 8/21/20 I was cyberstalked by   REDACTED   a white female transgender incoming 1L student at NU Law, in violation of cyberstalking 720 ILCS 5/12-7.5. She committed a Hate crime in violation of 720 ILCS 5/12-7.1 (a) by cyberstalking me on the basis of actual or perceived mental disability. She conducted surveillance of me on "Google" and "Facebook" and other

FILED DATE: 1/11/2021 7:33 AM 2021CH00106

possibly hitherto unknown locations, observing and monitoring those sites with information, and gathered my personal and private information such as: my photograph, work history, contact information, dates about my school history, and dates about my pictures on a group chat and on Facebook, and educational history. She gathered my personal data, including my photo, from "Facebook," "Google," and other possible locations for malicious personal use on or around 8/22/20, and also to post it in first-year Law GroupMe chat titled "NU Kids on the Block '23" on or around 8/21/20.

42.     On 8/22/20 at 2:22 AM she committed a Hate crime in violation of 720 ILCS 5/12-7.1 (a) by Transmission of obscene messages in violation of 720 ILCS 5/26.5-1(a), Harassment through electronic communications in violation of 720 ILCS 5/26.5-3 by posting my private information which she gathered through surveillance in first-year Law GroupMe chat titled "NU Kids on the Block '23" in committing harassment based on ADA disabilities and Her actions caused me significant emotional distress by bringing up my last year in school, which was when my mother died, I was hospitalized for grief, and I had to withdraw from school for mental health concerns.

43.     On 8/22/20 at 2:22 AM She committed a Hate crime in violation of 720 ILCS 5/12-7.1 (a) by Transmission of obscene messages in violation of 720 ILCS 5/26.5-1(a) harassing me through electronic communications in violation of 720 ILCS 5/26.5-3 in a first-year Law GroupMe chat titled "NU Kids on the Block '23," wherein she committed the following acts:

44.     She committed by transmission of obscene messages in violation of 720 ILCS 5/26.5-1(a) when she posted a disparaging image of a frog with the title "NO THOUGHTS EMPTY HEAD" in direct reference to a stereotype about people with mental health problems and disabilities in a first-year Law GroupMe chat titled "NU Kids on the Block '23" on 8/21/20; directly comparing my mental capacity to that of a frog, insinuating that my mental capacity was equivalent to a frog which is a direct reference to my mental health and disability status and is a stereotype about people with mental health problems and disabilities

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

45.     She posted my private Facebook information on the chat, which included such as: my photograph, work history, contact information, dates about my school history, and dates about my pictures on a group chat and on Facebook, and educational history.

46.     She committed transmission of obscene messages in violation of 720 ILCS 5/26.5-1(a) when she inappropriately suggested I was under an "assumed identity," which is a stereotype about people with mental disabilities.

47.     She committed transmission of obscene messages in violation of 720 ILCS 5/26.5-1(a) when she posted the word "psyop" which was a direct reference to my mental capabilities and was directly related to my mental health, and she insinuated that I was undertaking a psychological operation, which is a blatant stereotype about people with mental health disabilities and other problems.

48.     **She committed Educational intimidation in violation of  720 ILCS 5/12-7.**2(a)(3) when she committed a violation of intimidation statutes 720 ILCS 5/12-6(a)(7) and 720 ILCS 5/126(a)(5) when she encouraged rampant negative speculation among the class about my mental health status by making several mischaracterizing and intentionally malicious comments aimed at making people think I was doing multiple stereotypical activities of people with mental health problems By posting my work history and by making all of the inappropriate suggestions and bringing up dates about my pictures, she encouraged the negative stereo type that people with mental health problems are not able to hold jobs, and that somehow my work and education history was something that I could not possibly have because of my mental health status and cognitive capacity. Therefore, by ridiculing and trying to poke holes in my work history and inciting hatred and speculation about me, they directed comments at my ADA disabilities.

49.     **She committed Educational intimidation in violation of  720 ILCS 5/12-7.**2(a)(2) when her harassment "created a hostile environment and/or substantially interfered" with my "access to a University program or activity from an objective perspective" when I was banned immediately from group chat and discord after my comments in the chat, furthermore I was immediately suspended from school, thereby effectively impeded from those university activities directly resulting from REDACTED influence

FILED DATE: 1/11/2021 7:33 AM    2021CH00106

and injured in my property in educational opportunities and law career due to her malicious intent to get me expelled from school.

50.    **She committed Educational intimidation in violation of  720 ILCS 5/12-7.**2(a)(1) and **720 ILCS 5/12-7.**2(a)(3) when she Engaged in intimidation in violation of 720 ILCS 5/12-6 (a)(1) by Indirectly threatening my safety when she posted my personal information in the first-year Law GroupMe chat titled "NU Kids on the Block '23" on 8/22/20, thereby exposing me to unnecessary exposure and risk which I did not consent to by exposing me to risk of someone who could use that information to track me down and hurt me, both inside and outside of the law school. This is because the group me is not officially a school moderated activity, and other people from outside of the law school can request and gain access to it, this is proven by a total list of the chat members and comparison to the total number of law students in the class, specifically there are many more members of the chat than there are members of the incoming 1L class. At least some of those who were in the group chat were exposed to my private information as a result of <sup>REDACTED</sup> posts who would not otherwise have seen my information, absent <sup>REDACTED</sup> defamatory hate crime of posting my private information on the basis of my perceived disability.

51.    On or around 8/22/20, after she had harassed me on the Group chat, and I had been removed from both the Discord and Group Me by other biased students, I made a legitimate offer to <sup>REDACTED</sup> to settle our grievances offline by offering my personal number and asking her to call me "if there was an issue."

52.    **She committed assault in violation of 720 ILCS 5/12-**1(a) when she put Plaintiff in imminent fear of battery when she **committed Educational intimidation in violation of  720 ILCS 5/127.**2(a)(1) and Engaged in intimidation in violation of 720 ILCS 5/12-6 (a)(1) when she engaged in harassment by telephone in violation of 720 ILCS 5/26.5-2 and directly threatened my safety by calling me at 1:08 AM on 8/23/20 in a threatening manner due to the late-night hour, menacingly asking "Is this

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

Fahad Syed?" then paused and breathed into the phone menacingly, then failed to identify herself after repeated inquiry, replying only "you gave me your number" and "you told me to call you." She took my legitimate offer to settle our grievances offline to call me 1:08 AM threateningly and menacingly, instead of trying to arrange a meeting at normal hours via email or text. She took these actions in order to take advantage of my learning disability and vulnerability to bait and entrap me into responding, and then misleadingly misrepresent that situation to report to NU that I had threatened her safety. She also committed Aggravated assault in violation of <u>720 ILCS</u> <u>5/12-2(a)</u> by committing the assault resulting from gaining my information in "NU Kids on the Block '23" which is a school affiliated group, or a "place of public accommodation." She also committed aggravated assault in violation of <u>720 ILCS 5/12-2(b)(1)</u> by knowingly assaulting a person with ADA disabilities.

53.     REDACTED committed intimidation in violation of <u>20 ILCS 5/12-6</u> (a) (1) when she engaged in harassment by telephone in violation of <u>720 ILCS 5/26.5-2</u> by illegally recording the phone conversation without my knowledge or consent in violation of Eavesdropping <u>720 ILCS 5/14-2</u>(a)(2) when she used an eavesdropping device, her phone and/or another recording devise, in a surreptitious manner, for the purpose of transmitting or recording all or any part of any private conversation to which he or she is a party unless he or she does so with the consent of all other parties to the private conversation and Eavesdropping <u>720 ILCS 5/14-2</u>(a)(3)  when she  recorded, or transcribed, in a surreptitious manner, any private electronic communication to which he or she is not a party unless he or she does so with the consent of all parties to the private electronic communication in order to maliciously and deceitfully get me expelled from law school.

54.     **She committed Educational intimidation in violation of  <u>720 ILCS 5/12-7,</u>**2(a)(2) when REDACTED committed Eavesdropping in violation of <u>720 ILCS 5/14-2</u>(a)(5) when she engaged in harassment by telephone in violation of <u>720 ILCS 5/26.5-2</u>  and Harassment through electronic communications in violation of <u>720 ILCS 5/26.5-3</u> when she used or disclosed any information which he or she knows or reasonably should know was obtained from a private conversation or private electronic

FILED DATE: 1/11/2021 7:33 AM    2021CH00106

communication in violation of the Article, doing so without the consent of all of the parties and disclosing that information to NU representatives Ish Faith-Orkar and Heather Cohen on 8/27/20 and 10/29/20 in order to maliciously and deceitfully get me expelled from law school.

55.     **She committed Educational intimidation in violation of <u>720 ILCS 5/12-7.</u>**2(a)(3) and she committed intimidation in violation of <u>720 ILCS 5/12-6</u>(a)(7) and <u>720 ILCS 5/12-6</u>(a)(5) by inciting, encouraging, and/or influencing "REDACTED," an incoming female 1L , to speculate negatively "According to 2Ls, last year he escalated in his aggressive behavior and speech after being kicked out of the group me. Unfortunately in person at times. If he messages any of you, rather than engaging with him I recommend emailing [NU] with screenshots," in the first-year Law GroupMe chat titled "NU Kids on the Block '23" on 8/22/20. Where REDACTED and REDACTED had previously met and spoken.

56.     **She committed Educational intimidation in violation of <u>720 ILCS 5/12-7.</u>**2(a)(1) and **<u>720 ILCS 5/12-7.</u>**2(a)(3) when and she committed intimidation in violation of <u>720 ILCS 5/12-6</u>(a)(7) and 720 <u>ILCS 5/12-6</u>(a)(5) by inciting, encouraging, and/or influencing "REDACTED," an incoming white male 1L , to state "Please keep further discussion about Fahad at a respectful level, and preferably at a minimum, outside of what is necessary" after removing me from in the first-year Law GroupMe chat titled "NU Kids on the Block '23" on 8/22/20. Where REDACTED and REDACTED had previously met and spoken.

57.     **She committed Educational intimidation in violation of <u>720 ILCS 5/12-7.</u>**2(a)(1) and **<u>720 ILCS 5/12-7.</u>**2(a)(3)and she committed intimidation in violation of <u>720 ILCS 5/12-6</u>(a)(7) and <u>720 ILCS 5/12-6</u>(a)(5) by inciting, encouraging, and/or influencing "REDACTED a white female lesbian NU LGBTQ Student Organization Leader to an current 2L , to unfairly influence school administration to suspend me from NU on Behalf of REDACTED on 8/23/20, where REDACTED forwarded messages and screenshots and called Shannon Bartellete, the associate dean of Inclusion and

58.     Engagement to speak to Associate Dean and Dean of Students Susie Spies Roth and others. Where REDACTED sent REDACTED and email falsely indicating that Plaintiff had initiated the phone

contact between REDACTED and Plaintiff and where REDACTED and REDACTED had previously met and were both part of the LGBTQ affinity group.

59.     **She committed Educational intimidation in violation of  720 ILCS 5/12-7.**2(a)(3) and she committed intimidation in violation of 720 ILCS 5/12-6(a)(7) and 720 ILCS 5/12-6(a)(5) by inciting, encouraging, and/or influencing "REDACTED a female transgender 2L student at Northwestern Law, to harass me six separate times with unwanted comments on Facebook on 8/23/20, where she made repeated reference to me "sliding into white girls dm's" and other harassing comments on my status posts. Where REDACTED and REDACTED had previously met and were both part of the LGBTQ affinity group.

60.     **She committed Educational intimidation in violation of  720 ILCS 5/12-7.**2(a)(3) and she committed intimidation in violation of 720 ILCS 5/12-6(a)(7) and 720 ILCS 5/12-6(a)(5) by inciting, encouraging, and/or influencing REDACTED," a white female incoming 1L student, to harass me with offensive statements on Dischord on 8/23/20 on Behalf of REDACTED where both REDACTED and REDACTED had previously spoken and met.

61.     **She committed Educational intimidation in violation of  720 ILCS 5/12-7.**2(a)(1) and **720 ILCS 5/12-7.**2(a)(3) when and she committed intimidation in violation of 720 ILCS 5/12-6(a)(7) and 720 ILCS 5/12-6(a)(5) by inciting, encouraging, and/or influencing "REDACTED an incoming white female male-transgender 1L , to participate in a student disciplinary hearing against me where she stated during an interview on 9/1/20 that "while this semester is largely remote, [I] don't want to be in the hall with him to and from class and have some sort of confrontation," and where she said it would be "Very easy to imagine using the women's restroom" and seeing him go in and out of the restroom at the same time, "and… start a confrontation." Where REDACTED and REDACTED had previously met and were both part of the LGBTQ affinity group.

62.     **She committed Educational intimidation in violation of  720 ILCS 5/12-7.**2(a)(1) and **720 ILCS 5/12-7.**2(a)(3)and she committed intimidation in violation of 720 ILCS 5/12-6(a)(7) and 720 ILCS 5/12-6(a)(5) by inciting, encouraging, and/or influencing "REDACTED a white female lesbian NU

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

LGBTQ Student Organization Leader to an current 2L , to participate in a student disciplinary hearing against me where she stated during an interview on 9/2/20 that "she is working on an action plan so this doesn't happen again." She also stated "(This feeling is) reciprocated among our board, because they were all taking about it [the group chat altercation] as it happened" further indicating the defamatory rumors and hate and ridicule <sup>REDACTED</sup> incited about me to the law school. Where <sup>REDACTED</sup> and <sup>REDACTED</sup> had previously met and were both part of the LGBTQ affinity group.

63.    **She committed Educational intimidation in violation of  720 ILCS 5/12-7.**2(a)(1) and **720 ILCS 5/12-7.**2(a)(3) when and she committed intimidation in violation of 720 ILCS 5/12-6(a)(7) and ILCS 5/12-6(a)(5) by inciting, encouraging, and/or influencing "  REDACTED  ," an incoming gay 1L , to participate in a student disciplinary hearing against me where he falsely claimed during an interview on 10/27/20 that I was making comments "geared directly at a person's attributes" in attempting to mischaracterize and defame me as a transphobic person. Where <sup>REDACTED</sup> and REDACTED had previously met and were both part of the LGBTQ affinity group.

64.    **She committed Educational intimidation in violation of  720 ILCS 5/12-7.**2(a)(1) and **720 ILCS 5/12-7.**2(a)(3) when and she committed intimidation in violation of 720 ILCS 5/12-6(a)(7) and 720 ILCS 5/12-6(a)(5) by inciting, encouraging, and/or influencing "REDACTED," an incoming 1L , to participate in a student disciplinary hearing against me where she stated during an interview on 10/27/20 that "there were rumors concerning the first time Fahad was in law school two years ago." <sup>REDACTED</sup> indicated that it was "rumored that due to inappropriate physical conduct, Fahad left law school two years in a row and this fall was placed in section 4." Where <sup>REDACTED</sup> and <sup>REDACTED</sup> had previously met and knew each other.

65.    **She committed Educational intimidation in violation of 720 ILCS 5/12-7.2 (a)(2),** when she engaged in harassment by telephone in violation of 720 ILCS 5/26.5-2  and Harassment through electronic communications in violation of 720 ILCS 5/26.5-3 by texting me at 8:34 PM on 8/23/20, after

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

knowingly cooperating with NU to have me suspended earlier that day, in order to further target my ADA learning disabilities and associated vulnerability to maliciously provoke and entrap me into a response. She knew that she had been suspended with a no-contact order, and was attempting to again lure me into responding because, due to my ADA disability, she knew I had a irritable disposition, so then she could maliciously report me for violating the no-contact order which she was fully aware was in place resulting directly from her actions and cooperation with NU.

66.     **She committed Educational intimidation in violation of <u>720 ILCS 5/12-7.2 (a)(2)</u>,** when she engaged in harassment by telephone in violation of <u>720 ILCS 5/26.5-2</u>  and Harassment through electronic communications in violation of <u>720 ILCS 5/26.5-3</u> by communicating to the law class about me by posting my private information in the first-year Law GroupMe chat titled "NU Kids on the Block '23 from 8/22/20-8/23/20, communicating to others about me by making and encouraging defamatory speculation and remarks directed towards ADA disabilities for the purposes of having me maliciously expelled from law school.

67.     She committed **Criminal damage to property in violation of <u>720 ILCS 5/21-1)(a)(1)</u> in excess of $100,000, she committed Educational intimidation in violation of <u>720 ILCS 5/12-7.2 (a)(2)</u>** and **<u>ILCS 5/12-7.2 (a)(3)</u>** and she committed intimidation in violation of <u>720 ILCS 5/12-6</u>(a)(7) and 720 ILCS 5/12-6(a)(5) by damaging to my property in the form of my personal and professional reputation within the law school and legal profession by defaming me and inciting hatred and speculation against me in first-year Law discord chat on 8/21/20 or 8/22/20 in order to get me maliciously expelled from law school.

68.     She committed **Criminal damage to property in violation of <u>720 ILCS 5/21-1(a)(1)</u> in excess of $100,000, she committed Educational intimidation in violation of <u>720 ILCS 5/12-7.2</u> <u>(a)(2)</u>** and **<u>720 ILCS 5/12-7.2 (a)(3)</u>** and she committed intimidation in violation of <u>720 ILCS 5/126</u>(a)(7) and 720 <u>ILCS 5/12-6</u>(a)(5) when she damaged my property in terms of my character through defamatory

FILED DATE: 1/11/2021 7:33 AM    2021CH00106

statement and inciting hatred and speculation against me in first-year Law GroupMe chat titled "NU Kids on the Block '23" on 8/21/20 or 8/22/20 in order to get me maliciously expelled from law school.

69.     She committed **Criminal damage to property in violation of __720 ILCS 5/21-1(a)(1)__ in excess of $100,000, she committed Educational intimidation in violation of __720 ILCS 5/12-7.2 (a)(2)__** when she damaged my property in the form of my educational opportunities by having me suspended through lies and deceit and defaming me in first-year Law GroupMe chat titled "NU Kids on the Block '23" on 8/21/20 or 8/22/20.

### 2020 Conspiratorial Disability Harassment and Unlawful Obstruction of Justice

70.     On information and belief, sometime around 8/23/20, The Interim University Dean of Students, Mona Dugo ("Dugo"), and the Deputy Chief Eric Chin ("Chin") of Northwestern University Police Department (NUPD) negligently suspended Plaintiff (Fahad Syed: Current 1L Law Student) from Northwestern University Law School, and reported Plaintiff to the Northwestern University Police Department (NUPD), for a perceived threat from his disability which resulted from communications between Plaintiff and fellow current 1L   REDACTED   and occurred between 8/22/20-8/23/20. She called Plaintiff on 8/23/20 and explicitly stated "we've been watching your Facebook and other social medial posts" and on a 3-way call with Chin, Dugo, and Plaintiff.

71.     On 8/27/20, Plaintiff filed Department of Education, Office of Civil Rights Complaint #05-202444 alleging discrimination on multiple grounds, including disability discrimination and hostile environment.

72.     On 9/3/20 at 7:45 AM, Plaintiff informally and indirectly notified the university via email to Lucas Christian of the Office of Community Standards that the Plaintiff had complained about the University to an outside entity, Illinois Department of Human Rights and Illinois Guardianship and Advocacy Commission.

73.     On 9/3/20 at 9:05 AM, Plaintiff wrote an email addressed, in part, to Dugo and Chin, requesting the chat transcripts of the incident which resulted in his suspension on 8/23/20.

74.     On 9/13/20 at 1:49 PM Plaintiff formally notified the University via email to The Office of Equity, its employees Amanda DeSilva and Ish Faith Orkar, and Lucas Christian and Heather Cohen of the Office of Community Standards, that the Plaintiff had complained about the University to an outside entity: The Department of Education, Illinois Department of Human Rights, and Illinois Guardianship and Advocacy Commission.

75.     On 9/14/20 at 5:29 PM, Chin had unauthorized telephone communications with Plaintiff's private psychiatrist(s) in violation of the IMHDDCA and HIPAA. Chin left Tobin a voicemail specifically, twice, acknowledging that he did not have an ROI for contacting him [Tobin], and requesting to "share information" with him and requesting Tobin call him back on his cell phone.

76.     On 9/14/20 at 6:11 PM PLAINTIFF was notified via email by his therapist, Brian Tobin ("Tobin"), that Deputy Chief Chin had contacted him, and he [Tobin] subsequently asked Plaintiff to sign an ROI form.

77.     On 9/15/20 at 12:11 PM, during a 6-minute incoming phone call, NUPD Detective Sanghoon Lee ("Lee") inappropriately contacted and aggressively questioned Plaintiff regarding Plaintiff's Facebook post about his discrimination complaint with the Department of Education, in order to retaliate against Plaintiff for making said complaint, and to threaten, intimidate, and coerce Plaintiff into dropping said complaint. During this call, Lee said "you know why I'm calling," mentioned Dugo by name, and instructed Plaintiff not to post anything about Dugo without "running it by [Lee's] office first." Plaintiff indicated to Lee that Plaintiff had filed the DOE complaint, gave Lee the complaint number, and directed Lee to "contact [Plaintiff's] attorney regarding the posts if he had any other questions."

78.     On 9/16/20 at 3:03 PM, Dugo had unauthorized email communications with Plaintiff's private psychiatrist, Brian Tobin, in violation of the Illinois Mental Health and Developmental Disabilities Confidentiality Act (IMHDDCA) and Health Insurance Portability and Accountability Act (HIPAA) under the pretext of responding to Plaintiff's 9/3/20 email requesting group transcripts. In the communication,

she stated: "I'm not sure if Fahad signed a release of information when he made this request. I would like to be able to share some information with you as we have a lot of on going concerns about Fahad."

79.     On 9/22/20, The Dean knowingly and inappropriately shared an illegally obtained audio recording of Plaintiff, of a phone call with another current law student (1L   REDACTED   from 8/22/20, with Plaintiff's medical providers in order to assassinate his character in retaliation for the Department of Education complaint which she referenced during the call and is discussed in the letter from the his therapist. The Dean discriminated against me on the basis of his mental health, in retaliation for the Department of Education complaint which, and which she was fully aware through the university on 9/3/20 through an email to Lucas Christian and 9/13/20 through an email to the Office of Equity.

80.     On or around 9/28/20, during their next session, Plaintiff's therapist, Brian Tobin, informed Plaintiff of the audio recording. It was at this time that Plaintiff realized that this was audio which was illegally submitted to his university by   REDACTED   and illegally resulted in his suspension sometime around 8/23/20.

81.     On or around 9/28/20 as a result of the aforementioned unlawful contact with Plaintiff's therapist, Mona Dugo, Eric Chin, and Sanghoon Lee were repeatedly informed not to contact Plaintiffs family members via text messages from plaintiff to their cells phones.

82.     On 10/10/20, at 8:33 PM PLAINTIFF attempted to file an eavesdropping charge with Northwestern University Police Deputy Chief Eric Chin via text message for a phone call which PLAINTIFF took at his apartment in the 18th district (244 E Pearson St), which was illegally recorded and submitted to his law school, resulting in his suspension. At 8:44 PM Chin responded via text and instructed Plaintiff to file a report with Chicago Police Department (CPD) because NUPD did not have jurisdiction in the matter.

83.     On 10/11/20, PLAINTIFF filed a police report for Eavesdropping in the CPD 18th district, with the non-emergency line (312-746-6000) because they have jurisdiction over a phone call which PLAINTIFF took at his apartment in the 18th district (244 E Pearson St) which was illegally recorded and

FILED DATE: 1/11/2021 7:33 AM    2021CH00106

submitted to his law school, resulting in his suspension. Reporting Officer Aldahhondo (Star 5142) took the report and Supervisor O Shaughnessy (Star 1829) approved it. (Report JD 395786 attached.)

84.     On 10/14/29, NUPD Detective Lee called Plaintiff and brutally interrogated Plaintiff for 18 minutes about exactly how and when Plaintiff found out about the illegal audio tape. Had the illegal audio tape not been made and the university not knowingly suspended me over it, Plaintiff would never have received such an intimidating and harassing interrogation. During the call the detective asked my CPD report number and claimed that he was filing a report with NUPD. Approximately 3 days later he called Plaintiff provided him with report 2020-0356 which he claimed was filed for the eavesdropping case.

85.     On 10/19/2020, at approximately 3:00 PM PLAINTIFF called CPD non-emergency (312746-6000) and was told by the officer on duty, Philp (Emp #19035)  that the report had been "cancelled without investigation," citing a "lengthy cancellation report" involving "NUPD Deputy Chief Chin and the sergeant" as the reason.

86.     Sometime between 10/11/20 – 10/19/20, Chin cancelled his report illegally by illegally revealing his mental health history to the detective without having an ROI in violation of the Illinois Mental Health and Developmental Disabilities Confidentiality Act and Health Insurance Portability and Accountability Act of 1996 (HIPAA), discriminating against Plaintiff on the basis of his mental health, in retaliation for the Department of Education complaint which PLAINTIFF filed on 8/27/20, and which he [Chin] was fully aware through the university on 9/3/20 through an email to Lucas Christian and 9/13/20 through an email to the Office of Equity. The call in question never took place on University property, and DC Chin knew that due to the prior text conversation.

87.     He [Chin] revealing that plaintiff had involuntarily committed to a hospital in November 2019 for an involuntary mental evaluation, directly and deliberately implying or stating to the detective that PLAINTIFF was crazy and his lawful report shouldn't be investigated on the basis of his mental health status.

FILED DATE: 1/11/2021 7:33 AM    2021CH00106

88.     He also told the detective and express lie about his consent during the recording in question: telling the detective that PLAINTIFF consented having his conversation recording when PLAINTIFF did not, as was the very reason why PLAINTIFF filed the eavesdropping report. PLAINTIFF did not consent to having his conversation recorded, nor did PLAINTIFF have knowledge of the recording at any time, and DC Chin knew that because I attempted to file the report with him first.

89.     As a result of the call, plaintiffs report (JD 395768) was cancelled.

90.     In approximately 10 separate follow-up calls and 50 text messages to Lee, which occurred in the weeks after my CPD report was cancelled, he never responded to my follow-ups about report 2020-0356. This proves that his purpose in interrogating me was under the false pretext of filing a report whereas in reality he was retaliating for my CPD report and my DOE complaint. The university has deliberately failed to provide that report on my multiple email requests.

91.     On information and belief, sometime between 10/11/20 – 10/19/20, Chin called and told CPD non-emergency response officers (312-746-6000), between 12pm-6pm, not to respond to reports about eavesdropping from students at Northwestern, or informed the desk sergeant of such.

92.     PLAINTIFF called CPD non-emergency (312-746-6000) 6-7 times in a row between 3p-5pm on 10/19/2020 in order to file another report, and as soon as PLAINTIFF told them PLAINTIFF was a student from NU filing an eavesdropping report, they hung up.

93.     On information and belief, on or around on the week of 10/19/2020, Chin called Area 3 Supervising Detective Rose #982 at (312-744-8263) and asked him not to respond to reports about eavesdropping from students at Northwestern or related cancellations. On 10/19/2020 PLAINTIFF called Area 3 Supervising Detective Rose #982 at (312-744-8263) from 4-5PM , to report the incident of improper cancellation of my report, citing jurisdiction, and he refused to disclose any details about why the report was cancelled, telling me to "file another report."

94.     On information and belief, on or around on the week of 10/19/2020, Chin called and told 18th District Supervisor Sergeant Vogt at (312-742-5870) and asked him not to respond to reports about

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

eavesdropping from students at Northwestern or related cancellations. On 10/19/2020 PLAINTIFF called

18th District Supervisor Sergeant Vogt at (312-742-5870) from 4-5PM , to report the incident of improper

cancellation of my report, citing jurisdiction, and he refused to disclose any details about why the report

was cancelled, telling me telling me "civil litigation" is an option.

95.     Deputy Chief Eric Chin took these actions to prevent the illegal audio tape from being

revealed in retaliation for the Department of Education complaint which PLAINTIFF filed, in order to

conceal his and the universities negligence, and their knowing harboring and supporting of a malicious

96.     criminal,   REDACTED   Chin also took these actions to conceal the fact that he and

Dugo were aware of the illegality of the audio tape, and still suspended me over it, which is also why

PLAINTIFF filed his Department of Education Complaint, and to punish Plaintiff for filing said

complaint.

97.     All of the actions taken by Dugo, Chin, and Lee, including slandering ones reputation to

their therapist, especially given mental disabilities, brutal interrogation, and causing a report to be

cancelled without informing them, would deter a reasonable person from complaining.

98.     The illegal conduct of the   REDACTED   illegally recording me and illegally

submitting the tape to the university in order to have me suspended, caused the university to knowingly

use it to suspend me due to bias. That suspension then caused me to file a discrimination claim with the

DOE and ultimately to file the police report with CPD.

99.     The discrimination claim with the DOE caused Chin to illegally contact Plaintiff's

therapist in order to slander him with an illegal audio tape, Dugo to illegally contact Plaintiff's therapist

and slander Plaintiff's reputation maliciously with an illegal audio tape, Lee to aggressively and

harassingly call me once, and Lee to brutally and menacingly interrogate me another time.

100.     Filing the DOE complaint about discriminatory and bias suspension later caused me to file

the CPD report about the discriminatory use of the illegal audio tape in order to strengthen my

discrimination complaint for legal proceedings which would occur during litigation.

FILED DATE: 1/11/2021 7:33 AM    2021CH00106

101.    Filing the CPD report caused Chin to have my CPD report cancelled. Therefore, the filing DOE complaint caused me to file the CPD report, which caused Chin to have my CPD report cancelled through disability discrimination

102.    On 11/2/20 Plaintiff filed a report with the Civilian Office of Police Accountability about Chins illegal disclosure of my mental health history. On 11/5/20 the complaint Log 2020-0004964 was assigned to Sgt. Mark K Lamberg (Star# 1847) to be investigated by Chicago Police Department Bureau of Internal Affairs Division Officer Lambert, with whom I interviewed 11/9/20 at CPD Headquarters regarding the incident.

103.    On 11/3/20 Plaintiff filed an eavesdropping report again with Chicago Police Department, JD 419862. The report is currently assigned to Detective Lee of CPD with an unnamed offender.

104.    Mona Dugo, Eric Chin, and Sanghoon Lee were repeatedly informed not to contact Plaintiffs family members via text messages from plaintiff to their cells phones occurring on or around 9/28/20.

105.    On or around 11/3/20, Plaintiff learned from his brother-in-law Azam Hussien (312-303-3736) via text message that someone person or persons from the university had contacted my sister, Sophia Syed (847-347-3736) and requested discussion for "hours" about Plaintiff and his school situation without Plaintiff's knowledge or consent. This is after Plaintiff expressly forbade the university, through text message to Mona Dugo after she shared the illegal audio with Plaintiffs therapist, that no one who Plaintiff "knows" should be contacted, including most importantly: plaintiff's family members. NU and NUPD and its representatives contacted Plaintiff's sister in retaliation for his COPA report, his police report, and his DOE Report.

106.    Shortly after learning that someone had contacted Plaintiff's family in direct conflict with his wished, Plaintiff texted Defendants NU, Dugo, Chin, and Lee to determine why they had contacted Plaintiff's family and who had authorized such unlawful contact.

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

107.     On 11/4/20, Plaintiff received Official Northwestern Correspondence email from the Office of Community Standards indicating several more disciplinary sanctions and another UHAS hearing in retaliation for the filing of plaintiff's police report and DOE complaint. The stated pretext for this disciplinary action was that Plaintiff was being disciplined for texting Chin, Dugo, and Lee about his DOE complaint and about the police report, about the various retaliatory measures taken against plaintiff and for the contacting of Plaintiff's sister without Plaintiff's permission. NU and NUPD and its representatives sanctioned plaintiff in retaliation for his COPA report, his police report, and his DOE Report. NU displayed awareness of the multitude of illegal and discriminatory and illegal conduct which I texted Chin, Dugo, and Lee and were in a position to take corrective action and failed to do so.

108.     On 11/6/20 Plaintiff was served with a protection order ("PO") (Case 200P20532) for harassment and Stalking from the Cook County Sheriffs office, in which Dugo made several misleading allegations as to my contact with her due to her official capacity as dean of students. The stated pretext was that I was sending her "100's of harassing messages" whereas in reality I was informing her of discrimination which is ongoing and pleading for her to step in and stop it due to her duty as dean of students. This pretext was a cover for her requesting both a threat assessment and a protecting order against me based SOLEY off threat from my perceived disability in retaliation for my DOE complaint. The stalking no contact order was taken especially to label me as a sexual offender in retaliation for my DOE complaint.

109.     The PO revealed that Dugo, through her official capacity at the University, contracted with "Sigma Threat" in order to harass Plaintiff in retaliation for filing his DOE Complaint and retaliation complaints to the university. The stated pretext for this was to "help evaluate his threat level" and was a cover for her contracting the service on the basis of threat from my perceived disability in retaliation for filing his DOE Complaint.

FILED DATE: 1/11/2021 7:33 AM    2021CH00106

110.    In addition, she made derogatory and misleading accusations in PO about the Holy Quran Chapter 33, Verses 60-68: referring to them as "translated as sinners will die in a fire". She took the protection order for harassment and stalking based on perceived threat from Plaintiffs religion.

111.    Her allegations in support or PO were misleading or defamatory in the following ways:

a.    She claims she "had to issue" Plaintiff "interim suspension for threatening a fellow law student w/ physical violence." This is false, she knows that the student in question, REDACTED stalked me and then posted my information to a group chat and made derogatory statements about my disability, then called me at 1:08 am in a threatening manner and recorded BOTH the call that she made to me and the call that I made in response. These two illegal audio tapes are what Dugo actually suspended me over. She misrepresented this fact deliberately in order to make me seem like a dangerous person.

b.    She claims I was on probation for "physically assaulting another student." This is false, she knows that there was absolutely no evidence whatsoever that I assaulted anyone aside from that single persons unsubstantiated allegations. She misrepresented this fact deliberately in order to make me seem like a dangerous person. I have filed Attorney General Case 20cv1772 pursuant to this allegation.

c.    She claims that I have sent her "more than 150 unanswered text messages with increasingly aggressive language." This is without indicating that the messages are sent to her because of her official capacity as dean of students, and because I am telling her about discrimination committed by Deputy Chief Eric Chin of NUPD, Lee of NUPD, and others in the University and asking her to stop them. The "aggressive language" she is referring to is the increasing amount of litigation and legal proceedings that I am threatening her with if she does not cease her illegal conduct.

d.    She claims she "has not" monitored my Facebook. This is blatantly false, because she on 8/23/20 she called me and explicitly stated  "we've been watching your facebook and

other social medial posts" and she also directed detective Lee to call me and interrogate me on the basis of her perceived threat from my Facebook post about my Department of Education Complaint.

e.  She claims that I am sending her "harassing" messages to her work email when in reality I sent her two follow emails demanding to know who contacted my sister when I told her not to.

f.  She claims that Plaintiff called her and that she hung up the phone, which is a lie. Plaintiff called her and HE hung up the phone, not Dugo. She deliberately misrepresented this fact to make it seem like Plaintiff was harassing her, when in reality she was harassing Plaintiff and his sister, acting far beyond the scope of her responsibilities as Dean of Students, and escalating the situation to the current severity level.

112.  On 11/11/19 at approximately 3:00 PM Plaintiff attempted to file a police report in order to get  REDACTED  named as the offender on the police report at Chicago 18th District and two officers obstructed me from doing so, as a result I filed COPA complaint Log 2020-0005122.

113.  On 11/17/20, Plaintiff went to domestic violence court at 555 W Harrison and stated claims for SNCO against both  REDACTED  (20OP78283) and Mona Dugo (20OP78277), which were deemed worth of a hearing by the Honorable Judge Thomas M. Cushing #2258.

114.  On 11/18/20 Log 2020-0005122 was assigned CPD Sergeant Lisa Eitel (Star #2075) and on 11/22/20 I interviewed with Eitel about the incident of report obstruction, and at that time she included an amendment for report JD 419862 to include  REDACTED  name as the suspect.

115.  On or around 11/19/20, Mona Dugo falsely reported to Evanston Police that Plaintiff had violated the PO which she unlawfully had placed on me as a result of one my previously sent emails to the school asking for them to address the unlawful contact with my family which had taken place earlier in the month of October and which Plaitiff had reported to DOE and the University. She maliciously had the

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

Plaintiff falsely imprisoned pursuant to case 20DV2080601, the only arrest on Plaintiff's entire criminal record, in order to retaliate against Plaintiff for his DOE report and for 20OP78277 which Plaintiff had secured on 11/17/20.

116.    On 11/19/20, four officers of the Evanston Police Department, including Detective Jones, came to my apartment at 244 E Pearson St. Chicago, IL 60611 at approximately 11:00 AM CST and arrested me without telling me what charges they were arresting me for, without letting me take my prescribed medicine, and without reading me my rights.

117.    When I answered the door, they said they needed to "talk to me about the discrimination by Northwestern University," so I let them come into my apartment.

118.    While they were inside my apartment they repeatedly and purposefully stepped on my prayer rug even after I asked the first officer not to step on in, in direct disrespect of my religious beliefs, and laughed as they did it and I asked them not to. They made derogatory statements about the rug, saying it was "beautiful" after repeatedly stomping on it and laughing.

119.    Detective Jones arrested me inside me house without ever telling me what I was under arrest for or reading me my rights.

120.    The four officers took me to Evanston police station and the four officers made me sit in an interrogation room and made me make incriminating statements without the presence of a lawyer, while under duress, which I did not understand.

121.    During this interrogation, they said that calling a lawyer would take "several hours" and made it seem like if I requested a lawyer, that I would have to get on myself. They said they "might" be able to call the public defender, but that it would take hours. In order to clear myself of the charges, I was misled into saying that they could question me without a lawyer. This is because I was not on my medication and not in the right state of mind to understand what was happening.

122.    They never mirandized me before arresting me and they never explained what I was charged with until they had brought me to the station and questioned me in a room with four officers

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

yelling at me, and while I did not have medication and did not know what was happening, in this way they took advantage of my ADA learning disabilities in order to force me to make incriminating statements in violation of my constitutional rights to be free of self-incriminating statements. They repeatedly told me that "they knew my people" and that they would "take care of me" in apparent reference to my sister Sgt. Syed of Evanston Police.

123.    Jones called repeatedly called me "little bro" and other derogatory statements while I was in his custody.

124.    They never allowed me to take my medicine prior to arresting me without reading me my rights, and they knowingly forced me to undergo questioning while not on my medication or in the right state of mind to adequately represent myself. This is despite them knowing that I take medications, which they learned at my apartment.

125.    They never established probable cause for the arrest and never showed me the alleged probable cause when I asked for it, despite the fact that I asked for it at least four separate times. They simply asked me what my email was, and when I told them, they falsely claimed that I had admitted to sending the alleged email in question to the states attorney.

126.    They then took my property and refused to give it back, including court documents which evidenced that I had requested a no contact order against the person who alleged that I violated the no contact order and had me arrested. They took this property without ever intending on reviewing it for the purposed of assessing the charges against me, and without ever intending on returning the paperwork. In this way they deprived me of my right to the materials I needed to adequately represent my defense during the court proceedings for this case.

127.    Despite the fact that I told them that Mona Dugo, the complaining witness for this arrest was retaliating against me for Department of Education complaint 05-20-2444 which I had provided to them, in addition to the stalking no contact hearing, they still charged me with the offenses.  The Dean reported me and discriminated against me on the basis of his mental health, in retaliation for the

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

Department of Education complaint, which she was fully aware through the university on 9/3/20 through an email to Lucas Christian and 9/13/20 through an email to the Office of Equity.

### Continuing Misconduct and Malicious Misrepresentation

128.    On  11/24/20 at or around 1:30 PM, Plaintiff attended a court hearing for Case 200P20532. During the hearing, the judge asked if anyone had Plaintiff's allegations, and opposing counsel representing Mona Dugo for Case 200P20532 indicated that she had the complaint in front of her.

129.    The judge asked whether Plaintiff had "stated any facts" in support of his petition.

130.    The opposing counsel representing Mona Dugo for Case 200P20532 replied that he [Plaintiff] had "not stated any facts." This was a blatant act of perjury to the court, for Plaintiff had alleged over 25 separate, distinct, and numbered allegations containing many facts. Opposing counsel had the complaint in her possession and lied about the fact that Plaintiff had "stated facts" in support of his SNCO petition in order to mislead the judge.

131.    Opposing counsel, after committing perjury to the court, then requested that Plaintiff's SNCO be dismissed, without the judge ever having read Plaintiff's factual allegations, which were deemed worthy of a hearing (20 OP 78277) by the Honorable Judge Thomas M. Cushing #2258 during a hearing held on 11/17/20 at 555 W Harrison St, Chicago, IL and subsequently transferred to the Honorable Stephanie D. Saltouros #2161 for review.

132.    Opposing counsel and the complaining witness Mona Dugo violated the following pertinent section of Rule 137: "The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other document; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass."

133.    The allegations brought by Dugo and her attorney were not well-grounded in fact and not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing

FILED DATE: 1/11/2021 7:33 AM    2021CH00106

law, but in fact were misleading attempts to retaliate against and harass plaintiff for his SNCO (20 OP 78277) and for his DOE complaint.

134.    All of this evidence notwithstanding, plaintiff was found responsible [guilty] for the student disciplinary violations. She was ordered to "return the original journal, complete and unaltered, to the Office of zEquity byJune 29, 2005," and placed on "University Disciplinary Probation effective immediately and continuing through December 31, 2005." Plaintiff has. timely appealed the decision, however, "[t]he rendered sanction is in effect as of the date identified on the sanction, or until an appeal is granted."

135.    It is plaintiff's contention that all of the actions taken against him, as set forth above, were as a result of him raising questions regarding defendants Chin, REDACTED and Healy's activities which violated the Fourth Amendment to the United States Constitution, and Dugo's activities which violated the First Amendment to the United States Constitution. Plaintiff seeks a temporary restraining order from this court restraining, enjoining and prohibiting defendants' from expelling him until a preliminary injunction hearing can be held evaluating his claims.

## II. *LEGAL ARGUMENT*

### 1. *Plaintiff Is Entitled To A Temporary Restraining Order*

The test for whether this Court should issue a temporary restraining order focuses on: (1) whether there is a substantial likelihood of ultimate success on the merits; (2) whether the temporary restraining order is necessary to prevent irreparable injury; (3) whether the threatened injury outweighs the harm the temporary restraining order would inflict on the non-movant; and (4) the temporary restraining order would serve the public interest. *Gresham Park Community Org. v. Howell,* 652 F.2d 1227, 1232 n.7 (5th Cir. 1981).

### A. *Substantial Likelihood That Plaintiff Will Prevail On The Merits*

Plaintiff contends, *inter alia,* that defendants Dugo, Chin, Lee, and REDACTED retaliated against him for voicing objection to the discrimination on the basis of disability and sex. This retaliation, according to plaintiff, took the form of: (1) withdrawing him from classes for Fall 2020 Semester, (2) placing him on interim suspension for Fall 2020 Semester without any hearing or investigation (3) re-accusing him of assault and battery for the Fall

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

2019 Semester incident – an incident where the findings of the university investigation revealed that <sup>REDACTED</sup> had falsely testified to witnessing the battery on the NUPD police report, (4) imposing a variety of sanctions in the form of charges of violating over six different policies resulting from the Fall 2020 incident, and (5) imposing sanctions in the form of ultimate expulsion against him after a hearing before a "stacked" tribunal.

It is plaintiff's contention that all of the actions taken against him, as set forth above, were as a result of his raising questions regarding defendant Dugo's activities which violated the First Amendment to the United States Constitution. Plaintiff seeks a temporary restraining order from this court restraining, enjoining and prohibiting defendants' from expelling Plaintiff from school pending a hearing on the disposition on Plaintiffs claims.

## II. *LEGAL ARGUMENT*

### 1. *Plaintiff Is Entitled To A Temporary Restraining Order*

The test for whether this Court should issue a temporary restraining order focuses on: (1) whether there is a substantial likelihood of ultimate success on the merits; (2) whether the temporary restraining order is necessary to prevent irreparable injury; (3) whether the threatened injury outweighs the harm the temporary restraining order would inflict on the non-movant; and (4) the temporary restraining order would serve the public interest. *Gresham Park Community Org. v. Howell,* 652 F.2d 1227, 1232 n.7 (5th Cir. 1981).

#### A. *Substantial Likelihood That Plaintiff Will Prevail On The Merits*

Plaintiff is likely to prevail on the merits of his claim. Defendants discriminated against plaintiff solely because of threat from his perceived disability, he is "otherwise qualified" to participate in a regular classroom education pursuant to § 504, and defendants' actions are unsupported by reliable medical or scientific evidence and are irrational and based solely on vague, undifferentiated fears.

Plaintiff contends, *inter alia,* that defendants Dugo, Chin, Lee, and <sup>REDACTED</sup> retaliated against him for voicing objection to discrimination. This retaliation, according to plaintiff, took the form of: (1) forcibly withdrawing him from classes for Fall 2020 Semester, (2) placing him on interim suspension for Fall 2020 Semester without any hearing or investigation (3) re-accusing him of assault and battery for a Fall 2019 Semester

FILED DATE: 1/11/2021 7:33 AM    2021CH00106

incident – an incident where the findings of the university investigation revealed that REDACTED had falsely testified to witnessing the battery on the NUPD police report, (4) imposing a variety of sanctions in the form of charges of violating five different policies resulting from the Fall 2020 incident, and (5) imposing sanctions in the form of ultimate expulsion against him after a hearing before a "stacked" tribunal.

The Supreme Court has made it abundantly clear that "colleges and universities are not enclaves immune from the sweep of the First Amendment." *Healy v. James,* 408 U.S. 169, 180 (1972). They may not be "enclaves of totalitarianism." *Tinker v. Des Moines Indep. Community Sch. Dist.,* 393 U.S. 503, 511 (1969). It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Id.* at 506. The court applied those well-established legal principles in concluding that the plaintiff in *Qvyjt v. Chhiu-TSU Lin,* 932 F.Supp. 1100 (N.D. Ill. 1996), was engaged in constitutionally protected speech when he reported acts of faculty misappropriation and research misconduct.

Fernando Qvyjt, a graduate student in chemistry at Northern Illinois University, filed a formal complaint alleging that his dissertation director was "misappropriating his research." 953 F. Supp. at 246. Subsequent to making the allegation, he was (1) barred from using the laboratory, (2) informed by his dissertation committee that his dissertation was unsatisfactory, (3) required to select a new dissertation topic and advisor, (4) for a period of four months, denied permission to select an advisor from another university, and (5) terminated from the program. In denying defendants' motion for summary judgment, the court stated that "[d]rawing all reasonable inferences in favor of plaintiff... the court finds that plaintiff has presented evidence from which a reasonable trier of fact could find that defendants retaliated against plaintiff for his accusations of misconduct against Dr. Lin." *Id.* at 247.

A review of the facts in the case at bar leads one to the inescapable conclusion that defendants did in fact retaliate against plaintiff. First, in all of his 2019 law courses leading up to the student suspension he received passing grades. Second, he received a satisfactory mid-term evaluation in his CLR class, which is legal writing and analysis; and he was never declared to be a marginal student, as required for student who are not progressing satisfactorily; he was never remediated academically, which is a requirement for students who have been declared

FILED DATE: 1/11/2021 7:33 AM 2021CH00106

marginal. These facts notwithstanding, plaintiff was suspended two weeks prior to the end of the school year in November 2019 and given an ultimatum - withdraw or face further "discipline" and a litany of retaliatory conduct.

Following his refusal to withdraw, he was suspended for the duration of Fall 2019 and Spring 2020 Semester. He initiated internal complaints against Christine DePilla, Heather Cohen, and REDACTED on December, 10th and 12th, 2019. On May 11th, 2020 he initiated a complaint against Eric Chin.

On August 23rd, 2020 he was suspended by Interim Dean of Students Mona Dugo, in part, due to allegations relating to REDACTED from his role in student conduct hearings regarding the November 2019 incident. Three of the individuals participating in the decision were suspend him were defendant Eric Chin, whom plaintiff had accused of violating NU disability discrimination for not properly handling the violation of 405 ILCS 5/3-606 by OFFICER T. HEALY (Badge #22), and defendants DePilla and Cohen, who proceeded to initiate a coverup when told by plaintiff of defendant REDACTED unconstitutional actions in 2019. On August 27th, 2020 Plaintiff initiated an outside complaint with the Department of Education about Defendant Dugo. On September 9th, 2020 NU additionally sanctioned him with "unauthorized report sharing" regarding his reports of REDACTED DePilla, and Cohen.

Dugo first hid the existence of two illegal audio tapes made by REDACTED which caused her to suspend Plaintiff originally on August 23rd. Dugo then directly contacted Plaintiffs therapist without his knowledge or consent to share the tapes with him. When the Plaintiff found out about the tapes, Chin, Lee and Dugo obstructed his reports to the police. When Plaintiff complained about the conduct, Chin, Dugo, and Lee requested no-contact orders through the school on November 4th, 2020. When Plaintiff complained about their conduct, Dugo contacted, either directly or indirectly, Plaintiffs sister. When Plaintiff complained about their conduct, on November 6th, 2020, Dugo initiated a Stalking No Contact Order against him, 20 OP 20532, which is scheduled for hearing on January 6th, 2021.

On November 17th, 2020, Plaintiff attempted to secure a Stalking No Contact Order against Dugo restraining her from contacting his family. On November 19th, 2020 Plaintiff was arrested for allegedly violating 20 OP 20532 resulting from an email he had sent on November 4th, 2020. On December 22nd, 2020, Plaintiff was

FILED DATE: 1/11/2021 7:33 AM    2021CH00106

expelled resulting from the illegal audio tapes pending an appeal which will be timely submitted by January 4th, 2020.

A retaliation claim can be established through indirect evidence by proving a chronology of events from which retaliation can be inferred. *Qvjyt,* 953 F.Supp. at 246 (citation omitted). The events set forth above allow such an inference. There is a total absence of documented proof supportive of defendants' contention that plaintiff was "Endangering Self or Others." If anyone endangered themselves or others, it was Chin and Depilla, for they failed to document properly plaintiff's 2019 complaints.

Based on plaintiff's proven academic record, and defendants' failure to document any significant deficiencies on plaintiff's part, together with the university's failure to follow its own policy respective to students deemed to be marginal, one can only conclude that the adverse actions taken with respect to plaintiff were taken in retaliation for his complaints regarding Mr. REDACTED Mr. Chin, Ms. DePilla, and Ms. Dugo, all of which were constitutionally protected by the First Amendment. Plaintiff has more than a substantial likelihood of prevailing on this issue.

Regarding the issue of the 2019 false imprisonment, there is a substantial likelihood Plaintiff will prevail on his claims. In Illinois a false imprisonment "is defined as an unlawful restraint of an individual's personal liberty or freedom of locomotion," in which "a person is compelled to remain where he does not wish to remain or to go where he does not wish to go." ***Lopez v. Winchell's Donut House*, 126 Ill.App.3d 46, 81 Ill.Dec. 507, 466 N.E.2d 1309, 1311 (1984)** It may be accomplished by "words alone, by acts alone or both." ***Id.* Shea v. Winnebago County Sheriff's Dep't, 746 Fed. Appx. 541, 548 (7th Cir. 2018), cert. denied sub nom. Shea v. Winnebago County Sheriff's Office, 139 S. Ct. 1200, 203 L. Ed. 2d 204 (2019) 285.**    The unlawful restraint by one person of the liberty or freedom of movement of another constitutes "false imprisonment". **Hughes v. New York Cent. Sys., 20 Ill. App. 2d 224, 155 N.E.2d 809 (1st Dist. 1959)** Defendants REDACTED REDACTED and REDACTED physically restrained the plaintiff's movement during the 2019 incident until Officer Healy and two other officers arrived on scene and forcefully transported Plaintiff to Northwestern Memorial Hospital, based solely on the false eyewitness testimony given by REDACTED at the scene. Due to these facts, Defendants REDACTED

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

REDACTED REDACTED and Defendant Healy (Badge #22), along with the two other officers and paramedics, are liable for false imprisonment.

Because Mental Health and Developmental Disabilities Code protects liberty interests, strict compliance with statutory procedures is required.  **In re Amanda H., App. 3 Dist.2017, 413 Ill.Dec. 866, 79 N.E.3d 215, appeal denied <u>417 Ill.Dec. 835, 89 N.E.3d 754</u>.  <u>Appeal And Error</u>** 🔑 **181** The procedural safeguards in place for civil commitment are not mere technicalities to be sidestepped; rather, the legislature created them to protect people from the deprivation of a liberty interest.  **In re Demir, App. 4 Dist.2001, 256 Ill.Dec. 226, 322 Ill.App.3d 989, 751 N.E.2d 616.  <u>Mental Health</u>** 🔑 **37.1** Involuntary admission procedures represent the legislature's attempt to balance the individual's interest in liberty against society's dual interests in protecting itself from dangerous mentally ill persons and caring for those who are unable to care for themselves; the Mental Health and Developmental Disabilities Code's procedural safeguard's are not mere technicalities but are essential tools to safeguard the liberty interests of respondents in mental health cases.  **In re Joseph P., App. 4 Dist.2010, 348 Ill.Dec. 107, 406 Ill.App.3d 341, 943 N.E.2d 715.  <u>Constitutional Law</u>** 🔑 **4337; <u>Mental Health</u>** 🔑 **37.1**

The law against involuntarily committing people based on threat from their perceived disability is clearly established, and neither the police nor the paramedics are immune from suit. Police officers and paramedics failed to prove either that law was not clearly established or, if law was clearly established, that defendants neither knew nor should have known of relevant legal standard with respect to plaintiff's claims of illegal search and use of force in removing her from her home and subjecting her to involuntary mental examination precluding dismissal of § 1983 action on qualified immunity grounds.  **Anderson v. Village of Forest Park, App. 1 Dist.1992, 179 Ill.Dec. 373, 238 Ill.App.3d 83, 606 N.E.2d 205.  <u>Civil Rights</u>** 🔑 **1376(4); <u>Civil Rights</u>** 🔑 **1376(6)** Because the police officers and paramedics in the instant case knew that the right to be free of discrimination and imprisonment based off threat from perceived disability and to participate freely in school related activities without fear of harassment, and because they knew the relevant legal standard with respect to Plaintiffs claims of illegal search and use of force in removing him from the scene of the school during the 2019 incident, they are liable violation of Plaintiffs Fourth Amendment rights against unreasonable searches and seizure.

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

Failure to complete the petition constitutes prejudice to the patient. Omission of the transporting officer's names and contact information from the petition for involuntary admission could not be presumed to be harmless under Mental Health and Developmental Disabilities Code; failing to provide such information deprived patient of using testimony by the transporting officers that might have been beneficial to her, and that resulted in potential prejudice to patient. **In re Amanda H., App. 3 Dist.2017, 413 Ill.Dec. 866, 79 N.E.3d 215, appeal denied 417 Ill.Dec. 835, 89 N.E.3d 754. Mental Health** 🗝 **45** Mental Health and Developmental Disabilities Code required that the transporting officers' names, badge numbers, and employer be identified in the petition for involuntary admission so that the officers could be called as potential witnesses … the police played an active role in restraining patient and in transporting her to the hospital against her will. ***Id.***

In the instant case, Officer Healy (Badge #22) failed to complete the petition for commitment. Patient could not be found to be person subject to involuntary admission to mental health facility, where peace officer, who took patient into custody and transported patient to mental health facility, failed to complete petition for involuntary admission. **In re John N., App. 3 Dist.2006, 302 Ill.Dec. 278, 364 Ill.App.3d 996, 848 N.E.2d 577, modified on denial of rehearing. Mental Health** 🗝 **38** 286. Initially authorized detention of individual pursuant to Mental Health Code may be followed by unlawful detention, that is actionable as false imprisonment, if detention is continued despite failure to comply with filing requirements of Code. **S.H.A. 405 ILCS 5/1–100 et seq. Sassali v. DeFauw, 297 Ill. App. 3d 50, 696 N.E.2d 1217 (2d Dist. 1998)**

Although Healy may have partially competed a petition later, the petition in the instant case was still invalid as it was completed by a social worker, and not Healy. Petition for involuntary commitment of patient to mental hospital was invalid, where petition was completed by social worker at hospital, not by police who brought patient to hospital. **In re Demir, App. 4 Dist.2001, 256 Ill.Dec. 226, 322 Ill.App.3d 989, 751 N.E.2d 616. Mental Health** 🗝 **38** Under statute on involuntary admission to mental health facility, when peace officer takes person who is subject of emergency petition for involuntary admission to mental health care facility into custody and transports person to mental health facility, failure of peace officer to complete petition for involuntary admission is reversible error. **In re John N., App. 3 Dist.2006, 302 Ill.Dec. 278, 364 Ill.App.3d 996, 848**

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

**N.E.2d 577, modified on denial of rehearing.** [Mental Health 🔑 38](#); [Mental Health 🔑 45](#) In the case at bar, Healy was the peace officer who brought the Plaintiff to the hospital yet never completed the petition. Therefore, the involuntary admission in this case was "reversable error." 287. Fact that original detention of individual may be lawful, and thus will not support false imprisonment claim, does not mean that subsequent detention is also lawful and thus not actionable. **Sassali v. DeFauw, 297 Ill. App. 3d 50, 696 N.E.2d 1217 (2d Dist. 1998); Fulford v. O'Connor, 3 Ill.2d 490, 500–01, 121 N.E.2d 767 (1954); Weimann v. County of Kane, 150 Ill.App.3d 962, 968, 104 Ill.Dec. 110, 502 N.E.2d 373 (1986); see also Hyatt v. United States, 968 F.Supp. 96, 110 (E.D.N.Y.1997) (applying Illinois law to a false imprisonment claim).**

In addition, in the case at bar, the petition for commitment was never filed and therefore patient was never served. Involuntary commitment order had to be reversed, where petition for involuntary commitment was filed 48 hours after involuntary admission and hospitalization of person, rather than within the statutorily mandated 24 hours, and where record failed to indicate that committed person was served with copy of petition within 12 hours of admission as required by statute.  **Matter of Riviere, App. 3 Dist.1989, 132 Ill.Dec. 141, 183 Ill.App.3d 456, 539 N.E.2d 451.** [Mental Health 🔑 38](#); [Mental Health 🔑 39](#); [Mental Health 🔑 45](#) 288.  Under involuntary commitment provisions of Mental Health Code, failure to timely file commitment petition after individual is taken into custody is error that cannot be waived, and if director of facility to which individual has been taken does not comply with requirement, he or she must either release individual, or initiate new involuntary commitment proceedings. **S.H.A. 405 ILCS 5/3–611. Sassali v. DeFauw, 297 Ill. App. 3d 50, 696 N.E.2d 1217 (2d Dist. 1998) 290.** False imprisonment does not necessarily depend on the legality of the arrest, and an unlawful detention following an arrest can itself be false imprisonment. **Hughes v. New York Cent. Sys., 20 Ill. App. 2d 224, 155 N.E.2d 809 (1st Dist. 1959) 289.** Individual who had been forcibly taken to hospital for initiation of involuntary commitment proceedings under Mental Health Code, but for whom hospital had not timely filed involuntary commitment petition, could plead false imprisonment claim for time between when 24-hour period for filing petition expired, and time when court issued order setting hearing date and authorizing sheriff to transport individual. **S.H.A. 405 ILCS 5/1–100 et seq. Sassali v. DeFauw, 297 Ill. App. 3d 50, 696 N.E.2d 1217**

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

**(2d Dist. 1998)**

This court has jurisdiction over the issue of false imprisonment due to the procedural violations committed as part of Plaintiffs petition for commitment. Trial court had subject matter jurisdiction over petitions for involuntary admission and involuntary administration of psychotropic medication, where petition set forth required allegations that patient was subject to involuntary admission to a mental health facility, was 18 years or older, and was in need of immediate hospitalization. S.H.A. ILCS 5/3–600. In re Megan G., 2015 IL App (2d) 140148, 48 N.E.3d 118. The court in *Megan* reasoned that if the three criteria specified were met, then it has jurisdiction in the matter. In the instant case, the Petition states that Plaintiff was subjected to involuntary admission, was over 18 at the time, and was need of immediate hospitalization. Therefore, the court should have jurisdiction on the issue of false imprisonment.

Regarding the 2020 discrimination allegation and sanctions, there is a substantial likelihood that plaintiff will prevail on those matters. Of course, if he proves his eavesdropping and disability discrimination claims, the allegations would become moot. As set forth in plaintiffs affidavit, he was harassed by Defendant REDACTED His version is corroborated by another student, Shen Peng, who stated that she encouraged plaintiff emotionally after he was subjected to disability harassment. Pursuant to the policies and procedures, an investigation should be done when a student has been (1) subjected to alleged harassment based on a protected class, and (b) objective evidence supports the harassment being based on a protected class. The university did not initiate an investigation with regards to Plaintiff's claims, Amanda DeSilva and Colleen Johnston simply decided that there wasn't enough evidence to warrant an investigation, despite the fact that Plaintiff had provided over 30 pages of information regarding his claims. With a proper investigation regarding Plaintiffs discrimination claims, any claim by the university as to Plaintiff's alleged discriminatory acts vanishes in thin air.

The Plaintiff's claim of Eavesdropping is without question. REDACTED made specific admission to recording both of the phone calls based on threat from perceived disability. The university provided Plaintiff the evidence in the form of two MP3 audio files which they attached the investigation report for the Plaintiff's hearing. If that is the case, then it stands to reason that the REDACTED and not the Plaintiff, should be on trial for expulsion. The

FILED DATE: 1/11/2021 7:33 AM    2021CH00106

university cannot have it both ways. It cannot state that it wants to expel Plaintiff for his alleged discriminatory acts, while ignoring the blatant discrimination and eavesdropping which was inflicted upon him. If the university actually cared about discrimination, then a proper investigation into Plaintiffs claims, and not the bias musings of DeSilva and Johnston, would determine if, and when, a student could retain his place at the university.

Plaintiff states in his affidavit that only he, but not other students known to be making inappropriate comments on the group chat, has been subjected to student disciplinary action in any way. Assuming the correctness of that statement, plaintiff is being singled out for different treatment. Pursuant to the equal protection clause of the Fourteenth Amendment to the United States Constitution, "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." The equal protection clause mandates similar treatment of persons in similar situations. *Arceneaux v. Treen,* 671 F.2d 128, 131 (5th Cir. 1982). [T]he crucial question is whether the [university] treats similarly situated people unequally. *Id.* at 137 (Goldberg, specially concurring).

There can be no dispute as to the fact that Plaintiff, although similarly situated to other students, was treated differently. It now becomes a question as to whether the university's "action rationally furthers a legitimate state purpose." *San Antonio Independent School District v. Rodriquez,* 93 S.Ct. 1278, 1308 (1973). Obviously, there can be no legitimate state purpose to deviate from established policy to demand that plaintiff, and only plaintiff, be required to submit to student disciplinary proceedings.

Since plaintiff was never declared to be a marginal student, and his discrimination claims were not properly investigated, the university's policy of disciplining students who have allegedly violated Equity Policy not apply to him. Therefore, there is no basis for the university to impose a sanction on him. Further, respective to the investigation of competing discrimination claims, the university clearly treats Plaintiff differently from similarly situated students. Based on these important factors, plaintiff has a strong likelihood of success on the merits.

### B. *Plaintiff Faces A Substantial Threat of Irreparable Injury*

Defendants' decision is causing plaintiff irreparable harm for which there is no adequate remedy at law. Because NU expulsion decisions are permanent, there is a substantial risk that plaintiff will be unable to attend

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

school before the merits of this action are concluded and a permanent injunction is entered. The educational restrictions imposed by defendants are presently causing plaintiff psychological harm and substantially diminishing the quality of his life.

Irreparable harm is established any time a movant's First Amendment rights are violated. *Marcus v. Iowa Pub. Tele.,* 97 F.3d 1137, 1140-41 (8th Cir. 1996). The loss of First Amendment freedoms, for even a minimal period of time, unquestionably constitutes irreparable injury. *Elrod v. Burns,* 427 U.S. 347, 373 (1976) (plurality opinion). Based on the facts of the case, it is very likely that plaintiff will be able to prove that his First Amendment rights were violated when he was suspended.

Further, plaintiff received an expulsion and was not allowed to graduate notwithstanding the fact that he met all of the requirements for pursuing coursework. This constitutes irreparable injury, for it delayed plaintiff's fulfillment of his requirements for a degree. *See Phillips v. Marsh,* 687 F.2d 620, 622 (2d Cir. 1982); *Doe v. New York University,* 666 F.2d 761, 773 (2nd Cir. 1981); *Yusuf v. Vassar College,* 1992 U.S. Dist. LEXIS 13029, No. 92 Civ. 5462, 1992 WL 230143 at *1 (S.D.N.Y. Sep. 1, 1992)

The notion of irreparable harm in the circumstances of this case is firmly established through precedent. Here, Plaintiff's final semester has been disrupted by his emergency suspension and he is at risk of being unable to complete the final semester of [university] work, or having to repeat it. In *Doe v. Vassar College*, the district court noted that, although the Second Circuit has held that the harms that result in a delay in graduation can adequately be remedied by damages, "[w]hether an interruption in coursework is irreparable harm is a closer question, which the Second Circuit has not squarely addressed, and on which it appears that district courts have disagreed." 2019 WL 6222918, at *6, 2019 U.S. Dist. LEXIS 203418, at *16 (citing *Phillips v. Marsh*, 687 F.2d 620 (2d Cir. 1982) and collecting cases). The Court concludes that Plaintiff's allegations that he will lose the work he completed prior to his mid-semester suspension if he is unable to return is sufficient to show irreparable harm. *Compare Bhandari v. Trustees of Columbia Univ.*, No. 00-cv-1735, 2000 WL 310344, at *5, 2000 U.S. Dist. LEXIS 3720, at *15–16 (S.D.N.Y. Mar. 27, 2000) (finding irreparable harm where the plaintiff was suspended midway through the semester and would lose "the benefit of the work he has already performed this semester"), *with Vassar Coll.*,

2019 WL 6222918, at *6, 2019 U.S. Dist. LEXIS 203418, at *15 (finding no irreparable harm where plaintiff claimed suspension "for a single semester at the *beginning* of his senior year") (emphasis added). Doe v. Rensselaer Polytechnic Inst., 120CV01359BKSCFH, 2020 WL 6544607, at *6 (N.D.N.Y. Nov. 6, 2020) The courts have reasoned that completion of coursework established irreparable harm necessary for a grant of preliminary injunction or temporary restraining order. In the instant case, the Plaintiff already completed 10-weeks of coursework prior to his late semester 2019 suspension, the conditions precedent for the establishment of irreparable harm required for a preliminary injunction have been achieved.

Succinctly stated, if plaintiff does not submit to blatant discrimination by the university, he faces additional sanctions, up to and including permanent expulsion from the university. If a temporary restraining order is not issued, the university will in all likelihood permanently expel plaintiff and make notations of the incident on his permanent record, resulting in a further disruption in his legal education. It is without dispute that the expulsion constitutes irreparable harm.

### C. *The Threatened Injury to Plaintiff Outweighs Any Harm To Defendants*

The threat of injury to plaintiff outweighs any harm to defendants. Placing plaintiff in a regular classroom poses no significant health or safety risk to himself, his classmates or his teachers. Permitting plaintiff to participate in classroom education will enhance the quality of his education as well as that of his fellow students.

Clearly, the balance of the equities tilts in favor of plaintiff. He has been pursuing a law degree at NU since 2018. He has pending litigation (20 OP 20532 and 20 DV 2080601) in which the allegations of retaliation from Dugo, Chin, and Lee play a prominent role. He has a pending legal action (20 CV 1772) in which the allegations of battery from 2019 have a prominent role. He is willing to work with university on an alternative resolution plan to expulsion, but he is not prepared to give up on his dream of legal education at university. If necessary, plaintiff is willing to defer his enrollment until next fall, but not to be expelled from the university. Since plaintiff is willing to make concessions to NU, an order prohibiting the university from expelling him until a judicial determination can be rendered imposes no substantial burden on the university.

With regards to  REDACTED  noting the quantity, severity, relative complexity, and maliciousness

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

involved in her crimes the can be no telling what other things this person may be capable of, which poses a serious threat to the safety of the general community. This except taken from <u>Spinka v. Drake</u>, 14-CV-583-DRH-PMF, 2016 WL 1258460, at *4 (S.D. Ill. Mar. 31, 2016) illustrates the nature of these concerns, which have been shared by others in similar cases: "With regard to District 77, the plaintiff's second amended complaint alleges that District 77 had received complaints about defendant E.H.'s behavior toward fellow students and failed to prevent E.H.'s attack on the plaintiff, despite knowledge of the risks. The plaintiff argues that these allegations are sufficient to survive dismissal, citing *Doe ex rel. Ortega-Piron v. Chicago Board Of Education,* 213 Ill.2d 19, 289 Ill.Dec. 642, 820 N.E.2d 418, 420 (2004), as support. Spinka now argues that, as in *Doe*, the circumstances of the case made the assault foreseeable for District 77 such that it was willful and wanton in failing to intervene. However, the complaint in *Doe* revealed that the school board in that case had far more extensive knowledge of the assailant's deviant sexual history compared to the case at issue. In *Doe*, the plaintiff pled that the defendant knew the student assailant "had been declared a sexually aggressive child" and was "under a 'Protective Plan' requiring that he never be left unsupervised among other children." *Doe ex rel. Ortega-Piron v. Chicago Bd. Of Educ.*, 213 Ill.2d 19, 22, 289 Ill.Dec. 642, 820 N.E.2d 418, 420. <u>Spinka v. Drake</u>, 14-CV-583-DRH-PMF, 2016 WL 1258460, at *4 (S.D. Ill. Mar. 31, 2016) The argument about the foreseeability of future crimes committed by   REDACTED   should be weighed with the context of the information in this case as favorable factors supporting the notion the threat of injury to the Plaintiff outweighs the threat of harm to the defendants, which is non-existent from Plaintiff attending courses in his degree.

**D. *There Will Be No Disservice To The Public If Temporary Relief Is Granted***

Granting a temporary restraining order will serve the public interest. Defendants' irrational and unlawful conduct has caused confusion and unwarranted fear in a manner which damages the public health every day it is permitted to continue. In addition, the students in Northwestern University Community are being deprived of plaintiff's contribution to their educational experience and social development. Plaintiff is actually advancing the interest of the public, for the public has an interest in its colleges and university adhering to their internal rules and regulations. The public has a paramount interest in making certain that an individual is not deprived of

property which is his.

**E. *Plaintiff Has No Adequate Remedy At Law***

Plaintiff has cooperate with the university to the fullest extent. However, the university proceeded to initiate disciplinary action against him, claiming that he had not been discriminated against and expelling him. The university has demanded that he appeal the decision by January 4th, 2021. Plaintiff intends to do so, however without outside intervention the result will be the same. If not immediately restrained, the university will proceed to take further disciplinary action against plaintiff, which, in all likelihood, will result in his permanent expulsion from the university. This would result in a further delay in Plaintiff's education.

**REQUEST FOR EXPEDITED DISCOVERY**

3. The parties to the Dugo Petition are scheduled to appear for a hearing on January 6th, 2021. *See* Exhibit A (Dec. 16, 2020 Disposition Order).

5. NU has received two subpoenas from Plaintiff in connection with the Dugo Petition (referred to collectively as "the Syed Subpoenas"). The first subpoena, attached as Exhibit B, was issued by the Clerk of Court and filed with the Court on December 1, 2020, with a return date of December 8, 2020. This subpoena seeks copies of Northwestern University Police Department report numbers 2019-0595 and 2020-0356. *See* Ex. B. This subpoena indicates that the matters on which examination are requested are 20DV20806 and 20OP20532. *Id.* at pg. 2. It was served on December 1, 2020, via email and NU both accepted it and acknowledged its receipt. *See* Exhibit C.

6. The second subpoena, attached as Exhibit D, is dated December 1, 2020, with a return date of December 9, 2020 and seeks the following: "All records of any kind, paper, electronic, or otherwise, which related in any, shape or form to: Fahad Syed or Fahad Bilal Syed or Fahad B Syed (D/O/B: 8/28/1989). Includes Admission Records and Northwestern Police Department Records." This second subpoena was issued by the Clerk of Court and filed with the Court on December 1, 2020, with a return date of December 9, 2020. *See* Ex. D. This subpoena indicates that the matters on which examination are requested are 20DV20806 and 20OP20532. *Id.*

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

at pg. 2. It was served on December 3, 2020, via email and NU both accepted it and acknowledged its receipt.  *See* Exhibit E.

7.        On December 8, 2020, at 4:47 PM Scott Warner filed a motion to quash the Syed Subpoenas with the Clerk of the Circuit Court of Cook County, Chicago, Illinois, filing for an Appearance on behalf of Third-Party Northwestern University for case 20 OP 20532.  *See* Exhibit F.

8.        On December 9, 2020, at 9:16 AM Defendant filed a motion pursuant to Ill. Sup. Ct. Rule 214 compelling NU to disclose the content of the requests for information contained in the Syed Subpoenas with IRIS Y. MARTINEZ CIRCUIT CLERK COOK COUNTY, IL for case 2020OP20532. *See* Exhibit G.

9.        As an initial matter, both subpoenas were properly issued and should therefore be enforced. **The clerk of any court in which an action is pending shall, from time to time, issue subpoenas for those witnesses and to those counties in the State *as may be required by either party*.** 735 ILCS 5/2-1101 (emphasis supplied). As the Defendant is a party to case 2020OP20532, he should be granted the subpoenas. **For good cause shown**, the court on motion may quash or modify any subpoena or, in the case of a subpoena duces tecum, condition the denial of the motion upon payment in advance by the person in whose behalf the subpoena is issued of the reasonable expense of producing any item therein specified.  *Id.* (emphasis supplied.) NU has not shown good cause, and indeed is motioning to quash Defendant's subpoena's as part of an ongoing pattern of harassment and intimidation by NU.

10.       Both subpoenas should be enforced for reasons beyond procedural correctness.  The Defendant notes that ensuring proper issuance of any subpoenas from Syed in this matter is an absolute necessity given the persistent, threatening, and harassing nature of Dugo's conduct that led Defendant to seek a Stalking No Contact Order, and her similar persistent, threatening, and harassing behaviors towards members of Defendant's family and therapist. Indeed, the Defendant views the subpoenas as part of an ongoing effort to hold the University's employees legally accountable for negligently failing to do their doing their jobs, including addressing NU's longstanding pattern of disparate discriminatory treatment of Defendant, in addition to NU deliberately and maliciously retaliating against Defendant for reporting his concerns.

FILED DATE: 1/11/2021 7:33 AM  2021CH00106

11.     An e-mail dated November 4, 2020 from the Defendant to NU's Behavioral Consultation Team, attached as Exhibit H, illustrates just some of Dugo's recent misconduct in this regard. Courts are empowered to limit discovery to prevent abuse. *See* Ill. S. Ct. R. 201(c)(1) ("The court may at any time on its own initiative, or on motion of any party or witness, make a protective order as justice requires, denying, limiting, conditioning, or regulating discovery to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or oppression."). In sum, Dugo and NU should not be permitted to use the legal process – particularly an oppressive motion to quash the legitimate subpoenas Defendant needs in order to defend himself in two separate legal cases – to perpetuate their misconduct and to further harass and threaten the Plaintiff and his family.

12.     Fundamentally, both of the Syed Subpoenas should be enforced because they seek information from the University that is relevant to the subject matter of cases 20DV20806, 20OP20532. They also apply to case 2020CH2546 and 20CV1772. *See* Exhibit I. A party may obtain discovery regarding "any matter relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking disclosure." Ill. S. Ct. R. 201(b)(1).

13.     With respect to the first subpoena, both of the police reports requested in that subpoena are relevant to the Dugo Petition. *See* Ex. B.  Report number 2019-0595 relates to an incident in the fall of 2019 that was referred to in the Dugo Petition as the reason Defendant was on disciplinary probation. This report relates to proving Defendants innocence of the unfounded allegation in the Dugo Petition that he "was on probation for physically assaulting another student." That report lists REDACTED as a witness to an alleged act of battery and is directly contradicted by an interview which ^REDACTED gave to NU during which he explicitly admitted to not actually witnessing the alleged act named in the report. Defendant notes that NU was repeatedly made fully aware of this witness discrepancy and failed to investigate or action upon in in any way, despite the incident directly resulting the Defendants illegal involuntary commitment to Northwestern Memorial Hospital from November 1-8th, 2019. *See* Exhibit J.

14.     The other police report, number 2020-0356, focuses on a report that Plaintiff made in October 2020 about another student. Specifically, the police report is about a transgender student who he never met before

or had any kind of relationship with who recorded two of her telephone conversations with him without his consent. The telephone conversations in question are the reason Dugo placed Defendant on interim suspension, and are directly relevant to the following allegation in the petition: "I had to issue him an interim suspension for threatening a fellow law student w/ physical violence." Dugo reported that Defendant threatened this other student on said recordings, and the student shared these recordings with Ms. Dugo. However, the report contains the details of the actual events for which Dugo suspended Defendant. Therefore, it is relevant to defense of the Dugo Petition.

15.    As demonstrated above, ALL of the information sought in the Syed Subpoenas is relevant to the Plaintiff's defense in cases 20DV20806, 20OP20532, 20CV1772. Indeed, the Motion to Quash appears to be part of an ongoing pattern of conduct to harass and threaten the Defendant and his family and mental health provider. NU should not be permitted to use the legal process to perpetuate this illegal conduct.

## CONCLUSION

There is a strong likelihood of success on the merits by plaintiff, he will sustain irreparable injury if a temporary restraining order is not issued; the balance of the equities is in his favor; no disservice to the public will result in the granting of the temporary restraining order; and plaintiff has no adequate remedy at law. THEREFORE, plaintiff requests that this court issue a Temporary Restraining Order to protect the plaintiff's rights.

## PRAYER FOR RELIEF

FOR THESE REASONS, Plaintiff respectfully requests that the Court enter a Temporary Restraining Order:

FILED DATE: 1/11/2021 7:33 AM    2021CH00106

FILED DATE: 1/11/2021 7:33 AM    2021CH00106

227. Restraining and enjoining Defendants Northwestern University ("NU") from Expelling Plaintiff and Compelling Defendants NU to place Plaintiff in regular class at NU Law School or find some suitable alternative learning arrangement, pending the disposition and outcome of his claims.

228. Allowing the Plaintiff to commence discovery immediately on the following schedule: NU should immediately surrender all records and/or communications regarding Plaintiff, Fahad B. Syed, including NUPD Reports 2019-0595 and 2020-0356, to Plaintiff's email address at syed.216@gmail.com.

229. Setting Plaintiff's Motion for Preliminary Injunction for hearing on a date certain; and

230. Granting such further relief as the Court deems just and proper.

Dated: December 29th 2020                    Respectfully submitted,


By: _____

Fahad Syed

Pro Se

244 E Pearson St. Apt. 711

Chicago, IL 60611

Tel: 773-564-0325

Syed.216@gmail.com

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

## VERIFICATION BY CERTIFICATION PURSUANT TO SECTION 1-109

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief, and as to such matters the undersigned certifies as aforesaid that [he/she] verily believes the same to be true.

_____

Fahad Syed                               **1/11/21**

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

## ORDER TO SHOW CAUSE FOR TEMPORARY RESTRAINING ORDER

Upon (i) the Affidavit of Fahad Syed sworn to the 11th of January, 2021, and the exhibits annexed thereto, and (ii) Plaintiff's Memorandum of Law in Support of its MOTION FOR TEMPORARY RESTRAINING ORDER, it is hereby

ORDERED, that the above named defendant[s] show cause before this Court, at Room 802, 50 West Washington Street Chicago, IL 60602 on _____, _____ at _____ a.m./p.m. or as soon thereafter as counsel may be heard, why an order should not be issued pursuant to 735 ILCS 5/11-101 of the Illinois Code of Civil Procedure enjoining the defendant[s] during the pendency of this action from EXPULSION OF FAHAD B. SYED FROM NORTHWESTERN UNIVERSITY LAW SCHOOL; and it is further

ORDERED that, sufficient reason having been shown pending the hearing of the plaintiff's application for a preliminary injunction, but in no event beyond TEN DAYS days from the entry of this order, unless extended by the Court, the defendant[s] are temporarily restrained and enjoined from taking any disciplinary action, including but not limited to expulsion from Northwestern University, against plaintiff, FAHAD B. SYED, resulting from his recorded phone conversation pending final disposition of plaintiffs' claim that defendants, and others, violated his rights guaranteed by the Constitution and laws of the United States of American and the state of Illinois, and his false imprisonment, retaliation and eavesdropping claims; and it is further

ORDERED, that security in the amount of $100 be posted by the plaintiff[s] prior to ____January_15th_____, _____2021_____ at _____5_____ **p.m.**; and it is further

ORDERED, that the Defendants shall place Fahad Syed in regular class at Northwestern University Law School or find a suitable alternative learning arrangement and that NORTHWESTERN UNIVERSITY SHOULD SURRENDER ALL RECORDS OR COMMUNICATIONS OF ANY KIND REGARDING FAHAD SYED BEFORE 1/4/21; and it is further

ORDERED, that personal service of a copy of this order upon the defendant[s] or his counsel on or before

_____January 15th_____, _____2021_____ at _____9_____ at p.m. shall be deemed good and sufficient service thereof; and it is further ORDERED, that opposing papers, if any, shall be served by EMAIL upon FAHAD B. SYED, [syed.216@gmail.com], received to his email on or before ___January 15th_____, _____2021_____ at _____9_____ a.m.

DATED:       [DATE]                         _____

                  [CITY], [STATE]               United States District Judge

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

# Exhibit A

Disposition Order/Stalking No Contact Order          (Rev. 12/16/14) CCDV N009

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### DOMESTIC VIOLENCE DIVISION

Mona Dugo

_____

**Petitioner**

v.

Fahad Syed

_____

**Respondent**

Any Stalking No Contact Order which would expire on a court holiday shall instead expire at the close of the next court business day. (Stalking No Contact Order Act, Section 105(d))

Case No. 20 OP 20532

Leads No. _____

Respondent's D.O.B. _____

### DISPOSITION ORDER
### Stalking No Contact Order

☒ EMERGENCY   ☐ PLENARY

☒ INDEPENDENT PETITION
☐ CRIMINAL PROCEEDING
☐ DELINQUENCY PETITION

**THE COURT FINDS THAT:**

☐ The averments presented are insufficient to grant relief requested.

☒ An (Emergency/Plenary) Stalking No Contact Order was issued on   11/5/20

☐ An (Emergency/Plenary) Stalking No Contact Order was previously extended on   11/24/20

**THE COURT HAVING JURISDICTION OF THE SUBJECT MATTER IT IS HEREBY ORDERED THAT:**

☐ An (Emergency/Plenary) Stalking No Contact Order is **DENIED.**

☒ An (Emergency/Plenary) Stalking No Contact Order is extended to:   1/6/21    at 5:00pm a.m./p.m.

☒ A hearing on the Stalking No Contact Order is set for:   1/6/21    at 9:30   a.m./p.m.
    Status

Court located at:   555 W. Harrison St. Chicago, IL     Calendar 90
            (Address)                                  (Room No.)

☐ A hearing on the Stalking No Contact Order was held and the Stalking No Contact Order is **DENIED.**

☐ The Stalking No Contact Order is terminated.   Respondent's motion for substitution of judge is granted. Case transferred to the Domestic

☐ The Stalking No Contact Order is vacated.   Violence Division, Presiding Judge's Office for reassignment.

☐ The Stalking No Contact Order is modified as follows:

_____

_____

☐ Alias Summons to issue.

☐ Service by publication.

☐ Case Number _____ is dismissed.

**ENTERED**
Judge Stephanie Saltouros-2161

**DEC 16 2020**

IRIS Y. MARTINEZ
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

The date of 1/13/21 in District 2 is stricken.

I hereby certify that the document to which this certification is affixed is a true copy.

Date 12-16-20 Iris Martinez

Dorothy Brown
Clerk of the Circuit Court
of Cook County, IL

☐ Atty. No.: _____   ☐ Pro se 99500

Name:   Petitioner Attorney's email: MHickey@schiffhardin.com

Atty. for:   Respondent's email: syed.216@gmail.com

Address:   Third-Party (Northwestern University) Attorney email:
          scott.warner@huschblackwell.com

City/State/Zip Code: _____

Telephone: _____

ENTERED;

Dated:   12/16/20

_____         #2161

Judge                             Judge's No.

### IRIS MARTINEZ, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

Transfer Order Substitution of Judge/Recusal                                    (10/31/11) CCDV N003

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## DOMESTIC VIOLENCE DIVISION

PEOPLE OF THE STATE OF ILLINOIS

or

**Mona Dugo**

_____
                                    Petitioner

        v.                                              No. 20 OP 20532

**Fahad Syed**

_____
                            Defendant/Respondent

### TRANSFER ORDER SUBSTITUTION OF JUDGE/RECUSAL

This case coming on to be heard on ☐ petitioner's ☒ respondent's ☐ state's ☐ court's motion

☒  To transfer the above entitled to another courtroom due to:  Petitioner Attorney's email: MHickey@schiffhardin.com
                                                                Respondent's email: syed.216@gmail.com

☒  Substitution of Judge        ☐  Substitution of Judge for Cause
☐  Recusal                                   Third-Party (Northwestern University) Attorney email:
                                             scott.warner@huschblackwell.com

☒  The cause is hereby transferred to the Presiding Judge of the Domestic Violence Division for consideration of the transfer of this case.

OR

☐  This cause is hereby transferred to_____, Presiding Judge, Municipal

   District_____for consideration of the transfer of this case.

ENTERED:

Dated:  12/16/20                        , _____           #2161
       _____
                                              Judge                    Judge's No.

### ORDER

IT HEREBY ORDERED that the motion is granted and this case is hereby transferred to

Courtroom_____ Calendar_____ Date_____, _____ Time_____ a.m./p.m.

ENTERED:

Dated:_____, _____
                                              Presiding Judge              Judge's No.

**IRIS MARTINEZ, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

1) 8/23/20  11:44am

I began my interaction with Fahad Syed on 8/23/20 at 11:44am. In my capacity as interim dean of students for Northwest University I had to issue him an interi suspension for threatening a fellow law student w physical violence. Mr. Syed was on probation for physically assaultir another student.

Between 8/23 – 11/3/2020 Mr. Syed has sent me more than 150 unanswered text messages with increasingly aggressive language.

2) 10-12-20 → 10-19-20

Mr. Syed sends approximately 100 text messages to me. I responded once & told him to stop. The tone is increasingly hostile + aggressive. He accuses me of monitoring his facebook page (I have not). He sends me text from the Quaran which translated says that sinners will die in a fire, he says he will "ruin me", he makes a sexual reference implying I give our deputy chief of police blow jobs + tells me to "suck his dick." There is a lot of foul + aggressive language.

FILED DATE: 1/11/2021 7:33 AM 2021CH00106

3) 11-2-2020   10:28pm
mr. Syed calls me & accuses me of
calling his sister, yells at me for
4 minutes until I hang up on him
& block his phone number. at northwest
we have contracted with a threat
assessment group (Sigma threat) to
help evaluate his threat level. They
talked to his sister, who is a police
officer.

4) He continues to send me harassing
email through my northwestern
email address.

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

# Exhibit B

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
12/1/2020 12:25 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2020OP20532

FILED DATE: 1/11/2021 7:33 AM  2021CH00106
FILED DATE: 12/1/2020 12:25 PM  2020OP20532

**Subpoena in a Civil Matter (For Testimony and/or Documents)**              **(06/05/20) CCG 0106 A**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Fahad Syed
_____
                                    Plaintiff/Petitioner

                    v.                                       Case No.    20OP20532
                                                                    _____
Mona Dugo
_____
                                    Defendant/Respondent

### SUBPOENA IN A CIVIL MATTER
### (For Testimony and/or Documents)

To:  Northwestern University Police Department
     211 East Superior Street
     Chicago, IL 60611

1.  ☐  YOU ARE COMMANDED to appear to give your testimony before the

    Honorable _____ in Room _____ ,

    _____ , Illinois on _____

    at _____  ○ AM  ○ PM

2.  ☐  YOU ARE COMMANDED to appear and give your deposition testimony before a Notary Public

    at: _____ in Room _____ ,

    _____ , Illinois on _____

    at _____  ○ AM  ○ PM

3.  YOU ARE COMMANDED to mail the following documents in your possession or control

    Fahad Syed
    to _____ at syed.216@gmail.com _____ ,

    on or before ___12/8/20___ at ____9:00____  ◉ AM  ○ PM
    (THIS IS FOR RECORDS ONLY.  THERE WILL BE NO ORAL INTERROGATORIES.):

    Report JD 2019-0595   (Police Reports)
    Report JD 2020-0356

    ☐  Description continued on attached page(s).

**Your failure to respond to this subpoena will subject you to punishment for contempt of this Court.**

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

**Subpoena in a Civil Matter (For Testimony and/or Documents)**      **(06/05/20) CCG 0106 B**

FILED DATE: 1/11/2021 7:33 AM  2021CH00106
FILED DATE: 12/1/2020 12:25 PM  2020OP20532

Notice to Deponent:

1. ☑   The deponent is a public or private corporation, partnership, association, or governmental agency. The matter(s) on which examination is requested are as follows:
   20DV20806
   20OP20532

   _____
      ☐   Description continued on attached page(s).
   (A nonparty organization has a duty to designate one or more officers, directors, or managing agents, or other persons to testify on its behalf, and may set forth, for each person designated, the matters on which that person will testify. Ill. Sup. Ct. Rule 206.)

2. ☐   The deponent's testimony will be recorded by use of an audio-visual recording device, operated

   by _____ .
          (Name of Recording Device Operator)

3.   No discovery deposition of any party or witnesses shall exceed three hours regardless of the number of parties involved in the case, except by stipulation of the parties or by order upon showing that good cause warrants a lengthier examination. Ill. Sup. Ct. Rule 206(d).

○ Atty. No.: _____
◉ Pro Se 99500                         12/1/2020 12:25 PM IRIS Y. MARTINEZ

Name: Fahad Syed _____

Atty. for (if applicable):                Issued by: /s/ _____

                                     Signature

_____      Text    ○ Attorney    ○ Clerk of Court

Address: 244 E Pearson St. Apt. 711

City: Chicago                 Date: 12/1/20

State: IL    Zip: 60611

Telephone: 773-564-0325

Primary Email: syed.216@gmail.com

☐   I served this subpoena by mailing a copy, as required by Ill. Sup. Ct. Rules 11, 12 and 204(a) (2),

to _____ by certified mail, return receipt requested

(Receipt # _____) on _____ . I paid the witness $ _____ for witness and mileage fees.

☐   I served this subpoena by handing a copy to _____

on _____ . I paid the witness $ _____ for witness and mileage fees.

/s/ _____      _____
      (Signature of Server)                            (Print Name)

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

# Exhibit C

FILED DATE: 1/11/2021 7:33 AM  2021CH00106

**From:** **Threat Assessment** threatassessment@northwestern.edu
**Subject:** RE: Subpoena
**Date:** December 3, 2020 at 1:28 PM
**To:** Fahad Syed fahad-syed@law.northwestern.edu

Mr. Syed, your email and attachment have been received.

**From:** Fahad Syed <fahad-syed@law.northwestern.edu>
**Sent:** Thursday, December 3, 2020 10:49 AM
**To:** Threat Assessment <threatassessment@northwestern.edu>
**Subject:** Subpoena

Hi,

I have another subpoena, I think I'm just supposed to email this to you?

Thanks,

Fahad Syed

> On Dec 2, 2020, at 9:52 PM, Threat Assessment <threatassessment@northwestern.edu> wrote:
>
> Mr. Syed, your email and attachment have been received.

**From:** Fahad Syed <fahad-syed@law.northwestern.edu>
**Sent:** Tuesday, December 1, 2020 4:02 PM
**To:** Threat Assessment <threatassessment@northwestern.edu>
**Subject:** Re: Office of Equity-Request for Interview.11.30.20

Hi,

Do I just give this to you?

Thanks,

Fahad Syed

> On Dec 1, 2020, at 2:09 PM, Threat Assessment <threatassessment@northwestern.edu> wrote:
>
> Thank you Mr. Syed for the response. Please review the attachment for updated information.

**From:** Fahad Syed <fahad-syed@law.northwestern.edu>

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

# Exhibit D

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
12/1/2020 5:27 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2020OP20532

*FILED DATE: 1/11/2021 7:33 AM  2021CH00106*
*FILED DATE: 12/1/2020 5:27 PM  2020OP20532*

**Subpoena in a Civil Matter (For Testimony and/or Documents)**          (06/05/20) CCG 0106 A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Fahad Syed
_____
                                    Plaintiff/Petitioner

                    v.                                    Case No. _____ 20OP20532 _____

Mona Dugo
_____
                                    Defendant/Respondent

### SUBPOENA IN A CIVIL MATTER
### (For Testimony and/or Documents)

To:     Northwestern University
        633 Clark Street
        Evanston, IL 60208

1.  ☐   YOU ARE COMMANDED to appear to give your testimony before the

    Honorable _____ in Room _____ ,

    _____ , Illinois on _____

    at _____   ○ AM   ○ PM

2.  ☐   YOU ARE COMMANDED to appear and give your deposition testimony before a Notary Public

    at: _____ in Room _____ ,

    _____ , Illinois on _____

    at _____   ○ AM   ○ PM

3.      YOU ARE COMMANDED to mail the following documents in your possession or control

        to   Fahad Syed _____ at   syed.216@gmail.com _____ ,

        on or before ____12/9/20____ at _____9:00_____ ● AM   ○ PM

        (THIS IS FOR RECORDS ONLY.  THERE WILL BE NO ORAL INTERROGATORIES.):
          All records of any kind, paper, electronic, or otherwise, which related in any, shape or form to:
          Fahad Syed or Fahad Bilal Syed or Fahad B Syed (D/O/B: 8/28/1989). Includes Admission
          Records and Northwestern Police Department Records.

        ☐   Description continued on attached page(s).

**Your failure to respond to this subpoena will subject you to punishment for contempt of this Court.**

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

**Subpoena in a Civil Matter (For Testimony and/or Documents)**      **(06/05/20) CCG 0106 B**

FILED DATE: 1/11/2021 7:33 AM 2021CH00106
FILED DATE: 12/1/2020 5:27 PM 2020OP20532

Notice to Deponent:

1. ☑   The deponent is a public or private corporation, partnership, association, or governmental agency. The matter(s) on which examination is requested are as follows:
   20DV20806
   20OP20532

   ☐   Description continued on attached page(s).
   (A nonparty organization has a duty to designate one or more officers, directors, or managing agents, or other persons to testify on its behalf, and may set forth, for each person designated, the matters on which that person will testify. Ill. Sup. Ct. Rule 206.)

2. ☐   The deponent's testimony will be recorded by use of an audio-visual recording device, operated

   by _____ .
   (Name of Recording Device Operator)

3. No discovery deposition of any party or witnesses shall exceed three hours regardless of the number of parties involved in the case, except by stipulation of the parties or by order upon showing that good cause warrants a lengthier examination. Ill. Sup. Ct. Rule 206(d).

○ Atty. No.: _____
◉ Pro Se 99500

Name: ___Fahad Syed_____

Atty. for (if applicable): _____

Address: ___244 E Pearson St. Apt. 711_____

City: ___Chicago_____

State: __IL__   Zip: __60611____

Telephone: ___773-564-0325_____

Primary Email: ___syed.216@gmail.com_____

Issued by: /s/_____

Text      Signature
     ○ Attorney   ○ Clerk of Court

Date: ___12/1/20____

☐   I served this subpoena by mailing a copy, as required by Ill. Sup. Ct. Rules 11, 12 and 204(a) (2),

to _____ by certified mail, return receipt requested

(Receipt # _____) on _____ . I paid the witness $ _____ for witness and mileage fees.

☐   I served this subpoena by handing a copy to _____

on _____ . I paid the witness $ _____ for witness and mileage fees.

/s/ _____      _____
     (Signature of Server)          (Print Name)

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**

**cookcountyclerkofcourt.org**

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

# Exhibit E

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

**From:** **Threat Assessment** threatassessment@northwestern.edu
**Subject:** RE: Subpoena
**Date:** December 3, 2020 at 1:28 PM
**To:** Fahad Syed fahad-syed@law.northwestern.edu

Mr. Syed, your email and attachment have been received.

**From:** Fahad Syed <fahad-syed@law.northwestern.edu>
**Sent:** Thursday, December 3, 2020 10:49 AM
**To:** Threat Assessment <threatassessment@northwestern.edu>
**Subject:** Subpoena

Hi,

I have another subpoena, I think I'm just supposed to email this to you?

Thanks,

Fahad Syed

> On Dec 2, 2020, at 9:52 PM, Threat Assessment <threatassessment@northwestern.edu> wrote:
>
> Mr. Syed, your email and attachment have been received.

**From:** Fahad Syed <fahad-syed@law.northwestern.edu>
**Sent:** Tuesday, December 1, 2020 4:02 PM
**To:** Threat Assessment <threatassessment@northwestern.edu>
**Subject:** Re: Office of Equity-Request for Interview.11.30.20

Hi,

Do I just give this to you?

Thanks,

Fahad Syed

> On Dec 1, 2020, at 2:09 PM, Threat Assessment <threatassessment@northwestern.edu> wrote:
>
> Thank you Mr. Syed for the response. Please review the attachment for updated information.

**From:** Fahad Syed <fahad-syed@law.northwestern.edu>

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

# Exhibit F

FILED DATE: 1/11/2021 7:33 AM  2021CH00106
FILED DATE: 12/8/2020 5:01 PM  2020OP78277

FILED
12/8/2020 5:01 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2020OP78277

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
SECOND MUNICIPAL DISTRICT**

| | | |
|---|---|---|
| FAHAD SYED, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 20 OP 78277 |
| | ) | |
| MONA DUGO, | ) | Hon. Stephanie D. Saltouros |
| | ) | |
| Defendants. | ) | |

**NORTHWESTERN UNIVERSITY'S MOTION TO QUASH SUBPOENAS
FROM PETITIONER FAHAD SYED**

Third-party Northwestern University ("University"), by and through its undersigned counsel, hereby moves to quash the two subpoenas it has received from Petitioner Fahad Syed and requests that the Court preclude Syed from issuing any additional subpoenas or other requests for discovery directed at the University or its employees without leave of court. In support of this Motion, the University states as follows:

1.      On November 5, 2020, the Respondent in this matter, the University's Dean of Students Mona Dugo, filed a Petition for Stalking No Contact Order directed at University student Fahad Syed, the Petitioner in this matter, in Case No. 20 OP 20532 ("Dugo Petition"). A copy of the Dugo Petition is attached as Exhibit A. The Dugo Petition details just some of the hundreds of disturbing text messages and other communications that Syed has directed at Ms. Dugo, causing her to fear for her own safety and that of her family. *Id.* at pp. 8-9.

2.      The Dugo Petition resulted in the Court issuing an Emergency Stalking No Contact Order ("Emergency Order") directed at Syed on November 5, 2020. *See* Nov. 5, 2020 Stalking No Contact Order, attached as Exhibit B.

3.      On November 17, 2020, Syed violated the Emergency Order by contacting Ms. Dugo.

1

HB: 4833-2663-1124.1

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

# Exhibit G

Return Date: No return date scheduled
Hearing Date: No hearing scheduled (This form replaces CCMD-39)          (12/01/20) CCG 0702
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED DATE: 1/11/2021 7:33 AM  2021CH00106
FILED DATE: 12/9/2020 9:16 AM  2020OP20532

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

FILED
12/9/2020 9:16 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2020OP20532

Mona Dugo
_____
                          **Plaintiff(s)**

                    v.                            No. ___20OP20532_____

Fahad Syed
_____
                          **Defendant(s)**

**TO:** ____The Honorable Stephanie D. Saltouros #2161_____

**MOTION BY** _Defendant_____ **FOR** _Compel Discovery_____

Motion to Compel Discovery

Defendant, Fahad Syed, Pro Se, moves the court to enter an order pursuant to Ill. Sup. Ct. Rule 214 compelling,
Northwestern University, a body politic and corporate, one of the 3rd parties in the above-entitled cause to answer
Defendants request for production of documents served on 12/1/20 and 12/3/20, filed with the clerk on 12/1/20, a
true and correct copy of which is attached to this motion. In support of this motion, defendant certifies:

1. The attached request for production of documents was served in accordance with the certificate of service.

2. Following 8 days, Defendant failed to produce the documents or to make discovery otherwise.

3. The documents are relevant and material to Defendants cause of action in case 20DV20806 and 20OP20532.
Defendant will be irreparably injured if they are not produced by plaintiff.

For these reasons, Plaintiff moves the court for an order compelling Defendant to produce the documents in the
attached request for production pursuant to Ill. Sup. Ct. Rule 214.

**I (We) do hereby certify that a copy of this instrument was served upon all parties who have appeared
and have not previously been found by the Court to be in default for failure to plead.**

**Dated:** _12/9/20_____, _____ /s/ _____

                                                          **Attorney Certification**

**Atty. No.:** _99500_____
**Name:** _Fahad Syed_____
**Atty. for:** _Self_____
**Address:** _244 E Pearson St. Apt. 711_____
**City/State/Zip:** _Chicago, IL, 60611_____
**Telephone:** _773-564-0325_____

**IRIS Y. MARTINEZ, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

# Exhibit H

FILED DATE: 1/11/2021 7:33 AM    2021CH00106

**From:** **Fahad Syed** fahad-syed@law.northwestern.edu
**Subject:** Re: Family Contact is OFF BOUNDS
**Date:** November 4, 2020 at 8:48 AM
**To:** Office of Equity equity@northwestern.edu, Mona Dugo Mona.Dugo@northwestern.edu
**Cc:** Puja Singh Patel puja-patel@law.northwestern.edu, Emily Kadens kadens@law.northwestern.edu

Hello,

I asked this question yesterday and haven't gotten a response.

I don't think it takes that long to figure out which one of you has been contacting my sister in express violation of my instructions to Mona Dugo not to contact anyone I know, after she illegally contacted my therapist to slander me. I want an answer to this question, and believe me, just like the audio tape, I am not to stop asking until someone gives me the information.

Thanks,

Fahad Syed

> On Nov 3, 2020, at 7:10 AM, Fahad Syed <fahad-syed@law.northwestern.edu> wrote:
>
> Hello,
>
> I understand that the university has been contacting my sister without my knowledge or consent. Do you have an explanation for this?<Screen Shot 2020-10-31 at 7.59.44 PM.png><Screen Shot 2020-10-31 at 8.07.26 PM.png>
>
> Thanks,
>
> Fahad Syed

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

# Exhibit I

FILED DATE: 1/11/2021 7:33 AM    2021CH00106

Northwestern

September 24, 2020

**Sent Via Electronic Mail**

Ms. Venus M. Brown
Illinois Department of Human Rights
Fair Housing Division
Venus.Brown@illinois.gov

 *Re: IDHR Charge No. 2020CH2546 – Fahad Syed*

Dear Ms. Brown,

 Northwestern University respectfully submits this letter and the attached documents in response to the IDHR's request for information concerning the above-referenced charge.

 Mr. Syed is a current student at Northwestern University's Pritzker School of Law. Mr. Syed alleges that Northwestern University discriminated against him on the basis of religion (Islam) and national origin (Pakistani) by requesting that he vacate University housing in November 2019 within five days and "without any investigation . . . or wrongdoing on Complainant's part." Mr. Syed further alleges "that non-Pakistani students whose religion is not Islam have not been given a similar notice without prior investigation of complaints." Both allegations are false.

 Mr. Syed was interim suspended from the University on November 6, 2019 because it was alleged that he became incoherent and struck a student in the mouth with his fist at a University event. *See* **11.06.19 letter to F. Syed, attached hereto.** Northwestern University's Student Handbook states that students may be placed on interim suspension while the University investigates a matter when such action is necessary for reasons related to the safety and well-being of the University community. *See* **Northwestern University Student Handbook, pages 110-11**. The Handbook specifically states that students may be interim suspended for engaging in "[a]ction or threat of action that endangers or threatens to endanger the health, safety, or well-being of any person."

 As set forth in the handbook, students placed on interim suspension must "remove themselves immediately from the residence halls and/or fraternity or sorority residences, will not be permitted to attend class, and will be excluded from University property and University events." Mr. Syed's

**CONFIDENTIAL:** Northwestern University's Response to IDHR Charge No. 2020CH2546

1

**CONFIDENTIAL:** Northwestern University's Response to OCR Docket No. 05-20-2320

allegation that other students who are interim suspended do not face the same consequence is absolutely false; all students placed on interim suspension must follow the same policy.

If anything, Mr. Syed was treated more favorably than similarly situated students placed on interim suspension. Indeed, Mr. Syed's allegation that he was forced to leave the property in five days is not true. Todd Adams (then Associate Vice President and Dean of Students) told Mr. Syed he would "be given a period of time to find alternative housing," and individuals in the law school also offered to help Mr. Syed with housing concerns. ***See* 11.08.19 email from T. Adams, attached hereto**. Moreover, as noted on the Charge, Mr. Syed's current address appears to be 244 East Pearson Street, Apartment 711, Chicago, Illinois 60611. This is the address Mr. Syed was supposed to vacate in November 2019. Accordingly, it does not appear that he actually left the property.

Following the process in the Handbook, the University conducted a full investigation into Mr. Syed's conduct and notified him of the outcome of the related administrative hearing on December 19, 2019. The University concluded Mr. Syed struck a student in the face and acted in a way that was combative toward the police officers who responded to the incident. ***See* 12.19.19 letter from C. DePilla, attached hereto.**[1] Mr. Syed was then suspended from the University for one semester.

Accordingly, far from discriminating against Mr. Syed, the University followed its policy designed to protect the health, safety, and well-being of the University community in the same way it does when interim suspending any student.

In response to questions set forth in IDHR's July 28, 2020 letter, Northwestern offers the following additional information:
- Northwestern University does not currently own or manage this building.
- Northwestern University does not know whether the owners of the building receive federal financial assistance from the U.S. Department of Housing and Urban Development.
- The following individual has knowledge of the discipline imposed against Mr. Syed after he struck another student: Lucas Christain, Assistant Dean and Director of Student Conduct. If IDHR would like to schedule an interview with Mr. Christain, please let me know and I will coordinate the meeting.

Sincerely,

---

[1] Mr. Syed returned from his suspension in fall 2020. He was once again interim suspended on August 23, 2020 based on allegations that he violated the terms of his disciplinary probation, threatened to retaliate against a student, and verbally harassed and threatened another student on the basis of a protected class. Notably, it appears Mr. Syed is still living at 244 East Pearson St. ***See* 8.23.20 letter from Julie Payne-Kirchmeier, attached hereto.**

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

## Certificate of Service

The undersigned certifies that a copy of the foregoing response to IDHR Charge No. 2020CH2546 was served upon:

Fahad Syed
244 East Pearson Street
Apt. 711
Chicago, Illinois 60611

By depositing the same in the United States Mail in Evanston, Illinois on the 25th day of September, 2020.

FILED DATE: 1/11/2021 7:33 AM   2021CH00106



Peter J. Birnbaum
Chief Justice

STATE OF ILLINOIS

# COURT OF CLAIMS

630 SOUTH COLLEGE
SPRINGFIELD, ILLINOIS 62756

217/782-7101

Jesse White
Secretary of State
and Ex Officio Clerk
of The Court of Claims

Erica L. Katava
Deputy Clerk

NOVEMBER 24, 2020

SYED, FAHAD
244 E PEARSON AVE APT 711
CHICAGO  IL  60611-0000

RE: 20CV1772 - SYED, FAHAD

You are hereby notified that the above entitled claim has been
assigned to a commissioner.  The commissioner is:

SERPICO, RON
1807 N BROADWAY
MELROSE PARK  IL  60160

The commissioner will conduct a hearing on your claim if necessary.
You will be contacted by the commissioner at a later date concerning the
time and place of any hearing that may be required.

All pleadings should be filed with the Clerk's office. A copy of
each pleading must be sent to any opposing counsel (e.g the Illinois
Attorney General's Office). Each pleading may also be sent directly to
the commissioner. Motions must be accompanied by a proposed order.
Please refer to 74 IL.ADM.CODE 790.200.

Sincerely,

Illinois Court of Claims

EK: KS
CC: ATTORNEY GENERAL - CHICAGO
    COMM. SERPICO, RON

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

# Exhibit J

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

**From:** **Fahad Syed** fahadsyed2021@nlaw.northwestern.edu 🔗 🚩
**Subject:** VIOLATION: 405 ILCS 5/3-606 by OFFICER T. HEALY #22
**Date:** May 11, 2020 at 3:36 PM
**To:** Bruce Andre Lewis balewis@northwestern.edu, Cindy L Benson cindy.benson@northwestern.edu, Kenneth Jones
k-jones@northwestern.edu

---

To whom it may concern,

I would like to bring to the attention of the Northwestern University Police Department and Internal Affairs the violation of 405 ILCS 5/3-606 by Officer T. Healy #22 on 11/1/19 with regard to case 2019-00000595.

(405 ILCS 5/3-606) (from Ch. 91 1/2, par. 3-606)

   Sec. 3-606. A peace officer may take a person into custody and transport him to a mental health facility when the peace officer has reasonable grounds to believe that the person is subject to involuntary admission on an inpatient basis and in need of immediate hospitalization to protect such person or others from physical harm. Upon arrival at the facility, the peace officer may complete the petition under Section 3-601. **If the petition is not completed by the peace officer transporting the person, the transporting officer's name, badge number, and employer shall be included in the petition as a potential witness as provided in Section 3-601 of this Chapter.**

(Source: P.A. 96-1399, eff. 7-29-10; 96-1453, eff. 8-20-10.)

Below is a copy of the official petition with which I was served, clearly documenting (pg. 3) the violation of this statute through the absence of any identifying information from Officer Healy #22.

**Additionally, I would like to report the deliberate failure by Deputy Chief Chin to address this indisputable violation of state law despite repeated requests for investigation.**



Original
Petition.pdf

Best,

Fahad Syed

# EXHIBIT B – TAB 2

Return Date: No return date scheduled
Hearing Date: 5/11/2021 9:45 AM - 9:45 AM
Courtroom Number: 2508
Location: District 1 Court
        Cook County, IL

FILED
1/11/2021 7:33 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH00106

11624454

FILED DATE: 1/11/2021 7:33 AM  2021CH00106

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| FAHAD SYED, | ) | |
| | ) | |
| Plaintiff[s], | ) | |
| | ) | |
| vs. | ) | CASE NO. 2021CH00106 |
| | ) | |
| NORTHWESTERN UNIVERSITY | ) | |
| | ) | |
| Defendant[s]. | ) | |

## AFFIDAVIT OF FAHAD SYED IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AGAINST NORTHWESTERN UNIVERSITY

| | |
|---|---|
| STATE OF ILLINOIS | § |
| | § ss.: |
| COUNTY OF COOK | § |

FAHAD SYED, on oath states:

1.     I am a current student at Northwestern University Law School, I am the Plaintiff in this case and I submit this Affidavit in support of my motion for temporary retaining order.

2.     I have personal knowledge of the matters and facts set forth in this Affidavit, and, if sworn as a witness, I can testify competently to those matters and facts.

3.     Plaintiff is Fahad Syed, a first-generation college graduate from a low-income, racial and ethnic minority household and was raised by a single mother, and the first in his family to attend law school. Plaintiff's parents legally separated when he was 8 years old due to his father's violence towards the children, and Plaintiff grew up in an inner-city low-income housing project, a crime-laden environment devoid of positive male role-models and influences.

4.     Plaintiff suffers from multiple ADA learning and cognitive disabilities of bipolar disorder and ADHD, as well as anxiety and depression. One of the major "episodic manifestations" of Plaintiffs bipolar disorder are "psychotic episodes" triggered by stress, which induce varying levels of anger, paranoia, frustration, irritability, temper, etc. Attached hereto as Exhibit [1] is a true and correct copy of [Plaintiff's Individualized Learning Assessment].

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

5.      Plaintiff first made the decision to pursue law school in 2015, at the age of 25. Plaintiff had a successful career managing IT operations at a Fortune 100 company after graduating in 2012 with a 3.0 overall GPA from a Top 50 undergrad with a Top 10 undergrad business ranking with dual bachelors degrees in busines economics and political science and 3.3 and 3.9 major GPA's respectively. In addition, plaintiff holds multiple industry standard IT certifications, further illustrating his professional competency and capabilities. Plaintiff is actively involved in community building efforts and helped found a non-profit for refugee assistance (Iraqi Mutual Aid Society) during college and is currently affiliated with another non-profit (Inner-City Muslim Action Network) for which he does volunteering and other work. Attached hereto as Exhibit [2] is a true and correct copy of [Plaintiff College Transcripts]. Attached hereto as Exhibit [3] is a true and correct copy of [Plaintiff Volunteering Record].

## NU Law Class of 2017 Admission and Rejection

3.      Plaintiff always wanted to attend law school at NU, and his studying eventually paid off as he took the LSAT two times in 2017, receiving two 166 (93rd Percentile) scores on both attempts, and applied for Early Decision Admission to NU Law School in 2017 by the age of 27, but subsequently received a rejection. Attached hereto as Exhibit [4] is a true and correct copy of [LSAT Score Report]. Attached hereto as Exhibit [5] is a true and correct copy of [NU 2017 Rejection].

## NU Law Class of 2018 Early-Decision Admission

4.      Despite the rejection, Plaintiff was still determined to attend law school at NU, and studied and retook the LSAT again on two separate occasions, scoring 168 (96rd Percentile) and 170 (98rd Percentile) and successfully re-applied for admission through Early Decision ("ED") to Northwestern University Law School JD class of 2018 with 150K scholarship on December 13th, 2017 at the age of 28. This was the happiest moment of Plaintiff's life. Attached hereto as Exhibit [6] is a true and correct copy of [ED Acceptance].

## 2018 Discriminatory Conduct

5.      On April 26th, 2018 Plaintiff's 2018 Early-Decision Application and subsequent admission was subject to an unannounced post admission review which was highly irregular in process and was on the basis of "alleged inaccurate information in [Plaintiff's] Fall 2018 JD application related to [Plaintiff's] employment history, collegiate extracurricular activities, and family background." As far as plaintiff knows, no other 2018 early decision admit, nor 2018 general admit was subject to this kind of irregular "verification" based on "alleged inaccurate information" related to "employment history, collegiate extracurricular activities, and family background."  Attached hereto as Exhibit [7] is a true and correct copy of [Email From School].

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

6.  The source or intended meaning of allegations in paragraph 6 was never revealed, even after Plaintiff successfully cleared the investigation on May 21, 2018. As far as plaintiff knows, no other 2018 early decision admit, nor 2018 general admit who's application was subject to this kind of irregular "verification" based on "alleged inaccurate information" related to "employment history, collegiate extracurricular activities, and family background" ever successfully completed the verification without learning the source of the allegation nor the allegations themselves.

## 2018 Adverse Action and Discriminatory Sanctions

7.  As a result of this investigation, Plaintiff was forced to "defer" his admission and enrollment to 2019. Attached hereto as Exhibit [8] is a true and correct copy of [Deferral Letter].

## 2019 Re-Enrollment at NU Law

8.  In August 2019, Plaintiff enrolled in the class of entering JD class of 2019 at NU Law School at the age of 29 and started Fall 2019 Semester. Attached hereto as Exhibit [8] is a true and correct copy of [Class Schedule].

9.  During Fall 2019 Semester, Plaintiff was dealing with tremendous family concerns as Plaintiff watched his mother slowly start to pass away from ovarian cancer because she had finally become resistant to treatment.  Attached hereto as Exhibit [9] is a true and correct copy of [Yasmin Syed Death Certificate].

10.  During the months September and October of 2019, Plaintiff watched his mother slowly starved to death because she had finally become resistant to treatment, and metastatic ovarian cancer had filled her entire stomach and esophagus with tumors which made it so painful to eat that she chose to starve to death rather than be placed on a feeding machine. Because she elected his other siblings as her power of attorney and power to make health decisions, and specifically indicated a do not resuscitate order (DNR) and no life support options in her will, he was unable by law, to even suggest that if she tried to eat or find some way to get nutrition into her body, that she would live.

11.  Despite her impending passing and knowing that this was the last remaining time that he would have with her, because of his enrollment and commitment to law school, he sacrificed much of the precious time that he had left with his mother in order to attend classes and pursue coursework. Plaintiff would attend classes and complete coursework during the weekday working hours, come home and complete homework assignments, then travel up to Skokie from his apartment in Streeterville (1-hour trip on average) in order to spend time with his mother during the night. He sacrificed spending this time with her because his legal education and future legal career was the most important thing to him next to his late mother.

12.  Despite his family issues, Plaintiff tried to attend school and try to have relatively normal social experience by participating in social outings, joining student organizations and

3

FILED DATE: 1/11/2021 7:33 AM    2021CH00106

religious student groups, and trying to participate in the school group chat for the entering JD class of 2019.

13.     Despite the difficult learning environment Plaintiff was faced with, he was performing academically well in his courses, and had attended all 10 weeks of classes every day with good attendance and with satisfactory grades and was actively involved in class discussions, submitted coursework for credit and also submitted the mid-term writing assignment. Plaintiff was attending professors office-hours and spending significant time and effort attending to his academic responsibilities, indeed his Torts professor, Emily Kadens, saved the Palsgraff (a difficult torts case) case for his in-class discussion turn, and referred to him as the "smartest" person in the class in front of all the students on one occasion, and no one objected. In addition, plaintiff actively enjoyed interacting with staff and teachers, and frequently and enthusiastically expressed his interest and enjoyment in the academic subject matter and quality of instruction to staff.  Attached hereto as Exhibit [9] is a true and correct copy of [Midterm Assignment]

14.     Plaintiff's mother passed away on October 23rd, 2019, and after arranging her funeral and attending her burial, he spent a few days trying to rest and recover. Plaintiff then attempted to rejoin classes and school activities the next week.  Attached hereto as Exhibit [10] is a true and correct copy of [Burial Paperwork].

## 2019 Discriminatory Conduct and Hostile Environment– False Imprisonment

15.     On November 1, 2019, roughly one week after his mother died on October 23rd, 2019, at approximately 6:37 PM CST Plaintiff attended a law school event in the Levy Mayer wing of the law school building located at 357 E Chicago Ave., Chicago IL 6061 attended by defendant and University of Chicago (3L) law student REDACTED ("REDACTED") and defendants and fellow Northwestern University law students REDACTED (3L) ("REDACTED") and REDACTED (2L) ("REDACTED"), and approximately 60 other fellow law students from mine and other law schools in total. Attached hereto as Exhibit [11] is a true and correct copy of [Event Flyer].

16.     Plaintiff had attended the event to seek consolation for his mother's death and had not slept in 2-3 days prior to his attendance due to emotional distress. While at the event, Plaintiff was repeatedly targeted and harassed with threatening and invasive questioning and unwanted physical contact by an unknown male (REDACTED) on 4 separate occasions, culminating in a vicious physical attack where he kicked Plaintiff several times on the leg, then tackled Plaintiff onto the ground, and choked Plaintiff in a headlock until Plaintiff nearly lost consciousness. Defendant REDACTED took these actions acting in agency for Northwestern University and based directly on his perception of his mental impairment. As far as plaintiff knows, no other similarly situated 2019 early decision admit without disabilities, nor similarly situated 2019 general admit without disabilities was subject to this kind of vicious attack based directly on his perceived threat from their disability.   Attached hereto as Exhibit [12] is a true and correct copy of [OA Interview].

17.     No one witnessed this vicious physical assault. He then called out to his two friends (REDACTED and REDACTED) who were nearby, and together the three physically restrained Plaintiff, restricting his freedom of movement to leave the premises and with intent to

4

FILED DATE: 1/11/2021 7:33 AM    2021CH00106

initiate his imprisonment of plaintiff based on perceived mental impairment to Plaintiff. They then called NUPD and unlawfully told them that plaintiff was suffering from "mental illness" and falsely reported to police that Plaintiff attacked <sup>REDACTED</sup>.  Attached hereto as Exhibit [13] is a true and correct copy of [NUPD Police Report].

18.    Plaintiff was twice certified for involuntary inpatient admission by Jeremy Baker RN and Eugene Lozza MD of Northwestern Memorial Hospital on 11/2/19 within 2 hours of each other, while sedated and not in a reasonable capacity to understand the situation, not presented an explanation of rights in the situation, and without identification of clear and convincing evidence of imminent threat to the physical safety of self or others, in violation of 405 ILCS 5/3 admissions, hearing, and notice procedures. Defendants Northwestern Memorial Hospital and its agents took this action based on perceived mental impairment of plaintiff and hostility towards plaintiff's religion, perceived mental impairment and national origin and with willful failure to contact plaintiff's close family or relatives or make alternative arraignments for patient care.  The sole evidence that staff had supporting any threat to the safety of myself or others was the police report which falsely stated that Plaintiff had committed a battery.  Attached hereto as Exhibit [14] is a true and correct copy of [Original Petition]. Attached hereto as Exhibit [15] is a true and correct copy of [Certification #1]. Attached hereto as Exhibit [16] is a true and correct copy of [Certification #2]. Attached hereto as Exhibit [17] is a true and correct copy of [Healy Partial Petition].

## 2019 Adverse Action and Discriminatory Sanctions

19.    On 11/1/19, <sup>REDACTED</sup> then called the law school Dean of Students Susie Spies-Roth and initiated a separate, school disciplinary process. Attached hereto as Exhibit [18] is a true and correct copy of [UI Interview].

20.    NUPD Officer Healy #22 then notified his law school of the false narrative of this incident as it was recorded in the police report due directly to prejudice against his perceived mental health disability or threat he perceived as a result of his mental health disability and to save himself from disciplinary action as a result of his brutal unnecessary and excessive force perpetrated against Plaintiff due to his [Healy's] perceived threat from his ADA mental health disability status.  Attached hereto as Exhibit [13] is a true and correct copy of [NUPD Police Report].

21.    Plaintiff was served with an interim-suspension and notice papers on November 6th 2019 stating that the school had received a report that Plaintiff struck an individual in the "mouth" during a law school event, while Plaintiff was still inside the hospital, and Plaintiff was requested to evacuate his university-affiliated residence within 5 days of leaving the hospital on November 8th 2019, under penalty of trespass and further school sanctions.  Attached hereto as Exhibit [20] is a true and correct copy of [Original Suspension Notice].

22.    After Plaintiff was released from the hospital Plaintiff received two separate letters in the mail from his insurance company denying the hospitals requests on November 5th and November 7th of 2019 for insurance coverage of continued inpatient stay, stating on both occasions, that "an independent review organization medical doctor, board certified in Psychiatry" reviewed the requests and determined that "continued inpatient stay has not been

shown to be medically necessary to improve or correct your bipolar disorder." Attached hereto as Exhibit [21] is a true and correct copy of [Insurance Letters].

23.     Following Plaintiffs return from medical leave, Plaintiff was forced to undergo a brutal defamatory student conduct interviews, wherein the attackers explicitly and in writing, admitted to harassing Plaintiff on the basis perceived threat from his disabilities, and Plaintiff made every effort to attempt highlight the fact that the University had failed to uphold its duty to provide students with disabilities the opportunity to pursue education free of harassment and discrimination by reporting all of the discriminatory conduct to the university. Attached hereto as Exhibit [18] is a true and correct copy of [UI Interview]. Attached hereto as Exhibit [12] is a true and correct copy of [OA Interview].

24.     As part of the continuing pattern of harassment and discrimination, On December 19, 2019 DePilla and Cohen found Plaintiff guilty of "endangering myself or others" based off the testimony of his three attackers, and the police report which stated that Plaintiff battered REDACTED and REDACTED witnessed the battery, despite having full knowledge REDACTED had confessed to not witnessing anything except seeing Plaintiff being choked by REDACTED as he entered the room, and confessed to then aiding him [REDACTED] in physically restraining Plaintiff. Student conduct found that his attacker's repeated targeted and predatory harassment was justified because he was one of the "organizers" of the event and was concerned for vague and unspecified "safety" reasons, and because the three attackers articulated "consistent" stories with more detail and recollections, which are attributes of cognitive functioning which are directly impaired by Plaintiff's disability. Attached hereto as Exhibit [22] is a true and correct copy of [MM Interview]. Attached hereto as Exhibit [23] is a true and correct copy of [Final Decision Notice].

25.     Despite his strong disagreements and providing copious amounts of convincing and compelling evidence against his accusers, Plaintiff again worked with the administration of the law school a year in order to complete mental health assessments and a variety of other pre-conditions which would allow Plaintiff to return to school, this is because his legal education is the most important thing to Plaintiff in the entire world. As far as Plaintiff knows, no other similarly situated student without disabilities was subjected the pre-conditions discussed in this paragraph prior to their re-enrollment in the law school following a medical leave of absence directly related to their disability. Attached hereto as Exhibit [24] is a true and correct copy of [Re-Instatement Essay].

## 2020 Re-Enrollment at NU Law

26.     In mid-July of 2020 Plaintiff finally completed the last of his mandatory pre-conditions, and eagerly re-enrolled in the entering JD class of 2020. Attached hereto as Exhibit [25] is a true and correct copy of [Lucas Re-Instatement Letter].

27.     Plaintiff's Facebook is currently set to "private" mode for various reasons, as opposed to "public" mode, and no one outside of individuals who he is "friends" with on the application, and who he shares "groups" with on the application can search or find his information. Attached hereto as Exhibit [26] is a true and correct copy of [Profile Settings].

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

FILED DATE: 1/11/2021 7:33 AM    2021CH00106

28.    Plaintiff currently shares "Official Northwestern Pritzker Class of 2023 Admitted Students Page" with    REDACTED    a white female transgender incoming 1L student at NU Law. It is a "private" group with 280 members because only members can see who is in the group and what they post. It is solely on account of his sharing the aforementioned Facebook group with REDACTED that she was able to cyberstalk Plaintiff as indicated in the upcoming paragraphs, this is because only members can see who is in the group and what they post. Members who are outside of this group cannot search or find my profile because it is not in "public" mode.  Attached hereto as Exhibit [27] is a true and correct copy of [NU Facebook Group].

29.    Plaintiff wishes to make abundantly clear that he has never met or interacted with REDACTED   prior to these incidents in any way, shape, or form.

**Cyberstalking and Hate Crimes**

30.    On or around 8/21/20 I was cyberstalked by   REDACTED    a white female transgender incoming 1L student at NU Law, in violation of cyberstalking 720 ILCS 5/12-7.5. She committed a Hate crime in violation of 720 ILCS 5/12-7.1 (a) by cyberstalking me on the basis of actual or perceived mental disability. She conducted surveillance of me on "Google" and "Facebook" and other possibly hitherto unknown locations, observing and monitoring those sites with information, and gathered my personal and private information such as: my photograph, work history, contact information, dates about my school history, and dates about my pictures on a group chat and on Facebook, and educational history. She gathered my personal data, including my photo, from "Facebook," "Google," and other possible locations for malicious personal use on or around 8/22/20, and also to post it in first-year Law GroupMe chat titled "NU Kids on the Block '23" on or around 8/21/20. Attached hereto as Exhibit [28] is a true and correct copy of [Stalking Admission].

31.    On 8/22/20 at 2:22 AM  REDACTED    committed a Hate crime in violation of 720 ILCS 5/12-7.1 (a) by Transmission of obscene messages in violation of 720 ILCS 5/26.5-1(a) by Harassment through electronic communications in violation of 720 ILCS 5/26.5-3 by posting my private information which she gathered through surveillance in first-year Law GroupMe chat titled "NU Kids on the Block '23" in committing harassment based on ADA disabilities and Her actions caused me significant emotional distress by bringing up my last year in school, which was when my mother died, I was hospitalized for grief, and I had to withdraw from school for mental health concerns.  Attached hereto as Exhibit [29] is a true and correct copy of [Disability Harassment].

32.    On 8/22/20 at 2:22 AM  REDACTED    committed a Hate crime in violation of 720 ILCS 5/12-7.1 (a) by Transmission of obscene messages in violation of 720 ILCS 5/26.5-1(a) harassing me through electronic communications in violation of 720 ILCS 5/26.5-3 in a first-year Law GroupMe chat titled "NU Kids on the Block '23," wherein she committed the following acts:

33.    REDACTED    committed by transmission of obscene messages in violation of 720 ILCS 5/26.5-1(a) when she posted a disparaging image of a frog with the title "NO THOUGHTS EMPTY HEAD" in direct reference to a stereotype about people with mental

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

health problems and disabilities in a first-year Law GroupMe chat titled "NU Kids on the Block '23" on 8/21/20; directly comparing my mental capacity to that of a frog, insinuating that my mental capacity was equivalent to a frog which is a direct reference to my mental health and disability status and is a stereotype about people with mental health problems and disabilities Attached hereto as Exhibit [29] is a true and correct copy of [Disability Harassment].

34.   REDACTED   posted my private Facebook information on the chat, which included such as: my photograph, work history, contact information, dates about my school history, and dates about my pictures on a group chat and on Facebook, and educational history. Attached hereto as Exhibit [29] is a true and correct copy of [Disability Harassment].

35.   REDACTED   committed transmission of obscene messages in violation of 720 ILCS 5/26.5-1(a) when she inappropriately suggested I was under an "assumed identity," which is a stereotype about people with mental disabilities. Attached hereto as Exhibit [29] is a true and correct copy of [Disability Harassment].

36.   REDACTED   committed transmission of obscene messages in violation of 720 ILCS 5/26.5-1(a) when she posted the word "psyop" which was a direct reference to my mental capabilities and was directly related to my mental health, and she insinuated that I was undertaking a psychological operation, which is a blatant stereotype about people with mental health disabilities and other problems. Attached hereto as Exhibit [29] is a true and correct copy of [Disability Harassment].

37.   REDACTED   **committed Educational intimidation in violation of 720 ILCS 5/12-7.**2(a)(3) when she committed a violation of intimidation statutes 720 ILCS 5/12-6(a)(7) and 720 ILCS 5/126(a)(5) when she encouraged rampant negative speculation among the class about my mental health status by making several mischaracterizing and intentionally malicious comments aimed at making people think I was doing multiple stereotypical activities of people with mental health problems By posting my work history and by making all of the inappropriate suggestions and bringing up dates about my pictures, she encouraged the negative stereo type that people with mental health problems are not able to hold jobs, and that somehow my work and education history was something that I could not possibly have because of my mental health status and cognitive capacity. Therefore, by ridiculing and trying to poke holes in my work history and inciting hatred and speculation about me, they directed comments at my ADA disabilities.  Attached hereto as Exhibit [29] is a true and correct copy of [Disability Harassment].

38.   REDACTED   **committed Educational intimidation in violation of 720 ILCS 5/12-7.**2(a)(2) when her harassment "created a hostile environment and/or substantially interfered" with my "access to a University program or activity from an objective perspective" when I was banned immediately from group chat and discord after my comments in the chat, furthermore I was immediately suspended from school, thereby effectively impeded from those university activities directly resulting from REDACTED influence and injured in my property in educational opportunities and law career due to her malicious intent to get me expelled from school.  Attached hereto as Exhibit [30] is a true and correct copy of [Suspension Notice].

39.   REDACTED   **committed Educational intimidation in violation of 720 ILCS 5/12-7.**2(a)(1) and **720 ILCS 5/12-7.**2(a)(3) when she Engaged in intimidation in violation of 720 ILCS 5/12-6 (a)(1) by Indirectly threatening my safety when she posted my personal information in the first-year Law GroupMe chat titled "NU Kids on the Block '23" on 8/22/20,

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

thereby exposing me to unnecessary exposure and risk which I did not consent to by exposing me to risk of someone who could use that information to track me down and hurt me, both inside and outside of the law school. This is because the group me is not officially a school moderated activity, and other people from outside of the law school can request and gain access to it, this is proven by a total list of the chat members and comparison to the total number of law students in the class, specifically there are many more members of the chat than there are members of the incoming 1L class. At least some of those who were in the group chat were exposed to my private information as a result of <sup>REDACTED</sup> posts who would not otherwise have seen my information, absent <sup>REDACTED</sup> defamatory hate crime of posting my private information on the basis of my perceived disability. Attached hereto as Exhibit [29] is a true and correct copy of [Disability Harassment].

40.     On or around 8/22/20, after   REDACTED     had harassed me on the Group chat, and I had been removed from both the Discord and Group Me by other biased students, I made a legitimate offer to <sup>REDACTED</sup> to settle our grievances offline by offering my personal number and asking her to call me "if there was an issue." Attached hereto as Exhibit [31] is a true and correct copy of [Offer].

41.     REDACTED   **committed assault in violation of 720 ILCS 5/12-**1(a) when she put Plaintiff in imminent fear of battery when she **committed Educational intimidation in violation of  720 ILCS 5/127.**2(a)(1) and Intimidation in violation of 720 ILCS 5/12-6 (a)(1) when she engaged in harassment by telephone in violation of 720 ILCS 5/26.5-2 and directly threatened my safety by calling me at 1:08 AM on 8/23/20 in a threatening manner due to the late-night hour, menacingly asking "Is this Fahad Syed?" then paused and breathed into the phone menacingly, then failed to identify herself after repeated inquiry, replying only "you gave me your number" and "you told me to call you." She took my legitimate offer to settle our grievances offline to call me 1:08 AM threateningly and menacingly, instead of trying to arrange a meeting at normal hours via email or text. She took these actions in order to take advantage of my learning disability and vulnerability to bait and entrap me into responding, and then misleadingly misrepresent that situation to report to NU that I had threatened her safety. She also committed Aggravated assault in violation of 720 ILCS 5/12-2(a) by committing the assault resulting from gaining my information in "NU Kids on the Block '23" which is a school affiliated group, or a "place of public accommodation." She also committed aggravated assault in violation of 720 ILCS 5/12-2(b)(1) by knowingly assaulting a person with ADA disabilities. Attached hereto as Exhibit [32] is a true and correct copy of [Call #1].

42.     REDACTED committed intimidation in violation of 720 ILCS 5/12-6 (a) (1) when she engaged in harassment by telephone in violation of 720 ILCS 5/26.5-2 by illegally recording the phone conversation without my knowledge or consent in violation of Eavesdropping 720 ILCS 5/14-2(a)(2) when she used an eavesdropping device, her phone and/or another recording devise, in a surreptitious manner, for the purpose of transmitting or recording all or any part of any private conversation to which he or she is a party unless he or she does so with the consent of all other parties to the private conversation and Eavesdropping 720 ILCS 5/14-2(a)(3)  when she  recorded, or transcribed, in a surreptitious manner, any private electronic communication to which he or she is not a party unless he or she does so with the consent of all parties to the private electronic communication in order to maliciously and deceitfully get me expelled from law school. Attached hereto as Exhibit [33] is a true and correct copy of [Hate Crime Admission].

FILED DATE: 1/11/2021 7:33 AM    2021CH00106

43.      REDACTED   **committed Educational intimidation in violation of 720 ILCS 5/12-7.**2(a)(2) when REDACTED committed Eavesdropping in violation of 720 ILCS 5/14-2(a)(5) when she engaged in harassment by telephone in violation of 720 ILCS 5/26.5-2  and Harassment through electronic communications in violation of 720 ILCS 5/26.5-3 when she used or disclosed any information which he or she knows or reasonably should know was obtained from a private conversation or private electronic communication in violation of the Article, doing so without the consent of all of the parties and disclosing that information to NU representatives Ish Faith-Orkar and Heather Cohen on 8/27/20 and 10/29/20 in order to maliciously and deceitfully get me expelled from law school. Attached hereto as Exhibit [34] is a true and correct copy of [Suspension Notice].

44.      REDACTED   **committed Educational intimidation in violation of 720 ILCS 5/12-7.**2(a)(3) and she committed intimidation in violation of 720 ILCS 5/12-6(a)(7) and 720 ILCS 5/12-6(a)(5) by inciting, encouraging, and/or influencing "REDACTED an incoming female 1L , to speculate negatively "According to 2Ls, last year he escalated in his aggressive behavior and speech after being kicked out of the group me. Unfortunately in person at times. If he messages any of you, rather than engaging with him I recommend emailing [NU] with screenshots," in the first-year Law GroupMe chat titled "NU Kids on the Block '23" on 8/22/20. Where REDACTED and REDACTED had previously met and spoken. Attached hereto as Exhibit [35] is a true and correct copy of [JS Evidence].

45.      REDACTED   **committed Educational intimidation in violation of 720 ILCS 5/12-7.**2(a)(1) and **720 ILCS 5/12-7.**2(a)(3) when and she committed intimidation in violation of 720 ILCS 5/12-6(a)(7) and 720 ILCS 5/12-6(a)(5) by inciting, encouraging, and/or influencing "REDACTED," an incoming white male 1L , to state "Please keep further discussion about Fahad at a respectful level, and preferably at a minimum, outside of what is necessary" after removing me from in the first-year Law GroupMe chat titled "NU Kids on the Block '23" on 8/22/20. Where REDACTED and REDACTED had previously met and spoken. Attached hereto as Exhibit [35] is a true and correct copy of [JB Evidence].

46.      REDACTED   **committed Educational intimidation in violation of 720 ILCS 5/12-7.**2(a)(1) and **720 ILCS 5/12-7.**2(a)(3)and she committed intimidation in violation of 720 ILCS 5/12-6(a)(7) and 720 ILCS 5/12-6(a)(5) by inciting, encouraging, and/or influencing "REDACTED a white female lesbian NU LGBTQ Student Organization Leader to an current 2L , to unfairly influence school administration to suspend me from NU on Behalf of REDACTED on 8/23/20, where REDACTED forwarded messages and screenshots and called Shannon Bartellete, the associate dean of Inclusion and Engagement to speak to Associate Dean and Dean of Students Susie Spies Roth and others. Where REDACTED sent REDACTED and email falsely indicating that Plaintiff had initiated the phone contact between REDACTED and Plaintiff and where REDACTED and REDACTED had previously met and were both part of the LGBTQ affinity group. Attached hereto as Exhibit [37] is a true and correct copy of [GC Interview].

47.      REDACTED   **committed Educational intimidation in violation of 720 ILCS 5/12-7.**2(a)(3) and she committed intimidation in violation of 720 ILCS 5/12-6(a)(7) and 720 ILCS 5/12-6(a)(5) by inciting, encouraging, and/or influencing "REDACTED a female transgender 2L student at Northwestern Law, to harass me six separate times with unwanted comments on Facebook on 8/23/20, where she made repeated reference to me "sliding into white girls dm's" and other harassing comments on my status posts. Where REDACTED and REDACTED had

previously met and were both part of the LGBTQ affinity group. Attached hereto as Exhibit [38] is a true and correct copy of [IC FB Harassment].

48.    REDACTED    committed Educational intimidation in violation of **720 ILCS 5/12-7.**2(a)(3) and she committed intimidation in violation of **720 ILCS 5/12-6**(a)(7) and **720 ILCS 5/12-6**(a)(5) by inciting, encouraging, and/or influencing "REDACTED," a white female incoming 1L student, to harass me with offensive statements on Dischord on 8/23/20 on Behalf of REDACTED where both REDACTED and REDACTED had previously spoken and met. Attached hereto as Exhibit [39] is a true and correct copy of [TW Dischord Harassment].

49.    REDACTED    committed Educational intimidation in violation of **720 ILCS 5/12-7.**2(a)(1) and **720 ILCS 5/12-7.**2(a)(3) when and she committed intimidation in violation of 720 ILCS 5/12-6(a)(7) and 720 ILCS 5/12-6(a)(5) by inciting, encouraging, and/or influencing "REDACTED," an incoming white female male-transgender 1L , to participate in a student disciplinary hearing against me where she stated during an interview on 9/1/20 that "while this semester is largely remote, [I] don't want to be in the hall with him to and from class and have some sort of confrontation," and where she said it would be "Very easy to imagine using the women's restroom" and seeing him go in and out of the restroom at the same time, "and… start a confrontation." Where REDACTED and REDACTED had previously met and were both part of the LGBTQ affinity group. Attached hereto as Exhibit [40] is a true and correct copy of [WC Interview].

50.    REDACTED    committed Educational intimidation in violation of **720 ILCS 5/12-7.**2(a)(1) and **720 ILCS 5/12-7.**2(a)(3)and she committed intimidation in violation of 720 ILCS 5/12-6(a)(7) and 720 ILCS 5/12-6(a)(5) by inciting, encouraging, and/or influencing "REDACTED a white female lesbian NU LGBTQ Student Organization Leader to an current 2L , to participate in a student disciplinary hearing against me where she stated during an interview on 9/2/20 that "she is working on an action plan so this doesn't happen again." She also stated "(This feeling is) reciprocated among our board, because they were all taking about it [the group chat altercation] as it happened" further indicating the defamatory rumors and hate and ridicule REDACTED incited about me to the law school. Where REDACTED and REDACTED had previously met and were both part of the LGBTQ affinity group. Attached hereto as Exhibit [37] is a true and correct copy of [GC Interview].

51.    REDACTED    committed Educational intimidation in violation of **720 ILCS 5/12-7.**2(a)(1) and **720 ILCS 5/12-7.**2(a)(3) when and she committed intimidation in violation of 720 ILCS 5/12-6(a)(7) and 720 ILCS 5/12-6(a)(5) by inciting, encouraging, and/or influencing "   REDACTED   ," who is on information and belief, an incoming gay 1L , to participate in a student disciplinary hearing against me where he falsely claimed during an interview on 10/27/20 that I was making comments "geared directly at a person's attributes" in attempting to mischaracterize and defame me as a transphobic person. Where REDACTED and REDACTED REDACTED had previously met and were both part of the LGBTQ affinity group. Attached hereto as Exhibit [41] is a true and correct copy of [ALR Interview].

52.    REDACTED    committed Educational intimidation in violation of **720 ILCS 5/12-7.**2(a)(1) and **720 ILCS 5/12-7.**2(a)(3) when and she committed intimidation in violation of 720 ILCS 5/12-6(a)(7) and 720 ILCS 5/12-6(a)(5) by inciting, encouraging, and/or influencing "REDACTED," an incoming 1L , to participate in a student disciplinary hearing against me where she stated during an interview on 10/27/20 that "there were rumors concerning the first

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

time Fahad was in law school two years ago." <sup>REDACTED</sup> indicated that it was "rumored that due to inappropriate physical conduct, Fahad left law school two years in a row and this fall was placed in section 4." Where <sup>REDACTED</sup> and <sup>REDACTED</sup> had previously met and knew each other. Attached hereto as Exhibit [42] is a true and correct copy of [SP Interview].

53.      REDACTED   **committed Educational intimidation in violation of <u>720 ILCS 5/12-7.2 (a)(2)</u>**, when she engaged in harassment by telephone in violation of <u>720 ILCS 5/26.5-2</u> and Harassment through electronic communications in violation of <u>720 ILCS 5/26.5-3</u> by texting me at 8:34 PM on 8/23/20, after knowingly cooperating with NU to have me suspended earlier that day, in order to further target my ADA learning disabilities and associated vulnerability to maliciously provoke and entrap me into a response. She knew that she had been suspended with a no-contact order, and was attempting to again lure me into responding because, due to my ADA disability, she knew I had an irritable disposition, so then she could maliciously report me for violating the no-contact order which she was fully aware was in place resulting directly from her actions and cooperation with NU. Attached hereto as Exhibit [43] is a true and correct copy of [Text After No-Contact Order].

54.      REDACTED   **committed Educational intimidation in violation of <u>720 ILCS 5/12-7.2 (a)(2)</u>**, when she engaged in harassment by telephone in violation of <u>720 ILCS 5/26.5-2</u> and Harassment through electronic communications in violation of <u>720 ILCS 5/26.5-3</u> by communicating to the law class about me by posting my private information in the first-year Law GroupMe chat titled "NU Kids on the Block '23 from 8/22/20-8/23/20, communicating to others about me by making and encouraging defamatory speculation and remarks directed towards ADA disabilities for the purposes of having me maliciously expelled from law school. Attached hereto as Exhibit [40, 37] is a true and correct copy of [WC Interview, GC Interview, GC Email].

55.      REDACTED   committed **Criminal damage to property in violation of <u>720 ILCS 5/21-1)(a)(1)</u> in excess of $100,000, she committed Educational intimidation in violation of <u>720 ILCS 5/12-7.2 (a)(2)</u>** and **<u>ILCS 5/12-7.2 (a)(3)</u>** and she committed intimidation in violation of <u>720 ILCS 5/12-6</u>(a)(7) and <u>720 ILCS 5/12-6</u>(a)(5) by damaging to my property in the form of my personal and professional reputation, character, and personal and professional career and learning opportunities within the law school and legal profession by defaming me and inciting hatred and speculation against me in first-year Law discord chat on 8/21/20 or 8/22/20 in order to get me maliciously expelled from law school. Attached hereto as Exhibit [44] is a true and correct copy of [Expulsion Notice]. Attached hereto as Exhibit [40, 37] is a true and correct copy of [WC Interview, GC Interview, GC Email].


### 2020 Conspiratorial Disability Harassment and Unlawful Obstruction of Justice


56.      On information and belief, sometime around 8/23/20, The Interim University Dean of Students, Mona Dugo ("Dugo"), and the Deputy Chief Eric Chin ("Chin") of Northwestern University Police Department (NUPD) negligently suspended Plaintiff (Fahad Syed: Current 1L Law Student) from Northwestern University Law School, and reported Plaintiff to the Northwestern University Police Department (NUPD), for a perceived threat from

his disability which resulted from communications between Plaintiff and fellow current 1L REDACTED and occurred between 8/22/20-8/23/20. She called Plaintiff on 8/23/20 and explicitly stated "we've been watching your Facebook and other social medial posts" and on a 3-way call with Chin, Dugo, and Plaintiff. Attached hereto as Exhibit [34] is a true and correct copy of [8/23/20 Suspension Notice].

57.     On 8/27/20, Plaintiff filed Department of Education, Office of Civil Rights Complaint #05-202444 alleging discrimination on multiple grounds, including disability discrimination and hostile environment.  Attached hereto as Exhibit [47] is a true and correct copy of [DOE Complaint].

58.     On 9/3/20 at 7:45 AM, Plaintiff informally and indirectly notified the university via email to Lucas Christian of the Office of Community Standards that the Plaintiff had complained about the University to an outside entity, Illinois Department of Human Rights and Illinois Guardianship and Advocacy Commission.  Attached hereto as Exhibit [48] is a true and correct copy of [Email Notification #1].

59.     On 9/3/20 at 9:05 AM, Plaintiff wrote an email addressed, in part, to Dugo and Chin, requesting the chat transcripts of the incident which resulted in his suspension on 8/23/20. Attached hereto as Exhibit [49] is a true and correct copy of [Email Requesting Documents].

60.     On 9/13/20 at 1:49 PM Plaintiff formally notified the University via email to The Office of Equity, its employees Amanda DeSilva and Ish Faith Orkar, and Lucas Christian and Heather Cohen of the Office of Community Standards, that the Plaintiff had complained about the University to an outside entity: The Department of Education, Illinois Department of Human Rights, and Illinois Guardianship and Advocacy Commission. Attached hereto as Exhibit [50] is a true and correct copy of [Email Notification #2].

61.     On 9/14/20 at 5:29 PM, Chin had unauthorized telephone communications with Plaintiff's private psychiatrist(s) in violation of the IMHDDCA and HIPAA. Chin left Tobin a voicemail specifically, twice, acknowledging that he did not have an ROI for contacting him [Tobin], and requesting to "share information" with him and requesting Tobin call him back on his cell phone.  Attached hereto as Exhibit [51] is a true and correct copy of [Chin Contacting Tobin].

62.     On 9/14/20 at 6:11 PM PLAINTIFF was notified via email by his therapist, Brian Tobin ("Tobin"), that Deputy Chief Chin had contacted him, and he [Tobin] subsequently asked Plaintiff to sign an ROI form. Attached hereto as Exhibit [52] is a true and correct copy of [Notification of Chin Contact].

63.     On 9/15/20 at 12:11 PM, during a 6-minute incoming phone call, NUPD Detective Sanghoon Lee ("Lee") inappropriately contacted and aggressively questioned Plaintiff regarding Plaintiff's Facebook post about his discrimination complaint with the Department of Education, in order to retaliate against Plaintiff for making said complaint, and to threaten, intimidate, and coerce Plaintiff into dropping said complaint. During this call, Lee said "you know why I'm calling," mentioned Dugo by name, and instructed Plaintiff not to post anything about Dugo without "running it by [Lee's] office first." Plaintiff indicated to Lee that Plaintiff had filed the DOE complaint, gave Lee the complaint number, and directed Lee to "contact [Plaintiff's] attorney regarding the posts if he had any other questions." Attached hereto as Exhibit [53] is a true and correct copy of [Retaliation Call #1].

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

FILED DATE: 1/11/2021 7:33 AM    2021CH00106

64.     On 9/16/20 at 3:03 PM, Dugo had unauthorized email communications with Plaintiff's private psychiatrist, Brian Tobin, in violation of the Illinois Mental Health and Developmental Disabilities Confidentiality Act (IMHDDCA) and Health Insurance Portability and Accountability Act (HIPAA) under the pretext of responding to Plaintiff's 9/3/20 email requesting group transcripts. In the communication, she stated: "I'm not sure if Fahad signed a release of information when he made this request. I would like to be able to share some information with you as we have a lot of on going concerns about Fahad." Attached hereto as Exhibit [54] is a true and correct copy of [Dugo Contact #1].

65.     On 9/22/20, The Dean knowingly and inappropriately shared an illegally obtained audio recording of Plaintiff, of a phone call with another current law student (1L REDACTED from 8/22/20, with Plaintiff's medical providers in order to assassinate his character in retaliation for the Department of Education complaint which she referenced during the call and is discussed in the letter from the his therapist. The Dean discriminated against me on the basis of his mental health, in retaliation for the Department of Education complaint which, and which she was fully aware through the university on 9/3/20 through an email to Lucas Christian and 9/13/20 through an email to the Office of Equity. Attached hereto as Exhibit [55] is a true and correct copy of [Tobin Affidavit].

66.     On or around 9/28/20, during their next session, Plaintiff's therapist, Brian Tobin, informed Plaintiff of the audio recording. It was at this time that Plaintiff realized that this audio which was illegally submitted to his university by     REDACTED     and illegally resulted in his suspension sometime around 8/23/20.

67.     On or around 9/28/20 as a result of the aforementioned unlawful contact with Plaintiff's therapist, Mona Dugo, Eric Chin, and Sanghoon Lee were repeatedly informed not to contact "anyone who [Plaintiff] knows" including Plaintiffs family members via text messages from plaintiff to their cells phones.

68.     On 9/29/20 at 1:53 PM Plaintiff was contacted via email by his Christopher Farrelly, his DOE investigator for complaint #05-20-2444, asking Plaintiff to call him as soon as possible. Attached hereto as Exhibit [56] is a true and correct copy of [NU Contact Notification].

69.     On 9/29/20 at 4:40 PM, Mr. Farrelly informed Plaintiff that NU contacted him regarding Plaintiff's DOE complaint. Attached hereto as Exhibit [57] is a true and correct copy of [NU Contact Explanation]. Attached hereto as Exhibit [58] is a true and correct copy of [NU Contact Confirmation].

70.     On 10/10/20, at 8:33 PM PLAINTIFF attempted to file an eavesdropping charge with Northwestern University Police Deputy Chief Eric Chin via text message for a phone call which PLAINTIFF took at his apartment in the 18th district (244 E Pearson St), which was illegally recorded and submitted to his law school, resulting in his suspension. At 8:44 PM Chin responded via text and instructed Plaintiff to file a report with Chicago Police Department (CPD) because NUPD did not have jurisdiction in the matter. Attached hereto as Exhibit [59] is a true and correct copy of [Chin Refusal].

71.     On 10/11/20, PLAINTIFF filed a police report for Eavesdropping in the CPD 18th district, with the non-emergency line (312-746-6000) because they have jurisdiction over a phone call which PLAINTIFF took at his apartment in the 18th district (244 E Pearson St) which was illegally recorded and submitted to his law school, resulting in his suspension. Reporting

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

Officer Aldahhondo (Star 5142) took the report and Supervisor O Shaughnessy (Star 1829) approved it. (Report JD 395786 attached). Attached hereto as Exhibit [60] is a true and correct copy of [JD 395768].

72.     On 10/14/29, NUPD Detective Lee called Plaintiff and brutally interrogated Plaintiff for 18 minutes about exactly how and when Plaintiff found out about the illegal audio tape. Had the illegal audio tape not been made and the university not knowingly suspended me over it, Plaintiff would never have received such an intimidating and harassing interrogation. During the call the detective asked my CPD report number and claimed that he was filing a report with NUPD. Approximately 3 days later he called Plaintiff provided him with report 2020-0356 which he claimed was filed for the eavesdropping case.  Attached hereto as Exhibit [61] is a true and correct copy of [Retaliation Call #2].

73.     On 10/19/2020, at approximately 3:00 PM PLAINTIFF called CPD non-emergency (312746-6000) and was told by the officer on duty, Philp (Emp #19035)  that the report had been "cancelled without investigation," citing a "lengthy cancellation report" involving "NUPD Deputy Chief Chin and the sergeant" as the reason. Attached hereto as Exhibit [60] is a true and correct copy of [ JD 395768].

74.     Sometime between 10/11/20 – 10/19/20, Chin cancelled his report illegally by illegally revealing his mental health history to the detective without having an ROI in violation of the Illinois Mental Health and Developmental Disabilities Confidentiality Act and Health Insurance Portability and Accountability Act of 1996 (HIPAA), discriminating against Plaintiff on the basis of his mental health, in retaliation for the Department of Education complaint which PLAINTIFF filed on 8/27/20, and which he [Chin] was fully aware through the university on 9/3/20 through an email to Lucas Christian and 9/13/20 through an email to the Office of Equity. The call in question never took place on University property, and DC Chin knew that due to the prior text conversation.  Attached hereto as Exhibit [60] is a true and correct copy of [CPD Report #1].

75.     He [Chin] revealing that plaintiff had involuntarily committed to a hospital in November 2019 for an involuntary mental evaluation, directly and deliberately implying or stating to the detective that PLAINTIFF was crazy and his lawful report shouldn't be investigated on the basis of his mental health status. Attached hereto as Exhibit [60] is a true and correct copy of [CPD Report #1].

76.     He also told the detective and express lie about his consent during the recording in question: telling the detective that PLAINTIFF consented having his conversation recording when PLAINTIFF did not, as was the very reason why PLAINTIFF filed the eavesdropping report. PLAINTIFF did not consent to having his conversation recorded, nor did PLAINTIFF have knowledge of the recording at any time, and DC Chin knew that because I attempted to file the report with him first.  Attached hereto as Exhibit [59] is a true and correct copy of [Chin Refusal]. Attached hereto as Exhibit [60] is a true and correct copy of [CPD Report #1].

77.     As a result of the call, plaintiffs report (JD 395768) was cancelled.  Attached hereto as Exhibit [60] is a true and correct copy of [CPD Report #1].

78.     In approximately 10 separate follow-up calls and 50 text messages to Lee, which occurred in the weeks after my CPD report was cancelled, he never responded to my follow-ups about report 2020-0356. This proves that his purpose in interrogating me was under the false

15

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

pretext of filing a report whereas in reality he was retaliating for my CPD report and my DOE complaint. Attached hereto as Exhibit [62] is a true and correct copy of [Request for Police Reports]. Attached hereto as Exhibit [62] is a true and correct copy of [Subpoenas #1, #2, #3].

79.     On information and belief, sometime between 10/11/20 – 10/19/20, Chin called and told CPD non-emergency response officers (312-746-6000), between 12pm-6pm, not to respond to reports about eavesdropping from students at Northwestern, or informed the desk sergeant of such.

80.     PLAINTIFF called CPD non-emergency (312-746-6000) 6-7 times in a row between 3p-5pm on 10/19/2020 in order to file another report, and as soon as PLAINTIFF told them PLAINTIFF was a student from NU filing an eavesdropping report, they hung up.

81.     On information and belief, on or around on the week of 10/19/2020, Chin called Area 3 Supervising Detective Rose #982 at (312-744-8263) and asked him not to respond to reports about eavesdropping from students at Northwestern or related cancellations. On 10/19/2020 PLAINTIFF called Area 3 Supervising Detective Rose #982 at (312-744-8263) from 4-5PM , to report the incident of improper cancellation of my report, citing jurisdiction, and he refused to disclose any details about why the report was cancelled, telling me to "file another report."

82.     On information and belief, on or around on the week of 10/19/2020, Chin called and told 18th District Supervisor Sergeant Vogt at (312-742-5870) and asked him not to respond to reports about eavesdropping from students at Northwestern or related cancellations. On 10/19/2020 PLAINTIFF called 18th District Supervisor Sergeant Vogt at (312-742-5870) from 4-5PM , to report the incident of improper cancellation of my report, citing jurisdiction, and he refused to disclose any details about why the report was cancelled, telling me telling me "civil litigation" is an option.

83.     Deputy Chief Eric Chin took these actions to prevent the illegal audio tape from being revealed in retaliation for the Department of Education complaint which PLAINTIFF filed, in order to conceal his and the universities negligence, and their knowing harboring and supporting of a malicious criminal,   REDACTED    Chin also took these actions to conceal the fact that he and Dugo were aware of the illegality of the audio tape, and still suspended me over it, which is also why PLAINTIFF filed his Department of Education Complaint, and to punish Plaintiff for filing said complaint.

84.     All of the actions taken by Dugo, Chin, and Lee, including slandering ones reputation to their therapist, especially given mental disabilities, brutal interrogation, and causing a report to be cancelled without informing them, would deter a reasonable person from complaining.

85.     The illegal conduct of the   REDACTED    illegally recording me and illegally submitting the tape to the university in order to have me suspended, caused the university to knowingly use it to suspend me due to bias. That suspension then caused me to file a discrimination claim with the DOE and ultimately to file the police report with CPD.

86.     The discrimination claim with the DOE caused Chin to illegally contact Plaintiff's therapist in order to slander him with an illegal audio tape, Dugo to illegally contact Plaintiff's therapist and slander Plaintiff's reputation maliciously with an illegal audio tape, Lee to

FILED DATE: 1/11/2021 7:33 AM  2021CH00106

aggressively and harassingly call me once, and Lee to brutally and menacingly interrogate me another time.

87.     Filing the DOE complaint about discriminatory and bias suspension later caused me to file the CPD report about the discriminatory use of the illegal audio tape in order to strengthen my discrimination complaint for legal proceedings which would occur during litigation.

88.     Filing the CPD report caused Chin to have my CPD report cancelled. Therefore, the filing DOE complaint caused me to file the CPD report, which caused Chin to have my CPD report cancelled through disability discrimination

89.     On 11/2/20 Plaintiff filed a report with the Civilian Office of Police Accountability about Chins illegal disclosure of my mental health history. On 11/5/20 the complaint Log 2020-0004964 was assigned to Sgt. Mark K Lamberg (Star# 1847) to be investigated by Chicago Police Department Bureau of Internal Affairs Division Officer Lambert, with whom I interviewed 11/9/20 at CPD Headquarters regarding the incident.  Attached hereto as Exhibit [63] is a true and correct copy of [COPA Complaint #1].

90.     On 11/3/20 Plaintiff filed an eavesdropping report again with Chicago Police Department, JD 419862. The report is currently assigned to Detective Lee of CPD with an unnamed offender.  Attached hereto as Exhibit [64] is a true and correct copy of [JD 419862].

91.     Mona Dugo, Eric Chin, and Sanghoon Lee were repeatedly informed not to contact Plaintiffs family members via text messages from plaintiff to their cells phones occurring on or around 9/28/20.

92.     On or around 11/3/20, Plaintiff learned from his brother-in-law Azam Hussien (312-303-3736) via text message that someone person or persons from the university had contacted my sister, Sophia Syed (847-347-3736) and requested discussion for "hours" about Plaintiff and his school situation without Plaintiff's knowledge or consent. This is after Plaintiff expressly forbade the university, through text message to Mona Dugo after she shared the illegal audio with Plaintiffs therapist, that no one who Plaintiff "knows" should be contacted, including most importantly: plaintiff's family members. NU and NUPD and its representatives contacted Plaintiff's sister in retaliation for his COPA report, his police report, and his DOE Report. Attached hereto as Exhibit [65] is a true and correct copy of [Azam Text].

93.     Shortly after learning that someone had contacted Plaintiff's family in direct conflict with his wished, Plaintiff texted Defendants NU, Dugo, Chin, and Lee to determine why they had contacted Plaintiff's family and who had authorized such unlawful contact.

94.     On 11/4/20, Plaintiff received Official Northwestern Correspondence email from the Office of Community Standards indicating several more disciplinary sanctions and another UHAS hearing in retaliation for the filing of plaintiff's police report and DOE complaint. The stated pretext for this disciplinary action was that Plaintiff was being disciplined for texting Chin, Dugo, and Lee about his DOE complaint and about the police report, about the various retaliatory measures taken against plaintiff and for the contacting of Plaintiff's sister without Plaintiff's permission. NU and NUPD and its representatives sanctioned plaintiff in retaliation for his COPA report, his police report, and his DOE Report. NU displayed awareness of the multitude of illegal and discriminatory and illegal conduct which I texted Chin, Dugo, and Lee

and were in a position to take corrective action and failed to do so. Attached hereto as Exhibit [66] is a true and correct copy of [Retaliatory Sanctions #2].

95.     On 11/6/20 Plaintiff was served with a protection order ("PO") (Case 200P20532) for harassment and Stalking from the Cook County Sheriffs office, in which Dugo made several misleading allegations as to my contact with her due to her official capacity as dean of students. The stated pretext was that I was sending her "100's of harassing messages" whereas in reality I was informing her of discrimination which is ongoing and pleading for her to step in and stop it due to her duty as dean of students. This pretext was a cover for her requesting both a threat assessment and a protecting order against me based SOLEY off threat from my perceived disability in retaliation for my DOE complaint. The stalking no contact order was taken especially to label me as a sexual offender in retaliation for my DOE complaint. Attached hereto as Exhibit [67] is a true and correct copy of [Retaliatory PO].

96.     The PO revealed that Dugo, through her official capacity at the University, contracted with "Sigma Threat" in order to harass Plaintiff in retaliation for filing his DOE Complaint and retaliation complaints to the university. The stated pretext for this was to "help evaluate his threat level" and was a cover for her contracting the service on the basis of threat from my perceived disability in retaliation for filing his DOE Complaint. Attached hereto as Exhibit [68] is a true and correct copy of [PO Pleadings].

97.     In addition, she made derogatory and misleading accusations in PO about the Holy Quran Chapter 33, Verses 60-68: referring to them as "translated as sinners will die in a fire". She took the protection order for harassment and stalking based on perceived threat from Plaintiffs religion. Attached hereto as Exhibit [68] is a true and correct copy of [PO Pleadings].

98.     Her allegations in support or PO were misleading or defamatory in the following ways:

   a.   She claims she "had to issue" Plaintiff "interim suspension for threatening a fellow law student w/ physical violence." This is false, she knows that the student in question,   REDACTED   stalked me and then posted my information to a group chat and made derogatory statements about my disability, then called me at 1:08 am in a threatening manner and recorded BOTH the call that she made to me and the call that I made in response. These two illegal audio tapes are what Dugo actually suspended me over. She misrepresented this fact deliberately in order to make me seem like a dangerous person.

   b.   She claims I was on probation for "physically assaulting another student." This is false, she knows that there was absolutely no evidence whatsoever that I assaulted anyone aside from that single persons unsubstantiated allegations. She misrepresented this fact deliberately in order to make me seem like a dangerous person. I have filed Attorney General Case 20cv1772 pursuant to this allegation.

   c.   She claims that I have sent her "more than 150 unanswered text messages with increasingly aggressive language." This is without indicating that the messages are sent to her because of her official capacity as dean of students, and because I am telling her about discrimination committed by Deputy Chief Eric Chin of NUPD, Lee of NUPD, and others in the University and asking her to stop them. The "aggressive language" she is referring to is the increasing amount of litigation

18

and legal proceedings that I am threatening her with if she does not cease her illegal conduct.

d.   She claims she "has not" monitored my Facebook. This is blatantly false, because she on 8/23/20 she called me and explicitly stated "we've been watching your facebook and other social medial posts" and she also directed detective Lee to call me and interrogate me on the basis of her perceived threat from my Facebook post about my Department of Education Complaint.

e.   She claims that I am sending her "harassing" messages to her work email when in reality I sent her two follow emails demanding to know who contacted my sister when I told her not to.

f.   She claims that Plaintiff called her and that she hung up the phone, which is a lie. Plaintiff called her and HE hung up the phone, not Dugo. She deliberately misrepresented this fact to make it seem like Plaintiff was harassing her, when in reality she was harassing Plaintiff and his sister, acting far beyond the scope of her responsibilities as Dean of Students, and escalating the situation to the current severity level.

g.   Attached hereto as Exhibit [68] is a true and correct copy of [PO Pleadings].

99.    On 11/11/19 at approximately 3:00 PM Plaintiff attempted to file a police report in order to get   REDACTED   named as the offender on the police report at Chicago 18th District and two officers obstructed me from doing so, as a result I filed COPA complaint Log 2020-0005122. Attached hereto as Exhibit [69] is a true and correct copy of [COPA Report #2].

100.    On 11/17/20, Plaintiff went to domestic violence court at 555 W Harrison and stated claims for SNCO against both   REDACTED   (20OP78283) and Mona Dugo (20OP78277), which were deemed worthy of a hearing by the Honorable Judge Thomas M. Cushing #2258.  Attached hereto as Exhibit [70] is a true and correct copy of [PO 78277].

101.    On 11/18/20 Log 2020-0005122 was assigned CPD Sergeant Lisa Eitel (Star #2075) and on 11/22/20 I interviewed with Eitel about the incident of report obstruction, and at that time she included an amendment for report JD 419862 to include   REDACTED   name as the suspect.  Attached hereto as Exhibit [71] is a true and correct copy of [CPD Investigation].

102.    On or around 11/19/20, Mona Dugo falsely reported to Evanston Police that Plaintiff had violated the PO which she unlawfully had placed on me as a result of one my previously sent emails to the school asking for them to address the unlawful contact with my family which had taken place earlier in the month of October and which Plaintiff had reported to DOE and the University. She maliciously had the Plaintiff falsely imprisoned pursuant to case 20DV2080601, the only arrest on Plaintiff's entire criminal record, in order to retaliate against Plaintiff for his DOE report and for 20OP78277 which Plaintiff had secured on 11/17/20. Attached hereto as Exhibit [72] is a true and correct copy of [Evanston Police Report].

103.    On 11/19/20, four officers of the Evanston Police Department, including Detective Jones, came to my apartment at 244 E Pearson St. Chicago, IL 60611 at approximately 11:00 AM CST and arrested me without telling me what charges they were arresting me for, without letting me take my prescribed medicine, and without reading me my rights. Attached hereto as Exhibit [72] is a true and correct copy of [EPD Report].

19

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

104.     When I answered the door, they said they needed to "talk to me about the discrimination by Northwestern University," so I let them come into my apartment. Attached hereto as Exhibit [73] is a true and correct copy of [EPD Complaint].

105.     While they were inside my apartment they repeatedly and purposefully stepped on my prayer rug even after I asked the first officer not to step on in, in direct disrespect of my religious beliefs, and laughed as they did it and I asked them not to. They made derogatory statements about the rug, saying it was "beautiful" after repeatedly stomping on it and laughing. Attached hereto as Exhibit [73] is a true and correct copy of [EPD Complaint].

106.     Detective Jones arrested me inside me house without ever telling me what I was under arrest for or reading me my rights. Attached hereto as Exhibit [73] is a true and correct copy of [EPD Complaint].

107.     The four officers took me to Evanston police station and the four officers made me sit in an interrogation room and made me make incriminating statements without the presence of a lawyer, while under duress, which I did not understand. Attached hereto as Exhibit [72] is a true and correct copy of [EPD Report].

108.     During this interrogation, they said that calling a lawyer would take "several hours" and made it seem like if I requested a lawyer, that I would have to get on myself. They said they "might" be able to call the public defender, but that it would take hours. In order to clear myself of the charges, I was misled into saying that they could question me without a lawyer. This is because I was not on my medication and not in the right state of mind to understand what was happening. Attached hereto as Exhibit [73] is a true and correct copy of [EPD Complaint].

109.     They never mirandized me before arresting me and they never explained what I was charged with until they had brought me to the station and questioned me in a room with four officers yelling at me, and while I did not have medication and did not know what was happening, in this way they took advantage of my ADA learning disabilities in order to force me to make incriminating statements in violation of my constitutional rights to be free of self-incriminating statements. They repeatedly told me that "they knew my people" and that they would "take care of me" in apparent reference to my sister Sgt. Syed of Evanston Police. Attached hereto as Exhibit [73] is a true and correct copy of [EPD Complaint].

110.     Jones called repeatedly called me "little bro" and other derogatory statements while I was in his custody. Attached hereto as Exhibit [73] is a true and correct copy of [EPD Complaint].

111.     They never allowed me to take my medicine prior to arresting me without reading me my rights, and they knowingly forced me to undergo questioning while not on my medication or in the right state of mind to adequately represent myself. This is despite them knowing that I take medications, which they learned at my apartment. Attached hereto as Exhibit [74] is a true and correct copy of [Prescription].

112.     They never established probable cause for the arrest and never showed me the alleged probable cause when I asked for it, despite the fact that I asked for it at least four separate times. They simply asked me what my email was, and when I told them, they falsely claimed that I had admitted to sending the alleged email in question to the states attorney. Attached hereto as Exhibit [73] is a true and correct copy of [EPD Complaint].

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

113.     They then took my property and refused to give it back, including court documents which evidenced that I had requested a no contact order against the person who alleged that I violated the no contact order and had me arrested. They took this property without ever intending on reviewing it for the purposed of assessing the charges against me, and without ever intending on returning the paperwork. In this way they deprived me of my right to the materials I needed to adequately represent my defense during the court proceedings for this case. Attached hereto as Exhibit [73] is a true and correct copy of [EPD Complaint].

114.     Despite the fact that I told them that Mona Dugo, the complaining witness for this arrest was retaliating against me for Department of Education complaint 05-20-2444 which I had provided to them, in addition to the stalking no contact hearing, they still charged me with the offenses.  The Dean reported me and discriminated against me on the basis of his mental health, in retaliation for the Department of Education complaint, which she was fully aware through the university on 9/3/20 through an email to Lucas Christian and 9/13/20 through an email to the Office of Equity. Attached hereto as Exhibit [73] is a true and correct copy of [EPD Complaint].

## **Continuing Misconduct and Malicious Misrepresentation**

115.     On  11/24/20 at or around 1:30 PM, Plaintiff attended a court hearing for Case 200P20532. During the hearing, the judge asked if anyone had Plaintiff's allegations, and opposing counsel representing Mona Dugo for Case 200P20532 indicated that she had the complaint in front of her.

116.     The judge asked whether Plaintiff had "stated any facts" in support of his petition.

117.     The opposing counsel representing Mona Dugo for Case 200P20532 replied that he [Plaintiff] had "not stated any facts." This was a blatant act of perjury to the court, for Plaintiff had alleged over 25 separate, distinct, and numbered allegations containing many facts. Opposing counsel had the complaint in her possession and lied about the fact that Plaintiff had "stated facts" in support of his SNCO petition in order to mislead the judge.

118.     Opposing counsel, after committing perjury to the court, then requested that Plaintiff's SNCO be dismissed, without the judge ever having read Plaintiff's factual allegations, which were deemed worthy of a hearing (20 OP 78277) by the Honorable Judge Thomas M. Cushing #2258 during a hearing held on 11/17/20 at 555 W Harrison St, Chicago, IL and subsequently transferred to the Honorable Stephanie D. Saltouros #2161 for review.

119.     Opposing counsel and the complaining witness Mona Dugo violated the following pertinent section of Rule 137: "The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other document; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass."

120.     The allegations brought by Dugo and her attorney were not well-grounded in fact and not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, but in fact were misleading attempts to retaliate against and harass

plaintiff for his SNCO (20 OP 78277) and for his DOE complaint. Attached hereto as Exhibit [75] is a true and correct copy of [Motion for Sanctions].

### CERTIFICATION PURSUANT TO SECTION 1-109

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil

Procedure, the undersigned certifies that the statements set forth in this instrument are true and

correct, except as to matters therein stated to be on information and belief and as to such matters

the undersigned certifies as aforesaid that [he/she] verily believes the same to be true.

**Fahad Syed          1/11/21**
_____
[CERTIFIER'S NAME]          [DATE]

[CERTIFIER'S TITLE, if applicable]]

### EXHIBITS

# EXHIBIT B – TAB 3

Return Date: No return date scheduled
Hearing Date: 5/11/2021 9:45 AM - 9:45 AM
Courtroom Number: 2508
Location: District 1 Court
    Cook County, IL

FILED
1/11/2021 7:33 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH00106

11624454

FILED DATE: 1/11/2021 7:33 AM    2021CH00106

# Exhibit 11

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

# NATIONAL MUSLIM LAW STUDENTS CONFERENCE

## Chicago | 2019



O you who believe
stand out firmly for justice,
as witnesses to Allah,
even as against yourselves,
or your parents or your kin,
and whether it be
(against) rich or poor

(Quran 4:135)



**FRIDAY & SATURDAY, NOVEMBER 1 - 2, 2019**

Northwestern University Pritzker School of Law  – Friday
University of Chicago Law School – Saturday

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

# PROGRAM GUIDE



## DAY 1      *Friday, November 1, 6:00 pm – 9:00 pm*



| | | |
|---|---|---|
| 6:00 pm | Registration | |
| 6:30 pm | Opening Remarks | Lowden Hall |
| 7:00-9:00 pm | Dinner | Harry's Cafe |

## DAY 2      *Saturday, November 2, 8:30 am – 7:30 pm*

| | | |
|---|---|---|
| 8:30 - 9:30 am | Breakfast | Green Lounge |
| 9:30 - 11:00 am | Paths to Public Interest | Courtroom |
| 11:00 - 12:00 pm | MuslimArc | Room IV |
| 12:00 - 1:00 pm | Lunch & Prayer | Green Lounge |
| 1:00 - 2:00 pm | Breakout Session #1 Private Practice | Room IV |
| 1:00 - 2:00 pm | Breakout Session #2 Academia | Room V |
| 2:00 - 4:00 pm | Group Strategy Session | Room V |
| 4:00 - 5:00 pm | Freetime, Pictures, Tours | |
| 5:30 - 7:30 pm | Reception | Courtroom Auditorium |

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

# Exhibit 12

FILED DATE: 1/11/2021 7:33 AM   2021CH00106



Information provided by REDACTED on November 20, 2019

- REDACTED said approximately sixty people were present at the conference.

- REDACTED said that Fahad made "strange comments."
- REDACTED said he approached Fahad, touched him on the back, and said that he "appreciated the comments but to save the questions for later." REDACTED said that Fahad stopped.
- REDACTED said after the opening remarks, he approached REDACTED and asked, "Is this someone who will continue to interrupt?"
  - REDACTED said that REDACTED responded, "I don't know."
  - REDACTED said that REDACTED told him that Fahad might be experiencing some mental health issues.
  - REDACTED said that he offered to talk with Fahad ████████████ after dinner.

6

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

- REDACTED said that after dinner he was standing outside of the keynote speaker's room.
- REDACTED said he approached Fahad and apologized if he was rude and interrupted him during the opening remarks.
- REDACTED said that Fahad responded, "This happened?" "When did it happen?" and "in front of who and how many times." REDACTED said he did not know what Fahad meant and figured he did not remember what had occurred.
- REDACTED responded, "It happened once it front of everyone." Fahad responded, "You are forgiven, but I don't know what might happen later or if the world ends."
- REDACTED said Fahad walked away. REDACTED said he was not afraid by this interaction but concerned about the way Fahad was talking.
- Shortly thereafter, REDACTED observed Fahad walk aggressively to an unknown female sitting on a bench and sat down next to her making shoulder-to-shoulder contact.
- REDACTED said the female immediately got up and Fahad told the female, "stay."
- REDACTED said the female responded, "I don't have to stay."
- REDACTED said at that point, he approached Fahad and the female and told the female she did not need to stay.
- REDACTED said that Fahad was sitting on the bench and he was standing five feet away from him.
  - REDACTED said during the interaction, he and Fahad were making "intense eye contact with one another."
- REDACTED said he asked Fahad, "Why did you ask her to stay?" REDACTED said Fahad responded, "I wanted to know who she was talking to."
- REDACTED said he asked Fahad "Was that appropriate?" REDACTED said Fahad responded, that he "wanted to know about telepathy and what she was thinking and when the world ends."
- REDACTED said that he told Fahad, "I don't think it's appropriate what you said and the manner that you said it." REDACTED said that he communicated to Fahad in a non-threatening way.



REDACTED said he then lowered his head in an attempt to tackle Fahad.

- REDACTED said he put Fahad in a "head lock" so he could not move and yelled out to Usama three times.
- REDACTED said that REDACTED and REDACTED came outside and REDACTED held Fahad's arms down.
- REDACTED said that Fahad said, "I can't breathe." In response, REDACTED said he let go of any pressure but stayed on top of his chest so he could not move.

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

- REDACTED said he did not perceive Fahad to be a threat so initially decided not to call 911, but "thinks" REDACTED ended up calling 911.
- REDACTED said that while Fahad was being held down, he continued to say, "You are the angel of the devil."
- REDACTED said when the "cops" arrived he told them what happened.
  - REDACTED said that Fahad continued to scream when the "cops took him away."
- REDACTED said no one observed the conversation and subsequent altercation between him and Fahad.
  - REDACTED said that he found the altercation was "really unprovoked on his end."
- REDACTED said he decided not to press charges because he thought Fahad was mentally unwell and that he needed help as opposed to punishment.

Information provided by REDACTED on November 21, 2019



FILED DATE: 1/11/2021 7:33 AM    2021CH00106

# Exhibit 13

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

# NORTHWESTERN UNIVERISTY POLICE
### CASE FIELD REPORT
1201 Davis St.
Evanston, IL 60208-1320
(847) 491-3458 www.northwestern.edu/up

CASE# **2019-00000595**

## EVENT

| REPORTED DATE/TIME | | INCIDENT TYPE | | CASE STATUS AT TIME OF REPORT |
|---|---|---|---|---|
| **11/01/2019** | **21:02** | **Medical Services** | | **Closed** |

| OCCURRED FROM DATE/TIME | | OCCURRED TO DATE/TIME | | LOCATION OF OCCURRENCE |
|---|---|---|---|---|
| **11/01/2019** | **21:02** | **11/01/2019** | **22:30** | **Law School** <br> **357 E  Chicago Ave   2 fl  Chicago  IL** |

## OFFENSES

| # | STATUTE/DESCRIPTION | ATTEMPT/COMMIT |
|---|---|---|
| 1 | State\0460 \720-5/12-3\Battery | **Committed** |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | | |

## SUBJECT

| SUBJECT TYPE | NAME (LAST, FIRST, MIDDLE SUFFIX) |
|---|---|
| **Suspect Offender** | |
| SUBJECT SUB-TYPE | |
| **Suspect** | **Syed, Fahad, B** |

| PRIMARY PHONE | OTHER PHONE NUMBER 2 | EMAIL |
|---|---|---|
| | | |

ADDRESS
**4700 Old Orchard RD  309   Skokie, IL  60076**

| DOB | AGE | RACE | SEX | HAIR | EYE | HEIGHT | WEIGHT |
|---|---|---|---|---|---|---|---|
| **08/28/1989** | **30** | **Multi-Racial Group** | **Male** | | | | |

DL NUMBER/STATE
**S300-2428-9245/IL**

SCHOOL/EMPLOYER (NAME and ADDRESS)

STATEMENT TYPE

## SUBJECT

| SUBJECT TYPE | NAME (LAST, FIRST, MIDDLE SUFFIX) |
|---|---|
| **Witness** | REDACTED |
| SUBJECT SUB-TYPE | |

| PRIMARY PHONE | OTHER PHONE NUMBER 2 | EMAIL |
|---|---|---|
| | | |

ADDRESS

| DOB | AGE | RACE | SEX | HAIR | EYE | HEIGHT | WEIGHT |
|---|---|---|---|---|---|---|---|
| | | | **Male** | | | | |

DL NUMBER/STATE

SCHOOL/EMPLOYER (NAME and ADDRESS)

STATEMENT TYPE

| REPORTING OFFICER | | DATE | REVIEWED BY |
|---|---|---|---|
| **Healy** | **22** | **11/01/2019** | |

This Field Report should not be considered the final official police report on the incident described within.  This summary information is to be used only for proceedings requiring a form of printed documentation prior to the final report being completed.  Any information contained within is subject to verification and/or change.

1

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

# NORTHWESTERN UNIVERISTY POLICE
## CASE FIELD REPORT
1201 Davis St.
Evanston, IL 60208-1320
(847) 491-3456  www.northwestern.edu/up

CASE# **2019-00000595**

## INVOLVED SUBJECTS

| SUBJECT | | |
|---|---|---|
| SUBJECT TYPE **Victim** | NAME (LAST, FIRST, MIDDLE SUFFIX) **REDACTED** | |
| SUBJECT SUB-TYPE **Individual** | | |
| PRIMARY PHONE | OTHER PHONE NUMBER 2 | EMAIL |
| ADDRESS | | |
| DOB | AGE | RACE | SEX | HAIR | EYE | HEIGHT | WEIGHT |
| DL NUMBER/STATE | SCHOOL/EMPLOYER (NAME and ADDRESS) |
| STATEMENT TYPE | |

| SUBJECT | | |
|---|---|---|
| SUBJECT TYPE | NAME (LAST, FIRST, MIDDLE SUFFIX) | |
| SUBJECT SUB-TYPE | | |
| PRIMARY PHONE | OTHER PHONE NUMBER 2 | EMAIL |
| ADDRESS | | |
| DOB | AGE | RACE | SEX | HAIR | EYE | HEIGHT | WEIGHT |
| DL NUMBER/STATE | SCHOOL/EMPLOYER (NAME and ADDRESS) |
| STATEMENT TYPE | |

| SUBJECT | | |
|---|---|---|
| SUBJECT TYPE | NAME (LAST, FIRST, MIDDLE SUFFIX) | |
| SUBJECT SUB-TYPE | | |
| PRIMARY PHONE | OTHER PHONE NUMBER 2 | EMAIL |
| ADDRESS | | |
| DOB | AGE | RACE | SEX | HAIR | EYE | HEIGHT | WEIGHT |
| DL NUMBER/STATE | SCHOOL/EMPLOYER (NAME and ADDRESS) |
| STATEMENT TYPE | |

| SUBJECT | | |
|---|---|---|
| SUBJECT TYPE | NAME (LAST, FIRST, MIDDLE SUFFIX) | |
| SUBJECT SUB-TYPE | | |
| PRIMARY PHONE | OTHER PHONE NUMBER 2 | EMAIL |
| ADDRESS | | |
| DOB | AGE | RACE | SEX | HAIR | EYE | HEIGHT | WEIGHT |
| DL NUMBER/STATE | SCHOOL/EMPLOYER (NAME and ADDRESS) |
| STATEMENT TYPE | |

| REPORTING OFFICER **Healy** | 22 | DATE **11/01/2019** | REVIEWED BY |
|---|---|---|---|

This Field Report should not be considered the final official police report on the incident described within. This summary information is to be used only
for proceedings requiring a form of printed documentation prior to the final report being completed. Any information contained within is subject to verification and/or change.   2

FILED DATE: 1/11/2021 7:33 AM    2021CH00106

**NORTHWESTERN UNIVERISTY POLICE**
CASE FIELD REPORT

CASE# **2019-00000595**

1201 Davis St.
Evanston, IL 60208-1320
(847) 491-3456 www.northwestern.edu/up

---

**NARRATIVE**

---

In summary, on 11/1/19 at 2102 hrs, Reporting Officers Healy # 22 , Walsh # 26 and Sgt Moore # 56 were dispatched to the Law School Levy Mayer wing in regard to a battery that had just occurred. Upon arrival, R/O's found the offender / law student, now known as Fahad B Syed, being restrained on the second floor by several male law students. Investigation determined that Mr Syed was talking with fellow law students in the hallway when he became incoherent and started swinging his fists. He struck fellow law student      REDACTED     (law student at University of Chicago) in the mouth. R/O's placed Mr Syed into protective custody without incident. REDACTED stated that he did not wish to sign complaints. He stated that he wanted Syed to receive medical attention.

As R/O's walked Syed (in handcuffs) out of the building, Syed became combative, thrashing from side to side and refusing to proceed down the stairs. He had to be forced down to the floor to be restrained. R/O's held Mr Syed on the floor until CFD paramedics arrived. Mr Syed was then transported to NMH for involuntary commitment. Mr Syed was turned over to the custody of NMH Dr Berg, Nurse Katherine Camarena and NMH security guard Chez S at approximately 2200 hrs without further incident. R/O Healy signed the petition for commitment. A copy is attached to this report. Use of force reports were filed in this matter.

Sgt Moore notified DC Chin, Law School Associate Dean of Students Susan Michelle Spies Roth and Threat Assessment Officer Michelle Hoy Watkins of the above facts in this case at approximately 2215 hrs this date.

| REPORTING OFFICER | | DATE | REVIEWED BY |
|---|---|---|---|
| Healy | 22 | 11/01/2019 | |

FILED DATE: 1/11/2021 7:33 AM  2021CH00106

# Exhibit 14

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

State of Illinois
Department of Human Services - Division of Mental Health

## PETITION FOR INVOLUNTARY/JUDICIAL ADMISSION

PETITION FOR INVOLUNTARY/JUDICIAL ADMISSION

STATE OF ILLINOIS

CIRCUIT COURT FOR THE _____ JUDICIAL CIRCUIT

_____Cook_____ COUNTY

IN THE MATTER OF

)
)
)
Fahad Syed )
(name of respondent) )

Docket No. _____

Who is asserted to be a person subject to _involuntary_ In-patient admission to a facility and for whom
(judicial/involuntary)

this petition is being initiated by reason of:  (Select one or more, if applicable)

[X] Emergency inpatient admission by certificate; (405 ILCS 5/3-600).  The Respondent is currently detained in a mental

health facility or hospital; name of facility where detained: _Northwestern Memorial Hospital_.

[ ] Inpatient admission by court order; (405 ILCS 5/3-700).

[ ] Voluntary admittee submitted written notice of desire to be discharged and two Certificates are attached to/submitted
with this petition; (405 ILCS 5/3-403).

[ ] Voluntary admittee failed to reaffirm a desire to continue treatment and two Certificates are attached to/submitted
with this petition; (405 ILCS 5/3-404).

[ ] Person continues to be subject to involuntary admission on an inpatient basis; (405 ILCS 5/3-813).

[ ] Emergency admission of the developmentally disabled; (405 ILCS 5/4-400).

[ ] Judicial admission of the developmentally disabled; (405 ILCS 5/4-500).

[ ] Developmentally disabled person or an interested person on behalf of a person submitted written objection to
admission; (405 ILCS 5/4-306).

[ ] Administrative person; (or person who executed application) failed to authorize continued residence; (405 ILCS 5/4-310).

[ ] Person continues to meet standard for judicial admission; (405 ILCS 5/4-611).

IL462-2005 (R-04-18) Petition for Involuntary/Judicial Admission
Printed by Authority of the State of Illinois          -0- Copies

Page 1 of 5

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

State of Illinois
Department of Human Services - Division of Mental Health

## PETITION FOR INVOLUNTARY/JUDICIAL ADMISSION

I assert that Fahad Syed is: (check all that apply)

☑ a person with mental illness who: because of his or her illness is reasonably expected, unless treated on an inpatient basis, to engage in conduct placing such person or another in physical harm or in reasonable expectation of being physically harmed;

☐ a person with mental illness who: because of his or her illness is unable to provide for his or her basic physical needs so as to guard himself or herself from serious harm without the assistance of family or others, unless treated on an inpatient basis;

☐ a person with mental illness who: refuses treatment or is not adhering adequately to prescribed treatment; because of the nature of his or her illness is unable to understand his or her need for treatment; and if not treated on an inpatient basis, is reasonably expected based on his or her behavioral history, to suffer mental or emotional deterioration and is reasonably expected, after such deterioration, to meet the criteria of either paragraph one or paragraph two above.

☐ an individual who: is developmentally disabled and unless treated on an in-patient basis is reasonably expected to inflict serious physical harm upon himself or herself or others in the near future, and/or

☑ in need of immediate hospitalization for the prevention of such harm.

I base the foregoing assertion on the following (State in detail the signs and symptoms of mental illness displayed by the Respondent. Include prior diagnosis, treatment and hospitalizations. Describe any threats, behavior or pattern of behavior which support your complaint. Include personal observations that lead to your belief the Respondent is subject to involuntary admission): If additional space needed please attach a separate page or pages.

Pt presents w/ police and CFD after pt got in altercation with another student. Pt was speaking incoherently, speaking about telepathing. Pt states he has not slept in multiple Days

Below is a list of all witnesses by whom the facts asserted may be proven (include addresses and phone numbers):

Eugene Cozza, MD        251 E. Huron Ave
Fred Cabrios, CSW       Chicago, IL 60611
                        312-926-1878

Listed below are the names and addresses of the spouse, parent, guardian, or substitute decision maker, if any, and close relative or, if none, a friend of the respondent whom I have reason to believe may know or have any of the other names and addresses. If names and addresses are not listed below, I made a diligent inquiry to identify and locate these individuals and the following describes the specific steps taken by me in making this inquiry (additional pages may be attached as necessary):

☐ I do    ☑ I do not    have a legal interest in this matter.
☐ I do    ☑ I do not    have a financial interest in this matter.
☐ I am    ☑ I am not    involved in litigation with the respondent.

☐ Although I have indicated that I have a legal or financial interest in this matter or that I am involved in litigation with the respondent, I believe it would not be practicable or possible for someone else to be the petitioner for the following reasons:

n/a

IL462-2005 (R-04-18) Petition for Involuntary/Judicial Admission
Printed by Authority of the State of Illinois          -0- Copies

Page 2 of 5

FILED DATE: 1/11/2021 7:33 AM 2021CH00106

State of Illinois
Department of Human Services - Division of Mental Health

## PETITION FOR INVOLUNTARY/JUDICIAL ADMISSION

☐ No certificate was attached with this petition because no physician, qualified examiner or clinical psychologist was immediately available or it was impossible after diligent effort to obtain a certificate. However: I believe, as a result of my personal observation, that the respondent is subject to Involuntary inpatient admission. A diligent effort was made to obtain a certificate; but no physician, qualified examiner or clinical psychologist could be found who has examined or could examine the respondent; and
a diligent effort has been made to convince the respondent to appear voluntarily for examination by a physician, qualified examiner or clinical psychologist, or I reasonably believe that effort would impose a risk of harm to the respondent or others.

☒ One Certificate of Examination is attached.

☐ Two Certificates of Examination are attached.

Did a peace officer detain respondent, take him/her into custody, and/or transport him/her to the mental health facility?
☒ No  ☐ Yes;     If yes, the peace officer MAY complete the petition or if the petition IS NOT COMPLETED by the peace officer transporting the person, the following information MUST be entered:

Transporting Officer's Name: _____     Badge Number: _____

Employer: _____

The petitioner can request to be notified if the facility director approves the recipients's request for voluntary or informal admission prior to adjudication. The petitioner may also request to be notified of the recipient's discharge under section 3-902 (d) of the Mental Health and Developmental Disabilities Code. Failure to indicate a choice will be treated as a decision NOT to be notified.

☐ if the individual requests and is approved for voluntary or informal admission prior to adjudication, I wish to be notified using the contact information supplied below. (Hospital staff use form IL462-2203 for notification purposes).

☐ if the individual is committed or discharged by court, I wish to be notified using the contact information supplied below. (Hospital staff use form IL462-2208M for notification purposes).

☒ I do not wish to be notified in either of the two situations described above.

The petitioner has made a good faith attempt to determine whether the recipient has executed a power of attorney for health care under the Powers of Attorney for Health Care Law or a declaration for mental health treatment under the Mental Health Treatment Preference Declaration Act and to obtain copies of these instruments if they exist.
I have read and understood this petition and affirm that the statements made by me are true to the best of my knowledge.
I further understand that knowingly making a false statement on this Petition is a Class A Misdemeanor.

| | |
|---|---|
| 11/2/19 | _Fred ____, LSW_ |
| Date | Signed |
| 0338 AM | Fred Cabras, LSW |
| Time | Printed Name |
| NWC | 751 E. Huron Ave |
| Relationship to Respondent | Chicago, IL 60611 |
| | Address |
| | _____ |
| | Telephone Number |

IL462-2005 (R-04-18) Petition for Involuntary/Judicial Admission
Printed by Authority of the State of Illinois          -0- Copies          Page 3 of 5

FILED DATE: 1/11/2021 7:33 AM   2021CH00106



State of Illinois
Department of Human Services - Division of Mental Health

## PETITION FOR INVOLUNTARY/JUDICIAL ADMISSION

Within 12 hours of admission to the facility under this status and/or completion of a new petition, I gave the respondent a copy of this Petition (IL462-2005). I have explained the Rights of Admittee to the respondent and have provided him or her with a copy of it. I have also provided him or her with a copy of Rights of Individuals Receiving Mental Health and Developmental Services (IL462-2001) and explained those rights to him or her (405 ILCS 5/3-609).

Date/Time of Admission _11/2/19 @ 12 EA_       Signed: _Jeremy Baker_
To Mental Health Facility/Psychiatric Unit      Printed Name: _Jeremy Baker_

Date/Time
Petition Completed: _11/2/19 @ 1200p_          Title: _RN_

### RIGHTS OF ADMITTEE

1. If you have been brought to this facility on the basis of this petition alone, you will not be immediately admitted, but will be detained for examination. You must be examined by a qualified professional within 24 hours or be released.

2. When you are first examined by a physician, clinical psychologist, qualified examiner, or psychiatrist, you do not have to talk to the examiner. Anything you say may be related by the examiner in court on the issue of whether you are subject to involuntary or judicial admission.

3. At the time that you have been certified you will be admitted to the facility and a copy of the petition and certificate will be filed with the court. A copy of the petition shall also be given to you.

4A. If you are alleged to be subject to involuntary admission (mentally ill) you must also be examined within 24 hours excluding Saturdays, Sundays, and holidays by a psychiatrist (different from the first examiner) or be released. If you are alleged to be subject to involuntary admission the court will set the matter for a hearing.

4B. If you are alleged to be subject to judicial admission (developmentally disabled) the court will set a hearing upon receipt of the diagnostic evaluation which is required to be completed within 7 days.

5A. If you are alleged to be subject to involuntary admission (mentally ill) and if the facility director approves, you may be admitted to the facility as a voluntary admittee upon your request any time prior to the court hearing.

The court may require proof that voluntary admission is in your best interest and in the public interest.

5B. If you are alleged to be subject to judicial admission (developmentally disabled) and if the facility director approves, you may decide that you prefer to admit yourself to the facility rather than have the court decide whether you ought to be admitted. You may make the request for administrative admission at any time prior to the hearing. The court may require proof that administrative admission is in your best interest and the public interest.

6. You have the right to request a jury.

7. You have the right to request an examination by an independent physician, psychiatrist, clinical psychologist, or qualified examiner of your choice. If you are unable to obtain an examination, the court may appoint an examiner for you upon your request.

8. You have the right to be represented by an attorney. If you do not have funds or are unable to obtain an attorney, the court will appoint an attorney for you.

9. You have the right to be present at your court hearing.

10. As a general rule, you do not lose any of your legal rights, benefits, or privileges simply because you have been admitted to a mental health facility (see your copy of the "Rights of Individuals"). However, you should know that persons admitted to mental health facilities will be disqualified from obtaining Firearm Owner's Identification Cards, or may lose such cards obtained prior to admission.



11. Information about the health care services you receive at a mental health or developmental disabilities facility is protected by privacy regulations under the Health Insurance Portability and Accountability Act of 1996 (HIPAA) (P.O. 104-191) at 45 CFR 160 and 164. Your personally identifiable health information will only be used and/or released in accordance with HIPAA and the Illinois Mental Health and Development Disabilities Confidentiality Act [740 ILCS 110].

FILED DATE: 1/11/2021 7:33 AM   2021CH00106



State of Illinois
Department of Human Services - Division of Mental Health

## PETITION FOR INVOLUNTARY/JUDICIAL ADMISSION

Guardianship and Advocacy Commission is a state agency consisting of three divisions: Legal Advocacy Services, Human Rights Authority and the Office of the State Guardian. The Commission is located at the following addresses:

**East Central Regional Office**
2125 S. First Street
Champaign, IL 61820
Phone: (217) 278-5577
Fax: (217) 278-5588
TTY: (866) 333-3362

**Peoria Regional Office**
401 N. Main Street, Suite 620
Peoria, IL 61602
Phone: (309) 671-3030
Fax: (309) 671-3060
TTY: (866) 333-3362

**Rockford Regional Office**
4302 N. Main Street, Suite 108
Rockford, IL 61103
Phone: (815) 987-7657
Fax: (815) 987-7227
TTY: (866) 333-3362

**Egyptian Regional Office**
7 Cottage Drive
Anna, Illinois 62906-1669
Phone: (618) 833-4897
Fax: (618) 833-5219
TTY: (866) 333-3362

**West Suburban Regional Office**
Madden Mental Health Center
1200 S. First Avenue, P.O. Box 7009
Hines, IL 60141
Phone: (708) 338-7500
Fax: (708) 338-7505
TTY: (866) 333-3362

**Metro East Regional Office**
Holly Bldg., 4500 College
Suite 100
Alton, IL 62002
Phone: (618) 474-5503
Fax: (618) 474-5517
TTY: (866) 333-3362

**North Suburban Regional Office**
9511 Harrison Avenue
Des Plaines, Illinois 60016
Phone: (847) 294-4264
Fax: (847) 294-4263
TTY: (866) 333-3362

**Chicago Regional Office**
160 N. La Salle Street
Suite S500
Chicago, IL 60601
Phone: (312) 793-5900
Fax: (312) 793-4311
TTY: (866) 333-3362

**Springfield Regional Office**
521 Stratton Building
401 S. Spring Street
Springfield, IL 62706
Phone: (217) 785-1540
Fax: (217) 524-0088
TTY: (866) 333-3362

Equip for Equality, Inc. is an independent, not-for-profit organization that administers the federal protection and advocacy system for people with disabilities in Illinois. Equip for Equality, Inc., provides self-advocacy assistance, legal services, education, public policy advocacy, and abuse investigations. The offices are located at:

**Main/Chicago Office**
20 N. Michigan, Ste 300
Chicago, Illinois 60602
(800) 537-2632 or
(312) 341-0022
TTY: (800) 610-2779
Fax: (312) 541-7544

**Central Illinois**
1 West Old Capitol Plaza, Suite 816
Springfield, IL 62701
(217) 544-0464
(800) 758-0464
TTY: (800) 610-2779
Fax: (217) 523-0720

**Northwestern Illinois**
1515 Fifth Avenue, Suite 420
Moline, IL 61265
(309) 786-6868
(800) 758-6869
TTY: (800) 610-2779
Fax: (309) 797-8710

**Southern Illinois**
300 E. Main Street, Suite 18
Carbondale, IL 62901
(618) 457-7930
(800) 758-0559
TTY: (800) 610-2779
Fax: (618) 457-7985

Website: www.equipforequality.org

I certify that I provided respondent with a copy of this form. (pages 1-5)

☑ English    ☐ Spanish    ☐ Other

Specify language: _____ on _____

Time: _____

Signature: _____

Title: _Jeremy Baker_

Printed Name: _RN_

IL462-2005 (R-04-18) Petition for Involuntary/Judicial Admission
Printed by Authority of the State of Illinois        -0- Copies

Page 5 of 5

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

# Exhibit 15

Ref.:   405 ILCS 5/3-403, 5/3-602, 5/3-607, 5/3-610,
        5/3-702, 5/3-813, 5/4-306, 5/4-402, 5/4-403,
        5/4-405, 5/4-501, 5/4-611, 5/4-705

**Inpatient Certificate**

Fahad Syed

_____
(name)

I personally informed the above-named individual of the purpose of this examination and that he or she did not have to speak to me, and that any statements made might be related in court as to the individual's clinical condition or need for services. Additionally, if this examination was for the purpose of determining that the above-named individual is developmentally disabled and dangerous, I informed the individual of his or her right to speak with a relative, friend or attorney before the examination, and of his or her right to have an attorney appointed for him or her if he or she so desired.

_____
Signature of Examiner

On   11/2   ,   2019   , at   430   ☑ a.m. ○ p.m. , I personally examined the
      (date)        (year)        (time)

above-named individual.  The examination was conducted at   Northwestern Memorial Hospital
                                                              (name of location)

Based on the foregoing examination it is my opinion that he or she is:

☑ A person with mental illness who, because of his or her illness is reasonably expected, unless treated on an inpatient basis, to engage in conduct placing such person or another in physical harm or in reasonable expectation of being physically harmed;

☐ A person with mental illness who, because of his or her illness is unable to provide for his or her basic physical needs so as to guard himself or herself from serious harm, without the assistance of family or others, unless treated on an inpatient basis;

☐ A person with mental illness who: refuses treatment or is not adhering adequately to prescribed treatment; because of the nature of his or her illness is unable to understand his or her need for treatment; and if not treated on an inpatient basis, is reasonably expected based on his or her behavioral history, to suffer mental or emotional deterioration and is reasonably expected, after such deterioration, to meet the criteria of either paragraph one or paragraph two above;

☐ An individual who is developmentally disabled and unless treated on an in-patient basis is reasonably expected to inflict serious physical harm upon himself or herself or others in the near future, and/or

☑ is in need of immediate hospitalization for the prevention of such harm.

I base my opinion on the following (including clinical observations, factual information):

30M, hx bipolar, hospitalizations, who was BIB police after punching another student. Pt noted by police to be speaking bizarrely, & pressured. Pt irritable, expansive, poor boundaries, lacks insight. Appears manic.

I believe that the individual is subject to (check one):   ○ Involuntary inpatient admission and is not in need of immediate hospitalization
                                                           ☑ Involuntary inpatient admission and is in need of immediate hospitalization
                                                           ○ Judicial inpatient admission and is not in need of immediate hospitalization
                                                           ○ Judicial inpatient admission and is in need of immediate hospitalization

Date:  11/2/19          Signature:  _____

       MD               Printed Name:  Eugene Lozzy

2-2006 (R-8-13) Inpatient Certificate
Printed by Authority of the State of Illinois   -0- Copies

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

# EXHIBIT B – TAB 4

This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.

Return Date: No return date scheduled
Hearing Date: 5/11/2021 9:45 AM - 9:45 AM
Courtroom Number: 2405
Location: District 1 Court
          Cook County, IL

| STATE OF ILLINOIS, | **APPLICATION FOR WAIVER OF COURT FEES** | *For Court Use Only*<br>FILED<br>1/11/2021 7:33 AM<br>IRIS Y. MARTINEZ<br>CIRCUIT CLERK<br>COOK COUNTY, IL<br>2021CH00106<br><br>11624454 |
|---|---|---|
| CIRCUIT COURT<br>Cook County, IL<br>Cook _____ COUNTY | | |

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

| **Instructions ▾** | | |
|---|---|---|
| Directly above, enter the name of the county where the case was filed. | | |
| Enter the name of the person who started the lawsuit as Plaintiff/Petitioner. | **Fahad Bilal Syed**<br>_____<br>**Plaintiff / Petitioner** *(First, middle, last name)* | |
| Enter the name of the person being charged as Defendant/Respondent. | v. | |
| Enter the Case Number given by the Circuit Clerk or leave this blank if you do not have one. | **Northwestern University**<br>_____<br>**Defendant /Respondent** *(First, middle, last name)* | **2021CH00106**<br>_____<br>**Case Number** |

| **NOTE:** | If you are completing this form on behalf of a minor or an incompetent adult, provide that person's information on this form instead of your own information. |
|---|---|

Pursuant to **Illinois Supreme Court Rule 298** and **735 ILCS 5/5-105**, I state:

| In **1a**, enter your full name | **1.** I believe I cannot afford to pay the court fees in this case and I am providing the following information about myself: |
|---|---|
| In **1b**, only enter the year you were born. DO NOT enter your entire date of birth. | a. Name: <u>Fahad</u>  <u>Bilal</u>  <u>Syed</u><br>     *First*    *Middle*    *Last* |
| In **1c**, enter your complete current address. | b. Year of Birth: <u>1989</u><br>c. Street Address: <u>244 E Pearson St. Apt 711</u><br>   City, State, ZIP: <u>Chicago IL, 60611</u> |

| In **2a**, enter the number of people age 18 and older living in your house who you support. Support means that the people rely on you financially. | **2.** I am providing the following information about people who live with me:<br>a. I support <u>0</u> adults *(not counting myself)* who live with me.<br>b. I support _____ children under 18 who live with me. |
|---|---|
| In **2b**, enter the number of people under age 18 living in your house who you support. | |
| In **3**, check "Yes" if you are currently receiving 1 or more of the benefits listed below. | **3.** I am receiving 1 or more of the benefits listed below:<br>☐ Yes  ☑ No<br>  • Supplemental Security Income (SSI) (Not Social Security)<br>  • Aid to the Aged, Blind and Disabled (AABD)<br>  • Temporary Assistance to Needy Families (TANF)<br>  • SNAP (Food Stamps)<br>  • General Assistance (GA), Transitional Assistance, or State Children and Family Assistance |
| If you check "Yes" in **3**, skip **4** and sign the form. You do not have to complete **4**. | |

**\*\*If you answered "Yes" in section 3, you qualify for a fee waiver under 735 ILCS 5/5-105(a)(2)(i) and (b)(1). You can skip section 4 and sign the form.\*\***

Enter the Case Number given by the Circuit Clerk: _____

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

**4.  I checked "No" in section 3, so I am providing the following financial information:**

| | |
|---|---|
| In **4a**, check "Yes" if you have applied for at least 1 of the benefits listed in section 3. | **a.**  I have a pending application for 1 or more of the benefits listed in section 3:<br>☐ Yes   ☑ No |

**b.**  I received the following money in the past month. *(check all that apply)*

| | | |
|---|---|---|
| ☐ My employment: | $ _____ | ☐ Social Security (not SSI): $ _____ |
| ☐ Child support: | $ _____ | ☑ Unemployment: $ 1,568.00 |
| ☐ Pension: | $ _____ | |

☐ Money from other household members:   $ _____
☐ Other *(list type and amount)*: _____   $ _____
☐ No income

Total of all money received in the past month:  $ 1,568.00

**c.**  I received the following total amount of money in the past 12 months. *(check all that apply)*

| | | |
|---|---|---|
| ☐ My employment: | $ _____ | ☐ Social Security (not SSI): $ _____ |
| ☐ Child support: | $ _____ | ☑ Unemployment: $ 18,816.00 |
| ☐ Pension: | $ _____ | |

☐ Money from other household members:   $ _____
☐ Other *(list type and amount)*: _____   $ _____
☐ No income

Total of all money received in the past 12 months:  $ 18,816.00

**d.**  My current monthly debts and expenses are listed below. *(check all that apply)*

| | | |
|---|---|---|
| ☑ Rent: | $ 1,125.00 | per month |
| ☐ Home Mortgage: | $ _____ | per month |
| ☐ Other Mortgage: | $ _____ | per month |
| ☑ Utilities: | $ 80.00 | per month |
| ☑ Food: | $ 400.00 | per month |
| ☐ Medical: | $ _____ | per month |
| ☐ Car Loan: | $ _____ | per month |
| ☐ Childcare: | $ _____ | per month |
| ☐ Child Support: | $ _____ | per month |

☐ Other expenses not listed above *(list type and amount)*: _____   $ _____

☐ Other debts not listed above *(list type and amount)*: _____   $ _____

☐ I have no expenses.

Total of all expenses:  $ 1,605.00   per month

Marginal instructions:
- In **4b**, check the box for each type of money you have received in the past month. Also enter the gross (before taxes) amount for each type.
- Under **Other** in **4b** and **4c**, include any money received from family or friends.
- In **4c**, check the box for each type of money you have received in the past 12 months. Also enter the gross (before taxes) amount for each type.
- In **4d**, check all of your debts and expenses for the past month and list the amount of money you pay each month for that expense.

Enter the Case Number given by the Circuit Clerk: _____

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

e.   I have the belongings listed below. *(check all that apply)*

☑ Bank accounts and cash totaling:     $ 9,000.00

☐ Home worth:     $ _____

The total I owe on my home mortgage is:     $ _____

☐ Other real estate, not including the house I live in, worth:     $ _____

The total I owe on my other mortgage is:     $ _____

☐ 1st vehicle worth:   $ _____   The 1st vehicle is paid off:   ☐ Yes   ☐ No

☐ 2nd vehicle worth:   $ _____   The 2nd vehicle is paid off:   ☐ Yes   ☐ No

☐ Other *(list items and value)*: _____   $ _____

☐ None of the above

| | |
|---|---|
| In **4e**, check all of the items owned by you and list the value of each item. If you own real estate, include the total you owe on any mortgage. | |

/s/   *Fahad Syed*

Your Signature

224 E Pearson St. Apt. 711

Street Address

Fahad Syed

Print Your Name

Chicago, Il, 60611

City, State, ZIP

| | |
|---|---|
| Under Illinois Supreme Court Rule 137, your signature means that you have read the document, that to the best of your belief, it is true and correct and that you are not filing it for an improper purpose, such as to cause delay. | |

Relationship to Minor or Incompetent Adult (if applicable)

(773) 564-0325

Telephone

If you are completing this form on a computer, sign your name by typing it. If you are completing it by hand, sign and print your name. Enter your complete current address and telephone.

If you are filling out this form for a minor or incompetent adult, sign and print your name and state your relationship to that person. Enter your complete current address and telephone number.

**GETTING COURT DOCUMENTS BY EMAIL:** If you agree to receive court documents by email, check the box below and enter your email address. You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information or notice of court dates. Other parties may still send you court documents by mail.

☑  I agree to receive court documents at this email address during my entire case.

Syed.216@gmail.com

Email

**This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.**

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

| STATE OF ILLINOIS,<br>CIRCUIT COURT<br><br>_____ COUNTY | ORDER FOR<br>WAIVER OF COURT FEES | *For Court Use Only* |
|---|---|---|

| Instructions ▾ | | |
|---|---|---|
| Directly above, enter the name of the county where the case was filed. | | |
| Enter the name of the person who started the lawsuit as Plaintiff/Petitioner. | Fahad Bilal Syed<br>**Plaintiff / Petitioner** *(First, middle, last name)* | |
| Enter the name of the person being sued as Defendant/Respondent. | v. | |
| Enter the Case Number given by the Circuit Clerk or leave this blank if you do not have one. | Northwestern University<br>**Defendant / Respondent** *(First, middle, last name)* | **Case Number** |

Enter your full name as "Applicant."

| **Applicant Name:** | Fahad | Bilal | Syed |
|---|---|---|---|
| | *First* | *Middle* | *Last* |

**The Court having reviewed the *Application for Waiver of Court Fees* hereby finds:**

DO NOT check any boxes or fill in any more blanks on this form. The judge will complete the rest of the form.

1. ☐ The applicant **qualifies** for a **full (100%)** waiver of all fees, costs, and charges because *(check only one)*:

   a. ☐ The applicant receives means-based government assistance under one or more of the following programs:
   - Supplemental Security Income (SSI) (Not Social Security)
   - Aid to the Aged, Blind and Disabled (AABD)
   - Temporary Assistance for Needy Families (TANF)
   - SNAP(Food Stamps)
   - General Assistance (GA), Transitional Assistance, or State Children and Family Assistance

   **OR**

   b. ☐ The applicant's personal income is **125%** or less of the current poverty level as established by the U.S. Department of Health and Human Services and the Applicant's non-exempt assets under 735 ILCS 5/12-901 and 735 ILCS 5/12-1001 are such that the applicant is unable to pay the fees, costs, or charges;

   **OR**

   c. ☐ Payments of fees, costs, and charges would result in substantial hardship to the applicant or his or her family.

2. ☐ The applicant **qualifies** for a **partial** *(75%, 50%, or 25%)* waiver of all fees, costs, and charges because the applicant's household income is *(check one)*:
   - ☐ more than **125%** but not greater than **150%** *(75% waived)*; OR
   - ☐ more than **150%** but not greater than **175%** *(50% waived)*; OR
   - ☐ more than **175%** but not greater than **200%** *(25% waived)*

   of the current poverty level as established by the US Department of Health and and Human Services and the Applicant's non-exempt assets under 735 ILCS 5/12-901 and 735 ILCS 5/12-1001 are such that the applicant is unable

Enter the Case Number given by the Circuit Clerk: _____

to pay the fees, costs, or charges.

3. ☐ The applicant must **provide additional information and attend a hearing** before the court decides if the applicant qualifies for a fee waiver.

4. ☐ The applicant **does not qualify** for a fee waiver because (must state specific reason):

_____

_____

**IT IS HEREBY ORDERED:**

A. ☐ *Application for Waiver of Court Fees* is **GRANTED**.

     i. ☐ The applicant qualifies for a **full waiver**, and may participate in this case without payment of fees, costs, or charges.

         OR

     ii. ☐ The applicant qualifies for a **partial fee waiver** as follows (check one):

         ☐ **75%** of all fees, costs, and charges **are waived** (and the applicant must pay 25% of all fees, costs, and charges).

         ☐ **50%** of all fees, costs, and charges **are waived** (and the applicant must pay 50% of all fees, costs, and charges).

         ☐ **25%** of all fees, costs, and charges **are waived** (and the applicant must pay 75% of all fees, costs, and charges).

     Charges included in this waiver are: filing, service of process, publication, mediation, guardian ad litem, or any other court ordered fees listed in 735 ILCS 5/5-105(a)(2)(1).

     ☐ The applicant must pay fees, costs, and charges currently due by: _____
                                                                     *Date*

         OR

     ☐ Upon good cause shown, the applicant may make payments as follows (describe deferral, installment plan, or other reasonable terms):

_____

_____

**This order expires one year from the date of this order.** The applicant may reapply before or after the expiration date.

B. ☐ *Application for Waiver of Court Fees* is **SET FOR HEARING** on _____
                                                                               *Date*

     at _____ in courtroom: _____
            *Time*

     The applicant must bring the following documents: _____

_____

_____

C. ☐ *Application for Waiver of Court Fees* is **DENIED**.

     The applicant must pay all fees, costs, and charges currently due by: _____
                                                                                      *Date*

| DO NOT complete this section. The judge will sign and date here. | **ENTERED:** |
|---|---|

_____      _____
*Judge*                                                          *Date*

FILED DATE: 1/11/2021 7:33 AM   2021CH00106

**Print Form**      **Save Form**      **Reset Form**

# EXHIBIT B – TAB 5

(12/01/20) CCG 0686

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

FILED
1/11/2021 10:17 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH00106

Fahad Syed
_____
**PLAINTIFF**

v.

Northwestern University
_____
**DEFENDANT**

11775023

No. _____
2021CH00106

*Please check one*

**EMERGENCY MOTION**

☐ **VACATE A JUDGMENT**

☐ **AGREED ORDER**

☐ **STAY OF EVICTION**

☐ **CONTINUATION OF TRIAL**

☑ **OTHER**    Motion for Preliminary Injuction and Temporary Restraining Order
_____

_____

_____

_____

**ATTORNEY**   Fahad Syed
_____

**ATTORNEY CODE**   99500
_____

**IRIS Y. MARTINEZ, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

FILED DATE: 1/11/2021 10:17 AM  2021CH00106

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| FAHAD SYED, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. **2021CH00106** |
| | ) | |
| NORTHWESTERN UNIVERSITY, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION, TEMPORARY RESTRAINING ORDER, AND EXPEDITED DISCOVERY AGAINST NORTHWESTERN UNIVERSITY

NOW INTO COURT comes plaintiff, FAHAD SYED, Pro Se, and for the reasons set forth fully in the Memorandum in Support of Plaintiffs' Motion for Temporary Restraining Order, moves this court, pursuant to 735 ILCS 5/11-101 of the Illinois Code of Civil Procedure, for a temporary restraining order, restraining, enjoining and/or prohibiting defendants, NORTHWESTERN UNIVERSITY ("NU") and/or any of their agents, representatives, or anyone acting on their behalf, from taking any action adverse to plaintiffs status as a student at Northwestern University resulting from his EXPULSION pending disposition of plaintiffs' claim that defendants, and others, violated his rights guaranteed by the Constitution and laws of the United States of American and the state of Illinois.

Plaintiff also seeks an order requiring defendants and their employees, agents and all others acting in concert with them: to immediately place Fahad Syed into a regular class at Northwestern University School of Law for Spring 2021 Semester or find some suitable alternative learning arrangement. In addition, Plaintiff moves the Court for entry of an order permitting expedited discovery of records related to his claims.

On the facts in the Complaint, the attached Memorandum of Law and the affidavits of expert witnesses,

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

plaintiff will demonstrate that immediate injunctive relief should issue because defendants are unlawfully discriminating against an otherwise qualified individual with a disability from participation in an educational program which receives federal financial assistance, in violation of Section 504 of the Rehabilitation Act of 1973 (Section 504), 29 U.S.C. § 794, and its implementing regulation at 34 C.F.R. Part 104, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181–12189, and its implementing regulation at 28 C.F.R. Part 36 prohibiting discrimination on the basis of disability by public accommodations and in commercial facilities; and because defendants are unlawfully discriminating against an otherwise qualified male individual from participation in an educational program which receives federal financial assistance in violation of Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. §§ 1681–1688, and its implementing regulation, 34 C.F.R. Part 106 prohibiting discrimination on the basis of sex in any education program or activity operated by a recipient of Federal financial assistance (FFA) from the Department of Education.

In support of this motion, plaintiff states the following:

1.      Plaintiff is a 31-year-old brown Muslim man living within the jurisdiction of Cook County, Chicago. On or about 11/1/19, plaintiff was diagnosed as having Bi-Polar disorder, in conjunction with previously diagnosed Attention Deficit Hyperactivity Disorder, and co-morbid anxiety and depression disorders.

2.      As more fully described in the Complaint, during the week of August 17th-21st, 2020, Defendant Northwestern University ("NU") has excluded plaintiff from the regular class for the entire duration of the 2020 incoming JD class orientation period based on NU's perceived threat resulting from its knowledge of his previously existing mental health treatment history with Northwestern Memorial Hospital regarding his initial diagnosis of bi-polar. NU offered no alternative learning opportunities to the plaintiff.

3.      Thereafter, on or about August 23rd, 2020, NU placed Plaintiff on a special "interim suspension" for the entire duration of Fall 2020 semester based on comments he made on two audio recordings of his private phone calls with another NU student,   REDACTED   a white transgender student, which were recorded without his consent or knowledge and wherein he made no articulable threat of violence. Following this interim suspension, on 12/22/20, NU expelled the Plaintiff, pending any internal appeal to be submitted by 1/4/21. It

FILED DATE: 1/11/2021 10:17 AM  2021CH00106

should be noted that Plaintiff requested NU for an extension of the date due to contemporaneous holiday season, however they denied his request without adequate explanation.

4.       Plaintiff is likely to prevail on the merits of his claim. Defendants discriminated against plaintiff solely because of threat from his perceived disability, he is "otherwise qualified" to participate in a regular classroom education pursuant to § 504, and defendants' actions are unsupported by reliable medical or scientific evidence and are irrational and based solely on vague, undifferentiated fears.

5.       Defendants' decision is causing plaintiff irreparable harm for which there is no adequate remedy at law. Because NU expulsion decisions are permanent, there is a substantial risk that plaintiff will be unable to attend school before the merits of this action are concluded and a permanent injunction is entered. The educational restrictions imposed by defendants are presently causing plaintiff psychological harm and substantially diminishing the quality of his life.

6.       The threat of injury to plaintiff outweighs any harm to defendants. Placing plaintiff in a regular classroom poses no significant health or safety risk to himself, his classmates or his teachers. Permitting plaintiff to participate in classroom education will enhance the quality of his education as well as that of his fellow students.

7.       Granting a temporary restraining order will serve the public interest. Defendants' irrational and unlawful conduct has caused confusion and unwarranted fear in a manner which damages the public health every day it is permitted to continue. In addition, the students in Northwestern University Community are being deprived of plaintiff's contribution to their educational experience and social development.

## **PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION**

### I.       **STATEMENT OF FACTS**

8.       Plaintiff is Fahad Syed, a first-generation college graduate from a low-income, racial and ethnic minority household and was raised by a single mother, and the first in his family to attend law school. Plaintiff's parents legally separated when he was 8 years old due to his father's violence towards

FILED DATE: 1/11/2021 10:17 AM    2021CH00106

the children, and Plaintiff grew up in an inner-city low-income housing project, a crime-laden environment devoid of positive male role-models and influences.

9.      Plaintiff suffers from multiple ADA learning and cognitive disabilities of bipolar disorder and ADHD, as well as anxiety and depression. One of the major "episodic manifestations" of Plaintiffs bipolar disorder are "psychotic episodes" triggered by stress, which induce varying levels of anger, paranoia, frustration, irritability, temper, etc.

10.     Plaintiff first made the decision to pursue law school in 2015, at the age of 25. Plaintiff had a successful career managing IT operations at a Fortune 100 company after graduating in 2012 with a 3.0 overall GPA from a Top 50 undergrad with a Top 10 undergrad business ranking with dual bachelors degrees in busines economics and political science and 3.3 and 3.9 major GPA's respectively. In addition, plaintiff holds multiple industry standard IT certifications, further illustrating his professional competency and capabilities. Plaintiff is actively involved in community building efforts and helped found a non-profit for refugee assistance (Iraqi Mutual Aid Society) during college and is currently affiliated with another non-profit (Inner-City Muslim Action Network) for which he does volunteering and other work.

### NU Law Class of 2017 Admission and Rejection

11.     Plaintiff always wanted to attend law school at NU, and his studying eventually paid off as he took the LSAT two times in 2017, receiving two 166 (93rd Percentile) scores on both attempts, and applied for Early Decision Admission to NU Law School in 2017 by the age of 27, but subsequently received a rejection.

### NU Law Class of 2018 Early-Decision Admission

12.     Despite the rejection, Plaintiff was still determined to attend law school at NU, and studied and retook the LSAT again on two separate occasions, scoring 168 (96th Percentile) and 170 (98th Percentile) and successfully re-applied for admission through Early Decision ("ED") to Northwestern University Law School JD class of 2018 with 150K scholarship on December 13th, 2017 at the age of 28. This was the happiest moment of Plaintiff's life.

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

## 2018 Discriminatory Conduct

13.     On April 26th, 2018 Plaintiff's 2018 Early-Decision Application and subsequent

admission was subject to an unannounced post admission review which was highly irregular in process

and was on the basis of "alleged inaccurate information in [Plaintiff's] Fall 2018 JD application related to

[Plaintiff's] employment history, collegiate extracurricular activities, and family background." As far as

plaintiff knows, no other 2018 early decision admit, nor 2018 general admit was subject to this kind of

irregular "verification" based on "alleged inaccurate information" related to "employment history,

collegiate extracurricular activities, and family background."

14.     The source or intended meaning of allegations in paragraph 6 was never revealed, even

after Plaintiff successfully cleared the investigation on May 21, 2018. As far as plaintiff knows, no other

2018 early decision admit, nor 2018 general admit who's application was subject to this kind of irregular

"verification" based on "alleged inaccurate information" related to "employment history, collegiate

extracurricular activities, and family background" ever successfully completed the verification without

learning the source of the allegation nor the allegations themselves.

## 2018 Adverse Action and Discriminatory Sanctions

15.     As a result of this investigation, Plaintiff was forced to "defer" his admission and

enrollment to 2019.

## 2019 Re-Enrollment at NU Law

16.     In August 2019, Plaintiff enrolled in the class of entering JD class of 2019 at NU Law

School at the age of 29 and started Fall 2019 Semester.

17.     During Fall 2019 Semester, Plaintiff was dealing with tremendous family concerns as

Plaintiff watched his mother slowly start to pass away from ovarian cancer because she had finally become

resistant to treatment.

18.     During the months September and October of 2019, Plaintiff watched his mother slowly

starved to death because she had finally become resistant to treatment, and metastatic ovarian cancer had

FILED DATE: 1/11/2021 10:17 AM    2021CH00106

filled her entire stomach and esophagus with tumors which made it so painful to eat that she chose to starve to death rather than be placed on a feeding machine. Because she elected his other siblings as her power of attorney and power to make health decisions, and specifically indicated a do not resuscitate order (DNR) and no life support options in her will, he was unable by law, to even suggest that if she tried to eat or find some way to get nutrition into her body, that she would live.

19.    Despite her impending passing and knowing that this was the last remaining time that he would have with her, because of his enrollment and commitment to law school, he sacrificed much of the precious time that he had left with his mother in order to attend classes and pursue coursework. Plaintiff would attend classes and complete coursework during the weekday working hours, come home and complete homework assignments, then travel up to Skokie from his apartment in

20.    Streeterville (1-hour trip on average) in order to spend time with his mother during the night. He sacrificed spending this time with her because his legal education and future legal career was the most important thing to him next to his late mother.

21.    Despite his family issues, Plaintiff tried to attend school and try to have relatively normal social experience by participating in social outings, joining student organizations and religious student groups, and trying to participate in the school group chat for the entering JD class of 2019.

22.    Despite the difficult learning environment Plaintiff was faced with, he was performing academically well in his courses, and had attended all 10 weeks of classes every day with good attendance and with satisfactory grades and was actively involved in class discussions, submitted coursework for credit and also submitted the mid-term writing assignment. Plaintiff was attending professors office-hours and spending significant time and effort attending to his academic responsibilities, indeed his Torts professor, Emily Kadens, saved the Palsgraff (a difficult torts case) case for his in-class discussion turn, and referred to him as the "smartest" person in the class in front of all the students on one occasion, and no one objected. In addition, plaintiff actively enjoyed interacting with staff and teachers, and frequently and

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

enthusiastically expressed his interest and enjoyment in the academic subject matter and quality of instruction to staff.

23.     Plaintiff's mother passed away on October 23rd, 2019, and after arranging her funeral and attending her burial, he spent a few days trying to rest and recover. Plaintiff then attempted to rejoin classes and school activities the next week.

### 2019 Discriminatory Conduct and Hostile Environment– False Imprisonment

24.     On November 1, 2019, roughly one week after his mother died on October 23rd, 2019, at approximately 6:37 PM CST Plaintiff attended a law school event in the Levy Mayer wing of the law school building located at 357 E Chicago Ave., Chicago IL 6061 attended by defendant and University of Chicago (3L) law student   REDACTED   REDACTED") and defendants and fellow Northwestern University law students REDACTED (3L) ("REDACTED and REDACTED (2L) ("REDACTED and approximately 60 other fellow law students from mine and other law schools in total.

25.     Plaintiff had attended the event to seek consolation for his mother's death and had not slept in 2-3 days prior to his attendance due to emotional distress. While at the event, Plaintiff was repeatedly targeted and harassed with threatening and invasive questioning and unwanted physical contact by an unknown male (REDACTED) on 4 separate occasions, culminating in a vicious physical attack where he kicked Plaintiff several times on the leg, then tackled Plaintiff onto the ground, and choked Plaintiff in a headlock until Plaintiff nearly lost consciousness. Defendant REDACTED A. took these actions acting in agency for Northwestern University and based directly on his perception of his mental impairment. As far as plaintiff knows, no other similarly situated 2019 early decision admit without disabilities, nor similarly situated 2019 general admit without disabilities was subject to this kind of vicious attack based directly on his perceived threat from their disability.

26.     No one witnessed this vicious physical assault. He then called out to his two friends (REDACTED and REDACTED who were nearby, and together the three physically restrained Plaintiff, restricting his freedom of movement to leave the premises and with intent to initiate his

FILED DATE: 1/11/2021 10:17 AM    2021CH00106

imprisonment of plaintiff based on perceived mental impairment to Plaintiff. They then called NUPD and unlawfully told them that plaintiff was suffering from "mental illness" and falsely reported to police that Plaintiff attacked <sup>REDACTED</sup>

27.    Plaintiff was twice certified for involuntary inpatient admission by Jeremy Banker RN and Eugene Lozza MD of Northwestern Memorial Hospital on 11/2/19 within 2 hours of each other, while sedated and not in a reasonable capacity to understand the situation, not presented an explanation of rights in the situation, and without identification of clear and convincing evidence of imminent threat to the physical safety of self or others, in violation of 405 ILCS 5/3 admissions, hearing, and notice procedures. Defendants Northwestern Memorial Hospital and its agents took this action based on perceived mental impairment of plaintiff and hostility towards plaintiff's religion, perceived mental impairment and national origin and with willful failure to contact plaintiff's close family or relatives or make alternative arraignments for patient care.  The sole evidence that staff had supporting any threat to the safety of myself or others was the police report which falsely stated that Plaintiff had committed a battery.

### 2019 Adverse Action and Discriminatory Sanctions

28.    On 11/1/19, <sup>REDACTED</sup> then called the law school Dean of Students Susie Spies-Roth and initiated a separate, school disciplinary process.

29.    NUPD Officer Healy #22 then notified his law school of the false narrative of this incident as it was recorded in the police report due directly to prejudice against his perceived mental health disability or threat he perceived as a result of his mental health disability and to save himself from disciplinary action as a result of his brutal unnecessary and excessive force perpetrated against

30.    Plaintiff due to his [Healy's] perceived threat from his ADA mental health disability status.

31.    Plaintiff was served with an interim-suspension and notice papers on November 6th 2019 stating that the school had received a report that Plaintiff struck an individual in the "mouth" during a law school event, while Plaintiff was still inside the hospital, and Plaintiff was requested to evacuate his

FILED DATE: 1/11/2021 10:17 AM    2021CH00106

university-affiliated residence within 5 days of leaving the hospital on November 8th 2019, under penalty of trespass and further school sanctions.

32.    After Plaintiff was released from the hospital Plaintiff received two separate letters in the mail from his insurance company denying the hospitals requests on November 5th and November 7th of 2019 for insurance coverage of continued inpatient stay, stating on both occasions, that "an independent review organization medical doctor, board certified in Psychiatry" reviewed the requests and determined that "continued inpatient stay has not been shown to be medically necessary to improve or correct your bipolar disorder."

33.    Following Plaintiffs return from medical leave, Plaintiff was forced to undergo a brutal defamatory student conduct interviews, wherein the attackers explicitly and in writing, admitted to harassing Plaintiff on the basis perceived threat from his disabilities, and Plaintiff made every effort to attempt highlight the fact that the University had failed to uphold its duty to provide students with disabilities the opportunity to pursue education free of harassment and discrimination by reporting all of the discriminatory conduct to the university.

34.    As part of the continuing pattern of harassment and discrimination, On December 19, 2019 DePilla and Cohen found Plaintiff guilty of "endangering myself or others" based off the testimony of his three attackers, and the police report which stated that Plaintiff battered [REDACTED] and [REDACTED] witnessed the battery, despite having full knowledge [REDACTED] had confessed to not witnessing anything except seeing Plaintiff being choked by [REDACTED] as he entered the room, and confessed to then aiding him [[REDACTED] in physically restraining Plaintiff. Student conduct found that his attacker's repeated targeted and predatory harassment was justified because he was one of the "organizers" of the event and was concerned for vague and unspecified "safety" reasons.

35.    Despite his strong disagreements and providing copious amounts of convincing and compelling evidence against his accusers, Plaintiff again worked with the administration of the law school a year in order to complete mental health assessments and a variety of other pre-conditions which would

FILED DATE: 1/11/2021 10:17 AM    2021CH00106

allow Plaintiff to return to school, this is because his legal education is the most important thing to

Plaintiff in the entire world. As far as Plaintiff knows, no other similarly situated student without

disabilities was subjected the pre-conditions discussed in this paragraph prior to their re-enrollment in the

law school following a medical leave of absence directly related to their disability.

### 2020 Re-Enrollment at NU Law

36.    In mid-July of 2020 Plaintiff finally completed the last of his mandatory pre-conditions,

and eagerly re-enrolled in the entering JD class of 2020.

37.    Plaintiff's Facebook is currently set to "private" mode for various reasons, as opposed to

"public" mode, and no one outside of individuals who he is "friends" with on the application, and who he

shares "groups" with on the application can search or find his information.

38.    Plaintiff currently shares "Official Northwestern Pritzker Class of 2023 Admitted Students

Page" with    REDACTED    a white female transgender incoming 1L student at NU Law. It is a

"private" group with 280 members because only members can see who is in the group and what they post.

39.    It is solely on account of his sharing the aforementioned Facebook group with REDACTED

that she was able to cyberstalk Plaintiff as indicated in the upcoming paragraphs, this is because only

members can see who is in the group and what they post. Members who are outside of this group cannot

search or find my profile because it is not in "public" mode.

40.    Plaintiff wishes to make abundantly clear that he has never met or interacted with

REDACTED    prior to these incidents in any way, shape, or form.

### 2020 Cyberstalking and Hate Crimes

41.    On or around 8/21/20 I was cyberstalked by    REDACTED    a white female

transgender incoming 1L student at NU Law, in violation of cyberstalking 720 ILCS 5/12-7.5. She

committed a Hate crime in violation of 720 ILCS 5/12-7.1 (a) by cyberstalking me on the basis of actual or

perceived mental disability. She conducted surveillance of me on "Google" and "Facebook" and other

possibly hitherto unknown locations, observing and monitoring those sites with information, and gathered

FILED DATE: 1/11/2021 10:17 AM    2021CH00106

my personal and private information such as: my photograph, work history, contact information, dates about my school history, and dates about my pictures on a group chat and on Facebook, and educational history. She gathered my personal data, including my photo, from "Facebook," "Google," and other possible locations for malicious personal use on or around 8/22/20, and also to post it in first-year Law GroupMe chat titled "NU Kids on the Block '23" on or around 8/21/20.

42.    On 8/22/20 at 2:22 AM she committed a Hate crime in violation of 720 ILCS 5/12-7.1 (a) by Transmission of obscene messages in violation of 720 ILCS 5/26.5-1(a), Harassment through electronic communications in violation of 720 ILCS 5/26.5-3 by posting my private information which she gathered through surveillance in first-year Law GroupMe chat titled "NU Kids on the Block '23" in committing harassment based on ADA disabilities and Her actions caused me significant emotional distress by bringing up my last year in school, which was when my mother died, I was hospitalized for grief, and I had to withdraw from school for mental health concerns.

43.    On 8/22/20 at 2:22 AM She committed a Hate crime in violation of 720 ILCS 5/12-7.1 (a) by Transmission of obscene messages in violation of 720 ILCS 5/26.5-1(a) harassing me through electronic communications in violation of 720 ILCS 5/26.5-3 in a first-year Law GroupMe chat titled "NU Kids on the Block '23," wherein she committed the following acts:

44.    She committed by transmission of obscene messages in violation of 720 ILCS 5/26.5-1(a) when she posted a disparaging image of a frog with the title "NO THOUGHTS EMPTY HEAD" in direct reference to a stereotype about people with mental health problems and disabilities in a first-year Law GroupMe chat titled "NU Kids on the Block '23" on 8/21/20; directly comparing my mental capacity to that of a frog, insinuating that my mental capacity was equivalent to a frog which is a direct reference to my mental health and disability status and is a stereotype about people with mental health problems and disabilities

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

45.     She posted my private Facebook information on the chat, which included such as: my photograph, work history, contact information, dates about my school history, and dates about my pictures on a group chat and on Facebook, and educational history.

46.     She committed transmission of obscene messages in violation of 720 ILCS 5/26.5-1(a) when she inappropriately suggested I was under an "assumed identity," which is a stereotype about people with mental disabilities.

47.     She committed transmission of obscene messages in violation of 720 ILCS 5/26.5-1(a) when she posted the word "psyop" which was a direct reference to my mental capabilities and was directly related to my mental health, and she insinuated that I was undertaking a psychological operation, which is a blatant stereotype about people with mental health disabilities and other problems.

48.     **She committed Educational intimidation in violation of  720 ILCS 5/12-7.**2(a)(3) when she committed a violation of intimidation statutes 720 ILCS 5/12-6(a)(7) and 720 ILCS 5/126(a)(5) when she encouraged rampant negative speculation among the class about my mental health status by making several mischaracterizing and intentionally malicious comments aimed at making people think I was doing multiple stereotypical activities of people with mental health problems By posting my work history and by making all of the inappropriate suggestions and bringing up dates about my pictures, she encouraged the negative stereo type that people with mental health problems are not able to hold jobs, and that somehow my work and education history was something that I could not possibly have because of my mental health status and cognitive capacity. Therefore, by ridiculing and trying to poke holes in my work history and inciting hatred and speculation about me, they directed comments at my ADA disabilities.

49.     **She committed Educational intimidation in violation of  720 ILCS 5/12-7.**2(a)(2) when her harassment "created a hostile environment and/or substantially interfered" with my "access to a University program or activity from an objective perspective" when I was banned immediately from group chat and discord after my comments in the chat, furthermore I was immediately suspended from school, thereby effectively impeded from those university activities directly resulting from REDACTED influence

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

and injured in my property in educational opportunities and law career due to her malicious intent to get me expelled from school.

50.     **She committed Educational intimidation in violation of  720 ILCS 5/12-7.**2(a)(1) and **720 ILCS 5/12-7.**2(a)(3) when she Engaged in intimidation in violation of 720 ILCS 5/12-6 (a)(1) by Indirectly threatening my safety when she posted my personal information in the first-year Law GroupMe chat titled "NU Kids on the Block '23" on 8/22/20, thereby exposing me to unnecessary exposure and risk which I did not consent to by exposing me to risk of someone who could use that information to track me down and hurt me, both inside and outside of the law school. This is because the group me is not officially a school moderated activity, and other people from outside of the law school can request and gain access to it, this is proven by a total list of the chat members and comparison to the total number of law students in the class, specifically there are many more members of the chat than there are members of the incoming 1L class. At least some of those who were in the group chat were exposed to my private information as a result of <sup>REDACTED</sup> posts who would not otherwise have seen my information, absent <sup>REDACTED</sup> defamatory hate crime of posting my private information on the basis of my perceived disability.

51.     On or around 8/22/20, after she had harassed me on the Group chat, and I had been removed from both the Discord and Group Me by other biased students, I made a legitimate offer to <sup>REDACTED</sup> to settle our grievances offline by offering my personal number and asking her to call me "if there was an issue."

52.     **She committed assault in violation of 720 ILCS 5/12-**1(a) when she put Plaintiff in imminent fear of battery when she **committed Educational intimidation in violation of  720 ILCS 5/127.**2(a)(1) and Engaged in intimidation in violation of 720 ILCS 5/12-6 (a)(1) when she engaged in harassment by telephone in violation of 720 ILCS 5/26.5-2 and directly threatened my safety by calling me at 1:08 AM on 8/23/20 in a threatening manner due to the late-night hour, menacingly asking "Is this

Fahad Syed?" then paused and breathed into the phone menacingly, then failed to identify herself after repeated inquiry, replying only "you gave me your number" and "you told me to call you." She took my legitimate offer to settle our grievances offline to call me 1:08 AM threateningly and menacingly, instead of trying to arrange a meeting at normal hours via email or text. She took these actions in order to take advantage of my learning disability and vulnerability to bait and entrap me into responding, and then misleadingly misrepresent that situation to report to NU that I had threatened her safety. She also committed Aggravated assault in violation of <u>720 ILCS</u> <u>5/12-2(a)</u> by committing the assault resulting from gaining my information in "NU Kids on the Block '23" which is a school affiliated group, or a "place of public accommodation." She also committed aggravated assault in violation of <u>720 ILCS 5/12-2(b)(1)</u> by knowingly assaulting a person with ADA disabilities.

53.    REDACTED committed intimidation in violation of <u>20 ILCS 5/12-6</u> (a) (1) when she engaged in harassment by telephone in violation of <u>720 ILCS 5/26.5-2</u> by illegally recording the phone conversation without my knowledge or consent in violation of Eavesdropping <u>720 ILCS 5/14-2</u>(a)(2) when she used an eavesdropping device, her phone and/or another recording devise, in a surreptitious manner, for the purpose of transmitting or recording all or any part of any private conversation to which he or she is a party unless he or she does so with the consent of all other parties to the private conversation and Eavesdropping <u>720 ILCS 5/14-2</u>(a)(3)  when she  recorded, or transcribed, in a surreptitious manner, any private electronic communication to which he or she is not a party unless he or she does so with the consent of all parties to the private electronic communication in order to maliciously and deceitfully get me expelled from law school.

54.    **She committed Educational intimidation in violation of  <u>720 ILCS 5/12-7,</u>**2(a)(2) when REDACTED committed Eavesdropping in violation of <u>720 ILCS 5/14-2</u>(a)(5) when she engaged in harassment by telephone in violation of <u>720 ILCS 5/26.5-2</u>  and Harassment through electronic communications in violation of <u>720 ILCS 5/26.5-3</u> when she used or disclosed any information which he or she knows or reasonably should know was obtained from a private conversation or private electronic

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

communication in violation of the Article, doing so without the consent of all of the parties and disclosing that information to NU representatives Ish Faith-Orkar and Heather Cohen on 8/27/20 and 10/29/20 in order to maliciously and deceitfully get me expelled from law school.

55.     **She committed Educational intimidation in violation of <u>720 ILCS 5/12-7.</u>**2(a)(3) and she committed intimidation in violation of <u>720 ILCS 5/12-6</u>(a)(7) and <u>720 ILCS 5/12-6</u>(a)(5) by inciting, encouraging, and/or influencing "REDACTED an incoming female 1L , to speculate negatively "According to 2Ls, last year he escalated in his aggressive behavior and speech after being kicked out of the group me. Unfortunately in person at times. If he messages any of you, rather than engaging with him I recommend emailing [NU] with screenshots," in the first-year Law GroupMe chat titled "NU Kids on the Block '23" on 8/22/20. Where REDACTED and REDACTED had previously met and spoken.

56.     **She committed Educational intimidation in violation of <u>720 ILCS 5/12-7.</u>**2(a)(1) and <u>**720 ILCS 5/12-7.**</u>2(a)(3) when and she committed intimidation in violation of <u>720 ILCS 5/12-6</u>(a)(7) and 720 <u>ILCS 5/12-6</u>(a)(5) by inciting, encouraging, and/or influencing " REDACTED  an incoming white male 1L , to state "Please keep further discussion about Fahad at a respectful level, and preferably at a minimum, outside of what is necessary" after removing me from in the first-year Law GroupMe chat titled "NU Kids on the Block '23" on 8/22/20. Where REDACTED and REDACTED had previously met and spoken.

57.     **She committed Educational intimidation in violation of <u>720 ILCS 5/12-7.</u>**2(a)(1) and <u>**720 ILCS 5/12-7.**</u>2(a)(3)and she committed intimidation in violation of <u>720 ILCS 5/12-6</u>(a)(7) and <u>720 ILCS 5/12-6</u>(a)(5) by inciting, encouraging, and/or influencing "Gloria REDACTED a white female lesbian NU LGBTQ Student Organization Leader to an current 2L , to unfairly influence school administration to suspend me from NU on Behalf of REDACTED on 8/23/20, where REDACTED forwarded messages and screenshots and called Shannon Bartellete, the associate dean of Inclusion and

58.     Engagement to speak to Associate Dean and Dean of Students Susie Spies Roth and others. Where REDACTED sent REDACTED and email falsely indicating that Plaintiff had initiated the phone

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

contact between REDACTED and Plaintiff and where REDACTED and REDACTED had previously met and were both part of the LGBTQ affinity group.

59.     **She committed Educational intimidation in violation of  720 ILCS 5/12-7.**2(a)(3) and she committed intimidation in violation of 720 ILCS 5/12-6(a)(7) and 720 ILCS 5/12-6(a)(5) by inciting, encouraging, and/or influencing "REDACTED," a female transgender 2L student at Northwestern Law, to harass me six separate times with unwanted comments on Facebook on 8/23/20, where she made repeated reference to me "sliding into white girls dm's" and other harassing comments on my status posts. Where REDACTED and REDACTED had previously met and were both part of the LGBTQ affinity group.

60.     **She committed Educational intimidation in violation of  720 ILCS 5/12-7.**2(a)(3) and she committed intimidation in violation of 720 ILCS 5/12-6(a)(7) and 720 ILCS 5/12-6(a)(5) by inciting, encouraging, and/or influencing "REDACTED," a white female incoming 1L student, to harass me with offensive statements on Dischord on 8/23/20 on Behalf of REDACTED where both REDACTED and REDACTED had previously spoken and met.

61.     **She committed Educational intimidation in violation of  720 ILCS 5/12-7.**2(a)(1) and **720 ILCS 5/12-7.**2(a)(3) when and she committed intimidation in violation of 720 ILCS 5/12-6(a)(7) and 720 ILCS 5/12-6(a)(5) by inciting, encouraging, and/or influencing "REDACTED an incoming white female male-transgender 1L , to participate in a student disciplinary hearing against me where she stated during an interview on 9/1/20 that "while this semester is largely remote, [I] don't want to be in the hall with him to and from class and have some sort of confrontation," and where she said it would be "Very easy to imagine using the women's restroom" and seeing him go in and out of the restroom at the same time, "and… start a confrontation." Where REDACTED and REDACTED had previously met and were both part of the LGBTQ affinity group.

62.     **She committed Educational intimidation in violation of  720 ILCS 5/12-7.**2(a)(1) and **720 ILCS 5/12-7.**2(a)(3)and she committed intimidation in violation of 720 ILCS 5/12-6(a)(7) and 720 ILCS 5/12-6(a)(5) by inciting, encouraging, and/or influencing "REDACTEDREDACTED a white female lesbian NU

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

LGBTQ Student Organization Leader to an current 2L , to participate in a student disciplinary hearing against me where she stated during an interview on 9/2/20 that "she is working on an action plan so this doesn't happen again." She also stated "(This feeling is) reciprocated among our board, because they were all taking about it [the group chat altercation] as it happened" further indicating the defamatory rumors and hate and ridicule REDACTED incited about me to the law school. Where REDACTED and REDACTED had previously met and were both part of the LGBTQ affinity group.

63.    **She committed Educational intimidation in violation of  720 ILCS 5/12-7.**2(a)(1) and **720 ILCS 5/12-7.**2(a)(3) when and she committed intimidation in violation of 720 ILCS 5/12-6(a)(7) and ILCS 5/12-6(a)(5) by inciting, encouraging, and/or influencing "  REDACTED   an incoming gay 1L , to participate in a student disciplinary hearing against me where he falsely claimed during an interview on 10/27/20 that I was making comments "geared directly at a person's attributes" in attempting to mischaracterize and defame me as a transphobic person. Where REDACTED and REDACTED had previously met and were both part of the LGBTQ affinity group.

64.    **She committed Educational intimidation in violation of  720 ILCS 5/12-7.**2(a)(1) and **720 ILCS 5/12-7.**2(a)(3) when and she committed intimidation in violation of 720 ILCS 5/12-6(a)(7) and 720 ILCS 5/12-6(a)(5) by inciting, encouraging, and/or influencing "REDACTED an incoming 1L , to participate in a student disciplinary hearing against me where she stated during an interview on 10/27/20 that "there were rumors concerning the first time Fahad was in law school two years ago." REDACTED indicated that it was "rumored that due to inappropriate physical conduct, Fahad left law school two years in a row and this fall was placed in section 4." Where REDACTED and REDACTED had previously met and knew each other.

65.    **She committed Educational intimidation in violation of 720 ILCS 5/12-7.2 (a)(2),** when she engaged in harassment by telephone in violation of 720 ILCS 5/26.5-2  and Harassment through electronic communications in violation of 720 ILCS 5/26.5-3 by texting me at 8:34 PM on 8/23/20, after

FILED DATE: 1/11/2021 10:17 AM    2021CH00106

knowingly cooperating with NU to have me suspended earlier that day, in order to further target my ADA learning disabilities and associated vulnerability to maliciously provoke and entrap me into a response. She knew that she had been suspended with a no-contact order, and was attempting to again lure me into responding because, due to my ADA disability, she knew I had a irritable disposition, so then she could maliciously report me for violating the no-contact order which she was fully aware was in place resulting directly from her actions and cooperation with NU.

66. **She committed Educational intimidation in violation of <u>720 ILCS 5/12-7.2 (a)(2)</u>**, when she engaged in harassment by telephone in violation of <u>720 ILCS 5/26.5-2</u>  and Harassment through electronic communications in violation of <u>720 ILCS 5/26.5-3</u> by communicating to the law class about me by posting my private information in the first-year Law GroupMe chat titled "NU Kids on the Block '23 from 8/22/20-8/23/20, communicating to others about me by making and encouraging defamatory speculation and remarks directed towards ADA disabilities for the purposes of having me maliciously expelled from law school.

67. She committed **Criminal damage to property in violation of <u>720 ILCS 5/21-1)(a)(1)</u> in excess of $100,000, she committed Educational intimidation in violation of <u>720 ILCS 5/12-7.2 (a)(2)</u> and <u>ILCS 5/12-7.2 (a)(3)</u>** and she committed intimidation in violation of <u>720 ILCS 5/12-6</u>(a)(7) and 720 ILCS 5/12-6(a)(5) by damaging to my property in the form of my personal and professional reputation within the law school and legal profession by defaming me and inciting hatred and speculation against me in first-year Law discord chat on 8/21/20 or 8/22/20 in order to get me maliciously expelled from law school.

68. She committed **Criminal damage to property in violation of <u>720 ILCS 5/21-1(a)(1)</u> in excess of $100,000, she committed Educational intimidation in violation of <u>720 ILCS 5/12-7.2 (a)(2)</u> and <u>720 ILCS 5/12-7.2 (a)(3)</u>** and she committed intimidation in violation of <u>720 ILCS 5/126</u>(a)(7) and 720 <u>ILCS 5/12-6</u>(a)(5) when she damaged my property in terms of my character through defamatory

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

statement and inciting hatred and speculation against me in first-year Law GroupMe chat titled "NU Kids on the Block '23" on 8/21/20 or 8/22/20 in order to get me maliciously expelled from law school.

69.     She committed **Criminal damage to property in violation of <u>720 ILCS 5/21-1(a)(1)</u> in excess of $100,000, she committed Educational intimidation in violation of <u>720 ILCS 5/12-7.2 (a)(2)</u>** when she damaged my property in the form of my educational opportunities by having me suspended through lies and deceit and defaming me in first-year Law GroupMe chat titled "NU Kids on the Block '23" on 8/21/20 or 8/22/20.

### <u>2020 Conspiratorial Disability Harassment and Unlawful Obstruction of Justice</u>

70.     On information and belief, sometime around 8/23/20, The Interim University Dean of Students, Mona Dugo ("Dugo"), and the Deputy Chief Eric Chin ("Chin") of Northwestern University Police Department (NUPD) negligently suspended Plaintiff (Fahad Syed: Current 1L Law Student) from Northwestern University Law School, and reported Plaintiff to the Northwestern University Police Department (NUPD), for a perceived threat from his disability which resulted from communications between Plaintiff and fellow current 1L  REDACTED  and occurred between 8/22/20-8/23/20. She called Plaintiff on 8/23/20 and explicitly stated "we've been watching your Facebook and other social medial posts" and on a 3-way call with Chin, Dugo, and Plaintiff.

71.     On 8/27/20, Plaintiff filed Department of Education, Office of Civil Rights Complaint #05-202444 alleging discrimination on multiple grounds, including disability discrimination and hostile environment.

72.     On 9/3/20 at 7:45 AM, Plaintiff informally and indirectly notified the university via email to Lucas Christian of the Office of Community Standards that the Plaintiff had complained about the University to an outside entity, Illinois Department of Human Rights and Illinois Guardianship and Advocacy Commission.

73.     On 9/3/20 at 9:05 AM, Plaintiff wrote an email addressed, in part, to Dugo and Chin, requesting the chat transcripts of the incident which resulted in his suspension on 8/23/20.

FILED DATE: 1/11/2021 10:17 AM    2021CH00106

74.     On 9/13/20 at 1:49 PM Plaintiff formally notified the University via email to The Office of Equity, its employees Amanda DeSilva and Ish Faith Orkar, and Lucas Christian and Heather Cohen of the Office of Community Standards, that the Plaintiff had complained about the University to an outside entity: The Department of Education, Illinois Department of Human Rights, and Illinois Guardianship and Advocacy Commission.

75.     On 9/14/20 at 5:29 PM, Chin had unauthorized telephone communications with Plaintiff's private psychiatrist(s) in violation of the IMHDDCA and HIPAA. Chin left Tobin a voicemail specifically, twice, acknowledging that he did not have an ROI for contacting him [Tobin], and requesting to "share information" with him and requesting Tobin call him back on his cell phone.

76.     On 9/14/20 at 6:11 PM PLAINTIFF was notified via email by his therapist, Brian Tobin ("Tobin"), that Deputy Chief Chin had contacted him, and he [Tobin] subsequently asked Plaintiff to sign an ROI form.

77.     On 9/15/20 at 12:11 PM, during a 6-minute incoming phone call, NUPD Detective Sanghoon Lee ("Lee") inappropriately contacted and aggressively questioned Plaintiff regarding Plaintiff's Facebook post about his discrimination complaint with the Department of Education, in order to retaliate against Plaintiff for making said complaint, and to threaten, intimidate, and coerce Plaintiff into dropping said complaint. During this call, Lee said "you know why I'm calling," mentioned Dugo by name, and instructed Plaintiff not to post anything about Dugo without "running it by [Lee's] office first." Plaintiff indicated to Lee that Plaintiff had filed the DOE complaint, gave Lee the complaint number, and directed Lee to "contact [Plaintiff's] attorney regarding the posts if he had any other questions."

78.     On 9/16/20 at 3:03 PM, Dugo had unauthorized email communications with Plaintiff's private psychiatrist, Brian Tobin, in violation of the Illinois Mental Health and Developmental Disabilities Confidentiality Act (IMHDDCA) and Health Insurance Portability and Accountability Act (HIPAA) under the pretext of responding to Plaintiff's 9/3/20 email requesting group transcripts. In the communication,

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

she stated: "I'm not sure if Fahad signed a release of information when he made this request. I would like to be able to share some information with you as we have a lot of on going concerns about Fahad."

79.     On 9/22/20, The Dean knowingly and inappropriately shared an illegally obtained audio recording of Plaintiff, of a phone call with another current law student (1L   REDACTED   from 8/22/20, with Plaintiff's medical providers in order to assassinate his character in retaliation for the Department of Education complaint which she referenced during the call and is discussed in the letter from the his therapist. The Dean discriminated against me on the basis of his mental health, in retaliation for the Department of Education complaint which, and which she was fully aware through the university on 9/3/20 through an email to Lucas Christian and 9/13/20 through an email to the Office of Equity.

80.     On or around 9/28/20, during their next session, Plaintiff's therapist, Brian Tobin, informed Plaintiff of the audio recording. It was at this time that Plaintiff realized that this was audio which was illegally submitted to his university by   REDACTED   and illegally resulted in his suspension sometime around 8/23/20.

81.     On or around 9/28/20 as a result of the aforementioned unlawful contact with Plaintiff's therapist, Mona Dugo, Eric Chin, and Sanghoon Lee were repeatedly informed not to contact Plaintiffs family members via text messages from plaintiff to their cells phones.

82.     On 10/10/20, at 8:33 PM PLAINTIFF attempted to file an eavesdropping charge with Northwestern University Police Deputy Chief Eric Chin via text message for a phone call which PLAINTIFF took at his apartment in the 18th district (244 E Pearson St), which was illegally recorded and submitted to his law school, resulting in his suspension. At 8:44 PM Chin responded via text and instructed Plaintiff to file a report with Chicago Police Department (CPD) because NUPD did not have jurisdiction in the matter.

83.     On 10/11/20, PLAINTIFF filed a police report for Eavesdropping in the CPD 18th district, with the non-emergency line (312-746-6000) because they have jurisdiction over a phone call which PLAINTIFF took at his apartment in the 18th district (244 E Pearson St) which was illegally recorded and

FILED DATE: 1/11/2021 10:17 AM 2021CH00106

submitted to his law school, resulting in his suspension. Reporting Officer Aldahhondo (Star 5142) took the report and Supervisor O Shaughnessy (Star 1829) approved it. (Report JD 395786 attached.)

84.     On 10/14/29, NUPD Detective Lee called Plaintiff and brutally interrogated Plaintiff for 18 minutes about exactly how and when Plaintiff found out about the illegal audio tape. Had the illegal audio tape not been made and the university not knowingly suspended me over it, Plaintiff would never have received such an intimidating and harassing interrogation. During the call the detective asked my CPD report number and claimed that he was filing a report with NUPD. Approximately 3 days later he called Plaintiff provided him with report 2020-0356 which he claimed was filed for the eavesdropping case.

85.     On 10/19/2020, at approximately 3:00 PM PLAINTIFF called CPD non-emergency (312746-6000) and was told by the officer on duty, Philp (Emp #19035)  that the report had been "cancelled without investigation," citing a "lengthy cancellation report" involving "NUPD Deputy Chief Chin and the sergeant" as the reason.

86.     Sometime between 10/11/20 – 10/19/20, Chin cancelled his report illegally by illegally revealing his mental health history to the detective without having an ROI in violation of the Illinois Mental Health and Developmental Disabilities Confidentiality Act and Health Insurance Portability and Accountability Act of 1996 (HIPAA), discriminating against Plaintiff on the basis of his mental health, in retaliation for the Department of Education complaint which PLAINTIFF filed on 8/27/20, and which he [Chin] was fully aware through the university on 9/3/20 through an email to Lucas Christian and 9/13/20 through an email to the Office of Equity. The call in question never took place on University property, and DC Chin knew that due to the prior text conversation.

87.     He [Chin] revealing that plaintiff had involuntarily committed to a hospital in November 2019 for an involuntary mental evaluation, directly and deliberately implying or stating to the detective that PLAINTIFF was crazy and his lawful report shouldn't be investigated on the basis of his mental health status.

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

88.     He also told the detective and express lie about his consent during the recording in question: telling the detective that PLAINTIFF consented having his conversation recording when PLAINTIFF did not, as was the very reason why PLAINTIFF filed the eavesdropping report. PLAINTIFF did not consent to having his conversation recorded, nor did PLAINTIFF have knowledge of the recording at any time, and DC Chin knew that because I attempted to file the report with him first.

89.     As a result of the call, plaintiffs report (JD 395768) was cancelled.

90.     In approximately 10 separate follow-up calls and 50 text messages to Lee, which occurred in the weeks after my CPD report was cancelled, he never responded to my follow-ups about report 2020-0356. This proves that his purpose in interrogating me was under the false pretext of filing a report whereas in reality he was retaliating for my CPD report and my DOE complaint. The university has deliberately failed to provide that report on my multiple email requests.

91.     On information and belief, sometime between 10/11/20 – 10/19/20, Chin called and told CPD non-emergency response officers (312-746-6000), between 12pm-6pm, not to respond to reports about eavesdropping from students at Northwestern, or informed the desk sergeant of such.

92.     PLAINTIFF called CPD non-emergency (312-746-6000) 6-7 times in a row between 3p-5pm on 10/19/2020 in order to file another report, and as soon as PLAINTIFF told them PLAINTIFF was a student from NU filing an eavesdropping report, they hung up.

93.     On information and belief, on or around on the week of 10/19/2020, Chin called Area 3 Supervising Detective Rose #982 at (312-744-8263) and asked him not to respond to reports about eavesdropping from students at Northwestern or related cancellations. On 10/19/2020 PLAINTIFF called Area 3 Supervising Detective Rose #982 at (312-744-8263) from 4-5PM , to report the incident of improper cancellation of my report, citing jurisdiction, and he refused to disclose any details about why the report was cancelled, telling me to "file another report."

94.     On information and belief, on or around on the week of 10/19/2020, Chin called and told 18th District Supervisor Sergeant Vogt at (312-742-5870) and asked him not to respond to reports about

eavesdropping from students at Northwestern or related cancellations. On 10/19/2020 PLAINTIFF called 18th District Supervisor Sergeant Vogt at (312-742-5870) from 4-5PM , to report the incident of improper cancellation of my report, citing jurisdiction, and he refused to disclose any details about why the report was cancelled, telling me telling me "civil litigation" is an option.

95.     Deputy Chief Eric Chin took these actions to prevent the illegal audio tape from being revealed in retaliation for the Department of Education complaint which PLAINTIFF filed, in order to conceal his and the universities negligence, and their knowing harboring and supporting of a malicious

96.     criminal,   REDACTED   Chin also took these actions to conceal the fact that he and Dugo were aware of the illegality of the audio tape, and still suspended me over it, which is also why PLAINTIFF filed his Department of Education Complaint, and to punish Plaintiff for filing said complaint.

97.     All of the actions taken by Dugo, Chin, and Lee, including slandering ones reputation to their therapist, especially given mental disabilities, brutal interrogation, and causing a report to be cancelled without informing them, would deter a reasonable person from complaining.

98.     The illegal conduct of the   REDACTED   illegally recording me and illegally submitting the tape to the university in order to have me suspended, caused the university to knowingly use it to suspend me due to bias. That suspension then caused me to file a discrimination claim with the DOE and ultimately to file the police report with CPD.

99.     The discrimination claim with the DOE caused Chin to illegally contact Plaintiff's therapist in order to slander him with an illegal audio tape, Dugo to illegally contact Plaintiff's therapist and slander Plaintiff's reputation maliciously with an illegal audio tape, Lee to aggressively and harassingly call me once, and Lee to brutally and menacingly interrogate me another time.

100.     Filing the DOE complaint about discriminatory and bias suspension later caused me to file the CPD report about the discriminatory use of the illegal audio tape in order to strengthen my discrimination complaint for legal proceedings which would occur during litigation.

FILED DATE: 1/11/2021 10:17 AM    2021CH00106

101.    Filing the CPD report caused Chin to have my CPD report cancelled. Therefore, the filing DOE complaint caused me to file the CPD report, which caused Chin to have my CPD report cancelled through disability discrimination

102.    On 11/2/20 Plaintiff filed a report with the Civilian Office of Police Accountability about Chins illegal disclosure of my mental health history. On 11/5/20 the complaint Log 2020-0004964 was assigned to Sgt. Mark K Lamberg (Star# 1847) to be investigated by Chicago Police Department Bureau of Internal Affairs Division Officer Lambert, with whom I interviewed 11/9/20 at CPD Headquarters regarding the incident.

103.    On 11/3/20 Plaintiff filed an eavesdropping report again with Chicago Police Department, JD 419862. The report is currently assigned to Detective Lee of CPD with an unnamed offender.

104.    Mona Dugo, Eric Chin, and Sanghoon Lee were repeatedly informed not to contact Plaintiffs family members via text messages from plaintiff to their cells phones occurring on or around 9/28/20.

105.    On or around 11/3/20, Plaintiff learned from his brother-in-law Azam Hussien (312-303-3736) via text message that someone person or persons from the university had contacted my sister, Sophia Syed (847-347-3736) and requested discussion for "hours" about Plaintiff and his school situation without Plaintiff's knowledge or consent. This is after Plaintiff expressly forbade the university, through text message to Mona Dugo after she shared the illegal audio with Plaintiffs therapist, that no one who Plaintiff "knows" should be contacted, including most importantly: plaintiff's family members. NU and NUPD and its representatives contacted Plaintiff's sister in retaliation for his COPA report, his police report, and his DOE Report.

106.    Shortly after learning that someone had contacted Plaintiff's family in direct conflict with his wished, Plaintiff texted Defendants NU, Dugo, Chin, and Lee to determine why they had contacted Plaintiff's family and who had authorized such unlawful contact.

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

107.      On 11/4/20, Plaintiff received Official Northwestern Correspondence email from the Office of Community Standards indicating several more disciplinary sanctions and another UHAS hearing in retaliation for the filing of plaintiff's police report and DOE complaint. The stated pretext for this disciplinary action was that Plaintiff was being disciplined for texting Chin, Dugo, and Lee about his DOE complaint and about the police report, about the various retaliatory measures taken against plaintiff and for the contacting of Plaintiff's sister without Plaintiff's permission. NU and NUPD and its representatives sanctioned plaintiff in retaliation for his COPA report, his police report, and his DOE Report. NU displayed awareness of the multitude of illegal and discriminatory and illegal conduct which I texted Chin, Dugo, and Lee and were in a position to take corrective action and failed to do so.

108.      On 11/6/20 Plaintiff was served with a protection order ("PO") (Case 200P20532) for harassment and Stalking from the Cook County Sheriffs office, in which Dugo made several misleading allegations as to my contact with her due to her official capacity as dean of students. The stated pretext was that I was sending her "100's harassing messages" whereas in reality I was informing her of discrimination which is ongoing and pleading for her to step in and stop it due to her duty as dean of students. This pretext was a cover for her requesting both a threat assessment and a protecting order against me based SOLEY off threat from my perceived disability in retaliation for my DOE complaint. The stalking no contact order was taken especially to label me as a sexual offender in retaliation for my DOE complaint.

109.      The PO revealed that Dugo, through her official capacity at the University, contracted with "Sigma Threat" in order to harass Plaintiff in retaliation for filing his DOE Complaint and retaliation complaints to the university. The stated pretext for this was to "help evaluate his threat level" and was a cover for her contracting the service on the basis of threat from my perceived disability in retaliation for filing his DOE Complaint.

FILED DATE: 1/11/2021 10:17 AM    2021CH00106

110.    In addition, she made derogatory and misleading accusations in PO about the Holy Quran Chapter 33, Verses 60-68: referring to them as "translated as sinners will die in a fire". She took the protection order for harassment and stalking based on perceived threat from Plaintiffs religion.

111.    Her allegations in support or PO were misleading or defamatory in the following ways:

a.    She claims she "had to issue" Plaintiff "interim suspension for threatening a fellow law student w/ physical violence." This is false, she knows that the student in question,

    REDACTED    stalked me and then posted my information to a group chat and made derogatory statements about my disability, then called me at 1:08 am in a threatening manner and recorded BOTH the call that she made to me and the call that I made in response. These two illegal audio tapes are what Dugo actually suspended me over. She misrepresented this fact deliberately in order to make me seem like a dangerous person.

b.    She claims I was on probation for "physically assaulting another student." This is false, she knows that there was absolutely no evidence whatsoever that I assaulted anyone aside from that single persons unsubstantiated allegations. She misrepresented this fact deliberately in order to make me seem like a dangerous person. I have filed Attorney General Case 20cv1772 pursuant to this allegation.

c.    She claims that I have sent her "more than 150 unanswered text messages with increasingly aggressive language." This is without indicating that the messages are sent to her because of her official capacity as dean of students, and because I am telling her about discrimination committed by Deputy Chief Eric Chin of NUPD, Lee of NUPD, and others in the University and asking her to stop them. The "aggressive language" she is referring to is the increasing amount of litigation and legal proceedings that I am threatening her with if she does not cease her illegal conduct.

d.    She claims she "has not" monitored my Facebook. This is blatantly false, because she on 8/23/20 she called me and explicitly stated "we've been watching your facebook and

other social medial posts" and she also directed detective Lee to call me and interrogate

me on the basis of her perceived threat from my Facebook post about my Department of

Education Complaint.

e. She claims that I am sending her "harassing" messages to her work email when in reality I

sent her two follow emails demanding to know who contacted my sister when I told her

not to.

f. She claims that Plaintiff called her and that she hung up the phone, which is a lie. Plaintiff

called her and HE hung up the phone, not Dugo. She deliberately misrepresented this fact

to make it seem like Plaintiff was harassing her, when in reality she was harassing

Plaintiff and his sister, acting far beyond the scope of her responsibilities as Dean of

Students, and escalating the situation to the current severity level.

112.    On 11/11/19 at approximately 3:00 PM Plaintiff attempted to file a police report in order

to get  REDACTED  named as the offender on the police report at Chicago 18th District and two

officers obstructed me from doing so, as a result I filed COPA complaint Log 2020-0005122.

113.    On 11/17/20, Plaintiff went to domestic violence court at 555 W Harrison and stated

claims for SNCO against both  REDACTED  (20OP78283) and Mona Dugo (20OP78277), which

were deemed worth of a hearing by the Honorable Judge Thomas M. Cushing #2258.

114.    On 11/18/20 Log 2020-0005122 was assigned CPD Sergeant Lisa Eitel (Star #2075) and

on 11/22/20 I interviewed with Eitel about the incident of report obstruction, and at that time she included

an amendment for report JD 419862 to include  REDACTED  name as the suspect.

115.    On or around 11/19/20, Mona Dugo falsely reported to Evanston Police that Plaintiff had

violated the PO which she unlawfully had placed on me as a result of one my previously sent emails to the

school asking for them to address the unlawful contact with my family which had taken place earlier in the

month of October and which Plaitiff had reported to DOE and the University. She maliciously had the

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

Plaintiff falsely imprisoned pursuant to case 20DV2080601, the only arrest on Plaintiff's entire criminal record, in order to retaliate against Plaintiff for his DOE report and for 20OP78277 which Plaintiff had secured on 11/17/20.

116.     On 11/19/20, four officers of the Evanston Police Department, including Detective Jones, came to my apartment at 244 E Pearson St. Chicago, IL 60611 at approximately 11:00 AM CST and arrested me without telling me what charges they were arresting me for, without letting me take my prescribed medicine, and without reading me my rights.

117.     When I answered the door, they said they needed to "talk to me about the discrimination by Northwestern University," so I let them come into my apartment.

118.     While they were inside my apartment they repeatedly and purposefully stepped on my prayer rug even after I asked the first officer not to step on in, in direct disrespect of my religious beliefs, and laughed as they did it and I asked them not to. They made derogatory statements about the rug, saying it was "beautiful" after repeatedly stomping on it and laughing.

119.     Detective Jones arrested me inside me house without ever telling me what I was under arrest for or reading me my rights.

120.     The four officers took me to Evanston police station and the four officers made me sit in an interrogation room and made me make incriminating statements without the presence of a lawyer, while under duress, which I did not understand.

121.     During this interrogation, they said that calling a lawyer would take "several hours" and made it seem like if I requested a lawyer, that I would have to get on myself. They said they "might" be able to call the public defender, but that it would take hours. In order to clear myself of the charges, I was misled into saying that they could question me without a lawyer. This is because I was not on my medication and not in the right state of mind to understand what was happening.

122.     They never mirandized me before arresting me and they never explained what I was charged with until they had brought me to the station and questioned me in a room with four officers

FILED DATE: 1/11/2021 10:17 AM    2021CH00106

yelling at me, and while I did not have medication and did not know what was happening, in this way they took advantage of my ADA learning disabilities in order to force me to make incriminating statements in violation of my constitutional rights to be free of self-incriminating statements. They repeatedly told me that "they knew my people" and that they would "take care of me" in apparent reference to my sister Sgt. Syed of Evanston Police.

123.    Jones called repeatedly called me "little bro" and other derogatory statements while I was in his custody.

124.    They never allowed me to take my medicine prior to arresting me without reading me my rights, and they knowingly forced me to undergo questioning while not on my medication or in the right state of mind to adequately represent myself. This is despite them knowing that I take medications, which they learned at my apartment.

125.    They never established probable cause for the arrest and never showed me the alleged probable cause when I asked for it, despite the fact that I asked for it at least four separate times. They simply asked me what my email was, and when I told them, they falsely claimed that I had admitted to sending the alleged email in question to the states attorney.

126.    They then took my property and refused to give it back, including court documents which evidenced that I had requested a no contact order against the person who alleged that I violated the no contact order and had me arrested. They took this property without ever intending on reviewing it for the purposed of assessing the charges against me, and without ever intending on returning the paperwork. In this way they deprived me of my right to the materials I needed to adequately represent my defense during the court proceedings for this case.

127.    Despite the fact that I told them that Mona Dugo, the complaining witness for this arrest was retaliating against me for Department of Education complaint 05-20-2444 which I had provided to them, in addition to the stalking no contact hearing, they still charged me with the offenses.  The Dean reported me and discriminated against me on the basis of his mental health, in retaliation for the

FILED DATE: 1/11/2021 10:17 AM    2021CH00106

Department of Education complaint, which she was fully aware through the university on 9/3/20 through an email to Lucas Christian and 9/13/20 through an email to the Office of Equity.

### **Continuing Misconduct and Malicious Misrepresentation**

128.    On  11/24/20 at or around 1:30 PM, Plaintiff attended a court hearing for Case 200P20532. During the hearing, the judge asked if anyone had Plaintiff's allegations, and opposing counsel representing Mona Dugo for Case 200P20532 indicated that she had the complaint in front of her.

129.    The judge asked whether Plaintiff had "stated any facts" in support of his petition.

130.    The opposing counsel representing Mona Dugo for Case 200P20532 replied that he [Plaintiff] had "not stated any facts." This was a blatant act of perjury to the court, for Plaintiff had alleged over 25 separate, distinct, and numbered allegations containing many facts. Opposing counsel had the complaint in her possession and lied about the fact that Plaintiff had "stated facts" in support of his SNCO petition in order to mislead the judge.

131.    Opposing counsel, after committing perjury to the court, then requested that Plaintiff's SNCO be dismissed, without the judge ever having read Plaintiff's factual allegations, which were deemed worthy of a hearing (20 OP 78277) by the Honorable Judge Thomas M. Cushing #2258 during a hearing held on 11/17/20 at 555 W Harrison St, Chicago, IL and subsequently transferred to the Honorable Stephanie D. Saltouros #2161 for review.

132.    Opposing counsel and the complaining witness Mona Dugo violated the following pertinent section of Rule 137: "The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other document; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass."

133.    The allegations brought by Dugo and her attorney were not well-grounded in fact and not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

law, but in fact were misleading attempts to retaliate against and harass plaintiff for his SNCO (20 OP 78277) and for his DOE complaint.

134.    All of this evidence notwithstanding, plaintiff was found responsible [guilty] for the student disciplinary violations. She was ordered to "return the original journal, complete and unaltered, to the Office of zEquity byJune 29, 2005," and placed on "University Disciplinary Probation effective immediately and continuing through December 31, 2005." Plaintiff has. timely appealed the decision, however, "[t]he rendered sanction is in effect as of the date identified on the sanction, or until an appeal is granted."

135.    It is plaintiff's contention that all of the actions taken against him, as set forth above, were as a result of him raising questions regarding defendants Chin, REDACTED and Healy's activities which violated the Fourth Amendment to the United States Constitution, and Dugo's activities which violated the First Amendment to the United States Constitution. Plaintiff seeks a temporary restraining order from this court restraining, enjoining and prohibiting defendants' from expelling him until a preliminary injunction hearing can be held evaluating his claims.

## II. *LEGAL ARGUMENT*

### 1. *Plaintiff Is Entitled To A Temporary Restraining Order*

The test for whether this Court should issue a temporary restraining order focuses on: (1) whether there is a substantial likelihood of ultimate success on the merits; (2) whether the temporary restraining order is necessary to prevent irreparable injury; (3) whether the threatened injury outweighs the harm the temporary restraining order would inflict on the non-movant; and (4) the temporary restraining order would serve the public interest. *Gresham Park Community Org. v. Howell,* 652 F.2d 1227, 1232 n.7 (5th Cir. 1981).

### A. *Substantial Likelihood That Plaintiff Will Prevail On The Merits*

Plaintiff contends, *inter alia,* that defendants Dugo, Chin, Lee, and REDACTED retaliated against him for voicing objection to the discrimination on the basis of disability and sex. This retaliation, according to plaintiff, took the form of: (1) withdrawing him from classes for Fall 2020 Semester, (2) placing him on interim suspension for Fall 2020 Semester without any hearing or investigation (3) re-accusing him of assault and battery for the Fall

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

2019 Semester incident – an incident where the findings of the university investigation revealed that [REDACTED] had falsely testified to witnessing the battery on the NUPD police report, (4) imposing a variety of sanctions in the form of charges of violating over six different policies resulting from the Fall 2020 incident, and (5) imposing sanctions in the form of ultimate expulsion against him after a hearing before a "stacked" tribunal.

It is plaintiff's contention that all of the actions taken against him, as set forth above, were as a result of his raising questions regarding defendant Dugo's activities which violated the First Amendment to the United States Constitution. Plaintiff seeks a temporary restraining order from this court restraining, enjoining and prohibiting defendants' from expelling Plaintiff from school pending a hearing on the disposition on Plaintiffs claims.

## II. *LEGAL ARGUMENT*

### 1. *Plaintiff Is Entitled To A Temporary Restraining Order*

The test for whether this Court should issue a temporary restraining order focuses on: (1) whether there is a substantial likelihood of ultimate success on the merits; (2) whether the temporary restraining order is necessary to prevent irreparable injury; (3) whether the threatened injury outweighs the harm the temporary restraining order would inflict on the non-movant; and (4) the temporary restraining order would serve the public interest. *Gresham Park Community Org. v. Howell,* 652 F.2d 1227, 1232 n.7 (5th Cir. 1981).

#### A. *Substantial Likelihood That Plaintiff Will Prevail On The Merits*

Plaintiff is likely to prevail on the merits of his claim. Defendants discriminated against plaintiff solely because of threat from his perceived disability, he is "otherwise qualified" to participate in a regular classroom education pursuant to § 504, and defendants' actions are unsupported by reliable medical or scientific evidence and are irrational and based solely on vague, undifferentiated fears.

Plaintiff contends, *inter alia,* that defendants Dugo, Chin, Lee, and [REDACTED] retaliated against him for voicing objection to discrimination. This retaliation, according to plaintiff, took the form of: (1) forcibly withdrawing him from classes for Fall 2020 Semester, (2) placing him on interim suspension for Fall 2020 Semester without any hearing or investigation (3) re-accusing him of assault and battery for a Fall 2019 Semester

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

incident – an incident where the findings of the university investigation revealed that REDACTED had falsely testified to witnessing the battery on the NUPD police report, (4) imposing a variety of sanctions in the form of charges of violating five different policies resulting from the Fall 2020 incident, and (5) imposing sanctions in the form of ultimate expulsion against him after a hearing before a "stacked" tribunal.

The Supreme Court has made it abundantly clear that "colleges and universities are not enclaves immune from the sweep of the First Amendment." *Healy v. James,* 408 U.S. 169, 180 (1972). They may not be "enclaves of totalitarianism." *Tinker v. Des Moines Indep. Community Sch. Dist.,* 393 U.S. 503, 511 (1969). It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Id.* at 506. The court applied those well-established legal principles in concluding that the plaintiff in *Qvyjt v. Chhiu-TSU Lin,* 932 F.Supp. 1100 (N.D. Ill. 1996), was engaged in constitutionally protected speech when he reported acts of faculty misappropriation and research misconduct.

Fernando Qvyjt, a graduate student in chemistry at Northern Illinois University, filed a formal complaint alleging that his dissertation director was "misappropriating his research." 953 F. Supp. at 246. Subsequent to making the allegation, he was (1) barred from using the laboratory, (2) informed by his dissertation committee that his dissertation was unsatisfactory, (3) required to select a new dissertation topic and advisor, (4) for a period of four months, denied permission to select an advisor from another university, and (5) terminated from the program. In denying defendants' motion for summary judgment, the court stated that "[d]rawing all reasonable inferences in favor of plaintiff... the court finds that plaintiff has presented evidence from which a reasonable trier of fact could find that defendants retaliated against plaintiff for his accusations of misconduct against Dr. Lin." *Id.* at 247.

A review of the facts in the case at bar leads one to the inescapable conclusion that defendants did in fact retaliate against plaintiff. First, in all of his 2019 law courses leading up to the student suspension he received passing grades. Second, he received a satisfactory mid-term evaluation in his CLR class, which is legal writing and analysis; and he was never declared to be a marginal student, as required for student who are not progressing satisfactorily; he was never remediated academically, which is a requirement for students who have been declared

FILED DATE: 1/11/2021 10:17 AM  2021CH00106

marginal. These facts notwithstanding, plaintiff was suspended two weeks prior to the end of the school year in November 2019 and given an ultimatum - withdraw or face further "discipline" and a litany of retaliatory conduct.

Following his refusal to withdraw, he was suspended for the duration of Fall 2019 and Spring 2020 Semester. He initiated internal complaints against Christine DePilla, Heather Cohen, and REDACTED on December, 10th and 12th, 2019. On May 11th, 2020 he initiated a complaint against Eric Chin.

On August 23rd, 2020 he was suspended by Interim Dean of Students Mona Dugo, in part, due to allegations relating to REDACTED from his role in student conduct hearings regarding the November 2019 incident. Three of the individuals participating in the decision were suspend him were defendant Eric Chin, whom plaintiff had accused of violating NU disability discrimination for not properly handling the violation of 405 ILCS 5/3-606 by OFFICER T. HEALY (Badge #22), and defendants DePilla and Cohen, who proceeded to initiate a coverup when told by plaintiff of defendant REDACTED unconstitutional actions in 2019. On August 27th, 2020 Plaintiff initiated an outside complaint with the Department of Education about Defendant Dugo. On September 9th, 2020 NU additionally sanctioned him with "unauthorized report sharing" regarding his reports of REDACTED DePilla, and Cohen.

Dugo first hid the existence of two illegal audio tapes made by REDACTED which caused her to suspend Plaintiff originally on August 23rd. Dugo then directly contacted Plaintiffs therapist without his knowledge or consent to share the tapes with him. When the Plaintiff found out about the tapes, Chin, Lee and Dugo obstructed his reports to the police. When Plaintiff complained about the conduct, Chin, Dugo, and Lee requested no-contact orders through the school on November 4th, 2020. When Plaintiff complained about their conduct, Dugo contacted, either directly or indirectly, Plaintiffs sister. When Plaintiff complained about their conduct, on November 6th, 2020, Dugo initiated a Stalking No Contact Order against him, 20 OP 20532, which is scheduled for hearing on January 6th, 2021.

On November 17th, 2020, Plaintiff attempted to secure a Stalking No Contact Order against Dugo restraining her from contacting his family. On November 19th, 2020 Plaintiff was arrested for allegedly violating 20 OP 20532 resulting from an email he had sent on November 4th, 2020. On December 22nd, 2020, Plaintiff was

FILED DATE: 1/11/2021 10:17 AM    2021CH00106

expelled resulting from the illegal audio tapes pending an appeal which will be timely submitted by January 4th, 2020.

A retaliation claim can be established through indirect evidence by proving a chronology of events from which retaliation can be inferred. *Qvjyt,* 953 F.Supp. at 246 (citation omitted). The events set forth above allow such an inference. There is a total absence of documented proof supportive of defendants' contention that plaintiff was "Endangering Self or Others." If anyone endangered themselves or others, it was Chin and Depilla, for they failed to document properly plaintiff's 2019 complaints.

Based on plaintiff's proven academic record, and defendants' failure to document any significant deficiencies on plaintiff's part, together with the university's failure to follow its own policy respective to students deemed to be marginal, one can only conclude that the adverse actions taken with respect to plaintiff were taken in retaliation for his complaints regarding Mr. REDACTED Mr. Chin, Ms. DePilla, and Ms. Dugo, all of which were constitutionally protected by the First Amendment. Plaintiff has more than a substantial likelihood of prevailing on this issue.

Regarding the issue of the 2019 false imprisonment, there is a substantial likelihood Plaintiff will prevail on his claims. In Illinois a false imprisonment "is defined as an unlawful restraint of an individual's personal liberty or freedom of locomotion," in which "a person is compelled to remain where he does not wish to remain or to go where he does not wish to go." ***Lopez v. Winchell's Donut House*, 126 Ill.App.3d 46, 81 Ill.Dec. 507, 466 N.E.2d 1309, 1311 (1984)** It may be accomplished by "words alone, by acts alone or both." ***Id.* Shea v. Winnebago County Sheriff's Dep't, 746 Fed. Appx. 541, 548 (7th Cir. 2018), cert. denied sub nom. Shea v. Winnebago County Sheriff's Office, 139 S. Ct. 1200, 203 L. Ed. 2d 204 (2019) 285.** The unlawful restraint by one person of the liberty or freedom of movement of another constitutes "false imprisonment". **Hughes v. New York Cent. Sys., 20 Ill. App. 2d 224, 155 N.E.2d 809 (1st Dist. 1959)** Defendants Alkhawaja, REDACTED and REDACTED physically restrained the plaintiff's movement during the 2019 incident until Officer Healy and two other officers arrived on scene and forcefully transported Plaintiff to Northwestern Memorial Hospital, based solely on the false eyewitness testimony given by REDACTED at the scene. Due to these facts, Defendants Alkhawaja,

FILED DATE: 1/11/2021 10:17 AM    2021CH00106

REDACTED REDACTED and Defendant Healy (Badge #22), along with the two other officers and paramedics, are liable for false imprisonment.

Because Mental Health and Developmental Disabilities Code protects liberty interests, strict compliance with statutory procedures is required. **In re Amanda H., App. 3 Dist.2017, 413 Ill.Dec. 866, 79 N.E.3d 215, appeal denied 417 Ill.Dec. 835, 89 N.E.3d 754. Appeal And Error 🗝 181** The procedural safeguards in place for civil commitment are not mere technicalities to be sidestepped; rather, the legislature created them to protect people from the deprivation of a liberty interest. **In re Demir, App. 4 Dist.2001, 256 Ill.Dec. 226, 322 Ill.App.3d 989, 751 N.E.2d 616. Mental Health 🗝 37.1** Involuntary admission procedures represent the legislature's attempt to balance the individual's interest in liberty against society's dual interests in protecting itself from dangerous mentally ill persons and caring for those who are unable to care for themselves; the Mental Health and Developmental Disabilities Code's procedural safeguard's are not mere technicalities but are essential tools to safeguard the liberty interests of respondents in mental health cases. **In re Joseph P., App. 4 Dist.2010, 348 Ill.Dec. 107, 406 Ill.App.3d 341, 943 N.E.2d 715. Constitutional Law 🗝 4337; Mental Health 🗝 37.1**

The law against involuntarily committing people based on threat from their perceived disability is clearly established, and neither the police nor the paramedics are immune from suit. Police officers and paramedics failed to prove either that law was not clearly established or, if law was clearly established, that defendants neither knew nor should have known of relevant legal standard with respect to plaintiff's claims of illegal search and use of force in removing her from her home and subjecting her to involuntary mental examination precluding dismissal of § 1983 action on qualified immunity grounds. **Anderson v. Village of Forest Park, App. 1 Dist.1992, 179 Ill.Dec. 373, 238 Ill.App.3d 83, 606 N.E.2d 205. Civil Rights 🗝 1376(4); Civil Rights 🗝 1376(6)** Because the police officers and paramedics in the instant case knew that the right to be free of discrimination and imprisonment based off threat from perceived disability and to participate freely in school related activities without fear of harassment, and because they knew the relevant legal standard with respect to Plaintiffs claims of illegal search and use of force in removing him from the scene of the school during the 2019 incident, they are liable violation of Plaintiffs Fourth Amendment rights against unreasonable searches and seizure.

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

Failure to complete the petition constitutes prejudice to the patient. Omission of the transporting officer's names and contact information from the petition for involuntary admission could not be presumed to be harmless under Mental Health and Developmental Disabilities Code; failing to provide such information deprived patient of using testimony by the transporting officers that might have been beneficial to her, and that resulted in potential prejudice to patient.  **In re Amanda H., App. 3 Dist.2017, 413 Ill.Dec. 866, 79 N.E.3d 215, appeal denied 417 Ill.Dec. 835, 89 N.E.3d 754.**  **Mental Health** 🔑 **45** Mental Health and Developmental Disabilities Code required that the transporting officers' names, badge numbers, and employer be identified in the petition for involuntary admission so that the officers could be called as potential witnesses … the police played an active role in restraining patient and in transporting her to the hospital against her will.  ***Id.***

In the instant case, Officer Healy (Badge #22) failed to complete the petition for commitment. Patient could not be found to be person subject to involuntary admission to mental health facility, where peace officer, who took patient into custody and transported patient to mental health facility, failed to complete petition for involuntary admission.  **In re John N., App. 3 Dist.2006, 302 Ill.Dec. 278, 364 Ill.App.3d 996, 848 N.E.2d 577, modified on denial of rehearing.  Mental Health** 🔑 **38 286.** Initially authorized detention of individual pursuant to Mental Health Code may be followed by unlawful detention, that is actionable as false imprisonment, if detention is continued despite failure to comply with filing requirements of Code. **S.H.A. 405 ILCS 5/1–100 et seq. Sassali v. DeFauw, 297 Ill. App. 3d 50, 696 N.E.2d 1217 (2d Dist. 1998)**

Although Healy may have partially competed a petition later, the petition in the instant case was still invalid as it was completed by a social worker, and not Healy. Petition for involuntary commitment of patient to mental hospital was invalid, where petition was completed by social worker at hospital, not by police who brought patient to hospital.  **In re Demir, App. 4 Dist.2001, 256 Ill.Dec. 226, 322 Ill.App.3d 989, 751 N.E.2d 616. Mental Health** 🔑 **38** Under statute on involuntary admission to mental health facility, when peace officer takes person who is subject of emergency petition for involuntary admission to mental health care facility into custody and transports person to mental health facility, failure of peace officer to complete petition for involuntary admission is reversible error.  **In re John N., App. 3 Dist.2006, 302 Ill.Dec. 278, 364 Ill.App.3d 996, 848**

N.E.2d 577, modified on denial of rehearing.  **Mental Health** 🔑 **38**;  **Mental Health** 🔑 **45** In the case at bar, Healy was the peace officer who brought the Plaintiff to the hospital yet never completed the petition. Therefore, the involuntary admission in this case was "reversable error." 287. Fact that original detention of individual may be lawful, and thus will not support false imprisonment claim, does not mean that subsequent detention is also lawful and thus not actionable. **Sassali v. DeFauw, 297 Ill. App. 3d 50, 696 N.E.2d 1217 (2d Dist. 1998); Fulford v. O'Connor, 3 Ill.2d 490, 500–01, 121 N.E.2d 767 (1954); Weimann v. County of Kane, 150 Ill.App.3d 962, 968, 104 Ill.Dec. 110, 502 N.E.2d 373 (1986); see also Hyatt v. United States, 968 F.Supp. 96, 110 (E.D.N.Y.1997) (applying Illinois law to a false imprisonment claim).**

In addition, in the case at bar, the petition for commitment was never filed and therefore patient was never served. Involuntary commitment order had to be reversed, where petition for involuntary commitment was filed 48 hours after involuntary admission and hospitalization of person, rather than within the statutorily mandated 24 hours, and where record failed to indicate that committed person was served with copy of petition within 12 hours of admission as required by statute.  **Matter of Riviere, App. 3 Dist.1989, 132 Ill.Dec. 141, 183 Ill.App.3d 456, 539 N.E.2d 451.**  **Mental Health** 🔑 **38**;  **Mental Health** 🔑 **39**;  **Mental Health** 🔑 **45** 288.  Under involuntary commitment provisions of Mental Health Code, failure to timely file commitment petition after individual is taken into custody is error that cannot be waived, and if director of facility to which individual has been taken does not comply with requirement, he or she must either release individual, or initiate new involuntary commitment proceedings. **S.H.A. 405 ILCS 5/3–611. Sassali v. DeFauw, 297 Ill. App. 3d 50, 696 N.E.2d 1217 (2d Dist. 1998) 290.** False imprisonment does not necessarily depend on the legality of the arrest, and an unlawful detention following an arrest can itself be false imprisonment. **Hughes v. New York Cent. Sys., 20 Ill. App. 2d 224, 155 N.E.2d 809 (1st Dist. 1959) 289.** Individual who had been forcibly taken to hospital for initiation of involuntary commitment proceedings under Mental Health Code, but for whom hospital had not timely filed involuntary commitment petition, could plead false imprisonment claim for time between when 24-hour period for filing petition expired, and time when court issued order setting hearing date and authorizing sheriff to transport individual. **S.H.A. 405 ILCS 5/1–100 et seq. Sassali v. DeFauw, 297 Ill. App. 3d 50, 696 N.E.2d 1217**

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

**(2d Dist. 1998)**

This court has jurisdiction over the issue of false imprisonment due to the procedural violations committed as part of Plaintiffs petition for commitment. Trial court had subject matter jurisdiction over petitions for involuntary admission and involuntary administration of psychotropic medication, where petition set forth required allegations that patient was subject to involuntary admission to a mental health facility, was 18 years or older, and was in need of immediate hospitalization. S.H.A. ILCS 5/3–600. In re Megan G., 2015 IL App (2d) 140148, 48 N.E.3d 118. The court in *Megan* reasoned that if the three criteria specified were met, then it has jurisdiction in the matter. In the instant case, the Petition states that Plaintiff was subjected to involuntary admission, was over 18 at the time, and was need of immediate hospitalization. Therefore, the court should have jurisdiction on the issue of false imprisonment.

Regarding the 2020 discrimination allegation and sanctions, there is a substantial likelihood that plaintiff will prevail on those matters. Of course, if he proves his eavesdropping and disability discrimination claims, the allegations would become moot. As set forth in plaintiffs affidavit, he was harassed by Defendant REDACTED His version is corroborated by another student, REDACTED who stated that she encouraged plaintiff emotionally after he was subjected to disability harassment. Pursuant to the policies and procedures, an investigation should be done when a student has been (1) subjected to alleged harassment based on a protected class, and (b) objective evidence supports the harassment being based on a protected class. The university did not initiate an investigation with regards to Plaintiff's claims, Amanda DeSilva and Colleen Johnston simply decided that there wasn't enough evidence to warrant an investigation, despite the fact that Plaintiff had provided over 30 pages of information regarding his claims. With a proper investigation regarding Plaintiffs discrimination claims, any claim by the university as to Plaintiff's alleged discriminatory acts vanishes in thin air.

The Plaintiff's claim of Eavesdropping is without question. REDACTED made specific admission to recording both of the phone calls based on threat from perceived disability. The university provided Plaintiff the evidence in the form of two MP3 audio files which they attached the investigation report for the Plaintiff's hearing. If that is the case, then it stands to reason that the REDACTED and not the Plaintiff, should be on trial for expulsion. The

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

university cannot have it both ways. It cannot state that it wants to expel Plaintiff for his alleged discriminatory acts, while ignoring the blatant discrimination and eavesdropping which was inflicted upon him. If the university actually cared about discrimination, then a proper investigation into Plaintiffs claims, and not the bias musings of DeSilva and Johnston, would determine if, and when, a student could retain his place at the university.

Plaintiff states in his affidavit that only he, but not other students known to be making inappropriate comments on the group chat, has been subjected to student disciplinary action in any way. Assuming the correctness of that statement, plaintiff is being singled out for different treatment. Pursuant to the equal protection clause of the Fourteenth Amendment to the United States Constitution, "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." The equal protection clause mandates similar treatment of persons in similar situations. *Arceneaux v. Treen,* 671 F.2d 128, 131 (5th Cir. 1982). [T]he crucial question is whether the [university] treats similarly situated people unequally. *Id.* at 137 (Goldberg, specially concurring).

There can be no dispute as to the fact that Plaintiff, although similarly situated to other students, was treated differently. It now becomes a question as to whether the university's "action rationally furthers a legitimate state purpose." *San Antonio Independent School District v. Rodriquez,* 93 S.Ct. 1278, 1308 (1973). Obviously, there can be no legitimate state purpose to deviate from established policy to demand that plaintiff, and only plaintiff, be required to submit to student disciplinary proceedings.

Since plaintiff was never declared to be a marginal student, and his discrimination claims were not properly investigated, the university's policy of disciplining students who have allegedly violated Equity Policy not apply to him. Therefore, there is no basis for the university to impose a sanction on him. Further, respective to the investigation of competing discrimination claims, the university clearly treats Plaintiff differently from similarly situated students. Based on these important factors, plaintiff has a strong likelihood of success on the merits.

**B. *Plaintiff Faces A Substantial Threat of Irreparable Injury***

Defendants' decision is causing plaintiff irreparable harm for which there is no adequate remedy at law. Because NU expulsion decisions are permanent, there is a substantial risk that plaintiff will be unable to attend

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

school before the merits of this action are concluded and a permanent injunction is entered. The educational restrictions imposed by defendants are presently causing plaintiff psychological harm and substantially diminishing the quality of his life.

Irreparable harm is established any time a movant's First Amendment rights are violated. *Marcus v. Iowa Pub. Tele.,* 97 F.3d 1137, 1140-41 (8th Cir. 1996). The loss of First Amendment freedoms, for even a minimal period of time, unquestionably constitutes irreparable injury. *Elrod v. Burns,* 427 U.S. 347, 373 (1976) (plurality opinion). Based on the facts of the case, it is very likely that plaintiff will be able to prove that his First Amendment rights were violated when he was suspended.

Further, plaintiff received an expulsion and was not allowed to graduate notwithstanding the fact that he met all of the requirements for pursuing coursework. This constitutes irreparable injury, for it delayed plaintiff's fulfillment of his requirements for a degree. *See Phillips v. Marsh,* 687 F.2d 620, 622 (2d Cir. 1982); *Doe v. New York University,* 666 F.2d 761, 773 (2nd Cir. 1981); *Yusuf v. Vassar College,* 1992 U.S. Dist. LEXIS 13029, No. 92 Civ. 5462, 1992 WL 230143 at *1 (S.D.N.Y. Sep. 1, 1992)

The notion of irreparable harm in the circumstances of this case is firmly established through precedent. Here, Plaintiff's final semester has been disrupted by his emergency suspension and he is at risk of being unable to complete the final semester of [university] work, or having to repeat it. In *Doe v. Vassar College*, the district court noted that, although the Second Circuit has held that the harms that result in a delay in graduation can adequately be remedied by damages, "[w]hether an interruption in coursework is irreparable harm is a closer question, which the Second Circuit has not squarely addressed, and on which it appears that district courts have disagreed." 2019 WL 6222918, at *6, 2019 U.S. Dist. LEXIS 203418, at *16 (citing *Phillips v. Marsh*, 687 F.2d 620 (2d Cir. 1982) and collecting cases). The Court concludes that Plaintiff's allegations that he will lose the work he completed prior to his mid-semester suspension if he is unable to return is sufficient to show irreparable harm. *Compare Bhandari v. Trustees of Columbia Univ.*, No. 00-cv-1735, 2000 WL 310344, at *5, 2000 U.S. Dist. LEXIS 3720, at *15–16 (S.D.N.Y. Mar. 27, 2000) (finding irreparable harm where the plaintiff was suspended midway through the semester and would lose "the benefit of the work he has already performed this semester"), *with Vassar Coll.*,

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

2019 WL 6222918, at *6, 2019 U.S. Dist. LEXIS 203418, at *15 (finding no irreparable harm where plaintiff claimed suspension "for a single semester at the *beginning* of his senior year") (emphasis added). <u>Doe v. Rensselaer Polytechnic Inst.</u>, 120CV01359BKSCFH, 2020 WL 6544607, at *6 (N.D.N.Y. Nov. 6, 2020) The courts have reasoned that completion of coursework established irreparable harm necessary for a grant of preliminary injunction or temporary restraining order. In the instant case, the Plaintiff already completed 10-weeks of coursework prior to his late semester 2019 suspension, the conditions precedent for the establishment of irreparable harm required for a preliminary injunction have been achieved.

Succinctly stated, if plaintiff does not submit to blatant discrimination by the university, he faces additional sanctions, up to and including permanent expulsion from the university. If a temporary restraining order is not issued, the university will in all likelihood permanently expel plaintiff and make notations of the incident on his permanent record, resulting in a further disruption in his legal education. It is without dispute that the expulsion constitutes irreparable harm.

### C. *The Threatened Injury to Plaintiff Outweighs Any Harm To Defendants*

The threat of injury to plaintiff outweighs any harm to defendants. Placing plaintiff in a regular classroom poses no significant health or safety risk to himself, his classmates or his teachers. Permitting plaintiff to participate in classroom education will enhance the quality of his education as well as that of his fellow students.

Clearly, the balance of the equities tilts in favor of plaintiff. He has been pursuing a law degree at NU since 2018. He has pending litigation (20 OP 20532 and 20 DV 2080601) in which the allegations of retaliation from Dugo, Chin, and Lee play a prominent role. He has a pending legal action (20 CV 1772) in which the allegations of battery from 2019 have a prominent role. He is willing to work with university on an alternative resolution plan to expulsion, but he is not prepared to give up on his dream of legal education at university. If necessary, plaintiff is willing to defer his enrollment until next fall, but not to be expelled from the university. Since plaintiff is willing to make concessions to NU, an order prohibiting the university from expelling him until a judicial determination can be rendered imposes no substantial burden on the university.

With regards to    REDACTED    noting the quantity, severity, relative complexity, and maliciousness

FILED DATE: 1/11/2021 10:17 AM    2021CH00106

involved in her crimes the can be no telling what other things this person may be capable of, which poses a serious threat to the safety of the general community. This except taken from <u>Spinka v. Drake</u>, 14-CV-583-DRH-PMF, 2016 WL 1258460, at *4 (S.D. Ill. Mar. 31, 2016) illustrates the nature of these concerns, which have been shared by others in similar cases: "With regard to District 77, the plaintiff's second amended complaint alleges that District 77 had received complaints about defendant E.H.'s behavior toward fellow students and failed to prevent E.H.'s attack on the plaintiff, despite knowledge of the risks. The plaintiff argues that these allegations are sufficient to survive dismissal, citing *Doe ex rel. Ortega-Piron v. Chicago Board Of Education,* 213 Ill.2d 19, 289 Ill.Dec. 642, 820 N.E.2d 418, 420 (2004), as support. Spinka now argues that, as in *Doe*, the circumstances of the case made the assault foreseeable for District 77 such that it was willful and wanton in failing to intervene. However, the complaint in *Doe* revealed that the school board in that case had far more extensive knowledge of the assailant's deviant sexual history compared to the case at issue. In *Doe*, the plaintiff pled that the defendant knew the student assailant "had been declared a sexually aggressive child" and was "under a 'Protective Plan' requiring that he never be left unsupervised among other children." *Doe ex rel. Ortega-Piron v. Chicago Bd. Of Educ.*, 213 Ill.2d 19, 22, 289 Ill.Dec. 642, 820 N.E.2d 418, 420. <u>Spinka v. Drake</u>, 14-CV-583-DRH-PMF, 2016 WL 1258460, at *4 (S.D. Ill. Mar. 31, 2016) The argument about the foreseeability of future crimes committed by

REDACTED    should be weighed with the context of the information in this case as favorable factors supporting the notion the threat of injury to the Plaintiff outweighs the threat of harm to the defendants, which is non-existent from Plaintiff attending courses in his degree.

**D. *There Will Be No Disservice To The Public If Temporary Relief Is Granted***

Granting a temporary restraining order will serve the public interest. Defendants' irrational and unlawful conduct has caused confusion and unwarranted fear in a manner which damages the public health every day it is permitted to continue. In addition, the students in Northwestern University Community are being deprived of plaintiff's contribution to their educational experience and social development. Plaintiff is actually advancing the interest of the public, for the public has an interest in its colleges and university adhering to their internal rules and regulations. The public has a paramount interest in making certain that an individual is not deprived of

property which is his.

**E. *Plaintiff Has No Adequate Remedy At Law***

Plaintiff has cooperate with the university to the fullest extent. However, the university proceeded to initiate disciplinary action against him, claiming that he had not been discriminated against and expelling him. The university has demanded that he appeal the decision by January 4th, 2021. Plaintiff intends to do so, however without outside intervention the result will be the same. If not immediately restrained, the university will proceed to take further disciplinary action against plaintiff, which, in all likelihood, will result in his permanent expulsion from the university. This would result in a further delay in Plaintiff's education.

## REQUEST FOR EXPEDITED DISCOVERY

3.      The parties to the Dugo Petition are scheduled to appear for a hearing on January 6th, 2021. *See* Exhibit A (Dec. 16, 2020 Disposition Order).

5.      NU has received two subpoenas from Plaintiff in connection with the Dugo Petition (referred to collectively as "the Syed Subpoenas"). The first subpoena, attached as Exhibit B, was issued by the Clerk of Court and filed with the Court on December 1, 2020, with a return date of December 8, 2020. This subpoena seeks copies of Northwestern University Police Department report numbers 2019-0595 and 2020-0356.  *See* Ex. B. This subpoena indicates that the matters on which examination are requested are 20DV20806 and 20OP20532. *Id.* at pg. 2. It was served on December 1, 2020, via email and NU both accepted it and acknowledged its receipt. *See* Exhibit C.

6.      The second subpoena, attached as Exhibit D, is dated December 1, 2020, with a return date of December 9, 2020 and seeks the following: "All records of any kind, paper, electronic, or otherwise, which related in any, shape or form to: Fahad Syed or Fahad Bilal Syed or Fahad B Syed (D/O/B: 8/28/1989). Includes Admission Records and Northwestern Police Department Records." This second subpoena was issued by the Clerk of Court and filed with the Court on December 1, 2020, with a return date of December 9, 2020. *See* Ex. D. This subpoena indicates that the matters on which examination are requested are 20DV20806 and 20OP20532. *Id.*

FILED DATE: 1/11/2021 10:17 AM    2021CH00106

at pg. 2. It was served on December 3, 2020, via email and NU both accepted it and acknowledged its receipt. *See* Exhibit E.

7.    On December 8, 2020, at 4:47 PM Scott Warner filed a motion to quash the Syed Subpoenas with the Clerk of the Circuit Court of Cook County, Chicago, Illinois, filing for an Appearance on behalf of Third-Party Northwestern University for case 20 OP 20532. *See* Exhibit F.

8.    On December 9, 2020, at 9:16 AM Defendant filed a motion pursuant to Ill. Sup. Ct. Rule 214 compelling NU to disclose the content of the requests for information contained in the Syed Subpoenas with IRIS Y. MARTINEZ CIRCUIT CLERK COOK COUNTY, IL for case 2020OP20532. *See* Exhibit G.

9.    As an initial matter, both subpoenas were properly issued and should therefore be enforced. **The clerk of any court in which an action is pending shall, from time to time, issue subpoenas for those witnesses and to those counties in the State *as may be required by either party*.** 735 ILCS 5/2-1101 (emphasis supplied). As the Defendant is a party to case 2020OP20532, he should be granted the subpoenas. **For good cause shown**, the court on motion may quash or modify any subpoena or, in the case of a subpoena duces tecum, condition the denial of the motion upon payment in advance by the person in whose behalf the subpoena is issued of the reasonable expense of producing any item therein specified. *Id.* (emphasis supplied.) NU has not shown good cause, and indeed is motioning to quash Defendant's subpoena's as part of an ongoing pattern of harassment and intimidation by NU.

10.    Both subpoenas should be enforced for reasons beyond procedural correctness. The Defendant notes that ensuring proper issuance of any subpoenas from Syed in this matter is an absolute necessity given the persistent, threatening, and harassing nature of Dugo's conduct that led Defendant to seek a Stalking No Contact Order, and her similar persistent, threatening, and harassing behaviors towards members of Defendant's family and therapist. Indeed, the Defendant views the subpoenas as part of an ongoing effort to hold the University's employees legally accountable for negligently failing to do their doing their jobs, including addressing NU's longstanding pattern of disparate discriminatory treatment of Defendant, in addition to NU deliberately and maliciously retaliating against Defendant for reporting his concerns.

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

11.     An e-mail dated November 4, 2020 from the Defendant to NU's Behavioral Consultation Team, attached as Exhibit H, illustrates just some of Dugo's recent misconduct in this regard. Courts are empowered to limit discovery to prevent abuse.  *See* Ill. S. Ct. R. 201(c)(1) ("The court may at any time on its own initiative, or on motion of any party or witness, make a protective order as justice requires, denying, limiting, conditioning, or regulating discovery to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or oppression."). In sum, Dugo and NU should not be permitted to use the legal process – particularly an oppressive motion to quash the legitimate subpoenas Defendant needs in order to defend himself in two separate legal cases – to perpetuate their misconduct and to further harass and threaten the Plaintiff and his family.

12.     Fundamentally, both of the Syed Subpoenas should be enforced because they seek information from the University that is relevant to the subject matter of cases 20DV20806, 20OP20532. They also apply to case 2020CH2546 and 20CV1772. *See* Exhibit I. A party may obtain discovery regarding "any matter relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking disclosure." Ill. S. Ct. R. 201(b)(1).

13.     With respect to the first subpoena, both of the police reports requested in that subpoena are relevant to the Dugo Petition. *See* Ex. B.  Report number 2019-0595 relates to an incident in the fall of 2019 that was referred to in the Dugo Petition as the reason Defendant was on disciplinary probation. This report relates to proving Defendants innocence of the unfounded allegation in the Dugo Petition that he "was on probation for physically assaulting another student." That report lists REDACTED as a witness to an alleged act of battery and is directly contradicted by an interview which REDACTED gave to NU during which he explicitly admitted to not actually witnessing the alleged act named in the report. Defendant notes that NU was repeatedly made fully aware of this witness discrepancy and failed to investigate or action upon in in any way, despite the incident directly resulting the Defendants illegal involuntary commitment to Northwestern Memorial Hospital from November 1-8th, 2019. *See* Exhibit J.

14.     The other police report, number 2020-0356, focuses on a report that Plaintiff made in October 2020 about another student. Specifically, the police report is about a transgender student who he never met before

FILED DATE: 1/11/2021 10:17 AM  2021CH00106

or had any kind of relationship with who recorded two of her telephone conversations with him without his consent. The telephone conversations in question are the reason Dugo placed Defendant on interim suspension, and are directly relevant to the following allegation in the petition: "I had to issue him an interim suspension for threatening a fellow law student w/ physical violence." Dugo reported that Defendant threatened this other student on said recordings, and the student shared these recordings with Ms. Dugo. However, the report contains the details of the actual events for which Dugo suspended Defendant. Therefore, it is relevant to defense of the Dugo Petition.

15.     As demonstrated above, ALL of the information sought in the Syed Subpoenas is relevant to the Plaintiff's defense in cases 20DV20806, 20OP20532, 20CV1772. Indeed, the Motion to Quast appears to be part of an ongoing pattern of conduct to harass and threaten the Defendant and his family and mental health provider. NU should not be permitted to use the legal process to perpetuate this illegal conduct.

## **CONCLUSION**

There is a strong likelihood of success on the merits by plaintiff, he will sustain irreparable injury if a temporary restraining order is not issued; the balance of the equities is in his favor; no disservice to the public will result in the granting of the temporary restraining order; and plaintiff has no adequate remedy at law. THEREFORE, plaintiff requests that this court issue a Temporary Restraining Order to protect the plaintiff's rights.

## **PRAYER FOR RELIEF**

FOR THESE REASONS, Plaintiff respectfully requests that the Court enter a Temporary Restraining Order:

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

227. Restraining and enjoining Defendants Northwestern University ("NU") from Expelling Plaintiff and Compelling Defendants NU to place Plaintiff in regular class at NU Law School or find some suitable alternative learning arrangement, pending the disposition and outcome of his claims.

228. Allowing the Plaintiff to commence discovery immediately on the following schedule: NU should immediately surrender all records and/or communications regarding Plaintiff, Fahad B. Syed, including NUPD Reports 2019-0595 and 2020-0356, to Plaintiff's email address at syed.216@gmail.com.

229. Setting Plaintiff's Motion for Preliminary Injunction for hearing on a date certain; and

230. Granting such further relief as the Court deems just and proper.

Dated: December 29th 2020            Respectfully submitted,

By: _____

Fahad Syed

Pro Se

244 E Pearson St. Apt. 711

Chicago, IL 60611

Tel: 773-564-0325

Syed.216@gmail.com

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

**<u>VERIFICATION BY CERTIFICATION PURSUANT TO SECTION 1-109</u>**

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief, and as to such matters the undersigned certifies as aforesaid that [he/she] verily believes the same to be true.

_____

Fahad Syed                                    12/29/20

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

## ORDER TO SHOW CAUSE FOR TEMPORARY RESTRAINING ORDER

Upon (i) the Affidavit of Fahad Syed sworn to the 11th of January, 2021, and the exhibits annexed thereto, and (ii) Plaintiff's Memorandum of Law in Support of its MOTION FOR TEMPORARY RESTRAINING ORDER, it is hereby

ORDERED, that the above named defendant[s] show cause before this Court, at Room 802, 50 West Washington Street Chicago, IL 60602 on _____, _____ at _____ a.m./p.m. or as soon thereafter as counsel may be heard, why an order should not be issued pursuant to 735 ILCS 5/11-101 of the Illinois Code of Civil Procedure enjoining the defendant[s] during the pendency of this action from EXPULSION OF FAHAD B. SYED FROM NORTHWESTERN UNIVERSITY LAW SCHOOL; and it is further

ORDERED that, sufficient reason having been shown pending the hearing of the plaintiff's application for a preliminary injunction, but in no event beyond TEN DAYS days from the entry of this order, unless extended by the Court, the defendant[s] are temporarily restrained and enjoined from taking any disciplinary action, including but not limited to expulsion from Northwestern University, against plaintiff, FAHAD B. SYED, resulting from his recorded phone conversation pending final disposition of plaintiffs' claim that defendants, and others, violated his rights guaranteed by the Constitution and laws of the United States of American and the state of Illinois, and his false imprisonment, retaliation and eavesdropping claims; and it is further

ORDERED, that security in the amount of $100 be posted by the plaintiff[s] prior to ____January_15th_____, _____2021_____ at _____5 _____ **p.m.**; and it is further

ORDERED, that the Defendants shall place Fahad Syed in regular class at Northwestern University Law School or find a suitable alternative learning arrangement and that NORTHWESTERN UNIVERSITY SHOULD SURRENDER ALL RECORDS OR COMMUNICATIONS OF ANY KIND REGARDING FAHAD SYED BEFORE 1/4/21; and it is further

ORDERED, that personal service of a copy of this order upon the defendant[s] or his counsel on or before

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

_____January 15th_____, _____2021_____ at _____9_____ at p.m. shall be deemed good and sufficient service thereof; and it is further ORDERED, that opposing papers, if any, shall be served by EMAIL upon FAHAD B. SYED, [syed.216@gmail.com], received to his email on or before ___January 15th_____, _____2021_____ at _____9_____ a.m.

DATED:            [DATE]

                 [CITY], [STATE]                          _____

                                                          United States District Judge

FILED DATE: 1/11/2021 10:17 AM  2021CH00106

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

Fahad Syed

                                           **Plaintiff,**

        **v.**

Northwestern University

                                          **Defendant**

**No.** 2021CH00106

**Calendar** _____

### TEMPORARY RESTRAINING ORDER

    This cause coming on to be heard on Plaintiff's Motion for Temporary Restraining Order, notice having been given, and Defendant having appeared through counsel; the Court having considered Plaintiff's Verified Complaint, Plaintiff's Motion for Temporary Restraining Order, the affidavit of Fahad Syed _____ , and Plaintiff's Memorandum of Law in support thereof; and the Court having considered the arguments of counsel, finds as follows:

    A. Plaintiff has shown that it has a clearly ascertainable right in need of protection;

    B. Plaintiff has shown that there is a fair question that Plaintiff will succeed on the merits;

    C. Plaintiff has shown that it will suffer irreparable harm if an injunction does not issue; and

    D. Plaintiff has shown that it has no adequate remedy at law or in equity.

    **Wherefore, IT IS ORDERED as follows:**

    1. Defendant is temporarily restrained from  Expelling Fahad Syed from Northwestern University

    2. This Temporary Restraining Order shall remain in full force and effect pending  hearing of Plaintiff's Motion for Preliminary Injunction on _____/_____/_____ unless otherwise modified or dissolved.

    3. This Temporary Restraining Order is conditioned upon Plaintiff filing a surety bond in the amount of $ _____ in form approved by this Court.

    4. Hearing on Plaintiff's Motion for Preliminary Injunction is set for _____/_____/_____ at _____ a.m./p.m.

    5. This Temporary Restraining Order is entered at _____ , on _____/_____/_____

Atty. No. 99500

Name: Fahad Syed

Atty. for: Self

Address: 244 E Pearson St. Apt. 711

City/State/Zip: Chicago, IL, 60611

Telephone: 773-564-0325

**ENTERED:**

**Dated:** _____ , _____

_____
    **Judge**                **Judge's No.**

**IRIS Y. MARTINEZ, CLERK OF THE CIRCUIT COURT OF COOK COUNTY,  ILLINOIS**

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

# Exhibit A

Disposition Order/Stalking No Contact Order                                    (Rev. 12/16/14) CCDV N009

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### DOMESTIC VIOLENCE DIVISION

Mona Dugo

_____

Petitioner

v.

Fahad Syed

_____

Respondent

Any Stalking No Contact Order which would expire on a court holiday shall instead expire at the close of the next court business day. (Stalking No Contact Order Act, Section 105(d))

Case No. 20 OP 20532

Leads No. _____

Respondent's D.O.B. _____

### DISPOSITION ORDER
**Stalking No Contact Order**

☒ EMERGENCY   ☐ PLENARY

☒ INDEPENDENT PETITION
☐ CRIMINAL PROCEEDING
☐ DELINQUENCY PETITION

**THE COURT FINDS THAT:**

☐ The averments presented are insufficient to grant relief requested.

☒ An (Emergency/Plenary) Stalking No Contact Order was issued on  11/5/20

☐ An (Emergency/Plenary) Stalking No Contact Order was previously extended on  11/24/20

**THE COURT HAVING JURISDICTION OF THE SUBJECT MATTER IT IS HEREBY ORDERED THAT:**

☐ An (Emergency/Plenary) Stalking No Contact Order is DENIED.

☒ An (Emergency/Plenary) Stalking No Contact Order is extended to:  1/6/21          at 5:00pm a.m./p.m.

☒ A hearing on the Stalking No Contact Order is set for:  1/6/21          at  9:30  a.m./p.m.
   *Status*

Court located at:   555 W. Harrison St. Chicago, IL     Calendar 90
                        (Address)                                                    (Room No.)

☐ A hearing on the Stalking No Contact Order was held and the Stalking No Contact Order is DENIED.

☐ The Stalking No Contact Order is terminated.

☐ The Stalking No Contact Order is vacated.

☐ The Stalking No Contact Order is modified as follows:

_____

_____

Respondent's motion for substitution of judge is granted. Case remanded to the Domestic Violence Division, Presiding Judge's Office for reassignment.

**ENTERED**
Judge Stephanie Saltouros-2161

**DEC 16 2020**

IRIS Y. MARTINEZ
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

☐ Alias Summons to issue.

☐ Service by publication.

☐ Case Number _____ is dismissed.

The date of 1/13/21 in District 2 is stricken

I hereby certify that the document to which this certification is affixed is a true copy.

Date 12-16-20 Iris Martinez

Dorothy Brown
Clerk of the Circuit Court
of Cook County, IL

☐ Atty. No.: _____   ☐ Pro se 99500

Name:  Petitioner Attorney's email: MHickey@schiffhardin.com

Atty. for:  Respondent's email: syed.216@gmail.com

Address:  Third-Party (Northwestern University) Attorney email: scott.warner@huschblackwell.com

City/State/Zip Code: _____

Telephone: _____

**ENTERED:**

Dated:  12/16/20

_____              #2161

Judge                                    Judge's No.

## IRIS MARTINEZ, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

FILED DATE: 1/11/2021 10:17 AM  2021CH00106

Transfer Order Substitution of Judge/Recusal                    (10/31/11) CCDV N003

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### DOMESTIC VIOLENCE DIVISION

PEOPLE OF THE STATE OF ILLINOIS

or

**Mona Dugo**

_____
                                    **Petitioner**                    No.  20 OP 20532

                v.

**Fahad Syed**

_____
                          **Defendant/Respondent**

### TRANSFER ORDER SUBSTITUTION OF JUDGE/RECUSAL

This case coming on to be heard on ☐ petitioner's ☒ respondent's ☐ state's ☐ court's motion

   ☒ To transfer the above entitled to another courtroom due to:    Petitioner Attorney's email: MHickey@schiffhardin.com
                                                                     Respondent's email: syed.216@gmail.com

   ☒ Substitution of Judge     ☐ Substitution of Judge for Cause
   ☐ Recusal                                                        Third-Party (Northwestern University) Attorney email:
                                                                     scott.warner@huschblackwell.com

☒ The cause is hereby transferred to the Presiding Judge of the Domestic Violence Division for consideration of the transfer of this case.

OR

☐ This cause is hereby transferred to_____, Presiding Judge, Municipal

   District_____for consideration of the transfer of this case.

ENTERED:

Dated:   12/16/20_____,_____          _____        #2161_____
                                                            **Judge**              **Judge's No.**

―――――――――――――――――――――――――――――――――――――――――――――――――――――――――

### ORDER

IT HEREBY ORDERED that the motion is granted and this case is hereby transferred to

Courtroom_____Calendar_____Date_____,_____Time_____a.m./p.m.

ENTERED:

Dated:_____,_____          _____        _____
                                                         **Presiding Judge**          **Judge's No.**

### IRIS MARTINEZ, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

FILED DATE: 1/11/2021 10:17 AM  2021CH00106

1) 8/23/20  11:44am

I began my interaction with Fahad Syed on 8/23/20 at 11:44am. In my capacity as interim dean of students for Northwest University I had to issue him an interim suspension for threatening a fellow law student w/ physical violence. Mr. Syed was on probation for physically assaulting another student.

Between 8/23 - 11/2/2020 Mr. Syed has sent me more than 150 unanswered text messages with increasingly aggressive language.

2) 10-12-20 → 10-19-20

Mr. Syed sends approximately 100 text messages to me. I responded once & told him to stop. The tone is increasingly hostile + aggressive. He accuses me of monitoring his facebook page (I have not). He sends me text from the Quaran which translated says that sinners will die in a fire, he says he will "ruin me", he makes a sexual reference implying I give our deputy chief of police blow jobs & tells me to "suck his dick." There is a lot of foul + aggressive language.

FILED DATE: 1/11/2021 10:17 AM  2021CH00106

3) 11-2-2020   10:28 pm
mr. Syed calls me & accuses me of
calling his sister, yells at me for
4 minutes until I hang up on him
d block his phone number. at northwest
we have contracted with a threat
assessment group (Sigma threat) to
help evaluate his threat level. They
talked to his sister, who is a police
officer.

4) He continues to send me harassing
email through my northwestern
email address.

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

# Exhibit B

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
12/1/2020 12:25 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2020OP20532

FILED DATE: 1/11/2021 10:17 AM 2021CH00106
FILED DATE: 12/1/2020 12:25 PM 2020OP20532

**Subpoena in a Civil Matter (For Testimony and/or Documents)**     **(06/05/20) CCG 0106 A**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Fahad Syed
_____

                              Plaintiff/Petitioner

                    v.                                          Case No.  20OP20532  _____

Mona Dugo
_____

                              Defendant/Respondent

### SUBPOENA IN A CIVIL MATTER
### (For Testimony and/or Documents)

To:   Northwestern University Police Department
      211 East Superior Street
      Chicago, IL 60611

1.   ☐   YOU ARE COMMANDED to appear to give your testimony before the

     Honorable _____ in Room _____ ,

     _____ , Illinois on _____

     at _____   ○ AM   ○ PM

2.   ☐   YOU ARE COMMANDED to appear and give your deposition testimony before a Notary Public

     at: _____ in Room _____ ,

     _____ , Illinois on _____

     at _____   ○ AM   ○ PM

3.   YOU ARE COMMANDED to mail the following documents in your possession or control

     to   Fahad Syed _____ at   syed.216@gmail.com _____ ,

     on or before ____12/8/20____ at _____9:00_____   ◉ AM   ○ PM

     (THIS IS FOR RECORDS ONLY. THERE WILL BE NO ORAL INTERROGATORIES.):

     Report JD 2019-0595   (Police Reports)
     Report JD 2020-0356

     ☐   Description continued on attached page(s).

**Your failure to respond to this subpoena will subject you to punishment for contempt of this Court.**

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

**Subpoena in a Civil Matter (For Testimony and/or Documents)**      **(06/05/20) CCG 0106 B**

Notice to Deponent:

1. ☑ The deponent is a public or private corporation, partnership, association, or governmental agency. The matter(s) on which examination is requested are as follows:

   20DV20806

   20OP20532

   _____

        ☐ Description continued on attached page(s).

        (A nonparty organization has a duty to designate one or more officers, directors, or managing agents, or other persons to testify on its behalf, and may set forth, for each person designated, the matters on which that person will testify. Ill. Sup. Ct. Rule 206.)

2. ☐ The deponent's testimony will be recorded by use of an audio-visual recording device, operated

   by _____ .

          (Name of Recording Device Operator)

3. No discovery deposition of any party or witnesses shall exceed three hours regardless of the number of parties involved in the case, except by stipulation of the parties or by order upon showing that good cause warrants a lengthier examination. Ill. Sup. Ct. Rule 206(d).

○ Atty. No.: _____

◉ Pro Se 99500

Name: Fahad Syed _____

Atty. for (if applicable):

_____

Address: 244 E Pearson St. Apt. 711 _____

City: Chicago _____

State: IL    Zip: 60611 _____

Telephone: 773-564-0325 _____

Primary Email: syed.216@gmail.com _____

12/1/2020 12:25 PM IRIS Y. MARTINEZ

Issued by: /s/_____

Text       Signature

     ○ Attorney   ○ Clerk of Court

Date: 12/1/20 _____

☐ I served this subpoena by mailing a copy, as required by Ill. Sup. Ct. Rules 11, 12 and 204(a) (2),

to _____ by certified mail, return receipt requested

(Receipt # _____) on _____ . I paid the witness $ _____ for witness and mileage fees.

☐ I served this subpoena by handing a copy to _____

on _____ . I paid the witness $ _____ for witness and mileage fees.

/s/ _____    _____

     (Signature of Server)                 (Print Name)

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**

**cookcountyclerkofcourt.org**

FILED DATE: 1/11/2021 10:17 AM  2021CH00106
FILED DATE: 12/1/2020 12:25 PM  2020OP20532

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

# Exhibit C

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

**From:** **Threat Assessment** threatassessment@northwestern.edu
**Subject:** RE: Subpoena
**Date:** December 3, 2020 at 1:28 PM
**To:** Fahad Syed fahad-syed@law.northwestern.edu

Mr. Syed, your email and attachment have been received.

**From:** Fahad Syed <fahad-syed@law.northwestern.edu>
**Sent:** Thursday, December 3, 2020 10:49 AM
**To:** Threat Assessment <threatassessment@northwestern.edu>
**Subject:** Subpoena

Hi,

I have another subpoena, I think I'm just supposed to email this to you?

Thanks,

Fahad Syed

> On Dec 2, 2020, at 9:52 PM, Threat Assessment
> <threatassessment@northwestern.edu> wrote:
>
> Mr. Syed, your email and attachment have been received.
>
> **From:** Fahad Syed <fahad-syed@law.northwestern.edu>
> **Sent:** Tuesday, December 1, 2020 4:02 PM
> **To:** Threat Assessment <threatassessment@northwestern.edu>
> **Subject:** Re: Office of Equity-Request for Interview.11.30.20
>
> Hi,
>
> Do I just give this to you?
>
> Thanks,
>
> Fahad Syed

> > On Dec 1, 2020, at 2:09 PM, Threat Assessment
> > <threatassessment@northwestern.edu> wrote:
> >
> > Thank you Mr. Syed for the response.  Please review the
> > attachment for updated information.
> >
> > **From:** Fahad Syed <fahad-syed@law.northwestern.edu>

FILED DATE: 1/11/2021 10:17 AM    2021CH00106

# Exhibit D

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
12/1/2020 5:27 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2020OP20532

*FILED DATE: 1/11/2021 10:17 AM 2021CH00106*
*FILED DATE: 12/1/2020 5:27 PM 2020OP20532*

**Subpoena in a Civil Matter (For Testimony and/or Documents)**      **(06/05/20) CCG 0106 A**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Fahad Syed
_____

               **Plaintiff/Petitioner**

            v.                Case No.    20OP20532

Mona Dugo
_____

               **Defendant/Respondent**

### SUBPOENA IN A CIVIL MATTER
### (For Testimony and/or Documents)

To:    Northwestern University
       633 Clark Street
       Evanston, IL 60208

1. ☐   YOU ARE COMMANDED to appear to give your testimony before the

     Honorable _____ in Room _____ ,

     _____ , Illinois on _____

     at _____ ○ AM ○ PM

2. ☐   YOU ARE COMMANDED to appear and give your deposition testimony before a Notary Public

     at: _____ in Room _____ ,

     _____ , Illinois on _____

     at _____ ○ AM ○ PM

3.   YOU ARE COMMANDED to mail the following documents in your possession or control

     to   Fahad Syed _____ at   syed.216@gmail.com _____ ,

     on or before __12/9/20__ at ____9:00____ ◉ AM ○ PM

     (THIS IS FOR RECORDS ONLY. THERE WILL BE NO ORAL INTERROGATORIES.):
     All records of any kind, paper, electronic, or otherwise, which related in any, shape or form to:
     Fahad Syed or Fahad Bilal Syed or Fahad B Syed (D/O/B: 8/28/1989). Includes Admission
     Records and Northwestern Police Department Records.

     ☐   Description continued on attached page(s).

**Your failure to respond to this subpoena will subject you to punishment for contempt of this Court.**

       **Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
             **cookcountyclerkofcourt.org**

**Subpoena in a Civil Matter (For Testimony and/or Documents)**      **(06/05/20) CCG 0106 B**

FILED DATE: 1/11/2021 10:17 AM   2021CH00106
FILED DATE: 12/1/2020 5:27 PM   2020OP20532

Notice to Deponent:

1. ☑   The deponent is a public or private corporation, partnership, association, or governmental agency. The matter(s) on which examination is requested are as follows:
20DV20806
20OP20532

     ☐   Description continued on attached page(s).
     (A nonparty organization has a duty to designate one or more officers, directors, or managing agents, or other persons to testify on its behalf, and may set forth, for each person designated, the matters on which that person will testify. Ill. Sup. Ct. Rule 206.)

2. ☐   The deponent's testimony will be recorded by use of an audio-visual recording device, operated

     by _____ .
                 (Name of Recording Device Operator)

3.   No discovery deposition of any party or witnesses shall exceed three hours regardless of the number of parties involved in the case, except by stipulation of the parties or by order upon showing that good cause warrants a lengthier examination. Ill. Sup. Ct. Rule 206(d).

○ Atty. No.: _____
◉ Pro Se 99500
Name: _____ Fahad Syed _____
Atty. for (if applicable):

_____

Address: _____ 244 E Pearson St. Apt. 711 _____

City: _____ Chicago _____

State: __ IL __   Zip: __ 60611 _____

Telephone: _____ 773-564-0325 _____

Primary Email: _____ syed.216@gmail.com _____

Issued by: /s/_____
                         Signature

Text      ○ Attorney    ○ Clerk of Court

Date: _____ 12/1/20 _____

☐   I served this subpoena by mailing a copy, as required by Ill. Sup. Ct. Rules 11, 12 and 204(a) (2),

to _____ by certified mail, return receipt requested

(Receipt # _____) on _____ . I paid the witness $ _____ for witness and mileage fees.

☐   I served this subpoena by handing a copy to _____

on _____ . I paid the witness $ _____ for witness and mileage fees.

/s/ _____     _____
           (Signature of Server)                                   (Print Name)

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**

**cookcountyclerkofcourt.org**

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

# Exhibit E

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

**From:** **Threat Assessment** threatassessment@northwestern.edu
**Subject:** RE: Subpoena
**Date:** December 3, 2020 at 1:28 PM
**To:** Fahad Syed fahad-syed@law.northwestern.edu

Mr. Syed, your email and attachment have been received.

**From:** Fahad Syed <fahad-syed@law.northwestern.edu>
**Sent:** Thursday, December 3, 2020 10:49 AM
**To:** Threat Assessment <threatassessment@northwestern.edu>
**Subject:** Subpoena

Hi,

I have another subpoena, I think I'm just supposed to email this to you?

Thanks,

Fahad Syed

> On Dec 2, 2020, at 9:52 PM, Threat Assessment
> <threatassessment@northwestern.edu> wrote:
>
> Mr. Syed, your email and attachment have been received.

**From:** Fahad Syed <fahad-syed@law.northwestern.edu>
**Sent:** Tuesday, December 1, 2020 4:02 PM
**To:** Threat Assessment <threatassessment@northwestern.edu>
**Subject:** Re: Office of Equity-Request for Interview.11.30.20

Hi,

Do I just give this to you?

Thanks,

Fahad Syed

> On Dec 1, 2020, at 2:09 PM, Threat Assessment
> <threatassessment@northwestern.edu> wrote:
>
> Thank you Mr. Syed for the response.  Please review the
> attachment for updated information.

**From:** Fahad Syed <fahad-syed@law.northwestern.edu>

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

# Exhibit F

FILED DATE: 1/11/2021 10:17 AM  2021CH00106
FILED DATE: 12/8/2020 5:01 PM  2020OP78277

FILED
12/8/2020 5:01 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2020OP78277

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**SECOND MUNICIPAL DISTRICT**

| | | |
|---|---|---|
| FAHAD SYED, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 20 OP 78277 |
| | ) | |
| MONA DUGO, | ) | Hon. Stephanie D. Saltouros |
| | ) | |
| Defendants. | ) | |

**NORTHWESTERN UNIVERSITY'S MOTION TO QUASH SUBPOENAS**
**FROM PETITIONER FAHAD SYED**

Third-party Northwestern University ("University"), by and through its undersigned counsel, hereby moves to quash the two subpoenas it has received from Petitioner Fahad Syed and requests that the Court preclude Syed from issuing any additional subpoenas or other requests for discovery directed at the University or its employees without leave of court. In support of this Motion, the University states as follows:

1. On November 5, 2020, the Respondent in this matter, the University's Dean of Students Mona Dugo, filed a Petition for Stalking No Contact Order directed at University student Fahad Syed, the Petitioner in this matter, in Case No. 20 OP 20532 ("Dugo Petition"). A copy of the Dugo Petition is attached as Exhibit A. The Dugo Petition details just some of the hundreds of disturbing text messages and other communications that Syed has directed at Ms. Dugo, causing her to fear for her own safety and that of her family. *Id.* at pp. 8-9.

2. The Dugo Petition resulted in the Court issuing an Emergency Stalking No Contact Order ("Emergency Order") directed at Syed on November 5, 2020. *See* Nov. 5, 2020 Stalking No Contact Order, attached as Exhibit B.

3. On November 17, 2020, Syed violated the Emergency Order by contacting Ms. Dugo.

HB: 4833-2663-1124.1

FILED DATE: 1/11/2021 10:17 AM 2021CH00106

# Exhibit G

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

(This form replaces CCMD-39)                                    (12/01/20) CCG 0702

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

FILED
12/9/2020 9:16 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2020OP20532

FILED DATE: 1/11/2021 10:17 AM  2021CH00106
FILED DATE: 12/9/2020 9:16 AM  2020OP20532

Mona Dugo

_____
                                                    **Plaintiff(s)**

                        v.

Fahad Syed
_____
                                                    **Defendant(s)**

No. _____20OP20532_____

TO: _____The Honorable Stephanie D. Saltouros #2161_____

          **MOTION BY** _Defendant_____ **FOR** _Compel Discovery_____

Motion to Compel Discovery

Defendant, Fahad Syed, Pro Se, moves the court to enter an order pursuant to Ill. Sup. Ct. Rule 214 compelling, Northwestern University, a body politic and corporate, one of the 3rd parties in the above-entitled cause to answer Defendants request for production of documents served on 12/1/20 and 12/3/20, filed with the clerk on 12/1/20, a true and correct copy of which is attached to this motion. In support of this motion, defendant certifies:

1. The attached request for production of documents was served in accordance with the certificate of service.

2. Following 8 days, Defendant failed to produce the documents or to make discovery otherwise.

3. The documents are relevant and material to Defendants cause of action in case 20DV20806 and 20OP20532. Defendant will be irreparably injured if they are not produced by plaintiff.

For these reasons, Plaintiff moves the court for an order compelling Defendant to produce the documents in the attached request for production pursuant to Ill. Sup. Ct. Rule 214.

          **I (We) do hereby certify that a copy of this instrument was served upon all parties who have appeared and have not previously been found by the Court to be in default for failure to plead.**

Dated: __12/9/20_____, _____  /s/ _____
                                                                              **Attorney Certification**

Atty. No.: __99500_____
Name: __Fahad Syed_____
Atty. for: __Self_____
Address: __244 E Pearson St. Apt. 711_____
City/State/Zip: __Chicago, IL, 60611_____
Telephone: __773-564-0325_____

          **IRIS Y. MARTINEZ, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

# Exhibit H

FILED DATE: 1/11/2021 10:17 AM    2021CH00106

**From:** **Fahad Syed** fahad-syed@law.northwestern.edu
**Subject:** Re: Family Contact is OFF BOUNDS
**Date:** November 4, 2020 at 8:48 AM
**To:** Office of Equity equity@northwestern.edu, Mona Dugo Mona.Dugo@northwestern.edu
**Cc:** Puja Singh Patel puja-patel@law.northwestern.edu, Emily Kadens kadens@law.northwestern.edu

Hello,

I asked this question yesterday and haven't gotten a response.

I don't think it takes that long to figure out which one of you has been contacting my sister in express violation of my instructions to Mona Dugo not to contact anyone I know, after she illegally contacted my therapist to slander me. I want an answer to this question, and believe me, just like the audio tape, I am not to stop asking until someone gives me the information.

Thanks,

Fahad Syed

> On Nov 3, 2020, at 7:10 AM, Fahad Syed <fahad-syed@law.northwestern.edu> wrote:
>
> Hello,
>
> I understand that the university has been contacting my sister without my knowledge or consent. Do you have an explanation for this?<Screen Shot 2020-10-31 at 7.59.44 PM.png><Screen Shot 2020-10-31 at 8.07.26 PM.png>
>
> Thanks,
>
> Fahad Syed

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

# Exhibit I

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

Northwestern

September 24, 2020

**Sent Via Electronic Mail**

Ms. Venus M. Brown
Illinois Department of Human Rights
Fair Housing Division
Venus.Brown@illinois.gov

*Re: IDHR Charge No. 2020CH2546 – Fahad Syed*

Dear Ms. Brown,

Northwestern University respectfully submits this letter and the attached documents in response to the IDHR's request for information concerning the above-referenced charge.

Mr. Syed is a current student at Northwestern University's Pritzker School of Law. Mr. Syed alleges that Northwestern University discriminated against him on the basis of religion (Islam) and national origin (Pakistani) by requesting that he vacate University housing in November 2019 within five days and "without any investigation . . . or wrongdoing on Complainant's part." Mr. Syed further alleges "that non-Pakistani students whose religion is not Islam have not been given a similar notice without prior investigation of complaints." Both allegations are false.

Mr. Syed was interim suspended from the University on November 6, 2019 because it was alleged that he became incoherent and struck a student in the mouth with his fist at a University event. *See* **11.06.19 letter to F. Syed, attached hereto.** Northwestern University's Student Handbook states that students may be placed on interim suspension while the University investigates a matter when such action is necessary for reasons related to the safety and well-being of the University community. *See* **Northwestern University Student Handbook, pages 110-11**. The Handbook specifically states that students may be interim suspended for engaging in "[a]ction or threat of action that endangers or threatens to endanger the health, safety, or well-being of any person."

As set forth in the handbook, students placed on interim suspension must "remove themselves immediately from the residence halls and/or fraternity or sorority residences, will not be permitted to attend class, and will be excluded from University property and University events." Mr. Syed's

1

**CONFIDENTIAL:** Northwestern University's Response to IDHR Charge No. 2020CH2546

**CONFIDENTIAL:** Northwestern University's Response to OCR Docket No. 05-20-2320

allegation that other students who are interim suspended do not face the same consequence is absolutely false; all students placed on interim suspension must follow the same policy.

If anything, Mr. Syed was treated more favorably than similarly situated students placed on interim suspension. Indeed, Mr. Syed's allegation that he was forced to leave the property in five days is not true. Todd Adams (then Associate Vice President and Dean of Students) told Mr. Syed he would "be given a period of time to find alternative housing," and individuals in the law school also offered to help Mr. Syed with housing concerns. *See* **11.08.19 email from T. Adams, attached hereto**. Moreover, as noted on the Charge, Mr. Syed's current address appears to be 244 East Pearson Street, Apartment 711, Chicago, Illinois 60611. This is the address Mr. Syed was supposed to vacate in November 2019. Accordingly, it does not appear that he actually left the property.

Following the process in the Handbook, the University conducted a full investigation into Mr. Syed's conduct and notified him of the outcome of the related administrative hearing on December 19, 2019. The University concluded Mr. Syed struck a student in the face and acted in a way that was combative toward the police officers who responded to the incident. *See* **12.19.19 letter from C. DePilla, attached hereto.**[1] Mr. Syed was then suspended from the University for one semester.

Accordingly, far from discriminating against Mr. Syed, the University followed its policy designed to protect the health, safety, and well-being of the University community in the same way it does when interim suspending any student.

In response to questions set forth in IDHR's July 28, 2020 letter, Northwestern offers the following additional information:
- Northwestern University does not currently own or manage this building.
- Northwestern University does not know whether the owners of the building receive federal financial assistance from the U.S. Department of Housing and Urban Development.
- The following individual has knowledge of the discipline imposed against Mr. Syed after he struck another student: Lucas Christain, Assistant Dean and Director of Student Conduct. If IDHR would like to schedule an interview with Mr. Christain, please let me know and I will coordinate the meeting.

Sincerely,

---

[1] Mr. Syed returned from his suspension in fall 2020. He was once again interim suspended on August 23, 2020 based on allegations that he violated the terms of his disciplinary probation, threatened to retaliate against a student, and verbally harassed and threatened another student on the basis of a protected class. Notably, it appears Mr. Syed is still living at 244 East Pearson St. *See* **8.23.20 letter from Julie Payne-Kirchmeier, attached hereto.**

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

**Certificate of Service**

The undersigned certifies that a copy of the foregoing response to IDHR Charge No. 2020CH2546 was served upon:

Fahad Syed
244 East Pearson Street
Apt. 711
Chicago, Illinois 60611

By depositing the same in the United States Mail in Evanston, Illinois on the 25th day of September, 2020.

FILED DATE: 1/11/2021 10:17 AM  2021CH00106



Peter J. Birnbaum
Chief Justice

**STATE OF ILLINOIS**

# COURT OF CLAIMS

630 SOUTH COLLEGE
SPRINGFIELD, ILLINOIS 62756

———

217/782-7101

Jesse White
Secretary of State
and Ex Officio Clerk
of The Court of Claims

Erica L. Katava
Deputy Clerk

NOVEMBER 24, 2020

SYED, FAHAD
244 E PEARSON AVE APT 711
CHICAGO  IL  60611-0000

RE: 20CV1772 - SYED, FAHAD

You are hereby notified that the above entitled claim has been
assigned to a commissioner.  The commissioner is:

SERPICO, RON
1807 N BROADWAY
MELROSE PARK  IL  60160

The commissioner will conduct a hearing on your claim if necessary.
You will be contacted by the commissioner at a later date concerning the
time and place of any hearing that may be required.

All pleadings should be filed with the Clerk's office. A copy of
each pleading must be sent to any opposing counsel (e.g the Illinois
Attorney General's Office). Each pleading may also be sent directly to
the commissioner. Motions must be accompanied by a proposed order.
Please refer to 74 IL.ADM.CODE 790.200.

Sincerely,

Illinois Court of Claims

EK: KS
CC: ATTORNEY GENERAL - CHICAGO
     COMM. SERPICO, RON

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

# Exhibit J

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

**From:** **Fahad Syed** fahadsyed2021@nlaw.northwestern.edu
**Subject:** VIOLATION: 405 ILCS 5/3-606 by OFFICER T. HEALY #22
**Date:** May 11, 2020 at 3:36 PM
**To:** Bruce Andre Lewis balewis@northwestern.edu, Cindy L Benson cindy.benson@northwestern.edu, Kenneth Jones k-jones@northwestern.edu

To whom it may concern,

I would like to bring to the attention of the Northwestern University Police Department and Internal Affairs the violation of 405 ILCS 5/3-606 by Officer T. Healy #22 on 11/1/19 with regard to case 2019-00000595.

(405 ILCS 5/3-606) (from Ch. 91 1/2, par. 3-606)

  Sec. 3-606. A peace officer may take a person into custody and transport him to a mental health facility when the peace officer has reasonable grounds to believe that the person is subject to involuntary admission on an inpatient basis and in need of immediate hospitalization to protect such person or others from physical harm. Upon arrival at the facility, the peace officer may complete the petition under Section 3-601. **If the petition is not completed by the peace officer transporting the person, the transporting officer's name, badge number, and employer shall be included in the petition as a potential witness as provided in Section 3-601 of this Chapter.**

(Source: P.A. 96-1399, eff. 7-29-10; 96-1453, eff. 8-20-10.)

Below is a copy of the official petition with which I was served, clearly documenting (pg. 3) the violation of this statute through the absence of any identifying information from Officer Healy #22.

**Additionally, I would like to report the deliberate failure by Deputy Chief Chin to address this indisputable violation of state law despite repeated requests for investigation.**



Original
Petition.pdf

Best,

Fahad Syed

# EXHIBIT B – TAB 6

FILED
1/11/2021 10:17 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH00106

11775023

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

# Exhibit 1

FILED DATE: 1/11/2021 10:17 AM   2021CH00106



**CONFIDENTIAL**
**NEUROPSYCHOLOGICAL EVALUATION**

| | |
|---|---|
| **Patient:** | Mr. Fahad Syed |
| **Age:** | 28 years |
| **Date of Birth:** | 08/28/1989 |
| **Date of Evaluation:** | 09/09 and 09/15/2017 |
| **Date of Report:** | 09/22/2017 |

**REFERRAL INFORMATION:**
Mr. Fahad Syed is a 28-year-old, right handed, single male referred for a neuropsychological evaluation due to deficits regarding his cognitive and emotional functioning. The evaluation is being conducted in order to assess his current level of functioning; documenting cognitive strengths and weaknesses in order to make appropriate diagnostic and treatment recommendations. All background information was obtained from a clinical interview with Mr. Syed and a review of available medical records. Specifically, he is being evaluated for differential diagnosis and possibility of Adult Attention Deficit Disorder.

**BACKGROUND INFORMATION**
Mr. Fahad Syed is a 28 year-old male who was born in Elyria, Ohio and raised in Cleveland, Ohio with two brothers and two sisters by his natural parents. He denied any known difficulties with his birth or development, and stated that he was able to reach all developmental milestones without delays. He denied any form of physical, sexual or verbal abuse in the family. His parents legally separated when he was 8 years-old. He reported feeling emotionally close to his mother while growing up. He was unsure of his parent's level of education, but reported that his father works in security and his mother is a bookkeeper. He denied any family history of psychiatric hospitalizations, drug abuse, neurological problems, or criminal arrests. He is single and has no children. He currently lives in Skokie, Illinois with his mother.

**Educational/ Work History:**
Mr. Syed reported that he was never diagnosed with a learning disorder, but he was diagnosed with attention deficit disorder and hyperactivity at the age of 11 and medicated with Ritalin until he entered high school. He was not placed in any special education classes, held back a grade or suspended. However he reported significant problems with sustaining his attention, distractibility, trouble listening, forgetfulness and making careless mistakes before the age of 13. He graduated from Lakewood high school in 2007 with average and above average grades. After he graduated from high school he attended and graduated from Ohio State University with a bachelor's degree in economics and political science with a 2.98 grade point average in March of 2012. He stated that he looked for a job and was hired in February of 2013 as an IT operations manager for All-State Insurance. Unfortunately the company had a workforce reduction in January of 2015 and he

was laid off.  He obtained another position in IT with Price-Waterhouse Insurance in April of 2015, but he stated that the work was much more intense and he was unable to keep up with the work to the point he was fired in June.  He stated that he had difficulties sustaining his focus and organizing his work.  Mr. Syed stated that he has been at home ever since. He stated that he has taken the LSAT three times and feels he has done poorly due to his ongoing problems with attention and concentration, sustained attention and poor organization.

**Psychiatric History:**
Mr. Syed stated that he first sought psychiatric care approximately one and a half years ago due to his ongoing problems with attention and concentration. He denied any history of alcohol or drug use.

**Medical History:**
Mr. Syed reported that he was an average child growing up with few medical issues.  He denied any other medical issues and reported that he is relatively healthy for his age and life style.

**Current Medications:**
Current medications includes Adderall.

**Neuropsychological Functioning**: Mr. Syed endorsed significant challenges related to his cognitive functioning. More specifically, he reported difficulties with attention, memory, general thinking and word finding.  He also reported ongoing problems with sustained attention, focusing on details, misplacing things, and frequently losing track of his thought processes. Mr. Syed described that he will often start several projects but have difficulty completing them and he frequently get distracted by various other things.  Mr. Syed reported that prior to age of 13 he recalled problems with organizing and planning his schoolwork.

**BEHAVIORAL OBSERVATIONS**
Mr. Syed was alert and fully oriented. He arrived on time for both evaluation sessions unaccompanied. Mr. Syed was casually dressed and appeared his stated age. He responded well to efforts to build rapport and was cooperative with the evaluation. He was good-natured and made conversation at appropriate times during the evaluation. Auditory comprehension was intact, as Mr. Syed did not require redirection or frequent repeated instructions. Speech was appropriately paced and of adequate volume. Thought processes were generally goal-directed. Affect was appropriate with mild anxiety, yet consistent with his jovial mood. Mr. Syed denied any psychotic experiences and also denied any suicidal or homicidal ideation, plan or intent. Overall, the results from this assessment are believed to provide a valid estimate of Mr. Syed's current neuropsychological functioning.

**NEUROPSYCHOLOGICAL TEST RESULTS:**
**General Mental Status:** On the Mental Status Examination, Mr. Syed demonstrated that he is currently oriented to person, place, time, date, and situation.  He exhibited no impairment in recall of three items after a short delay. He was able to spell the word 'world' backwards with little effort.

FILED DATE: 1/11/2021 10:17 AM  2021CH00106

He was also able to follow a complex command and did not demonstrate any language difficulties. He also demonstrated no difficulty in drawing a simple interlocking figure or in handwriting.

**Overall Intelligence:** On the WAIS-IV which measures overall intelligence, Mr. Syed scored in the average range for verbal ability (Index = 96), in the low average range for performance (Visual/spatial) capabilities (Index= 88), and he produced an overall IQ estimate in the low average range (Index= 83). Relative to Mr. Syed's age and level of education, his overall abilities are lower than his same aged peers. Performance was scored as follows:

**Full Scale IQ**= 83     **Verbal IQ** = 96     **Performance IQ** = 88

**Working Mem. Index** = 80     **PSI**= 76

| Verbal Subtests | Age SS | Performance Subtests | Age SS |
|---|---|---|---|
| Vocabulary | 10 | Visual Puzzles | 09 |
| Similarities | 08 | Coding | 05 |
| Arithmetic | 05 | Block Design | 08 |
| Digit Span | 08 | Matrix Reasoning | 07 |
| Information | 10 | Symbol Search | 06 |

A significant difference between verbal and non-verbal ability was not demonstrated, although his abilities tended to fluctuate in the borderline to average ranges (Indexes = 75 to 100). Crystalized abilities (Information Index = 100 and Vocabulary Index = 100) are intact in the average ranges. Working Memory is the ability to hold information "on-line" and process that information. Mr. Syed performed in the lower rim of the low average range (WM Index= 80), which indicates a significant, relative weakness in his ability to process oral stimuli in a step-by-step fashion and requires a non-distractible attention span. He also demonstrated relative weakness in initial encoding of information (Arithmetic in the borderline range), as well simple attention (Digit Span) which indicates specific relative weaknesses in attentional functioning. Psychomotor processing speed is also a relative weakness (Index = 76) in the borderline range, however he was also noted to have made a number of mistakes as well, indicating poor monitoring. Verbal reasoning is in the average range, while visual reasoning is in the low average range.

**Premorbid Estimate:** The Wechsler Test of Adult Reading subtest was administered, which is an estimate of premorbid cognitive functioning and was in the high average range (Index = 111) which indicates a specific decline in timed tasks as well as working memory and attention and concentration.

**Attention Functioning:** Overall, Mr. Syed performance fluctuated but was generally in the lower rim of the average range. He demonstrated that he is fully oriented. He performed in the average range on simple repetition of numbers (*Digit Span Forward* Index = 95), but in the low average range in digits reversal (*Digit Span Backward* Index = 85), which also measures verbal working memory. On a test that requires rapid visual scanning and motor response of attempting to connect a pencil line to successive numbers randomly spaced on a page (Trails A) he performed in the

FILED DATE: 1/11/2021 10:17 AM    2021CH00106

borderline range (Index = 70). However on the more difficult variation of the test which requires the client to connect an alternating series of letters and numbers together (Trails B), he again performed in the borderline range (Index = 75) making no errors. Freedom from distractibility on a word reading, color-interference test (Stroop) is in the borderline range (Index = 72) suggesting significant difficulties with mental-shifting and cognitive flexibility. Verbal arithmetic which measures mental mathematics and encoding was also in the borderline range (Index = 75), and a relative weakness. Overall Mr. Syed demonstrates moderate difficulties with ongoing attention.

**Executive Functioning:** Overall performance on test of executive functioning also indicates intact functioning. *Word generation* (Index = 80) was in the low average range; indicating problems processing in his frontal lobes. On a test of perceptual cognitive flexibility, he performed in the borderline range (*Trail Making* B Index = 75), indicating difficulties in mental flexibility. Visual reasoning ability is in the low average range (Matrix Reasoning Index = 85), and verbal reasoning is in the average range (Similarities Index = 90).

**Verbal Skills:** Auditory comprehension was in the average range (Index = 96) as was Confrontational naming (Index = 102). Verbal fluency was in the low average range (Index=80), while semantic fluency is in the impaired range (Index =65). Word knowledge is intact in the average range. Overall Language is impaired and in the low average range, with a notable weakness in verbal fluency which is mediated by the frontal lobes.

**Visuospatial Skills:** Design construction (*Block Design* Index = 90) is in the average range. Copy of a complex figure was in the average range (Index = 94) although he appeared to draw the figure rather impulsively and in an unorganized manner. Immediate recall of the figure (Index = 58) was in the impaired range with him poorly drawing many of the details of the figure. Mr. Syed demonstrated poor organization in drawing the figure and in planning to draw the figure. Overall visuospatial ability is also relatively intact and in the average range, although he demonstrated difficulties in planning, organizing and monitoring his own behavior.

**Memory:** To better understand Mr. Syed's ability to learn over several trials the *California Verbal Learning Test-2* was also administered. On this test of verbal list learning, Mr. Syed performed in the <u>low average range</u> over 5 trials (Index = 88). Although he initially performed in the average range on the first presentation of the list (Index = 93), he continued to perform inconsistently as the trials progressed until he was performing in the average range by trial 5 (Index = 93). However, Mr. Syed performed in the borderline range on the first presentation of a new list of words (Trial B Index = 78); indicating ongoing fluctuating attention and concentration. He demonstrated poor clustering ability to help organize the words, and he performed in the low average range for short-delay free (Index = 85), but in the average range (Index = 93) in cued recall. However he performed in the borderline range (Index = 70) for long-delay, free-recall, and again performed in the low average range for cued long-delayed recall (Index = 85). He produced a high average number of errors and intrusions throughout this test and demonstrated poor discriminability. On the immediate recall of a short story, he performed in the borderline impaired range (Index = 75). He again performed in borderline range on the recall of that short story (Index = 70).

On the Immediate Recall of the Rey Figure he demonstrated poor ability to organize and recall the figure only after a few minutes delay (Index = 58) in the severely impaired range. He also

FILED DATE: 1/11/2021 10:17 AM    2021CH00106

demonstrated poor planning and visualization of the complex figure. He again performed in the impaired range on Delayed Recall of the figure (Index = 48); again demonstrating poor visual planning and organization. Working memory is the ability to hold information "on-line" and process that information. Mr. Syed performed in the low average range (WM Index= 80), indicating a relative weakness in processing of information. Overall, memory ability appears to be intact in both verbal and non-verbal domains, as well as in working memory, although this is considered a relative weakness for Mr. Syed. However his fluctuating attention and poor organization causes his considerable difficulty in recalling verbal and visual information.

**Sensory and Motor Functioning:** Tests of sensory and motor functioning revealed no abnormalities. Mr. Syed did not display any tactile or visual suppression, during an *abbreviated Sensory-Perceptual Examination*. Kinesthetic praxis (i.e. the ability to imitate hand positions from a model) was in the average range (Index = 95), while fine motor speed and coordination (Fingertip Tapping) was in the high average range (Index =110). Overall sensorimotor ability was intact.

**Connor's Continuous Performance Test-2 (CCPT-2):** The CCPT-2 is a computerized assessment tool that reveals important information about Mr. Syed's attentional functioning. The CPT discriminant function indicates his results better match a clinical than non-clinical profile (68%). On this test he made a large number of omission and commission errors indicating poor sustained attention and an impulsive style. However his reaction time was fast with good consistency, although he became less consistent as the test progressed. However, he also slowed down substantially in response to longer Inter-Stimuli intervals, which reflects a diminished ability to adapt to changing task requirements. His scores also indicate vigilance deficits as well.

## IMPRESSIONS

Mr. Fahad Syed is a 28-year-old, right handed, single male referred for a neuropsychological evaluation due to deficits regarding his cognitive and emotional functioning. The evaluation is being conducted in order to assess his current level of functioning; documenting cognitive strengths and weaknesses in order to make appropriate diagnostic and treatment recommendations. All background information was obtained from a clinical interview with Mr. Syed and a review of available medical records. Specifically, he is being evaluated for differential diagnosis and possibility of Adult Attention Deficit Disorder. He reported that he has had ongoing difficulties with attention and concentration since grade school and is having even more difficulties since. On the present evaluation, Mr. Syed performed in the low range of intellectual functioning, demonstrating relative weaknesses in simple attention, encoding, fluency, planning, monitoring, organization, executive functioning and working memory. His ongoing difficulties with concentration and attention negatively affect his ability to encode and retrieve information; as well as verbal and visual memory.

Overall Mr. Syed's neurocognitive difficulties are significantly greater than what might be expected to occur in someone his age. Given the absence of an identified neurological or medical complication, these challenges appear to be related to his attentional and cognitive concerns. Primarily, Mr. Syed's description of longstanding challenges related to distractibility, lack of

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

attention to details, poor organization, and challenges following through with instructions at home and particularly at school before the age of 13, appears to be consistent with the diagnosis of severe attention deficit hyperactivity disorder, inattentive type. He is continuing to demonstrate issues related to working memory, encoding and simple attention.  Please see a list of more detailed recommendations to help assist in Mr. Syed's ongoing improvement with his overall functioning.

**DIAGNOSIS**

Attention Deficit Disorder, predominantly inattentive type

**RECOMMENDATIONS for COLLEGE RELATED ACCOMMODATIONS :**
Data from this evaluation indicate that Mr. Syed's current cognitive difficulties are associated with his symptoms of ADHD. The Following are typically utilized in appropriate accommodations for individuals with inattentive type, Attention Deficit Disorder.

1. Mr. Syed requires extra time (at least double time) to complete tests, papers and projects, due to his poor ability to focus, plan and organize.
2. He would benefit from testing in a private area to minimize distractions, and frequent breaks are encouraged to help his expel any physical tension (i.e. walking, jumping jacks). He reported that breaks have helped his in the past to re-focus.  In some cases testing over two or more sessions.
3. Mr. Syed should be allowed to audiotape lectures and/or be allowed to have a peer take notes for him.  If any textbooks have an audiotape version, they should be made available to him.
4. He would greatly benefit from written instructions from professors regarding assignments and reminders of upcoming deadlines.
5. Mr. Syed should provide this report to a professional at his school's disability service office as soon as possible to immediately receive these and other appropriate accommodations.

Thank you for the consult and please let us know if we can be of further assistance.

Tony Fletcher, Psy.D., ABPP
Diplomate in Forensic Psychology
Licensed Clinical Psychologist
Clinical Neuropsychologist

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

# Exhibit 2

FILED DATE: 1/11/2021 10:17 AM  2021CH00106



**Brad A. Myers**
**University Registrar**



Name    : **Fahad Syed**
Student ID: 07179311
Birth MO/DAY : 08/28/****
Print Date:  9/19/2012
Page 1 of 2
STUOF-ISSUED TO STUDENT

---

FAHAD SYED
4700 OLD ORCHARD ROAD. APT. 309
SKOKIE, IL 60076-1022

----- Institutions Attended -----
Oakton Community College
Lakewood High School
  2007-06-01 High School Diploma

----- OSU Degrees -----
Degree      : Bachelor of Arts
Confer Date : 2012-03-18
Plan        : Political Science
Sub-Plan    : International Relations

Degree      : Bachelor of Arts
Confer Date : 2012-03-18
Plan        : Economics

----- Beginning of Undergraduate Record -----
Autumn 2007 Quarter

Program : Ugrd Student Academic Services
Plan    : Management&Industry Exploring Undecided
Plan    : Pre-B S in Business Administra Area of Interest

| Course | | Description | Attempted | Earned | Grade | Points |
|---|---|---|---|---|---|---|
| EDUPAES | 157.01 | Golf 1 | 1.00 | 0.00 | W | |
| ENGLISH | 110.01 | First-Yr Engl Comp | 5.00 | 5.00 | C- | 8.500 |
| MATH | 130 | Math Anlysis Bus 1 | 4.00 | 0.00 | #EN | |
| PSYCH | 100 | General Psychology | 5.00 | 5.00 | C | 10.000 |
| USAS | 100.21 | Exploration Survey | 1.00 | 0.00 | #D | |
| TERM GPA : | 1.850 | TERM TOTALS : | 15.00 | 10.00 | | 18.500 |
| CUM  GPA : | 1.850 | CUM  TOTALS : | 15.00 | 10.00 | | 18.500 |

*Warning by Pri College*

Winter 2008 Quarter          *

Program : Ugrd Student Academic Services
Plan    : Management&Industry Exploring Undecided
Plan    : Pre-B S in Business Administra Area of Interest

| Course | | Description | Attempted | Earned | Grade | Points |
|---|---|---|---|---|---|---|
| ECON | 200 | Prin Microeconomic | 5.00 | 0.00 | #D+ | |
| ENGLISH | 261 | Intro To Fiction | 5.00 | 5.00 | B | 15.000 |
| HISTORY | 151 | Am Civ To 1877 | 5.00 | 5.00 | C | 10.000 |
| POLITSC | 101 | Intro Amer Poltics | 5.00 | 5.00 | B- | 13.500 |
| TERM GPA : | 2.566 | TERM TOTALS : | 20.00 | 15.00 | | 38.500 |
| CUM  GPA : | 2.280 | CUM  TOTALS : | 35.00 | 25.00 | | 57.000 |

*Warning by Pri College*

Spring 2008 Quarter

Program : Ugrd Student Academic Services
Plan    : Economics Major

| Course | | Description | Attempted | Earned | Grade | Points |
|---|---|---|---|---|---|---|
| ECON | 201 | Prin Macroeconomic | 5.00 | 5.00 | B+ | 16.500 |
| MATH | 130 | Math Anlysis Bus 1 | 4.00 | 0.00 | E | |
| MUSIC | 250 | Music Cultures | 5.00 | 5.00 | B | 15.000 |
| USAS | 100.21 | Exploration Survey | 1.00 | 1.00 | A | 4.000 |
| TERM GPA : | 2.366 | TERM TOTALS : | 15.00 | 11.00 | | 35.500 |
| CUM  GPA : | 2.312 | CUM  TOTALS : | 50.00 | 36.00 | | 92.500 |

Autumn 2008 Quarter

Program : Social & Behavioral Sciences
Plan    : English Minor
Plan    : Political Science Major

| Course | | Description | Attempted | Earned | Grade | Points |
|---|---|---|---|---|---|---|
| COMPSTD | 367.01 | 2nd Writ-Am Ident | 5.00 | 5.00 | C | 10.000 |
| ENGLISH | 467 | Writing & Learning | 5.00 | 5.00 | B- | 13.500 |
| PHILOS | 130 | Intro To Ethics | 5.00 | 5.00 | C+ | 11.500 |
| POLITSC | 100 | Intro Comp Poltics | 5.00 | 5.00 | B+ | 16.500 |

Transfer Credit from Previous Education Experience
Applied Toward Social & Behavioral Sciences Program

| ACCTMIS | GEN | General | 6.00 | 6.00 | K | |
|---|---|---|---|---|---|---|
| Course Trans GPA: | 0.000 | Trns Total: | 6.00 | 6.00 | | 0.000 |
| TERM GPA : | 2.575 | TERM TOTALS : | 20.00 | 20.00 | | 51.500 |
| CUM  GPA : | 2.400 | CUM  TOTALS : | 70.00 | 62.00 | | 144.000 |

Winter 2009 Quarter

Program : Social & Behavioral Sciences
Plan    : English Minor
Plan    : Political Science Major

| Course | | Description | Attempted | Earned | Grade | Points |
|---|---|---|---|---|---|---|
| HISTORY | 540.03 | Ottmn Em 1300-1800 | 5.00 | 5.00 | B | 15.000 |
| MATH | 130 | Math Anlysis Bus 1 | 4.00 | 4.00 | C | 8.000 |
| POLITSC | 546 | Politics Mid East | 5.00 | 5.00 | C+ | 11.500 |
| TERM GPA : | 2.464 | TERM TOTALS : | 14.00 | 14.00 | | 34.500 |
| CUM  GPA : | 2.412 | CUM  TOTALS : | 84.00 | 76.00 | | 178.500 |

Spring 2009 Quarter

Program : Social & Behavioral Sciences
Plan    : English Minor
Plan    : Political Science Major

| Course | | Description | Attempted | Earned | Grade | Points |
|---|---|---|---|---|---|---|
| BIOLOGY | 101 | Introductory Bio | 5.00 | 5.00 | B | 15.000 |
| ECON | 200 | Prin Microeconomic | 5.00 | 5.00 | B | 15.000 |
| MATH | 131 | Math Anlysis Bus 2 | 4.00 | 0.00 | E | |
| TERM GPA : | 2.142 | TERM TOTALS : | 14.00 | 10.00 | | 30.000 |
| CUM  GPA : | 2.369 | CUM  TOTALS : | 98.00 | 86.00 | | 208.500 |

Summer 2009 Quarter

Program : Social & Behavioral Sciences
Plan    : English Minor
Plan    : Political Science Major

| Course | | Description | Attempted | Earned | Grade | Points |
|---|---|---|---|---|---|---|
| ENGLISH | 263 | Intro To Film | 5.00 | 5.00 | B | 15.000 |
| MATH | 131 | Math Anlysis Bus 2 | 4.00 | 4.00 | A | 16.000 |
| POLITSC | 210 | Intro Polit Theory | 5.00 | 5.00 | A | 20.000 |
| TERM GPA : | 3.642 | TERM TOTALS : | 14.00 | 14.00 | | 51.000 |
| CUM  GPA : | 2.544 | CUM  TOTALS : | 112.00 | 100.00 | | 259.500 |

Dean's List

Autumn 2009 Quarter

Program : Social & Behavioral Sciences
Plan    : English Minor
Plan    : Political Science Major

| Course | | Description | Attempted | Earned | Grade | Points |
|---|---|---|---|---|---|---|
| CSE | 200 | Cptr Prob Solv Bus | 5.00 | | 0.00 | W |

2634671

TRANSLUCENT GLOBES MUST BE VISIBLE FROM BOTH SIDES
OF TRANSCRIPT WHEN HELD TOWARD LIGHT SOURCE

THE OHIO STATE UNIVERSITY TRANSCRIPT

*Brad A. Myers*
**Brad A. Myers**
**University Registrar**

Name : Fahad Syed
Student ID: 07179311
Birth MO/DAY : 08/28/****
Print Date: 9/19/2012
Page 2 of 2
STUOF-ISSUED TO STUDENT

FILED DATE: 1/11/2021 10:17 AM 2021CH00106

| | | | Attempted | Earned | Grade | Points |
|---|---|---|---|---|---|---|
| HISTORY | 152 | Am Civ Since 1877 | 5.00 | 5.00 | A | 20.000 |
| MATH | 132 | Math Anlysis Bus 3 | 5.00 | 5.00 | C- | 8.500 |
| TERM GPA : | 2.850 | TERM TOTALS : | 10.00 | 10.00 | | 28.500 |
| CUM GPA : | 2.571 | CUM TOTALS : | 122.00 | 110.00 | | 288.000 |

Winter 2010 Quarter

Program : Social & Behavioral Sciences
Plan : English Minor
Plan : Political Science Major

| Course | | Description | Attempted | Earned | Grade | Points |
|---|---|---|---|---|---|---|
| BIOLOGY | 102 | Human Biology | 5.00 | 0.00 | W | |
| CHEM | 121 | General Chemistry | 5.00 | 0.00 | W | |
| ECON | 520 | Money And Banking | 5.00 | 5.00 | B | 15.000 |
| MATH | 150 | Elemntry Fnctns | 5.00 | 5.00 | B+ | 16.500 |
| TERM GPA : | 3.150 | TERM TOTALS : | 10.00 | 10.00 | | 31.500 |
| CUM GPA : | 2.618 | CUM TOTALS : | 132.00 | 120.00 | | 319.500 |

Spring 2010 Quarter

Program : Social & Behavioral Sciences
Plan : Political Science Major

| Course | | Description | Attempted | Earned | Grade | Points |
|---|---|---|---|---|---|---|
| CSE | 200 | Cptr Prob Solv Bus | 5.00 | 5.00 | C- | 8.500 |
| POLITSC | 245 | US In Wrld Politix | 5.00 | 5.00 | A | 20.000 |
| POLITSC | 505 | Urban Government | 5.00 | 5.00 | A | 20.000 |
| POLITSC | 532 | Govt&Pol S Europe | 5.00 | 5.00 | A- | 18.500 |
| TERM GPA : | 3.350 | TERM TOTALS : | 20.00 | 20.00 | | 67.000 |
| CUM GPA : | 2.721 | CUM TOTALS : | 152.00 | 140.00 | | 386.500 |

Summer 2010 Quarter

Program : Social & Behavioral Sciences
Plan : Political Science Major

| Course | | Description | Attempted | Earned | Grade | Points |
|---|---|---|---|---|---|---|
| POLITSC | 519 | Civl Librties-Crts | 5.00 | 5.00 | A- | 18.500 |
| POLITSC | 551 | Un Glbl Prob Slvng | 5.00 | 5.00 | B- | 13.500 |
| POLITSC | 579 | Dmstc Pol Int Cnfl | 5.00 | 5.00 | A- | 18.500 |
| STAT | 133 | Stat Business Sci | 5.00 | 5.00 | B- | 13.500 |
| TERM GPA : | 3.200 | TERM TOTALS : | 20.00 | 20.00 | | 64.000 |
| CUM GPA : | 2.780 | CUM TOTALS : | 172.00 | 160.00 | | 450.500 |

Autumn 2010 Quarter

Program : Social & Behavioral Sciences
Plan : Political Science Major

| Course | | Description | Attempted | Earned | Grade | Points |
|---|---|---|---|---|---|---|
| PHYSICS | 103 | World Of Energy 1 | 5.00 | 5.00 | A | 20.000 |
| POLITSC | 545 | For Pol Dec Making | 5.00 | 5.00 | A | 20.000 |
| POLITSC | 597.02 | Prblm Contmp World | 5.00 | 5.00 | A | 20.000 |

Test Credits Applied Toward Social & Behavioral Sciences Program

| | | | | | | |
|---|---|---|---|---|---|---|
| HINDI | 101 | Elem Hindi 1 | 5.00 | 5.00 | EM | |
| HINDI | 102 | Elem Hindi 2 | 5.00 | 5.00 | EM | |
| HINDI | 103 | Elem Hindi 3 | 5.00 | 5.00 | EM | |
| HINDI | 104 | Intermed Hindi 1 | 5.00 | 5.00 | EM | |
| Test Trans GPA: | 0.000 | Trns Total: | 20.00 | 20.00 | | 0.000 |
| TERM GPA : | 4.000 | TERM TOTALS : | 15.00 | 15.00 | | 60.000 |
| CUM GPA : | 2.884 | CUM TOTALS : | 187.00 | 195.00 | | 510.500 |

**Dean's List**

Winter 2011 Quarter

Program : Social & Behavioral Sciences
Plan : Political Science Major

| Course | | Description | Attempted | Earned | Grade | Points |
|---|---|---|---|---|---|---|
| BUSMGT | 330 | Statistical Techn | 5.00 | 5.00 | B+ | 16.500 |

| | | | Attempted | Earned | Grade | Points |
|---|---|---|---|---|---|---|
| EDUPAES | 152.02 | Social Dance 1 Men | 1.00 | 1.00 | A | 4.000 |
| ENTOMOL | 102 | Insect Biology 2 | 5.00 | 5.00 | B+ | 16.500 |
| FDSCTE | 201 | Science Of Food | 5.00 | 5.00 | A | 20.000 |
| POLITSC | 548 | Pltcs Intrntl Trs | 5.00 | 5.00 | A | 20.000 |
| TERM GPA : | 3.666 | TERM TOTALS : | 21.00 | 21.00 | | 77.000 |
| CUM GPA : | 2.947 | CUM TOTALS : | 208.00 | 216.00 | | 587.500 |

**Dean's List**

Spring 2011 Quarter

Program : Social & Behavioral Sciences
Plan : Political Science Major

| Course | | Description | Attempted | Earned | Grade | Points |
|---|---|---|---|---|---|---|
| ACCTMIS | 211 | Intro To Accountng | 5.00 | 5.00 | C+ | 11.500 |
| BUSADM | 555 | Intro Intnatl Bus | 4.00 | 4.00 | B+ | 13.200 |
| BUSMGT | 331 | Oper Res,Mod1&Appl | 4.00 | 4.00 | A- | 14.800 |
| BUSMBR | 701 | Org Beh & Hum Res | 5.00 | 5.00 | B+ | 16.500 |
| TERM GPA : | 3.111 | TERM TOTALS : | 18.00 | 18.00 | | 56.000 |
| CUM GPA : | 2.979 | CUM TOTALS : | 226.00 | 234.00 | | 643.500 |

Summer 2011 Quarter

Program : Social & Behavioral Sciences
Plan : Political Science Major

| Course | | Description | Attempted | Earned | Grade | Points |
|---|---|---|---|---|---|---|
| ACCTMIS | 212 | Intro To Accountng | 5.00 | 5.00 | C | 10.000 |
| BUSFIN | 510 | Legal Environment | 4.00 | 4.00 | B+ | 13.200 |
| BUSMGT | 630 | Intro Oper Mgt | 4.00 | 4.00 | C- | 6.800 |
| BUSML | 650 | Marketing | 4.00 | 4.00 | A | 16.000 |
| TERM GPA : | 2.705 | TERM TOTALS : | 17.00 | 17.00 | | 46.000 |
| CUM GPA : | 2.959 | CUM TOTALS : | 243.00 | 251.00 | | 689.500 |

Autumn 2011 Quarter

Program : Social & Behavioral Sciences
Plan : Political Science Major

| Course | | Description | Attempted | Earned | Grade | Points |
|---|---|---|---|---|---|---|
| ECON | 501.02 | Int Micro-Ec Thry | 5.00 | 5.00 | B | 15.000 |
| ECON | 502.01 | Int Macro-Ec Thry | 5.00 | 5.00 | B- | 13.500 |
| ECON | 570 | Govt And Business | 5.00 | 5.00 | B+ | 16.500 |
| ECON | 580 | Labor Ec & Ind Rel | 5.00 | 5.00 | A- | 18.500 |
| TERM GPA : | 3.175 | TERM TOTALS : | 20.00 | 20.00 | | 63.500 |
| CUM GPA : | 2.976 | CUM TOTALS : | 263.00 | 271.00 | | 753.000 |

Winter 2012 Quarter

Program : Social & Behavioral Sciences
Plan : Political Science Major

| Course | | Description | Attempted | Earned | Grade | Points |
|---|---|---|---|---|---|---|
| ECON | 444 | Elem Econometrics | 5.00 | 5.00 | A- | 18.500 |
| ECON | 505 | Experimental Econ | 5.00 | 0.00 | W | |
| ECON | 601 | Game Theory Econ | 5.00 | 5.00 | B- | 13.500 |
| ECON | 665 | Intntl Commdty Flw | 5.00 | 5.00 | B- | 13.500 |
| TERM GPA : | 3.033 | TERM TOTALS : | 15.00 | 15.00 | | 45.500 |
| CUM GPA : | 2.979 | CUM TOTALS : | 278.00 | 286.00 | | 798.500 |

Undergraduate Career Totals

| | | | | | | |
|---|---|---|---|---|---|---|
| CUM GPA : | 2.979 | CUM TOTALS : | 278.00 | 286.00 | | 798.500 |

----- Completed Milestones -----

Ohio Transfer Module

----- End of Transcript -----

TRANSLUCENT GLOBES MUST BE VISIBLE FROM BOTH SIDES

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

# Exhibit 3

FILED DATE: 1/11/2021 10:17 AM 2021CH00106



**Inner-City Muslim Action Network**
**WWW.IMANCENTRAL.ORG**

2744 West 63rd Street
Chicago, Illinois 60629

T (773) 434-4626
F (773) 442-0360

June 27, 2019

To Whom It May Concern,

IMAN is a community based organization which fosters Health, Wellness, and Healing in the inner-city by organizing for social change, cultivating the Arts and operating a Holistic health Center. Fahad Syed has completed 100 hours of community service here at our facilities where his duties consisted of (but not limited to) set up and break down for programs, feeding the homeless, and cleaning around the sites. Mr. Syed has assured us that he would volunteer his time again in the near future.

Any questions or comments, please contact me at bilal@imancentral.org or call me at (773)984-8335.

Cordially, .

Bilal Evans

Green Re-Entry Coordinator

**BOARD OF DIRECTORS**
**EXECUTIVE COMMITTEE**

**Chair**
Umar Carter

**Co-Chair**
Clyde K. EL-Amin

**Secretary**
Zubair Tajuddin, J.D.

**Treasurer**
Feroz Patel

**Committee Members**
Abed Moiduddin
Aminah Al-Deen, Ph.D.

**Executive Director**
Rami Nashashibi, Ph.D.

**Board Members**
Efrain Claudio
Jameela Durr
Miriam Guerrero
Tariq Iftikhar, M.D.
David Kelly*
Katie Marciniak
Maaria Mozaffar*
Laila Muhammad
Rosa Navarro
Nia Odeoti-Hassan
Lolita Voss

*Advisory Board

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

# Exhibit 4

# Law School Admission Test

FILED DATE: 1/11/2021 10:17 AM  2021CH00106

**Candidate Report**
**for**

Fahad Syed

| | |
|---|---|
| **LSAC Account Number** | L31064100 |
| **Social Security/Social Ins. No.** | *****0286 |
| **Date of Report** | 10/11/17 |
| **Control Number** | 08520026 |

## CANDIDATE ITEM RESPONSE REPORT

This report shows your responses by section to all questions that contributed to your score on the current test. This report represents the machine scoring of the blackened responses on your answer sheet. Please compare the recorded responses on this report with those on your answer sheet and report any discrepancies to Law School Admission Council within 60 days of the test date. This report contains your LSAT record. The numbers in parenthesis next to the headings refer to complete explanations on the IRR Additional Information Document.

### LSAT SCORE DATA (1)

| LSAT Score Band | LSAT Score | LSAT % Rank | Admin Date |
|---|---|---|---|
| 167-173 | 170 | 97 | 09/17 |
| 165-171 | 168 | 96 | 06/17 |
| 163-169 | 166 | 93 | 12/16 |
| 163-169 | 166 | 93 | 09/16 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

### Legend for Score Data

A - Absent/Delay
C - Candidate Cancel
I - Statistical Cancel
N - LSAC Cancel
P - Cancel/Possession Electronic Device
S - Security Cancel
V - Cancel/Other Test Center Violation

Band for Average Score:   167-169

| 120 | 130 | 140 | 150 | 160 | 170 | 180 |
|---|---|---|---|---|---|---|

<>

Average Score =   168

## QUESTION RESPONSE DATA (2)

| | |
|---|---|
| **Test Date** | 09/16/2017 |
| **Number of Credited Responses** | 90 |
| **Number of Responses Not Credited** | 11 |

### LSAT QUESTION RESPONSES (3)

| Question No. | Section 1 Your response | Section 1 Credited response | Section 2 Your response | Section 2 Credited response | Section 4 Your response | Section 4 Credited response | Section 5 Your response | Section 5 Credited response | Question No. |
|---|---|---|---|---|---|---|---|---|---|
| 1. | D | D | B | B | B | B | A | A | 1. |
| 2. | A | A | A | A | D | D | C | C | 2. |
| 3. | C | C | A | A | A | A | C | C | 3. |
| 4. | E | E | C | C | C | C | E | E | 4. |
| 5. | C | C | B | B | E | E | E | E | 5. |
| 6. | C | C | B | B | D | D | A | A | 6. |
| 7. | B | B | C | C | A | A | D | B | 7. |
| 8. | B | B | E | E | D | D | B | B | 8. |
| 9. | C | C | D | D | B | B | B | B | 9. |
| 10. | E | E | E | E | B | B | C | C | 10. |
| 11. | E | E | A | A | C | C | A | A | 11. |
| 12. | B | B | B | B | C | C | A | A | 12. |
| 13. | D | D | E | E | D | A | D | D | 13. |
| 14. | D | D | B | B | E | E | B | B | 14. |
| 15. | A | A | D | D | A | B | B | B | 15. |
| 16. | B | B | A | A | E | C | C | C | 16. |
| 17. | B | B | B | B | C | C | B | B | 17. |
| 18. | C | C | D | D | C | C | D | D | 18. |
| 19. | A | A | A | A | A | A | E | E | 19. |
| 20. | B | A | E | E | A | A | E | E | 20. |
| 21. | A | A | D | D | D | D | C | C | 21. |
| 22. | D | E | C | C | E | E | D | D | 22. |
| 23. | A | A | B | B | D | C | C | C | 23. |
| 24. | A | C | | | E | E | C | C | 24. |
| 25. | E | E | | | E | E | B | B | 25. |
| 26. | | | | | E | E | D | D | 26. |
| 27. | | | | | | | C | E | 27. |
| 28. | | | | | | | | | 28. |
| 29. | | | | | | | | | 29. |
| 30. | | | | | | | | | 30. |

Name and mailing address

Fahad Syed

4700 Old Orchard Road Apt 309

Skokie, IL 60076

© Law School Admission Council, Inc. All rights reserved.

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

# Exhibit 5

1/10/2021                                 Gmail - Northwestern Law: Decision Letter Available

 Gmail

**Fahad Syed <syed.216@gmail.com>**

---

## Northwestern Law: Decision Letter Available
1 message

---

**Northwestern Law** <admissions@law.northwestern.edu>                 Wed, Feb 8, 2017 at 10:45 AM
To: syed.216@gmail.com



Fahad,

The Admissions Committee has completed its review of your application for admission. To view and download your decision letter please login to our:

Decision Letter Delivery System



Office of Admissions and Financial Aid

Northwestern University School of Law
375 E Chicago Ave | Chicago, IL 60611
www.law.northwestern.edu | 312-503-8465



          Office of Admissions    Northwestern University School of Law    375 East Chicago Avenue, Chicago, IL 60611-3069    Phone: 312.503.8465

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

# Exhibit 6

**Northwestern**

PRITZKER SCHOOL OF LAW

FILED DATE: 1/11/2021 10:17 AM 2021CH00106

Admissions and Financial Aid

December 13, 2017

Fahad Syed

4700 Old Orchard Road Apt 309

Skokie, IL 60076 USA

Dear Fahad:

Congratulations! You have been accepted to the Juris Doctor program at Northwestern Pritzker School of Law beginning in Fall 2018 through our Early Decision Program.

We are also pleased to offer you a total of $150,000, split evenly over the three years of your legal education. This will result in a guaranteed annual scholarship of $50,000. This award is contingent upon your matriculation at Northwestern Prtizker School of Law in Fall 2018. We will automatically renew this award for your second and third years of enrollment, provided that you maintain standard full-time enrollment and remain in  good academic standing.

While you will be joining a talented group of individuals, we are also confident that you will add a valuable perspective to our classroom discussions and will thrive in our unique learning environment, which fosters cooperation, camaraderie, and personal contact with faculty, administrators, and students. This is an exciting time to be at Northwestern Law. Guided by our Strategic Plan and funded by a fundraising campaign that already has raised more than $200 million, we are instituting exciting new programs and adding exceptional new faculty.  All of this is being done with an eye toward preparing our students better than any other law school for the rapidly changing world in which law, business, and technology seamlessly interact and in which technology provides unprecedented opportunities to close the access to justice gap.  Among our many new offerings, we have added a Technology, Innovation and Entrepreneurship concentration; Northwestern's Kellogg School of Management now provides full 65-student sections of five of their core classes (finance, accounting, business strategy, business analytics, and leadership and organizations) exclusively for our law students; we have established an Innovation Lab where student teams design a commercial product to solve a legal problem; we have partnered with Kellogg to provide our JD students the opportunity to spend an entire term in the Bay Area where they take a combination of Northwestern Law and Kellogg courses while also completing an externship with a Bay Area growth stage startup; we have opened a new Public Interest Center; launched a Global Public Interest Fellowship program which funds students working abroad during the summer for an approved governmental or nongovernmental organization; announced the nation's most generous guaranteed summer public interest funding program; and, this Spring semester, are offering a class in coding tailored for future legal professionals.  We are achieving all of this while maintaining our commitment to the strong sense of community for which we are known.

Per your signed Early Decision Certification agreement, you are now required to immediately withdraw all other law school applications; and you may not initiate any new law school applications this year. To retain your place in the entering class, we must receive your non-refundable $750 tuition deposit in our office by **12:00 PM CST on January 9, 2018**. Please confirm your intention to enroll by completing our Candidate Response Form and submitting the tuition deposit. Instructions on how to pay your tuition deposit will be sent in a few days.

Please keep us updated as to any address or e-mail changes you may have between now and August. Over the summer, you will receive additional information from our Office of Student Affairs regarding Orientation, as well as other steps you will need to take before you begin your first year here at Northwestern.

Again, congratulations. If we can help in any way before you enroll, please let us know. We will make every effort to ensure that your experience here is rewarding and enjoyable.

Sincerely,

Johann H. Lee
Assistant Dean of Admissions and Financial Aid

Northwestern Pritzker School of Law
375 East Chicago Avenue
Chicago, Illinois 60611-3069
Phone: 312.503.8465
admissions@law.northwestern.edu
www.law.northwestern.edu/admissions

# Northwestern

## PRITZKER SCHOOL OF LAW

**EARLY DECISION CERTIFICATION**

Northwestern Pritzker School of Law evaluates Early Decision applications according to the same selection criteria as regular decision applications. However, Early Decision applicants' particular interest in Northwestern Pritzker School of Law, evidenced by their Early Decision application designation, is specially considered by the Admissions Committee. Otherwise, Early Decision applicants do not have a significant advantage in the selection process. Please note that **Early Decision applicants are required to complete an interview.** Refer to the application and application instructions for Early Decision interview deadlines.

If admitted through the Early Decision program, Early Decision applicants commit themselves to matriculating at Northwestern Pritzker School of Law. Applicants may <u>not</u> apply to any other Early Decision programs during the same admissions cycle. Early Decision applicants may only apply to other law schools on a regular decision basis. Upon admission to Northwestern through the Early Decision program, applicants must understand and agree that they are required to immediately withdraw all other law school applications and may not initiate any new applications. Failure by admitted Early Decision candidates to honor these commitments may result in the revocation of the admission offer.

Early Decision applicants may apply for financial aid. However, specific information on individual financial aid awards will not be available until after Early Decision applicants are notified of the decision on their application. Accordingly, applicants who expect financial aid to be a significant factor in determining where they will attend law school should carefully consider whether they want to apply to Northwestern Pritzker School of Law's Early Decision program, as they will not be able to compare financial aid awards from other law schools.

Applicants who are not admitted through the Early Decision program may elect to be held and evaluated again as part of the regular applicant pool.

Northwestern reserves the right to provide its peer law schools with the names of applicants accepted under our Early Decision program.

<u>Instructions</u>:
If you agree to the above terms of the Early Decision program and you wish to apply as an Early Decision candidate at Northwestern Pritzker School of Law, then you must complete this form and submit it as part of your application materials no later than December 1st. You will be notified of the Law School's decision by the end of December.

**<u>Certification</u>:**
**I certify that I have read the above and understand the stated policies and practices that govern the Early Decision admission program at Northwestern Pritzker School of Law, and I wish to be considered as an Early Decision candidate. During this admissions cycle, I have not submitted and will not submit an application for Early Decision at any other law school nor will I enter into an Early Decision agreement with any other law school. If accepted under Northwestern Pritzker School of Law's Early Decision program, I will matriculate at Northwestern Pritzker School of Law and agree to immediately withdraw all my applications to other schools and to refrain from initiating any new applications.**

Applicant signature _____     Date signed     11/13/2017

Print name     Fahad Syed

LSAC account #: L     31064100

*Submit this signed form electronically or by mail to the Law School's Office of Admission and Financial Aid. A "snapshot" will not suffice. The deadline to submit your completed Early Decision application and all required application materials is by December 1, 2017.*

**Northwestern | Pritzker School of Law**
Office of Admission and Financial Aid
ATTN: Early Decision Program
375 E. Chicago Ave., RB 130
Chicago, Illinois 60611-0064
Main: 312.503.8465
admissions@law.northwestern.edu

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

# Exhibit 7

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

**From:** **Northwestern Pritzker Law | Office of Admission and Financial Aid** admissions@nlaw.northwestern.edu  
**Subject:** Northwestern Pritzker School of Law: Your Application for Admission
**Date:** April 26, 2018 at 2:55 PM
**To:** fahadbsyed@gmail.com



# Northwestern
## PRITZKER SCHOOL OF LAW

Dear Fahad,

The University recently learned that there might be inaccurate information in your Fall 2018 JD application related to your employment history, collegiate extracurricular activities, and family background. As a result, the Admissions Committee is requesting an external review of the information contained in your application. Please sign and submit the attached document no later than May 15th. If the external review reveals that your application contains inaccurate information, you will be given an opportunity to explain any inconsistencies to the Dean. Please note, your ability to enroll in our JD program is contingent upon your consent to complete this review and the results.

Sincerely,

Northwestern Law Admissions Committee



NORTHWESTERN
UNIVERSITY    Office of Admissions    Northwestern Pritzker School of Law    375 East Chicago Avenue, Chicago, IL 60611

---

**PLEASE READ THIS FORM AND REMIT TO RE VERA SERVICES, LLC AT**
**617-275-8642 (fax) or info@reveraservices.com**

NOTICE, AUTHORIZATION AND RELEASE FOR THE PROCUREMENT OF A CONSUMER AND/OR
INVESTIGATIVE CONSUMER REPORT

I, the undersigned consumer, acknowledge that I have received the attached Fair Credit Reporting Act disclosure statement and do hereby authorize **Northwestern Pritzker School of Law** by and through its independent contractor, **Re Vera Services, LLC** ("**Re Vera Services**"), to procure a consumer report and/or an investigative consumer report (i.e. application verification) on me. I understand that the findings of this report will be considered when finalizing my enrollment into the **Northwestern Pritzker School of Law** Program and further understand that this authorization and release shall be valid for subsequent consumer reports (i.e. application verification) during my period of attendance at **Northwestern Pritzker School of Law** for the purpose of application verification.

These above-mentioned reports may include, but are not limited to, information as to my character, general reputation, and personal characteristics, discerned through employment and education verifications (to include GPA); personal references; personal interviews; criminal background searches; verification of employment/salary history; verification of the content of my recommendations; and the identity of my recommenders.

I further authorize any person, business entity or governmental agency who may have information relevant to the above to disclose the same to **Northwestern Pritzker School of Law**, by and through **Re Vera Services**, including, but not limited to any and all courts, public agencies, law enforcement agencies and credit bureaus, regardless of whether such person, business entity or governmental agency compiled the information itself or received it from other sources.

I understand that I am entitled to a complete and accurate disclosure of the nature and scope of any investigative consumer report (i.e. application verification) of which I am the subject upon my written request to **Re Vera Services**, if such is made within a reasonable time after the date hereof. I also understand that I may receive a written summary of my rights under the Fair Credit Reporting Act.

If I am a resident or citizen of any country in the European Union ("E.U.") or any other country that has a data protection law; I consent to (a) the collection, processing and use of my personal data, including sensitive data, as stated above, for the purpose(s) described above and (b) to the transfer of such personal data from the E.U. or other country or countries to the United States of America. A data controller or data processor is entitled to rely on this consent for purposes related to procuring the consumer or investigative consumer report referenced above. I understand English fluently and am able to give this consent in English.

I understand that if I disagree with the accuracy of any information in the report, I may contact **the Admissions Office; admissions@law.northwestern.edu** at **Northwestern Pritzker School of Law** and **Re Vera Services** at **info@reveraservices.com**. I understand that if I provide notice to **Northwestern Pritzker School of Law** of my disagreement with the information in the report, after receipt of such notice, **Northwestern Pritzker School of Law** will not make a final decision on application for admission until I have had the opportunity to address any disagreement

FILED DATE: 1/11/2021 10:17 AM 2021CH00106

I might have with the accuracy of the report.

I hereby release **Northwestern Pritzker School of Law** and **Re Vera Services** from any and all claims, liabilities and damages which may result from the verification process and from my furnishing, or either party receiving or using my information in connection with processing my application, including without limitation, any damages that may result if it is revealed to my employer that I have applied to **Northwestern Pritzker School of Law** (whether or not I have requested a hold on verifying my employment). Notwithstanding the foregoing, I do not waive or release any rights that I may have under the Fair Credit Reporting Act or related applicable state law.

First Name:_____     Last Name:_____

Other Names used, if any_____

EMAIL: _____(PLEASE PRINT CLEARLY)

Signature:_____     Date:_____

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

# Exhibit 8



FILED DATE: 1/11/2021 10:17 AM 2021CH00106

Admissions and Financial Aid

July 18, 2018

Fahad Syed
4700 Old Orchard Road, Apt 309
Skokie, IL 60076

Dear Fahad:

This letter confirms that your admission to the JD program at Northwestern Pritzker School of Law has been deferred to the entering class of 2019.

You will retain your scholarship of $150,000 split evenly over the three years of the JD program at $50,000 per year.

We will retain your current file so no additional application steps will be necessary. However, I do wish to remind you of your continuing duty to update the admissions committee with regards to your application:

*"By signing this application, electronically transmitting it, or printing, signing, and mailing the Certification Letter, I certify that the information contained in this application is accurate and complete to the best of my knowledge. I will notify the Office of Admissions and Financial Aid promptly if any of this information changes. I understand that furnishing inaccurate or misleading information can result in denial of admission, revocation of admission and dismissal from the Law School, or revocation of an awarded degree, with no refund of tuition or expenses, and may be reported to the Law School Admission Council's Committee on Misconduct and Irregularities. If inaccurate or misleading information is discovered after an offer of admission is made, I will be given an opportunity to explain such information regarding an appropriate outcome- which may include revocation of admission and dismissal from the Law School, or revocation of an awarded degree- to the Dean of the Law School, who will render a final decision not subject to appeal."*

Your deferral deposits have been waived. However, you must notify the Law School of your intent to enroll for the 2019-2020 school year by emailing admissions@nlaw.northwestern.edu no earlier than January 1st, 2019 and no later than 5:00pm Central Daylight time on April 30th, 2019. Failure to notify of intent by the aforementioned deadline will result in a forfeiture of your admission and scholarship in its entirety.

If questions should arise during your deferral period, please feel free to contact us.

Northwestern Pritzker School of Law
375 East Chicago Avenue
Chicago, Illinois 60611-3069
Phone: 312.503.0785; Fax: 312.503.2518
www.law.northwestern.edu

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

Best wishes during the coming year.  We look forward to welcoming you to the JD Program at Northwestern Pritzker School of Law in Fall 2019.

Sincerely,

Johann H. Lee
Assistant Dean of Admissions and Financial Aid

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

| Time | Monday Sep 2 | Tuesday Sep 3 | Wednesday Sep 4 | Thursday Sep 5 | Friday Sep 6 |
|---|---|---|---|---|---|
| 8:30AM | | BUSCOM 510 - 2 Contracts Lecture 8:45AM - 9:40AM McCormick Hall 350 E Superior 195 Instructors: Bruce Markell | BUSCOM 510 - 2 Contracts Lecture 8:45AM - 9:40AM McCormick Hall 350 E Superior 195 Instructors: Bruce Markell | | |
| 9:00AM | | | | | |
| 10:00AM | | | | LAWSTUDY 540 - 6 Communication & Legal Reasoning Lecture 10:25AM - 11:50AM Arthur Rubloff Building 150 Instructors: Rebekah Holman | LAWSTUDY 540 - 6 Communication & Legal Reasoning Lecture 10:25AM - 11:50AM Arthur Rubloff Building 150 Instructors: Rebekah Holman |
| 11:00AM | PPTYTORT 550 - 2 Torts Lecture 10:55AM - 11:50AM Arthur Rubloff Building 150 Instructors: Emily Kadens | PPTYTORT 550 - 2 Torts Lecture 10:55AM - 11:50AM Arthur Rubloff Building 150 Instructors: Emily Kadens | PPTYTORT 550 - 2 Torts Lecture 10:55AM - 11:50AM Arthur Rubloff Building 150 Instructors: Emily Kadens | | |
| 12:00PM | | | | | |
| 1:00PM | LITARB 530 - 2 Civil Procedure Lecture 1:30PM - 2:25PM Arthur Rubloff Building 175 Instructors: Susan Provenzano | LITARB 530 - 2 Civil Procedure Lecture 1:30PM - 2:25PM Arthur Rubloff Building 175 Instructors: Susan Provenzano | LITARB 530 - 2 Civil Procedure Lecture 1:30PM - 2:25PM Arthur Rubloff Building 175 Instructors: Susan Provenzano | CRIM 520 - 2 Criminal Law Lecture 1:30PM - 2:55PM Arthur Rubloff Building 339 Instructors: Leonard Rubinowitz | CRIM 520 - 2 Criminal Law Lecture 1:30PM - 2:55PM Arthur Rubloff Building 339 Instructors: Leonard Rubinowitz |
| 2:00PM | | | | | |

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

# Exhibit 9

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

# CERTIFICATION OF DEATH RECORD

**SKOKIE HEALTH DEPARTMENT**
**SKOKIE, ILLINOIS**
**MEDICAL CERTIFICATE OF DEATH**

STATE FILE NUMBER  2019 0085514                          DATE ISSUED  11/18/2019

| DECEDENT'S LEGAL NAME | SEX | DATE OF DEATH |
|---|---|---|
| YASMIN SYED | FEMALE | OCTOBER 23, 2019 |

| COUNTY OF DEATH | AGE AT LAST BIRTHDAY | DATE OF BIRTH |
|---|---|---|
| COOK | 64 YEARS | MAY 24, 1955 |

| CITY OR TOWN | HOSPITAL OR OTHER INSTITUTION NAME |
|---|---|
| SKOKIE | 4700 OLD ORCHARD RD. #309 |

PLACE OF DEATH: DECEDENT'S HOME

| BIRTHPLACE | SOCIAL SECURITY NUMBER | STATUS AT TIME OF DEATH | SURVIVING SPOUSE/CIVIL UNION PARTNER'S MAIDEN NAME | EVER IN U.S. ARMED FORCES? |
|---|---|---|---|---|
| PAKISTAN | 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 | MARRIED BUT SEPARATED | JAVAID SYED | NO |

| RESIDENCE | APT. NO. | CITY OR TOWN | INSIDE CITY LIMITS? |
|---|---|---|---|
| 4700 OLD ORCHARD RD. UNIT 309 | | SKOKIE | YES |

| COUNTY | STATE | ZIP CODE | FATHER/CO-PARENT'S NAME PRIOR TO FIRST MARRIAGE/CIVIL UNION | MOTHER/CO-PARENT'S NAME PRIOR TO FIRST MARRIAGE/CIVIL UNION |
|---|---|---|---|---|
| COOK | IL | 60076 | | |

| INFORMANT'S NAME | RELATIONSHIP | MAILING ADDRESS |
|---|---|---|
| SOPHIA SYED | DAUGHTER | 5629 CAROL AVE, MORTON GROVE, IL 60053 |

| METHOD OF DISPOSITION | PLACE OF DISPOSITION | LOCATION: CITY OR TOWN AND STATE | DATE OF DISPOSITION |
|---|---|---|---|
| BURIAL | ROSEHILL CEMETERY | CHICAGO, IL | OCTOBER 24, 2019 |

FUNERAL HOME: MUSLIM FUNERAL SERVICES, 4380 NORTH ELSTON AVENUE, CHICAGO, IL 60641

| FUNERAL DIRECTOR'S NAME | FUNERAL DIRECTOR'S ILLINOIS LICENSE NUMBER |
|---|---|
| SULEMAN FIRDAUSI | 034016708 |

| LOCAL REGISTRAR'S NAME | DATE FILED WITH LOCAL REGISTRAR |
|---|---|
| CATHERINE COUNARD | OCTOBER 30, 2019 |

CAUSE OF DEATH  PART I.  METASTATIC OVARIAN CANCER

IMMEDIATE CAUSE (Final disease or condition resulting in death) ... Due to (or as a consequence of): ... Due to (or as a consequence of): ... Due to (or as a consequence of):

APPROXIMATE INTERVAL BETWEEN ONSET AND DEATH

PART II. Enter other significant conditions contributing to death but not resulting in the underlying cause given in PART I.

| WAS AN AUTOPSY PERFORMED? | NO |
|---|---|
| WERE AUTOPSY FINDINGS USED TO COMPLETE CAUSE OF DEATH? | N/A |

| FEMALE PREGNANCY STATUS | MANNER OF DEATH |
|---|---|
| UNKNOWN | NATURAL |

| DATE OF INJURY | TIME OF INJURY | PLACE OF INJURY | INJURY AT WORK? |
|---|---|---|---|

LOCATION OF INJURY

DESCRIBE HOW INJURY OCCURRED:                    IF TRANSPORTATION INJURY, SPECIFY:

| ATTEND THE DECEASED? | DATE LAST SEEN ALIVE | WAS MEDICAL EXAMINER OR CORONER CONTACTED? | DATE PRONOUNCED | TIME OF DEATH |
|---|---|---|---|---|
| YES | UNKNOWN | NO | | 08:00 AM |

| CERTIFIER | DATE CERTIFIED |
|---|---|
| PHYSICIAN | OCTOBER 24, 2019 |

| NAME, ADDRESS AND ZIP CODE OF PERSON COMPLETING CAUSE OF DEATH | PHYSICIAN'S LICENSE NUMBER |
|---|---|
| MOHAMMAD SIDDIQUI, 9669 N KENTON AVE SUITE 305, SKOKIE, ILLINOIS, 60076 | 036093190 |

This is to certify that this is a true and correct copy from the official death record filed with the Illinois Department of Public Health.

Catherine A. Counard, M.D., M.P.H.
Local Registrar/Director of Health

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

# Exhibit 10

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

## Interment Order and Authorization

IOA0306302786
HMIS Case ID 39433368S

| Contract No. 030640002848 | Interment No. | Date (mo/day/year) 10  23  2019 |
|---|---|---|

No interment shall take place until a written authority, signed by the proper relative or legal representative of the deceased, has been given to the Cemetery performing the interment. The undersigned hereby request and authorize:

Name/Local of Cemetery
**Roschill Cemetery / 0306**

In accordance with and subject to its rules and regulations to inter the remains of:

| Name of Decedent (LAST) (First) (Middle) SYED, Yasmin | Age 64 | Sex ☑ F ☐ M |
|---|---|---|

| Birthdate (mo/day/year) 05/24/1955 | Date of Death (mo/day/year) 10/23/2019 | Veteran ☐ Yes ☑ No |
|---|---|---|

| Property Owner (Last) (First) (M.I.) LMCC | | Interment Space (describe) Section: 23 Lot: 96 Grave: 8 |
|---|---|---|

| Descriptor ☑ Lot | ☐ Lawn Crypt | ☐ Mausoleum | ☐ Niche | ☐ Other |
|---|---|---|---|---|

| Funeral Home Muslim Funeral Services | Director Haroon | Telephone Number (773) 774-3333 |
|---|---|---|
| Funeral Home Address 6471 N NORTHWEST HWY. | City CHICAGO | State/Province IL   Zip/Postal Code 60631-1451 |
| Place of Funeral Service | Day | Date (mo/day/year)   Time of Service ☐ AM ☐ PM |
| Place of Cemetery Service Graveside | Day Thursday | Date (mo/day/year) 10/24/2019   Time of Service 2:30 ☐ AM ☑ PM |

Committal Setup Instructions

| Outer Burial Container Description 29 Graveliner | Manufacturer | Provided By |
|---|---|---|
| Memorial Description | Manufacturer | Provided By RCC |
| Casket/Urn Description Cardboard Casket | Manufacturer | Provided By F.H |

REMARKS   Standard Muslim Service

| Interment Fee | 0.00 | Acknowledgement of Visual Inspection of Interment Rights: | |
|---|---|---|---|
| Overtime Charges | 0.00 | Printed Name Mohammed Hussain | Date 10/23/2019 |
| Other Charges | 0.00 | Family Verification Signature | |
| Total | 0.00 | | |

The undersigned hereby certify that they are the next-of-kin of the above named Deceased, or otherwise have the full legal authority to direct the interment, entombment or inurnment of the remains of the Deceased, and hereby authorize the above-named cemetery to make disposition of the remains of the Deceased as indicated above.

The undersigned hereby further certify and represent that they are the owner(s) or authorized representative(s) of the owner(s) of the above-described Interment Rights and hereby authorize use of the said Interment Rights for the interment, entombment or inurnment of the remains of the Deceased. Cemetery is hereby authorized to install any outer burial container purchased in connection with this interment in the interment space described herein.

The undersigned agree to indemnify and hold harmless the cemetery, its affiliates, and their respective agents, shareholders, officers, directors and employees from any and all losses, costs, or liability, including reasonable attorney's fees, it or any of them may sustain in connection with any misrepresentations, misstatements, negligence, immaterial acts or misconduct by the undersigned as it relates to the interment, entombment or inurnment authorized hereunder. The undersigned agree that, at its own expense, the cemetery has the right to correct any error in the interment, entombment, or inurnment.

**This form must be signed by (a) the property owner AND (b) the closest next-of-kin**

| Authorized Representative Signature | Date | Print Name | Son Relationship |
|---|---|---|---|
| Address 5629 Carol Ave | City Morton Grove | IL   60053 State/Province   Zip/Postal Code | 312-303-3736 Telephone Number |
| X Authorized Representative Signature | Date | Syed, Javaid Print Name | Husband Relationship |
| Address 5629 Carol Ave | City Morton Grove | Illinois   60053-3152 State/Province   Zip/Postal Code | (312) 303-3736 Telephone Number |
| Authorized Representative Signature | Date | Print Name | Relationship |
| Address | City | State/Province   Zip/Postal Code | Telephone Number |

**OFFICE USE ONLY**

| IOA Prepared By Signature | Date | Interment Card Recorded By Signature | Date |
|---|---|---|---|
| IOA Info Verified By Signature | Date | Property Book Recorded By Signature | Date |
| Site Layout By Signature | Date | Property Card Recorded By Signature | Date |
| Superintendent's Verification Signature | Date | Master Map Recorded By Signature | Date |
| Interment ID Placed By Signature | Date | Interment Log Recorded By Signature | Date |

| ITEM | CONTRACT # | PRODUCT CODE # | HMIS PROCESS DATE | ITEM | QTY | CONTRACT# | PRODUCT CODE# | STORED Y/N | HMIS PROCESS DATE |
|---|---|---|---|---|---|---|---|---|---|
| CSKT/ALT/C | | | | VAULT | | | | | |
| INTR | | | | URNS | | | | | |
| CRMP | | | | MISC | | | | | |
| PROP | | | | MSRV | | | | | |

| Section | Block / Level |
|---|---|
| Lot / Row | Space / Crypt / Niche |

(Locaistio) Completed by _____ Date _____

(Processing) Completed by _____ Date _____

GEN-8022 (10/19/2018)

# EXHIBIT B – TAB 7

FILED
1/11/2021 10:17 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH00106

11775023

FILED DATE: 1/11/2021 10:17 AM  2021CH00106

# Exhibit 45

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

# Exhibit 46

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

# Exhibit 47



## UNITED STATES DEPARTMENT OF EDUCATION
### OFFICE FOR CIVIL RIGHTS

230 SOUTH DEARBORN, 37TH FLOOR
CHICAGO, IL 60604

**REGION V**
ILLINOIS
INDIANA
IOWA
MINNESOTA
NORTH DAKOTA
WISCONSIN

October 15, 2020

Mr. Fahad Syed
244 E Pearson Street, Apt 711
Chicago, IL 60611

VIA E-MAIL ONLY to:  syed.216@gmail.com

OCR Case No. 05-20-2444
Northwestern University

Dear Mr. Syed:

On August 27, 2020, the U.S. Department of Education (Department), Office for Civil Rights (OCR) received the complaint you filed against Northwestern University (University) alleging discrimination on the bases of disability, sex, and race, and also alleging retaliation.

OCR enforces Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d - 2000d-7, and its implementing regulation at 34 C.F.R. Part 100. Title VI prohibits discrimination on the basis of race, color or national origin in programs or activities that receive federal financial assistance. In addition, OCR is responsible for enforcing Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. §§ 1681–1688, and Title IX's implementing regulation, 34 C.F.R. Part 106. Title IX prohibits discrimination on the basis of sex in any education program or activity operated by a recipient of Federal financial assistance (FFA) from the Department. OCR also enforces Section 504 of the Rehabilitation Act of 1973 (Section 504), 29 U.S.C. § 794, and its implementing regulation at 34 C.F.R. Part 104. Section 504 prohibits discrimination on the basis of disability by recipients of Federal financial assistance. Title VI, Title IX, and Section 504 also prohibit retaliation. As a recipient of Federal financial assistance from the Department, the University is subject to these laws. OCR therefore has jurisdiction over this complaint. Additional information about the laws OCR enforces is available online at www.ed.gov/ocr.

OCR has begun the process of evaluating your complaint in accordance with its *Case Processing Manual* (CPM) to determine whether to open an investigation. Pursuant to the CPM, for OCR to establish jurisdiction over a claim of discrimination, race, sex, or retaliation, the complaint must provide sufficient detail (i.e., who, what, where, when, how) for OCR to infer that discrimination or retaliation may have occurred or is occurring, and that any such allegation was filed timely or qualifies for a waiver of the applicable timeliness requirements.

Currently, your allegations regarding race discrimination and retaliation lack sufficient detail for OCR to infer that discrimination and/or retaliation occurred or is occurring. In order for OCR to evaluate your complaint, please provide the following information by **October 29, 2020:**

The Department of Education's mission is to promote student achievement and preparation for global competitiveness
by fostering educational excellence and ensuring equal access.

www.ed.gov

FILED DATE: 1/11/2021 10:17 AM 2021CH00106



1. Regarding your allegation of retaliation:
   a. State the date you first notified the University that you filed a complaint against it with an outside entity. 9/3/20 Informal Notification, 9/13/20 Formal Notification
   b. State the basis of your complaint (i.e., discrimination based on sex, race, disability, etc.) Disability, Color, Race, Religion, National Origin, Sex
   c. State the date the University contacted your therapist. If you are not aware of the date the University contact your therapist, state the date you first became aware that the University contacted your therapist. 9/15/20, 9/21/20
   d. State how your therapist notified you that the University had been in contact with him? If the notification was sent in writing or by email, while not required at this time, it would be helpful if you provide us a copy of the notification.

He sent me an email informing me of Chin contact on 9/15/20, around 9/21/20 he verbally told me about Dugo contact.

2. Regarding your allegation of race discrimination:
   a. State your race. Non-White, Asian, Middle-Eastern

3. Regarding your filing with the Illinois Department of Human Rights (IDHR), while not required at this time, it would be helpful if you provide us with the following information:
   a. State whether you have an open complaint with IDHR. If so, state the allegations of that complaint. Yes, I was illegally evicted for threat from perceived disability, religion, and national origin
   b. Documents pertaining to IDHR's decision to investigate your complaint.
      Attached

For any act of alleged discrimination that occurred more than 180 days before the date you filed your OCR complaint (i.e., any acts before February 29, 2020), please state whether you are requesting a waiver of OCR's timeliness requirement and the specific reason for your waiver request. Yes, because prior to being suspended again, I was seeking to redress these issues through the administrative channels of the university, as evidenced by the large volume and number of complaints I filed.

Pursuant to Section 108 of OCR's CPM, if OCR does not receive the above-requested information within 14 calendar days from the date of this letter (on or before October 28, 2020), OCR may dismiss your complaint.

If you have any questions or need assistance, please contact Christopher Farrelly, at (312)730-1629 or at Christopher.farrelly@ed.gov.

Sincerely,

Marcela Sánchez Aguilar

Marcela Sanchez-Aguilar
Supervisory Attorney

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

# Exhibit 48

FILED DATE: 1/11/2021 10:17 AM    2021CH00106

**From:** Fahad Syed fahad-syed@law.northwestern.edu
**Subject:** Fwd: [External] ROI Form Signed -Fahad Syed #20-030-9015 - Northwestern University Discrimination Case
**Date:** September 3, 2020 at 7:45 AM
**To:** Lucas Christain lucas.christain@northwestern.edu

Hi Lucas,

These are the two people working on my investigative team. All of us seem to think that I have a valid point, despite what the university and the appeal board thinks. I appreciate your time and attention to this matter.

Thanks,

Fahad Syed

> Begin forwarded message:
>
> **From:** Fahad Syed <syed.216@gmail.com>
> **Subject: Re: [External] ROI Form Signed -Fahad Syed #20-030-9015 - Northwestern University Discrimination Case**
> **Date:** September 2, 2020 at 1:26:20 PM CDT
> **To:** "Polk, Jeremy" <Jeremy.Polk@illinois.gov>, "Brown, Venus" <Venus.Brown@Illinois.gov>
> **Cc:** Fahad Syed <syed.216@gmail.com>
>
> Good Morning,
>
> I want to start by addressing Ms. Brown in this email. I am writing you this email so that I can introduce you to Jeremy Polk and we can all be on the same page regarding the subject matter of the case here, and all of the players that are currently involved with the investigation of my case. Jeremy is a subject matter specialist regarding the disability discrimination subject matter for my case, in particular the portion covering my involuntary admission at Northwestern Memorial Hospital from 11/1/29-11/7/19. He has given me consent to provide you with his contact information so that you can reach out to him regarding any questions you may have regarding my case:
>
> 1. Jeremy Polk is an investigator from the Illinois Guardianship and Advocacy Association who is assisting me with investigating the legality of my involuntary admission to Northwestern Memorial Hospital from 11/1/19-11/7/19. He is going to be composing a report with all of the infractions committed by Northwestern Memorial Hospital for the admission, and it will be a central piece of evidence supporting my disability discrimination claim against the school.
>    - Right now, we are both of the same understanding: The admission to the hospital was illegal.
>    - This email thread contains a good overview of the subject matter of the report.
>
> I also want to let both of you know that am currently in the process of securing the assistance of an investigator from the Department of Education. Attached is my complaint. I want to take this time to thank both of you deeply for your time and assistance during this time, it has been extremely difficult and I appreciate your assistance so much.
>
> Sincerely,
>
> Fahad Syed



Office for Civil
Rights...CR.pdf

> On May 28, 2020, at 3:02 PM, Fahad Syed <syed.216@gmail.com> wrote:
>
> Hi Jeremy,
>
> Sorry I missed our call, I just wanted to bring up a few additional points for your review. I really appreciate your help with all this.
>
> 1. 3-601(b)(2): There were no relatives of contacts listed and no steps listed to contact any relatives. My sister Sophia lives in Evanston and brother Rizwan lives in Skokie. My sister works for Evanston PD and I think that Northwestern University Hospital should have reasonably been able to find that out.

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

**2.** 3-601(b)(1): Again, please make sure they are as specific as possible regarding the acts supporting "threat" including the time and place of occurrence.

3. 3-606: States that a peace officer must sign the petition if brought in by peace officer. Please make sure to note the half filled out petition from Healy, which proves I was brought in by a peace officer. Then, please make sure to ask why the staff knowingly falsified this information by failing to include the arresting officer #22 information.

    **-The last page of the petition for commitment, above the signature signs states that falsification of any part of the petition is a Class A misdemeanor.**

4. 3-704(a-5): I was never asked if I wanted someone notified of my detention and no effort was made to contact anyone.

4. 3-608: I was forced to take psychotropic medication even though I have the right to refuse, and I posed no threat to myself or anyone.

5. 3-205.5 : I was never offered any other means of treatment, and I was supposed to be given preference to treatment allowing me to go home.

6. 2-201(a): I was never offered a least restrictive environment of treatment, which would have been my home.

7. 2-102(b): I should have been able to choose my religion as my only treatment plan, but I was forced to partake in group activities and yoga in order to be released.

    **- I was forced to take psychotropic medicine, which is against my religion because it contains opioids.**

Thank you again for all your help.

Sincerely,

Fahad Syed

On May 27, 2020, at 12:47 PM, Polk, Jeremy <Jeremy.Polk@illinois.gov> wrote:

I can be available tomorrow at 10:00 am.  Does this work?

**From:** Fahad Syed <syed.216@gmail.com>
**Sent:** Wednesday, May 27, 2020 12:40 PM
**To:** Polk, Jeremy <Jeremy.Polk@illinois.gov>
**Subject:** Re: [External] ROI Form Signed -Fahad Syed #20-030-9015

Hey Jeremy,

That is great news. Please let me know if you have time for a quick call regarding the concerns which I expressed in my previous email.

With reference to the previous points 1-4 which I mentioned in my earlier email, I would really appreciate it if you placed particular emphasis on points #2 and #4.

#2- about the ***knowing falsification*** of the petition with regards to a peace officer bringing me in, is particularly important not only because it is a class c misdemeanor, but more importantly because the combination of the half filled out petition for commitment from Healy #22 in conjunction with the false information in the petition will also me to state a claim for conspiracy against civil rights, which involves two or

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

more individuals working together to falsely imprison someone. This will not only allow me to sue for damages for conspiracy, but will also allow me to have Healy fired and arrested, along with the nurse who filled out the petition.

#4- which I mentioned **(3-601 b(2) - listing relatives and steps taken to contact relatives**) has been particularly important in legal proceedings and has been the deciding factor in numerous court decision which determined the legality of involuntary civil commitment proceedings. As such it may well end up being one of the main considerations which allow me to sue for false imprisonment and associated damages based off your report when I file my law suit. Please make sure to press this issue and detail this violation of 3-601 b(2) as clearly and specifically and extensively as possible in your report.

Thanks,

Fahad Syed

> On May 27, 2020, at 11:50 AM, Polk, Jeremy <Jeremy.Polk@illinois.gov> wrote:

> I have received the medical records.

> **From:** Fahad Syed <syed.216@gmail.com>
> **Sent:** Tuesday, May 26, 2020 8:46 AM
> **To:** Polk, Jeremy <Jeremy.Polk@illinois.gov>
> **Subject:** Re: [External] ROI Form Signed -Fahad Syed #20-030-9015

> Hi Jeremy,

> I wanted to reach out to you to make sure that I was able to present the following additional concerns about my case to you for your investigation.

> 1. I wanted to make sure that during the course of your investigations regarding the appropriateness of the certifications which were made after I had been sedated with 10 MG of psychotropic medication against my will when I had presented no threat to the physical safety of any of the staff, that you made a specific point of asking the staff: how they believed that I was in an appropriate state of mind to be certified and informed of my rights when they sedated me ***after having had full knowledge that I had not slept for approximately 2-3 days at that point.***

> 2. Why the hospital staff ***KNOWINGLY FALSIFIED*** information on the petition with regards to me being brought in by a peace officer. Falsification of information on that petition is a class C misdemeanor.

> 3. In accordance with 3-601 b(1): Please make sure to ask the staff to clearly and precisely articulate what exact behavior they deemed was a

"threat" to the safety of myself or others. This is so that I can make sure that there is a direct connection drawn between the false allegations which NU PD officer #22 Healy made with regards to my behaviors and actions, so that I can use that information in the lawsuit I am planning on filing.

4. **Violation of 3-601 b(2)**: Please make sure to inquire why no effort was was made to contact my relatives or next of kin, and no steps were described in the petition. This is against the law and multiple law suits have been filed in previous years for this exact reason.
 3-601 (b)
Sincerely,

Fahad Syed

On Apr 20, 2020, at 2:58 PM, Polk, Jeremy <Jeremy.Polk@illinois.gov> wrote:

Your release s sufficient but we have one that we typically use. I will email it later today. I will present the case at the next meeting.

-----Original Message-----
From: Fahad Syed <syed.216@gmail.com>
Sent: Monday, April 20, 2020 1:50 PM
To: Polk, Jeremy <Jeremy.Polk@illinois.gov>
Subject: Re: [External] ROI Form Signed -Fahad Syed #20-030-9015

Hi Jeremy,

Can you inquire if it is possible to move forward using the ROI form that I attached to this email? I looked over the two forms and do not see any substantial differences, and the ROI form that I just sent you is the standard one for NMH. I sent the request to NM medicine, and you should be receiving the records from them shorty via fax.

Also, if you determine that the release I have sent you is unacceptable, can you please email me a version of the release instead of mailing it? It would be much easier and faster for me to return the form.

Thanks,

Fahad Syed

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

On Apr 20, 2020, at 12:55 PM, Polk, Jeremy <Jeremy.Polk@illinois.gov> wrote:

Good afternoon,

I did receive a voicemail from you today. I am unsure as to how it did not ring. All call are forwarded from my office phone to my work cell. I forwarded you some months back a release that the HRA utilizes. Due to COVID-19 I will re-mail a new release out on Wednesday of this week. Our next scheduled meeting is May 5th. If our release is received by then I will be sure to have the HRA vote on this case for opening or closure.

Best,

JP

-----Original Message-----
From: Fahad Syed <syed.216@gmail.com>
Sent: Monday, April 20, 2020 12:39 PM
To: Polk, Jeremy <Jeremy.Polk@illinois.gov>
Cc: Fahad Syed <fahadsyed2021@nlaw.northwestern.edu>
Subject: [External] ROI Form Signed -Fahad Syed #20-030-9015

Hi Jeremy,

I left you a message today regarding my case, I have attached a release and also sent the request to NM medicine. Please give me a call back at 773-564-0325 at your earliest convenience.

Thanks,

State of Illinois - CONFIDENTIALITY NOTICE: The information contained in this communication is confidential, may be attorney-client privileged or attorney work product, may constitute inside

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

or attorney work product, may constitute inside information or internal deliberative staff communication, and is intended only for the use of the addressee. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately by return e-mail and destroy this communication and all copies thereof, including all attachments. Receipt by an unintended recipient does not waive attorney-client privilege, attorney work product privilege, or any other exemption from disclosure.

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

# Exhibit 49

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

**From:** **Fahad Syed** fahad-syed@law.northwestern.edu
**Subject:** Fwd: Your recent messages
**Date:** September 3, 2020 at 9:05 AM
**To:** Brian Tobin nbriantobin@gmail.com, Colleen M Johnston colleen.johnston@northwestern.edu, Susan Michelle Spies Roth susan-rolh@law.northwestern.edu, Amanda DaSilva amanda.dasilva@northwestern.edu, Lucas Christain lucas.christain@northwestern.edu, Mona.Dugo@northwestern.edu

Hi All,

I wanted to take a chance to see if it was possible for the transcript of the chat to be sent to my mental health therapist? His name is Brian Tobin. I think it would be helpful for our upcoming sessions for him to know exactly what happened for me to be suspended. I would, of course, agree to any stipulations. Please let me know if this is possible.

Thanks,

Fahad Syed

> Begin forwarded message:
>
> **From:** Colleen M Johnston <colleen.johnston@northwestern.edu>
> **Subject: Your recent messages**
> **Date:** September 2, 2020 at 4:08:57 PM CDT
> **To:** Fahad Syed <fahad-syed@law.northwestern.edu>
> **Cc:** Amanda DaSilva <amanda.dasilva@northwestern.edu>

Dear Fahad,

I have now had a chance to review your messages and wanted to follow up on what you've written. Amanda will be in contact with you soon about your recent concerns involving other law students and the outcome of the initial inquiry of your report. In terms of your concerns regarding Student Conduct's handling of the November 2019 incident, you previously corresponded with Karen Tamburro about these matters. Karen's email responding to that report appears below. As to your concerns about the interim suspension, I would encourage you to follow up with Interim Dean of Students Mona Dugo about those concerns. In terms of your complaint about the police, I would encourage you to follow up with Deputy Chief Eric Chin to discuss that investigation.

Best,
Colleen

**Colleen Johnston** *(she/her/hers)*
Interim Assistant Vice President for Equity
Director, Sexual Misconduct Response and Resources
Title IX Coordinator
Office of Equity
**Northwestern University**
1800 Sherman, Suite 4-500
Evanston, IL 60208
colleen.johnston@northwestern.edu
847.491.3881

---

**From:** Karen E Tamburro
**Sent:** Monday, January 27, 2020 5:41 PM
**To:** Fahad Syed <FahadSyed2021@nlaw.northwestern.edu>
**Subject:** Complaint Involving Student Disciplinary Hearing: Initial Inquiry

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

Dear Fahad,

I am in receipt of your complaints involving the student conduct process. Based on the reports that I received I understand that you are filing a complaint on the basis of Race, Color, Religion, National Origin, Sex, Age and Disability. Our Office reviewed your complaints through its initial inquiry process. You can read more about that process here: https://www.northwestern.edu/equity/policies-procedures/policies/discrimination-harassment-policy-resources-procedures-final.pdf

Our Office determined it will not proceed to further investigation on your complaints as you provided insufficient information to suggest that a violation of the Policy on Discrimination and Harassment occurred.

The basis for this decision follows.

Your various reports name the following as potential respondents: Christine DePilla, Todd Adams,                   REDACTED                and      REDACTED      You also submitted materials identifying the "Student Conduct," NUPD, and personnel within Northwestern Memorial Hospital (Jeremy Banker and Eugene Lozza).

Please be advised that with respect to the bases you identified (race, color, religion, national origin, sex, age and disability), the jurisdiction of the Office of Equity is limited to complaints and concerns made against employees of Northwestern University. Accordingly, our office cannot proceed as to any of your complaints against Northwestern students,                   REDACTED                        . Your claims against those individuals are referred to Student Conduct for handling.

With regard to  REDACTED  and the personnel from Northwestern Memorial Hospital (Banker and Lozza), our office does not retain jurisdiction over these individuals as they are not employees of the University. Accordingly, our office will take no further action with respect to those individuals.

With regard to your claims against "NUPD," you did not identify any specific respondent, or further, how any actions taken by "NUPD" constituted discrimination because of one of the categories you identified. For example, you did not provide information suggesting that others outside of your protected category were treated more favorably by "NUPD". As such, our office cannot proceed as to your claims against "NUPD."

With respect to Ms. DePilla and Mr. Adams, you suggest that they engaged in discrimination because they failed to take your disability status into account in the disciplinary process. As to Mr. Adams, he did not have a role in the disciplinary hearing. Therefore, OE does not have sufficient information to proceed as to your claims against Mr. Adams. With respect to Ms. DePilla, OE construes your allegation as one of a failure to accommodate your identified disabilities. However, you supplied no information suggesting that you sought, and, thereafter, Ms. DePilla denied you an accommodation, with regard to your disability in the disciplinary process. Therefore, OE does not have sufficient information to proceed to an investigation on this particular claim.

OE also considered whether Ms. DePilla treated you differently in the hearing process

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

OE also considered whether Ms. DePilla treated you differently in the hearing process because of your identified protected statuses (race, color, national origin, religion, sex, age and disability status).  However, none of the information you supplied suggested that any of these categories were a factor in the decision.  None of the information you provided in support of your allegations indicated that others outside of your protected category are treated preferentially in the disciplinary process.

You indicate your belief that Ms. DePilla would believe your account if you were a white female accusing someone of sexual assault.  In other words, you suggest that Ms. DePilla would credit your version of events if you were a white female.  Notably, the witnesses present in this matter share many of your identities.  More salient, however, is that race, national origin, color sex, age, religion and disability were not factors in determining the outcome.  Rather, Ms. DePilla relied on the totality of all witness statements, which included your differing accounts of what transpired.

In sum, the information you provided is insufficient to suggest that the identified protected categories were factors in your disciplinary process.  As such, the Office of Equity will take no further action on your complaints.

I will notify Student Conduct of your concerns involving the identified students.

This concludes OE's review of this matter.  I understand this is not the outcome you would have liked and may be difficult for you to read.  I encourage you to connect with resources as needed to receive any support.

Take care,

Karen


**Karen E. Tamburro**
**Director, Equal Opportunity and Access**
**Office of Equity**
Northwestern University
1800 Sherman Ave., Suite 4500
Evanston, IL 60208
karen.tamburro@northwestern.edu
O: 847.491.6697
F: 847.467.0698
(*she/her/hers*)

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

# Exhibit 50

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

**From:** **Fahad Syed** fahadsyed2021@nlaw.northwestern.edu
**Subject:** Re: Interview Request
**Date:** September 13, 2020 at 1:49 PM
**To:** Lucas Christain lucas.christain@northwestern.edu, **Office of Equity** equity@northwestern.edu
**Cc:** Amanda DaSilva amanda.dasilva@northwestern.edu, **Heather Wakefield Cohen** heather.cohen@northwestern.edu,
Puja Singh Patel puja-patel@law.northwestern.edu, **Ish Faith Orkar** ish@northwestern.edu

Hello,

That is fine. I mentioned previously that the Illinois Guardianship and Advocacy Commission is investigating my case, along with the Illinois Department of Human Rights and the Department of Education. I'll make sure they hear about this.

I want to be perfectly clear here for the record:

1. This email serves as notification that University is unlawfully retaliating against me from reporting ADA disability discrimination and harassment from 11/1/19 report.

2. The University has failed address my legitimate concerns of bias and discrimination with regards to being unfairly subject to adjudication by an individual who participated in my unlawful harassment. [Heather Cohen]

Sincerely,

Fahad yed

> On Sep 13, 2020, at 9:26 AM, Lucas Christain <lucas.christain@northwestern.edu> wrote:
>
> Fahad,
>
> The behaviors being evaluated are yours, against the policies and expectations outlined in writing in the handbook, the communication from Christine DePilla, and the coversheet of the investigative report. The UHAS process asks for an objective evaluation of those behaviors. Your points do not substantiate a conflict of interest that can prevent that from happening.
>
> I am not going to argue with you. Have a good day.
>
> Sincerely,
>
> Lucas
>
>> On Sep 13, 2020, at 9:15 AM, Fahad Syed <fahadsyed2021@nlaw.northwestern.edu> wrote:
>>
>> Hi Lucas,
>>
>> My apologies for the confusion, but can you just clarify how we are supposed to evaluate a situation fairly where a hearing officer is one of the two people that was involved in a meeting during which the evidence which I am presenting-the verbal and undocumented instructions which were given during that meeting-directly relate to one of the charges I am now facing?
>>
>> I don't logically see how that evidence can be fairly evaluated by an individual who is already denying that those verbal authorizations occurred, and is also responsible for evaluating that evidence for accuracy in an impartial manner.
>>
>> Please advise.
>>
>> Thanks.
>>
>> Fahad Syed
>>
>>> On Sep 13, 2020, at 9:03 AM, Lucas Christain <lucas.christain@northwestern.edu> wrote:
>>>
>>> Fahad,
>>>
>>> There is no conflict of interest associated with Heather's role as an investigator. Your alleged actions to share a confidential document can and will be evaluated fairly against the preponderance of evidence.
>>>
>>> Heather will remain one of two investigators on this case.
>>>
>>> Sincerely,
>>>
>>> lucas
>>>
>>> Sent from my iPhone
>>>> On Sep 13, 2020, at 7:14 AM, Fahad Syed <fahadsyed2021@nlaw.northwestern.edu> wrote:

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

On Sep 13, 2020, at 7:14 PM, Fahad Syed <fahadsyed2021@nlaw.northwestern.edu> wrote:

Hi Lucas,

My apologies, I just wanted to briefly clarify my last message: At this time "Heather Cohen" presents a direct conflict of interest with serving as my UHAS officer for the following violation:

"You are alleged to have shared copies of documents from a UHAS hearing related to a November 1, 2019 incident (e.g., investigative report, outcome letter, appeal outcome) with one or more individuals without authorization. Additionally, it has been alleged that this occurred after you were instructed by the Office of Community Standards that these documents and the information included in them is confidential and not to be shared outside of the student conduct process."

This is due to her [Cohen's] role as a witness to the explicit verbal authorization statements made by DePilla during my UHAS hearing on 12/9/90.

Please Advise.

Thanks,

Fahad Syed

On Sep 11, 2020, at 9:51 PM, Fahad Syed <fahadsyed2021@nlaw.northwestern.edu> wrote:

Hi Lucas,

It came to my attention today that there is a conflict of interest regarding one of the charges against me, specifically with respect to my sharing of UHAS hearing materials with law enforcement, given their explicit nature as evidence of crimes that were committed against me such as targeting based on my disabilities and misplaced concerns about my "mental heath" as was detailed in the reports.

Specifically there is an email from Christine DePilla dated 12/15/19 which directed me not to share information in the report until the hearing was over, and then in a 12/19/20 meeting Christine explicitly authorized me to share the details to the crimes committed against me to law enforcement. However, the meeting was not recorded. Heather was a witness to these statements and as such presents a conflict of interest with respect to the charge about sharing the UHAS reports.

Can you please advise on whether I can change hearing officers from Heather for that specific charge?

Thanks,

Fahad Syed

On Sep 4, 2020, at 3:01 PM, Heather Wakefield Cohen <heather.cohen@northwestern.edu> wrote:

Dear Fahad,

We should only need 90 minutes of that time. Let's begin at 2:30 pm, and that will give us a flexibility should we need additional time.

All my best,
Heather

**From:** Fahad Syed <fahadsyed2021@nlaw.northwestern.edu>
**Sent:** Friday, September 4, 2020 2:49 PM
**To:** Heather Wakefield Cohen <heather.cohen@northwestern.edu>
**Cc:** Ish Faith Orkar <ish@northwestern.edu>; Puja Singh Patel <puja-patel@law.northwestern.edu>
**Subject:** Re: Interview Request

Hi Ms. Cohen,

Can we schedule the Friday, September 11th, 2-5pm? My advisor is Puja Patel (copied) and she has confirmed that this time works with her as well. I'll look forward to meeting with you and Ish then. I appreciate your time and attention to

FILED DATE: 1/11/2021 10:17 AM    2021CH00106

forward to meeting with you and Ish them. I appreciate your time and attention to this matter.

Sincerely,

Fahad Syed

On Sep 4, 2020, at 2:22 PM, Heather Wakefield Cohen <heather.cohen@northwestern.edu> wrote:

Dear Fahad,
Good afternoon; I hope this email finds you doing well.  My name is Heather Cohen, and I serve as an Assistant Director of Community Standards. My colleague Ish Orkar, cc'd here, is a Senior Equity Specialist in the Office of Equity.
I understand that you met with Amanda DaSilva, Associate Director, Equity and Title IX Compliance, last week and that she notified you of our investigation and your resources. My understanding is that you are prepared to me with myself and my co-investigator Ish Orkar. I would suggest we hold a 90 minute block, given the allegations under review.
Ish and I currently have the following time available for this purpose:
 ꞏ   Friday, September 11, 2-5 pm
 ꞏ   Monday, September 14, 12:30-2 pm
 ꞏ   Tuesday, September 15, 2:30-5 pm
Would you let us know what might work for you and your advisor in this regard? Please know that Ish and my schedules can change rapidly; if possible, please provide as broad a range as possible for your availability. If you have conflicts for these times, please let us know of alternative availability that you have, even for different days. Once we finalize a time I will send you a Teams calendar invite. We hope that you will find a private space to participate in this meeting. If during our meeting you have a concern for your privacy please let me know you would like to stop and reschedule the session. Out of respect for your privacy, the privacy of those involved in the investigation, and based on University policy and procedures, we will not continue an interview in the presence of another person.
Once you confirm a time that works and your advisor name,
Please also feel free to let us know of any questions you have.
Sincerely,
Heather

**Heather W. Cohen**
Assistant Director, Community Standards
*Preferred Pronouns:  She/Her/Hers*

**Northwestern University**
038 Scott Hall
601 University Place
Evanston, IL 60208

FILED DATE: 1/11/2021 10:17 AM   2021CH00106



Evanston, IL 60208
(847) 467-5072
heather.cohen@northwestern.edu
www.northwestern.edu/communitystandards/

*In the spirit of healing, we acknowledge and honor the Potawatomi, Odawa and Ojibwe Tribes, the original people of the land upon which Northwestern University stands.*

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

# Exhibit 51

FILED DATE: 1/11/2021 10:17 AM  2021CH00106

**From:** **Brian Tobin** nbriantobin@gmail.com 🔗 🚩
**Subject:** Re: Voicemail
**Date:** October 27, 2020 at 9:40 AM
**To:** Fahad Syed syed.216@gmail.com

Hi Fahad

Attached is the updated letter mentioning my interaction with Commander Chin. Let me know if you need anything else from me.

Thank you,

N. Brian Tobin, LCSW
Licensed Clinical Social Worker
GET Therapy Chicago, LLC
Pronouns: He/Him/His
www.gettherapychicago.com
nbriantobin@gmail.com
312.404.4102
Office Location: 1136 S. Delano Court #B201, Chicago, IL 60605

Confidentiality Notice: This fax/e-mail transmission, with accompanying records, is intended only for the use of the individual or entity to which it is addressed and may contain confidential and/or privileged information belonging to the sender, including individually identifiable health information subject to the privacy and security provisions of HIPAA. This information may be protected by pertinent privilege(s), e.g., attorney-client, doctor-patient, HIPAA etc., which will be enforced to the fullest extent of the law. If you are not the intended recipient, you are hereby notified that any examination, analysis, disclosure, copying, dissemination, distribution, sharing, or use of the information in this transmission is strictly prohibited. If you have received this message and associated documents in error, please notify the sender immediately for instructions. If this message was received by e-mail, please delete the original message.

On Oct 26, 2020, at 1:38 PM, Brian Tobin <nbriantobin@gmail.com> wrote:

Hi Fahad,

Attached is the voicemail we were talking about from Eric Chin of Northwestern. Let me know if you have any issues opening it. Also, below is the Google Voice transcription of said voicemail:

Hi Brian, how are you? Eric Chen. I'm the director of threat assessment for the Northwestern for Northwestern University calling from my cellphone +847-456-276-6666. I'm calling in regards to a one of your one of your clients. I don't have a release for just share information with me, but I do want but I made aware that you are treating him. So she want the pass some information along again, Eric Chen. I'm the chair of the threat assessment team for Northwestern University. My cellphone 847-456-2766 in touch base with may not be great. I do understand as I mentioned, but I don't have a waiver for you to speak to me about your client, but I do want to share some information with you. So, thank you again, and have a good day. Bye.

Thank you,

N. Brian Tobin, LCSW
Licensed Clinical Social Worker
GET Therapy Chicago, LLC
Pronouns: He/Him/His
www.gettherapychicago.com
nbriantobin@gmail.com
312.404.4102
Office Location: 1136 S. Delano Court #B201, Chicago, IL 60605

Confidentiality Notice: This fax/e-mail transmission, with accompanying records, is intended only for the use of the individual or entity to which it is addressed and may contain confidential and/or privileged information belonging to the sender, including individually identifiable health information subject to the privacy and security provisions of HIPAA. This information may be protected by pertinent privilege(s), e.g., attorney-client, doctor-patient, HIPAA etc., which will be enforced to the fullest extent of the law. If you are not the intended recipient, you are hereby notified that any examination, analysis, disclosure, copying, dissemination, distribution, sharing, or use of the information in this transmission is strictly prohibited. If you have received this message and associated documents in error, please notify the sender immediately for instructions. If this message was received by e-mail, please delete the original message.
<Voicemail_18474562766_20200914.mp3>



FS Letter.docx

FILED DATE: 1/11/2021 10:17 AM  2021CH00106

# Exhibit 52

**From: Fahad Syed** syed.216@gmail.com
**Subject:** Fwd: You have a new shared document - Retaliation and Intimidation Evidence - Dept. of Ed., OCR Complaint #05-20-2444
**Date:** September 15, 2020 at 3:00 PM
**To:** Farrelly, Christopher Christopher.Farrelly@ed.gov

Begin forwarded message:

**From:** "GET Therapy Chicago, LLC" <yourprovider@simplepractice.com>
**Subject: You have a new shared document**
**Date:** September 14, 2020 at 6:11:48 PM CDT
**To:** Fahad <syed.216@gmail.com>

Hi Fahad

GET Therapy Chicago, LLC has sent you a document. Eric Chin just reached out to me, if you want me to talk to him, could you sign a Release of Information for Northwestern University's Police Department? Thank you.

You can view the document in the secure client portal.

Click here to sign in to the client portal

Thank you,

N. Brian Tobin, LCSW

GET Therapy Chicago, LLC

Online Booking and Client Portal Services provided by SimplePractice. Read the SimplePractice Privacy Policy

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

# Exhibit 53

FILED DATE: 1/11/2021 10:17 AM  2021CH00106

**‹ Recents**                                                    **Edit**



# Detective Lee
NUPD

message    call    WhatsApp    mail    pay

---

September 15, 2020

12:11 PM    **Incoming Call**                        6 minutes

---

phone `RECENT`
+1 (847) 467-5124

---

Notes

---

Send Message

---

Share Contact

---

Add to Favorites

---

 Favorites     Recents     Contacts     Keypad     Voicemail

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

# Exhibit 54

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

Pronouns: He/Him/His
www.gettherapychicago.com
nbriantobin@gmail.com
312.404.4102
Office Location: 1136 S. Delano Court #B201, Chicago, IL 60605

Confidentiality Notice: This fax/e-mail transmission, with accompanying records, is
intended only for the use of the individual or entity to which it is addressed and may
contain confidential and/or privileged information belonging to the sender, including
individually identifiable health information subject to the privacy and security provisions
of HIPAA. This information may be protected by pertinent privilege(s), e.g., attorney-
client, doctor-patient, HIPAA etc., which will be enforced to the fullest extent of the law.
If you are not the intended recipient, you are hereby notified that any examination,
analysis, disclosure, copying, dissemination, distribution, sharing, or use of the
information in this transmission is strictly prohibited. If you have received this message
and associated documents in error, please notify the sender immediately for instructions.
If this message was received by e-mail, please delete the original message.


---------- Forwarded message ---------
From: **Mona E Dugo** <mona.dugo@northwestern.edu>
Date: Wed, Sep 16, 2020 at 3:03 PM
Subject: Re: Your recent messages
To: Brian Tobin <nbriantobin@gmail.com>


Dear Mr. Tobin,
I'm not sure if Fahad signed a release of information when
he made this request.  I would like to be able to share some
information with you as we have a lot of on going concerns
about Fahad.  My cell phone number is 847-894-9798 if you
are able to give me a call.
Sincerely,
Mona Dugo


*Mona E. Dugo*
Interim Dean of Students
Northwestern University
Scott Hall
601 University Place, room 006
Direct phone 847-467-3483
For appointments 847-491-4582


**From:** Fahad Syed <fahad.syed@law.northwestern.edu>

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

**From:** Fahad Syed <fahad-syed@law.northwestern.edu>
**Date:** Thursday, September 3, 2020 at 9:05 AM
**To:** Brian Tobin <nbriantobin@gmail.com>, Colleen M Johnston
<colleen.johnston@northwestern.edu>, Susan Michelle Spies Roth
<susan-roth@law.northwestern.edu>, Amanda DaSilva
<amanda.dasilva@northwestern.edu>, Lucas Christain
<lucas.christain@northwestern.edu>, Mona Dugo
<mona.dugo@northwestern.edu>
**Subject:** Fwd: Your recent messages

Hi All,

I wanted to take a chance to see if it was possible for the transcript of the
chat to be sent to my mental health therapist? His name is Brian Tobin. I think
it would be helpful for our upcoming sessions for him to know exactly what
happened for me to be suspended. I would, of course, agree to any
stipulations. Please let me know if this is possible.

Thanks,

Fahad Syed

> Begin forwarded message:
>
> **From:** Colleen M Johnston
> <colleen.johnston@northwestern.edu>
> **Subject: Your recent messages**
> **Date:** September 2, 2020 at 4:08:57 PM CDT
> **To:** Fahad Syed <fahad-syed@law.northwestern.edu>
> **Cc:** Amanda DaSilva <amanda.dasilva@northwestern.edu>
>
> Dear Fahad,
>
> I have now had a chance to review your messages and wanted
> to follow up on what you've written. Amanda will be in contact
> with you soon about your recent concerns involving other law
> students and the outcome of the initial inquiry of your report. In
> terms of your concerns regarding Student Conduct's handling of
> the November 2019 incident, you previously corresponded with
> Karen Tamburro about these matters. Karen's email responding
> to that report appears below. As to your concerns about the
> interim suspension, I would encourage you to follow up with
> Interim Dean of Students Mona Dugo about those concerns. In
> terms of your complaint about the police, I would encourage you
> to follow up with Deputy Chief Eric Chin to discuss that
> investigation.
>
> Best,
> Colleen

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

# Exhibit 55



G.E.T. Therapy Chicago
Genuine. Empathic. Transformative.

To Whom It May Concern:

I am a psychotherapist, Naoise Brian Tobin, LCSW of GET Therapy Chicago, LLC and am seeing Fahad Syed (DOB: 08/28/1989) as a client for 1:1 psychotherapy on a weekly basis from May, 2018-March, 2019, and again from December, 2019 to present. I am writing this statement in regard to interaction between myself, Northwestern officials and my client. Mr. Syed wrote an email on September 3rd, 2020 to Northwestern officials, including Mona Dugo and Commander Chinn, requesting chat transcripts from an incident in August, 2020 that led to his suspension from Northwestern's Law School. On September 14th at 5:29pm, Chin left me a voicemail for me in which he twice stated that he did not have a Release of Information (ROI) from Fahad but wanted to "pass some information along" regarding him and requested that I call him back on his cell phone. I requested that Fahad complete a ROI for any conversation with Northwestern Police Department, which he did prior to me returning Commander Chin's call on his cell phone on September 16th, which went to voicemail. Mona Dugo, Interim Dean of Northwestern University's Law School reached out to me through that email chain that I was a part of to request a phone conversation with me that took place on September 22nd, 2020. In that conversation, Ms. Dugo expressed concern about my client potentially "spiraling after the court cases don't go anywhere" and stated that she had to send employees home for non-COVID related reasons rather due to safety concerns concerning Fahad although when I asked whether it was due to specific threats that he made or specific threatening language, Ms. Dugo reported that he sounded "aggressive" during communication with staff, particularly female employees but did not specify any threats made or specify any particular allegation that would prompt her or the university take specific action. Ms. Dugo referenced previous concerns pertaining to Fahad and Northwestern that led to his previous suspension from the Law School in November, 2019 and his psychological threat assessment profile conducted by a third party completed earlier in the year. Ms. Dugo also twice alleged that Mr. Syed threatened Northwestern staff over social media. When I inquired whether his threats were specific or physical in any nature, she then stated that they were concerning legal proceedings and investigations that Mr. Syed has initiated and did not allude to any potential physical altercation or have specificity of harm whatsoever. Ms. Dugo referenced the chat transcripts that Fahad requested and downplayed any escalation or reasoning for Mr. Syed's reaction to the interaction with fellow students on the thread stating "nothing happened…someone just asked if he was ok", but declined to add any context instead she played an audio recording of Fahad Syed conversing with a fellow student to me to signify his threatening nature. Ms. Dugo when asked did not give me a reason for the escalation or any insight into what transpired prior to Fahad's phone conversation with a student. I emailed Ms. Dugo on the morning of September 28th, 2020 requesting the chat transcripts that she referenced during our call and the audio clip she played for me of Fahad to assist in exploring his triggers, responses, and insight with him during session. During my next session with Fahad later that day he stated that he was unaware that he was being recorded during that conversation and that

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

Northwestern did not reveal the recording to him. Mr. Syed has experienced significant adverse mental health effects and increase in distress associated with violation of privacy of recording him without his consent, exacerbating present mental health related concerns, providing a barrier to treatment and insight and impacting his quality of life.  Please contact me directly if you have any questions or concerns.

Sincerely,

Naoise Brian Tobin, LCSW
GET Therapy Chicago, LLC
1136 S. Delano Ct. W Ste. #B201
Chicago, IL 60605
nbriantobin@gmail.com
P:312.404.4102
F: 312.528.3201

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

# Exhibit 56

FILED DATE: 1/1/2021 10:17 AM   2021CH00106

From: **Farrelly, Christopher** Christopher.Farrelly@ed.gov
Subject: RE: Third Confirmed Relaliation by NU Re: Dept. of Ed., OCR Complaint #05-20-2444
Date: September 29, 2020 at 1:53 PM
To: Fahad Syed syed.216@gmail.com

Mr. Syed,

Please give me a call at 312 625 8123 at your earliest convenience.

Best,

Christopher Farrelly
Attorney
U.S. Department of Education
Office for Civil Rights
John C. Kluczynski Federal Building
230 S. Dearborn Street, 37th floor
Chicago, IL 60604
Desk: (312) 730-1629

---

**From:** Fahad Syed <syed.216@gmail.com>
**Sent:** Monday, September 28, 2020 8:22 PM
**To:** Farrelly, Christopher <Christopher.Farrelly@ed.gov>
**Cc:** Polk, Jeremy <jeremy.polk@illinois.gov>; Brown, Venus <Venus.Brown@Illinois.gov>
**Subject:** Third Confirmed Relaliation by NU Re: Dept. of Ed., OCR Complaint #05-20-2444

Hi Mr. Farrelly,

The University just retaliated against me again by the Interim Dean of Students Mona Dugo contacting my Therapist, Brian Tobin, under the pretenses of discussing "chat-transcripts" which she never handed over even though they didn't "contain much."

 First NUPD Deputy Chief Eric Chin called Brian and told him that he "had some information for him" and that was when I told you about the second retaliation.

So then Mona called him and let him hear an audio recording which was illegally obtained of me without my knowledge and obviously aimed at painting me in a negative light.That is what my therapist Brian Tobin himself told me, please feel free to reach out to him to confirm. He is at 312-404-4102.

It was a recording of me screaming at the transgender stalker who called me menacingly in the middle of the night, right after she had called me up menacingly. I didn't know she was recording, but Mona has the recording, and knows that it was obtained through entrapment and without my knowledge or permission but still "shared" it with my Therapist.

She then brought up the "cases" and said that "she didn't see them going anywhere", which you can confirm with my Therapist. I'm pretty sure she asked him about them.

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

# Exhibit 57

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

**From:** **Farrelly, Christopher** Christopher.Farrelly@ed.gov
**Subject:** RE: Dept. of Ed., OCR Complaint #05-20-2444
**Date:** September 29, 2020 at 4:40 PM
**To:** Fahad Syed syed.216@gmail.com

Mr. Syed

I will add the documentation to your file.

Regarding my communication with Northwestern, as I said earlier on our phone call, they reached out to inform me that you were making representations that I was your attorney.

Thank you,

Christopher Farrelly
Attorney
U.S. Department of Education
Office for Civil Rights
John C. Kluczynski Federal Building
230 S. Dearborn Street, 37th floor
Chicago, IL 60604
Desk: (312) 730-1629

-----Original Message-----
From: Fahad Syed <syed.216@gmail.com>
Sent: Tuesday, September 29, 2020 3:59 PM
To: Farrelly, Christopher <Christopher.Farrelly@ed.gov>
Subject: Dept. of Ed., OCR Complaint #05-20-2444

Hi Mr. Farrelly,

I also wanted to make sure I sent you the reply that I sent to my school regarding the current charges, it should give you a decent overview of all of the relevant facts pertaining to this years incident. Please let me know if you have any questions.

Also, would you mind telling me what exactly Northwestern contacted you about, or sending me the communication that you received? I'm very interested in what they wanted to talk to my lawyer about, even though you aren't actually representing me.

Thanks,

Fahad Syed

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

# Exhibit 58

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

**From:** **Sanchez-Aguilar, Marcela** Marcela.Sanchez@ed.gov
**Subject:** RE: NU Contact Affidavit: OCR Docket #05-20-2444
**Date:** January 5, 2021 at 9:39 AM
**To:** Fahad Syed syed.216@gmail.com
**Cc:** Farrelly, Christopher Christopher.Farrelly@ed.gov

Hello Mr. Syed,

As Mr. Farrelly explained in his email to you below, the status of the complaint you filed with OCR is that it is in evaluation. We are in the process of evaluating your claims to determine whether we have jurisdiction to open any. OCR has not opened an investigation. When we complete our evaluation, you will receive a letter notifying you of our decision.

OCR does not issue "right to sue" letters like the EEOC. A complainant may file a lawsuit in court at any time.

Regarding your request about communication from Northwestern, you can use the email Mr. Farrelly sent you on 9/29/20 explaining that he was contacted in response to you informing University personnel that Mr. Farrelly was your attorney. Mr. Farrelly will not be submitting an affidavit or any further documentation.

Regards,
Marcela

Marcela Sánchez Aguilar
Supervisory Attorney
**U.S. Department of Education**
**Office for Civil Rights**
John C. Kluczynski Federal Building
230 S. Dearborn Street, 37th floor
Chicago, IL 60604
(312) 730-1632
(312) 730-1576 (fax)

---

**From:** Fahad Syed <syed.216@gmail.com>
**Sent:** Tuesday, January 5, 2021 6:10 AM
**To:** Farrelly, Christopher <Christopher.Farrelly@ed.gov>
**Cc:** Sanchez-Aguilar, Marcela <Marcela.Sanchez@ed.gov>
**Subject:** NU Contact Affidavit: OCR Docket #05-20-2444

Mr Farrelly,

I am planning on filing a lawsuit against Northwestern this week Pro Se. Any assistance that you can offer through you capacity at DOE, such as issuing an investigation status update or some other current indication that DOE is still investigating my claims would be very helpful. I understand that the EEOC is able to issue right-to-sue letters, I'm not sure if your department has anything similar.

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

# Exhibit 59

FILED DATE: 1/11/2021 10:17 AM 2021CH00106





Maybe: Eric H Chin >

here Deputy Chief Chin.

Hi Fahad, hope you are doing well.

Let's find time to discuss this on Monday. I will plan on having detective lee follow up with you for an information report, but however, for the criminal complaint itself, this will be a report CPD will need to collect as you reside outside our jurisdiction, similar to the direction I gave you pertaining the stalking complaint.

Can I trust you to provide the evidence to the police?

Why didn't you inform the police already?

You know, every time I try to

iMessage












FILED DATE: 1/11/2021 10:17 AM   2021CH00106

# Exhibit 60

FILED DATE: 1/11/2021 10:17 AM  2021CH00106

**CHICAGO POLICE DEPARTMENT**
# ORIGINAL CASE INCIDENT REPORT
3510 S. Michigan Avenue, Chicago, Illinois 60653
(For use by Chicago Police Department Personnel Only)
CPD-11.388(6/03)-C)

**RD #:** JD395768

**EVENT #:** 2028504759

Case ID:  12190297  CASR229

## INCIDENT

**EXC. CLEARED CLOSED (OTHER EXCEPTIONAL)**

**IUCR:**  9999 - Cancellation - Cancellation

**Occurrence Location:**  244 E Pearson St, #711
Chicago IL 60611
090 - Apartment

**Beat:** 1833

**Unit Assigned:**  9154
**RO Arrival Date:** 11 October 2020 09:43

**Occurrence Date:**  23 August 2020 01:08 - 23 August 2020 01:26

## NON OFFENDER

**VICTIM - Individual**

**Name: SYED, Fahad**

**Res:**  244 E Pearson St  #711
Chicago  IL  60611
773 - 564 - 0325

**Beat:** 1833

**Beat:** 5100

**Demographics**

Male
Asian / Pacific Islander

**DOB:**  28 August 1989
**Age:**  31 Years

**Sobriety:** Unknown

## DOMESTIC INFO

## OTHER

**Miscellaneous**

Victim Information Provided

**Flash Message Sent ?** No

## NARRATIVE

cancellation
summary, (VICTIM) SYED, FAHAD states he and the offender both attend northwestern university and during a group chat(groupme) he was involved in an altercation with (OFFENDER)   REDACTED  . victim states during the altercation he stated, "if you have any issues we can take it offline" and provided his personal information to the offender. victim states soon after he had a phone conversation with the offender at which time the offender recorded the conversation without the victim's consent. victim states the offender then submitted the audio recording to northwestern university without the victim's consent. victim states he was contacted by his therapist, brian tobin(312-404-4102) on september 16, 2020 at 1503 at which time he learns the offender had forwarded the recorded conversation to eric chin and mona dugo. victim states mona dugo(W/847-467-3483, C/847-894-9798) is the interim dean of students at northwestern university. victim states mona dugo forwarded the recorded conversation to eric chin, deputy chief of northwestern university police department. victim states he was heated during the phone conversation with the offender because of the time of speaking and manner of the offender's voice so due to that he does't remember what he said during the conversation. victim states he has never heard the recorded conversation. vin mailed to victim.

further investigation through a phone call with eric chin, deputy chief of northwestern university police department, revealed that SYED, FAHAD had been involuntary committed to a hospital for an involuntary mental evaluation in November 2019. further investigation also revealed that SYED, FAHAD had given consent for   REDACTED   to record the phone conversation in dispute.

## PERSONNEL

| | Star No | Emp No | Name | User | Date | Unit | Beat |
|---|---|---|---|---|---|---|---|
| Approving Supervisor | 1829 | #19240 | O SHAUGHNESSY, Jennifer, M | (PC0R470) | 11 Oct 2020 11:50 | 376 | |
| Reporting Officer | 5142 | #100590 | ALDAHONDO, Gil, A | (PC0Y635) | 11 Oct 2020 09:43 | 376 | 9154 |

RD #: JD395768

Print Generated By:

Page  1  of  1

21-OCT-2020 12:03

CLEAR Technology

FILED DATE: 1/11/2021 10:17 AM 2021CH00106

# Exhibit 61

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

< **Recents**



# +1 (847) 467-5422

Evanston, IL

message     call     video     mail     pay

## October 14, 2020

2:02 PM   **Incoming Call**                    18 minutes

Share Contact

Share My Location

Create New Contact

Add to Existing Contact

    

Favorites   Recents   Contacts   Keypad   Voicemail

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

# Exhibit 62

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

**From: Threat Assessment** threatassessment@northwestern.edu
**Subject:** RE: Police Report Request
**Date:** November 23, 2020 at 11:23 AM
**To:** Fahad Syed fahad-syed@law.northwestern.edu
**Cc:** Latori G Bartelle l-bartelle@northwestern.edu, Lucas Christain lucas.christain@northwestern.edu

Mr. Syed, your request for a copy of case 2020-356 is denied without the presence of a subpoena.

**From:** Fahad Syed <fahad-syed@law.northwestern.edu>
**Sent:** Sunday, November 22, 2020 1:34 PM
**To:** Threat Assessment <threatassessment@northwestern.edu>
**Cc:** Latori G Bartelle <l-bartelle@northwestern.edu>; Lucas Christain
<lucas.christain@northwestern.edu>
**Subject:** Re: Police Report Request

Hi. Sgt. Bartelle,

Usually what legitimate police departments do when someone requests a police record is to give the person a timeframe for which they can expect to received it. I know NUPD is a joke, so I'll just ask you: do you have a timeframe for getting me my record?

Thanks,

Fahad Syed

On Nov 18, 2020, at 11:49 PM, Threat Assessment
<threatassessment@northwestern.edu> wrote:

Your request has been received and is being processed.  We will be in
contact shortly

**From:** Fahad Syed <fahad-syed@law.northwestern.edu>
**Sent:** Wednesday, November 18, 2020 6:23 PM
**To:** Latori G Bartelle <l-bartelle@northwestern.edu>; Threat Assessment
<threatassessment@northwestern.edu>; Lucas Christain
<lucas.christain@northwestern.edu>
**Subject:** Re: Police Report Request

Hello,

I want a copy of my police report. I am tired of asking for it over and over
again. **Where is it?**

Thanks,

Fahad Syed

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
12/14/2020 7:55 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2020OP20532

Subpoena in a Civil Matter (For Testimony and/or Documents)      (06/05/20) CCG 0106 A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Fahad Syed

_____
                             Plaintiff/Petitioner

v.

Mona Dugo

_____
                           Defendant/Respondent

Case No.     20OP20532

### SUBPOENA IN A CIVIL MATTER
### (For Testimony and/or Documents)

To:    Northwestern University Police Department
       211 East Superior Street
       Chicago, IL 60611

1. ☐   YOU ARE COMMANDED to appear to give your testimony before the

     Honorable _____ in Room _____ ,

     _____ , Illinois on _____

     at _____ ○ AM ○ PM

2. ☐   YOU ARE COMMANDED to appear and give your deposition testimony before a Notary Public

     at: _____ in Room _____ ,

     _____ , Illinois on _____

     at _____ ○ AM ○ PM

3.   YOU ARE COMMANDED to mail the following documents in your possession or control
     to   Fahad Syed _____ at   syed.216@gmail.com _____ ,

     on or before **12/22/20** at   9:00   ● AM ○ PM
     (THIS IS FOR RECORDS ONLY. THERE WILL BE NO ORAL INTERROGATORIES.):

     Report JD 2019-0595   (Police Reports)

     **Body Worn Camera Footage from Report Incident from all officers involved.**

     ☐   Description continued on attached page(s).

**Your failure to respond to this subpoena will subject you to punishment for contempt of this Court.**

Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois
cookcountyclerkofcourt.org

FILED DATE: 1/11/2021 10:17 AM   2021CH00106   2020OP20532
FILED DATE: 12/14/2020 7:55 PM

**Subpoena in a Civil Matter (For Testimony and/or Documents)**     **(06/05/20) CCG 0106 B**

Notice to Deponent:

1. ☑ The deponent is a public or private corporation, partnership, association, or governmental agency. The matter(s) on which examination is requested are as follows:
   20DV20806
   20OP20532

   ☐ Description continued on attached page(s).
   (A nonparty organization has a duty to designate one or more officers, directors, or managing agents, or other persons to testify on its behalf, and may set forth, for each person designated, the matters on which that person will testify. Ill. Sup. Ct. Rule 206.)

2. The deponent's testimony will be recorded by use of an audio-visual recording device, operated

   by _____ .
   (Name of Recording Device Operator)

3. No discovery deposition of any party or witnesses shall exceed three hours regardless of the number of parties involved in the case, except by stipulation of the parties or by order upon showing that good cause warrants a lengthier examination. Ill. Sup. Ct. Rule 206(d).

☐ Atty. No.: _____

☐ Pro Se 99500

Name: _Fahad Syed_____

Atty. for (if applicable): _____

_____

Address: _244 E Pearson St. Apt. 711_____

City: _Chicago_____

State: _IL___ Zip: _60611_____

Telephone: _773-564-0325_____

Primary Email: _syed.216@gmail.com_____

12/14/2020 7:55 PM IRIS Y. MARTINEZ

Issued by: /s/_____
                          Signature

Text      ☐ Attorney   ☐ Clerk of Court

Date: **12/14/20**_____

☐ I served this subpoena by mailing a copy, as required by Ill. Sup. Ct. Rules 11, 12 and 204(a) (2),

   to _____ by certified mail, return receipt requested

   (Receipt # _____) on _____ . I paid the witness $ _____ for witness and mileage fees.

☐ I served this subpoena by handing a copy to _____

   on _____ . I paid the witness $ _____ for witness and mileage fees.

/s/ _____        **Fahad Syed**
        (Signature of Server)                              (Print Name)

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**

FILED DATE: 1/11/2021 10:17 AM 2021CH00106
FILED DATE: 12/14/2020 7:55 PM 2020OP20532

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
12/1/2020 5:27 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2020OP20532

Subpoena in a Civil Matter (For Testimony and/or Documents)　　　　(06/05/20) CCG 0106 A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Fahad Syed

　　　　　　　　　　　　　Plaintiff/Petitioner

　　　　　　　v.

Mona Dugo

　　　　　　　　　　　　　Defendant/Respondent

Case No. 　20OP20532

## SUBPOENA IN A CIVIL MATTER
### (For Testimony and/or Documents)

To:　　Northwestern University
　　　　633 Clark Street
　　　　Evanston, IL 60208

1. ☐　YOU ARE COMMANDED to appear to give your testimony before the

　　　Honorable _____ in Room _____ ,

　　　_____ , Illinois on _____

　　　at _____ ○ AM ○ PM

2. ☐　YOU ARE COMMANDED to appear and give your deposition testimony before a Notary Public

　　　at: _____ in Room _____ ,

　　　_____ , Illinois on _____

　　　at _____ ○ AM ○ PM

3.　YOU ARE COMMANDED to mail the following documents in your possession or control

　　　to ___Fahad Syed_____ at ___syed.216@gmail.com_____ ,

　　　on or before __12/9/20__ at ____9:00____ ● AM ○ PM
　　　(THIS IS FOR RECORDS ONLY. THERE WILL BE NO ORAL INTERROGATORIES.):
　　　All records of any kind, paper, electronic, or otherwise, which related in any, shape or form to:
　　　Fahad Syed or Fahad Bilal Syed or Fahad B Syed (D/O/B: 8/28/1989). Includes Admission
　　　Records and Northwestern Police Department Records.

　　　☐　Description continued on attached page(s).

**Your failure to respond to this subpoena will subject you to punishment for contempt of this Court.**

Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois
cookcountyclerkofcourt.org
Page 1 of 2

**Subpoena in a Civil Matter (For Testimony and/or Documents)**     **(06/05/20) CCG 0106 B**

FILED DATE: 1/11/2021 10:17 AM  2021CH00106
FILED DATE: 12/1/2020 5:27 PM  2020OP20532

Notice to Deponent:

1. ☑   The deponent is a public or private corporation, partnership, association, or governmental agency. The
       matter(s) on which examination is requested are as follows:
       20DV20806
       20OP20532
       _____
       ☐   Description continued on attached page(s).
           (A nonparty organization has a duty to designate one or more officers, directors, or managing agents,
           or other persons to testify on its behalf, and may set forth, for each person designated, the matters on
           which that person will testify. Ill. Sup. Ct. Rule 206.)

2.   The deponent's testimony will be recorded by use of an audio-visual recording device, operated

     by _____ .
                    (Name of Recording Device Operator)

3.   No discovery deposition of any party or witnesses shall exceed three hours regardless of the number of
     parties involved in the case, except by stipulation of the parties or by order upon showing that good cause
     warrants a lengthier examination. Ill. Sup. Ct. Rule 206(d).


☐  Atty. No.: _____
■  Pro Se 99500
           Fahad Syed
Name: _____

Atty. for (if applicable): _____                    Issued by: /s/_____
                                                                                Signature
_____            Text    ☐ Attorney   ☐ Clerk of Court

Address: ___244 E Pearson St. Apt. 711_____            Date: ___12/1/20_____
City: ___Chicago_____

State: __IL__  Zip: __60611_____
Telephone: ___773-564-0325_____
Primary Email: ___syed.216@gmail.com_____


☐  I served this subpoena by mailing a copy, as required by Ill. Sup. Ct. Rules 11, 12 and 204(a) (2),

   to _____ by certified mail, return receipt requested

   (Receipt # _____) on _____ . I paid the witness $ _____ for
   witness and mileage fees.

☐  I served this subpoena by handing a copy to _____

   on _____ . I paid the witness $ _____ for witness and mileage fees.

/s/ _____            _____
          (Signature of Server)                              (Print Name)

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
12/1/2020 12:25 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2020OP20532

FILED DATE: 1/11/2021 10:17 AM  2021CH00106   2020OP20532
FILED DATE: 12/1/2020 12:25 PM

Subpoena in a Civil Matter (For Testimony and/or Documents)          (06/05/20) CCG 0106 A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Fahad Syed

_____
                              Plaintiff/Petitioner

                    v.                                    Case No.  _____20OP20532_____

Mona Dugo

_____
                              Defendant/Respondent

### SUBPOENA IN A CIVIL MATTER
#### (For Testimony and/or Documents)

To:     Northwestern University Police Department
        211 East Superior Street
        Chicago, IL 60611

1. ☐   YOU ARE COMMANDED to appear to give your testimony before the

    Honorable _____ in Room _____ ,

    _____ , Illinois on _____

    at _____  ○ AM  ○ PM

2. ☐   YOU ARE COMMANDED to appear and give your deposition testimony before a Notary Public

    at: _____ in Room _____ ,

    _____ , Illinois on _____

    at _____  ○ AM  ○ PM

3.     YOU ARE COMMANDED to mail the following documents in your possession or control

    to _____Fahad Syed_____ at _____syed.216@gmail.com_____ ,

    on or before ___12/8/20___ at _____9:00_____  ● AM  ○ PM
    (THIS IS FOR RECORDS ONLY.  THERE WILL BE NO ORAL INTERROGATORIES.):

    Report JD 2019-0595   (Police Reports)
    Report JD 2020-0356

    ☐   Description continued on attached page(s).

**Your failure to respond to this subpoena will subject you to punishment for contempt of this Court.**

Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois
cookcountyclerkofcourt.org
Page 1 of 2

**Subpoena in a Civil Matter (For Testimony and/or Documents)**            **(06/05/20) CCG 0106 B**

Notice to Deponent:

1. ☑   The deponent is a public or private corporation, partnership, association, or governmental agency. The
matter(s) on which examination is requested are as follows:
20DV20806
20OP20532

_____

☐   Description continued on attached page(s).
(A nonparty organization has a duty to designate one or more officers, directors, or managing agents,
or other persons to testify on its behalf, and may set forth, for each person designated, the matters on
which that person will testify. Ill. Sup. Ct. Rule 206.)

2.   The deponent's testimony will be recorded by use of an audio-visual recording device, operated

by _____ .
(Name of Recording Device Operator)

3.   No discovery deposition of any party or witnesses shall exceed three hours regardless of the number of
parties involved in the case, except by stipulation of the parties or by order upon showing that good cause
warrants a lengthier examination. Ill. Sup. Ct. Rule 206(d).

○ Atty. No.: _____                          12/1/2020 12:25 PM IRIS Y. MARTINEZ
● Pro Se 99500
Fahad Syed
Name: _____

Atty. for (if applicable):                Issued by: /s/_____
                                                          Signature
_____            Text      ○ Attorney   ○ Clerk of Court
Address: 244 E Pearson St. Apt. 711
City: Chicago                              Date: 12/1/20
State: IL   Zip: 60611
Telephone: 773-564-0325
Primary Email: syed.216@gmail.com

☐   I served this subpoena by mailing a copy, as required by Ill. Sup. Ct. Rules 11, 12 and 204(a) (2),

to _____ by certified mail, return receipt requested

(Receipt # _____) on _____ . I paid the witness $ _____ for
witness and mileage fees.

☐   I served this subpoena by handing a copy to _____

on _____ . I paid the witness $ _____ for witness and mileage fees.

/s/ _____      _____
        (Signature of Server)                              (Print Name)

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

FILED DATE: 1/11/2021 10:17 AM 2021CH00106
FILED DATE: 12/1/2020 12:25 PM 2020OP20532

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

# Exhibit 63

FILED DATE: 1/11/2021 10:17 AM 2021CH00106

**From:** **Civilian Office of Police Accountability** COPA-Intake@chicagocopa.org 
**Subject:** Form Submission: COPA Online Complaint Form
**Date:** November 2, 2020 at 11:44 AM
**To:** syed.216@gmail.com

Thank you for submitting your complaint using COPA's online complaint form. A copy of your submission is provided below.

### Name

Fahad Syed

### Primary Address

244 E PEARSON ST APT 711
CHICAGO, Illinois 60611-2368
United States
Map It

### Date of Birth

08/28/2020

### Gender

Male

### Ethnicity

Asian

### Are you a member of the Chicago Police Department?

No

### Best Time to Contact

- Weekday
- Weekend
- Morning

### Contact Phone Number

(773) 564-0325

### Contact Phone Number Type

Mobile

### Email

syed.216@gmail.com

### Describe the incident.

On 10/11/20 I filed a police report for eavesdropping. Sometime afterwards report JD 395768 was illegally closed when Deputy Chief Eric Chin of Northwestern Police Illegally contacted Chicago Police Jennifer O Shaughnessy (star 1829) and illegally disclosed my mental health history in violation of HIPPA (Health Insurance Portability and Accountability Act) and the Illinois Mental Health and Developmental Disabilities Confidentiality Act.

The Mental Health and Developmental Disabilities Confidentiality Act provides that "any record kept by a therapist or by an agency in the course of providing mental health or developmental disabilities service to a recipient" and "any communication made by a recipient or other person to a therapist or to or in the presence of other persons during or in connection with providing mental health or developmental disability services to a recipient," including "information which indicates that a person is a recipient," "shall be confidential and shall not be disclosed except as provided in this Act." 740 ILCS

110/2, 3(a) (West 2000).

Under Health Insurance Portability and Accountability Act (HIPAA), the general rule pertaining to the disclosure of protected health information is that a covered entity may not use or disclose protected health information without a written authorization from the individual or, alternatively, the opportunity for the individual to agree or object. Health Insurance Portability and Accountability Act of 1996, § 101(a) et seq., 42 U.S.C.A. § 1181 et seq.; 45 C.F.R. §§ 164.508, 164.510. Isidore Steiner, DPM, PC v. Bonanni, 292 Mich. App. 265, 807 N.W.2d 902 (2011).

Northwestern Memorial Hospital, which is the covered health-care provider, has business associates including Northwestern University Police Department and Northwestern University. Covered entities under Health Insurance Portability and Accountability Act (HIPAA) generally include health-care providers, health plans, and health-care clearinghouses and their business associates. 42 U.S.C.A. § 1320d. Yeager v. Dickerson, 391 S.W.3d 388 (Ky. Ct. App. 2013).

On 11/2/20 I reported this violation to Chicago Police via the non-emergency number I received a 4-minute follow-up call from Sgt. Lorenz (Star 1857) (312-743-0676) who stated that he wasn't aware that it was illegal to disclose protected health information, and then when I informed him, replied "OK, I'm not going to do anything." When I asked to speak to his supervisor, he replied "I am my own supervisor, and I have no direct supervisor."

**Were you injured in this incident?**

Yes

**If so, please provide a description of your injuries.**

I was suspended from school and my constitutional right to seek redress for a crime committed against me was deprived.

**Did you seek treatment for your injuries?**

No

**Incident Address**

244 E PEARSON ST APT 711
CHICAGO, Illinois 60611-2368
United States
Map It

**Incident Date**

11/02/2020

**Incident Time**

10:50 am

**Was this in a school?**

No

**Was this in a police facility?**

No

**Are you aware of any video or audio recording of the incident?**

Yes

**Do you have a copy of the video or audio recording?**

No

**Would you like for an investigator to contact you in order to retrieve your audio or video recordings?**

Yes

Tes

**Department Member Name**

Unknown Lorenz

**Rank**

Seargent

**Star Number**

1857

**Gender**

Male

**Ethnicity**

White

**Was the Department member in uniform?**

Yes

**Assigned Unit**

Alternate Responce Unit

**Department Member Description**

On 10/11/20 I filed a police report for eavesdropping. Sometime afterwards report JD 395768 was illegally closed when Deputy Chief Eric Chin of Northwestern Police Illegally contacted Chicago Police Jennifer O Shaughnessy (star 1829) and illegally disclosed my mental health history in violation of HIPPA (Health Insurance Portability and Accountability Act) and the Illinois Mental Health and Developmental Disabilities Confidentiality Act.

On 11/2/20 I reported this violation to Chicago Police via the non-emergency number I received a 4-minute follow-up call from Sgt. Lorenz (Star 1857) (312-743-0676) who stated that he wasn't aware that it was illegal to disclose protected health information, and then when I informed him, replied "OK, I'm not going to do anything." When I asked to speak to his supervisor, he replied "I am my own supervisor, and I have no direct supervisor."

**Was the Department member driving a vehicle?**

No

**Add another Department Member?**

- Yes, Add Another Department Member

**Department Member Name**

Jennifer O Shaughnessy

**Rank**

Detective

**Star Number**

1829

**Assigned Unit**

Alternate Responce Unit

**Gender**

FILED DATE: 1/11/2021 10:17 AM  2021CH00106

Female

**Ethnicity**

White

**Was the Department member in uniform?**

Yes

**Department Member Description**

On 10/11/20 I filed a police report for eavesdropping. Sometime afterwards report JD 395768 was illegally closed when Deputy Chief Eric Chin of Northwestern Police Illegally contacted Chicago Police Jennifer O Shaughnessy (star 1829) and illegally disclosed my mental health history in violation of HIPPA (Health Insurance Portability and Accountability Act) and the Illinois Mental Health and Developmental Disabilities Confidentiality Act.

The Mental Health and Developmental Disabilities Confidentiality Act provides that "any record kept by a therapist or by an agency in the course of providing mental health or developmental disabilities service to a recipient" and "any communication made by a recipient or other person to a therapist or to or in the presence of other persons during or in connection with providing mental health or developmental disability services to a recipient," including "information which indicates that a person is a recipient," "shall be confidential 740 ILCS 110/2

**Was the Department member driving a vehicle?**

No

**Submitted On**

11/02/2020 11:44:21 America/Chicago

Within five (5) business days, a letter will be mailed to you with respect to whether your complaint falls within COPA's jurisdiction or the jurisdiction of the Bureau of Internal Affairs. If your complaint falls within COPA's jurisdiction, we will proceed to investigation.

If you have any questions about your complaint, please feel free to contact our main office during our business hours and ask to speak with a case liaison. To the extent you have received the aforementioned letter, please be sure to have the Log# assigned to your case when you call so that we can quickly locate your case file.

For answers to frequently asked questions, please view our FAQs.

FILED DATE: 1/11/2021 10:17 AM 2021CH00106

**SWORN AFFIDAVIT FOR LOG NUMBER INVESTIGATION** (ELECTRONICALLY RECORDED STATEMENT)
CHICAGO POLICE DEPARTMENT

STATE OF ILLINOIS )
) CC
COUNTY OF COOK )

| Location of Incident<br>244 E. Pearson St. Chicago, IL Apt. #711 | Date<br>23 Aug 2020 | Time<br>0108 hours |
|---|---|---|

Summary of Statement(s):

The complainant, SYED, Fahad alleged that improper information was included in Chicago Police Department case incident report #JD395768 by the Reporting Officer. The information that he alleged to be false is that he never gave permission to an individual by the name of    REDACTED    to audio record the conversation he had with this person. The narrative of the report states that Mr. SYED gave consent to be audio recorded by REDACTED

Mr. SYED alleged that information related to his medical treatment in November 2019 should not have been included in this case incident report. Mr. SYED believes that this incident was not investigated due to the medical history which was included in this report.

I, ~~Fahad Syed~~ _____ hereby state as follows:

1.  I provided an electronically recorded statement.

2.  Under penalties as provided by law pursuant to 735 ILCS 5/1-109, I certify
    that the information set forth in the statement(s) above and/or attached
    summary are true and correct, except as to any matters therein stated to be
    on information and belief as to such matters, I certify as aforesaid that I verily
    believe the same to be true.

~~Fahad Syed~~
Print Affiant's Name

~~[signature]~~
Affiant's Signature

~~11/9/20~~
Date

~~Sgt Mark Lambert 1847~~
Print Witness Name

~~[signature]~~
Witness' Signature

~~9 Nov 2020~~
Date

**INVESTIGATOR USE ONLY**

**COMPLETE THIS SECTION ONLY WHEN THE SWORN AFFIDAVIT HAS NOT BEEN SIGNED.**

A Sworn Affidavit has not been signed for this investigation under the following circumstances:

| ☐ NO AFFIDAVIT<br>- NO CONTACT | ☐ NO AFFIDAVIT<br>- REFUSED | ☐ NO AFFIDAVIT<br>- NO COOPERATION | ☐ NO AFFIDAVIT<br>REQUIRED |
|---|---|---|---|

CPD-44.127 (REV. 8/16) English

Attachment No. 3

Log No. 2020-4964

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

# Exhibit 64

**CHICAGO POLICE DEPARTMENT**
# ORIGINAL CASE INCIDENT REPORT
3510 S. Michigan Avenue, Chicago, Illinois 60653
(For use by Chicago Police Department Personnel Only)
CPD-11.388(6/03)-C)

**RD #:** | JD419862
**EVENT #:** 2030810558

Case ID: 12211003 CASR229

FILED DATE: 1/11/2021 10:17 AM 2021CH00106

## INCIDENT

**SUSPENDED**

**IUCR:** 500E - Other Offense - Eavesdropping

| Occurrence Location: | 244 E Pearson St, #711 | **Beat:** 1833 | **Unit Assigned:** 1802 |
| | Chicago IL | | **RO Arrival Date:** 03 November 2020 16:40 |
| | 090 - Apartment | | **# Offenders:** 1 |

**Occurrence Date:** 23 August 2020 01:18

## NON OFFENDER

**VICTIM - Individual**

**Name:** SYED, Fahad B

**Demographics**

Male
White

**Res:** 244 E Pearson St #711    **Beat:** 1833
Chicago IL

**Beat:** 5100

**DOB:** 28 August 1989
**Age:** 31 Years

**Sobriety:** Sober

**Other Communications and Availability**

Phone - 773-564-0325
Cellular:

## INJURIES

**Injury Info (SYED,Fahad B - Victim )**

**Responding Unit:**

## SUSPECTS

**Suspect # 1**

**Name:** UNK

**Demographics**

**Other Communications and Availability**

**Injury Info**
**Responding Unit:**

## RELATIONSHIP

| **RELATIONSHIP** | | |
| (Victim) | | ( Offender ) |
| **SYED, Fahad,B** | is a   No Relationship of | **UNK** |

## DOMESTIC INFO

**RD #: JD419862**

Print Generated By: CARGO,ROSHAND A     Page 1 of 2     05-NOV-2020 09:24



**Chicago Police Department - Incident Report**

RD #: JD419862

| OTHER | Miscellaneous | |
|---|---|---|
| | Victim Information Provided | **Flash Message Sent ?** No |

**NARRATIVE**

EVENT# 10558 IN SUMMARY THE VICTIM ARRIVED AT THE 018TH DISTRICT TO FILE A REPORT FOR EAVESDROPPING. THE VICTIM RELATED THAT HE HAD RECEIVED A PHONE CALL FROM AN UNKNOWN OFFENDER FROM TELEPHONE NUMBER REDACTED THE VICTIM WAS RECORDED ON THIS CONVERSATION, WITHOUT HIS CONSENT, AND THE VICTIM FOUND THE CALLS IN A DROPBOX ONLINE.

**PERSONNEL**

| | Star No | Emp No | Name | User | Date | Unit | Beat |
|---|---|---|---|---|---|---|---|
| Approving Supervisor | 2628 | | **SIMON, Thomas, B** | | 03 Nov 2020 17:34 | 018 | |
| Reporting Officer | 6850 | | **MCCALLUM, Richard, P** | | 03 Nov 2020 17:20 | 018 | 1802 |



FILED DATE: 1/11/2021 10:17 AM 2021CH00106

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

# Exhibit 65

FILED DATE: 1/11/2021 10:17 AM 2021CH00106



To: +1 (312) 303-3736                                            Det

in deen and as a Bani Adam (human being). I hope inshallah that you are seeing the therapist or counselor and taking care of yourself.

*shouldn't

Sophia has spent hours talking to NU trying to give them positive context about you and trying to get them to dismiss whatever you said as just empty words. She has been trying to convince them that you pose no physical threat to anyone there. You are lucky thet she has credibility with them and she is putting that on the line by

FILED DATE: 1/11/2021 10:17 AM   2021CH00106



FILED DATE: 1/11/2021 10:17 AM   2021CH00106

# Exhibit 66

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

**Northwestern** | OFFICE OF COMMUNITY STANDARDS

Office of Community Standards
601 University Place
Scott Hall
Lower Level, Room 35
Evanston, Il 60208

Office 847-491-4582

November 4, 2020

Fahad Syed
Sent electronically to fahad-syed@law.northwestern.edu

**PERSONAL AND CONFIDENTIAL**

Dear Fahad:

The Office of Community Standards has received reports concerning email, phone, and text messages you have sent to University staff. Specifically, it has been alleged that you sent the following messages to Mona Dugo, Interim Dean of Students; Eric Chin, Deputy Chief of Northwestern Police; and Sanghoon Lee, Northwestern University Detective:

- On October 10, 2020, you sent text messages to Mona Dugo including:
    - "You're a dishonest and unethical scumbag Mona."
- On October 18, 2020, you sent text messages to Mona Dugo including:
    - "You crossed a red line with this harassment, old lady. Don't ever in your life disrespect my religion you godless apostate"
    - "Take your little torch and pitchfork and white sheet and go back to whatever backwoods farm you came from Mona Dugo"
    - "You're an unqualified has-been. Get this mess cleaned up"
    - "You deserve no respect Mona"
- On October 19, 2020, you sent text messages to Mona Dugo including:
    - "You old useless hag"
    - "I can't wait to see you get fired"
    - "Make sure you and you're (sic) old coven of useless discriminating ignorant degenerates are never ever able to work in this country again"
    - "You old ladies have been doing this to people for years. You old racist hags"
- On October 19, 2020, after Mona Dugo sent you a message stating, "I would like you to stop texting me," you continued to text Mona Dugo with messages including:
    - "I would like you to drop these ridiculous charges and resign"
    - "You're a fraud"
    - "Lord knows how you weaseled you're (sic) way into being able to hurt good people and ruin people's lives and dreams"
    - "Go away from my university and never show your ugly face here again"
    - "Finally found someone who can shove your bullshit right back down your ignorant discriminating throat huh?"
    - "I'm (sic) swear to Allah on my dead mother I'm going to make it rain on you"
    - "Mona I'm going to ruin you"
    - "Ruin you"
    - "Giving Chin a daily bj to get you out of trouble"
    - "I'm coming at you in an individual capacity too tho (sic) Mona"

FILED DATE: 1/11/2021 10:17 AM  2021CH00106

- ○ "I want your house and car and everything you own"
- ○ "That's gonna be mine soon old lady"
- ○ "Or, you can stop acting like a goon"
- ○ "And drop these charges like I asked"
- ○ "We can do this the easy way or the hard way"
- ○ "Go back to your trailer park you racist ignorant discriminating goon"
- ○ "Be reasonable and things can get a lot easier. Keep up this stubborn act and you see how I have made things progressively worse for you."
- ○ "There's so much more where that came from"
- ○ "You can't handle me, you will never be able to push me out of this school. This is my school."
- ○ "You're just a visitor here."
- ○ "Kafir"
- ○ "You are an obstacle for me. Nothing more. A dumb inanimate object that is in my way"
- ○ "I'm fixated on you because of your being an obstacle to my dream of become (sic) an attorney"
- ○ "Please understand that I will move heaven and earth with Allah's will, in order to achieve my goal. No force, man woman or child can stop me."
- On October 19, 2020 you sent text messages to Sanghoon Lee including:
  - ○ "Make sure you ask your sorry ass boss why I have him shitting in his petit size 6 pansys (sic)"
  - ○ "I'm gonna have your badge as a keepsake scumbag"
  - ○ "You picked the wrong dude to take a report from and fail to investigate"
  - ○ "I'm smarter than you and your ugly fat boss put together"
  - ○ "Make sure you show all the texts about me harassing you for obstructing justice and criminal conspiracy to the judge Lee"
  - ○ "Not just the ones where I'm digging (sic) the shit out of you"
  - ○ "I'm gonna make sure your boss never works again"
  - ○ "Maybe him and Mona can start their own monkey ass school with you as the president fool"
- On October 27, 2020, you sent text messages to Eric Chin including:
  - ○ "It's not going away no matter what you do you slimey (sic) crook."
- On October 29, 2020, you sent text messages to Eric Chin including:
  - ○ "FAT CURRUPT (sic) FUCKING PRICK"
  - ○ "GO EAR(sic) A DONUT YOU FAT FUCKING USELESS PRICK"
  - ○ "GIVE THE JOB TO SOMEONE WHO CARES ABOUT THE LAW YOU FAT MISERABLE UNETHICAL FUCK"
  - ○ "Makes my fucking blood boil you miserable fucking cunt"
  - ○ "You know where I liveL (sic): 224 E Pearson st apt 711"
  - ○ "How about you forget that badge one day, you fat miserable law breaking cunt, and meet me in the park?"
  - ○ "Its (sic) right outside my house where your cunt officers park their cruisers to jack off to pictures of pastries you useless fat prick"
- On October 29, 2020, you sent text messages to Eric Chin, Mona Dugo, and Sanghoon Lee including:
  - ○ "FUCK YOU DISCRIMINATING NASTY CUNTS"
  - ○ "GO TO HELL"
- On October 30, 2020, you sent text messages to Eric Chin, Mona Dugo, and Sanghoon Lee including:
  - ○ "You got 45 counts coming your way from the court of claims you old fucks"
  - ○ "When GC asks you how this happened tell them it's because Mona is (sic) dirty ignorant cunt like all 3 of your mothers"

FILED DATE: 1/11/2021 10:17 AM  2021CH00106

- ◦ "And you deserve everything but of this abuse too. I'm going to make sure my muslims (sic) brothers hear about you in prison too"
- ◦ "50 dollars in commissary per tooth to any man"
- ◦ "Or woman"
- ◦ "Being a Syed gives me a lot of weight with the ranks for the Muslim brothers"
- ◦ "I wonder what that means for you when I get you locked up with all those Muslims"
- ◦ "I think it means you each should suck my dick"
- ◦ "And take turns"
- ◦ "Fuck you Eric you small minded ignorant fuck"
- ◦ "Suck my dick"
- ◦ "Fucking PIG"
- ◦ "HOG"
- ◦ "Take a good look you FUCKING COCKSUCKING PIG CUNT"

Your conduct or involvement in these reported messages may be in violation of one or more of the following policies found in Northwestern's Student Code of Conduct. You may find the Student Code of Conduct in the Northwestern Handbook at https://www.northwestern.edu/communitystandards/student-handbook/student-handbook-2020-2021.pdf.

- • Endangering Self or Others
  - ◦ 2020-2021 Student Handbook, p.32: Any action (or threat of action) that endangers or threatens to endanger the health, safety, or well-being of any person (including oneself). Severity and/or persistence may be considered.

- • Policy on Non-Retaliation

  - ◦ Northwestern strictly prohibits retaliation against any member of its community for reporting or inquiring in good faith about what the member believes to be wrongful or unlawful activity, or for participating in an investigation or proceeding related to such activity. The University considers such reporting, inquiring, or participating to be protected activities in which all members of the Northwestern community may freely engage.
    - ■ Examples of materially adverse actions that could constitute retaliation include, but are not limited to:
      - • Engaging in harassing conduct that is sufficiently severe, pervasive, and/or persistent to create a hostile environment; for this purpose, the existence of a hostile environment is to be judged both objectively (meaning a reasonable person would find the environment hostile) and subjectively (meaning the affected individual felt the environment was hostile).

Please Note: The University has not drawn any conclusions about these allegations, and will follow its procedures for investigation to obtain the information necessary to make a determination. The potential policy violations listed above are based on the information available at this time. The policies in question related to this incident may change as we gather more information.

**Investigation:**

Per the Northwestern Student Handbook, p.117, investigations are conducted by two investigators who are conduct administrators or other University staff trained as investigators. You will be notified of the investigators managing this case once they have been assigned. The investigators will follow the investigation procedures outlined in the University Hearing and Appeal System (UHAS) section of the Northwestern Student Handbook, p.102.

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

**Preparing for Your Meeting**

Based on the report we have received, these alleged policy violations have the potential to result in a sanction of suspension or higher. During your initial meeting investigators they will discuss the investigation process. Details on the resolution of cases involving student Respondents that have the potential to result in separation from the University can be found in the 2020-2021 Student Handbook, beginning on p.116.

During the investigation, you will have an opportunity to provide your account of events and to provide any information you may have related to this concern. You will also be able to provide the investigators a list of witnesses with whom they may follow up as part of the investigation and a list of questions you suggest they ask.

You may choose to bring one advisor with you to all meetings associated with this process. An advisor is a support person who may be present to provide support to a Reporter or Respondent throughout an investigation and/or sanctioning process. Reporters and Respondents may be accompanied by one advisor throughout the investigation and any sanctioning process, provided that the involvement of the advisor does not result in an undue delay of the process. It is the responsibility of each party to coordinate scheduling with their advisor for any meetings. An advisor may not speak, write, or otherwise communicate with an investigator, panelist, or appeal reviewer on behalf of the Reporter or Respondent. Advisors may not engage in behavior or advocacy that harasses, abuses, or intimidates either party, a witness, or individuals involved in resolving the complaint. Advisors who do not abide by these guidelines may be excluded from the process. Advisors cannot be a witness or party in the matter or a related matter, a family member of the Reporter or Respondent, or an attorney. Additional information on the role of the advisor can be found in the Northwestern Student Handbook, p.106.

**Retaliation**

Northwestern University strictly prohibits retaliation against any member of its community for reporting or inquiring in good faith about what the member believes to be wrongful or unlawful activity, or for participating in an investigation or proceeding related to such activity. The University considers such actions to be protected activities in which all members of the Northwestern community may freely engage. Members of the community are prohibited from engaging in activities, directly or through others that are aimed to deter a reasonable person from engaging in a protected activity or is done in retribution for engaging in a protected activity.

**Interim Suspension**

On August 23, 2020 you were placed on Interim Suspension for allegations currently being jointly investigated by the Office of Equity and Office of Community Standards. That Interim Suspension will remain in place until this matter is resolved, or it is deemed appropriate to lift the interim action.

As a result of this Interim Suspension, you are not permitted to attend class virtually or in person, and are excluded from University property, including the residence halls and University events (both on and off campus). Additionally, you may not submit course work, take final exams, submit final papers/projects, register for class, receive academic credit, attend class, participate in co-curricular activities, conduct research, publish work associated with research conducted at Northwestern, participate in employment at Northwestern, or receive a University degree until the Interim Suspension is lifted or any underlying University investigation is resolved.

Any exception to the restrictions outlined above must be explicitly authorized by me or my designee. If you violate these restrictions without approval, you will be subject to removal or intervention by University Police and may face arrest for trespassing or other actions.

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

**Accommodations**

Should you need a formal accommodation in the process, please contact AccessibleNU within 24 hours of receiving the notice. You are also welcome to contact me with any questions you may have about the Student Conduct process.

Sincerely,

Lucas Christain
Assistant Dean and Director, Office of Community Standards

FILED DATE: 1/11/2021 10:17 AM 2021CH00106

# Exhibit 67

☐ 0012 Petition for Stalking No Contact Order

(03/16/16) CCG N812 A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

People ex rel. _____

_____ on behalf of

_____ self and/or on behalf of

Mona Dugo

Petitioner

v.

Fahad Syed

Respondent

Case No. _____

☑ Independent Proceeding
☐ Criminal Proceeding
☐ Juvenile Proceeding

## PETITION FOR STALKING NO CONTACT ORDER
☑ Emergency ☐ Plenary (Fill in lines and check boxes as applicable)

Now comes the Petitioner Mona Dugo _____ on his/her own behalf or on behalf of

_____, a minor child or on behalf of _____, on his/her own behalf, pursuant to the Stalking No Contact Order Act and moves this Honorable Court to issue a Stalking No Contact Order in this cause and in support thereof states as follows:

### Petitioner Information

☑ Disclosure of the Petitioner's address would risk abuse of the Petitioner or family or household. The address listed is the Petitioner's alternative address for service of Notice.

Name: Mona Dugo

Address: 601 University Pl. #041      City: Evanston      State: IL      Zip: 60208

### Respondent Information

Name: Fahad Syed

Address: 244 E Pearson St #711      City: Chicago      State: IL      Zip: 60611

DOB: 8/28/89   Sex: ☉ Male  ○ Female   Race: SE Asian      Height: 6'0"   Weight: 180

Distinguishing characteristics: black hair, brown eyes

### Respondent Employment Information

Works at: _____

Address: _____

City: _____   State: ____   Zip: _____

Petitioner alleges as to respondent that:

☑ The following individuals are alleged to be persons who need to be protected from stalking by Respondent
Mona Dugo

☑ Respondent has acted in the following manner towards the Petitioner: [State details of incident(s) of stalking (including time and place), as well as effects of incident(s) on Petitioner.]

First Incident Date: _____   Time: _____   ○ AM  ○ PM   Location: _____

Description:
See attached statement of incidences.

_____

_____

_____

Second Incident Date: _____   Time: _____   ○ AM  ○ PM   Location: _____

Description:

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
Page 1 of 2

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

# Exhibit 68

FILED DATE: 1/11/2021 10:17 AM 2021CH00106

1) 8/23/20 11:44am

I began my interaction with Fahad Syed on 8/23/20 at 11:44am. In my capacity as interim dean of students for Northwest University I had to issue him an interim suspension for threatening a fellow law student w/ physical violence. Mr. Syed was on probation for physically assaulting another student.

Between 8/23 – 11/2/2020 Mr. Syed has sent me more than 150 unanswered text messages with increasingly aggressive language.

2) 10-12-20 → 10-19-20

Mr. Syed sends approximately 100 text messages to me. I responded once & told him to stop. The tone is increasingly hostile + aggressive. He accuses me of monitoring his facebook page (I have not). He sends me text from the Quaran which translated says that sinners will die in a fire, he says he will "ruin me", he makes a sexual reference implying I give our deputy chief of police blow jobs + tells me to "suck his dick." There is a lot of foul + aggressive language.

FILED DATE: 1/11/2021 10:17 AM 2021CH00106

3) 11-2-2020 10:28pm
mr. Syed calls me & accuses me of
calling his sister, yells at me for
4 minutes until I hang up on him
& block his phone number. at northwest
we have contracted with a threat
assessment group (Sigma threat) to
help evaluate his threat level. They
talked to his sister, who is a police
officer.

4) He continues to send me harassing
email through my northwestern
email address.

FILED DATE: 1/11/2021 10:17 AM  2021CH00106

# Exhibit 69

FILED DATE: 1/11/2021 10:17 AM    2021CH00106

**From:** **Civilian Office of Police Accountability** COPA-Intake@chicagocopa.org
**Subject:** Form Submission: COPA Online Complaint Form
**Date:** November 11, 2020 at 5:28 PM
**To:** syed.216@gmail.com

Thank you for submitting your complaint using COPA's online complaint form.  A copy of your submission is provided below.

### Name

Fahad Syed

### Primary Address

244 E PEARSON ST APT 711
CHICAGO, Illinois 60611-2368
United States
Map It

### Date of Birth

08/28/2020

### Gender

Male

### Are you a member of the Chicago Police Department?

No

### Best Time to Contact

- Weekday
- Weekend
- Morning
- Afternoon

### Contact Phone Number

(773) 564-0325

### Contact Phone Number Type

Mobile

### Email

syed.216@gmail.com

### Describe the incident.

On 11/11/20, I attempted to file a police report for Eavesdropping at the 18th district police station at approximately 4PM at 1160 N Larrabee St, Chicago, IL 60610 with Officer Ganjanaget (star 5012). She was extremely rude and hostile almost immediately, and refused to file the report and incorrectly recited the elements of the offense indicated below, telling me "it's only eavesdropping if someone else hears it [the conversation] and records it. She then repeatedly went to the back office and came back out incorrectly reciting the actual statute in question and incorrectly reciting the penalty which is a class 4 felony.

After that she called Rozanski (Star 19018) over, who refused to give me his name or star number, (I visually ID'd him) and then proceeded to call emergency back up and claim that I was threatening them.

When I asked for the third officers name and badge number, she refused to give them to me as well (I visually ID'd her) for Star 9507.

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

Together the three officers threatened me with use of force until I left simply for my suggestion that I would be filing a COPA report about this incident.

(720 ILCS 5/14-2) (from Ch. 38, par. 14-2)
Sec. 14-2. Elements of the offense; affirmative defense.
(a) A person commits eavesdropping when he or she knowingly and intentionally:
(1) Uses an eavesdropping device, in a surreptitious

manner, for the purpose of overhearing, transmitting, or recording all or any part of any private conversation to which he or she is not a party unless he or she does so with the consent of all of the parties to the private conversation;
(2) Uses an eavesdropping device, in a surreptitious

manner, for the purpose of transmitting or recording all or any part of any private conversation to which he or she is a party unless he or she does so with the consent of all other parties to the private conversation;
(3) Intercepts, records, or transcribes, in a

surreptitious manner, any private electronic communication to which he or she is not a party unless he or she does so with the consent of all parties to the private electronic communication;
(4) Manufactures, assembles, distributes, or

possesses any electronic, mechanical, eavesdropping, or other device knowing that or having reason to know that the design of the device renders it primarily useful for the purpose of the surreptitious overhearing, transmitting, or recording of private conversations or the interception, or transcription of private electronic communications and the intended or actual use of the device is contrary to the provisions of this Article; or
(5) Uses or discloses any information which he or she

knows or reasonably should know was obtained from a private conversation or private electronic communication in violation of this Article, unless he or she does so with the consent of all of the parties.

**Incident Address**

1160 N Larrabee St
CHICAGO, Illinois 60610
United States
Map It

**Incident Date**

11/11/2020

**Incident Time**

04:00 pm

**Was this in a school?**

No

**Was this in a police facility?**

Yes

**Are you aware of any video or audio recording of the incident?**

Yes

**Do you have a copy of the video or audio recording?**

No

**Would you like for an investigator to contact you in order to retrieve your audio or video recordings?**

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

Yes

**Department Member Name**

Unknown Ganjanaget

**Star Number**

5012

**Gender**

Female

**Ethnicity**

Asian

**Was the Department member in uniform?**

Yes

**Department Member Description**

Hostile and threatening deamenor, short and stubby with dark hair and features. looked mexican or se asian.

**Add another Department Member?**

- Yes, Add Another Department Member

**Department Member Name**

Unknown Roznski

**Star Number**

19018

**Was the Department member in uniform?**

Yes

**Department Member Description**

Tall white and big nose, short gay lesbian haircut with blonde hair. greasy looking face and hair.

**Submitted On**

11/11/2020 17:28:11 America/Chicago

Within five (5) business days, a letter will be mailed to you with respect to whether your complaint falls within COPA's jurisdiction or the jurisdiction of the Bureau of Internal Affairs. If your complaint falls within COPA's jurisdiction, we will proceed to investigation.

If you have any questions about your complaint, please feel free to contact our main office during our business hours and ask to speak with a case liaison.  To the extent you have received the aforementioned letter, please be sure to have the Log# assigned to your case when you call so that we can quickly locate your case file.

For answers to frequently asked questions, please view our FAQs.

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

# Exhibit 70

FILED DATE: 1/11/2021 10:17 AM 2021CH00106

---

**Right document:**

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
DOMESTIC VIOLENCE DIVISION

Fahad Syed
v.
Evangeline Gaugula

20 OP 78083

**ORDER**

This cause coming to be heard on Petitioner's request for an Emergency Order of Protection (EOP) / Civil No Contact Order (CNCO) / Stalking No Contact Order (SNCO), and this court being fully advised;

**THE COURT FINDS:**

☑ PETITIONER is present in open court.
☐ RESPONDENT is present in open court.
☑ PETITIONER received no notice of the petition and is not present.
☑ RESPONDENT received no notice of the petition and is not present.
☐ PETITIONER has not established that there is good cause to grant the remedies requested regardless of prior service of process or of notice upon respondent.
☐ PETITIONER presented insufficient evidence of an EOP/ CNCO / SNCO pursuant to the standards provided for in the Illinois Domestic Violence Act, 740 ILCS 60 / the Civil No Contact Order Act 740 ILCS 21 / the Stalking No Contact Order Act 740 ILCS 21
☐ PETITIONER is not a protected party as defined in the Illinois Domestic Violence Act, 750 ILCS 60 / the Civil No Contact Order Act 740 ILCS 21 / the Stalking No Contact Order Act 740 ILCS 21
☐ The PETITIONER is a RESPONDENT in an EOP / CNCO / SNCO issued.
   ☐ In a civil matter, docket number
   ☐ In a criminal matter, docket number

**IT IS HEREBY ORDERED:**   emergency

☐ The Petition for an EOP / CNCO / SNCO is DENIED.
☐ The Petition for Plenary Order of Protection / CNCO / SNCO is DENIED and
☐ DISMISSED
☑ The Petition for Plenary Order of Protection / CNCO / SNCO shall remain pending and is continued for hearing after service of process and/or notice upon the RESPONDENT.
☐ The matter is continued to  11-24-20  at  1:30 pm
   555 West Harrison St, Chicago, IL Courtroom    5600 Old Orchard Rd
                                                  Rm. 104 Skokie, IL

to follow 20 OP 20532

ENTERED:                     Date                  Thomas M. Cushing

_____                 _____
Judge                                    Judge's No.  1896   Court - 2258

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

---

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
DOMESTIC VIOLENCE DIVISION

Fahad Syed
v.
Mona Dugo

20 OP 78277

**ORDER**

This cause coming to be heard on Petitioner's request for an Emergency Order of Protection (EOP) / Civil No Contact Order (CNCO) / Stalking No Contact Order (SNCO), and this court being fully advised;

**THE COURT FINDS:**

☐ PETITIONER is present in open court.
☐ RESPONDENT received no notice of the petition and is not present.
☐ PETITIONER has not established that there is good cause to grant the remedies requested regardless of prior service of process or of notice upon respondent.
☐ PETITIONER presented insufficient evidence of an EOP/ CNCO / SNCO and does not meet the standards provided for in the Illinois Domestic Violence Act, 750 ILCS 60 / the Civil No Contact Order Act 740 ILCS 21 / the Stalking No Contact Order Act 740 ILCS 21
☐ PETITIONER is not a protected party as defined in the Illinois Domestic Violence Act, 750 ILCS 60 / the Civil No Contact Order Act 740 ILCS 21 / the Stalking No Contact Order Act 740 ILCS 21
☐ The PETITIONER is a RESPONDENT in an EOP / CNCO / SNCO issued.  20 OP 20532
   ☐ In a civil matter, docket number
   ☐ In a criminal matter, docket number

**IT IS HEREBY ORDERED:**   emergency

☐ The Petition for an EOP / CNCO / SNCO is DENIED.
☐ The Petition for Plenary Order of Protection / CNCO / SNCO is DENIED and
☐ DISMISSED
☑ The Petition for Plenary Order of Protection / CNCO / SNCO shall remain pending and is continued for hearing after service of process and/or notice upon the RESPONDENT.
☐ The matter is continued to  11-24-20  at  1:30 pm
   555 West Harrison St, Chicago, IL Courtroom    5600 Old Orchard Rd
                                                  via Zoom

follow 20 OP 20532

ENTERED:                     Date                  Thomas M. Cushing

_____                 _____
Judge                                    Judge's No.  1896   Court - 2258

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

---

Clerk of the Circuit Court
of Cook County, IL

Dorothy Brown

NOV 17 2020

I hereby certify that the document to which this certification is affixed is a true copy.

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

# Exhibit 71

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

## SWORN AFFIDAVIT FOR LOG NUMBER INVESTIGATION
CHICAGO POLICE DEPARTMENT

**STATE OF ILLINOIS**

**COUNTY OF COOK**

CC

| Location of Incident | Date | Time |
|---|---|---|
| 1160 N. LARRABEE | 11 NOV 2020 | 1600 |

Summary of Statement(s):

On 11/11/20 I attempted to file a police report for eavesdropping police report at approx. 4 PM with officer Ganjanaget (5012). because my report JD419862 did not have a named offender and because my report JD395768 was cancelled, and I wanted a named offender on my report. Ganjanaget was rude + hostile almost immediatly, + refused to file the report. She called Rozanski (star 9018) who refused to give me his name or badge and called backup on me when I was asking for it in order to get me to leave. He also refused to take the report Star 9507 also first refused to give me her name + star then later shouted it + I left.

I, __Fahad Syed__ hereby state as follows:

1. I have read the above summary and/or attached statement(s) in its entirety, reviewed it for accuracy and been given an opportunity to make corrections and additions to the statement(s).

2. Under penalties as provided by law pursuant to 735 ILCS 5/1-109, I certify that the information set forth in the statement(s) above and/or attached summary are true and correct, except as to any matters therein stated to be on information and belief as to such matters, I certify as aforesaid that I verily believe the same to be true.

FAHAD SYED
Print Affiant's Name

_(signature)_
Affiant's Signature

22 NOV 2020
Date

SERGEANT LISA EITEL #2075
Print Witness' Name

_(signature)_
Witness' Signature

22 NOV 2020
Date

**INVESTIGATOR USE ONLY**

COMPLETE THIS SECTION ONLY WHEN THE SWORN AFFIDAVIT HAS NOT BEEN SIGNED.

A Sworn Affidavit has not been signed for this investigation under the following circumstances:

☐ NO AFFIDAVIT - NO CONTACT    ☐ NO AFFIDAVIT - REFUSED    ☐ NO AFFIDAVIT - NO COOPERATION    ☐ NO AFFIDAVIT REQUIRED

CPD-44.126 (Rev. 8/16) English

Attachment No. 3

Log No. 2020-0005122

FILED DATE: 1/11/2021 10:17 AM 2021CH00106

# Exhibit 72

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

**AGENCY INFO**

| Agency Name | ORI | Date/Time Arrested | Case # |
|---|---|---|---|
| Evanston Police Department | IL0163200 | 11/19/2020 14:06  Thu | 20010154 |

| Taken | Arrest Tract | Residence Tract | Arrest Number |
|---|---|---|---|
| | | | 53731 |

**ARRESTEE INFO**

| Name (Last, First, Middle) | D.O.B. | Age | Race | Sex | Place of Birth | Citizenship |
|---|---|---|---|---|---|---|
| SYED, FAHAD B | 08/28/1989 | 31 | A | M | | |

| Current Address | Phone | Occupation | Residence Status |
|---|---|---|---|
| 244 EAST PEARSON STREET, 711, CHICAGO, IL 60611 | 773-564-0325 | Student | |

| Employer's Name | Address | Phone |
|---|---|---|
| NORTHWESTERN | | |

| Also Known As (Alias Names) | Hgt | Wgt | Hair | Eyes | Skin Tone |
|---|---|---|---|---|---|
| | 6'01 | 160 | Black | Brown | Light |

| Scars, Marks, Tattoos | Social Security # | OLN and State | Misc. # and Type |
|---|---|---|---|
| | | | |

| Nearest Relative Name | Address | Phone |
|---|---|---|
| | | |

**ARREST INFO**

| If Armed, Type of Weapon | Type of Arrest | Place of Arrest |
|---|---|---|
| UNARMED | TAKEN INTO CUSTODY | 200 EAST PEARSON - 711, CHICAGO |

| Charge #1 | Type | Counts | IBR Code | Warrant/Summons # | Statute # | Warr. Date |
|---|---|---|---|---|---|---|
| Stalking/no Contact Order | Misd | 1 | 90Z | | 720ILCS5/12-3.9(A)(2) | |
| Charge #2 | | | | | | |
| Charge #3 | | | | | | |

**VEH INFO**

| VYR | Make | Model | Style |
|---|---|---|---|
| . | | | |

| Color | Plate #/State/Plate Year | VIN |
|---|---|---|
| | | |

Vehicle

**CONFINED**

| Date/Time Confined | Place Confined | Committing Magistrate |
|---|---|---|
| 12/07/2020 10:30:00 | SKOKIE #104 | |

| Type Bond | Bond Amount | Trial Date | Time | Court Of | City |
|---|---|---|---|---|---|

Arresting Officer Name/ID #/Bureau
JONES, M. (DET, *162) (1576)  INV

| Assisting Officer Name/ID #/Bureau | Released By (Name/Department/ID #) | Date/Time Released |
|---|---|---|

**Status Codes**

1 = None  2 = Burned  3 = Counterfeit / Forged  4 = Damaged  5 = Recovered  6 = Seized  7 = Stolen  8 = Unknown/Lost

| Code | Status | Quantity | Type Measure | Suspected Type |
|---|---|---|---|---|

**Other Name**

| Name | Address | Phone |
|---|---|---|
| Complainant | | |
| Name | Address | Phone |

**NARRATIVE**

In summary on 11/18/20 at approximately 1147 hours, I Detective Jones #162 along with Detective Cepiel #186 met with Northwestern Police Detective Sarah Stark #21 in reference to a violation of a no stalking no contact order.

Stark advised that ████████████████████████████████ has been receiving harassing and threatening text message from student Fahad Syed. These messages were ** Continued **

**STATUS**

| Arresting Officer Signature/ID #/Bureau |
|---|
| JONES, M. (DET, *162) (1576)  INV |

| Case Status | Arrestee Signature |
|---|---|

*Printed By: CDELAROSA, CDELAROS*

r_ar1ibr

ARREST REPORT (Additional Narrative)

| Agency Name | ORI | Date/Time Arrested | Case # |
|---|---|---|---|
| **Evanston Police Department** | **IL0163200** | **11/19/2020  14:06** | **20010154** |
| Arrestee Name | | | Arrest Number |
| **SYED, FAHAD B** | | | **53731** |

being received on ▓▓▓▓ personal cell phone.  The threats and harassing prompted ▓▓▓ to seek a no stalking no contact order through the Cook County Courts , Skokie Second District.

The no contact order was served by members of the Cook County Sheriffs Police Department on November 6th, 2020 at Syed`s apartment and entered into leads.

On November 17th, 2020 at 2121 hours, Syed sent ▓▓▓ an email violating the no stalking no contact order.

On 11/19/20 approximately 1020 hours, Syed was taken into custody at 244 East Pearson in Chicago.

Syed was given an initial court date of 12/07/20, 1030 hours in Skokie.
This interview was captured and tagged on Body worn camera. See BWC for entire interview.

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

**INCIDENT/INVESTIGATION REPORT**

| | |
|---|---|
| Agency Name | *Evanston Police Department* |
| ORI | *IL0163200* |

| Case# | *20-010154* |
|---|---|
| Date / Time Reported | *11/18/2020 11:57  Wed* |
| Last Known Secure | *11/17/2020 21:21  Tue* |
| At Found | *11/18/2020 11:57  Wed* |

Location of Incident: *612 MULFORD ST Apt. 202, Evanston IL 60202*

Gang Relat: NO  Premise Type:  Zone/Beat: EPD, 78

**INCIDENT DATA**

| #1 | Crime Incident(s)  *Violation Order Protection 4387* | (Com) | Weapon / Tools | | | Activity |
|---|---|---|---|---|---|---|
| | | | Entry | Exit | Security | |
| #2 | Crime Incident | ( ) | Weapon / Tools | | | Activity |
| | | | Entry | Exit | Security | |
| #3 | Crime Incident | ( ) | Weapon / Tools | | | Activity |
| | | | Entry | Exit | Security | |

**MO**

**VICTIM**

# of Victims: *1*   Type: INDIVIDUAL   Injury:

| V1 | Victim/Business Name (Last, First, Middle) | Victim of Crime # | DOB | Race | Sex | Relationship To Offender | Resident Status | Military Branch/Status |
|---|---|---|---|---|---|---|---|---|
| | ▓▓▓▓▓▓ | | Age | | | | | |

Home Address: ▓▓▓▓▓▓   Home Phone: ▓▓▓▓▓▓

Employer Name/Address:   Business Phone:   Mobile Phone:

| VYR | Make | Model | Style | Color | Lic/Lis | VIN |
|---|---|---|---|---|---|---|
| | | | | | | |

**OTHERS INVOLVED**

CODES:  V- Victim (Denote V2, V3)   O = Owner (if other than victim)   R = Reporting Person (if other than victim)

Type:   Injury:

| Code | Name (Last, First, Middle) | Victim of Crime # | DOB | Race | Sex | Relationship To Offender | Resident Status | Military Branch/Status |
|---|---|---|---|---|---|---|---|---|
| | | | Age | | | | | |

Home Address:   Home Phone:

Employer Name/Address:   Business Phone:   Mobile Phone:

Type:   Injury:

| Code | Name (Last, First, Middle) | Victim of Crime # | DOB | Race | Sex | Relationship To Offender | Resident Status | Military Branch/Status |
|---|---|---|---|---|---|---|---|---|
| | | | Age | | | | | |

Home Address:   Home Phone:

Employer Name/Address:   Business Phone:   Mobile Phone:

**PROPERTY**

1 = None   2 = Burned   3 = Counterfeit / Forged   4 = Damaged / Vandalized   5 = Recovered   6 = Seized   7 = Stolen   8 = Unknown
("OJ" = Recovered for Other Jurisdiction)

| VI # | Code | Status Frm To | Value | OJ | QTY | Property Description | Make/Model | Serial Number |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

| Officer/ID# | *JONES, M.  (DET, *162) (1576)* | | |
|---|---|---|---|
| Invest ID# | *JONES, M.  (DET, *162) (1576)* | Supervisor | *FAISON, J.  (DET, *7) (1505)* |

| Status | Complainant Signature | Case Status *Open*  *11/19/2020* | Case Disposition: | Page 1 |
|---|---|---|---|---|

R_CS1IBR   Printed By: CDELAROSA, CDELAROS   Sys#: 249441   11/23/2020 11:27

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

## INCIDENT/INVESTIGATION REPORT

*Evanston Police Department*

Case # 20-010154

| Status Codes | 1 = None | 2 = Burned | 3 = Counterfeit / Forged | 4 = Damaged / Vandalized | 5 = Recovered | 6 = Seized | 7 = Stolen | 8 = Unknown |

|   | IBR | Status | Quantity | Type Measure | Suspected Type | |
|---|---|---|---|---|---|---|
| D | | | | | | |
| R | | | | | | |
| U | | | | | | |
| G | | | | | | |
| S | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Assisting Officers

Suspect Hate / Bias Motivated:

*(left margin, rotated)* FILED DATE: 1/11/2021 10:17 AM   2021CH00106

---

NARRATIVE

Officer(s) name and star number(s): M. Jones #162
Response address: 612 Mulford Street #202
Response date and time: 11/17/20, 2121
Nature of Call: Violation no stalking/ no contact order
Recorded on Body Worn Camera: Yes

In summary on 11/18/20 at approximately 1147 hours, I Detective Jones #162 along with Detective Cepiel #186 met with Northwestern Police Detective Sarah Stark #21 in reference to a violation of a no stalking no contact order.

Stark advised that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ has been receiving harassing and threatening text message from student Fahad Syed. These messages were being received on ▉▉▉▉ personal cell phone. The threats and harassing prompted ▉▉▉▉ to seek a no stalking no contact order through the Cook County Courts , Skokie Second District. The no stalking no contact order included stalking by use of device including text messages and emails. The stalking no contact order was granted by Judge Saltouros on November 5th, 2020.
 The no contact order was served by members of the Cook County Sheriff's Police Department on November 6th, 2020 at Syed's apartment and entered into leads. The order is set to expired on November 24th, 2020.

On November 17th, 2020 at 2121 hours, Syed sent ▉▉▉▉ an email stating "YOU HAVEN`T RESPONDED TO THIS YET". This email was sent from fahad-syed@law.northwestern.edu, which is Syed's confirmed email address through Northwestern University. This email was regarding a correspondence that Syed wrote to ▉▉▉▉ on November 4th 2020, when Syed express to ▉▉▉▉ that he did not want his therapist or his sister to be contacted regarding his behavior at school.
On November 19th, 2020 at 1000 hours, Detective Pack #176, Svendsen #164, Detective Stark #21 of the Northwestern Police Department and I headed to 244 East Pearson in Chicago to locate Syed in reference to this investigation. Approximately 20 minutes after arriving to Syed's apartment, Syed opened the door and allowed us inside his apartment (apartment #711). I advised Syed that he will be taken to the Evanston Police Department in reference an stalking order investigation. Syed was transported to the Evanston Police Department by Detective Pack and Svendsen without incident. See Body Worn Camera for full video.

While at the Evanston Police Department, on 11/19/20 at 1059 hours, Syed was read his Miranda warnings off a pre-printed form in which he stated that he understood and signed. While under Miranda, Syed confirmed the above mention email and stated that the email belonged to him. I showed Syed the above email that he sent to ▉▉▉▉ and he stated that his intentions were to send it to the Northwestern University Office of Equality. I explained to Syed that he could explain his intentions to the Judge in court. Syed confirmed that he was served a no contact stalking order at his apartment by the Cook County Sheriff's Department.

Syed was given an initial court date of 12/07/20, 1030 hours in Skokie.

INCIDENT/INVESTIGATION REPORT

Narr. (cont.)  OCA: 20-010154                    *Evanston Police Department*

This interview was captured and tagged on Body worn camera. See BWC for entire interview.

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

# Exhibit 73

FILED DATE: 1/11/2021 10:17 AM  2021CH00106

**From:** **City of Evanston** no-reply@wufoo.com 🚩
**Subject:** Police Employee Complaint Form
**Date:** November 21, 2020 at 1:56 PM
**To:** syed.216@gmail.com

Your complaint has been submitted. A police department official will contact you promptly.

# Police Employee Complaint Form

| | |
|---|---|
| **Name:** * | Fahad  Syed |
| **Address:** * | 244 E PEARSON ST APT 711<br>CHICAGO, IL 60611–2368<br>United States |
| **Best Time to Contact** | Morning |
| **Phone Number** * | (773) 564–0325 |
| **Email Address:** * | syed.216@gmail.com |
| **Age (Requested for statistical data)** * | 31 |
| **Race/Ethnic Background (Requested for statistical data)** * | Asian |
| **Approximate time of incident:** * | 12:00:00 PM |
| **Approximate time of incident:** * | Thursday, November 19, 2020 |
| **Address where incident occurred:** * | 244 E PEARSON ST APT 711 |
| **Date** | Thursday, November 19, 2020 |
| **Description of participants:** * | Detective Jones and three white officers, two male and one female. |
| **Name(s) of witness:** | Sgt. Sophia Syed |

**Please provide a full detailed account of your complaint and the nature of the incident.** *

1. On 11/19/20, four officers of the Evanston Police Department, including Detective Jones, came to my apartment at 244 E Pearson St. Chicago, IL 60611 at approximately 11:00 AM CST and arrested me without telling me what charges they were arresting me for, without letting me take my medicine, and without reading me my rights.

2. When I answered the door, they said they needed to "talk to me about the discrimination by Northwestern University," so I let them come into my apartment.

3. While they were inside my apartment they repeatedly and purposefully stepped on my prayer rug even after I asked the first officer not to step on on in, in direct disrespect of my religious beliefs, and laughed as they did it and I asked them not to. They made derogatory statements about the rug, saying it was "beautiful" after repeatedly stomping on it and laughing.

4. Detective Jones arrested me inside me house without even telling me what I was under arrest for

4. Detective Jones arrested me inside me house without ever telling me what I was under arrest for or reading me my rights.

5. The four officers took me to Evanston police station and the four officers made me sit in an interrogation room and made me make incriminating statements without the presence of a lawyer, while under duress, which I did not understand.

6. During this interrogation, they said that calling a lawyer would take "several hours" and made it seem like if I requested a lawyer, that I would have to get on myself. They said they "might" be able to call the public defender, but that it would take hours. In order to clear myself of the charges, I was misled into saying that they could question me without a lawyer. This is because I was not on my medication and not in the right state of mind to understand what was happening.

7. They never mirandized me before arresting me and they never explained what I was charged with until they had brought me to the station and questioned me in a room with four officers yelling at me, and while I did not have medication and did not know what was happening, in this way they took advantage of my ADA learning disabilities in order to force me to make incriminating statements in violation of my constitutional rights to be free of self-incriminating statements. They repeatedly told me that "they knew my people" and that they would "take care of me" in apparent reference to my sister Sgt. Syed of Evanston Police.

9. Jones called repeatedly called me "little bro" and other derogatory statements while I was in his custody.

10. They never allowed me to take my medicine prior to arresting me without reading me my rights, and they knowingly forced me to undergo questioning while not on my medication or in the right state of mind to adequately represent myself. This is despite them knowing that I take medications, which they learned at my apartment.

11. They never established probable cause for the arrest and never showed me the alleged probable cause when I asked for it, despite the fact that I asked for it at least four separate times. They simply asked me what my email was, and when I told them, they falsely claimed that I had admitted to sending the alleged email in question to the states attorney.

12. They then took my property and refused to give it back, including court documents which evidenced that I had requested a no contact order against the person who alleged that I violated the no-contact order and had me arrested. They took this property without ever intending on reviewing it for the purposed of assessing the charges against me, and without ever intending on returning the paperwork. In this way they deprived me of my right to the materials I needed to adequately represent my defense during the court proceedings for this case.

13. Despite the fact that I told them that Mona Dugo, the complaining witness for this arrest was retaliating against me for Department of Education complaint 05-20-2444 which I had provided to them, in addition to the stalking no contact hearing, they still charged me with the offenses.

| | | |
|---|---|---|
| **Use this file upload option if you wish to include any additional documentation.** |  | img_5884.jpg<br>2.34 MB · JPG |
| **Enter your name affirming your agreement.** * | Fahad  Syed | |

FILED DATE: 1/11/2021 10:17 AM    2021CH00106

# Exhibit 74

FILED DATE: 1/11/2021 10:17 AM 2021CH00106





FILED DATE: 1/11/2021 10:17 AM   2021CH00106

FILED DATE: 1/11/2021 10:17 AM   2021CH00106

# Exhibit 75

3303 - Notice of Motion
2871 - Certificate of Mailing Filed                                      (11/07/16) CCDV N012

FILED
11/30/2020 12:00 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020OP20532

FILED DATE: 1/11/2021 10:17 AM  2021CH00106
FILED DATE: 11/30/2020 12:00 AM  2020OP20532

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## CRIMINAL DEPARTMENT, DOMESTIC VIOLENCE COURT

IN RE THE   MARRIAGE   CIVIL UNION   CUSTODY
 SUPPORT OF ✓ ORDER OF PROTECTION
 PARENTAGE   OTHER _____ :

Fahad Syed                                              No. 20OP20532
_____
                                  **Petitioner**

          **and**                          Calendar _____

Mona Dugo
_____
                                  **Respondent**

### NOTICE OF MOTION

To:

On _____ 9:30 _____ at ☒ a.m./○ p.m., or as soon thereafter as counsel may be heard, I shall appear before the Honorable

 Judge Stephanie D. Saltouros #2161 , or any judge sitting in his/her stead, in Courtroom number _____ 106 _____ ,

in the court house located at:

○ Parentage and Child Support Court, Richard J. Daley Center, 50 W. Washington St., CL-24, Chicago, Illinois 60602

○ Richard J. Daley Center, 50 W. Washington St., Chicago, IL 60602

⦿ District 2: 5600 Old Orchard Rd, Skokie, Illinois 60077

○ District 3: 2121 Euclid, Rolling Meadows, Illinois 60008

○ District 4: 1500 Maybrook Dr, Maywood, Illinois 60153

○ District 5: 10220 S. 76th Ave, Bridgeview, Illinois 60455

○ District 6: 16501 S. Kedzie Pkwy, Markham, Illinois 60426

○ Domestic Violence Court: 555 W. Harrison, Chicago, Illinois 60607

and present the attached pleading requesting: ___ Motion for Sanctions _____
_____
_____ .

| | |
|---|---|
| Atty. No.: 99500 | Primary Email: sycd.216@gmail.com |
| Name: Fahad Syed | Secondary Email: Fahad-Syed@law.northwestern.edu |
| Atty. for: Self | Tertiary Email: |
| Address: 244 E Pearson St. Apt. 711 | Atty. Signature: /s/ _____ |
| City/State/Zip: Chicago, IL, 60611 | |
| Telephone: 773-564-0325 | |

### CERTIFICATE AND AFFIDAVIT OF DELIVERY PERSONALLY , BY MAIL, BY FACSIMILE, OR BY EMAIL

The undersigned hereby certifies under penalties of perjury as provided by law pursuant to 735 ILCS 5/1-109, that the above notice

and any attached pleadings were ○ personally delivered OR ○ placed in the U. S. mail at

_____ , with first class postage prepaid and directed to all parties of record at the address(es)

set forth above, on or before 5:00 p.m. on _____ , OR I served this notice electronically ⦿ via the Clerk's of-

fice E-Filing system OR ○ via facsimile ( ____ pages sent from the office of: _____ , sender's

facsimile number is _____ to recipient's facsimile number _____ ) OR

○ via email (sender's email is _____ to recipient's email _____ ).

/s/ _____                    Fahad Syed
**(Signature)**                         **(Print Name)**

### DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
Page 1 of 1

**Motion - General Form** (This form replaces CCMD-39)                    (2/24/05) CCG N702

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

FILED
11/30/2020 12:00 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020OP20532

FILED DATE: 1/11/2021 10:17 AM   2021CH00106
FILED DATE: 11/30/2020 12:00 AM   2020OP20532

Mona Dugo

_____
                                    **Plaintiff(s)**

                    v.                                    No.   20OP20532
                                            _____

Fahad Syed

_____
                                    **Defendant(s)**

TO: The Honorable Judge Stephanie D. Saltouros #2161
_____

MOTION BY   Defendent        FOR   Sanctions
_____        _____

Illinois Supreme Court Rule 137. Signing of Pleadings, Motions and Other Documents—Sanctions -
IL R S CT Rule 137

Opposing counsel and the complaining witness Mona Dugo violated the following pertinent section
of Rule 137: "The signature of an attorney or party constitutes a certificate by him that he has read
the pleading, motion or other document; that to the best of his knowledge, information, and belief
formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-
faith argument for the extension, modification, or reversal of existing law, and that it is not interposed
for any improper purpose, such as to harass."

Please see attached affidavit for full description of misconduct.

    **I (We) do hereby certify that a copy of this instrument was served upon all parties who have appeared
and have not previously been found by the Court to be in default for failure to plead.**

Dated: 11/27/20
_____,  _____   /s/ _____
                                                            **Attorney Certification**

Atty. No.: 99500
Name: Fahad Syed
Atty. for: Self
Address: 244 E Pearson St. Apt. 711
City/State/Zip: Chicago, IL, 60611
Telephone: 773-564-0325

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

FILED
11/30/2020 12:00 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020OP20532

FILED DATE: 1/11/2021 10:17 AM  2021CH00106
FILED DATE: 11/30/2020 12:00 AM  2020OP20532

1. On 11/6/20 Plaintiff was served with a protection order ("PO") (Case 200P20532) for harassment and Stalking from the Cook County Sheriffs office, in which Dugo made several misleading allegations as to my contact with her due to her official capacity as dean of students. The stated pretext was that I was sending her "100's of harassing messages" whereas in reality I was informing her of discrimination that was ongoing and pleading for her to step in and stop it due to her duty as dean of students. This pretext was a cover for her requesting both a threat assessment and a protecting order against me based SOLEY off threat from my perceived disability. The stalking no contact order was taken especially to label me as a sexual offender in retaliation for my DOE complaint.

2. In addition, she made derogatory and misleading accusations in PO about the Holy Quran Chapter 33, Verses 60-68: referring to them as "translated as sinners will die in a fire". She took the protection order for harassment and stalking based on perceived threat from Plaintiffs religion.

3. Her allegations in support or PO were misleading or defamatory in the following ways:

   I. She claims she "had to issue" Plaintiff "interim suspension for threatening a fellow law student w/ physical violence." This is false, she knows that the student in question,  REDACTED  , stalked me and then posted my information to a group chat and made derogatory statements about my disability, then called me at 1:08 am in a threatening manner and recorded BOTH the call that she made to me and the call that I made in response. These two illegal audio tapes are what Dugo actually suspended me over. She misrepresented this fact deliberately in order to make me seem like a dangerous person.

   II. She claims I was on probation for "physically assaulting another student." This is false, she knows that there was absolutely no evidence whatsoever that I assaulted anyone aside from that single persons unsubstantiated allegations. She misrepresented this fact deliberately in order to make me seem like a dangerous person. I have filed Attorney General Case 20cv1772 pursuant to this allegation.

FILED DATE: 1/11/2021 10:17 AM 2021CH00106
FILED DATE: 11/30/2020 12:00 AM 2020OP20532

III.     She claims that I have sent her "more than 150 unanswered text messages with increasingly

aggressive language." This is without indicating that the messages are sent to her because of her

official capacity as dean of students, and because I am telling her about discrimination committed by

Deputy Chief Eric Chin of NUPD, Lee of NUPD, and others in the University and asking her to stop

them. The "aggressive language" she is referring to is the increasing amount of litigation and legal

proceedings that I am threatening her with if she does not cease her illegal conduct.

IV.     She claims she "has not" monitored my Facebook. This is blatantly false, because she on 8/23/20 she

called me and explicitly stated  "we've been watching your facebook and other social medial posts"

and she also directed detective Lee to call me and interrogate me on the basis of her perceived threat

from my Facebook post about my Department of Education Complaint.

V.     She claims that I am sending her "harassing" messages to her work email when in reality I sent her

two follow emails demanding to know who contacted my sister when I told her not to.

4.     On 11/19/20, Mona Dugo reported to Evanston Police that I had violated the PO which she

unlawfully had placed on me as a result of one my emails to the school asking for them to address the

unlawful contact with my family which had taken place earlier in the month of October and which I had

reported to DOE and the University.

5.     On 11/19/20, four officers of the Evanston Police Department, including Detective Jones, came to

my apartment at 244 E Pearson St. Chicago, IL 60611 at approximately 11:00 AM CST and arrested me

without telling me what charges they were arresting me for, without letting me take my prescribed

medicine, and without reading me my rights.

6.     When I answered the door, they said they needed to "talk to me about the discrimination by

Northwestern University," so I let them come into my apartment.

7.     While they were inside my apartment they repeatedly and purposefully stepped on my prayer rug

even after I asked the first officer not to step on in, in direct disrespect of my religious beliefs, and

laughed as they did it and I asked them not to. They made derogatory statements about the rug, saying it

was "beautiful" after repeatedly stomping on it and laughing.

FILED DATE: 1/11/2021 10:17 AM  2021CH00106
FILED DATE: 11/30/2020 12:00 AM  2020OP20532

8.      Detective Jones arrested me inside me house without ever telling me what I was under arrest for or reading me my rights.

9.      The four officers took me to Evanston police station and the four officers made me sit in an interrogation room and made me make incriminating statements without the presence of a lawyer, while under duress, which I did not understand.

10.     During this interrogation, they said that calling a lawyer would take "several hours" and made it seem like if I requested a lawyer, that I would have to get on myself. They said they "might" be able to call the public defender, but that it would take hours. In order to clear myself of the charges, I was misled into saying that they could question me without a lawyer. This is because I was not on my medication and not in the right state of mind to understand what was happening.

11.     They never mirandized me before arresting me and they never explained what I was charged with until they had brought me to the station and questioned me in a room with four officers yelling at me, and while I did not have medication and did not know what was happening, in this way they took advantage of my ADA learning disabilities in order to force me to make incriminating statements in violation of my constitutional rights to be free of self-incriminating statements. They repeatedly told me that "they knew my people" and that they would "take care of me" in apparent reference to my sister Sgt. Syed of Evanston Police.

12.     Jones called repeatedly called me "little bro" and other derogatory statements while I was in his custody.

13.     They never allowed me to take my medicine prior to arresting me without reading me my rights, and they knowingly forced me to undergo questioning while not on my medication or in the right state of mind to adequately represent myself. This is despite them knowing that I take medications, which they learned at my apartment.

14.     They never established probable cause for the arrest and never showed me the alleged probable cause when I asked for it, despite the fact that I asked for it at least four separate times. They simply

FILED DATE: 1/11/2021 10:17 AM  2021CH00106
FILED DATE: 11/30/2020 12:00 AM  2020OP20532

asked me what my email was, and when I told them, they falsely claimed that I had admitted to sending

the alleged email in question to the states attorney.

15.     They then took my property and refused to give it back, including court documents which

evidenced that I had requested a no contact order against the person who alleged that I violated the no-

contact order and had me arrested. They took this property without ever intending on reviewing it for the

purposed of assessing the charges against me, and without ever intending on returning the paperwork. In

this way they deprived me of my right to the materials I needed to adequately represent my defense

during the court proceedings for this case.

16.     Despite the fact that I told them that Mona Dugo, the complaining witness for this arrest was

retaliating against me for Department of Education complaint 05-20-2444 which I had provided to them,

in addition to the stalking no contact hearing, they still charged me with the offenses. The Dean reported

me and discriminated against me on the basis of his mental health, in retaliation for the Department of

Education complaint, which she was fully aware through the university on 9/3/20 through an email to

Lucas Christian and 9/13/20 through an email to the Office of Equity.

17.     On 11/24/20 at or around 1:30 PM, Plaintiff attended a court hearing for Case 200P20532.

During the hearing, the judge asked if anyone had Plaintiff's allegations, and opposing counsel

representing Mona Dugo for Case 200P20532 indicated that she had the complaint in front of her.

18.     The judge asked whether Plaintiff had "stated any facts" in support of his petition.

19.     The opposing counsel representing Mona Dugo for Case 200P20532 replied that he [Plaintiff]

had "not stated any facts." This was a blatant act of perjury to the court, for Plaintiff had alleged over 25

separate, distinct, and numbered allegations containing many facts. Opposing counsel had the complaint

in her possession and lied about the fact that Plaintiff had "stated facts" in support of his SNCO petition

in order to mislead the judge.

20.     Opposing counsel, after committing perjury to the court, then requested that Plaintiff's SNCO be

dismissed, without the judge ever having read Plaintiff's factual allegations, which were deemed worthy

of a hearing (20 OP 78277) by the Honorable Judge Thomas M. Cushing #2258 during a hearing held on

FILED DATE: 1/11/2021 10:17 AM  2021CH00106
FILED DATE: 11/30/2020 12:00 AM  2020OP20532

11/17/20 at 555 W Harrison St, Chicago, IL and subsequently transferred to the Honorable Stephanie D.

Saltouros #2161 for review.

21.     Opposing counsel and the complaining witness Mona Dugo violated the following pertinent

section of Rule 137: "The signature of an attorney or party constitutes a certificate by him that he has read

the pleading, motion or other document; that to the best of his knowledge, information, and belief formed

after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith

argument for the extension, modification, or reversal of existing law, and that it is not interposed for any

improper purpose, such as to harass."

22.     The allegations brought by Dugo and her attorney were not well-grounded in fact and not

warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing

law, but in fact were misleading attempts to retaliate against and harass plaintiff for his SNCO (20 OP

78277) and for his DOE complaint.