# EXHIBIT B – PART 2

# List of Documents Received by Northwestern for Cook County Case No. 2021 CH 00106

| Exhibit B – Part 1 | | | |
|---|---|---|---|
| Tab No. | Filing Date and Time | Envelope No. | Document Description |
| 1. | 1/11/2021 7:33 | 11624454 | Plaintiff's Application for Preliminary Injunction, Temporary Restraining Order, and Expedited Discovery Against Northwestern University_Redacted |
| 2. | 1/11/2021 7:33 | 11624454 | Affidavit in Support Plaintiff's Application for Preliminary Injunction, Temporary Restraining Order, and Expedited Discovery Against Northwestern University |
| 3. | 1/11/2021 7:33 | 11624454 | Exhibits 11-15 to Plaintiff's Application for Preliminary Injunction, Temporary Restraining Order, and Expedited Discovery Against Northwestern University_Redacted |
| 4. | 1/11/2021 7:33 | 11624454 | Plaintiff's Application for Fee Waiver Petition against NU |
| 5. | 1/11/2021 10:17 | 11775023 | Plaintiff's Motion for Preliminary Injunction, Temporary Restraining Order, and Expedited Discovery Against Northwestern University_Redacted |
| 6. | 1/11/2021 10:17 | 11775023 | Exhibits 1-10 to Plaintiff's Motion for Preliminary Injunction, Temporary Restraining Order, and Expedited Discovery Against Northwestern University |
| 7. | 1/11/2021 10:17 | 11775023 | Exhibits 45-75 to Plaintiff's Motion for Preliminary Injunction, Temporary Restraining Order, and Expedited Discovery Against Northwestern University_Redacted |
| **Exhibit B – Part 2** | | | |
| **Tab No.** | **Filing Date and Time** | **Envelope No.** | **Document Description** |
| 8. | 1/12/2021 12:47 | 11799352 | Plaintiff's Notice of Motion Filed for Special Process Server |
| 9. | 1/12/2021 12:47 | 11799352 | Plaintiff's Motion to Appoint Special Process Server |
| 10. | 1/12/2021 1:37 | 11800146 | Plaintiff's Notice of Motion for Preliminary Injunction, Temporary Restraining Order, and Expedited Discovery Against Northwestern University_Redacted |
| 11. | 1/12/2021 1:37 | 11800146 | Plaintiff's Motion for Preliminary Injunction, Temporary Restraining Order, and Expedited Discovery Against Northwestern University_Redacted |
| 12. | 1/12/2021 1:37 | 11800146 | Affidavit in Support Plaintiff's Application for Preliminary Injunction, Temporary Restraining Order, and Expedited Discovery Against Northwestern University |
| 13. | 1/12/2021 1:37 | 11800146 | Exhibits 11-15 to Plaintiff's Motion for Preliminary Injunction, Temporary Restraining Order, and Expedited Discovery Against Northwestern University_Redacted |
| 14. | 1/12/2021 1:37 | 11800146 | Plaintiff's Exhibits 16-30 to Plaintiff's Motion for Preliminary Injunction, Temporary Restraining Order, and Expedited Discovery Against Northwestern University_Redacted |

# EXHIBIT B – TAB 8

FILED
1/12/2021 12:47 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH00106
11799352

FILED DATE: 1/12/2021 12:47 PM 2021CH00106

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Fahad Syed

v.

Northwestern University

No. 2021CH00106

## NOTICE OF MOTION

To:
Northwestern University

On 1/13/21 at 1:00 PM a.m/p.m. or as soon thereafter as counsel may be heard, I shall appear before the Honorable Celia G. Gamrath or any judge sitting in that Judge's stead, in the courtroom usually occupied by him/her, located at 50 W. Washington St., Rm. 2508, Illinois, and present A motion for the appointment of special process server.

Atty. No.: ______ Pro se 99500
Name: Fahad Syed
Atty. for: Self
Address: 244 E Pearson St. Apt. 711
City/State/Zip Code: Chicago/IL/60611
Telephone: 773-564-0325
Primary Email: syed.216@gmail.com
Secondary Email: fahadbsyed@gmail.com
Tertiary Email: ______

### ☐ PROOF OF SERVICE BY DELIVERY

I, ______, ☐ the attorney ☐ non-attorney certify that on the ______ day of ______, I served this notice by delivering a copy personally to each person to whom it is directed.

Dated: ______ ______
Signature/Certification

### ☐ PROOF OF SERVICE BY MAIL

I, ______, ☐ the attorney ☐ non-attorney certify that I served this notice by mailing a copy to ______ at ______
(address on envelope)
and depositing the same in the U.S. Mail at ______
(place of mailing)
at ______ a.m/p.m.. on the ______ day of ______, with proper postage prepaid.

Dated: ______ ______
Signature/Certification

### ☐ PROOF OF ELECTRONIC SERVICE (WHERE PERMISSIBLE)

I, Fahad Syed ☐ the attorney ☑ non-attorney certify that on the 12th day of January, I served this notice electronically ☑ via the Clerk's Office E-filing system, or ☐ by telefax transmission (______ pages) with consent of the recipient where permissible under Ill. Sup Ct. R.11, at fax no. ______ ,at 1 PM a.m./p.m.,from ______ .
(Place)

☐ Via email (Sender's Email is ______
Recipient's email is: ______ ) .

Dated: 1/12/21 [signature]
Signature/Certification

NOTE: If more than one person is served by delivery or mail, additional proof of service may be made by attaching an additional sheet to this Notice of Motion.

IRIS Y. MARTINEZ, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

# EXHIBIT B – TAB 9

**Motion - General Form** (This form replaces CCMD-39) **(12/01/20) CCG 0702**

FILED DATE: 1/12/2021 12:47 PM 2021CH00106

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

FILED
1/12/2021 12:47 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH00106

11799352

Fahad Syed
**Plaintiff(s)**

**v.**

Northwestern University
**Defendant(s)**

**No.** 2021CH00106

**TO:** The Honorable Judge Celia G. Gamrath

**MOTION BY** Plaintiff **FOR** **Appointment of Special Process Server**

I. Petitioner moves this Court to order service of process in this cause to be made by the following individual, who is over the age of eighteen and not a party to this cause:

NAME:

**ABCLegal.com**

ADDRESS:

**633 Yesler Way Seattle, WA 98104**

II. The appointment of a special process server will facilitate the administration of justice.

**I (We) do hereby certify that a copy of this instrument was served upon all parties who have appeared and have not previously been found by the Court to be in default for failure to plead.**

**Dated:** 1/12/21 , /s/ [signature]
**Attorney Certification**

**Atty. No.:** 99500
**Name:** Fahad Syed
**Atty. for:** Plaintiff
**Address:** 244 E Pearson St. Apt. 711
**City/State/Zip:** Chicago, IL, 60611
**Telephone:** 773-564-0325

# EXHIBIT B – TAB 10

Return Date: No return date scheduled
Hearing Date: 1/20/2021 9:15 AM - 9:15 AM
Courtroom Number: N/A
Location: District 1 Court
Cook County, IL

3303

(12/01/20) CCG 0003

FILED
1/12/2021 2:58 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH00106

11803728

FILED DATE: 1/12/2021 2:58 PM 2021CH00106

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Fahad Syed

v.

Northwestern University

No. 2021CH00106

## NOTICE OF MOTION

To:
Northwestern University

On 1/20/21 at 9:15 AM a.m/p.m. or as soon thereafter as counsel may be heard, I shall appear before the Honorable Celia G. Gamrath or any judge sitting in that Judge's stead, in the courtroom usually occupied by him/her, located at 50 W. Washington St., Rm. 2508, Illinois, and present Motion for Preliminary Injunction and Temporary Restraining Order.

Atty. No.: ______ Pro se 99500
Name: Fahad Syed
Atty. for: Self
Address: 244 E Pearson St. Apt. 711
City/State/Zip Code: Chicago/IL/60611
Telephone: 773-564-0325
Primary Email: syed.216@gmail.com
Secondary Email: fahadbsyed@gmail.com
Tertiary Email: ______

### ☐ PROOF OF SERVICE BY DELIVERY

I, ______, ☐ the attorney ☐ non-attorney certify that on the ______ day of ______, I served this notice by delivering a copy personally to each person to whom it is directed.

Dated: ______ ______
Signature/Certification

### ☐ PROOF OF SERVICE BY MAIL

I, ______, ☐ the attorney ☐ non-attorney certify that I served this notice by mailing a copy to ______ at ______
(address on envelope)
and depositing the same in the U.S. Mail at ______
(place of mailing)
at ______ a.m/p.m.. on the ______ day of ______, with proper postage prepaid.

Dated: ______ ______
Signature/Certification

### ☐ PROOF OF ELECTRONIC SERVICE (WHERE PERMISSIBLE)

I, Fahad Syed ☐ the attorney ☑ non-attorney certify that on the 12th day of January, I served this notice electronically ☑ via the Clerk's Office E-filing system, or ☐ by telefax transmission (______ pages) with consent of the recipient where permissible under Ill. Sup Ct. R.11, at fax no. ______, at 1 PM a.m./p.m., from ______.
(Place)

☐ Via email (Sender's Email is ______
Recipient's email is: ______).

Dated: 1/12/21 [signature]
Signature/Certification

NOTE: If more than one person is served by delivery or mail, additional proof of service may be made by attaching an additional sheet to this Notice of Motion.

**IRIS Y. MARTINEZ, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

# EXHIBIT B – TAB 11

Hearing Date: 1/20/2021 9:15 AM - 9:15 AM
Courtroom Number:
Location:

FILED
1/12/2021 1:37 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH00106

11800146

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| FAHAD SYED, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. **2021CH00106** |
| | ) | |
| NORTHWESTERN UNIVERSITY, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION, TEMPORARY RESTRAINING ORDER, AND EXPEDITED DISCOVERY AGAINST NORTHWESTERN UNIVERSITY**

NOW INTO COURT comes plaintiff, FAHAD SYED, Pro Se, and for the reasons set forth fully in the Memorandum in Support of Plaintiffs' Motion for Temporary Restraining Order, moves this court, pursuant to 735 ILCS 5/11-101 of the Illinois Code of Civil Procedure, for a temporary restraining order, restraining, enjoining and/or prohibiting defendants, NORTHWESTERN UNIVERSITY ("NU") and/or any of their agents, representatives, or anyone acting on their behalf, from taking any action adverse to plaintiffs status as a student at Northwestern University resulting from his EXPULSION pending disposition of plaintiffs' claim that defendants, and others, violated his rights guaranteed by the Constitution and laws of the United States of American and the state of Illinois.

Plaintiff also seeks an order requiring defendants and their employees, agents and all others acting in concert with them: to immediately place Fahad Syed into a regular class at Northwestern University School of Law for Spring 2021 Semester or find some suitable alternative learning arrangement. In addition, Plaintiff moves the Court for entry of an order permitting expedited discovery of records related to his claims.

On the facts in the Complaint, the attached Memorandum of Law and the affidavits of expert witnesses,

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

plaintiff will demonstrate that immediate injunctive relief should issue because defendants are unlawfully discriminating against an otherwise qualified individual with a disability from participation in an educational program which receives federal financial assistance, in violation of Section 504 of the Rehabilitation Act of 1973 (Section 504), 29 U.S.C. § 794, and its implementing regulation at 34 C.F.R. Part 104, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181–12189, and its implementing regulation at 28 C.F.R. Part 36 prohibiting discrimination on the basis of disability by public accommodations and in commercial facilities; and because defendants are unlawfully discriminating against an otherwise qualified male individual from participation in an educational program which receives federal financial assistance in violation of Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. §§ 1681–1688, and its implementing regulation, 34 C.F.R. Part 106 prohibiting discrimination on the basis of sex in any education program or activity operated by a recipient of Federal financial assistance (FFA) from the Department of Education.

In support of this motion, plaintiff states the following:

1.        Plaintiff is a 31-year-old brown Muslim man living within the jurisdiction of Cook County, Chicago. On or about 11/1/19, plaintiff was diagnosed as having Bi-Polar disorder, in conjunction with previously diagnosed Attention Deficit Hyperactivity Disorder, and co-morbid anxiety and depression disorders.

2.        As more fully described in the Complaint, during the week of August 17th-21st, 2020, Defendant Northwestern University ("NU") has excluded plaintiff from the regular class for the entire duration of the 2020 incoming JD class orientation period based on NU's perceived threat resulting from its knowledge of his previously existing mental health treatment history with Northwestern Memorial Hospital regarding his initial diagnosis of bi-polar. NU offered no alternative learning opportunities to the plaintiff.

3.        Thereafter, on or about August 23rd, 2020, NU placed Plaintiff on a special "interim suspension" for the entire duration of Fall 2020 semester based on comments he made on two audio recordings of his private phone calls with another NU student,   REDACTED   a white transgender student, which were recorded without his consent or knowledge and wherein he made no articulable threat of violence. Following this interim suspension, on 12/22/20, NU expelled the Plaintiff, pending any internal appeal to be submitted by 1/4/21. It

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

should be noted that Plaintiff requested NU for an extension of the date due to contemporaneous holiday season, however they denied his request without adequate explanation.

4. Plaintiff is likely to prevail on the merits of his claim. Defendants discriminated against plaintiff solely because of threat from his perceived disability, he is "otherwise qualified" to participate in a regular classroom education pursuant to § 504, and defendants' actions are unsupported by reliable medical or scientific evidence and are irrational and based solely on vague, undifferentiated fears.

5. Defendants' decision is causing plaintiff irreparable harm for which there is no adequate remedy at law. Because NU expulsion decisions are permanent, there is a substantial risk that plaintiff will be unable to attend school before the merits of this action are concluded and a permanent injunction is entered. The educational restrictions imposed by defendants are presently causing plaintiff psychological harm and substantially diminishing the quality of his life.

6. The threat of injury to plaintiff outweighs any harm to defendants. Placing plaintiff in a regular classroom poses no significant health or safety risk to himself, his classmates or his teachers. Permitting plaintiff to participate in classroom education will enhance the quality of his education as well as that of his fellow students.

7. Granting a temporary restraining order will serve the public interest. Defendants' irrational and unlawful conduct has caused confusion and unwarranted fear in a manner which damages the public health every day it is permitted to continue. In addition, the students in Northwestern University Community are being deprived of plaintiff's contribution to their educational experience and social development.

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION

### I. STATEMENT OF FACTS

8. Plaintiff is Fahad Syed, a first-generation college graduate from a low-income, racial and ethnic minority household and was raised by a single mother, and the first in his family to attend law school. Plaintiff's parents legally separated when he was 8 years old due to his father's violence towards

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

the children, and Plaintiff grew up in an inner-city low-income housing project, a crime-laden environment devoid of positive male role-models and influences.

9. Plaintiff suffers from multiple ADA learning and cognitive disabilities of bipolar disorder and ADHD, as well as anxiety and depression. One of the major "episodic manifestations" of Plaintiffs bipolar disorder are "psychotic episodes" triggered by stress, which induce varying levels of anger, paranoia, frustration, irritability, temper, etc.

10. Plaintiff first made the decision to pursue law school in 2015, at the age of 25. Plaintiff had a successful career managing IT operations at a Fortune 100 company after graduating in 2012 with a 3.0 overall GPA from a Top 50 undergrad with a Top 10 undergrad business ranking with dual bachelors degrees in busines economics and political science and 3.3 and 3.9 major GPA's respectively. In addition, plaintiff holds multiple industry standard IT certifications, further illustrating his professional competency and capabilities. Plaintiff is actively involved in community building efforts and helped found a non-profit for refugee assistance (Iraqi Mutual Aid Society) during college and is currently affiliated with another non-profit (Inner-City Muslim Action Network) for which he does volunteering and other work.

**NU Law Class of 2017 Admission and Rejection**

11. Plaintiff always wanted to attend law school at NU, and his studying eventually paid off as he took the LSAT two times in 2017, receiving two 166 (93rd Percentile) scores on both attempts, and applied for Early Decision Admission to NU Law School in 2017 by the age of 27, but subsequently received a rejection.

**NU Law Class of 2018 Early-Decision Admission**

12. Despite the rejection, Plaintiff was still determined to attend law school at NU, and studied and retook the LSAT again on two separate occasions, scoring 168 (96rd Percentile) and 170 (98rd Percentile) and successfully re-applied for admission through Early Decision ("ED") to Northwestern University Law School JD class of 2018 with 150K scholarship on December 13th, 2017 at the age of 28. This was the happiest moment of Plaintiff's life.

FILED DATE: 1/12/2021 1:37 PM    2021CH00106

**2018 Discriminatory Conduct**

13.     On April 26th, 2018 Plaintiff's 2018 Early-Decision Application and subsequent admission was subject to an unannounced post admission review which was highly irregular in process and was on the basis of "alleged inaccurate information in [Plaintiff's] Fall 2018 JD application related to [Plaintiff's] employment history, collegiate extracurricular activities, and family background." As far as plaintiff knows, no other 2018 early decision admit, nor 2018 general admit was subject to this kind of irregular "verification" based on "alleged inaccurate information" related to "employment history, collegiate extracurricular activities, and family background."

14.     The source or intended meaning of allegations in paragraph 6 was never revealed, even after Plaintiff successfully cleared the investigation on May 21, 2018. As far as plaintiff knows, no other 2018 early decision admit, nor 2018 general admit who's application was subject to this kind of irregular "verification" based on "alleged inaccurate information" related to "employment history, collegiate extracurricular activities, and family background" ever successfully completed the verification without learning the source of the allegation nor the allegations themselves.

**2018 Adverse Action and Discriminatory Sanctions**

15.     As a result of this investigation, Plaintiff was forced to "defer" his admission and enrollment to 2019.

**2019 Re-Enrollment at NU Law**

16.     In August 2019, Plaintiff enrolled in the class of entering JD class of 2019 at NU Law School at the age of 29 and started Fall 2019 Semester.

17.     During Fall 2019 Semester, Plaintiff was dealing with tremendous family concerns as Plaintiff watched his mother slowly start to pass away from ovarian cancer because she had finally become resistant to treatment.

18.     During the months September and October of 2019, Plaintiff watched his mother slowly starved to death because she had finally become resistant to treatment, and metastatic ovarian cancer had

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

filled her entire stomach and esophagus with tumors which made it so painful to eat that she chose to starve to death rather than be placed on a feeding machine. Because she elected his other siblings as her power of attorney and power to make health decisions, and specifically indicated a do not resuscitate order (DNR) and no life support options in her will, he was unable by law, to even suggest that if she tried to eat or find some way to get nutrition into her body, that she would live.

19. Despite her impending passing and knowing that this was the last remaining time that he would have with her, because of his enrollment and commitment to law school, he sacrificed much of the precious time that he had left with his mother in order to attend classes and pursue coursework. Plaintiff would attend classes and complete coursework during the weekday working hours, come home and complete homework assignments, then travel up to Skokie from his apartment in

20. Streeterville (1-hour trip on average) in order to spend time with his mother during the night. He sacrificed spending this time with her because his legal education and future legal career was the most important thing to him next to his late mother.

21. Despite his family issues, Plaintiff tried to attend school and try to have relatively normal social experience by participating in social outings, joining student organizations and religious student groups, and trying to participate in the school group chat for the entering JD class of 2019.

22. Despite the difficult learning environment Plaintiff was faced with, he was performing academically well in his courses, and had attended all 10 weeks of classes every day with good attendance and with satisfactory grades and was actively involved in class discussions, submitted coursework for credit and also submitted the mid-term writing assignment. Plaintiff was attending professors office-hours and spending significant time and effort attending to his academic responsibilities, indeed his Torts professor, Emily Kadens, saved the Palsgraff (a difficult torts case) case for his in-class discussion turn, and referred to him as the “smartest” person in the class in front of all the students on one occasion, and no one objected. In addition, plaintiff actively enjoyed interacting with staff and teachers, and frequently and

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

enthusiastically expressed his interest and enjoyment in the academic subject matter and quality of instruction to staff.

23.     Plaintiff's mother passed away on October 23rd, 2019, and after arranging her funeral and attending her burial, he spent a few days trying to rest and recover. Plaintiff then attempted to rejoin classes and school activities the next week.

### 2019 Discriminatory Conduct and Hostile Environment– False Imprisonment

24.     On November 1, 2019, roughly one week after his mother died on October 23rd, 2019, at approximately 6:37 PM CST Plaintiff attended a law school event in the Levy Mayer wing of the law school building located at 357 E Chicago Ave., Chicago IL 6061 attended by defendant and University of Chicago (3L) law student   REDACTED   Alkhawaja") and defendants and fellow Northwestern University law students REDACTED (3L) ("REDACTED and REDACTED (2L) ("REDACTED and approximately 60 other fellow law students from mine and other law schools in total.

25.     Plaintiff had attended the event to seek consolation for his mother's death and had not slept in 2-3 days prior to his attendance due to emotional distress. While at the event, Plaintiff was repeatedly targeted and harassed with threatening and invasive questioning and unwanted physical contact by an unknown male (REDACTED) on 4 separate occasions, culminating in a vicious physical attack where he kicked Plaintiff several times on the leg, then tackled Plaintiff onto the ground, and choked Plaintiff in a headlock until Plaintiff nearly lost consciousness. Defendant REDACTED A. took these actions acting in agency for Northwestern University and based directly on his perception of his mental impairment. As far as plaintiff knows, no other similarly situated 2019 early decision admit without disabilities, nor similarly situated 2019 general admit without disabilities was subject to this kind of vicious attack based directly on his perceived threat from their disability.

26.     No one witnessed this vicious physical assault. He then called out to his two friends (REDACTED and REDACTED who were nearby, and together the three physically restrained Plaintiff, restricting his freedom of movement to leave the premises and with intent to initiate his

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

imprisonment of plaintiff based on perceived mental impairment to Plaintiff. They then called NUPD and unlawfully told them that plaintiff was suffering from "mental illness" and falsely reported to police that Plaintiff attacked REDACTED

27. Plaintiff was twice certified for involuntary inpatient admission by Jeremy Banker RN and Eugene Lozza MD of Northwestern Memorial Hospital on 11/2/19 within 2 hours of each other, while sedated and not in a reasonable capacity to understand the situation, not presented an explanation of rights in the situation, and without identification of clear and convincing evidence of imminent threat to the physical safety of self or others, in violation of 405 ILCS 5/3 admissions, hearing, and notice procedures. Defendants Northwestern Memorial Hospital and its agents took this action based on perceived mental impairment of plaintiff and hostility towards plaintiff's religion, perceived mental impairment and national origin and with willful failure to contact plaintiff's close family or relatives or make alternative arraignments for patient care. The sole evidence that staff had supporting any threat to the safety of myself or others was the police report which falsely stated that Plaintiff had committed a battery.

**2019 Adverse Action and Discriminatory Sanctions**

28. On 11/1/19, REDACTED then called the law school Dean of Students Susie Spies-Roth and initiated a separate, school disciplinary process.

29. NUPD Officer Healy #22 then notified his law school of the false narrative of this incident as it was recorded in the police report due directly to prejudice against his perceived mental health disability or threat he perceived as a result of his mental health disability and to save himself from disciplinary action as a result of his brutal unnecessary and excessive force perpetrated against

30. Plaintiff due to his [Healy's] perceived threat from his ADA mental health disability status.

31. Plaintiff was served with an interim-suspension and notice papers on November 6th 2019 stating that the school had received a report that Plaintiff struck an individual in the "mouth" during a law school event, while Plaintiff was still inside the hospital, and Plaintiff was requested to evacuate his

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

university-affiliated residence within 5 days of leaving the hospital on November 8th 2019, under penalty of trespass and further school sanctions.

32. After Plaintiff was released from the hospital Plaintiff received two separate letters in the mail from his insurance company denying the hospitals requests on November 5th and November 7th of 2019 for insurance coverage of continued inpatient stay, stating on both occasions, that "an independent review organization medical doctor, board certified in Psychiatry" reviewed the requests and determined that "continued inpatient stay has not been shown to be medically necessary to improve or correct your bipolar disorder."

33. Following Plaintiffs return from medical leave, Plaintiff was forced to undergo a brutal defamatory student conduct interviews, wherein the attackers explicitly and in writing, admitted to harassing Plaintiff on the basis perceived threat from his disabilities, and Plaintiff made every effort to attempt highlight the fact that the University had failed to uphold its duty to provide students with disabilities the opportunity to pursue education free of harassment and discrimination by reporting all of the discriminatory conduct to the university.

34. As part of the continuing pattern of harassment and discrimination, On December 19, 2019 DePilla and Cohen found Plaintiff guilty of "endangering myself or others" based off the testimony of his three attackers, and the police report which stated that Plaintiff battered REDACTED and REDACTED witnessed the battery, despite having full knowledge REDACTED had confessed to not witnessing anything except seeing Plaintiff being choked by REDACTED as he entered the room, and confessed to then aiding him [REDACTED in physically restraining Plaintiff. Student conduct found that his attacker's repeated targeted and predatory harassment was justified because he was one of the "organizers" of the event and was concerned for vague and unspecified "safety" reasons.

35. Despite his strong disagreements and providing copious amounts of convincing and compelling evidence against his accusers, Plaintiff again worked with the administration of the law school a year in order to complete mental health assessments and a variety of other pre-conditions which would

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

allow Plaintiff to return to school, this is because his legal education is the most important thing to Plaintiff in the entire world. As far as Plaintiff knows, no other similarly situated student without disabilities was subjected the pre-conditions discussed in this paragraph prior to their re-enrollment in the law school following a medical leave of absence directly related to their disability.

**2020 Re-Enrollment at NU Law**

36. In mid-July of 2020 Plaintiff finally completed the last of his mandatory pre-conditions, and eagerly re-enrolled in the entering JD class of 2020.

37. Plaintiff's Facebook is currently set to "private" mode for various reasons, as opposed to "public" mode, and no one outside of individuals who he is "friends" with on the application, and who he shares "groups" with on the application can search or find his information.

38. Plaintiff currently shares "Official Northwestern Pritzker Class of 2023 Admitted Students Page" with REDACTED a white female transgender incoming 1L student at NU Law. It is a "private" group with 280 members because only members can see who is in the group and what they post.

39. It is solely on account of his sharing the aforementioned Facebook group with REDACTED that she was able to cyberstalk Plaintiff as indicated in the upcoming paragraphs, this is because only members can see who is in the group and what they post. Members who are outside of this group cannot search or find my profile because it is not in "public" mode.

40. Plaintiff wishes to make abundantly clear that he has never met or interacted with REDACTED prior to these incidents in any way, shape, or form.

**2020 Cyberstalking and Hate Crimes**

41. On or around 8/21/20 I was cyberstalked by REDACTED a white female transgender incoming 1L student at NU Law, in violation of cyberstalking 720 ILCS 5/12-7.5. She committed a Hate crime in violation of 720 ILCS 5/12-7.1 (a) by cyberstalking me on the basis of actual or perceived mental disability. She conducted surveillance of me on "Google" and "Facebook" and other possibly hitherto unknown locations, observing and monitoring those sites with information, and gathered

FILED DATE: 1/12/2021 1:37 PM    2021CH00106

my personal and private information such as: my photograph, work history, contact information, dates about my school history, and dates about my pictures on a group chat and on Facebook, and educational history. She gathered my personal data, including my photo, from "Facebook," "Google," and other possible locations for malicious personal use on or around 8/22/20, and also to post it in first-year Law GroupMe chat titled "NU Kids on the Block '23" on or around 8/21/20.

42.     On 8/22/20 at 2:22 AM she committed a Hate crime in violation of 720 ILCS 5/12-7.1 (a) by Transmission of obscene messages in violation of 720 ILCS 5/26.5-1(a), Harassment through electronic communications in violation of 720 ILCS 5/26.5-3 by posting my private information which she gathered through surveillance in first-year Law GroupMe chat titled "NU Kids on the Block '23" in committing harassment based on ADA disabilities and Her actions caused me significant emotional distress by bringing up my last year in school, which was when my mother died, I was hospitalized for grief, and I had to withdraw from school for mental health concerns.

43.     On 8/22/20 at 2:22 AM She committed a Hate crime in violation of 720 ILCS 5/12-7.1 (a) by Transmission of obscene messages in violation of 720 ILCS 5/26.5-1(a) harassing me through electronic communications in violation of 720 ILCS 5/26.5-3 in a first-year Law GroupMe chat titled "NU Kids on the Block '23," wherein she committed the following acts:

44.     She committed by transmission of obscene messages in violation of 720 ILCS 5/26.5-1(a) when she posted a disparaging image of a frog with the title "NO THOUGHTS EMPTY HEAD" in direct reference to a stereotype about people with mental health problems and disabilities in a first-year Law GroupMe chat titled "NU Kids on the Block '23" on 8/21/20; directly comparing my mental capacity to that of a frog, insinuating that my mental capacity was equivalent to a frog which is a direct reference to my mental health and disability status and is a stereotype about people with mental health problems and disabilities

FILED DATE: 1/12/2021 1:37 PM    2021CH00106

45.     She posted my private Facebook information on the chat, which included such as: my photograph, work history, contact information, dates about my school history, and dates about my pictures on a group chat and on Facebook, and educational history.

46.     She committed transmission of obscene messages in violation of 720 ILCS 5/26.5-1(a) when she inappropriately suggested I was under an "assumed identity," which is a stereotype about people with mental disabilities.

47.     She committed transmission of obscene messages in violation of 720 ILCS 5/26.5-1(a) when she posted the word "psyop" which was a direct reference to my mental capabilities and was directly related to my mental health, and she insinuated that I was undertaking a psychological operation, which is a blatant stereotype about people with mental health disabilities and other problems.

48.     **She committed Educational intimidation in violation of  720 ILCS 5/12-7.**2(a)(3) when she committed a violation of intimidation statutes 720 ILCS 5/12-6(a)(7) and 720 ILCS 5/126(a)(5) when she encouraged rampant negative speculation among the class about my mental health status by making several mischaracterizing and intentionally malicious comments aimed at making people think I was doing multiple stereotypical activities of people with mental health problems By posting my work history and by making all of the inappropriate suggestions and bringing up dates about my pictures, she encouraged the negative stereo type that people with mental health problems are not able to hold jobs, and that somehow my work and education history was something that I could not possibly have because of my mental health status and cognitive capacity. Therefore, by ridiculing and trying to poke holes in my work history and inciting hatred and speculation about me, they directed comments at my ADA disabilities.

49.     **She committed Educational intimidation in violation of  720 ILCS 5/12-7.**2(a)(2) when her harassment "created a hostile environment and/or substantially interfered" with my "access to a University program or activity from an objective perspective" when I was banned immediately from group chat and discord after my comments in the chat, furthermore I was immediately suspended from school, thereby effectively impeded from those university activities directly resulting from REDACTED influence

FILED DATE: 1/12/2021 1:37 PM    2021CH00106

and injured in my property in educational opportunities and law career due to her malicious intent to get me expelled from school.

50. **She committed Educational intimidation in violation of  720 ILCS 5/12-7.**2(a)(1) and **720 ILCS 5/12-7.**2(a)(3) when she Engaged in intimidation in violation of 720 ILCS 5/12-6 (a)(1) by Indirectly threatening my safety when she posted my personal information in the first-year Law GroupMe chat titled "NU Kids on the Block '23" on 8/22/20, thereby exposing me to unnecessary exposure and risk which I did not consent to by exposing me to risk of someone who could use that information to track me down and hurt me, both inside and outside of the law school. This is because the group me is not officially a school moderated activity, and other people from outside of the law school can request and gain access to it, this is proven by a total list of the chat members and comparison to the total number of law students in the class, specifically there are many more members of the chat than there are members of the incoming 1L class. At least some of those who were in the group chat were exposed to my private information as a result of REDACTED posts who would not otherwise have seen my information, absent REDACTED defamatory hate crime of posting my private information on the basis of my perceived disability.

51. On or around 8/22/20, after she had harassed me on the Group chat, and I had been removed from both the Discord and Group Me by other biased students, I made a legitimate offer to REDACTED to settle our grievances offline by offering my personal number and asking her to call me "if there was an issue."

52. **She committed assault in violation of 720 ILCS 5/12-**1(a) when she put Plaintiff in imminent fear of battery when she **committed Educational intimidation in violation of  720 ILCS 5/127.**2(a)(1) and Engaged in intimidation in violation of 720 ILCS 5/12-6 (a)(1) when she engaged in harassment by telephone in violation of 720 ILCS 5/26.5-2 and directly threatened my safety by calling me at 1:08 AM on 8/23/20 in a threatening manner due to the late-night hour, menacingly asking "Is this

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

Fahad Syed?" then paused and breathed into the phone menacingly, then failed to identify herself after repeated inquiry, replying only "you gave me your number" and "you told me to call you." She took my legitimate offer to settle our grievances offline to call me 1:08 AM threateningly and menacingly, instead of trying to arrange a meeting at normal hours via email or text. She took these actions in order to take advantage of my learning disability and vulnerability to bait and entrap me into responding, and then misleadingly misrepresent that situation to report to NU that I had threatened her safety. She also committed Aggravated assault in violation of 720 ILCS 5/12-2(a) by committing the assault resulting from gaining my information in "NU Kids on the Block '23" which is a school affiliated group, or a "place of public accommodation." She also committed aggravated assault in violation of 720 ILCS 5/12-2(b)(1) by knowingly assaulting a person with ADA disabilities.

53. REDACTED committed intimidation in violation of 20 ILCS 5/12-6 (a) (1) when she engaged in harassment by telephone in violation of 720 ILCS 5/26.5-2 by illegally recording the phone conversation without my knowledge or consent in violation of Eavesdropping 720 ILCS 5/14-2(a)(2) when she used an eavesdropping device, her phone and/or another recording devise, in a surreptitious manner, for the purpose of transmitting or recording all or any part of any private conversation to which he or she is a party unless he or she does so with the consent of all other parties to the private conversation and Eavesdropping 720 ILCS 5/14-2(a)(3) when she recorded, or transcribed, in a surreptitious manner, any private electronic communication to which he or she is not a party unless he or she does so with the consent of all parties to the private electronic communication in order to maliciously and deceitfully get me expelled from law school.

54. **She committed Educational intimidation in violation of 720 ILCS 5/12-7.**2(a)(2) when REDACTED committed Eavesdropping in violation of 720 ILCS 5/14-2(a)(5) when she engaged in harassment by telephone in violation of 720 ILCS 5/26.5-2 and Harassment through electronic communications in violation of 720 ILCS 5/26.5-3 when she used or disclosed any information which he or she knows or reasonably should know was obtained from a private conversation or private electronic

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

communication in violation of the Article, doing so without the consent of all of the parties and disclosing that information to NU representatives Ish Faith-Orkar and Heather Cohen on 8/27/20 and 10/29/20 in order to maliciously and deceitfully get me expelled from law school.

55. **She committed Educational intimidation in violation of 720 ILCS 5/12-7.**2(a)(3) and she committed intimidation in violation of 720 ILCS 5/12-6(a)(7) and 720 ILCS 5/12-6(a)(5) by inciting, encouraging, and/or influencing "REDACTED," an incoming female 1L , to speculate negatively "According to 2Ls, last year he escalated in his aggressive behavior and speech after being kicked out of the group me. Unfortunately in person at times. If he messages any of you, rather than engaging with him I recommend emailing [NU] with screenshots," in the first-year Law GroupMe chat titled "NU Kids on the Block '23" on 8/22/20. Where REDACTED and REDACTED had previously met and spoken.

56. **She committed Educational intimidation in violation of 720 ILCS 5/12-7.**2(a)(1) and **720 ILCS 5/12-7.**2(a)(3) when and she committed intimidation in violation of 720 ILCS 5/12-6(a)(7) and 720 ILCS 5/12-6(a)(5) by inciting, encouraging, and/or influencing "REDACTED," an incoming white male 1L , to state "Please keep further discussion about Fahad at a respectful level, and preferably at a minimum, outside of what is necessary" after removing me from in the first-year Law GroupMe chat titled "NU Kids on the Block '23" on 8/22/20. Where REDACTED and REDACTED had previously met and spoken.

57. **She committed Educational intimidation in violation of 720 ILCS 5/12-7.**2(a)(1) and **720 ILCS 5/12-7.**2(a)(3)and she committed intimidation in violation of 720 ILCS 5/12-6(a)(7) and 720 ILCS 5/12-6(a)(5) by inciting, encouraging, and/or influencing "REDACTED," a white female lesbian NU LGBTQ Student Organization Leader to an current 2L , to unfairly influence school administration to suspend me from NU on Behalf of REDACTED on 8/23/20, where REDACTED forwarded messages and screenshots and called Shannon Bartellete, the associate dean of Inclusion and

58. Engagement to speak to Associate Dean and Dean of Students Susie Spies Roth and others. Where REDACTED sent REDACTED and email falsely indicating that Plaintiff had initiated the phone

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

contact between REDACTED and Plaintiff and where REDACTED and REDACTED had previously met and were both part of the LGBTQ affinity group.

59. **She committed Educational intimidation in violation of 720 ILCS 5/12-7.**2(a)(3) and she committed intimidation in violation of 720 ILCS 5/12-6(a)(7) and 720 ILCS 5/12-6(a)(5) by inciting, encouraging, and/or influencing "REDACTED a female transgender 2L student at Northwestern Law, to harass me six separate times with unwanted comments on Facebook on 8/23/20, where she made repeated reference to me "sliding into white girls dm's" and other harassing comments on my status posts. Where REDACTED and REDACTED had previously met and were both part of the LGBTQ affinity group.

60. **She committed Educational intimidation in violation of 720 ILCS 5/12-7.**2(a)(3) and she committed intimidation in violation of 720 ILCS 5/12-6(a)(7) and 720 ILCS 5/12-6(a)(5) by inciting, encouraging, and/or influencing "REDACTED," a white female incoming 1L student, to harass me with offensive statements on Dischord on 8/23/20 on Behalf of REDACTED where both REDACTED and REDACTED had previously spoken and met.

61. **She committed Educational intimidation in violation of 720 ILCS 5/12-7.**2(a)(1) and **720 ILCS 5/12-7.**2(a)(3) when and she committed intimidation in violation of 720 ILCS 5/12-6(a)(7) and 720 ILCS 5/12-6(a)(5) by inciting, encouraging, and/or influencing "REDACTED," an incoming white female male-transgender 1L , to participate in a student disciplinary hearing against me where she stated during an interview on 9/1/20 that "while this semester is largely remote, [I] don't want to be in the hall with him to and from class and have some sort of confrontation," and where she said it would be "Very easy to imagine using the women's restroom" and seeing him go in and out of the restroom at the same time, "and… start a confrontation." Where REDACTED and REDACTED had previously met and were both part of the LGBTQ affinity group.

62. **She committed Educational intimidation in violation of 720 ILCS 5/12-7.**2(a)(1) and **720 ILCS 5/12-7.**2(a)(3)and she committed intimidation in violation of 720 ILCS 5/12-6(a)(7) and 720 ILCS 5/12-6(a)(5) by inciting, encouraging, and/or influencing "REDACTED," a white female lesbian NU

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

LGBTQ Student Organization Leader to an current 2L , to participate in a student disciplinary hearing against me where she stated during an interview on 9/2/20 that "she is working on an action plan so this doesn't happen again." She also stated "(This feeling is) reciprocated among our board, because they were all taking about it [the group chat altercation] as it happened" further indicating the defamatory rumors and hate and ridicule REDACTED incited about me to the law school. Where REDACTED and REDACTED had previously met and were both part of the LGBTQ affinity group.

63. **She committed Educational intimidation in violation of <u>720 ILCS 5/12-7.</u>**2(a)(1) and **<u>720</u> <u>ILCS 5/12-7.</u>**2(a)(3) when and she committed intimidation in violation of <u>720 ILCS 5/12-6</u>(a)(7) and <u>ILCS 5/12-6</u>(a)(5) by inciting, encouraging, and/or influencing REDACTED ," an incoming gay 1L , to participate in a student disciplinary hearing against me where he falsely claimed during an interview on 10/27/20 that I was making comments "geared directly at a person's attributes" in attempting to mischaracterize and defame me as a transphobic person. Where REDACTED and REDACTED had previously met and were both part of the LGBTQ affinity group.

64. **She committed Educational intimidation in violation of <u>720 ILCS 5/12-7.</u>**2(a)(1) and **<u>720</u> <u>ILCS 5/12-7.</u>**2(a)(3) when and she committed intimidation in violation of <u>720 ILCS 5/12-6</u>(a)(7) and <u>720 ILCS 5/12-6(</u>a)(5) by inciting, encouraging, and/or influencing "REDACTED," an incoming 1L , to participate in a student disciplinary hearing against me where she stated during an interview on 10/27/20 that "there were rumors concerning the first time Fahad was in law school two years ago." REDACTED indicated that it was "rumored that due to inappropriate physical conduct, Fahad left law school two years in a row and this fall was placed in section 4." Where REDACTED and REDACTED had previously met and knew each other.

65. **She committed Educational intimidation in violation of <u>720 ILCS 5/12-7.2 (a)(2)</u>**, when she engaged in harassment by telephone in violation of <u>720 ILCS 5/26.5-2</u> and Harassment through electronic communications in violation of <u>720 ILCS 5/26.5-3</u> by texting me at 8:34 PM on 8/23/20, after

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

knowingly cooperating with NU to have me suspended earlier that day, in order to further target my ADA learning disabilities and associated vulnerability to maliciously provoke and entrap me into a response. She knew that she had been suspended with a no-contact order, and was attempting to again lure me into responding because, due to my ADA disability, she knew I had a irritable disposition, so then she could maliciously report me for violating the no-contact order which she was fully aware was in place resulting directly from her actions and cooperation with NU.

66. **She committed Educational intimidation in violation of 720 ILCS 5/12-7.2 (a)(2)**, when she engaged in harassment by telephone in violation of 720 ILCS 5/26.5-2 and Harassment through electronic communications in violation of 720 ILCS 5/26.5-3 by communicating to the law class about me by posting my private information in the first-year Law GroupMe chat titled "NU Kids on the Block '23 from 8/22/20-8/23/20, communicating to others about me by making and encouraging defamatory speculation and remarks directed towards ADA disabilities for the purposes of having me maliciously expelled from law school.

67. She committed **Criminal damage to property in violation of 720 ILCS 5/21-1)(a)(1) in excess of $100,000, she committed Educational intimidation in violation of 720 ILCS 5/12-7.2 (a)(2)** and **ILCS 5/12-7.2 (a)(3)** and she committed intimidation in violation of 720 ILCS 5/12-6(a)(7) and 720 ILCS 5/12-6(a)(5) by damaging to my property in the form of my personal and professional reputation within the law school and legal profession by defaming me and inciting hatred and speculation against me in first-year Law discord chat on 8/21/20 or 8/22/20 in order to get me maliciously expelled from law school.

68. She committed **Criminal damage to property in violation of 720 ILCS 5/21-1(a)(1) in excess of $100,000, she committed Educational intimidation in violation of 720 ILCS 5/12-7.2 (a)(2)** and **720 ILCS 5/12-7.2 (a)(3)** and she committed intimidation in violation of 720 ILCS 5/126(a)(7) and 720 ILCS 5/12-6(a)(5) when she damaged my property in terms of my character through defamatory

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

statement and inciting hatred and speculation against me in first-year Law GroupMe chat titled "NU Kids on the Block '23" on 8/21/20 or 8/22/20 in order to get me maliciously expelled from law school.

69. She committed **Criminal damage to property in violation of 720 ILCS 5/21-1(a)(1) in excess of $100,000, she committed Educational intimidation in violation of 720 ILCS 5/12-7.2 (a)(2)** when she damaged my property in the form of my educational opportunities by having me suspended through lies and deceit and defaming me in first-year Law GroupMe chat titled "NU Kids on the Block '23" on 8/21/20 or 8/22/20.

**2020 Conspiratorial Disability Harassment and Unlawful Obstruction of Justice**

70. On information and belief, sometime around 8/23/20, The Interim University Dean of Students, Mona Dugo ("Dugo"), and the Deputy Chief Eric Chin ("Chin") of Northwestern University Police Department (NUPD) negligently suspended Plaintiff (Fahad Syed: Current 1L Law Student) from Northwestern University Law School, and reported Plaintiff to the Northwestern University Police Department (NUPD), for a perceived threat from his disability which resulted from communications between Plaintiff and fellow current 1L REDACTED and occurred between 8/22/20-8/23/20. She called Plaintiff on 8/23/20 and explicitly stated "we've been watching your Facebook and other social medial posts" and on a 3-way call with Chin, Dugo, and Plaintiff.

71. On 8/27/20, Plaintiff filed Department of Education, Office of Civil Rights Complaint #05-202444 alleging discrimination on multiple grounds, including disability discrimination and hostile environment.

72. On 9/3/20 at 7:45 AM, Plaintiff informally and indirectly notified the university via email to Lucas Christian of the Office of Community Standards that the Plaintiff had complained about the University to an outside entity, Illinois Department of Human Rights and Illinois Guardianship and Advocacy Commission.

73. On 9/3/20 at 9:05 AM, Plaintiff wrote an email addressed, in part, to Dugo and Chin, requesting the chat transcripts of the incident which resulted in his suspension on 8/23/20.

FILED DATE: 1/12/2021 1:37 PM    2021CH00106

74.     On 9/13/20 at 1:49 PM Plaintiff formally notified the University via email to The Office of Equity, its employees Amanda DeSilva and Ish Faith Orkar, and Lucas Christian and Heather Cohen of the Office of Community Standards, that the Plaintiff had complained about the University to an outside entity: The Department of Education, Illinois Department of Human Rights, and Illinois Guardianship and Advocacy Commission.

75.     On 9/14/20 at 5:29 PM, Chin had unauthorized telephone communications with Plaintiff's private psychiatrist(s) in violation of the IMHDDCA and HIPAA. Chin left Tobin a voicemail specifically, twice, acknowledging that he did not have an ROI for contacting him [Tobin], and requesting to "share information" with him and requesting Tobin call him back on his cell phone.

76.     On 9/14/20 at 6:11 PM PLAINTIFF was notified via email by his therapist, Brian Tobin ("Tobin"), that Deputy Chief Chin had contacted him, and he [Tobin] subsequently asked Plaintiff to sign an ROI form.

77.     On 9/15/20 at 12:11 PM, during a 6-minute incoming phone call, NUPD Detective Sanghoon Lee ("Lee") inappropriately contacted and aggressively questioned Plaintiff regarding Plaintiff's Facebook post about his discrimination complaint with the Department of Education, in order to retaliate against Plaintiff for making said complaint, and to threaten, intimidate, and coerce Plaintiff into dropping said complaint. During this call, Lee said "you know why I'm calling," mentioned Dugo by name, and instructed Plaintiff not to post anything about Dugo without "running it by [Lee's] office first." Plaintiff indicated to Lee that Plaintiff had filed the DOE complaint, gave Lee the complaint number, and directed Lee to "contact [Plaintiff's] attorney regarding the posts if he had any other questions."

78.     On 9/16/20 at 3:03 PM, Dugo had unauthorized email communications with Plaintiff's private psychiatrist, Brian Tobin, in violation of the Illinois Mental Health and Developmental Disabilities Confidentiality Act (IMHDDCA) and Health Insurance Portability and Accountability Act (HIPAA) under the pretext of responding to Plaintiff's 9/3/20 email requesting group transcripts. In the communication,

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

she stated: "I'm not sure if Fahad signed a release of information when he made this request. I would like to be able to share some information with you as we have a lot of on going concerns about Fahad."

79. On 9/22/20, The Dean knowingly and inappropriately shared an illegally obtained audio recording of Plaintiff, of a phone call with another current law student (1L REDACTED from 8/22/20, with Plaintiff's medical providers in order to assassinate his character in retaliation for the Department of Education complaint which she referenced during the call and is discussed in the letter from the his therapist. The Dean discriminated against me on the basis of his mental health, in retaliation for the Department of Education complaint which, and which she was fully aware through the university on 9/3/20 through an email to Lucas Christian and 9/13/20 through an email to the Office of Equity.

80. On or around 9/28/20, during their next session, Plaintiff's therapist, Brian Tobin, informed Plaintiff of the audio recording. It was at this time that Plaintiff realized that this was audio which was illegally submitted to his university by REDACTED and illegally resulted in his suspension sometime around 8/23/20.

81. On or around 9/28/20 as a result of the aforementioned unlawful contact with Plaintiff's therapist, Mona Dugo, Eric Chin, and Sanghoon Lee were repeatedly informed not to contact Plaintiffs family members via text messages from plaintiff to their cells phones.

82. On 10/10/20, at 8:33 PM PLAINTIFF attempted to file an eavesdropping charge with Northwestern University Police Deputy Chief Eric Chin via text message for a phone call which PLAINTIFF took at his apartment in the 18th district (244 E Pearson St), which was illegally recorded and submitted to his law school, resulting in his suspension. At 8:44 PM Chin responded via text and instructed Plaintiff to file a report with Chicago Police Department (CPD) because NUPD did not have jurisdiction in the matter.

83. On 10/11/20, PLAINTIFF filed a police report for Eavesdropping in the CPD 18th district, with the non-emergency line (312-746-6000) because they have jurisdiction over a phone call which PLAINTIFF took at his apartment in the 18th district (244 E Pearson St) which was illegally recorded and

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

submitted to his law school, resulting in his suspension. Reporting Officer Aldahhondo (Star 5142) took the report and Supervisor O Shaughnessy (Star 1829) approved it. (Report JD 395786 attached.)

84.     On 10/14/29, NUPD Detective Lee called Plaintiff and brutally interrogated Plaintiff for 18 minutes about exactly how and when Plaintiff found out about the illegal audio tape. Had the illegal audio tape not been made and the university not knowingly suspended me over it, Plaintiff would never have received such an intimidating and harassing interrogation. During the call the detective asked my CPD report number and claimed that he was filing a report with NUPD. Approximately 3 days later he called Plaintiff provided him with report 2020-0356 which he claimed was filed for the eavesdropping case.

85.     On 10/19/2020, at approximately 3:00 PM PLAINTIFF called CPD non-emergency (312746-6000) and was told by the officer on duty, Philp (Emp #19035)  that the report had been "cancelled without investigation," citing a "lengthy cancellation report" involving "NUPD Deputy Chief Chin and the sergeant" as the reason.

86.     Sometime between 10/11/20 – 10/19/20, Chin cancelled his report illegally by illegally revealing his mental health history to the detective without having an ROI in violation of the Illinois Mental Health and Developmental Disabilities Confidentiality Act and Health Insurance Portability and Accountability Act of 1996 (HIPAA), discriminating against Plaintiff on the basis of his mental health, in retaliation for the Department of Education complaint which PLAINTIFF filed on 8/27/20, and which he [Chin] was fully aware through the university on 9/3/20 through an email to Lucas Christian and 9/13/20 through an email to the Office of Equity. The call in question never took place on University property, and DC Chin knew that due to the prior text conversation.

87.     He [Chin] revealing that plaintiff had involuntarily committed to a hospital in November 2019 for an involuntary mental evaluation, directly and deliberately implying or stating to the detective that PLAINTIFF was crazy and his lawful report shouldn't be investigated on the basis of his mental health status.

FILED DATE: 1/12/2021 1:37 PM    2021CH00106

88.     He also told the detective and express lie about his consent during the recording in question: telling the detective that PLAINTIFF consented having his conversation recording when PLAINTIFF did not, as was the very reason why PLAINTIFF filed the eavesdropping report. PLAINTIFF did not consent to having his conversation recorded, nor did PLAINTIFF have knowledge of the recording at any time, and DC Chin knew that because I attempted to file the report with him first.

89.     As a result of the call, plaintiffs report (JD 395768) was cancelled.

90.     In approximately 10 separate follow-up calls and 50 text messages to Lee, which occurred in the weeks after my CPD report was cancelled, he never responded to my follow-ups about report 2020-0356. This proves that his purpose in interrogating me was under the false pretext of filing a report whereas in reality he was retaliating for my CPD report and my DOE complaint. The university has deliberately failed to provide that report on my multiple email requests.

91.     On information and belief, sometime between 10/11/20 – 10/19/20, Chin called and told CPD non-emergency response officers (312-746-6000), between 12pm-6pm, not to respond to reports about eavesdropping from students at Northwestern, or informed the desk sergeant of such.

92.     PLAINTIFF called CPD non-emergency (312-746-6000) 6-7 times in a row between 3p-5pm on 10/19/2020 in order to file another report, and as soon as PLAINTIFF told them PLAINTIFF was a student from NU filing an eavesdropping report, they hung up.

93.     On information and belief, on or around on the week of 10/19/2020, Chin called Area 3 Supervising Detective Rose #982 at (312-744-8263) and asked him not to respond to reports about eavesdropping from students at Northwestern or related cancellations. On 10/19/2020 PLAINTIFF called Area 3 Supervising Detective Rose #982 at (312-744-8263) from 4-5PM , to report the incident of improper cancellation of my report, citing jurisdiction, and he refused to disclose any details about why the report was cancelled, telling me to "file another report."

94.     On information and belief, on or around on the week of 10/19/2020, Chin called and told 18th District Supervisor Sergeant Vogt at (312-742-5870) and asked him not to respond to reports about

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

eavesdropping from students at Northwestern or related cancellations. On 10/19/2020 PLAINTIFF called

18th District Supervisor Sergeant Vogt at (312-742-5870) from 4-5PM , to report the incident of improper

cancellation of my report, citing jurisdiction, and he refused to disclose any details about why the report

was cancelled, telling me telling me "civil litigation" is an option.

95.     Deputy Chief Eric Chin took these actions to prevent the illegal audio tape from being

revealed in retaliation for the Department of Education complaint which PLAINTIFF filed, in order to

conceal his and the universities negligence, and their knowing harboring and supporting of a malicious

96.     criminal,   REDACTED   Chin also took these actions to conceal the fact that he and

Dugo were aware of the illegality of the audio tape, and still suspended me over it, which is also why

PLAINTIFF filed his Department of Education Complaint, and to punish Plaintiff for filing said

complaint.

97.     All of the actions taken by Dugo, Chin, and Lee, including slandering ones reputation to

their therapist, especially given mental disabilities, brutal interrogation, and causing a report to be

cancelled without informing them, would deter a reasonable person from complaining.

98.     The illegal conduct of the   REDACTED   illegally recording me and illegally

submitting the tape to the university in order to have me suspended, caused the university to knowingly

use it to suspend me due to bias. That suspension then caused me to file a discrimination claim with the

DOE and ultimately to file the police report with CPD.

99.     The discrimination claim with the DOE caused Chin to illegally contact Plaintiff's

therapist in order to slander him with an illegal audio tape, Dugo to illegally contact Plaintiff's therapist

and slander Plaintiff's reputation maliciously with an illegal audio tape, Lee to aggressively and

harassingly call me once, and Lee to brutally and menacingly interrogate me another time.

100.     Filing the DOE complaint about discriminatory and bias suspension later caused me to file

the CPD report about the discriminatory use of the illegal audio tape in order to strengthen my

discrimination complaint for legal proceedings which would occur during litigation.

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

101.    Filing the CPD report caused Chin to have my CPD report cancelled. Therefore, the filing DOE complaint caused me to file the CPD report, which caused Chin to have my CPD report cancelled through disability discrimination

102.    On 11/2/20 Plaintiff filed a report with the Civilian Office of Police Accountability about Chins illegal disclosure of my mental health history. On 11/5/20 the complaint Log 2020-0004964 was assigned to Sgt. Mark K Lamberg (Star# 1847) to be investigated by Chicago Police Department Bureau of Internal Affairs Division Officer Lambert, with whom I interviewed 11/9/20 at CPD Headquarters regarding the incident.

103.    On 11/3/20 Plaintiff filed an eavesdropping report again with Chicago Police Department, JD 419862. The report is currently assigned to Detective Lee of CPD with an unnamed offender.

104.    Mona Dugo, Eric Chin, and Sanghoon Lee were repeatedly informed not to contact Plaintiffs family members via text messages from plaintiff to their cells phones occurring on or around 9/28/20.

105.    On or around 11/3/20, Plaintiff learned from his brother-in-law Azam Hussien (312-303-3736) via text message that someone person or persons from the university had contacted my sister, Sophia Syed (847-347-3736) and requested discussion for "hours" about Plaintiff and his school situation without Plaintiff's knowledge or consent. This is after Plaintiff expressly forbade the university, through text message to Mona Dugo after she shared the illegal audio with Plaintiffs therapist, that no one who Plaintiff "knows" should be contacted, including most importantly: plaintiff's family members. NU and NUPD and its representatives contacted Plaintiff's sister in retaliation for his COPA report, his police report, and his DOE Report.

106.    Shortly after learning that someone had contacted Plaintiff's family in direct conflict with his wished, Plaintiff texted Defendants NU, Dugo, Chin, and Lee to determine why they had contacted Plaintiff's family and who had authorized such unlawful contact.

FILED DATE: 1/12/2021 1:37 PM    2021CH00106

107.     On 11/4/20, Plaintiff received Official Northwestern Correspondence email from the Office of Community Standards indicating several more disciplinary sanctions and another UHAS hearing in retaliation for the filing of plaintiff's police report and DOE complaint. The stated pretext for this disciplinary action was that Plaintiff was being disciplined for texting Chin, Dugo, and Lee about his DOE complaint and about the police report, about the various retaliatory measures taken against plaintiff and for the contacting of Plaintiff's sister without Plaintiff's permission. NU and NUPD and its representatives sanctioned plaintiff in retaliation for his COPA report, his police report, and his DOE Report. NU displayed awareness of the multitude of illegal and discriminatory and illegal conduct which I texted Chin, Dugo, and Lee and were in a position to take corrective action and failed to do so.

108.     On 11/6/20 Plaintiff was served with a protection order ("PO") (Case 200P20532) for harassment and Stalking from the Cook County Sheriffs office, in which Dugo made several misleading allegations as to my contact with her due to her official capacity as dean of students. The stated pretext was that I was sending her "100's of harassing messages" whereas in reality I was informing her of discrimination which is ongoing and pleading for her to step in and stop it due to her duty as dean of students. This pretext was a cover for her requesting both a threat assessment and a protecting order against me based SOLEY off threat from my perceived disability in retaliation for my DOE complaint. The stalking no contact order was taken especially to label me as a sexual offender in retaliation for my DOE complaint.

109.     The PO revealed that Dugo, through her official capacity at the University, contracted with "Sigma Threat" in order to harass Plaintiff in retaliation for filing his DOE Complaint and retaliation complaints to the university. The stated pretext for this was to "help evaluate his threat level" and was a cover for her contracting the service on the basis of threat from my perceived disability in retaliation for filing his DOE Complaint.

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

110.  In addition, she made derogatory and misleading accusations in PO about the Holy Quran Chapter 33, Verses 60-68: referring to them as "translated as sinners will die in a fire". She took the protection order for harassment and stalking based on perceived threat from Plaintiffs religion.

111.  Her allegations in support or PO were misleading or defamatory in the following ways:

a.  She claims she "had to issue" Plaintiff "interim suspension for threatening a fellow law student w/ physical violence." This is false, she knows that the student in question, REDACTED stalked me and then posted my information to a group chat and made derogatory statements about my disability, then called me at 1:08 am in a threatening manner and recorded BOTH the call that she made to me and the call that I made in response. These two illegal audio tapes are what Dugo actually suspended me over. She misrepresented this fact deliberately in order to make me seem like a dangerous person.

b.  She claims I was on probation for "physically assaulting another student." This is false, she knows that there was absolutely no evidence whatsoever that I assaulted anyone aside from that single persons unsubstantiated allegations. She misrepresented this fact deliberately in order to make me seem like a dangerous person. I have filed Attorney General Case 20cv1772 pursuant to this allegation.

c.  She claims that I have sent her "more than 150 unanswered text messages with increasingly aggressive language." This is without indicating that the messages are sent to her because of her official capacity as dean of students, and because I am telling her about discrimination committed by Deputy Chief Eric Chin of NUPD, Lee of NUPD, and others in the University and asking her to stop them. The "aggressive language" she is referring to is the increasing amount of litigation and legal proceedings that I am threatening her with if she does not cease her illegal conduct.

d.  She claims she "has not" monitored my Facebook. This is blatantly false, because she on 8/23/20 she called me and explicitly stated  "we've been watching your facebook and

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

other social medial posts" and she also directed detective Lee to call me and interrogate
me on the basis of her perceived threat from my Facebook post about my Department of
Education Complaint.

e.  She claims that I am sending her "harassing" messages to her work email when in reality I
sent her two follow emails demanding to know who contacted my sister when I told her
not to.

f.  She claims that Plaintiff called her and that she hung up the phone, which is a lie. Plaintiff
called her and HE hung up the phone, not Dugo. She deliberately misrepresented this fact
to make it seem like Plaintiff was harassing her, when in reality she was harassing
Plaintiff and his sister, acting far beyond the scope of her responsibilities as Dean of
Students, and escalating the situation to the current severity level.

112.    On 11/11/19 at approximately 3:00 PM Plaintiff attempted to file a police report in order
to get  REDACTED  named as the offender on the police report at Chicago 18th District and two
officers obstructed me from doing so, as a result I filed COPA complaint Log 2020-0005122.

113.    On 11/17/20, Plaintiff went to domestic violence court at 555 W Harrison and stated
claims for SNCO against both  REDACTED  (20OP78283) and Mona Dugo (20OP78277), which
were deemed worth of a hearing by the Honorable Judge Thomas M. Cushing #2258.

114.    On 11/18/20 Log 2020-0005122 was assigned CPD Sergeant Lisa Eitel (Star #2075) and
on 11/22/20 I interviewed with Eitel about the incident of report obstruction, and at that time she included
an amendment for report JD 419862 to include  REDACTED  name as the suspect.

115.    On or around 11/19/20, Mona Dugo falsely reported to Evanston Police that Plaintiff had
violated the PO which she unlawfully had placed on me as a result of one my previously sent emails to the
school asking for them to address the unlawful contact with my family which had taken place earlier in the
month of October and which Plaitiff had reported to DOE and the University. She maliciously had the

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

Plaintiff falsely imprisoned pursuant to case 20DV2080601, the only arrest on Plaintiff's entire criminal record, in order to retaliate against Plaintiff for his DOE report and for 20OP78277 which Plaintiff had secured on 11/17/20.

116.    On 11/19/20, four officers of the Evanston Police Department, including Detective Jones, came to my apartment at 244 E Pearson St. Chicago, IL 60611 at approximately 11:00 AM CST and arrested me without telling me what charges they were arresting me for, without letting me take my prescribed medicine, and without reading me my rights.

117.    When I answered the door, they said they needed to "talk to me about the discrimination by Northwestern University," so I let them come into my apartment.

118.    While they were inside my apartment they repeatedly and purposefully stepped on my prayer rug even after I asked the first officer not to step on in, in direct disrespect of my religious beliefs, and laughed as they did it and I asked them not to. They made derogatory statements about the rug, saying it was "beautiful" after repeatedly stomping on it and laughing.

119.    Detective Jones arrested me inside me house without ever telling me what I was under arrest for or reading me my rights.

120.    The four officers took me to Evanston police station and the four officers made me sit in an interrogation room and made me make incriminating statements without the presence of a lawyer, while under duress, which I did not understand.

121.    During this interrogation, they said that calling a lawyer would take "several hours" and made it seem like if I requested a lawyer, that I would have to get on myself. They said they "might" be able to call the public defender, but that it would take hours. In order to clear myself of the charges, I was misled into saying that they could question me without a lawyer. This is because I was not on my medication and not in the right state of mind to understand what was happening.

122.    They never mirandized me before arresting me and they never explained what I was charged with until they had brought me to the station and questioned me in a room with four officers

FILED DATE: 1/12/2021 1:37 PM    2021CH00106

yelling at me, and while I did not have medication and did not know what was happening, in this way they took advantage of my ADA learning disabilities in order to force me to make incriminating statements in violation of my constitutional rights to be free of self-incriminating statements. They repeatedly told me that "they knew my people" and that they would "take care of me" in apparent reference to my sister Sgt. Syed of Evanston Police.

123.    Jones called repeatedly called me "little bro" and other derogatory statements while I was in his custody.

124.    They never allowed me to take my medicine prior to arresting me without reading me my rights, and they knowingly forced me to undergo questioning while not on my medication or in the right state of mind to adequately represent myself. This is despite them knowing that I take medications, which they learned at my apartment.

125.    They never established probable cause for the arrest and never showed me the alleged probable cause when I asked for it, despite the fact that I asked for it at least four separate times. They simply asked me what my email was, and when I told them, they falsely claimed that I had admitted to sending the alleged email in question to the states attorney.

126.    They then took my property and refused to give it back, including court documents which evidenced that I had requested a no contact order against the person who alleged that I violated the no contact order and had me arrested. They took this property without ever intending on reviewing it for the purposed of assessing the charges against me, and without ever intending on returning the paperwork. In this way they deprived me of my right to the materials I needed to adequately represent my defense during the court proceedings for this case.

127.    Despite the fact that I told them that Mona Dugo, the complaining witness for this arrest was retaliating against me for Department of Education complaint 05-20-2444 which I had provided to them, in addition to the stalking no contact hearing, they still charged me with the offenses.  The Dean reported me and discriminated against me on the basis of his mental health, in retaliation for the

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

Department of Education complaint, which she was fully aware through the university on 9/3/20 through an email to Lucas Christian and 9/13/20 through an email to the Office of Equity.

**Continuing Misconduct and Malicious Misrepresentation**

128. On 11/24/20 at or around 1:30 PM, Plaintiff attended a court hearing for Case 200P20532. During the hearing, the judge asked if anyone had Plaintiff's allegations, and opposing counsel representing Mona Dugo for Case 200P20532 indicated that she had the complaint in front of her.

129. The judge asked whether Plaintiff had "stated any facts" in support of his petition.

130. The opposing counsel representing Mona Dugo for Case 200P20532 replied that he [Plaintiff] had "not stated any facts." This was a blatant act of perjury to the court, for Plaintiff had alleged over 25 separate, distinct, and numbered allegations containing many facts. Opposing counsel had the complaint in her possession and lied about the fact that Plaintiff had "stated facts" in support of his SNCO petition in order to mislead the judge.

131. Opposing counsel, after committing perjury to the court, then requested that Plaintiff's SNCO be dismissed, without the judge ever having read Plaintiff's factual allegations, which were deemed worthy of a hearing (20 OP 78277) by the Honorable Judge Thomas M. Cushing #2258 during a hearing held on 11/17/20 at 555 W Harrison St, Chicago, IL and subsequently transferred to the Honorable Stephanie D. Saltouros #2161 for review.

132. Opposing counsel and the complaining witness Mona Dugo violated the following pertinent section of Rule 137: "The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other document; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass."

133. The allegations brought by Dugo and her attorney were not well-grounded in fact and not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

law, but in fact were misleading attempts to retaliate against and harass plaintiff for his SNCO (20 OP 78277) and for his DOE complaint.

134. All of this evidence notwithstanding, plaintiff was found responsible [guilty] for the student disciplinary violations. She was ordered to "return the original journal, complete and unaltered, to the Office of zEquity byJune 29, 2005," and placed on "University Disciplinary Probation effective immediately and continuing through December 31, 2005." Plaintiff has. timely appealed the decision, however, "[t]he rendered sanction is in effect as of the date identified on the sanction, or until an appeal is granted."

135. It is plaintiff's contention that all of the actions taken against him, as set forth above, were as a result of him raising questions regarding defendants Chin, REDACTED and Healy's activities which violated the Fourth Amendment to the United States Constitution, and Dugo's activities which violated the First Amendment to the United States Constitution. Plaintiff seeks a temporary restraining order from this court restraining, enjoining and prohibiting defendants' from expelling him until a preliminary injunction hearing can be held evaluating his claims.

## II. *LEGAL ARGUMENT*

### 1. *Plaintiff Is Entitled To A Temporary Restraining Order*

The test for whether this Court should issue a temporary restraining order focuses on: (1) whether there is a substantial likelihood of ultimate success on the merits; (2) whether the temporary restraining order is necessary to prevent irreparable injury; (3) whether the threatened injury outweighs the harm the temporary restraining order would inflict on the non-movant; and (4) the temporary restraining order would serve the public interest. *Gresham Park Community Org. v. Howell,* 652 F.2d 1227, 1232 n.7 (5th Cir. 1981).

### A. *Substantial Likelihood That Plaintiff Will Prevail On The Merits*

Plaintiff contends, *inter alia,* that defendants Dugo, Chin, Lee, and REDACTED retaliated against him for voicing objection to the discrimination on the basis of disability and sex. This retaliation, according to plaintiff, took the form of: (1) withdrawing him from classes for Fall 2020 Semester, (2) placing him on interim suspension for Fall 2020 Semester without any hearing or investigation (3) re-accusing him of assault and battery for the Fall

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

2019 Semester incident – an incident where the findings of the university investigation revealed that REDACTED had falsely testified to witnessing the battery on the NUPD police report, (4) imposing a variety of sanctions in the form of charges of violating over six different policies resulting from the Fall 2020 incident, and (5) imposing sanctions in the form of ultimate expulsion against him after a hearing before a "stacked" tribunal.

It is plaintiff's contention that all of the actions taken against him, as set forth above, were as a result of his raising questions regarding defendant Dugo's activities which violated the First Amendment to the United States Constitution. Plaintiff seeks a temporary restraining order from this court restraining, enjoining and prohibiting defendants' from expelling Plaintiff from school pending a hearing on the disposition on Plaintiffs claims.

## II. *LEGAL ARGUMENT*

### 1. *Plaintiff Is Entitled To A Temporary Restraining Order*

The test for whether this Court should issue a temporary restraining order focuses on: (1) whether there is a substantial likelihood of ultimate success on the merits; (2) whether the temporary restraining order is necessary to prevent irreparable injury; (3) whether the threatened injury outweighs the harm the temporary restraining order would inflict on the non-movant; and (4) the temporary restraining order would serve the public interest. *Gresham Park Community Org. v. Howell,* 652 F.2d 1227, 1232 n.7 (5th Cir. 1981).

### A. *Substantial Likelihood That Plaintiff Will Prevail On The Merits*

Plaintiff is likely to prevail on the merits of his claim. Defendants discriminated against plaintiff solely because of threat from his perceived disability, he is "otherwise qualified" to participate in a regular classroom education pursuant to § 504, and defendants' actions are unsupported by reliable medical or scientific evidence and are irrational and based solely on vague, undifferentiated fears.

Plaintiff contends, *inter alia,* that defendants Dugo, Chin, Lee, and REDACTED retaliated against him for voicing objection to discrimination. This retaliation, according to plaintiff, took the form of: (1) forcibly withdrawing him from classes for Fall 2020 Semester, (2) placing him on interim suspension for Fall 2020 Semester without any hearing or investigation (3) re-accusing him of assault and battery for a Fall 2019 Semester

FILED DATE: 1/12/2021 1:37 PM    2021CH00106

incident – an incident where the findings of the university investigation revealed that REDACTED had falsely testified to witnessing the battery on the NUPD police report, (4) imposing a variety of sanctions in the form of charges of violating five different policies resulting from the Fall 2020 incident, and (5) imposing sanctions in the form of ultimate expulsion against him after a hearing before a "stacked" tribunal.

The Supreme Court has made it abundantly clear that "colleges and universities are not enclaves immune from the sweep of the First Amendment." *Healy v. James,* 408 U.S. 169, 180 (1972). They may not be "enclaves of totalitarianism." *Tinker v. Des Moines Indep. Community Sch. Dist.,* 393 U.S. 503, 511 (1969). It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Id.* at 506. The court applied those well-established legal principles in concluding that the plaintiff in *Qvyjt v. Chhiu-TSU Lin,* 932 F.Supp. 1100 (N.D. Ill. 1996), was engaged in constitutionally protected speech when he reported acts of faculty misappropriation and research misconduct.

Fernando Qvyjt, a graduate student in chemistry at Northern Illinois University, filed a formal complaint alleging that his dissertation director was "misappropriating his research." 953 F. Supp. at 246. Subsequent to making the allegation, he was (1) barred from using the laboratory, (2) informed by his dissertation committee that his dissertation was unsatisfactory, (3) required to select a new dissertation topic and advisor, (4) for a period of four months, denied permission to select an advisor from another university, and (5) terminated from the program. In denying defendants' motion for summary judgment, the court stated that "[d]rawing all reasonable inferences in favor of plaintiff... the court finds that plaintiff has presented evidence from which a reasonable trier of fact could find that defendants retaliated against plaintiff for his accusations of misconduct against Dr. Lin." *Id.* at 247.

A review of the facts in the case at bar leads one to the inescapable conclusion that defendants did in fact retaliate against plaintiff. First, in all of his 2019 law courses leading up to the student suspension he received passing grades. Second, he received a satisfactory mid-term evaluation in his CLR class, which is legal writing and analysis; and he was never declared to be a marginal student, as required for student who are not progressing satisfactorily; he was never remediated academically, which is a requirement for students who have been declared

FILED DATE: 1/12/2021 1:37 PM    2021CH00106

marginal. These facts notwithstanding, plaintiff was suspended two weeks prior to the end of the school year in November 2019 and given an ultimatum - withdraw or face further "discipline" and a litany of retaliatory conduct.

Following his refusal to withdraw, he was suspended for the duration of Fall 2019 and Spring 2020 Semester. He initiated internal complaints against Christine DePilla, Heather Cohen, and REDACTED on December, 10th and 12th, 2019. On May 11th, 2020 he initiated a complaint against Eric Chin.

On August 23rd, 2020 he was suspended by Interim Dean of Students Mona Dugo, in part, due to allegations relating to REDACTED from his role in student conduct hearings regarding the November 2019 incident. Three of the individuals participating in the decision were suspend him were defendant Eric Chin, whom plaintiff had accused of violating NU disability discrimination for not properly handling the violation of 405 ILCS 5/3-606 by OFFICER T. HEALY (Badge #22), and defendants DePilla and Cohen, who proceeded to initiate a coverup when told by plaintiff of defendant REDACTED unconstitutional actions in 2019. On August 27th, 2020 Plaintiff initiated an outside complaint with the Department of Education about Defendant Dugo. On September 9th, 2020 NU additionally sanctioned him with "unauthorized report sharing" regarding his reports of REDACTED DePilla, and Cohen.

Dugo first hid the existence of two illegal audio tapes made by REDACTED which caused her to suspend Plaintiff originally on August 23rd. Dugo then directly contacted Plaintiffs therapist without his knowledge or consent to share the tapes with him. When the Plaintiff found out about the tapes, Chin, Lee and Dugo obstructed his reports to the police. When Plaintiff complained about the conduct, Chin, Dugo, and Lee requested no-contact orders through the school on November 4th, 2020. When Plaintiff complained about their conduct, Dugo contacted, either directly or indirectly, Plaintiffs sister. When Plaintiff complained about their conduct, on November 6th, 2020, Dugo initiated a Stalking No Contact Order against him, 20 OP 20532, which is scheduled for hearing on January 6th, 2021.

On November 17th, 2020, Plaintiff attempted to secure a Stalking No Contact Order against Dugo restraining her from contacting his family. On November 19th, 2020 Plaintiff was arrested for allegedly violating 20 OP 20532 resulting from an email he had sent on November 4th, 2020. On December 22nd, 2020, Plaintiff was

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

expelled resulting from the illegal audio tapes pending an appeal which will be timely submitted by January 4th, 2020.

A retaliation claim can be established through indirect evidence by proving a chronology of events from which retaliation can be inferred. *Qvjyt,* 953 F.Supp. at 246 (citation omitted). The events set forth above allow such an inference. There is a total absence of documented proof supportive of defendants' contention that plaintiff was "Endangering Self or Others." If anyone endangered themselves or others, it was Chin and Depilla, for they failed to document properly plaintiff's 2019 complaints.

Based on plaintiff's proven academic record, and defendants' failure to document any significant deficiencies on plaintiff's part, together with the university's failure to follow its own policy respective to students deemed to be marginal, one can only conclude that the adverse actions taken with respect to plaintiff were taken in retaliation for his complaints regarding Mr. REDACTED Mr. Chin, Ms. DePilla, and Ms. Dugo, all of which were constitutionally protected by the First Amendment. Plaintiff has more than a substantial likelihood of prevailing on this issue.

Regarding the issue of the 2019 false imprisonment, there is a substantial likelihood Plaintiff will prevail on his claims. In Illinois a false imprisonment "is defined as an unlawful restraint of an individual's personal liberty or freedom of locomotion," in which "a person is compelled to remain where he does not wish to remain or to go where he does not wish to go." ***Lopez v. Winchell's Donut House*, 126 Ill.App.3d 46, 81 Ill.Dec. 507, 466 N.E.2d 1309, 1311 (1984)** It may be accomplished by "words alone, by acts alone or both." ***Id.*** **Shea v. Winnebago County Sheriff's Dep't, 746 Fed. Appx. 541, 548 (7th Cir. 2018), cert. denied sub nom. Shea v. Winnebago County Sheriff's Office, 139 S. Ct. 1200, 203 L. Ed. 2d 204 (2019) 285.** The unlawful restraint by one person of the liberty or freedom of movement of another constitutes "false imprisonment". **Hughes v. New York Cent. Sys., 20 Ill. App. 2d 224, 155 N.E.2d 809 (1st Dist. 1959)** Defendants Alkhawaja, REDACTED and REDACTED physically restrained the plaintiff's movement during the 2019 incident until Officer Healy and two other officers arrived on scene and forcefully transported Plaintiff to Northwestern Memorial Hospital, based solely on the false eyewitness testimony given by REDACTED at the scene. Due to these facts, Defendants Alkhawaja,

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

REDACTED REDACTED and Defendant Healy (Badge #22), along with the two other officers and paramedics, are liable for false imprisonment.

Because Mental Health and Developmental Disabilities Code protects liberty interests, strict compliance with statutory procedures is required. **In re Amanda H., App. 3 Dist.2017, 413 Ill.Dec. 866, 79 N.E.3d 215, appeal denied 417 Ill.Dec. 835, 89 N.E.3d 754.** Appeal And Error 181 The procedural safeguards in place for civil commitment are not mere technicalities to be sidestepped; rather, the legislature created them to protect people from the deprivation of a liberty interest. **In re Demir, App. 4 Dist.2001, 256 Ill.Dec. 226, 322 Ill.App.3d 989, 751 N.E.2d 616.** Mental Health 37.1 Involuntary admission procedures represent the legislature's attempt to balance the individual's interest in liberty against society's dual interests in protecting itself from dangerous mentally ill persons and caring for those who are unable to care for themselves; the Mental Health and Developmental Disabilities Code's procedural safeguard's are not mere technicalities but are essential tools to safeguard the liberty interests of respondents in mental health cases. **In re Joseph P., App. 4 Dist.2010, 348 Ill.Dec. 107, 406 Ill.App.3d 341, 943 N.E.2d 715.** Constitutional Law 4337; Mental Health 37.1

The law against involuntarily committing people based on threat from their perceived disability is clearly established, and neither the police nor the paramedics are immune from suit. Police officers and paramedics failed to prove either that law was not clearly established or, if law was clearly established, that defendants neither knew nor should have known of relevant legal standard with respect to plaintiff's claims of illegal search and use of force in removing her from her home and subjecting her to involuntary mental examination precluding dismissal of § 1983 action on qualified immunity grounds. **Anderson v. Village of Forest Park, App. 1 Dist.1992, 179 Ill.Dec. 373, 238 Ill.App.3d 83, 606 N.E.2d 205.** Civil Rights 1376(4); Civil Rights 1376(6) Because the police officers and paramedics in the instant case knew that the right to be free of discrimination and imprisonment based off threat from perceived disability and to participate freely in school related activities without fear of harassment, and because they knew the relevant legal standard with respect to Plaintiffs claims of illegal search and use of force in removing him from the scene of the school during the 2019 incident, they are liable violation of Plaintiffs Fourth Amendment rights against unreasonable searches and seizure.

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

Failure to complete the petition constitutes prejudice to the patient. Omission of the transporting officer's names and contact information from the petition for involuntary admission could not be presumed to be harmless under Mental Health and Developmental Disabilities Code; failing to provide such information deprived patient of using testimony by the transporting officers that might have been beneficial to her, and that resulted in potential prejudice to patient. **In re Amanda H., App. 3 Dist.2017, 413 Ill.Dec. 866, 79 N.E.3d 215, appeal denied 417 Ill.Dec. 835, 89 N.E.3d 754**. **Mental Health** **45** Mental Health and Developmental Disabilities Code required that the transporting officers' names, badge numbers, and employer be identified in the petition for involuntary admission so that the officers could be called as potential witnesses … the police played an active role in restraining patient and in transporting her to the hospital against her will. ***Id.***

In the instant case, Officer Healy (Badge #22) failed to complete the petition for commitment. Patient could not be found to be person subject to involuntary admission to mental health facility, where peace officer, who took patient into custody and transported patient to mental health facility, failed to complete petition for involuntary admission. **In re John N., App. 3 Dist.2006, 302 Ill.Dec. 278, 364 Ill.App.3d 996, 848 N.E.2d 577, modified on denial of rehearing.** **Mental Health** **38** **286.** Initially authorized detention of individual pursuant to Mental Health Code may be followed by unlawful detention, that is actionable as false imprisonment, if detention is continued despite failure to comply with filing requirements of Code. **S.H.A. 405 ILCS 5/1–100 et seq. Sassali v. DeFauw, 297 Ill. App. 3d 50, 696 N.E.2d 1217 (2d Dist. 1998)**

Although Healy may have partially competed a petition later, the petition in the instant case was still invalid as it was completed by a social worker, and not Healy. Petition for involuntary commitment of patient to mental hospital was invalid, where petition was completed by social worker at hospital, not by police who brought patient to hospital. **In re Demir, App. 4 Dist.2001, 256 Ill.Dec. 226, 322 Ill.App.3d 989, 751 N.E.2d 616.** **Mental Health** **38** Under statute on involuntary admission to mental health facility, when peace officer takes person who is subject of emergency petition for involuntary admission to mental health care facility into custody and transports person to mental health facility, failure of peace officer to complete petition for involuntary admission is reversible error. **In re John N., App. 3 Dist.2006, 302 Ill.Dec. 278, 364 Ill.App.3d 996, 848**

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

**N.E.2d 577, modified on denial of rehearing.** Mental Health 38; Mental Health 45 In the case at bar, Healy was the peace officer who brought the Plaintiff to the hospital yet never completed the petition. Therefore, the involuntary admission in this case was "reversable error." 287. Fact that original detention of individual may be lawful, and thus will not support false imprisonment claim, does not mean that subsequent detention is also lawful and thus not actionable. **Sassali v. DeFauw, 297 Ill. App. 3d 50, 696 N.E.2d 1217 (2d Dist. 1998); Fulford v. O'Connor, 3 Ill.2d 490, 500–01, 121 N.E.2d 767 (1954); Weimann v. County of Kane, 150 Ill.App.3d 962, 968, 104 Ill.Dec. 110, 502 N.E.2d 373 (1986); see also Hyatt v. United States, 968 F.Supp. 96, 110 (E.D.N.Y.1997) (applying Illinois law to a false imprisonment claim).**

In addition, in the case at bar, the petition for commitment was never filed and therefore patient was never served. Involuntary commitment order had to be reversed, where petition for involuntary commitment was filed 48 hours after involuntary admission and hospitalization of person, rather than within the statutorily mandated 24 hours, and where record failed to indicate that committed person was served with copy of petition within 12 hours of admission as required by statute. **Matter of Riviere, App. 3 Dist.1989, 132 Ill.Dec. 141, 183 Ill.App.3d 456, 539 N.E.2d 451.** Mental Health 38; Mental Health 39; Mental Health 45 288. Under involuntary commitment provisions of Mental Health Code, failure to timely file commitment petition after individual is taken into custody is error that cannot be waived, and if director of facility to which individual has been taken does not comply with requirement, he or she must either release individual, or initiate new involuntary commitment proceedings. **S.H.A. 405 ILCS 5/3–611. Sassali v. DeFauw, 297 Ill. App. 3d 50, 696 N.E.2d 1217 (2d Dist. 1998) 290.** False imprisonment does not necessarily depend on the legality of the arrest, and an unlawful detention following an arrest can itself be false imprisonment. **Hughes v. New York Cent. Sys., 20 Ill. App. 2d 224, 155 N.E.2d 809 (1st Dist. 1959) 289.** Individual who had been forcibly taken to hospital for initiation of involuntary commitment proceedings under Mental Health Code, but for whom hospital had not timely filed involuntary commitment petition, could plead false imprisonment claim for time between when 24-hour period for filing petition expired, and time when court issued order setting hearing date and authorizing sheriff to transport individual. **S.H.A. 405 ILCS 5/1–100 et seq. Sassali v. DeFauw, 297 Ill. App. 3d 50, 696 N.E.2d 1217**

FILED DATE: 1/12/2021 1:37 PM    2021CH00106

**(2d Dist. 1998)**

This court has jurisdiction over the issue of false imprisonment due to the procedural violations committed as part of Plaintiffs petition for commitment. Trial court had subject matter jurisdiction over petitions for involuntary admission and involuntary administration of psychotropic medication, where petition set forth required allegations that patient was subject to involuntary admission to a mental health facility, was 18 years or older, and was in need of immediate hospitalization. S.H.A. ILCS 5/3–600. In re Megan G., 2015 IL App (2d) 140148, 48 N.E.3d 118. The court in *Megan* reasoned that if the three criteria specified were met, then it has jurisdiction in the matter. In the instant case, the Petition states that Plaintiff was subjected to involuntary admission, was over 18 at the time, and was need of immediate hospitalization. Therefore, the court should have jurisdiction on the issue of false imprisonment.

Regarding the 2020 discrimination allegation and sanctions, there is a substantial likelihood that plaintiff will prevail on those matters. Of course, if he proves his eavesdropping and disability discrimination claims, the allegations would become moot. As set forth in plaintiffs affidavit, he was harassed by Defendant REDACTED His version is corroborated by another student, Shen Peng, who stated that she encouraged plaintiff emotionally after he was subjected to disability harassment. Pursuant to the policies and procedures, an investigation should be done when a student has been (1) subjected to alleged harassment based on a protected class, and (b) objective evidence supports the harassment being based on a protected class. The university did not initiate an investigation with regards to Plaintiff's claims, Amanda DeSilva and Colleen Johnston simply decided that there wasn't enough evidence to warrant an investigation, despite the fact that Plaintiff had provided over 30 pages of information regarding his claims. With a proper investigation regarding Plaintiffs discrimination claims, any claim by the university as to Plaintiff's alleged discriminatory acts vanishes in thin air.

The Plaintiff's claim of Eavesdropping is without question. REDACTED made specific admission to recording both of the phone calls based on threat from perceived disability. The university provided Plaintiff the evidence in the form of two MP3 audio files which they attached the investigation report for the Plaintiff's hearing. If that is the case, then it stands to reason that the REDACTED and not the Plaintiff, should be on trial for expulsion. The

FILED DATE: 1/12/2021 1:37 PM    2021CH00106

university cannot have it both ways. It cannot state that it wants to expel Plaintiff for his alleged discriminatory acts, while ignoring the blatant discrimination and eavesdropping which was inflicted upon him. If the university actually cared about discrimination, then a proper investigation into Plaintiffs claims, and not the bias musings of DeSilva and Johnston, would determine if, and when, a student could retain his place at the university.

Plaintiff states in his affidavit that only he, but not other students known to be making inappropriate comments on the group chat, has been subjected to student disciplinary action in any way. Assuming the correctness of that statement, plaintiff is being singled out for different treatment. Pursuant to the equal protection clause of the Fourteenth Amendment to the United States Constitution, "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." The equal protection clause mandates similar treatment of persons in similar situations. *Arceneaux v. Treen,* 671 F.2d 128, 131 (5th Cir. 1982). [T]he crucial question is whether the [university] treats similarly situated people unequally. *Id.* at 137 (Goldberg, specially concurring).

There can be no dispute as to the fact that Plaintiff, although similarly situated to other students, was treated differently. It now becomes a question as to whether the university's "action rationally furthers a legitimate state purpose." *San Antonio Independent School District v. Rodriquez,* 93 S.Ct. 1278, 1308 (1973). Obviously, there can be no legitimate state purpose to deviate from established policy to demand that plaintiff, and only plaintiff, be required to submit to student disciplinary proceedings.

Since plaintiff was never declared to be a marginal student, and his discrimination claims were not properly investigated, the university's policy of disciplining students who have allegedly violated Equity Policy not apply to him. Therefore, there is no basis for the university to impose a sanction on him. Further, respective to the investigation of competing discrimination claims, the university clearly treats Plaintiff differently from similarly situated students. Based on these important factors, plaintiff has a strong likelihood of success on the merits.

**B. *Plaintiff Faces A Substantial Threat of Irreparable Injury***

Defendants' decision is causing plaintiff irreparable harm for which there is no adequate remedy at law. Because NU expulsion decisions are permanent, there is a substantial risk that plaintiff will be unable to attend

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

school before the merits of this action are concluded and a permanent injunction is entered. The educational restrictions imposed by defendants are presently causing plaintiff psychological harm and substantially diminishing the quality of his life.

Irreparable harm is established any time a movant's First Amendment rights are violated. *Marcus v. Iowa Pub. Tele.,* 97 F.3d 1137, 1140-41 (8th Cir. 1996). The loss of First Amendment freedoms, for even a minimal period of time, unquestionably constitutes irreparable injury. *Elrod v. Burns,* 427 U.S. 347, 373 (1976) (plurality opinion). Based on the facts of the case, it is very likely that plaintiff will be able to prove that his First Amendment rights were violated when he was suspended.

Further, plaintiff received an expulsion and was not allowed to graduate notwithstanding the fact that he met all of the requirements for pursuing coursework. This constitutes irreparable injury, for it delayed plaintiff's fulfillment of his requirements for a degree. *See Phillips v. Marsh,* 687 F.2d 620, 622 (2d Cir. 1982); *Doe v. New York University,* 666 F.2d 761, 773 (2nd Cir. 1981); *Yusuf v. Vassar College,* 1992 U.S. Dist. LEXIS 13029, No. 92 Civ. 5462, 1992 WL 230143 at *1 (S.D.N.Y. Sep. 1, 1992)

The notion of irreparable harm in the circumstances of this case is firmly established through precedent. Here, Plaintiff's final semester has been disrupted by his emergency suspension and he is at risk of being unable to complete the final semester of [university] work, or having to repeat it. In *Doe v. Vassar College*, the district court noted that, although the Second Circuit has held that the harms that result in a delay in graduation can adequately be remedied by damages, "[w]hether an interruption in coursework is irreparable harm is a closer question, which the Second Circuit has not squarely addressed, and on which it appears that district courts have disagreed." 2019 WL 6222918, at *6, 2019 U.S. Dist. LEXIS 203418, at *16 (citing *Phillips v. Marsh*, 687 F.2d 620 (2d Cir. 1982) and collecting cases). The Court concludes that Plaintiff's allegations that he will lose the work he completed prior to his mid-semester suspension if he is unable to return is sufficient to show irreparable harm. *Compare Bhandari v. Trustees of Columbia Univ.*, No. 00-cv-1735, 2000 WL 310344, at *5, 2000 U.S. Dist. LEXIS 3720, at *15–16 (S.D.N.Y. Mar. 27, 2000) (finding irreparable harm where the plaintiff was suspended midway through the semester and would lose "the benefit of the work he has already performed this semester"), *with Vassar Coll.*,

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

2019 WL 6222918, at *6, 2019 U.S. Dist. LEXIS 203418, at *15 (finding no irreparable harm where plaintiff claimed suspension "for a single semester at the *beginning* of his senior year") (emphasis added). Doe v. Rensselaer Polytechnic Inst., 120CV01359BKSCFH, 2020 WL 6544607, at *6 (N.D.N.Y. Nov. 6, 2020) The courts have reasoned that completion of coursework established irreparable harm necessary for a grant of preliminary injunction or temporary restraining order. In the instant case, the Plaintiff already completed 10-weeks of coursework prior to his late semester 2019 suspension, the conditions precedent for the establishment of irreparable harm required for a preliminary injunction have been achieved.

Succinctly stated, if plaintiff does not submit to blatant discrimination by the university, he faces additional sanctions, up to and including permanent expulsion from the university. If a temporary restraining order is not issued, the university will in all likelihood permanently expel plaintiff and make notations of the incident on his permanent record, resulting in a further disruption in his legal education. It is without dispute that the expulsion constitutes irreparable harm.

**C. *The Threatened Injury to Plaintiff Outweighs Any Harm To Defendants***

The threat of injury to plaintiff outweighs any harm to defendants. Placing plaintiff in a regular classroom poses no significant health or safety risk to himself, his classmates or his teachers. Permitting plaintiff to participate in classroom education will enhance the quality of his education as well as that of his fellow students.

Clearly, the balance of the equities tilts in favor of plaintiff. He has been pursuing a law degree at NU since 2018. He has pending litigation (20 OP 20532 and 20 DV 2080601) in which the allegations of retaliation from Dugo, Chin, and Lee play a prominent role. He has a pending legal action (20 CV 1772) in which the allegations of battery from 2019 have a prominent role. He is willing to work with university on an alternative resolution plan to expulsion, but he is not prepared to give up on his dream of legal education at university. If necessary, plaintiff is willing to defer his enrollment until next fall, but not to be expelled from the university. Since plaintiff is willing to make concessions to NU, an order prohibiting the university from expelling him until a judicial determination can be rendered imposes no substantial burden on the university.

With regards to REDACTED noting the quantity, severity, relative complexity, and maliciousness

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

involved in her crimes the can be no telling what other things this person may be capable of, which poses a serious threat to the safety of the general community. This except taken from Spinka v. Drake, 14-CV-583-DRH-PMF, 2016 WL 1258460, at *4 (S.D. Ill. Mar. 31, 2016) illustrates the nature of these concerns, which have been shared by others in similar cases: "With regard to District 77, the plaintiff's second amended complaint alleges that District 77 had received complaints about defendant E.H.'s behavior toward fellow students and failed to prevent E.H.'s attack on the plaintiff, despite knowledge of the risks. The plaintiff argues that these allegations are sufficient to survive dismissal, citing *Doe ex rel. Ortega-Piron v. Chicago Board Of Education,* 213 Ill.2d 19, 289 Ill.Dec. 642, 820 N.E.2d 418, 420 (2004), as support. Spinka now argues that, as in *Doe*, the circumstances of the case made the assault foreseeable for District 77 such that it was willful and wanton in failing to intervene. However, the complaint in *Doe* revealed that the school board in that case had far more extensive knowledge of the assailant's deviant sexual history compared to the case at issue. In *Doe*, the plaintiff pled that the defendant knew the student assailant "had been declared a sexually aggressive child" and was "under a 'Protective Plan' requiring that he never be left unsupervised among other children." *Doe ex rel. Ortega-Piron v. Chicago Bd. Of Educ.*, 213 Ill.2d 19, 22, 289 Ill.Dec. 642, 820 N.E.2d 418, 420. Spinka v. Drake, 14-CV-583-DRH-PMF, 2016 WL 1258460, at *4 (S.D. Ill. Mar. 31, 2016) The argument about the foreseeability of future crimes committed by REDACTED should be weighed with the context of the information in this case as favorable factors supporting the notion the threat of injury to the Plaintiff outweighs the threat of harm to the defendants, which is non-existent from Plaintiff attending courses in his degree.

**D. *There Will Be No Disservice To The Public If Temporary Relief Is Granted***

Granting a temporary restraining order will serve the public interest. Defendants' irrational and unlawful conduct has caused confusion and unwarranted fear in a manner which damages the public health every day it is permitted to continue. In addition, the students in Northwestern University Community are being deprived of plaintiff's contribution to their educational experience and social development. Plaintiff is actually advancing the interest of the public, for the public has an interest in its colleges and university adhering to their internal rules and regulations. The public has a paramount interest in making certain that an individual is not deprived of

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

property which is his.

**E. *Plaintiff Has No Adequate Remedy At Law***

Plaintiff has cooperate with the university to the fullest extent. However, the university proceeded to initiate disciplinary action against him, claiming that he had not been discriminated against and expelling him. The university has demanded that he appeal the decision by January 4th, 2021. Plaintiff intends to do so, however without outside intervention the result will be the same. If not immediately restrained, the university will proceed to take further disciplinary action against plaintiff, which, in all likelihood, will result in his permanent expulsion from the university. This would result in a further delay in Plaintiff's education.

**REQUEST FOR EXPEDITED DISCOVERY**

3. The parties to the Dugo Petition are scheduled to appear for a hearing on January 6th, 2021. *See* Exhibit A (Dec. 16, 2020 Disposition Order).

5. NU has received two subpoenas from Plaintiff in connection with the Dugo Petition (referred to collectively as "the Syed Subpoenas"). The first subpoena, attached as Exhibit B, was issued by the Clerk of Court and filed with the Court on December 1, 2020, with a return date of December 8, 2020. This subpoena seeks copies of Northwestern University Police Department report numbers 2019-0595 and 2020-0356. *See* Ex. B. This subpoena indicates that the matters on which examination are requested are 20DV20806 and 20OP20532. *Id.* at pg. 2. It was served on December 1, 2020, via email and NU both accepted it and acknowledged its receipt. *See* Exhibit C.

6. The second subpoena, attached as Exhibit D, is dated December 1, 2020, with a return date of December 9, 2020 and seeks the following: "All records of any kind, paper, electronic, or otherwise, which related in any, shape or form to: Fahad Syed or Fahad Bilal Syed or Fahad B Syed (D/O/B: 8/28/1989). Includes Admission Records and Northwestern Police Department Records." This second subpoena was issued by the Clerk of Court and filed with the Court on December 1, 2020, with a return date of December 9, 2020. *See* Ex. D. This subpoena indicates that the matters on which examination are requested are 20DV20806 and 20OP20532. *Id.*

FILED DATE: 1/12/2021 1:37 PM    2021CH00106

at pg. 2. It was served on December 3, 2020, via email and NU both accepted it and acknowledged its receipt. *See* Exhibit E.

7.      On December 8, 2020, at 4:47 PM Scott Warner filed a motion to quash the Syed Subpoenas with the Clerk of the Circuit Court of Cook County, Chicago, Illinois, filing for an Appearance on behalf of Third-Party Northwestern University for case 20 OP 20532. *See* Exhibit F.

8.      On December 9, 2020, at 9:16 AM Defendant filed a motion pursuant to Ill. Sup. Ct. Rule 214 compelling NU to disclose the content of the requests for information contained in the Syed Subpoenas with IRIS Y. MARTINEZ CIRCUIT CLERK COOK COUNTY, IL for case 2020OP20532. *See* Exhibit G.

9.      As an initial matter, both subpoenas were properly issued and should therefore be enforced. **The clerk of any court in which an action is pending shall, from time to time, issue subpoenas for those witnesses and to those counties in the State *as may be required by either party*.** 735 ILCS 5/2-1101 (emphasis supplied). As the Defendant is a party to case 2020OP20532, he should be granted the subpoenas. **For good cause shown**, the court on motion may quash or modify any subpoena or, in the case of a subpoena duces tecum, condition the denial of the motion upon payment in advance by the person in whose behalf the subpoena is issued of the reasonable expense of producing any item therein specified. *Id.* (emphasis supplied.) NU has not shown good cause, and indeed is motioning to quash Defendant's subpoena's as part of an ongoing pattern of harassment and intimidation by NU.

10.     Both subpoenas should be enforced for reasons beyond procedural correctness. The Defendant notes that ensuring proper issuance of any subpoenas from Syed in this matter is an absolute necessity given the persistent, threatening, and harassing nature of Dugo's conduct that led Defendant to seek a Stalking No Contact Order, and her similar persistent, threatening, and harassing behaviors towards members of Defendant's family and therapist. Indeed, the Defendant views the subpoenas as part of an ongoing effort to hold the University's employees legally accountable for negligently failing to do their doing their jobs, including addressing NU's longstanding pattern of disparate discriminatory treatment of Defendant, in addition to NU deliberately and maliciously retaliating against Defendant for reporting his concerns.

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

11. An e-mail dated November 4, 2020 from the Defendant to NU's Behavioral Consultation Team, attached as Exhibit H, illustrates just some of Dugo's recent misconduct in this regard. Courts are empowered to limit discovery to prevent abuse. *See* Ill. S. Ct. R. 201(c)(1) ("The court may at any time on its own initiative, or on motion of any party or witness, make a protective order as justice requires, denying, limiting, conditioning, or regulating discovery to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or oppression."). In sum, Dugo and NU should not be permitted to use the legal process – particularly an oppressive motion to quash the legitimate subpoenas Defendant needs in order to defend himself in two separate legal cases – to perpetuate their misconduct and to further harass and threaten the Plaintiff and his family.

12. Fundamentally, both of the Syed Subpoenas should be enforced because they seek information from the University that is relevant to the subject matter of cases 20DV20806, 20OP20532. They also apply to case 2020CH2546 and 20CV1772. *See* Exhibit I. A party may obtain discovery regarding "any matter relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking disclosure." Ill. S. Ct. R. 201(b)(1).

13. With respect to the first subpoena, both of the police reports requested in that subpoena are relevant to the Dugo Petition. *See* Ex. B. Report number 2019-0595 relates to an incident in the fall of 2019 that was referred to in the Dugo Petition as the reason Defendant was on disciplinary probation. This report relates to proving Defendants innocence of the unfounded allegation in the Dugo Petition that he "was on probation for physically assaulting another student." That report lists REDACTED as a witness to an alleged act of battery and is directly contradicted by an interview which REDACTED gave to NU during which he explicitly admitted to not actually witnessing the alleged act named in the report. Defendant notes that NU was repeatedly made fully aware of this witness discrepancy and failed to investigate or action upon in in any way, despite the incident directly resulting the Defendants illegal involuntary commitment to Northwestern Memorial Hospital from November 1-8th, 2019. *See* Exhibit J.

14. The other police report, number 2020-0356, focuses on a report that Plaintiff made in October 2020 about another student. Specifically, the police report is about a transgender student who he never met before

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

or had any kind of relationship with who recorded two of her telephone conversations with him without his consent. The telephone conversations in question are the reason Dugo placed Defendant on interim suspension, and are directly relevant to the following allegation in the petition: "I had to issue him an interim suspension for threatening a fellow law student w/ physical violence." Dugo reported that Defendant threatened this other student on said recordings, and the student shared these recordings with Ms. Dugo. However, the report contains the details of the actual events for which Dugo suspended Defendant. Therefore, it is relevant to defense of the Dugo Petition.

15.     As demonstrated above, ALL of the information sought in the Syed Subpoenas is relevant to the Plaintiff's defense in cases 20DV20806, 20OP20532, 20CV1772. Indeed, the Motion to Quast appears to be part of an ongoing pattern of conduct to harass and threaten the Defendant and his family and mental health provider. NU should not be permitted to use the legal process to perpetuate this illegal conduct.

## CONCLUSION

There is a strong likelihood of success on the merits by plaintiff, he will sustain irreparable injury if a temporary restraining order is not issued; the balance of the equities is in his favor; no disservice to the public will result in the granting of the temporary restraining order; and plaintiff has no adequate remedy at law. THEREFORE, plaintiff requests that this court issue a Temporary Restraining Order to protect the plaintiff's rights.

## PRAYER FOR RELIEF

FOR THESE REASONS, Plaintiff respectfully requests that the Court enter a Temporary Restraining Order:

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

227. Restraining and enjoining Defendants Northwestern University ("NU") from Expelling Plaintiff and Compelling Defendants NU to place Plaintiff in regular class at NU Law School or find some suitable alternative learning arrangement, pending the disposition and outcome of his claims.

228. Allowing the Plaintiff to commence discovery immediately on the following schedule: NU should immediately surrender all records and/or communications regarding Plaintiff, Fahad B. Syed, including NUPD Reports 2019-0595 and 2020-0356, to Plaintiff's email address at syed.216@gmail.com.

229. Setting Plaintiff's Motion for Preliminary Injunction for hearing on a date certain; and

230. Granting such further relief as the Court deems just and proper.

Dated: December 29th 2020

Respectfully submitted,

By: ________________________________

Fahad Syed
Pro Se
244 E Pearson St. Apt. 711
Chicago, IL 60611
Tel: 773-564-0325
Syed.216@gmail.com

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

**VERIFICATION BY CERTIFICATION PURSUANT TO SECTION 1-109**

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief, and as to such matters the undersigned certifies as aforesaid that [he/she] verily believes the same to be true.

Fahad Syed 12/29/20

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

**ORDER TO SHOW CAUSE FOR TEMPORARY RESTAINING ORDER**

Upon (i) the Affidavit of Fahad Syed sworn to the 11th of January, 2021, and the exhibits annexed thereto, and (ii) Plaintiff's Memorandum of Law in Support of its MOTION FOR TEMPORARY RESTRAINING ORDER, it is hereby

ORDERED, that the above named defendant[s] show cause before this Court, at Room 802, 50 West Washington Street Chicago, IL 60602 on _______________, _______________ at ________________ a.m./p.m. or as soon thereafter as counsel may be heard, why an order should not be issued pursuant to 735 ILCS 5/11-101 of the Illinois Code of Civil Procedure enjoining the defendant[s] during the pendency of this action from EXPULSION OF FAHAD B. SYED FROM NORTHWESTERN UNIVERSITY LAW SCHOOL; and it is further

ORDERED that, sufficient reason having been shown pending the hearing of the plaintiff's application for a preliminary injunction, but in no event beyond TEN DAYS days from the entry of this order, unless extended by the Court, the defendant[s] are temporarily restrained and enjoined from taking any disciplinary action, including but not limited to expulsion from Northwestern University, against plaintiff, FAHAD B. SYED, resulting from his recorded phone conversation pending final disposition of plaintiffs' claim that defendants, and others, violated his rights guaranteed by the Constitution and laws of the United States of American and the state of Illinois, and his false imprisonment, retaliation and eavesdropping claims; and it is further

ORDERED, that security in the amount of $100 be posted by the plaintiff[s] prior to ___January_15th_________, _________2021______ at ______5 __________ **p.m**.; and it is further

ORDERED, that the Defendants shall place Fahad Syed in regular class at Northwestern University Law School or find a suitable alternative learning arrangement and that NORTHWESTERN UNIVERSITY SHOULD SURRENDER ALL RECORDS OR COMMUNICATIONS OF ANY KIND REGARDING FAHAD SYED BEFORE 1/4/21; and it is further

ORDERED, that personal service of a copy of this order upon the defendant[s] or his counsel on or before

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

________January 15th_______, _____2021__________ at ______9__________ at p.m. shall be deemed good and sufficient service thereof; and it is further ORDERED, that opposing papers, if any, shall be served by EMAIL upon FAHAD B. SYED, [syed.216@gmail.com], received to his email on or before __January 15th_____________, ______2021_________ at _______9_________ a.m.

DATED: [DATE] _________________________

[CITY], [STATE] United States District Judge

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

Fahad Syed
**Plaintiff,**

**v.**

Northwestern University
**Defendant**

**No.** 2021CH00106

**Calendar** ____________

**TEMPORARY RESTRAINING ORDER**

**This cause coming on to be heard on Plaintiff's Motion for Temporary Restraining Order, notice having been given, and Defendant having appeared through counsel; the Court having considered Plaintiff's Verified Complaint, Plaintiff's Motion for Temporary Restraining Order, the affidavit of** Fahad Syed **____________, and Plaintiff's Memorandum of Law in support thereof; and the Court having considered the arguments of counsel, finds as follows:**

- **A. Plaintiff has shown that it has a clearly ascertainable right in need of protection;**
- **B. Plaintiff has shown that there is a fair question that Plaintiff will succeed on the merits;**
- **C. Plaintiff has shown that it will suffer irreparable harm if an injunction does not issue; and**
- **D. Plaintiff has shown that it has no adequate remedy at law or in equity.**

**Wherefore, IT IS ORDERED as follows:**

**1. Defendant is temporarily restrained from** Expelling Fahad Syed from Northwestern University

**2. This Temporary Restraining Order shall remain in full force and effect pending hearing of Plaintiff's Motion for Preliminary Injunction on ____/____/____ unless otherwise modified or dissolved.**

**3. This Temporary Restraining Order is conditioned upon Plaintiff filing a surety bond in the amount of $ ____________ in form approved by this Court.**

**4. Hearing on Plaintiff's Motion for Preliminary Injunction is set for ____/____/____ at ____________ a.m./p.m.**

**5. This Temporary Restraining Order is entered at ____________, on ____/____/____**

**Atty. No.** 99500
**Name:** Fahad Syed
**Atty. for:** Self
**Address:** 244 E Pearson St. Apt. 711
**City/State/Zip:** Chicago, IL, 60611
**Telephone:** 773-564-0325

**ENTERED:**

**Dated:** ____________, ________

**Judge** **Judge's No.**

**IRIS Y. MARTINEZ, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

# Exhibit A

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

Disposition Order/Stalking No Contact Order (Rev. 12/16/14) CCDV N009

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
DOMESTIC VIOLENCE DIVISION

Mona Dugo
Petitioner

v.

Fahad Syed
Respondent

Any Stalking No Contact Order which would expire on a court holiday shall instead expire at the close of the next court business day. (Stalking No Contact Order Act, Section 105(d))

Case No. 20 OP 20532

Leads No. ______

Respondent's D.O.B. ______

**DISPOSITION ORDER**
Stalking No Contact Order
☒ EMERGENCY ☐ PLENARY

☒ INDEPENDENT PETITION
☐ CRIMINAL PROCEEDING
☐ DELINQUENCY PETITION

**THE COURT FINDS THAT:**

☐ The averments presented are insufficient to grant relief requested.

☒ An (Emergency/Plenary) Stalking No Contact Order was issued on 11/5/20

☐ An (Emergency/Plenary) Stalking No Contact Order was previously extended on 11/24/20

**THE COURT HAVING JURISDICTION OF THE SUBJECT MATTER IT IS HEREBY ORDERED THAT:**

☐ An (Emergency/Plenary) Stalking No Contact Order is DENIED.

☒ An (Emergency/Plenary) Stalking No Contact Order is extended to: 1/6/21 at 5:00pm a.m./p.m.

☒ A Status hearing on the Stalking No Contact Order is set for: 1/6/21 at 9:30 a.m./p.m.

Court located at: 555 W. Harrison St. Chicago, IL (Address) Calendar 90 (Room No.)

☐ A hearing on the Stalking No Contact Order was held and the Stalking No Contact Order is DENIED.

☐ The Stalking No Contact Order is terminated.

☐ The Stalking No Contact Order is vacated.

☐ The Stalking No Contact Order is modified as follows:

Respondent's motion for substitution of judge is granted. Case transferred to the Domestic Violence Division, Presiding Judge's Office for reassignment.

ENTERED
Judge Stephanie Saltouros-2161
DEC 16 2020
IRIS Y. MARTINEZ
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

☐ Alias Summons to issue.

☐ Service by publication.

☐ Case Number ______ is dismissed.

The date of 1/13/21 in District 2 is stricken.

I hereby certify that the document to which this certification is affixed is a true copy.
Date 12-16-20 [signature]
Dorothy Brown
Clerk of the Circuit Court
of Cook County, IL

☐ Atty. No.: ______ ☐ Pro se 99500

Name: Petitioner Attorney's email: MHickey@schiffhardin.com

Atty. for: Respondent's email: syed.216@gmail.com

Address: Third-Party (Northwestern University) Attorney email: scott.warner@huschblackwell.com

City/State/Zip Code: ______

Telephone: ______

ENTERED:

Dated: 12/16/20

[signature]
Judge

#2161
Judge's No.

IRIS MARTINEZ, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

Transfer Order Substitution of Judge/Recusal (10/31/11) CCDV N003

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
DOMESTIC VIOLENCE DIVISION

PEOPLE OF THE STATE OF ILLINOIS

or

Mona Dugo

Petitioner

v.

No. 20 OP 20532

Fahad Syed

Defendant/Respondent

## TRANSFER ORDER SUBSTITUTION OF JUDGE/RECUSAL

This case coming on to be heard on ☐ petitioner's ☒ respondent's ☐ state's ☐ court's motion

☒ To transfer the above entitled to another courtroom due to:

Petitioner Attorney's email: MHickey@schiffhardin.com
Respondent's email: syed.216@gmail.com

☒ Substitution of Judge ☐ Substitution of Judge for Cause

☐ Recusal

Third-Party (Northwestern University) Attorney email: scott.warner@huschblackwell.com

☒ The cause is hereby transferred to the Presiding Judge of the Domestic Violence Division for consideration of the transfer of this case.

OR

☐ This cause is hereby transferred to ______________________, Presiding Judge, Municipal District__________ for consideration of the transfer of this case.

ENTERED:

Dated: 12/16/20 ______, ______ [signature] #2161

Judge Judge's No.

## ORDER

IT HEREBY ORDERED that the motion is granted and this case is hereby transferred to

Courtroom__________ Calendar__________ Date______________, ________ Time ______ a.m./p.m.

ENTERED Judge Stephanie Saltouros-2161 DEC 16 2020 IRIS Y. MARTINEZ CLERK OF THE CIRCUIT COURT OF COOK COUNTY, IL

ENTERED:

Dated: ______________________, ________

Presiding Judge Judge's No.

IRIS MARTINEZ, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

1) 8/23/20 11:44am

I began my interaction with Fahad Syed on 8/23/20 at 11:44am. In my capacity as interim dean of students for Northwest University I had to issue him an interim suspension for threatening a fellow law student w/ physical violence. Mr. Syed was on probation for physically assaultin another student.

Between 8/23 - 11/2/2020 Mr. Syed has sent me more than 150 unanswered text messages with increasingly aggressive language.

2) 10-12-20 → 10-19-20

Mr. Syed sends approximately 100 text messages to me. I responded once & told him to stop. The tone is increasingly hostile & aggressive. He accuses me of monitoring his facebook page (I have not). He sends me text from the Quaran which translated says that sinners will die in a fire, he says he will "ruin me", he makes a sexual reference implying I give our deputy chief of police blow jobs & tells me to "suck his dick." There is a lot of foul & aggressive language.

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

3) 11-2-2020 10:28pm
mr. Syed calls me & accuses me of calling his sister, yells at me for 4 minutes until I hang up on him & block his phone number. at Northwest we have contracted with a threat assessment group (Sigma threat) to help evaluate his threat level. They talked to his sister, who is a police officer.

4) He continues to send me harassing email through my northwestern email address.

2000000592

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

# Exhibit B

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
12/1/2020 12:25 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2020OP20532

FILED DATE: 1/12/2021 1:37 PM 2021CH00106
FILED DATE: 12/1/2020 12:25 PM 2020OP20532

**Subpoena in a Civil Matter (For Testimony and/or Documents)** **(06/05/20) CCG 0106 A**

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Fahad Syed

Plaintiff/Petitioner

v.

Mona Dugo

Defendant/Respondent

Case No. 20OP20532

**SUBPOENA IN A CIVIL MATTER**
**(For Testimony and/or Documents)**

To: Northwestern University Police Department
211 East Superior Street
Chicago, IL 60611

1. ☐ YOU ARE COMMANDED to appear to give your testimony before the

Honorable ______________ in Room ______,

______________, Illinois on ______

at ______ ○ AM ○ PM

2. ☐ YOU ARE COMMANDED to appear and give your deposition testimony before a Notary Public

at: ______________ in Room ______,

______________, Illinois on ______

at ______ ○ AM ○ PM

3. YOU ARE COMMANDED to mail the following documents in your possession or control

to Fahad Syed at syed.216@gmail.com,

on or before 12/8/20 at 9:00 ◉ AM ○ PM

(THIS IS FOR RECORDS ONLY. THERE WILL BE NO ORAL INTERROGATORIES.):

Report JD 2019-0595 (Police Reports)
Report JD 2020-0356

☐ Description continued on attached page(s).

**Your failure to respond to this subpoena will subject you to punishment for contempt of this Court.**

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

FILED DATE: 1/12/2021 1:37 PM 2021CH00106
FILED DATE: 12/1/2020 12:25 PM 2020OP20532

**Subpoena in a Civil Matter (For Testimony and/or Documents)** **(06/05/20) CCG 0106 B**

Notice to Deponent:

1. ☑ The deponent is a public or private corporation, partnership, association, or governmental agency. The matter(s) on which examination is requested are as follows:
20DV20806
20OP20532

☐ Description continued on attached page(s).
(A nonparty organization has a duty to designate one or more officers, directors, or managing agents, or other persons to testify on its behalf, and may set forth, for each person designated, the matters on which that person will testify. Ill. Sup. Ct. Rule 206.)

2. ☐ The deponent's testimony will be recorded by use of an audio-visual recording device, operated by ______________________.
(Name of Recording Device Operator)

3. No discovery deposition of any party or witnesses shall exceed three hours regardless of the number of parties involved in the case, except by stipulation of the parties or by order upon showing that good cause warrants a lengthier examination. Ill. Sup. Ct. Rule 206(d).

○ Atty. No.: ______________
◉ Pro Se 99500

Name: Fahad Syed
Atty. for (if applicable): ______________

Address: 244 E Pearson St. Apt. 711
City: Chicago
State: IL Zip: 60611
Telephone: 773-564-0325
Primary Email: syed.216@gmail.com

12/1/2020 12:25 PM IRIS Y. MARTINEZ

Issued by: /s/______________
Signature
Text ○ Attorney ○ Clerk of Court

Date: 12/1/20

CIRCUIT COURT OF COOK COUNTY, ILLINOIS

☐ I served this subpoena by mailing a copy, as required by Ill. Sup. Ct. Rules 11, 12 and 204(a) (2), to ______________ by certified mail, return receipt requested (Receipt # ______________) on ______________. I paid the witness $ ______________ for witness and mileage fees.

☐ I served this subpoena by handing a copy to ______________ on ______________. I paid the witness $ ______________ for witness and mileage fees.

/s/ ______________ ______________
(Signature of Server) (Print Name)

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

# Exhibit C

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

**From:** **Threat Assessment** threatassessment@northwestern.edu
**Subject:** RE: Subpoena
**Date:** December 3, 2020 at 1:28 PM
**To:** Fahad Syed fahad-syed@law.northwestern.edu

Mr. Syed, your email and attachment have been received.

---

**From:** Fahad Syed <fahad-syed@law.northwestern.edu>
**Sent:** Thursday, December 3, 2020 10:49 AM
**To:** Threat Assessment <threatassessment@northwestern.edu>
**Subject:** Subpoena

Hi,

I have another subpoena, I think I'm just supposed to email this to you?

Thanks,

Fahad Syed

> On Dec 2, 2020, at 9:52 PM, Threat Assessment <threatassessment@northwestern.edu> wrote:
>
> Mr. Syed, your email and attachment have been received.
>
> ---
>
> **From:** Fahad Syed <fahad-syed@law.northwestern.edu>
> **Sent:** Tuesday, December 1, 2020 4:02 PM
> **To:** Threat Assessment <threatassessment@northwestern.edu>
> **Subject:** Re: Office of Equity-Request for Interview.11.30.20
>
> Hi,
>
> Do I just give this to you?
>
> Thanks,
>
> Fahad Syed
>
>> On Dec 1, 2020, at 2:09 PM, Threat Assessment <threatassessment@northwestern.edu> wrote:
>>
>> Thank you Mr. Syed for the response. Please review the attachment for updated information.
>>
>> ---
>>
>> **From:** Fahad Syed <fahad-syed@law.northwestern.edu>

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

# Exhibit D

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
12/1/2020 5:27 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2020OP20532

FILED DATE: 1/12/2021 1:37 PM 2021CH00106
FILED DATE: 12/1/2020 5:27 PM 2020OP20532

**Subpoena in a Civil Matter (For Testimony and/or Documents)** **(06/05/20) CCG 0106 A**

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Fahad Syed
Plaintiff/Petitioner

v.

Mona Dugo
Defendant/Respondent

Case No. 20OP20532

**SUBPOENA IN A CIVIL MATTER**
**(For Testimony and/or Documents)**

To: Northwestern University
633 Clark Street
Evanston, IL 60208

1. ☐ YOU ARE COMMANDED to appear to give your testimony before the Honorable ______ in Room ______, ______, Illinois on ______ at ______ ○ AM ○ PM

2. ☐ YOU ARE COMMANDED to appear and give your deposition testimony before a Notary Public at: ______ in Room ______, ______, Illinois on ______ at ______ ○ AM ○ PM

3. YOU ARE COMMANDED to mail the following documents in your possession or control to Fahad Syed at syed.216@gmail.com, on or before 12/9/20 at 9:00 ◉ AM ○ PM
(THIS IS FOR RECORDS ONLY. THERE WILL BE NO ORAL INTERROGATORIES.):
All records of any kind, paper, electronic, or otherwise, which related in any, shape or form to: Fahad Syed or Fahad Bilal Syed or Fahad B Syed (D/O/B: 8/28/1989). Includes Admission Records and Northwestern Police Department Records.

☐ Description continued on attached page(s).

**Your failure to respond to this subpoena will subject you to punishment for contempt of this Court.**

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

FILED DATE: 1/12/2021 1:37 PM 2021CH00106
FILED DATE: 12/1/2020 5:27 PM 2020OP20532

**Subpoena in a Civil Matter (For Testimony and/or Documents)** **(06/05/20) CCG 0106 B**

Notice to Deponent:

1. ☑ The deponent is a public or private corporation, partnership, association, or governmental agency. The matter(s) on which examination is requested are as follows:
   20DV20806
   20OP20532

   ☐ Description continued on attached page(s).
   (A nonparty organization has a duty to designate one or more officers, directors, or managing agents, or other persons to testify on its behalf, and may set forth, for each person designated, the matters on which that person will testify. Ill. Sup. Ct. Rule 206.)
2. ☐ The deponent's testimony will be recorded by use of an audio-visual recording device, operated by ____________________ .
   (Name of Recording Device Operator)
3. No discovery deposition of any party or witnesses shall exceed three hours regardless of the number of parties involved in the case, except by stipulation of the parties or by order upon showing that good cause warrants a lengthier examination. Ill. Sup. Ct. Rule 206(d).

○ Atty. No.: __________
◉ Pro Se 99500

Name: Fahad Syed

Atty. for (if applicable):

Address: 244 E Pearson St. Apt. 711

City: Chicago

State: IL Zip: 60611

Telephone: 773-564-0325

Primary Email: syed.216@gmail.com

Issued by: /s/____________________
Text Signature
○ Attorney ○ Clerk of Court

Date: 12/1/20

☐ I served this subpoena by mailing a copy, as required by Ill. Sup. Ct. Rules 11, 12 and 204(a) (2), to ____________________ by certified mail, return receipt requested (Receipt # ________________) on ________ . I paid the witness $ __________ for witness and mileage fees.

☐ I served this subpoena by handing a copy to ____________________ on ________ . I paid the witness $ __________ for witness and mileage fees.

/s/ ____________________ ____________________
(Signature of Server) (Print Name)

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

# Exhibit E

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

**From:** **Threat Assessment** threatassessment@northwestern.edu
**Subject:** RE: Subpoena
**Date:** December 3, 2020 at 1:28 PM
**To:** Fahad Syed fahad-syed@law.northwestern.edu

Mr. Syed, your email and attachment have been received.

---

**From:** Fahad Syed <fahad-syed@law.northwestern.edu>
**Sent:** Thursday, December 3, 2020 10:49 AM
**To:** Threat Assessment <threatassessment@northwestern.edu>
**Subject:** Subpoena

Hi,

I have another subpoena, I think I'm just supposed to email this to you?

Thanks,

Fahad Syed

> On Dec 2, 2020, at 9:52 PM, Threat Assessment <threatassessment@northwestern.edu> wrote:
>
> Mr. Syed, your email and attachment have been received.
>
> ---
>
> **From:** Fahad Syed <fahad-syed@law.northwestern.edu>
> **Sent:** Tuesday, December 1, 2020 4:02 PM
> **To:** Threat Assessment <threatassessment@northwestern.edu>
> **Subject:** Re: Office of Equity-Request for Interview.11.30.20
>
> Hi,
>
> Do I just give this to you?
>
> Thanks,
>
> Fahad Syed
>
> > On Dec 1, 2020, at 2:09 PM, Threat Assessment <threatassessment@northwestern.edu> wrote:
> >
> > Thank you Mr. Syed for the response. Please review the attachment for updated information.
> >
> > ---
> >
> > **From:** Fahad Syed <fahad-syed@law.northwestern.edu>

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

# Exhibit F

FILED DATE: 1/12/2021 1:37 PM 2021CH00106
FILED DATE: 12/8/2020 5:01 PM 2020OP78277

FILED
12/8/2020 5:01 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2020OP78277

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
SECOND MUNICIPAL DISTRICT**

| | | |
|---|---|---|
| FAHAD SYED, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 20 OP 78277 |
| | ) | |
| MONA DUGO, | ) | Hon. Stephanie D. Saltouros |
| | ) | |
| Defendants. | ) | |

**NORTHWESTERN UNIVERSITY'S MOTION TO QUASH SUBPOENAS
FROM PETITIONER FAHAD SYED**

Third-party Northwestern University ("University"), by and through its undersigned counsel, hereby moves to quash the two subpoenas it has received from Petitioner Fahad Syed and requests that the Court preclude Syed from issuing any additional subpoenas or other requests for discovery directed at the University or its employees without leave of court. In support of this Motion, the University states as follows:

1. On November 5, 2020, the Respondent in this matter, the University's Dean of Students Mona Dugo, filed a Petition for Stalking No Contact Order directed at University student Fahad Syed, the Petitioner in this matter, in Case No. 20 OP 20532 ("Dugo Petition"). A copy of the Dugo Petition is attached as Exhibit A. The Dugo Petition details just some of the hundreds of disturbing text messages and other communications that Syed has directed at Ms. Dugo, causing her to fear for her own safety and that of her family. *Id.* at pp. 8-9.

2. The Dugo Petition resulted in the Court issuing an Emergency Stalking No Contact Order ("Emergency Order") directed at Syed on November 5, 2020. *See* Nov. 5, 2020 Stalking No Contact Order, attached as Exhibit B.

3. On November 17, 2020, Syed violated the Emergency Order by contacting Ms. Dugo.

HB: 4833-2663-1124.1

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

# Exhibit G

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

Motion - General Form (This form replaces CCMD-39) (12/01/20) CCG 0702

FILED
12/9/2020 9:16 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2020OP20532

FILED DATE: 1/12/2021 1:37 PM 2021CH00106
FILED DATE: 12/9/2020 9:16 AM 2020OP20532

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Mona Dugo
**Plaintiff(s)**

**v.**

Fahad Syed
**Defendant(s)**

**No.** 20OP20532

**TO:** The Honorable Stephanie D. Saltouros #2161

**MOTION BY** Defendant **FOR** Compel Discovery

Motion to Compel Discovery

Defendant, Fahad Syed, Pro Se, moves the court to enter an order pursuant to Ill. Sup. Ct. Rule 214 compelling, Northwestern University, a body politic and corporate, one of the 3rd parties in the above-entitled cause to answer Defendants request for production of documents served on 12/1/20 and 12/3/20, filed with the clerk on 12/1/20, a true and correct copy of which is attached to this motion. In support of this motion, defendant certifies:

1. The attached request for production of documents was served in accordance with the certificate of service.

2. Following 8 days, Defendant failed to produce the documents or to make discovery otherwise.

3. The documents are relevant and material to Defendants cause of action in case 20DV20806 and 20OP20532. Defendant will be irreparably injured if they are not produced by plaintiff.

For these reasons, Plaintiff moves the court for an order compelling Defendant to produce the documents in the attached request for production pursuant to Ill. Sup. Ct. Rule 214.

**I (We) do hereby certify that a copy of this instrument was served upon all parties who have appeared and have not previously been found by the Court to be in default for failure to plead.**

**Dated:** 12/9/20 , /s/ [signature]
**Attorney Certification**

**Atty. No.:** 99500
**Name:** Fahad Syed
**Atty. for:** Self
**Address:** 244 E Pearson St. Apt. 711
**City/State/Zip:** Chicago, IL, 60611
**Telephone:** 773-564-0325

**IRIS Y. MARTINEZ, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

# Exhibit H

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

**From:** **Fahad Syed** fahad-syed@law.northwestern.edu
**Subject:** Re: Family Contact is OFF BOUNDS
**Date:** November 4, 2020 at 8:48 AM
**To:** Office of Equity equity@northwestern.edu, Mona Dugo Mona.Dugo@northwestern.edu
**Cc:** Puja Singh Patel puja-patel@law.northwestern.edu, Emily Kadens kadens@law.northwestern.edu

Hello,

I asked this question yesterday and haven't gotten a response.

I don't think it takes that long to figure out which one of you has been contacting my sister in express violation of my instructions to Mona Dugo not to contact anyone I know, after she illegally contacted my therapist to slander me. I want an answer to this question, and believe me, just like the audio tape, I am not to stop asking until someone gives me the information.

Thanks,

Fahad Syed

> On Nov 3, 2020, at 7:10 AM, Fahad Syed <fahad-syed@law.northwestern.edu> wrote:
>
> Hello,
>
> I understand that the university has been contacting my sister without my knowledge or consent. Do you have an explanation for this?<Screen Shot 2020-10-31 at 7.59.44 PM.png><Screen Shot 2020-10-31 at 8.07.26 PM.png>
>
> Thanks,
>
> Fahad Syed

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

# Exhibit I

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

Northwestern

September 24, 2020

**Sent Via Electronic Mail**

Ms. Venus M. Brown
Illinois Department of Human Rights
Fair Housing Division
Venus.Brown@illinois.gov

***Re: IDHR Charge No. 2020CH2546 – Fahad Syed***

Dear Ms. Brown,

Northwestern University respectfully submits this letter and the attached documents in response to the IDHR's request for information concerning the above-referenced charge.

Mr. Syed is a current student at Northwestern University's Pritzker School of Law. Mr. Syed alleges that Northwestern University discriminated against him on the basis of religion (Islam) and national origin (Pakistani) by requesting that he vacate University housing in November 2019 within five days and "without any investigation . . . or wrongdoing on Complainant's part." Mr. Syed further alleges "that non-Pakistani students whose religion is not Islam have not been given a similar notice without prior investigation of complaints." Both allegations are false.

Mr. Syed was interim suspended from the University on November 6, 2019 because it was alleged that he became incoherent and struck a student in the mouth with his fist at a University event. ***See* 11.06.19 letter to F. Syed, attached hereto.** Northwestern University's Student Handbook states that students may be placed on interim suspension while the University investigates a matter when such action is necessary for reasons related to the safety and well-being of the University community. ***See* Northwestern University Student Handbook, pages 110-11**. The Handbook specifically states that students may be interim suspended for engaging in "[a]ction or threat of action that endangers or threatens to endanger the health, safety, or well-being of any person."

As set forth in the handbook, students placed on interim suspension must "remove themselves immediately from the residence halls and/or fraternity or sorority residences, will not be permitted to attend class, and will be excluded from University property and University events." Mr. Syed's

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

allegation that other students who are interim suspended do not face the same consequence is absolutely false; all students placed on interim suspension must follow the same policy.

If anything, Mr. Syed was treated more favorably than similarly situated students placed on interim suspension. Indeed, Mr. Syed's allegation that he was forced to leave the property in five days is not true. Todd Adams (then Associate Vice President and Dean of Students) told Mr. Syed he would "be given a period of time to find alternative housing," and individuals in the law school also offered to help Mr. Syed with housing concerns. ***See* 11.08.19 email from T. Adams, attached hereto**. Moreover, as noted on the Charge, Mr. Syed's current address appears to be 244 East Pearson Street, Apartment 711, Chicago, Illinois 60611. This is the address Mr. Syed was supposed to vacate in November 2019. Accordingly, it does not appear that he actually left the property.

Following the process in the Handbook, the University conducted a full investigation into Mr. Syed's conduct and notified him of the outcome of the related administrative hearing on December 19, 2019. The University concluded Mr. Syed struck a student in the face and acted in a way that was combative toward the police officers who responded to the incident. ***See* 12.19.19 letter from C. DePilla, attached hereto.**[1] Mr. Syed was then suspended from the University for one semester.

Accordingly, far from discriminating against Mr. Syed, the University followed its policy designed to protect the health, safety, and well-being of the University community in the same way it does when interim suspending any student.

In response to questions set forth in IDHR's July 28, 2020 letter, Northwestern offers the following additional information:

- Northwestern University does not currently own or manage this building.
- Northwestern University does not know whether the owners of the building receive federal financial assistance from the U.S. Department of Housing and Urban Development.
- The following individual has knowledge of the discipline imposed against Mr. Syed after he struck another student: Lucas Christain, Assistant Dean and Director of Student Conduct. If IDHR would like to schedule an interview with Mr. Christain, please let me know and I will coordinate the meeting.

Sincerely,

[1] Mr. Syed returned from his suspension in fall 2020. He was once again interim suspended on August 23, 2020 based on allegations that he violated the terms of his disciplinary probation, threatened to retaliate against a student, and verbally harassed and threatened another student on the basis of a protected class. Notably, it appears Mr. Syed is still living at 244 East Pearson St. ***See* 8.23.20 letter from Julie Payne-Kirchmeier, attached hereto.**

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

**Certificate of Service**

The undersigned certifies that a copy of the foregoing response to IDHR Charge No. 2020CH2546 was served upon:

Fahad Syed
244 East Pearson Street
Apt. 711
Chicago, Illinois 60611

By depositing the same in the United States Mail in Evanston, Illinois on the 25th day of September, 2020.



FILED DATE: 1/12/2021 1:37 PM 2021CH00106

Peter J. Birnbaum
Chief Justice

STATE OF ILLINOIS
COURT OF CLAIMS
630 SOUTH COLLEGE
SPRINGFIELD, ILLINOIS 62756
217/782-7101

Jesse White
Secretary of State
and Ex Officio Clerk
of The Court of Claims

Erica L. Katava
Deputy Clerk

NOVEMBER 24, 2020

SYED, FAHAD
244 E PEARSON AVE APT 711
CHICAGO IL 60611-0000

RE: 20CV1772 - SYED, FAHAD

You are hereby notified that the above entitled claim has been assigned to a commissioner. The commissioner is:

SERPICO, RON
1807 N BROADWAY
MELROSE PARK IL 60160

The commissioner will conduct a hearing on your claim if necessary. You will be contacted by the commissioner at a later date concerning the time and place of any hearing that may be required.

All pleadings should be filed with the Clerk's office. A copy of each pleading must be sent to any opposing counsel (e.g the Illinois Attorney General's Office). Each pleading may also be sent directly to the commissioner. Motions must be accompanied by a proposed order. Please refer to 74 IL.ADM.CODE 790.200.

Sincerely,

Illinois Court of Claims

EK: KS
CC: ATTORNEY GENERAL - CHICAGO
COMM. SERPICO, RON

FILED DATE: 1/12/2021 1:37 PM  2021CH00106

# Exhibit J

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

**From:** **Fahad Syed** fahadsyed2021@nlaw.northwestern.edu
**Subject:** VIOLATION: 405 ILCS 5/3-606 by OFFICER T. HEALY #22
**Date:** May 11, 2020 at 3:36 PM
**To:** Bruce Andre Lewis balewis@northwestern.edu, Cindy L Benson cindy.benson@northwestern.edu, Kenneth Jones k-jones@northwestern.edu

---

To whom it may concern,

I would like to bring to the attention of the Northwestern University Police Department and Internal Affairs the violation of 405 ILCS 5/3-606 by Officer T. Healy #22 on 11/1/19 with regard to case 2019-00000595.

(405 ILCS 5/3-606) (from Ch. 91 1/2, par. 3-606)

Sec. 3-606. A peace officer may take a person into custody and transport him to a mental health facility when the peace officer has reasonable grounds to believe that the person is subject to involuntary admission on an inpatient basis and in need of immediate hospitalization to protect such person or others from physical harm. Upon arrival at the facility, the peace officer may complete the petition under Section 3-601. **If the petition is not completed by the peace officer transporting the person, the transporting officer's name, badge number, and employer shall be included in the petition as a potential witness as provided in Section 3-601 of this Chapter.**

(Source: P.A. 96-1399, eff. 7-29-10; 96-1453, eff. 8-20-10.)

Below is a copy of the official petition with which I was served, clearly documenting (pg. 3) the violation of this statute through the absence of any identifying information from Officer Healy #22.

**Additionally, I would like to report the deliberate failure by Deputy Chief Chin to address this indisputable violation of state law despite repeated requests for investigation.**

Original Petition.pdf

Best,

Fahad Syed

# EXHIBIT B – TAB 12

Return Date: No return date scheduled
Hearing Date: 1/20/2021 9:15 AM - 9:15 AM
Courtroom Number:
Location:

FILED
1/12/2021 1:37 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH00106

11800146

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

FAHAD SYED, )
)
Plaintiff[s], )
)
vs. ) CASE NO.
)
NORTHWESTERN UNIVERSITY )
)
Defendant[s]. )

**AFFIDAVIT OF FAHAD SYED IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AGAINST NORTHWESTERN UNIVERSITY**

STATE OF ILLINOIS §
§ ss.:
COUNTY OF COOK §

FAHAD SYED, on oath states:

1. I am a current student at Northwestern University Law School, I am the Plaintiff in this case and I submit this Affidavit in support of my motion for temporary retaining order.

2. I have personal knowledge of the matters and facts set forth in this Affidavit, and, if sworn as a witness, I can testify competently to those matters and facts.

3. Plaintiff is Fahad Syed, a first-generation college graduate from a low-income, racial and ethnic minority household and was raised by a single mother, and the first in his family to attend law school. Plaintiff's parents legally separated when he was 8 years old due to his father's violence towards the children, and Plaintiff grew up in an inner-city low-income housing project, a crime-laden environment devoid of positive male role-models and influences.

4. Plaintiff suffers from multiple ADA learning and cognitive disabilities of bipolar disorder and ADHD, as well as anxiety and depression. One of the major "episodic manifestations" of Plaintiffs bipolar disorder are "psychotic episodes" triggered by stress, which induce varying levels of anger, paranoia, frustration, irritability, temper, etc. Attached hereto as Exhibit [1] is a true and correct copy of [Plaintiff's Individualized Learning Assessment].

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

5. Plaintiff first made the decision to pursue law school in 2015, at the age of 25. Plaintiff had a successful career managing IT operations at a Fortune 100 company after graduating in 2012 with a 3.0 overall GPA from a Top 50 undergrad with a Top 10 undergrad business ranking with dual bachelors degrees in busines economics and political science and 3.3 and 3.9 major GPA's respectively. In addition, plaintiff holds multiple industry standard IT certifications, further illustrating his professional competency and capabilities. Plaintiff is actively involved in community building efforts and helped found a non-profit for refugee assistance (Iraqi Mutual Aid Society) during college and is currently affiliated with another non-profit (Inner-City Muslim Action Network) for which he does volunteering and other work. Attached hereto as Exhibit [2] is a true and correct copy of [Plaintiff College Transcripts]. Attached hereto as Exhibit [3] is a true and correct copy of [Plaintiff Volunteering Record].

**NU Law Class of 2017 Admission and Rejection**

3. Plaintiff always wanted to attend law school at NU, and his studying eventually paid off as he took the LSAT two times in 2017, receiving two 166 (93rd Percentile) scores on both attempts, and applied for Early Decision Admission to NU Law School in 2017 by the age of 27, but subsequently received a rejection. Attached hereto as Exhibit [4] is a true and correct copy of [LSAT Score Report]. Attached hereto as Exhibit [5] is a true and correct copy of [NU 2017 Rejection].

**NU Law Class of 2018 Early-Decision Admission**

4. Despite the rejection, Plaintiff was still determined to attend law school at NU, and studied and retook the LSAT again on two separate occasions, scoring 168 (96rd Percentile) and 170 (98rd Percentile) and successfully re-applied for admission through Early Decision ("ED") to Northwestern University Law School JD class of 2018 with 150K scholarship on December 13th, 2017 at the age of 28. This was the happiest moment of Plaintiff's life. Attached hereto as Exhibit [6] is a true and correct copy of [ED Acceptance].

**2018 Discriminatory Conduct**

5. On April 26th, 2018 Plaintiff's 2018 Early-Decision Application and subsequent admission was subject to an unannounced post admission review which was highly irregular in process and was on the basis of "alleged inaccurate information in [Plaintiff's] Fall 2018 JD application related to [Plaintiff's] employment history, collegiate extracurricular activities, and family background." As far as plaintiff knows, no other 2018 early decision admit, nor 2018 general admit was subject to this kind of irregular "verification" based on "alleged inaccurate information" related to "employment history, collegiate extracurricular activities, and family background." Attached hereto as Exhibit [7] is a true and correct copy of [Email From School].

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

6. The source or intended meaning of allegations in paragraph 6 was never revealed, even after Plaintiff successfully cleared the investigation on May 21, 2018. As far as plaintiff knows, no other 2018 early decision admit, nor 2018 general admit who's application was subject to this kind of irregular "verification" based on "alleged inaccurate information" related to "employment history, collegiate extracurricular activities, and family background" ever successfully completed the verification without learning the source of the allegation nor the allegations themselves.

**2018 Adverse Action and Discriminatory Sanctions**

7. As a result of this investigation, Plaintiff was forced to "defer" his admission and enrollment to 2019. Attached hereto as Exhibit [8] is a true and correct copy of [Deferral Letter].

**2019 Re-Enrollment at NU Law**

8. In August 2019, Plaintiff enrolled in the class of entering JD class of 2019 at NU Law School at the age of 29 and started Fall 2019 Semester. Attached hereto as Exhibit [8] is a true and correct copy of [Class Schedule].

9. During Fall 2019 Semester, Plaintiff was dealing with tremendous family concerns as Plaintiff watched his mother slowly start to pass away from ovarian cancer because she had finally become resistant to treatment. Attached hereto as Exhibit [9] is a true and correct copy of [Yasmin Syed Death Certificate].

10. During the months September and October of 2019, Plaintiff watched his mother slowly starved to death because she had finally become resistant to treatment, and metastatic ovarian cancer had filled her entire stomach and esophagus with tumors which made it so painful to eat that she chose to starve to death rather than be placed on a feeding machine. Because she elected his other siblings as her power of attorney and power to make health decisions, and specifically indicated a do not resuscitate order (DNR) and no life support options in her will, he was unable by law, to even suggest that if she tried to eat or find some way to get nutrition into her body, that she would live.

11. Despite her impending passing and knowing that this was the last remaining time that he would have with her, because of his enrollment and commitment to law school, he sacrificed much of the precious time that he had left with his mother in order to attend classes and pursue coursework. Plaintiff would attend classes and complete coursework during the weekday working hours, come home and complete homework assignments, then travel up to Skokie from his apartment in Streeterville (1-hour trip on average) in order to spend time with his mother during the night. He sacrificed spending this time with her because his legal education and future legal career was the most important thing to him next to his late mother.

12. Despite his family issues, Plaintiff tried to attend school and try to have relatively normal social experience by participating in social outings, joining student organizations and

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

religious student groups, and trying to participate in the school group chat for the entering JD class of 2019.

13. Despite the difficult learning environment Plaintiff was faced with, he was performing academically well in his courses, and had attended all 10 weeks of classes every day with good attendance and with satisfactory grades and was actively involved in class discussions, submitted coursework for credit and also submitted the mid-term writing assignment. Plaintiff was attending professors office-hours and spending significant time and effort attending to his academic responsibilities, indeed his Torts professor, Emily Kadens, saved the Palsgraff (a difficult torts case) case for his in-class discussion turn, and referred to him as the "smartest" person in the class in front of all the students on one occasion, and no one objected. In addition, plaintiff actively enjoyed interacting with staff and teachers, and frequently and enthusiastically expressed his interest and enjoyment in the academic subject matter and quality of instruction to staff. Attached hereto as Exhibit [9] is a true and correct copy of [Midterm Assignment]

14. Plaintiff's mother passed away on October 23rd, 2019, and after arranging her funeral and attending her burial, he spent a few days trying to rest and recover. Plaintiff then attempted to rejoin classes and school activities the next week. Attached hereto as Exhibit [10] is a true and correct copy of [Burial Paperwork].

**2019 Discriminatory Conduct and Hostile Environment– False Imprisonment**

15. On November 1, 2019, roughly one week after his mother died on October 23rd, 2019, at approximately 6:37 PM CST Plaintiff attended a law school event in the Levy Mayer wing of the law school building located at 357 E Chicago Ave., Chicago IL 6061 attended by defendant and University of Chicago (3L) law student REDACTED REDACTED") and defendants and fellow Northwestern University law students REDACTED (3L) ("REDACTED and REDACTED (2L) ("REDACTED and approximately 60 other fellow law students from mine and other law schools in total. Attached hereto as Exhibit [11] is a true and correct copy of [Event Flyer].

16. Plaintiff had attended the event to seek consolation for his mother's death and had not slept in 2-3 days prior to his attendance due to emotional distress. While at the event, Plaintiff was repeatedly targeted and harassed with threatening and invasive questioning and unwanted physical contact by an unknown male (REDACTED) on 4 separate occasions, culminating in a vicious physical attack where he kicked Plaintiff several times on the leg, then tackled Plaintiff onto the ground, and choked Plaintiff in a headlock until Plaintiff nearly lost consciousness. Defendant REDACTED took these actions acting in agency for Northwestern University and based directly on his perception of his mental impairment. As far as plaintiff knows, no other similarly situated 2019 early decision admit without disabilities, nor similarly situated 2019 general admit without disabilities was subject to this kind of vicious attack based directly on his perceived threat from their disability. Attached hereto as Exhibit [12] is a true and correct copy of [OA Interview].

17. No one witnessed this vicious physical assault. He then called out to his two friends (REDACTED and REDACTED who were nearby, and together the three physically restrained Plaintiff, restricting his freedom of movement to leave the premises and with intent to

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

initiate his imprisonment of plaintiff based on perceived mental impairment to Plaintiff. They then called NUPD and unlawfully told them that plaintiff was suffering from "mental illness" and falsely reported to police that Plaintiff attacked REDACTED Attached hereto as Exhibit [13] is a true and correct copy of [NUPD Police Report].

18. Plaintiff was twice certified for involuntary inpatient admission by Jeremy Baker RN and Eugene Lozza MD of Northwestern Memorial Hospital on 11/2/19 within 2 hours of each other, while sedated and not in a reasonable capacity to understand the situation, not presented an explanation of rights in the situation, and without identification of clear and convincing evidence of imminent threat to the physical safety of self or others, in violation of 405 ILCS 5/3 admissions, hearing, and notice procedures. Defendants Northwestern Memorial Hospital and its agents took this action based on perceived mental impairment of plaintiff and hostility towards plaintiff's religion, perceived mental impairment and national origin and with willful failure to contact plaintiff's close family or relatives or make alternative arraignments for patient care. The sole evidence that staff had supporting any threat to the safety of myself or others was the police report which falsely stated that Plaintiff had committed a battery. Attached hereto as Exhibit [14] is a true and correct copy of [Original Petition]. Attached hereto as Exhibit [15] is a true and correct copy of [Certification #1]. Attached hereto as Exhibit [16] is a true and correct copy of [Certification #2]. Attached hereto as Exhibit [17] is a true and correct copy of [Healy Partial Petition].

## 2019 Adverse Action and Discriminatory Sanctions

19. On 11/1/19, REDACTED then called the law school Dean of Students Susie Spies-Roth and initiated a separate, school disciplinary process. Attached hereto as Exhibit [18] is a true and correct copy of [UI Interview].

20. NUPD Officer Healy #22 then notified his law school of the false narrative of this incident as it was recorded in the police report due directly to prejudice against his perceived mental health disability or threat he perceived as a result of his mental health disability and to save himself from disciplinary action as a result of his brutal unnecessary and excessive force perpetrated against Plaintiff due to his [Healy's] perceived threat from his ADA mental health disability status. Attached hereto as Exhibit [13] is a true and correct copy of [NUPD Police Report].

21. Plaintiff was served with an interim-suspension and notice papers on November 6th 2019 stating that the school had received a report that Plaintiff struck an individual in the "mouth" during a law school event, while Plaintiff was still inside the hospital, and Plaintiff was requested to evacuate his university-affiliated residence within 5 days of leaving the hospital on November 8th 2019, under penalty of trespass and further school sanctions. Attached hereto as Exhibit [20] is a true and correct copy of [Original Suspension Notice].

22. After Plaintiff was released from the hospital Plaintiff received two separate letters in the mail from his insurance company denying the hospitals requests on November 5th and November 7th of 2019 for insurance coverage of continued inpatient stay, stating on both occasions, that "an independent review organization medical doctor, board certified in Psychiatry" reviewed the requests and determined that "continued inpatient stay has not been

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

shown to be medically necessary to improve or correct your bipolar disorder." Attached hereto as Exhibit [21] is a true and correct copy of [Insurance Letters].

23. Following Plaintiffs return from medical leave, Plaintiff was forced to undergo a brutal defamatory student conduct interviews, wherein the attackers explicitly and in writing, admitted to harassing Plaintiff on the basis perceived threat from his disabilities, and Plaintiff made every effort to attempt highlight the fact that the University had failed to uphold its duty to provide students with disabilities the opportunity to pursue education free of harassment and discrimination by reporting all of the discriminatory conduct to the university. Attached hereto as Exhibit [18] is a true and correct copy of [UI Interview]. Attached hereto as Exhibit [12] is a true and correct copy of [OA Interview].

24. As part of the continuing pattern of harassment and discrimination, On December 19, 2019 DePilla and Cohen found Plaintiff guilty of "endangering myself or others" based off the testimony of his three attackers, and the police report which stated that Plaintiff battered REDACTED and REDACTED witnessed the battery, despite having full knowledge REDACTED had confessed to not witnessing anything except seeing Plaintiff being choked by REDACTED as he entered the room, and confessed to then aiding him [REDACTED in physically restraining Plaintiff. Student conduct found that his attacker's repeated targeted and predatory harassment was justified because he was one of the "organizers" of the event and was concerned for vague and unspecified "safety" reasons, and because the three attackers articulated "consistent" stories with more detail and recollections, which are attributes of cognitive functioning which are directly impaired by Plaintiff's disability. Attached hereto as Exhibit [22] is a true and correct copy of [MM Interview]. Attached hereto as Exhibit [23] is a true and correct copy of [Final Decision Notice].

25. Despite his strong disagreements and providing copious amounts of convincing and compelling evidence against his accusers, Plaintiff again worked with the administration of the law school a year in order to complete mental health assessments and a variety of other pre-conditions which would allow Plaintiff to return to school, this is because his legal education is the most important thing to Plaintiff in the entire world. As far as Plaintiff knows, no other similarly situated student without disabilities was subjected the pre-conditions discussed in this paragraph prior to their re-enrollment in the law school following a medical leave of absence directly related to their disability. Attached hereto as Exhibit [24] is a true and correct copy of [Re-Instatement Essay].

**2020 Re-Enrollment at NU Law**

26. In mid-July of 2020 Plaintiff finally completed the last of his mandatory pre-conditions, and eagerly re-enrolled in the entering JD class of 2020. Attached hereto as Exhibit [25] is a true and correct copy of [Lucas Re-Instatement Letter].

27. Plaintiff's Facebook is currently set to "private" mode for various reasons, as opposed to "public" mode, and no one outside of individuals who he is "friends" with on the application, and who he shares "groups" with on the application can search or find his information. Attached hereto as Exhibit [26] is a true and correct copy of [Profile Settings].

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

28. Plaintiff currently shares "Official Northwestern Pritzker Class of 2023 Admitted Students Page" with REDACTED a white female transgender incoming 1L student at NU Law. It is a "private" group with 280 members because only members can see who is in the group and what they post. It is solely on account of his sharing the aforementioned Facebook group with REDACTED that she was able to cyberstalk Plaintiff as indicated in the upcoming paragraphs, this is because only members can see who is in the group and what they post. Members who are outside of this group cannot search or find my profile because it is not in "public" mode. Attached hereto as Exhibit [27] is a true and correct copy of [NU Facebook Group].

29. Plaintiff wishes to make abundantly clear that he has never met or interacted with REDACTED prior to these incidents in any way, shape, or form.

**Cyberstalking and Hate Crimes**

30. On or around 8/21/20 I was cyberstalked by REDACTED a white female transgender incoming 1L student at NU Law, in violation of cyberstalking 720 ILCS 5/12-7.5. She committed a Hate crime in violation of 720 ILCS 5/12-7.1 (a) by cyberstalking me on the basis of actual or perceived mental disability. She conducted surveillance of me on "Google" and "Facebook" and other possibly hitherto unknown locations, observing and monitoring those sites with information, and gathered my personal and private information such as: my photograph, work history, contact information, dates about my school history, and dates about my pictures on a group chat and on Facebook, and educational history. She gathered my personal data, including my photo, from "Facebook," "Google," and other possible locations for malicious personal use on or around 8/22/20, and also to post it in first-year Law GroupMe chat titled "NU Kids on the Block '23" on or around 8/21/20. Attached hereto as Exhibit [28] is a true and correct copy of [Stalking Admission].

31. On 8/22/20 at 2:22 AM REDACTED committed a Hate crime in violation of 720 ILCS 5/12-7.1 (a) by Transmission of obscene messages in violation of 720 ILCS 5/26.5-1(a) by Harassment through electronic communications in violation of 720 ILCS 5/26.5-3 by posting my private information which she gathered through surveillance in first-year Law GroupMe chat titled "NU Kids on the Block '23" in committing harassment based on ADA disabilities and Her actions caused me significant emotional distress by bringing up my last year in school, which was when my mother died, I was hospitalized for grief, and I had to withdraw from school for mental health concerns. Attached hereto as Exhibit [29] is a true and correct copy of [Disability Harassment].

32. On 8/22/20 at 2:22 AM REDACTED committed a Hate crime in violation of 720 ILCS 5/12-7.1 (a) by Transmission of obscene messages in violation of 720 ILCS 5/26.5-1(a) harassing me through electronic communications in violation of 720 ILCS 5/26.5-3 in a first-year Law GroupMe chat titled "NU Kids on the Block '23," wherein she committed the following acts:

33. REDACTED committed by transmission of obscene messages in violation of 720 ILCS 5/26.5-1(a) when she posted a disparaging image of a frog with the title "NO THOUGHTS EMPTY HEAD" in direct reference to a stereotype about people with mental

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

health problems and disabilities in a first-year Law GroupMe chat titled "NU Kids on the Block '23" on 8/21/20; directly comparing my mental capacity to that of a frog, insinuating that my mental capacity was equivalent to a frog which is a direct reference to my mental health and disability status and is a stereotype about people with mental health problems and disabilities Attached hereto as Exhibit [29] is a true and correct copy of [Disability Harassment].

34. REDACTED posted my private Facebook information on the chat, which included such as: my photograph, work history, contact information, dates about my school history, and dates about my pictures on a group chat and on Facebook, and educational history. Attached hereto as Exhibit [29] is a true and correct copy of [Disability Harassment].

35. REDACTED committed transmission of obscene messages in violation of 720 ILCS 5/26.5-1(a) when she inappropriately suggested I was under an "assumed identity," which is a stereotype about people with mental disabilities. Attached hereto as Exhibit [29] is a true and correct copy of [Disability Harassment].

36. REDACTED committed transmission of obscene messages in violation of 720 ILCS 5/26.5-1(a) when she posted the word "psyop" which was a direct reference to my mental capabilities and was directly related to my mental health, and she insinuated that I was undertaking a psychological operation, which is a blatant stereotype about people with mental health disabilities and other problems. Attached hereto as Exhibit [29] is a true and correct copy of [Disability Harassment].

37. REDACTED **committed Educational intimidation in violation of 720 ILCS 5/12-7.**2(a)(3) when she committed a violation of intimidation statutes 720 ILCS 5/12-6(a)(7) and 720 ILCS 5/126(a)(5) when she encouraged rampant negative speculation among the class about my mental health status by making several mischaracterizing and intentionally malicious comments aimed at making people think I was doing multiple stereotypical activities of people with mental health problems By posting my work history and by making all of the inappropriate suggestions and bringing up dates about my pictures, she encouraged the negative stereo type that people with mental health problems are not able to hold jobs, and that somehow my work and education history was something that I could not possibly have because of my mental health status and cognitive capacity. Therefore, by ridiculing and trying to poke holes in my work history and inciting hatred and speculation about me, they directed comments at my ADA disabilities. Attached hereto as Exhibit [29] is a true and correct copy of [Disability Harassment].

38. REDACTED **committed Educational intimidation in violation of 720 ILCS 5/12-7.**2(a)(2) when her harassment "created a hostile environment and/or substantially interfered" with my "access to a University program or activity from an objective perspective" when I was banned immediately from group chat and discord after my comments in the chat, furthermore I was immediately suspended from school, thereby effectively impeded from those university activities directly resulting from REDACTED influence and injured in my property in educational opportunities and law career due to her malicious intent to get me expelled from school. Attached hereto as Exhibit [30] is a true and correct copy of [Suspension Notice].

39. REDACTED **committed Educational intimidation in violation of 720 ILCS 5/12-7.**2(a)(1) and **720 ILCS 5/12-7.**2(a)(3) when she Engaged in intimidation in violation of 720 ILCS 5/12-6 (a)(1) by Indirectly threatening my safety when she posted my personal information in the first-year Law GroupMe chat titled "NU Kids on the Block '23" on 8/22/20,

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

thereby exposing me to unnecessary exposure and risk which I did not consent to by exposing me to risk of someone who could use that information to track me down and hurt me, both inside and outside of the law school. This is because the group me is not officially a school moderated activity, and other people from outside of the law school can request and gain access to it, this is proven by a total list of the chat members and comparison to the total number of law students in the class, specifically there are many more members of the chat than there are members of the incoming 1L class. At least some of those who were in the group chat were exposed to my private information as a result of REDACTED posts who would not otherwise have seen my information, absent REDACTED defamatory hate crime of posting my private information on the basis of my perceived disability. Attached hereto as Exhibit [29] is a true and correct copy of [Disability Harassment].

40.     On or around 8/22/20, after  REDACTED  had harassed me on the Group chat, and I had been removed from both the Discord and Group Me by other biased students, I made a legitimate offer to REDACTED to settle our grievances offline by offering my personal number and asking her to call me "if there was an issue." Attached hereto as Exhibit [31] is a true and correct copy of [Offer].

41.      REDACTED   **committed assault in violation of 720 ILCS 5/12-**1(a) when she put Plaintiff in imminent fear of battery when she **committed Educational intimidation in violation of  720 ILCS 5/127.**2(a)(1) and Intimidation in violation of 720 ILCS 5/12-6 (a)(1) when she engaged in harassment by telephone in violation of 720 ILCS 5/26.5-2 and directly threatened my safety by calling me at 1:08 AM on 8/23/20 in a threatening manner due to the late-night hour, menacingly asking "Is this Fahad Syed?" then paused and breathed into the phone menacingly, then failed to identify herself after repeated inquiry, replying only "you gave me your number" and "you told me to call you." She took my legitimate offer to settle our grievances offline to call me 1:08 AM threateningly and menacingly, instead of trying to arrange a meeting at normal hours via email or text. She took these actions in order to take advantage of my learning disability and vulnerability to bait and entrap me into responding, and then misleadingly misrepresent that situation to report to NU that I had threatened her safety. She also committed Aggravated assault in violation of 720 ILCS 5/12-2(a) by committing the assault resulting from gaining my information in "NU Kids on the Block '23" which is a school affiliated group, or a "place of public accommodation." She also committed aggravated assault in violation of 720 ILCS 5/12-2(b)(1) by knowingly assaulting a person with ADA disabilities. Attached hereto as Exhibit [32] is a true and correct copy of [Call #1].

42.     REDACTED committed intimidation in violation of 720 ILCS 5/12-6 (a) (1) when she engaged in harassment by telephone in violation of 720 ILCS 5/26.5-2 by illegally recording the phone conversation without my knowledge or consent in violation of Eavesdropping 720 ILCS 5/14-2(a)(2) when she used an eavesdropping device, her phone and/or another recording devise, in a surreptitious manner, for the purpose of transmitting or recording all or any part of any private conversation to which he or she is a party unless he or she does so with the consent of all other parties to the private conversation and Eavesdropping 720 ILCS 5/14-2(a)(3) when she recorded, or transcribed, in a surreptitious manner, any private electronic communication to which he or she is not a party unless he or she does so with the consent of all parties to the private electronic communication in order to maliciously and deceitfully get me expelled from law school. Attached hereto as Exhibit [33] is a true and correct copy of [Hate Crime Admission].

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

43.     REDACTED   **committed Educational intimidation in violation of 720 ILCS 5/12-7.**2(a)(2) when REDACTED committed Eavesdropping in violation of 720 ILCS 5/14-2(a)(5) when she engaged in harassment by telephone in violation of 720 ILCS 5/26.5-2  and Harassment through electronic communications in violation of 720 ILCS 5/26.5-3 when she used or disclosed any information which he or she knows or reasonably should know was obtained from a private conversation or private electronic communication in violation of the Article, doing so without the consent of all of the parties and disclosing that information to NU representatives Ish Faith-Orkar and Heather Cohen on 8/27/20 and 10/29/20 in order to maliciously and deceitfully get me expelled from law school. Attached hereto as Exhibit [34] is a true and correct copy of [Suspension Notice].

44.     REDACTED   **committed Educational intimidation in violation of 720 ILCS 5/12-7.**2(a)(3) and she committed intimidation in violation of 720 ILCS 5/12-6(a)(7) and 720 ILCS 5/12-6(a)(5) by inciting, encouraging, and/or influencing "REDACTED an incoming female 1L , to speculate negatively "According to 2Ls, last year he escalated in his aggressive behavior and speech after being kicked out of the group me. Unfortunately in person at times. If he messages any of you, rather than engaging with him I recommend emailing [NU] with screenshots," in the first-year Law GroupMe chat titled "NU Kids on the Block '23" on 8/22/20. Where REDACTED and REDACTED had previously met and spoken. Attached hereto as Exhibit [35] is a true and correct copy of [JS Evidence].

45.     REDACTED   **committed Educational intimidation in violation of 720 ILCS 5/12-7.**2(a)(1) and **720 ILCS 5/12-7.**2(a)(3) when and she committed intimidation in violation of 720 ILCS 5/12-6(a)(7) and 720 ILCS 5/12-6(a)(5) by inciting, encouraging, and/or influencing " REDACTED  an incoming white male 1L , to state "Please keep further discussion about Fahad at a respectful level, and preferably at a minimum, outside of what is necessary" after removing me from in the first-year Law GroupMe chat titled "NU Kids on the Block '23" on 8/22/20. Where REDACTED and REDACTED had previously met and spoken. Attached hereto as Exhibit [35] is a true and correct copy of [JB Evidence].

46.     REDACTED   **committed Educational intimidation in violation of 720 ILCS 5/12-7.**2(a)(1) and **720 ILCS 5/12-7.**2(a)(3)and she committed intimidation in violation of 720 ILCS 5/12-6(a)(7) and 720 ILCS 5/12-6(a)(5) by inciting, encouraging, and/or influencing "REDACTED a white female lesbian NU LGBTQ Student Organization Leader to an current 2L , to unfairly influence school administration to suspend me from NU on Behalf of REDACTED on 8/23/20, where REDACTED forwarded messages and screenshots and called Shannon Bartellete, the associate dean of Inclusion and Engagement to speak to Associate Dean and Dean of Students Susie Spies Roth and others. Where REDACTED sent REDACTED and email falsely indicating that Plaintiff had initiated the phone contact between REDACTED and Plaintiff and where REDACTED and REDACTED had previously met and were both part of the LGBTQ affinity group. Attached hereto as Exhibit [37] is a true and correct copy of [GC Interview].

47.     REDACTED   **committed Educational intimidation in violation of 720 ILCS 5/12-7.**2(a)(3) and she committed intimidation in violation of 720 ILCS 5/12-6(a)(7) and 720 ILCS 5/12-6(a)(5) by inciting, encouraging, and/or influencing "REDACTED a female transgender 2L student at Northwestern Law, to harass me six separate times with unwanted comments on Facebook on 8/23/20, where she made repeated reference to me "sliding into white girls dm's" and other harassing comments on my status posts. Where REDACTED and REDACTED had

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

previously met and were both part of the LGBTQ affinity group. Attached hereto as Exhibit [38] is a true and correct copy of [IC FB Harassment].

48. REDACTED **committed Educational intimidation in violation of 720 ILCS 5/12-7.**2(a)(3) and she committed intimidation in violation of 720 ILCS 5/12-6(a)(7) and 720 ILCS 5/12-6(a)(5) by inciting, encouraging, and/or influencing "REDACTED," a white female incoming 1L student, to harass me with offensive statements on Dischord on 8/23/20 on Behalf of REDACTED where both REDACTED and REDACTED had previously spoken and met. Attached hereto as Exhibit [39] is a true and correct copy of [TW Dischord Harassment].

49. REDACTED **committed Educational intimidation in violation of 720 ILCS 5/12-7.**2(a)(1) and **720 ILCS 5/12-7.**2(a)(3) when and she committed intimidation in violation of 720 ILCS 5/12-6(a)(7) and 720 ILCS 5/12-6(a)(5) by inciting, encouraging, and/or influencing "REDACTED," an incoming white female male-transgender 1L , to participate in a student disciplinary hearing against me where she stated during an interview on 9/1/20 that "while this semester is largely remote, [I] don't want to be in the hall with him to and from class and have some sort of confrontation," and where she said it would be "Very easy to imagine using the women's restroom" and seeing him go in and out of the restroom at the same time, "and… start a confrontation." Where REDACTED and REDACTED had previously met and were both part of the LGBTQ affinity group. Attached hereto as Exhibit [40] is a true and correct copy of [WC Interview].

50. REDACTED **committed Educational intimidation in violation of 720 ILCS 5/12-7.**2(a)(1) and **720 ILCS 5/12-7.**2(a)(3)and she committed intimidation in violation of 720 ILCS 5/12-6(a)(7) and 720 ILCS 5/12-6(a)(5) by inciting, encouraging, and/or influencing "REDACTED a white female lesbian NU LGBTQ Student Organization Leader to an current 2L , to participate in a student disciplinary hearing against me where she stated during an interview on 9/2/20 that "she is working on an action plan so this doesn't happen again." She also stated "(This feeling is) reciprocated among our board, because they were all taking about it [the group chat altercation] as it happened" further indicating the defamatory rumors and hate and ridicule REDACTED incited about me to the law school. Where REDACTED and REDACTED had previously met and were both part of the LGBTQ affinity group. Attached hereto as Exhibit [37] is a true and correct copy of [GC Interview].

51. REDACTED **committed Educational intimidation in violation of 720 ILCS 5/12-7.**2(a)(1) and **720 ILCS 5/12-7.**2(a)(3) when and she committed intimidation in violation of 720 ILCS 5/12-6(a)(7) and ILCS 5/12-6(a)(5) by inciting, encouraging, and/or influencing " REDACTED who is on information and belief, an incoming gay 1L , to participate in a student disciplinary hearing against me where he falsely claimed during an interview on 10/27/20 that I was making comments "geared directly at a person's attributes" in attempting to mischaracterize and defame me as a transphobic person. Where REDACTED and REDACTED had previously met and were both part of the LGBTQ affinity group. Attached hereto as Exhibit [41] is a true and correct copy of [ALR Interview].

52. REDACTED **committed Educational intimidation in violation of 720 ILCS 5/12-7.**2(a)(1) and **720 ILCS 5/12-7.**2(a)(3) when and she committed intimidation in violation of 720 ILCS 5/12-6(a)(7) and 720 ILCS 5/12-6(a)(5) by inciting, encouraging, and/or influencing "REDACTED," an incoming 1L , to participate in a student disciplinary hearing against me where she stated during an interview on 10/27/20 that "there were rumors concerning the first

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

time Fahad was in law school two years ago." REDACTED indicated that it was "rumored that due to inappropriate physical conduct, Fahad left law school two years in a row and this fall was placed in section 4." Where REDACTED and REDACTED had previously met and knew each other. Attached hereto as Exhibit [42] is a true and correct copy of [SP Interview].

53. REDACTED **committed Educational intimidation in violation of 720 ILCS 5/12-7.2 (a)(2)**, when she engaged in harassment by telephone in violation of 720 ILCS 5/26.5-2 and Harassment through electronic communications in violation of 720 ILCS 5/26.5-3 by texting me at 8:34 PM on 8/23/20, after knowingly cooperating with NU to have me suspended earlier that day, in order to further target my ADA learning disabilities and associated vulnerability to maliciously provoke and entrap me into a response. She knew that she had been suspended with a no-contact order, and was attempting to again lure me into responding because, due to my ADA disability, she knew I had an irritable disposition, so then she could maliciously report me for violating the no-contact order which she was fully aware was in place resulting directly from her actions and cooperation with NU. Attached hereto as Exhibit [43] is a true and correct copy of [Text After No-Contact Order].

54. REDACTED **committed Educational intimidation in violation of 720 ILCS 5/12-7.2 (a)(2)**, when she engaged in harassment by telephone in violation of 720 ILCS 5/26.5-2 and Harassment through electronic communications in violation of 720 ILCS 5/26.5-3 by communicating to the law class about me by posting my private information in the first-year Law GroupMe chat titled "NU Kids on the Block '23 from 8/22/20-8/23/20, communicating to others about me by making and encouraging defamatory speculation and remarks directed towards ADA disabilities for the purposes of having me maliciously expelled from law school. Attached hereto as Exhibit [40, 37] is a true and correct copy of [WC Interview, GC Interview, GC Email].

55. REDACTED committed **Criminal damage to property in violation of 720 ILCS 5/21-1)(a)(1) in excess of $100,000, she committed Educational intimidation in violation of 720 ILCS 5/12-7.2 (a)(2)** and **ILCS 5/12-7.2 (a)(3)** and she committed intimidation in violation of 720 ILCS 5/12-6(a)(7) and 720 ILCS 5/12-6(a)(5) by damaging to my property in the form of my personal and professional reputation, character, and personal and professional career and learning opportunities within the law school and legal profession by defaming me and inciting hatred and speculation against me in first-year Law discord chat on 8/21/20 or 8/22/20 in order to get me maliciously expelled from law school. Attached hereto as Exhibit [44] is a true and correct copy of [Expulsion Notice]. Attached hereto as Exhibit [40, 37] is a true and correct copy of [WC Interview, GC Interview, GC Email].

## 2020 Conspiratorial Disability Harassment and Unlawful Obstruction of Justice

56. On information and belief, sometime around 8/23/20, The Interim University Dean of Students, Mona Dugo ("Dugo"), and the Deputy Chief Eric Chin ("Chin") of Northwestern University Police Department (NUPD) negligently suspended Plaintiff (Fahad Syed: Current 1L Law Student) from Northwestern University Law School, and reported Plaintiff to the Northwestern University Police Department (NUPD), for a perceived threat from

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

his disability which resulted from communications between Plaintiff and fellow current 1L REDACTED and occurred between 8/22/20-8/23/20. She called Plaintiff on 8/23/20 and explicitly stated "we've been watching your Facebook and other social medial posts" and on a 3-way call with Chin, Dugo, and Plaintiff. Attached hereto as Exhibit [34] is a true and correct copy of [8/23/20 Suspension Notice].

57. On 8/27/20, Plaintiff filed Department of Education, Office of Civil Rights Complaint #05-202444 alleging discrimination on multiple grounds, including disability discrimination and hostile environment. Attached hereto as Exhibit [47] is a true and correct copy of [DOE Complaint].

58. On 9/3/20 at 7:45 AM, Plaintiff informally and indirectly notified the university via email to Lucas Christian of the Office of Community Standards that the Plaintiff had complained about the University to an outside entity, Illinois Department of Human Rights and Illinois Guardianship and Advocacy Commission. Attached hereto as Exhibit [48] is a true and correct copy of [Email Notification #1].

59. On 9/3/20 at 9:05 AM, Plaintiff wrote an email addressed, in part, to Dugo and Chin, requesting the chat transcripts of the incident which resulted in his suspension on 8/23/20. Attached hereto as Exhibit [49] is a true and correct copy of [Email Requesting Documents].

60. On 9/13/20 at 1:49 PM Plaintiff formally notified the University via email to The Office of Equity, its employees Amanda DeSilva and Ish Faith Orkar, and Lucas Christian and Heather Cohen of the Office of Community Standards, that the Plaintiff had complained about the University to an outside entity: The Department of Education, Illinois Department of Human Rights, and Illinois Guardianship and Advocacy Commission. Attached hereto as Exhibit [50] is a true and correct copy of [Email Notification #2].

61. On 9/14/20 at 5:29 PM, Chin had unauthorized telephone communications with Plaintiff's private psychiatrist(s) in violation of the IMHDDCA and HIPAA. Chin left Tobin a voicemail specifically, twice, acknowledging that he did not have an ROI for contacting him [Tobin], and requesting to "share information" with him and requesting Tobin call him back on his cell phone. Attached hereto as Exhibit [51] is a true and correct copy of [Chin Contacting Tobin].

62. On 9/14/20 at 6:11 PM PLAINTIFF was notified via email by his therapist, Brian Tobin ("Tobin"), that Deputy Chief Chin had contacted him, and he [Tobin] subsequently asked Plaintiff to sign an ROI form. Attached hereto as Exhibit [52] is a true and correct copy of [Notification of Chin Contact].

63. On 9/15/20 at 12:11 PM, during a 6-minute incoming phone call, NUPD Detective Sanghoon Lee ("Lee") inappropriately contacted and aggressively questioned Plaintiff regarding Plaintiff's Facebook post about his discrimination complaint with the Department of Education, in order to retaliate against Plaintiff for making said complaint, and to threaten, intimidate, and coerce Plaintiff into dropping said complaint. During this call, Lee said "you know why I'm calling," mentioned Dugo by name, and instructed Plaintiff not to post anything about Dugo without "running it by [Lee's] office first." Plaintiff indicated to Lee that Plaintiff had filed the DOE complaint, gave Lee the complaint number, and directed Lee to "contact [Plaintiff's] attorney regarding the posts if he had any other questions." Attached hereto as Exhibit [53] is a true and correct copy of [Retaliation Call #1].

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

64. On 9/16/20 at 3:03 PM, Dugo had unauthorized email communications with Plaintiff's private psychiatrist, Brian Tobin, in violation of the Illinois Mental Health and Developmental Disabilities Confidentiality Act (IMHDDCA) and Health Insurance Portability and Accountability Act (HIPAA) under the pretext of responding to Plaintiff's 9/3/20 email requesting group transcripts. In the communication, she stated: "I'm not sure if Fahad signed a release of information when he made this request. I would like to be able to share some information with you as we have a lot of on going concerns about Fahad." Attached hereto as Exhibit [54] is a true and correct copy of [Dugo Contact #1].

65. On 9/22/20, The Dean knowingly and inappropriately shared an illegally obtained audio recording of Plaintiff, of a phone call with another current law student (1L REDACTED from 8/22/20, with Plaintiff's medical providers in order to assassinate his character in retaliation for the Department of Education complaint which she referenced during the call and is discussed in the letter from the his therapist. The Dean discriminated against me on the basis of his mental health, in retaliation for the Department of Education complaint which, and which she was fully aware through the university on 9/3/20 through an email to Lucas Christian and 9/13/20 through an email to the Office of Equity. Attached hereto as Exhibit [55] is a true and correct copy of [Tobin Affidavit].

66. On or around 9/28/20, during their next session, Plaintiff's therapist, Brian Tobin, informed Plaintiff of the audio recording. It was at this time that Plaintiff realized that this was audio which was illegally submitted to his university by REDACTED and illegally resulted in his suspension sometime around 8/23/20.

67. On or around 9/28/20 as a result of the aforementioned unlawful contact with Plaintiff's therapist, Mona Dugo, Eric Chin, and Sanghoon Lee were repeatedly informed not to contact "anyone who [Plaintiff] knows" including Plaintiffs family members via text messages from plaintiff to their cells phones.

68. On 9/29/20 at 1:53 PM Plaintiff was contacted via email by his Christopher Farrelly, his DOE investigator for complaint #05-20-2444, asking Plaintiff to call him as soon as possible. Attached hereto as Exhibit [56] is a true and correct copy of [NU Contact Notification].

69. On 9/29/20 at 4:40 PM, Mr. Farrelly informed Plaintiff that NU contacted him regarding Plaintiff's DOE complaint. Attached hereto as Exhibit [57] is a true and correct copy of [NU Contact Explanation]. Attached hereto as Exhibit [58] is a true and correct copy of [NU Contact Confirmation].

70. On 10/10/20, at 8:33 PM PLAINTIFF attempted to file an eavesdropping charge with Northwestern University Police Deputy Chief Eric Chin via text message for a phone call which PLAINTIFF took at his apartment in the 18th district (244 E Pearson St), which was illegally recorded and submitted to his law school, resulting in his suspension. At 8:44 PM Chin responded via text and instructed Plaintiff to file a report with Chicago Police Department (CPD) because NUPD did not have jurisdiction in the matter. Attached hereto as Exhibit [59] is a true and correct copy of [Chin Refusal].

71. On 10/11/20, PLAINTIFF filed a police report for Eavesdropping in the CPD 18th district, with the non-emergency line (312-746-6000) because they have jurisdiction over a phone call which PLAINTIFF took at his apartment in the 18th district (244 E Pearson St) which was illegally recorded and submitted to his law school, resulting in his suspension. Reporting

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

Officer Aldahhondo (Star 5142) took the report and Supervisor O Shaughnessy (Star 1829) approved it. (Report JD 395786 attached). Attached hereto as Exhibit [60] is a true and correct copy of [JD 395768].

72.     On 10/14/29, NUPD Detective Lee called Plaintiff and brutally interrogated Plaintiff for 18 minutes about exactly how and when Plaintiff found out about the illegal audio tape. Had the illegal audio tape not been made and the university not knowingly suspended me over it, Plaintiff would never have received such an intimidating and harassing interrogation. During the call the detective asked my CPD report number and claimed that he was filing a report with NUPD. Approximately 3 days later he called Plaintiff provided him with report 2020-0356 which he claimed was filed for the eavesdropping case.  Attached hereto as Exhibit [61] is a true and correct copy of [Retaliation Call #2].

73.     On 10/19/2020, at approximately 3:00 PM PLAINTIFF called CPD non-emergency (312746-6000) and was told by the officer on duty, Philp (Emp #19035)  that the report had been "cancelled without investigation," citing a "lengthy cancellation report" involving "NUPD Deputy Chief Chin and the sergeant" as the reason. Attached hereto as Exhibit [60] is a true and correct copy of [ JD 395768].

74.     Sometime between 10/11/20 – 10/19/20, Chin cancelled his report illegally by illegally revealing his mental health history to the detective without having an ROI in violation of the Illinois Mental Health and Developmental Disabilities Confidentiality Act and Health Insurance Portability and Accountability Act of 1996 (HIPAA), discriminating against Plaintiff on the basis of his mental health, in retaliation for the Department of Education complaint which PLAINTIFF filed on 8/27/20, and which he [Chin] was fully aware through the university on 9/3/20 through an email to Lucas Christian and 9/13/20 through an email to the Office of Equity. The call in question never took place on University property, and DC Chin knew that due to the prior text conversation.  Attached hereto as Exhibit [60] is a true and correct copy of [CPD Report #1].

75.     He [Chin] revealing that plaintiff had involuntarily committed to a hospital in November 2019 for an involuntary mental evaluation, directly and deliberately implying or stating to the detective that PLAINTIFF was crazy and his lawful report shouldn't be investigated on the basis of his mental health status. Attached hereto as Exhibit [60] is a true and correct copy of [CPD Report #1].

76.     He also told the detective and express lie about his consent during the recording in question: telling the detective that PLAINTIFF consented having his conversation recording when PLAINTIFF did not, as was the very reason why PLAINTIFF filed the eavesdropping report. PLAINTIFF did not consent to having his conversation recorded, nor did PLAINTIFF have knowledge of the recording at any time, and DC Chin knew that because I attempted to file the report with him first.  Attached hereto as Exhibit [59] is a true and correct copy of [Chin Refusal]. Attached hereto as Exhibit [60] is a true and correct copy of [CPD Report #1].

77.     As a result of the call, plaintiffs report (JD 395768) was cancelled.  Attached hereto as Exhibit [60] is a true and correct copy of [CPD Report #1].

78.     In approximately 10 separate follow-up calls and 50 text messages to Lee, which occurred in the weeks after my CPD report was cancelled, he never responded to my follow-ups about report 2020-0356. This proves that his purpose in interrogating me was under the false

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

pretext of filing a report whereas in reality he was retaliating for my CPD report and my DOE complaint. The university has deliberately failed to provide that report on my multiple email requests. Attached hereto as Exhibit [62] is a true and correct copy of [Request for Police Reports]. Attached hereto as Exhibit [62] is a true and correct copy of [Subpoenas #1, #2, #3].

79.     On information and belief, sometime between 10/11/20 – 10/19/20, Chin called and told CPD non-emergency response officers (312-746-6000), between 12pm-6pm, not to respond to reports about eavesdropping from students at Northwestern, or informed the desk sergeant of such.

80.     PLAINTIFF called CPD non-emergency (312-746-6000) 6-7 times in a row between 3p-5pm on 10/19/2020 in order to file another report, and as soon as PLAINTIFF told them PLAINTIFF was a student from NU filing an eavesdropping report, they hung up.

81.     On information and belief, on or around on the week of 10/19/2020, Chin called Area 3 Supervising Detective Rose #982 at (312-744-8263) and asked him not to respond to reports about eavesdropping from students at Northwestern or related cancellations. On 10/19/2020 PLAINTIFF called Area 3 Supervising Detective Rose #982 at (312-744-8263) from 4-5PM , to report the incident of improper cancellation of my report, citing jurisdiction, and he refused to disclose any details about why the report was cancelled, telling me to "file another report."

82.     On information and belief, on or around on the week of 10/19/2020, Chin called and told 18th District Supervisor Sergeant Vogt at (312-742-5870) and asked him not to respond to reports about eavesdropping from students at Northwestern or related cancellations. On 10/19/2020 PLAINTIFF called 18th District Supervisor Sergeant Vogt at (312-742-5870) from 4-5PM , to report the incident of improper cancellation of my report, citing jurisdiction, and he refused to disclose any details about why the report was cancelled, telling me telling me "civil litigation" is an option.

83.     Deputy Chief Eric Chin took these actions to prevent the illegal audio tape from being revealed in retaliation for the Department of Education complaint which PLAINTIFF filed, in order to conceal his and the universities negligence, and their knowing harboring and supporting of a malicious criminal,   REDACTED   Chin also took these actions to conceal the fact that he and Dugo were aware of the illegality of the audio tape, and still suspended me over it, which is also why PLAINTIFF filed his Department of Education Complaint, and to punish Plaintiff for filing said complaint.

84.     All of the actions taken by Dugo, Chin, and Lee, including slandering ones reputation to their therapist, especially given mental disabilities, brutal interrogation, and causing a report to be cancelled without informing them, would deter a reasonable person from complaining.

85.     The illegal conduct of the   REDACTED   illegally recording me and illegally submitting the tape to the university in order to have me suspended, caused the university to knowingly use it to suspend me due to bias. That suspension then caused me to file a discrimination claim with the DOE and ultimately to file the police report with CPD.

86.     The discrimination claim with the DOE caused Chin to illegally contact Plaintiff's therapist in order to slander him with an illegal audio tape, Dugo to illegally contact Plaintiff's therapist and slander Plaintiff's reputation maliciously with an illegal audio tape, Lee to

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

aggressively and harassingly call me once, and Lee to brutally and menacingly interrogate me another time.

87.     Filing the DOE complaint about discriminatory and bias suspension later caused me to file the CPD report about the discriminatory use of the illegal audio tape in order to strengthen my discrimination complaint for legal proceedings which would occur during litigation.

88.     Filing the CPD report caused Chin to have my CPD report cancelled. Therefore, the filing DOE complaint caused me to file the CPD report, which caused Chin to have my CPD report cancelled through disability discrimination

89.     On 11/2/20 Plaintiff filed a report with the Civilian Office of Police Accountability about Chins illegal disclosure of my mental health history. On 11/5/20 the complaint Log 2020-0004964 was assigned to Sgt. Mark K Lamberg (Star# 1847) to be investigated by Chicago Police Department Bureau of Internal Affairs Division Officer Lambert, with whom I interviewed 11/9/20 at CPD Headquarters regarding the incident.  Attached hereto as Exhibit [63] is a true and correct copy of [COPA Complaint #1].

90.     On 11/3/20 Plaintiff filed an eavesdropping report again with Chicago Police Department, JD 419862. The report is currently assigned to Detective Lee of CPD with an unnamed offender.  Attached hereto as Exhibit [64] is a true and correct copy of [JD 419862].

91.     Mona Dugo, Eric Chin, and Sanghoon Lee were repeatedly informed not to contact Plaintiffs family members via text messages from plaintiff to their cells phones occurring on or around 9/28/20.

92.     On or around 11/3/20, Plaintiff learned from his brother-in-law Azam Hussien (312-303-3736) via text message that someone person or persons from the university had contacted my sister, Sophia Syed (847-347-3736) and requested discussion for "hours" about Plaintiff and his school situation without Plaintiff's knowledge or consent. This is after Plaintiff expressly forbade the university, through text message to Mona Dugo after she shared the illegal audio with Plaintiffs therapist, that no one who Plaintiff "knows" should be contacted, including most importantly: plaintiff's family members. NU and NUPD and its representatives contacted Plaintiff's sister in retaliation for his COPA report, his police report, and his DOE Report. Attached hereto as Exhibit [65] is a true and correct copy of [Azam Text].

93.     Shortly after learning that someone had contacted Plaintiff's family in direct conflict with his wished, Plaintiff texted Defendants NU, Dugo, Chin, and Lee to determine why they had contacted Plaintiff's family and who had authorized such unlawful contact.

94.     On 11/4/20, Plaintiff received Official Northwestern Correspondence email from the Office of Community Standards indicating several more disciplinary sanctions and another UHAS hearing in retaliation for the filing of plaintiff's police report and DOE complaint. The stated pretext for this disciplinary action was that Plaintiff was being disciplined for texting Chin, Dugo, and Lee about his DOE complaint and about the police report, about the various retaliatory measures taken against plaintiff and for the contacting of Plaintiff's sister without Plaintiff's permission. NU and NUPD and its representatives sanctioned plaintiff in retaliation for his COPA report, his police report, and his DOE Report. NU displayed awareness of the multitude of illegal and discriminatory and illegal conduct which I texted Chin, Dugo, and Lee

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

and were in a position to take corrective action and failed to do so. Attached hereto as Exhibit [66] is a true and correct copy of [Retaliatory Sanctions #2].

95. On 11/6/20 Plaintiff was served with a protection order ("PO") (Case 200P20532) for harassment and Stalking from the Cook County Sheriffs office, in which Dugo made several misleading allegations as to my contact with her due to her official capacity as dean of students. The stated pretext was that I was sending her "100's of harassing messages" whereas in reality I was informing her of discrimination which is ongoing and pleading for her to step in and stop it due to her duty as dean of students. This pretext was a cover for her requesting both a threat assessment and a protecting order against me based SOLEY off threat from my perceived disability in retaliation for my DOE complaint. The stalking no contact order was taken especially to label me as a sexual offender in retaliation for my DOE complaint. Attached hereto as Exhibit [67] is a true and correct copy of [Retaliatory PO].

96. The PO revealed that Dugo, through her official capacity at the University, contracted with "Sigma Threat" in order to harass Plaintiff in retaliation for filing his DOE Complaint and retaliation complaints to the university. The stated pretext for this was to "help evaluate his threat level" and was a cover for her contracting the service on the basis of threat from my perceived disability in retaliation for filing his DOE Complaint. Attached hereto as Exhibit [68] is a true and correct copy of [PO Pleadings].

97. In addition, she made derogatory and misleading accusations in PO about the Holy Quran Chapter 33, Verses 60-68: referring to them as "translated as sinners will die in a fire". She took the protection order for harassment and stalking based on perceived threat from Plaintiffs religion. Attached hereto as Exhibit [68] is a true and correct copy of [PO Pleadings].

98. Her allegations in support or PO were misleading or defamatory in the following ways:

    a. She claims she "had to issue" Plaintiff "interim suspension for threatening a fellow law student w/ physical violence." This is false, she knows that the student in question,   REDACTED   stalked me and then posted my information to a group chat and made derogatory statements about my disability, then called me at 1:08 am in a threatening manner and recorded BOTH the call that she made to me and the call that I made in response. These two illegal audio tapes are what Dugo actually suspended me over. She misrepresented this fact deliberately in order to make me seem like a dangerous person.

    b. She claims I was on probation for "physically assaulting another student." This is false, she knows that there was absolutely no evidence whatsoever that I assaulted anyone aside from that single persons unsubstantiated allegations. She misrepresented this fact deliberately in order to make me seem like a dangerous person. I have filed Attorney General Case 20cv1772 pursuant to this allegation.

    c. She claims that I have sent her "more than 150 unanswered text messages with increasingly aggressive language." This is without indicating that the messages are sent to her because of her official capacity as dean of students, and because I am telling her about discrimination committed by Deputy Chief Eric Chin of NUPD, Lee of NUPD, and others in the University and asking her to stop them. The "aggressive language" she is referring to is the increasing amount of litigation

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

and legal proceedings that I am threatening her with if she does not cease her illegal conduct.

d.  She claims she "has not" monitored my Facebook. This is blatantly false, because she on 8/23/20 she called me and explicitly stated "we've been watching your facebook and other social medial posts" and she also directed detective Lee to call me and interrogate me on the basis of her perceived threat from my Facebook post about my Department of Education Complaint.

e.  She claims that I am sending her "harassing" messages to her work email when in reality I sent her two follow emails demanding to know who contacted my sister when I told her not to.

f.  She claims that Plaintiff called her and that she hung up the phone, which is a lie. Plaintiff called her and HE hung up the phone, not Dugo. She deliberately misrepresented this fact to make it seem like Plaintiff was harassing her, when in reality she was harassing Plaintiff and his sister, acting far beyond the scope of her responsibilities as Dean of Students, and escalating the situation to the current severity level.

g.  Attached hereto as Exhibit [68] is a true and correct copy of [PO Pleadings].

99.     On 11/11/19 at approximately 3:00 PM Plaintiff attempted to file a police report in order to get REDACTED named as the offender on the police report at Chicago 18th District and two officers obstructed me from doing so, as a result I filed COPA complaint Log 2020-0005122. Attached hereto as Exhibit [69] is a true and correct copy of [COPA Report #2].

100.    On 11/17/20, Plaintiff went to domestic violence court at 555 W Harrison and stated claims for SNCO against both REDACTED (20OP78283) and Mona Dugo (20OP78277), which were deemed worthy of a hearing by the Honorable Judge Thomas M. Cushing #2258. Attached hereto as Exhibit [70] is a true and correct copy of [PO 78277].

101.    On 11/18/20 Log 2020-0005122 was assigned CPD Sergeant Lisa Eitel (Star #2075) and on 11/22/20 I interviewed with Eitel about the incident of report obstruction, and at that time she included an amendment for report JD 419862 to include REDACTED name as the suspect. Attached hereto as Exhibit [71] is a true and correct copy of [CPD Investigation].

102.    On or around 11/19/20, Mona Dugo falsely reported to Evanston Police that Plaintiff had violated the PO which she unlawfully had placed on me as a result of one my previously sent emails to the school asking for them to address the unlawful contact with my family which had taken place earlier in the month of October and which Plaintiff had reported to DOE and the University. She maliciously had the Plaintiff falsely imprisoned pursuant to case 20DV2080601, the only arrest on Plaintiff's entire criminal record, in order to retaliate against Plaintiff for his DOE report and for 20OP78277 which Plaintiff had secured on 11/17/20. Attached hereto as Exhibit [72] is a true and correct copy of [Evanston Police Report].

103.    On 11/19/20, four officers of the Evanston Police Department, including Detective Jones, came to my apartment at 244 E Pearson St. Chicago, IL 60611 at approximately 11:00 AM CST and arrested me without telling me what charges they were arresting me for, without letting me take my prescribed medicine, and without reading me my rights. Attached hereto as Exhibit [72] is a true and correct copy of [EPD Report].

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

104.     When I answered the door, they said they needed to "talk to me about the discrimination by Northwestern University," so I let them come into my apartment.  Attached hereto as Exhibit [73] is a true and correct copy of [EPD Complaint].

105.     While they were inside my apartment they repeatedly and purposefully stepped on my prayer rug even after I asked the first officer not to step on in, in direct disrespect of my religious beliefs, and laughed as they did it and I asked them not to. They made derogatory statements about the rug, saying it was "beautiful" after repeatedly stomping on it and laughing. Attached hereto as Exhibit [73] is a true and correct copy of [EPD Complaint].

106.     Detective Jones arrested me inside me house without ever telling me what I was under arrest for or reading me my rights.  Attached hereto as Exhibit [73] is a true and correct copy of [EPD Complaint].

107.     The four officers took me to Evanston police station and the four officers made me sit in an interrogation room and made me make incriminating statements without the presence of a lawyer, while under duress, which I did not understand.  Attached hereto as Exhibit [72] is a true and correct copy of [EPD Report].

108.     During this interrogation, they said that calling a lawyer would take "several hours" and made it seem like if I requested a lawyer, that I would have to get on myself. They said they "might" be able to call the public defender, but that it would take hours. In order to clear myself of the charges, I was misled into saying that they could question me without a lawyer. This is because I was not on my medication and not in the right state of mind to understand what was happening.  Attached hereto as Exhibit [73] is a true and correct copy of [EPD Complaint].

109.     They never mirandized me before arresting me and they never explained what I was charged with until they had brought me to the station and questioned me in a room with four officers yelling at me, and while I did not have medication and did not know what was happening, in this way they took advantage of my ADA learning disabilities in order to force me to make incriminating statements in violation of my constitutional rights to be free of self-incriminating statements. They repeatedly told me that "they knew my people" and that they would "take care of me" in apparent reference to my sister Sgt. Syed of Evanston Police. Attached hereto as Exhibit [73] is a true and correct copy of [EPD Complaint].

110.     Jones called repeatedly called me "little bro" and other derogatory statements while I was in his custody.  Attached hereto as Exhibit [73] is a true and correct copy of [EPD Complaint].

111.     They never allowed me to take my medicine prior to arresting me without reading me my rights, and they knowingly forced me to undergo questioning while not on my medication or in the right state of mind to adequately represent myself. This is despite them knowing that I take medications, which they learned at my apartment.  Attached hereto as Exhibit [74] is a true and correct copy of [Prescription].

112.     They never established probable cause for the arrest and never showed me the alleged probable cause when I asked for it, despite the fact that I asked for it at least four separate times. They simply asked me what my email was, and when I told them, they falsely claimed that I had admitted to sending the alleged email in question to the states attorney. Attached hereto as Exhibit [73] is a true and correct copy of [EPD Complaint].

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

113. They then took my property and refused to give it back, including court documents which evidenced that I had requested a no contact order against the person who alleged that I violated the no contact order and had me arrested. They took this property without ever intending on reviewing it for the purposed of assessing the charges against me, and without ever intending on returning the paperwork. In this way they deprived me of my right to the materials I needed to adequately represent my defense during the court proceedings for this case. Attached hereto as Exhibit [73] is a true and correct copy of [EPD Complaint].

114. Despite the fact that I told them that Mona Dugo, the complaining witness for this arrest was retaliating against me for Department of Education complaint 05-20-2444 which I had provided to them, in addition to the stalking no contact hearing, they still charged me with the offenses. The Dean reported me and discriminated against me on the basis of his mental health, in retaliation for the Department of Education complaint, which she was fully aware through the university on 9/3/20 through an email to Lucas Christian and 9/13/20 through an email to the Office of Equity. Attached hereto as Exhibit [73] is a true and correct copy of [EPD Complaint].

**Continuing Misconduct and Malicious Misrepresentation**

115. On 11/24/20 at or around 1:30 PM, Plaintiff attended a court hearing for Case 200P20532. During the hearing, the judge asked if anyone had Plaintiff's allegations, and opposing counsel representing Mona Dugo for Case 200P20532 indicated that she had the complaint in front of her.

116. The judge asked whether Plaintiff had "stated any facts" in support of his petition.

117. The opposing counsel representing Mona Dugo for Case 200P20532 replied that he [Plaintiff] had "not stated any facts." This was a blatant act of perjury to the court, for Plaintiff had alleged over 25 separate, distinct, and numbered allegations containing many facts. Opposing counsel had the complaint in her possession and lied about the fact that Plaintiff had "stated facts" in support of his SNCO petition in order to mislead the judge.

118. Opposing counsel, after committing perjury to the court, then requested that Plaintiff's SNCO be dismissed, without the judge ever having read Plaintiff's factual allegations, which were deemed worthy of a hearing (20 OP 78277) by the Honorable Judge Thomas M. Cushing #2258 during a hearing held on 11/17/20 at 555 W Harrison St, Chicago, IL and subsequently transferred to the Honorable Stephanie D. Saltouros #2161 for review.

119. Opposing counsel and the complaining witness Mona Dugo violated the following pertinent section of Rule 137: "The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other document; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass."

120. The allegations brought by Dugo and her attorney were not well-grounded in fact and not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, but in fact were misleading attempts to retaliate against and harass

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

plaintiff for his SNCO (20 OP 78277) and for his DOE complaint. Attached hereto as Exhibit [75] is a true and correct copy of [Motion for Sanctions].

**CERTIFICATION PURSUANT TO SECTION 1-109**

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that [he/she] verily believes the same to be true.

**Fahad Syed** **1/11/21**

[CERTIFIER'S NAME] [DATE]

[CERTIFIER'S TITLE, if applicable]]

**EXHIBITS**

# EXHIBIT B – TAB 13

Return Date: No return date scheduled
Hearing Date: 1/20/2021 9:15 AM - 9:15 AM
Courtroom Number:
Location:

FILED
1/12/2021 1:37 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH00106

11800146

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

# Exhibit 11

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

# NATIONAL MUSLIM LAW STUDENTS CONFERENCE

Chicago | 2019

O you who believe
stand out firmly for justice,
as witnesses to Allah,
even as against yourselves,
or your parents or your kin,
and whether it be
(against) rich or poor
(Quran 4:135)

**FRIDAY & SATURDAY, NOVEMBER 1 - 2, 2019**

Northwestern University Pritzker School of Law - Friday
University of Chicago Law School - Saturday

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

# PROGRAM GUIDE

## DAY 1

*Friday, November 1, 6:00 pm – 9:00 pm*

| Time | Event | Location |
|---|---|---|
| 6:00 pm | Registration | |
| 6:30 pm | Opening Remarks | Lowden Hall |
| 7:00-9:00 pm | Dinner | Harry's Cafe |

## DAY 2

*Saturday, November 2, 8:30 am – 7:30 pm*

| Time | Event | Location |
|---|---|---|
| 8:30 - 9:30 am | Breakfast | Green Lounge |
| 9:30 - 11:00 am | Paths to Public Interest | Courtroom |
| 11:00 - 12:00 pm | MuslimArc | Room IV |
| 12:00 - 1:00 pm | Lunch & Prayer | Green Lounge |
| 1:00 - 2:00 pm | Breakout Session #1 Private Practice | Room IV |
| 1:00 - 2:00 pm | Breakout Session #2 Academia | Room V |
| 2:00 - 4:00 pm | Group Strategy Session | Room V |
| 4:00 - 5:00 pm | Freetime, Pictures, Tours | |
| 5:30 - 7:30 pm | Reception | Courtroom Auditorium |

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

# Exhibit 12

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

Information provided by REDACTED on November 20, 2019

- REDACTED said approximately sixty people were present at the conference.
- REDACTED said that Fahad made "strange comments."
- REDACTED said he approached Fahad, touched him on the back, and said that he "appreciated the comments but to save the questions for later." REDACTED said that Fahad stopped.
- REDACTED said after the opening remarks, he approached REDACTED and asked, "Is this someone who will continue to interrupt?"
    - REDACTED said that REDACTED responded, "I don't know."
    - REDACTED said that REDACTED told him that Fahad might be experiencing some mental health issues.
    - REDACTED said that he offered to talk with Fahad after dinner.

FILED DATE: 1/12/2021 1:37 PM    2021CH00106

- REDACTED said that after dinner he was standing outside of the keynote speaker's room.
- REDACTED said he approached Fahad and apologized if he was rude and interrupted him during the opening remarks.
- REDACTED said that Fahad responded, "This happened?" "When did it happen?" and "in front of who and how many times." REDACTED said he did not know what Fahad meant and figured he did not remember what had occurred.
- REDACTED responded, "It happened once it front of everyone." Fahad responded, "You are forgiven, but I don't know what might happen later or if the world ends."
- REDACTED said Fahad walked away. REDACTED said he was not afraid by this interaction but concerned about the way Fahad was talking.
- Shortly thereafter, REDACTED observed Fahad walk aggressively to an unknown female sitting on a bench and sat down next to her making shoulder-to-shoulder contact.
- REDACTED said the female immediately got up and Fahad told the female, "stay."
- REDACTED said the female responded, "I don't have to stay."
- REDACTED said at that point, he approached Fahad and the female and told the female she did not need to stay.
- REDACTED said that Fahad was sitting on the bench and he was standing five feet away from him.
  - REDACTED said during the interaction, he and Fahad were making "intense eye contact with one another."
- REDACTED said he asked Fahad, "Why did you ask her to stay?" REDACTED said Fahad responded, "I wanted to know who she was talking to."
- REDACTED said he asked Fahad "Was that appropriate?" REDACTED said Fahad responded, that he "wanted to know about telepathy and what she was thinking and when the world ends."
- REDACTED said that he told Fahad, "I don't think it's appropriate what you said and the manner that you said it." REDACTED said that he communicated to Fahad in a non-threatening way.



REDACTED said he then lowered his head in an attempt to tackle Fahad.

- REDACTED said he put Fahad in a "head lock" so he could not move and yelled out to REDACTED three times.
- REDACTED said that REDACTED and REDACTED came outside and REDACTED held Fahad's arms down.
- REDACTED said that Fahad said, "I can't breathe." In response, REDACTED said he let go of any pressure but stayed on top of his chest so he could not move.

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

- REDACTED said he did not perceive Fahad to be a threat so initially decided not to call 911, but "thinks" REDACTED ended up calling 911.
- REDACTED said that while Fahad was being held down, he continued to say, "You are the angel of the devil."
- REDACTED said when the "cops" arrived he told them what happened.
  - REDACTED said that Fahad continued to scream when the "cops took him away."
- REDACTED said no one observed the conversation and subsequent altercation between him and Fahad.
  - REDACTED said that he found the altercation was "really unprovoked on his end."
- REDACTED said he decided not to press charges because he thought Fahad was mentally unwell and that he needed help as opposed to punishment.

Information provided by REDACTED on November 21, 2019



FILED DATE: 1/12/2021 1:37 PM   2021CH00106

# Exhibit 13

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

# NORTHWESTERN UNIVERISTY POLICE

**CASE FIELD REPORT**

1201 Davis St.
Evanston, IL 60208-1320
(847) 491-3456 www.northwestern.edu/up

CASE# **2019-00000595**

**EVENT**

| REPORTED DATE/TIME | INCIDENT TYPE | CASE STATUS AT TIME OF REPORT |
|---|---|---|
| 11/01/2019 21:02 | Medical Services | Closed |

| OCCURRED FROM DATE/TIME | OCCURRED TO DATE/TIME | LOCATION OF OCCURRENCE |
|---|---|---|
| 11/01/2019 21:02 | 11/01/2019 22:30 | Law School<br>357 E Chicago Ave 2 fl Chicago IL |

**OFFENSES**

| | STATUTE/DESCRIPTION | ATTEMPT/COMMIT |
|---|---|---|
| 1 | State\0460 \720-5/12-3\Battery | Committed |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | | |

**SUBJECT**

| SUBJECT TYPE | SUBJECT SUB-TYPE | NAME (LAST, FIRST, MIDDLE SUFFIX) |
|---|---|---|
| Suspect Offender | Suspect | Syed, Fahad, B |

| PRIMARY PHONE | OTHER PHONE NUMBER 2 | EMAIL |
|---|---|---|
| | | |

ADDRESS: 4700 Old Orchard RD 309 Skokie, IL 60076

| DOB | AGE | RACE | SEX | HAIR | EYE | HEIGHT | WEIGHT |
|---|---|---|---|---|---|---|---|
| 08/28/1989 | 30 | Multi-Racial Group | Male | | | | |

| DL NUMBER/STATE | STATEMENT TYPE | SCHOOL/EMPLOYER (NAME and ADDRESS) |
|---|---|---|
| S300-2428-9245/IL | | |

**SUBJECT**

| SUBJECT TYPE | SUBJECT SUB-TYPE | NAME (LAST, FIRST, MIDDLE SUFFIX) |
|---|---|---|
| Witness | | REDACTED |

| PRIMARY PHONE | OTHER PHONE NUMBER 2 | EMAIL |
|---|---|---|
| [redacted] | | |

ADDRESS: [redacted]

| DOB | AGE | RACE | SEX | HAIR | EYE | HEIGHT | WEIGHT |
|---|---|---|---|---|---|---|---|
| [redacted] | [redacted] | [redacted] | Male | | | | |

| DL NUMBER/STATE | STATEMENT TYPE | SCHOOL/EMPLOYER (NAME and ADDRESS) |
|---|---|---|
| [redacted] | | |

| REPORTING OFFICER | | DATE | REVIEWED BY |
|---|---|---|---|
| Healy | 22 | 11/01/2019 | |

This Field Report should not be considered the final official police report on the incident described within. This summary information is to be used only for proceedings requiring a form of printed documentation prior to the final report being completed. Any information contained within is subject to verification and/or change.

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

# NORTHWESTERN UNIVERISTY POLICE
## CASE FIELD REPORT
1201 Davis St.
Evanston, IL 60208-1320
(847) 491-3456  www.northwestern.edu/up

CASE# **2019-00000595**

## INVOLVED SUBJECTS

| SUBJECT | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| SUBJECT TYPE **Victim** | | | NAME (LAST, FIRST, MIDDLE SUFFIX) | | | | | | |
| SUBJECT SUB-TYPE **Individual** | | | REDACTED | | | | | | |
| PRIMARY PHONE | | OTHER PHONE NUMBER 2 | | EMAIL | | | | | |
| ADDRESS | | | | | | | | | |
| DOB | AGE | RACE | | SEX | HAIR | | EYE | HEIGHT | WEIGHT |
| DL NUMBER/STATE | | | | | SCHOOL/EMPLOYER (NAME and ADDRESS) | | | | |
| STATEMENT TYPE | | | | | | | | | |

| SUBJECT | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| SUBJECT TYPE | | | NAME (LAST, FIRST, MIDDLE SUFFIX) | | | | | | |
| SUBJECT SUB-TYPE | | | | | | | | | |
| PRIMARY PHONE | | OTHER PHONE NUMBER 2 | | EMAIL | | | | | |
| ADDRESS | | | | | | | | | |
| DOB | AGE | RACE | | SEX | HAIR | | EYE | HEIGHT | WEIGHT |
| DL NUMBER/STATE | | | | | SCHOOL/EMPLOYER (NAME and ADDRESS) | | | | |
| STATEMENT TYPE | | | | | | | | | |

| SUBJECT | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| SUBJECT TYPE | | | NAME (LAST, FIRST, MIDDLE SUFFIX) | | | | | | |
| SUBJECT SUB-TYPE | | | | | | | | | |
| PRIMARY PHONE | | OTHER PHONE NUMBER 2 | | EMAIL | | | | | |
| ADDRESS | | | | | | | | | |
| DOB | AGE | RACE | | SEX | HAIR | | EYE | HEIGHT | WEIGHT |
| DL NUMBER/STATE | | | | | SCHOOL/EMPLOYER (NAME and ADDRESS) | | | | |
| STATEMENT TYPE | | | | | | | | | |

| SUBJECT | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| SUBJECT TYPE | | | NAME (LAST, FIRST, MIDDLE SUFFIX) | | | | | | |
| SUBJECT SUB-TYPE | | | | | | | | | |
| PRIMARY PHONE | | OTHER PHONE NUMBER 2 | | EMAIL | | | | | |
| ADDRESS | | | | | | | | | |
| DOB | AGE | RACE | | SEX | HAIR | | EYE | HEIGHT | WEIGHT |
| DL NUMBER/STATE | | | | | SCHOOL/EMPLOYER (NAME and ADDRESS) | | | | |
| STATEMENT TYPE | | | | | | | | | |

| REPORTING OFFICER **Healy** | 22 | DATE **11/01/2019** | REVIEWED BY |
|---|---|---|---|

This Field Report should not be considered the final official police report on the incident described within. This summary information is to be used only
for proceedings requiring a form of printed documentation prior to the final report being completed. Any information contained within is subject to verification and/or change.   2

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

**NORTHWESTERN UNIVERISTY POLICE**
**CASE FIELD REPORT**
1201 Davis St.
Evanston, IL 60208-1320
(847) 491-3456 www.northwestern.edu/up

CASE# **2019-00000595**

## NARRATIVE

In summary, on 11/1/19 at 2102 hrs, Reporting Officers Healy # 22 , Walsh # 26 and Sgt Moore # 56 were dispatched to the Law School Levy Mayer wing in regard to a battery that had just occurred. Upon arrival, R/O's found the offender / law student, now known as Fahad B Syed, being restrained on the second floor by several male law students. Investigation determined that Mr Syed was talking with fellow law students in the hallway when he became incoherent and started swinging his fists. He struck fellow law student REDACTED (law student at University of Chicago) in the mouth. R/O's placed Mr Syed into protective custody without incident. REDACTED stated that he did not wish to sign complaints. He stated that he wanted Syed to receive medical attention.

As R/O's walked Syed (in handcuffs) out of the building, Syed became combative, thrashing from side to side and refusing to proceed down the stairs. He had to be forced down to the floor to be restrained. R/O's held Mr Syed on the floor until CFD paramedics arrived. Mr Syed was then transported to NMH for involuntary commitment. Mr Syed was turned over to the custody of NMH Dr Berg, Nurse Katherine Camarena and NMH security guard Chez S at approximately 2200 hrs without further incident. R/O Healy signed the petition for commitment. A copy is attached to this report. Use of force reports were filed in this matter.

Sgt Moore notified DC Chin, Law School Associate Dean of Students Susan Michelle Spies Roth and Threat Assessment Officer Michelle Hoy Watkins of the above facts in this case at approximately 2215 hrs this date.

| REPORTING OFFICER | | DATE | REVIEWED BY |
|---|---|---|---|
| **Healy** | **22** | **11/01/2019** | |

This Field Summary should not be considered the final official police report on the incident described within. This summary information is to be used only for proceedings requiring a form of printed documentation prior to the final report being completed. Any information contained within is subject to verification and/or change.

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

# Exhibit 14

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

X

State of Illinois
Department of Human Services - Division of Mental Health

**PETITION FOR INVOLUNTARY/JUDICIAL ADMISSION**

PETITION FOR INVOLUNTARY/JUDICIAL ADMISSION

STATE OF ILLINOIS

CIRCUIT COURT FOR THE ________ JUDICIAL CIRCUIT

Cook COUNTY

IN THE MATTER OF

Fahad Syed
(name of respondent)

Docket No. ____________

Who is asserted to be a person subject to involuntary (judicial/involuntary) In-patient admission to a facility and for whom

this petition is being initiated by reason of: (Select one or more, if applicable)

- [x] Emergency inpatient admission by certificate; (405 ILCS 5/3-600). The Respondent is currently detained in a mental health facility or hospital; name of facility where detained: Northwestern Memorial Hospital.
- [ ] Inpatient admission by court order; (405 ILCS 5/3-700).
- [ ] Voluntary admittee submitted written notice of desire to be discharged and two Certificates are attached to/submitted with this petition; (405 ILCS 5/3-403).
- [ ] Voluntary admittee failed to reaffirm a desire to continue treatment and two Certificates are attached to/submitted with this petition; (405 ILCS 5/3-404).
- [ ] Person continues to be subject to involuntary admission on an inpatient basis; (405 ILCS 5/3-813).
- [ ] Emergency admission of the developmentally disabled; (405 ILCS 5/4-400).
- [ ] Judicial admission of the developmentally disabled; (405 ILCS 5/4-500).
- [ ] Developmentally disabled person or an interested person on behalf of a person submitted written objection to admission; (405 ILCS 5/4-306).
- [ ] Administrative person; (or person who executed application) failed to authorize continued residence; (405 ILCS 5/4-310).
- [ ] Person continues to meet standard for judicial admission; (405 ILCS 5/4-611).

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

State of Illinois
Department of Human Services - Division of Mental Health

## PETITION FOR INVOLUNTARY/JUDICIAL ADMISSION

I assert that Fahad Syed is: (check all that apply)

- [X] a person with mental illness who: because of his or her illness is reasonably expected, unless treated on an inpatient basis, to engage in conduct placing such person or another in physical harm or in reasonable expectation of being physically harmed;
- [ ] a person with mental illness who: because of his or her illness is unable to provide for his or her basic physical needs so as to guard himself or herself from serious harm without the assistance of family or others, unless treated on an inpatient basis;
- [ ] a person with mental illness who: refuses treatment or is not adhering adequately to prescribed treatment; because of the nature of his or her illness is unable to understand his or her need for treatment; and if not treated on an inpatient basis, is reasonably expected based on his or her behavioral history, to suffer mental or emotional deterioration and is reasonably expected, after such deterioration, to meet the criteria of either paragraph one or paragraph two above.
- [ ] an individual who: is developmentally disabled and unless treated on an in-patient basis is reasonably expected to inflict serious physical harm upon himself or herself or others in the near future, and/or
- [X] in need of immediate hospitalization for the prevention of such harm.

I base the foregoing assertion on the following (State in detail the signs and symptoms of mental illness displayed by the Respondent. Include prior diagnosis, treatment and hospitalizations. Describe any threats, behavior or pattern of behavior which support your complaint. Include personal observations that lead to your belief the Respondent is subject to involuntary admission): If additional space needed please attach a separate page or pages.

Pt presents w/ police and CFD after pt got in altercation with another student. Pt was speaking incoherently, speaking about telepathy. Pt states he has not slept in multiple Days

Below is a list of all witnesses by whom the facts asserted may be proven (include addresses and phone numbers):

Eugene Cozza, MD 251 E. Huron Ave
Fred Cabros, CSW Chicago, IL 60611
312-926-1878

Listed below are the names and addresses of the spouse, parent, guardian, or substitute decision maker, if any, and close relative or, if none, a friend of the respondent whom I have reason to believe may know or have any of the other names and addresses. If names and addresses are not listed below, I made a diligent inquiry to identify and locate these individuals and the following describes the specific steps taken by me in making this inquiry (additional pages may be attached as necessary):

None

- [ ] I do [X] I do not have a legal interest in this matter.
- [ ] I do [X] I do not have a financial interest in this matter.
- [ ] I am [X] I am not involved in litigation with the respondent.
- [ ] Although I have indicated that I have a legal or financial interest in this matter or that I am involved in litigation with the respondent, I believe it would not be practicable or possible for someone else to be the petitioner for the following reasons:

n/a

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

State of Illinois
Department of Human Services - Division of Mental Health

## PETITION FOR INVOLUNTARY/JUDICIAL ADMISSION

☐ No certificate was attached with this petition because no physician, qualified examiner or clinical psychologist was immediately available or it was impossible after diligent effort to obtain a certificate. However: I believe, as a result of my personal observation, that the respondent is subject to Involuntary inpatient admission. A diligent effort was made to obtain a certificate; but no physician, qualified examiner or clinical psychologist could be found who has examined or could examine the respondent; and
a diligent effort has been made to convince the respondent to appear voluntarily for examination by a physician, qualified examiner or clinical psychologist, or I reasonably believe that effort would impose a risk of harm to the respondent or others.

☒ One Certificate of Examination is attached.

☐ Two Certificates of Examination are attached.

Did a peace officer detain respondent, take him/her into custody, and/or transport him/her to the mental health facility?
☒ No ☐ Yes; If yes, the peace officer **MAY** complete the petition or if the petition IS NOT COMPLETED by the peace officer transporting the person, the following information MUST be entered:

Transporting Officer's Name: ______________________ Badge Number: ____________

Employer: ______________________

The petitioner can request to be notified if the facility director approves the recipients's request for voluntary or informal admission prior to adjudication. The petitioner may also request to be notified of the recipient's discharge under section 3-902 (d) of the Mental Health and Developmental Disabilities Code. Failure to indicate a choice will be treated as a decision NOT to be notified.

☐ if the individual requests and is approved for voluntary or informal admission prior to adjudication, I wish to be notified using the contact information supplied below. (Hospital staff use form IL462-2203 for notification purposes).

☐ if the individual is committed or discharged by court, I wish to be notified using the contact information supplied below. (Hospital staff use form IL462-2208M for notification purposes).

☒ I do not wish to be notified in either of the two situations described above.

The petitioner has made a good faith attempt to determine whether the recipient has executed a power of attorney for health care under the Powers of Attorney for Health Care Law or a declaration for mental health treatment under the Mental Health Treatment Preference Declaration Act and to obtain copies of these instruments if they exist.
I have read and understood this petition and affirm that the statements made by me are true to the best of my knowledge.
I further understand that knowingly making a false statement on this Petition is a Class A Misdemeanor.

11/2/19
Date

[signature], CSW
Signed

0338 AM
Time

Fred Cabras, LSW
Printed Name

None
Relationship to Respondent

Address: 251 E. Huron Ave Chicago, IL 60611

______________________
Telephone Number

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

State of Illinois
Department of Human Services - Division of Mental Health

## PETITION FOR INVOLUNTARY/JUDICIAL ADMISSION

Within 12 hours of admission to the facility under this status and/or completion of a new petition, I gave the respondent a copy of this Petition (IL462-2005). I have explained the Rights of Admittee to the respondent and have provided him or her with a copy of it. I have also provided him or her with a copy of Rights of Individuals Receiving Mental Health and Developmental Services (IL462-2001) and explained those rights to him or her (405 ILCS 5/3-609).

Date/Time of Admission 11/2/19 @ 1126A
To Mental Health Facility/Psychiatric Unit

Signed: Jeremy Baker

Printed Name: Jeremy Baker

Date/Time
Petition Completed: 11/2/19 @ 1200p

Title: RN

RIGHTS OF ADMITTEE

1. If you have been brought to this facility on the basis of this petition alone, you will not be immediately admitted, but will be detained for examination. You must be examined by a qualified professional within 24 hours or be released.
2. When you are first examined by a physician, clinical psychologist, qualified examiner, or psychiatrist, you do not have to talk to the examiner. Anything you say may be related by the examiner in court on the issue of whether you are subject to involuntary or judicial admission.
3. At the time that you have been certified you will be admitted to the facility and a copy of the petition and certificate will be filed with the court. A copy of the petition shall also be given to you.

4A. If you are alleged to be subject to involuntary admission (mentally ill) you must also be examined within 24 hours excluding Saturdays, Sundays, and holidays by a psychiatrist (different from the first examiner) or be released. If you are alleged to be subject to involuntary admission the court will set the matter for a hearing.

4B. If you are alleged to be subject to judicial admission (developmentally disabled) the court will set a hearing upon receipt of the diagnostic evaluation which is required to be completed within 7 days.

5A. If you are alleged to be subject to involuntary admission (mentally ill) and if the facility director approves, you may be admitted to the facility as a voluntary admittee upon your request any time prior to the court hearing.

The court may require proof that voluntary admission is in your best interest and in the public interest.

5B. If you are alleged to be subject to judicial admission (developmentally disabled) and if the facility director approves, you may decide that you prefer to admit yourself to the facility rather than have the court decide whether you ought to be admitted. You may make the request for administrative admission at any time prior to the hearing. The court may require proof that administrative admission is in your best interest and the public interest.

6. You have the right to request a jury.
7. You have the right to request an examination by an independent physician, psychiatrist, clinical psychologist, or qualified examiner of your choice. If you are unable to obtain an examination, the court may appoint an examiner for you upon your request.
8. You have the right to be represented by an attorney. If you do not have funds or are unable to obtain an attorney, the court will appoint an attorney for you.
9. You have the right to be present at your court hearing.
10. As a general rule, you do not lose any of your legal rights, benefits, or privileges simply because you have been admitted to a mental health facility (see your copy of the "Rights of Individuals"). However, you should know that persons admitted to mental health facilities will be disqualified from obtaining Firearm Owner's Identification Cards, or may lose such cards obtained prior to admission.
11. Information about the health care services you receive at a mental health or developmental disabilities facility is protected by privacy regulations under the Health Insurance Portability and Accountability Act of 1996 (HIPAA) (P.O. 104-191) at 45 CFR 160 and 164. Your personally identifiable health information will only be used and/or released in accordance with HIPAA and the Illinois Mental Health and Development Disabilities Confidentiality Act [740 ILCS 110].

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

State of Illinois
Department of Human Services - Division of Mental Health

## PETITION FOR INVOLUNTARY/JUDICIAL ADMISSION

Guardianship and Advocacy Commission is a state agency consisting of three divisions: Legal Advocacy Services, Human Rights Authority and the Office of the State Guardian. The Commission is located at the following addresses:

**East Central Regional Office**
2125 S. First Street
Champaign, IL 61820
Phone: (217) 278-5577
Fax: (217) 278-5588
TTY: (866) 333-3362

**Peoria Regional Office**
401 N. Main Street, Suite 620
Peoria, IL 61602
Phone: (309) 671-3030
Fax: (309) 671-3060
TTY: (866) 333-3362

**Rockford Regional Office**
4302 N. Main Street, Suite 108
Rockford, IL 61103
Phone: (815) 987-7657
Fax: (815) 987-7227
TTY: (866) 333-3362

**Egyptian Regional Office**
7 Cottage Drive
Anna, Illinois 62906-1669
Phone: (618) 833-4897
Fax: (618) 833-5219
TTY: (866) 333-3362

**West Suburban Regional Office**
Madden Mental Health Center
1200 S. First Avenue, P.O. Box 7009
Hines, IL 60141
Phone: (708) 338-7500
Fax: (708) 338-7505
TTY: (866) 333-3362

**Metro East Regional Office**
Holly Bldg., 4500 College
Suite 100
Alton, IL 62002
Phone: (618) 474-5503
Fax: (618) 474-5517
TTY: (866) 333-3362

**North Suburban Regional Office**
9511 Harrison Avenue
Des Plaines, Illinois 60016
Phone: (847) 294-4264
Fax: (847) 294-4263
TTY: (866) 333-3362

**Chicago Regional Office**
160 N. La Salle Street
Suite S500
Chicago, IL 60601
Phone: (312) 793-5900
Fax: (312) 793-4311
TTY: (866) 333-3362

**Springfield Regional Office**
521 Stratton Building
401 S. Spring Street
Springfield, IL 62706
Phone: (217) 785-1540
Fax: (217) 524-0088
TTY: (866) 333-3362

Equip for Equality, Inc. is an independent, not-for-profit organization that administers the federal protection and advocacy system people with disabilities in Illinois. Equip for Equality, Inc., provides self-advocacy assistance, legal services, education, public licy advocacy, and abuse investigations. The offices are located at:

**ain/Chicago Office**
20 N. Michigan, Ste 300
Chicago, Illinois 60602
(800) 537-2632 or
(312) 341-0022
TTY: (800) 610-2779
Fax: (312) 541-7544

**Central Illinois**
1 West Old Capitol Plaza, Suite 816
Springfield, IL 62701
(217) 544-0464
(800) 758-0464
TTY: (800) 610-2779
Fax: (217) 523-0720

**Northwestern Illinois**
1515 Fifth Avenue, Suite 420
Moline, IL 61265
(309) 786-6868
(800) 758-6869
TTY: (800) 610-2779
Fax: (309) 797-8710

**Southern Illinois**
300 E. Main Street, Suite 18
Carbondale, IL 62901
(618) 457-7930
(800) 758-0559
TTY: (800) 610-2779
Fax: (618) 457-7985

Website: www.equipforequality.org

I certify that I provided respondent with a copy of this form. (pages 1-5)

☒ English ☐ Spanish ☐ Other

Specify language: ______________ on ______________

Time: ______________

Signature: [signature]

Title: Jeremy Baker

Printed Name: RN

IL462-2005 (R-04-18) Petition for Involuntary/Judicial Admission
Printed by Authority of the State of Illinois -0- Copies

Page 5 of 5

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

# Exhibit 15

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

Ref.: 405 ILCS 5/3-403, 5/3-602, 5/3-607, 5/3-610, 5/3-702, 5/3-813, 5/4-306, 5/4-402, 5/4-403, 5/4-405, 5/4-501, 5/4-611, 5/4-705

## Inpatient Certificate

Re: Fahad Syed
(name)

I personally informed the above-named individual of the purpose of this examination and that he or she did not have to speak to me, and that any statements made might be related in court as to the individual's clinical condition or need for services. Additionally, if this examination was for the purpose of determining that the above-named individual is developmentally disabled and dangerous, I informed the individual of his or her right to speak with a relative, friend or attorney before the examination, and of his or her right to have an attorney appointed for him or her if he or she so desired.

[signature]
Signature of Examiner

On 11/2 (date), 2019 (year), at 430 (time) ☒ a.m. ◯ p.m., I personally examined the above-named individual. The examination was conducted at Northwestern Memorial Hospital (name of location)

Based on the foregoing examination it is my opinion that he or she is:

- ☒ A person with mental illness who, because of his or her illness is reasonably expected, unless treated on an inpatient basis, to engage in conduct placing such person or another in physical harm or in reasonable expectation of being physically harmed;
- ☐ A person with mental illness who, because of his or her illness is unable to provide for his or her basic physical needs so as to guard himself or herself from serious harm, without the assistance of family or others, unless treated on an inpatient basis;
- ☐ A person with mental illness who: refuses treatment or is not adhering adequately to prescribed treatment; because of the nature of his or her illness is unable to understand his or her need for treatment; and if not treated on an inpatient basis, is reasonably expected based on his or her behavioral history, to suffer mental or emotional deterioration and is reasonably expected, after such deterioration, to meet the criteria of either paragraph one or paragraph two above;
- ☐ An individual who is developmentally disabled and unless treated on an in-patient basis is reasonably expected to inflict serious physical harm upon himself or herself or others in the near future, and/or
- ☒ Is in need of immediate hospitalization for the prevention of such harm.

I base my opinion on the following (including clinical observations, factual information):

30M, hx bipolar, hospitalizations, who was BIB police after punching another student. Pt noted by police to be speaking bizarrely, & pressure. Pt irritable, expansive, poor boundaries, lacks insight. Appears manic.

I believe that the individual is subject to (check one):
- ◯ Involuntary inpatient admission and is not in need of immediate hospitalization
- ☒ Involuntary inpatient admission and is in need of immediate hospitalization
- ◯ Judicial inpatient admission and is not in need of immediate hospitalization
- ◯ Judicial inpatient admission and is in need of immediate hospitalization

Date: 11/2/19 Signature: [signature]

Title: MD Printed Name: Eugene Lozza

IL 462-2006 (R-8-13) Inpatient Certificate
Printed by Authority of the State of Illinois -0- Copies

# EXHIBIT B – TAB 14

Return Date: No return date scheduled
Hearing Date: 1/20/2021 9:15 AM - 9:15 AM
Courtroom Number:
Location:

FILED
1/12/2021 1:37 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH00106

11800146

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

# Exhibit 16

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

Ref.: 405 ILCS 5/3-403, 5/3-602, 5/3-607, 5/3-610, 5/3-702, 5/3-813, 5/4-306, 5/4-402, 5/4-403, 5/4-405, 5/4-501, 5/4-611, 5/4-705

**Inpatient Certificate**

Farhad Syed
(name)

I personally informed the above-named individual of the purpose of this examination and that he or she did not have to speak to me, and that any statements made might be related in court as to the individual's clinical condition or need for services. Additionally, if this examination was for the purpose of determining that the above-named individual is developmentally disabled and dangerous, I informed the individual of his or her right to speak with a relative, friend or attorney before the examination, and of his or her right to have an attorney appointed for him or her if he or she so desired.

[signature]
Signature of Examiner

On 11/3 (date), 2019 (year), at 9:02 (time) ◉ a.m. ○ p.m., I personally examined the above-named individual. The examination was conducted at Northwestern Memorial Hospital (name of location)

Based on the foregoing examination it is my opinion that he or she is:

- ☑ A person with mental illness who, because of his or her illness is reasonably expected, unless treated on an inpatient basis, to engage in conduct placing such person or another in physical harm or in reasonable expectation of being physically harmed;
- ☐ A person with mental illness who, because of his or her illness is unable to provide for his or her basic physical needs so as to guard himself or herself from serious harm, without the assistance of family or others, unless treated on an inpatient basis;
- ☐ A person with mental illness who: refuses treatment or is not adhering adequately to prescribed treatment; because of the nature of his or her illness is unable to understand his or her need for treatment; and if not treated on an inpatient basis, is reasonably expected based on his or her behavioral history, to suffer mental or emotional deterioration and is reasonably expected, after such deterioration, to meet the criteria of either paragraph one or paragraph two above;
- ☐ An individual who is developmentally disabled and unless treated on an in-patient basis is reasonably expected to inflict serious physical harm upon himself or herself or others in the near future, and/or
- ☐ Is in need of immediate hospitalization for the prevention of such harm.

I base my opinion on the following (including clinical observations, factual information):

32yr. Male with a hx of Mania + Psychosis. taking High dose Adderall, Not slept for Days, brought to ER by police after assaulting another law student. Remains Hostile, irritable, aggressive, labile Mood. Poor self-care + limited judgment.

I believe that the individual is subject to (check one):

- ○ Involuntary inpatient admission and is not in need of immediate hospitalization
- ◉ Involuntary inpatient admission and is in need of immediate hospitalization
- ○ Judicial inpatient admission and is not in need of immediate hospitalization
- ○ Judicial inpatient admission and is in need of immediate hospitalization

Date: 11/3/ 2019. Signature: [signature]

Title: MD Printed Name: Dorothy [illegible] MD

IL 462-2006 (R-8-13) Inpatient Certificate
Printed by Authority of the State of Illinois -0- Copies

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

# Exhibit 17

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

Division of Mental Health

PETITION FOR INVOLUNTARY/JUDICIAL ADMISSION

PETITION FOR INVOLUNTARY/JUDICIAL ADMISSION

STATE OF ILLINOIS

CIRCUIT COURT FOR THE ________ JUDICIAL CIRCUIT

Cook COUNTY

IN THE MATTER OF

FAHAD B SYED
(name of respondent)

Docket No. ____________

Who is asserted to be a person subject to ____________ (judicial/involuntary) In-patient admission to a facility and for whom this petition is being initiated by reason of: (Select one or more, if applicable)

- ☐ Emergency inpatient admission by certificate; (405 ILCS 5/3-600). The Respondent is currently detained in a mental health facility or hospital; name of facility where detained: ____________.
- ☐ Inpatient admission by court order; (405 ILCS 5/3-700).
- ☐ Voluntary admittee submitted written notice of desire to be discharged and two Certificates are attached to/submitted with this petition; (405 ILCS 5/3-403).
- ☐ Voluntary admittee failed to reaffirm a desire to continue treatment and two Certificates are attached to/submitted with this petition; (405 ILCS 5/3-404).
- ☒ Person continues to be subject to involuntary admission on an inpatient basis; (405 ILCS 5/3-813).
- ☐ Emergency admission of the developmentally disabled; (405 ILCS 5/4-400).
- ☐ Judicial admission of the developmentally disabled; (405 ILCS 5/4-500).
- ☐ Developmentally disabled person or an interested person on behalf of a person submitted written objection to admission; (405 ILCS 5/4-306).
- ☐ Administrative person; (or person who executed application) failed to authorize continued residence; (405 ILCS 5/4-310).
- ☐ Person continues to meet standard for judicial admission; (405 ILCS 5/4-611).

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

... of Mental Health

# PETITION FOR INVOLUNTARY/JUDICIAL ADMISSION

I assert that FAHAD E SYED is: (check all that apply)

[X] a person with mental illness who: because of his or her illness is reasonably expected, unless treated on an inpatient basis, to engage in conduct placing such person or another in physical harm or in reasonable expectation of being physically harmed;

[ ] ...erson with mental illness who: because of his or her illness is unable to provide for his or her basic physical needs so as to ...ard himself or herself from serious harm without the assistance of family or others, unless treated on an inpatient basis;

[ ] a person with mental illness who: refuses treatment or is not adhering adequately to prescribed treatment; because of the nature of his or her illness is unable to understand his or her need for treatment; and if not treated on an inpatient basis, is reasonably expected based on his or her behavioral history, to suffer mental or emotional deterioration and is reasonably expected, after such deterioration, to meet the criteria of either paragraph one or paragraph two above.

[ ] an individual who: is developmentally disabled and unless treated on an in-patient basis is reasonably expected to inflict serious physical harm upon himself or herself or others in the near future, and/or

[X] in need of immediate hospitalization for the prevention of such harm.

I base the foregoing assertion on the following (State in detail the signs and symptoms of mental illness displayed by the Respondent. Include prior diagnosis, treatment and hospitalizations. Describe any threats, behavior or pattern of behavior which support your complaint. Include personal observations that lead to your belief the Respondent is subject to involuntary admission): If additional space needed please attach a separate page or pages.

SUBJECT BEGAN SPEAKING INCOHERENTLY TO FELLOW LAW STUDENTS. THEN STARTED SWINGING AT OTHER LAW STUDENTS UNCONTROLLABLY, STRIKING ONE IN THE FACE

...elow is a list of all witnesses by whom the facts asserted may be proven (include addresses and phone numbers):

REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED

...sted below are the names and addresses of the spouse, parent, guardian, or substitute decision maker, if any, and close ...lative or, if none, a friend of the respondent whom I have reason to believe may know or have any of the other names and ...dresses. If names and addresses are not listed below, I made a diligent inquiry to identify and locate these individuals and ...e following describes the specific steps taken by me in making this inquiry (additional pages may be attached as necessary):

...do [X] I do not have a legal interest in this matter.

...do [X] I do not have a financial interest in this matter.

...am [X] I am not involved in litigation with the respondent.

Although I have indicated that I have a legal or financial interest in this matter or that I am involved in litigation with the respondent, I believe it would not be practicable or possible for someone else to be the petitioner for the following reasons:

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

...Services - Division of Mental Health

## PETITION FOR INVOLUNTARY/JUDICIAL ADMISSION

☐ No certificate was attached with this petition because no physician, qualified examiner or clinical psychologist was immediately available or it was impossible after diligent effort to obtain a certificate. However: I believe, as a result of my personal observation, that the respondent is subject to Involuntary inpatient admission. A diligent effort was made to obtain a certificate; but no physician, qualified examiner or clinical psychologist could be found who has examined or could examine the respondent; and a diligent effort has been made to convince the respondent to appear voluntarily for examination by a physician, qualified examiner or clinical psychologist, or I reasonably believe that effort would impose a risk of harm to the respondent or others.

☐ One Certificate of Examination is attached.

☐ Two Certificates of Examination are attached.

Did a peace officer detain respondent, take him/her into custody, and/or transport him/her to the mental health facility?
☐ No ☐ Yes; If yes, the peace officer **MAY** complete the petition or if the petition IS NOT COMPLETED by the peace officer transporting the person, the following information MUST be entered:

Transporting Officer's Name: T HEALY Badge Number: 22

Employer: NORTHWESTERN UNIV PD

The petitioner can request to be notified if the facility director approves the recipients's request for voluntary or informal admission prior to adjudication. The petitioner may also request to be notified of the recipient's discharge under section 3-902 (d) of the Mental Health and Developmental Disabilities Code. Failure to indicate a choice will be treated as a decision NOT to be notified.

☐ if the individual requests and is approved for voluntary or informal admission prior to adjudication, I wish to be notified using the contact information supplied below. (Hospital staff use form IL462-2203 for notification purposes).

☐ if the individual is committed or discharged by court, I wish to be notified using the contact information supplied below. (Hospital staff use form IL462-2208M for notification purposes).

☐ I do not wish to be notified in either of the two situations described above.

The petitioner has made a good faith attempt to determine whether the recipient has executed a power of attorney for health care under the Powers of Attorney for Health Care Law or a declaration for mental health treatment under the Mental Health Treatment Preference Declaration Act and to obtain copies of these instruments if they exist.
I have read and understood this petition and affirm that the statements made by me are true to the best of my knowledge. I further understand that knowingly making a false statement on this Petition is a Class A Misdemeanor.

11-1-19
Date

Signed: T Healy

2145
Time

Printed Name: Thomas HEALY

NONE
Relationship to Respondent

Address: 211 E SUPERIOR ST CHICAGO IL 60611

(847) 491-3254
Telephone Number

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

... Services - Division of Mental Health

## PETITION FOR INVOLUNTARY/JUDICIAL ADMISSION

Within 12 hours of admission to the facility under this status and/or completion of a new petition, I gave the respondent a copy of this Petition (IL462-2005). I have explained the Rights of Admittee to the respondent and have provided him or her with a copy of it. I have also provided him or her with a copy of Rights of Individuals Receiving Mental Health and Developmental Services (IL462-2001) and explained those rights to him or her (405 ILCS 5/3-609).

e/Time of Admission ______________ Signed: ______________

To Mental Health Facility/Psychiatric Unit

Date/Time Printed Name: ______________

Petition Completed: ______________ Title: ______________

RIGHTS OF ADMITTEE

1. If you have been brought to this facility on the basis of this petition alone, you will not be immediately admitted, but will be detained for examination. You must be examined by a qualified professional within 24 hours or be released.
2. When you are first examined by a physician, clinical psychologist, qualified examiner, or psychiatrist, you do not have to talk to the examiner. Anything you say may be related by the examiner in court on the issue of whether you are subject to involuntary or judicial admission.
3. At the time that you have been certified you will be admitted to the facility and a copy of the petition and certificate will be filed with the court. A copy of the petition shall also be given to you.

4A. If you are alleged to be subject to involuntary admission (mentally ill) you must also be examined within 24 hours excluding Saturdays, Sundays, and holidays by a psychiatrist (different from the first examiner) or be released. If you are alleged to be subject to involuntary admission the court will set the matter for a hearing.

4B. If you are alleged to be subject to judicial admission (developmentally disabled) the court will set a hearing upon receipt of the diagnostic evaluation which is required to be completed within 7 days.

5A. If you are alleged to be subject to involuntary admission (mentally ill) and if the facility director approves, you may be admitted to the facility as a voluntary admittee upon your request any time prior to the court hearing.

The court may require proof that voluntary admission is in your best interest and in the public interest.

'you are alleged to be subject to judicial admission (developmentally disabled) and if the facility director approves, you ..ay decide that you prefer to admit yourself to the facility rather than have the court decide whether you ought to be admitted. You may make the request for administrative admission at any time prior to the hearing. The court may require proof that administrative admission is in your best interest and the public interest.

6. You have the right to request a jury.
7. You have the right to request an examination by an independent physician, psychiatrist, clinical psychologist, or qualified examiner of your choice. If you are unable to obtain an examination, the court may appoint an examiner for you upon your request.
8. You have the right to be represented by an attorney. If you do not have funds or are unable to obtain an attorney, the court will appoint an attorney for you.
9. You have the right to be present at your court hearing.
10. As a general rule, you do not lose any of your legal rights, benefits, or privileges simply because you have been admitted to a mental health facility (see your copy of the "Rights of Individuals"). However, you should know that persons admitted to mental health facilities will be disqualified from obtaining Firearm Owner's Identification Cards, or may lose such cards obtained prior to admission.
11. Information about the health care services you receive at a mental health or developmental disabilities facility is protected by privacy regulations under the Health Insurance Portability and Accountability Act of 1996 (HIPAA) (P.O. 104-191) at 45 CFR 160 and 164. Your personally identifiable health information will only be used and/or released in accordance with HIPAA and the Illinois Mental Health and Development Disabilities Confidentiality Act [740 ILCS 110].

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

... Services - Division of Mental Health

# PETITION FOR INVOLUNTARY/JUDICIAL ADMISSION

A Guardianship and Advocacy Commission is a state agency consisting of three divisions: Legal Advocacy Services, Human Rights Authority and the Office of the State Guardian. The Commission is located at the following addresses:

**East Central Regional Office**
2125 S. First Street
Champaign, IL 61820
...one: (217) 278-5577
...: (217) 278-5588
TTY: (866) 333-3362

**Peoria Regional Office**
401 N. Main Street, Suite 620
Peoria, IL 61602
Phone: (309) 671-3030
Fax: (309) 671-3060
TTY: (866) 333-3362

**Rockford Regional Office**
4302 N. Main Street, Suite 108
Rockford, IL 61103
Phone: (815) 987-7657
Fax: (815) 987-7227
TTY: (866) 333-3362

**Egyptian Regional Office**
7 Cottage Drive
Anna, Illinois 62906-1669
Phone: (618) 833-4897
Fax: (618) 833-5219
TTY: (866) 333-3362

**West Suburban Regional Office**
Madden Mental Health Center
1200 S. First Avenue, P.O. Box 7009
Hines, IL 60141
Phone: (708) 338-7500
Fax: (708) 338-7505
TTY: (866) 333-3362

**Metro East Regional Office**
Holly Bldg., 4500 College
Suite 100
Alton, IL 62002
Phone: (618) 474-5503
Fax: (618) 474-5517
TTY: (866) 333-3362

**North Suburban Regional Office**
9511 Harrison Avenue
Des Plaines, Illinois 60016
Phone: (847) 294-4264
Fax: (847) 294-4263
TTY: (866) 333-3362

**Chicago Regional Office**
160 N. La Salle Street
Suite S500
Chicago, IL 60601
Phone: (312) 793-5900
Fax: (312) 793-4311
TTY: (866) 333-3362

**Springfield Regional Office**
521 Stratton Building
401 S. Spring Street
Springfield, IL 62706
Phone: (217) 785-1540
Fax: (217) 524-0088
TTY: (866) 333-3362

...quip for Equality, Inc. is an independent, not-for-profit organization that administers the federal protection and advocacy system ... people with disabilities in Illinois. Equip for Equality, Inc., provides self-advocacy assistance, legal services, education, public ...olicy advocacy, and abuse investigations. The offices are located at:

**...ain/Chicago Office**
...) N. Michigan, Ste 300
...hicago, Illinois 60602
...00) 537-2632 or
...1: ...0022
...Y: (800) 610-2779
...x: (312) 541-7544

**Central Illinois**
1 West Old Capitol Plaza, Suite 816
Springfield, IL 62701
(217) 544-0464
(800) 758-0464
TTY: (800) 610-2779
Fax: (217) 523-0720

**Northwestern Illinois**
1515 Fifth Avenue, Suite 420
Moline, IL 61265
(309) 786-6868
(800) 758-6869
TTY: (800) 610-2779
Fax: (309) 797-8710

**Southern Illinois**
300 E. Main Street, Suite 18
Carbondale, IL 62901
(618) 457-7930
(800) 758-0559
TTY: (800) 610-2779
Fax: (618) 457-7985

Website: www.equipforequality.org

...certify that I provided respondent with a copy of this form. (pages 1-5)

☐ English ☐ Spanish ☐ Other

Specify language: ______________ on ______________

Time: ______________

Signature: ______________________________

Title: ______________________________

Printed Name: ______________________________

...-2005 (R-04-18) Petition for Involuntary/Judicial Admission
...d by Authority of the State of Illinois
-0- Copies
Page 5 of 5

FILED DATE: 1/12/2021 1:37 PM  2021CH00106

# Exhibit 18

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

  - Fahad said it is not a normal experience for him to be escorted by police officers and he had questions about it.
- Fahad said he does not recall attacking someone. Fahad said he does not see evidence that it was a one-sided altercation.
- Fahad said he could accept striking someone is uncalled for but the other person was presenting himself as a threat by standing close to him and asking rapid questions.
- Fahad was asked if he recalls swinging his fists before striking the individual. Fahad said he does not remember doing this.
- Fahad said he was taken to a "mental hospital." Fahad said that during his stay at the hospital he read the Quran and spoke to the nurses about his mother's death.
- Fahad said he slept for two entire days at the hospital. Fahad said when he woke up he was "fine and normal."[6]
- Fahad said he does not see this "event" happening again because his mother was the closest person in his life.
- Fahad said his brother in-law and group of friends have been supportive and helped him tremendously since the event. Fahad said he is making sure he is getting good sleep and taking his medication.

Information provided by REDACTED on November 20, 2019

- For the past six months, REDACTED said he planned the conference with individuals from the University of Chicago. REDACTED said the purpose of the conference was a networking opportunity for Muslim attorneys.
- REDACTED said initially Fahad said he was not coming to the conference. REDACTED said he was surprised to see him when he arrived.
- REDACTED said he first saw Fahad walk into Lowden Hall.[7]
- REDACTED said that he observed many people mingling; expect Fahad, who was standing by himself.
- REDACTED said he approached Fahad and asked him to mingle with other people.
- REDACTED said he invited Fahad to take a group photo with other attendees.
- REDACTED said that around 6:30PM, he was scheduled to speak during opening remarks.
- REDACTED said that during opening remarks, Fahad started to speak loudly from the audience while reading from notecards.
  - REDACTED said that Fahad "was going off on rants" but remembers him talking about the "reasonable person standard."
- REDACTED said REDACTED approached Fahad and asked him to "wrap it up" and speak with him outside.
  - REDACTED said Fahad quieted down.
- REDACTED said that a couple minutes later, Fahad interrupted again.
- REDACTED said that REDACTED approached Fahad again and said, "Let's go outside" and Fahad quieted down.
- REDACTED said after opening remarks, attendees were invited to a dinner at Harry's Café.[8]
- REDACTED said that he did not interact with Fahad during dinner but learned from others that interacted with Fahad that he was talking about telepathy.
  - During this time, REDACTED said he heard from others that Fahad was telling people he was "crazy" and "angry."

---

[6] Fahad shared documentation related to his admittance and discharge from the hospital. To respect Fahad's privacy, these documents were not included in the report.
[7] Lowden Hall is located at Northwestern University Pritzker School of Law
[8] Harry's Café is located at Northwestern University Pritzker School of Law

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

- REDACTED said that after dinner he was helping to organize the keynote speaker, who was scheduled to speak in a different room.
- REDACTED said he and REDACTED were standing outside of the door and saw Fahad sit next to a woman. REDACTED said the woman was speaking to family in an "angry way" on the phone.
- REDACTED said the woman stood up and started walking away and Fahad started to follow her.
- REDACTED said that REDACTED approached Fahad. REDACTED observed REDACTED and Fahad speaking "comfortably" at this time.
- REDACTED said he then went to help set-up for the keynote speaker.
- REDACTED said a short time later, he heard REDACTED calling his name.
- REDACTED said he walked out of the room and observed Fahad on the ground and REDACTED was restraining him. REDACTED said that Fahad had his hands around REDACTED neck.
- REDACTED said he observed REDACTED eye was swollen and bleeding.
    - REDACTED said REDACTED yelled out, "He's attacking me; I don't know what to do."
- REDACTED said he took Fahad's second hand and held it down. REDACTED said he tried to calm Fahad down but Fahad was yelling words like, "this guy works in deception and can't work in telepathy."
- REDACTED said he told Fahad he was going to call the "cops." REDACTED said Fahad became more agitated and said, "No cops."
- REDACTED said a friend from the University of Chicago called 911 and REDACTED said he called Northwestern University Police Department (NUPD).
- REDACTED said that REDACTED wife is a chaplain and was trying to calm Fahad down but Fahad continued to "ramble."
- REDACTED said that NUPD arrived and handcuffed Fahad. REDACTED said during this time Fahad continued to ramble and talk about telepathy.
- REDACTED said that Fahad was not answering questions from the police. REDACTED said another individual present shared with police that Fahad was experiencing mental health issues.
- REDACTED said that Fahad was shouting at police and the police appeared confused.
- REDACTED said he called Susie Spies Roth to inform her of the incident.
- REDACTED said he has known Fahad but never saw him attack someone or injure someone.

FILED DATE: 1/12/2021 1:37 PM    2021CH00106

# Exhibit 19

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

# Exhibit 20

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

Student Affairs

Northwestern University
36 Scott Hall
601 University Place
Evanston, Illinois 60208

Phone 847-491-8430
Fax 847-467-2523

northwestern.edu/studentaffairs

NORTHWESTERN
UNIVERSITY

November 6, 2019

Fahad Syed
APT 711, 244 E. Pearson St.
Chicago, IL 60611

**PERSONAL AND CONFIDENTIAL**

Dear Fahad,

This letter serves as notification that, pursuant to Northwestern University's Interim Suspension policy outlined on pages 110 and 111 of the 2019-2020 Northwestern University Student Handbook (https://www.northwestern.edu/student-conduct/shared-assets/homepage/panel1/quick-links/images/student-handbook-2019-2020.pdf), you are placed on Interim Suspension effective immediately. This action is based on information currently available to the University related to allegations that you physically assaulted a guest at Northwestern Law School event. Specifically, it has been alleged that during the evening of November 1, 2019 you became incoherent while speaking with fellow law students and struck a University of Chicago law student in the mouth with your fist.

A student may be placed on interim suspension when such action is necessary for reasons relating to the safety and well-being of the University community, the student themselves, or University property. Specifically, the Student Handbook lists allegations that may warrant interim suspension including:

(A)ction or threat of action that endangers or threatens to endanger the health, safety, or well-being of any person

As a result of this Interim Suspension, you are not permitted to attend class, and are excluded from University property and University events (both on and off campus). Additionally, you may not submit course work, take final exams, submit final papers/projects, register for class, receive academic credit, attend class, participate in co-curricular activities, conduct research, publish work associated with research conducted at Northwestern, participate in employment at Northwestern, or receive a University degree.

Your academic Dean will be notified of this Interim Suspension and your inability to participate in classes and course work during this time.

Any exception to the restrictions outlined above must be explicitly authorized by me or my designee. For the purposes of this matter, Associate Vice President and Dean of Students, Todd Adams, will serve as my designee. If you violate these restrictions without approval, you will be

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

# Exhibit 21

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

Care Health Plan
Box 21153
gan, MN 55121

FAHAD SYED
244 E PEARSON ST
CHICAGO, IL 60611-2368

11/5/2019

***For help to translate or understand this letter, please call 1-312-864-8200 or 1-855-444-1661 (toll-free), or 711 TDD/TTY.***

**Re:** Member Name: FAHAD SYED
Member ID No.: 190193706
Auth. No: D7922240

Dear FAHAD SYED:

CountyCare looked at services requested for FAHAD SYED. The request received on **11/5/2019** for coverage of a **continued inpatient** stay was denied.

**An independent review** organization medical doctor, board certified in Psychiatry, has looked at your request for a continued hospital stay at a high level of care (a continued inpatient stay) at Northwestern Memorial Hospital from 11/4/19 through discharge. According to InterQual Criteria for BH: Adult and Geriatric Psychiatry/Inpatient/Episode Day 2-13, the medical information sent does not show a need for a continued inpatient level of care. A continued inpatient stay has not been shown to be medically necessary to improve or correct your bipolar disorder. The information sent does not show you had any symptoms or findings or needed any treatments requiring a continued inpatient stay as of 11/4/19. The medical information sent shows you did not have any thoughts of killing yourself or someone else (suicidal or homicidal ideation), and you had not tried to kill yourself in the past 48 hours. You were not easily irritated or angered (agitated) and you were not threatening towards others (aggressive). You had some signs of mania; however you were showing progress. Also, the medical information sent shows you were not following your doctor's orders. Therefore, your request for a continued inpatient stay from 11/4/19 through discharge cannot be approved.

**If there is** more information available to show a need for a continued inpatient psychiatric stay, please have it sent for review.

You, or someone you name to help you, including an attorney, can request a free copy of criteria used in this decision. Your doctor knows about this decision. He/she can call to talk to us about this decision. If you have questions or if your treating physician would like to discuss the medical necessity denial with a physician reviewer, please call CCHHS Medical Management Department at 1-855-444-1661 Option 5 to discuss.

If you disagree with this decision, you can file an "Appeal". This is how you ask us to change our decision. If you want your doctor or someone else to act for you in the appeal, you must tell us this in writing.

**APPEALS:**



FILED DATE: 1/12/2021 1:37 PM 2021CH00106

...ntyCare Health Plan
..O. Box 21153
Eagan, MN 55121

FAHAD SYED
244 E PEARSON ST
CHICAGO, IL 60611-2368

11/7/2019

***For help to translate or understand this letter, please call 1-312-864-8200 or 1-855-444-1661 (toll-free), or 711 TDD/TTY.***

**Re:** Member Name: FAHAD SYED
Member ID No.: 190193706
Auth. No: D7922240

Dear FAHAD SYED:

CountyCare looked at services requested for FAHAD SYED. The request received on **11/7/2019** for coverage of a **continued inpatient** stay was denied.

**An independent review** organization medical doctor, board certified in Psychiatry, has looked at your request for a continued hospital stay at a high level of care (a continued inpatient stay) at Northwestern Memorial Hospital from 11/4/19 through discharge. According to InterQual Criteria for BH: Adult and Geriatric Psychiatry/Inpatient/Episode Day 2-13, the medical information sent does not show a need for a continued inpatient level of care. A continued inpatient stay has not been shown to be medically necessary to improve or correct your bipolar disorder. The information sent does not show you had any symptoms or findings or needed any treatments requiring a continued inpatient stay as of 11/4/19. The medical information sent shows you did not have any thoughts of killing yourself or someone else (suicidal or homicidal ideation), and you had not tried to kill yourself in the past 48 hours. You were not hearing voices telling you to hurt yourself or others. You were not threatening towards others (aggressive). You had problems with taking the medications you were given in the hospital. Therefore, your request for a continued inpatient stay from 11/4/19 through discharge cannot be approved.

**If there** is more information available to show a need for a continued inpatient psychiatric stay, please have it sent for review.

You, or someone you name to help you, including an attorney, can request a free copy of criteria used in this decision. Your doctor knows about this decision. He/she can call to talk to us about this decision. If you have questions or if your treating physician would like to discuss the medical necessity denial with a physician reviewer, please call CCHHS Medical Management Department at 1-855-444-1661 Option 5 to discuss.

If you disagree with this decision, you can file an "Appeal". This is how you ask us to change our decision. If you want your doctor or someone else to act for you in the appeal, you must tell us this in writing.

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

# Exhibit 22

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

- REDACTED said he did not perceive Fahad to be a threat so initially decided not to call 911, but "thinks" REDACTED ended up calling 911.
- REDACTED said that while Fahad was being held down, he continued to say, "You are the angel of the devil."
- REDACTED said when the "cops" arrived he told them what happened.
  - REDACTED said that Fahad continued to scream when the "cops took him away."
- REDACTED said no one observed the conversation and subsequent altercation between him and Fahad.
  - REDACTED said that he found the altercation was "really unprovoked on his end."
- REDACTED said he decided not to press charges because he thought Fahad was mentally unwell and that he needed help as opposed to punishment.

Information provided by REDACTED on November 21, 2019

- REDACTED said the week leading up to the conference; Fahad's mother had passed away. REDACTED said he was in contact with Fahad and tried to be there for him.
- At the conference, REDACTED said he first saw Fahad entering the event before opening remarks.
- REDACTED described Fahad as "out of it." REDACTED said Fahad was not dressed for a conference. He was in hoodie, which was different from everyone else.
- REDACTED said that Fahad was not "present in the moment" and not talking much. REDACTED said Fahad "seemed different from previous interactions."

- REDACTED said one of the University of Chicago students[9] approached Fahad REDACTED said Fahad's thoughts "were all over the place" but remembers Fahad saying, "thankful for MSLA[10] for being there for him."
  - REDACTED said the individual from University of Chicago asked to him to stop again and offered to speak with him individually.
- At dinner, REDACTED said that Fahad was sitting with different groups of people but did not observe "too much." REDACTED said during this time he was receiving the keynote speaker.

- REDACTED said everyone went into the keynote speaker room and Fahad and REDACTED were talking outside.

[9] Identified as REDACTED

[10] MSLA stands for the Muslim Student Law Association

- REDACTED said 5-10 minutes into the keynote speech; he was exiting the room to grab something and heard "thumps." REDACTED said he "rushed out of the room" and heard REDACTED calling out for REDACTED
- REDACTED said he observed Fahad's arms around REDACTED neck and body. REDACTED said he observed REDACTED trying to hold Fahad down.

- REDACTED said that he and REDACTED moved Fahad's arms from REDACTED and proceeded to hold Fahad down on the ground.

   - REDACTED said he did not think Fahad realized that he and REDACTED were there. REDACTED said Fahad asked, "Who's holding my arm?"
   - REDACTED said he told Fahad that he was there

- REDACTED said that REDACTED called 911 and NUPD arrived and restrained Fahad. REDACTED said that

- REDACTED said he did not observe Fahad consume alcohol. REDACTED said Fahad did not smell of alcohol. REDACTED said the event was alcohol-free.
- REDACTED said that REDACTED did not know Fahad and did not "believe" that REDACTED knew about Fahad's mothers passing.

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

# Exhibit 23

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

Northwestern | STUDENT AFFAIRS

**Office of Student Conduct**
Dean of Students Office
Office 847.491.4582
Fax 847.467.5537

Northwestern University
Division of Student Affairs
601 University Place
Scott Hall, Suite 35
Evanston, Illinois 60208

student-conduct@northwestern.edu
northwestern.edu/student-conduct

December 19, 2019

Fahad Syed
Sent electronically to FahadSyed2021@nlaw.northwestern.edu

**PERSONAL AND CONFIDENTIAL**

Dear Fahad:

This letter is a follow-up to your University Hearing and Appeals System administrative hearing, held on December 9, 2019 with myself, and Assistant Director of Student Conduct, Heather Cohen, regarding your alleged violations of University policy. Specifically, it was alleged that you struck an individual in the face during a Law School event on November 1, 2019.

The specific alleged policy violations are defined as follows in the 2019-2020 Northwestern Student Handbook.

- *Endangering Self or Others – (pg. 32) Any action (or threat of action) that endangers or threatens to endanger the health, safety, or well-being of any person (including oneself)*
- *Violations of Other Policies – (pg. 39) Actions that violate federal, state, or local laws or ordinances or that violate other University policies may also be violations of the Student Code of Conduct.*

In reviewing the case and making its findings, we considered the following:

- The Office of Student Conduct investigative report;
- Your statements during your administrative hearing on December 9, 2019;
- The 2019-2020 Endangering Self or Others and the Violations of Other Policies.

**Background:**

On the evening of November 1, 2019, you attended the National Muslim Law Students Conference at Northwestern University Pritzker School of Law. Current law students from Northwestern University and the University of Chicago hosted the conference. During the investigation, you said that the combination of your mother's passing and the circumstances surrounding her death, not taking a prescribed medication, and not sleeping for three days caused you to be in "vulnerable state of mind" at the event. Four individuals interviewed as part of the investigation described you interrupting the opening remarks of the speakers. You were making comments, which included; "the reasonable person standard, a six-year old could understand," and "look it up on the internet." One of the organizers from the University of Chicago named REDACTED approached you about the interruptions during the opening remarks. I learned from others

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

that after the opening remarks attendees attended a dinner and keynote address.

REDACTED *Account*

Prior to the keynote address, REDACTED said he approached you in the hallway to apologize if he was rude and for interrupting you during the opening remarks. REDACTED said you responded, "This happened?" "When did it happen?" and "in front of who and how many times?" REDACTED said he did not know what you meant and figured you did not remember what had occurred. REDACTED said that you walked away but recalled being concerned about the way you were speaking. Following this conversation, a short time later, REDACTED said he observed you walk aggressively toward an unknown female who was speaking on the phone. REDACTED said he observed you sit down next to the woman. REDACTED said the woman immediately stood up, and you told the woman to "stay." REDACTED said the woman responded, "I don't have to stay." REDACTED said he approached you while you were still sitting on the bench. REDACTED said he asked you, "Why did you ask her to stay?" REDACTED said you responded that, "you wanted to know who she was talking to." REDACTED said he asked you, "was that appropriate?" to which you responded, "you wanted to know about telepathy and what she was thinking when the world ends." REDACTED said that he told you, "I don't think it's appropriate what you said and the manner that you said it." REDACTED said he communicated this to you in a non-threatening manner. REDACTED said that you proceeded to tell him that, "It was you earlier and it's you right now, you told her to go, I wanted her to stay." "You are an agent of the devil." REDACTED said that you stood up quickly, took off your jacket, and put your fists in the air in front of your face. REDACTED said he backed up and yelled at you to "stop." REDACTED said that you started to laugh and began to swing your arms. REDACTED described this as you "were trying to box." REDACTED said he feared for his safety and was mostly in shock. REDACTED said he continued to back up as you continued to move forward. REDACTED said he felt you hit him on his left eye and then he lowered his head in an attempt to tackle you. REDACTED said he was concerned that you might harm others. REDACTED said his eyelid was purple and red and there was a cut underneath his eye as a result of you hitting him in the eye. REDACTED said he did not need to see a doctor and there was no serious repercussions. REDACTED said that he proceeded to restrain you and called out for others to assist him. REDACTED said the police were called and responded. REDACTED said he did not press charges, as noted in the police report.

*Fahad Account*

During the investigative meetings on November 19 and 27, 2019 you said that you did not remember "much" of the event nor could recall what led to striking REDACTED Specifically, in the second investigative meeting, you said that you "accept the facts at hand" and "accept responsibility for [your] actions." When asked during the second investigative meeting on November 27, 2019 if you recalled sitting next to woman who was on the phone, you said that you were not sitting next to her. You said that you thought the woman was "out there on the phone, talking about you and you wanted to know why." You said you remember being outside of a room and talking to an unknown individual (REDACTED During the hearing, you said that you did not remember REDACTED speaking to you earlier in the evening, nor did you recall that he was the same person who approached you later prior to the keynote address. Furthermore, at this time, you described that REDACTED was presenting himself as a threat because he was standing very close to you and asking questions very rapidly. You recalled not being in the "correct state of mind" when REDACTED was questioning you. You said that you did not remember what REDACTED was asking you but based on your "frame of mind," and "how you were acting that night," you were surprised that he would have approached you. You said that you could not remember if you told

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

REDACTED that you felt threatened. You said that you asked REDACTED to "back up." You said the next thing you remember was being on the ground and people holding you. In the second investigative meeting, you were asked if you recalled swinging your fists before striking REDACTED You said that you do not remember doing this. During the investigative meetings and hearing, you said that you do not recall striking REDACTED You said that you recalled the police talking to you and later taking you to the emergency room. During the second investigative meeting, you were asked if you recalled being combative with police officers, to which you responded that you remember asking officers why they were taking you and where they were taking you.

During the administrative hearing, you said that after reviewing the investigative report, you were unaware that REDACTED approached you "multiple times" and spoke to you during the opening remarks. After reading in the investigative report that REDACTED asked you to "step outside" during the opening remarks, you characterized that comment as being threatening, although you acknowledged during the hearing that you have no memory of this interaction. You again reiterated that REDACTED had "no business intervening" during the opening remarks, though later acknowledged that you understood that REDACTED may have approached you given your conduct during the opening remarks and given his role as an organizer of the conference. During the hearing, when you were questioned about the terms (battering, and repeatedly assaulting you, harassing you) that you used to describe what REDACTED was doing to you in your response to the investigative report, you said that REDACTED should have not approached you because of his observations of your behavior that evening. You also said that you felt a need to defend yourself because he was standing in close proximity to you. Furthermore, you said that if this were a "random attack," you would accept responsibility but felt REDACTED "provoked" and "threatened" you while you were in a "vulnerable state of mind." Lastly, you said that the other individuals, who were interviewed as part of the investigation, shared false information to the police and to the investigator about what they observed that evening.

**Findings:**

After review of your and REDACTED accounts, we have outlined below our analysis of the information provided.

To make a determination, we noted that you acknowledged during the investigation that you were "not in the correct state of mind" and thought you were "being delusional." Furthermore, we placed significant weight on your acknowledgement that you do not remember striking REDACTED or any details about what led to striking him in the face except that you recall him speaking to you in close proximity and rapidly asking questions about which you could not remember the specifics. Next, we noted in the second investigative meeting that you shared that you "accept the facts at hand" and accept responsibility for your actions. Lastly, we noted that in the hearing after your review of the investigative report, you presented a new interpretation of the incident where you described feeling "provoked and threatened" by REDACTED and a need to defend yourself after learning he initially confronted you during opening remarks and then a second time prior to the keynote address. When you were asked for specific details that led you to feel this way, you restated your only memory of the incident, which involved REDACTED speaking to you in close proximity and rapidly asking questions. Based on the evaluation of the information shared, we found that you presented an inconsistent articulation of what happened from your perspective throughout the stages of the process.

We then considered REDACTED account of the evening in question. We noted that his timeline and

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

observations about the evening's event was very detailed and aligned with the other three witness accounts in the investigative report. We also noted that a witness corroborated REDACTED account that he observed you sit next to a woman and approach you thereafter. Additionally, we noted that two witnesses also observed injury to REDACTED eye. Based on REDACTED clear and consistent articulation of the evening's events and interactions with you, which were corroborated by others, we found his account to be more credible.

As a result, we find it more likely than not that it was reasonable that REDACTED engaged with you given the disruption you caused during the opening remarks and his observations between you and the woman prior to the keynote address. Thus, we did not consider REDACTED behavior to be provoking or as otherwise justifying your conduct in relation to REDACTED including you striking REDACTED in the face. We also found the manner in which REDACTED engaged you during the opening remarks and later before the keynote address was not threatening or provoking.

As such, we found more likely than not that you struck REDACTED in the face in the manner as described by REDACTED

*Endangering Self or Others*

We next evaluated this incident, under the under the 2019-2020 Endangering Self or Others policy, which prohibits "Any action (or threat of action) that endangers or threatens to endanger the health, safety, or wellbeing of any person (including oneself). Severity and/or persistence may be considered" (pg. 32).

To make a determination, we considered your actions during this incident, which included striking an individual without any physical touch by REDACTED in the contemporaneous interaction, which we found to be severe. Furthermore, we considered the witness accounts that there was a need to physically restrain you after you struck REDACTED in the face and before the police arrived to the scene, which was corroborated in the police report. Further, the police report described you as being "combative, thrashing from side to side and refusing to proceed down the stairs." We determined that the action of striking REDACTED in the face posed a significant safety concern. We therefore found more likely than not that, your actions rose to the level of endangering the health, safety, or well-being of others, including REDACTED

*Violations of Other Policies* – (pg. 39) *Actions that violate federal, state, or local laws or ordinances or that violate other University policies may also be violations of the Student Code of Conduct.*

We next evaluated this incident under the Illinois Statute for Battery.

We noted that you communicated specific points in the hearing in regards to the Illinois Statute for Battery. Based on insufficient evidence, we decided that we would not consider the allegation further and therefore did not make a determination on whether a violation of the Violation of Other Policies occurred.

Based on the information we have and our conversation, we have made the following decisions regarding the policies found in the Student Code of Conduct:

Endangering Self or Others – (pg. 32) Any action (or threat of action) that endangers or threatens

FILED DATE: 1/12/2021 1:37 PM  2021CH00106

to endanger the health, safety, or well-being of any person (including oneself)--Responsible

Violations of Other Policies – (pg. 39) Actions that violate federal, state, or local laws or ordinances or that violate other University policies may also be violations of the Student Code of Conduct.--Dismissed

**Sanctions:**

To determine appropriate sanctions, we considered the facts of the incident noted above. Additionally, we considered some additional factors:

- We found it reasonable that there was a concern for your well-being on the evening in question based on the factors that you described and based on the observations of those who were present.
- We considered the severity of your actions, which resulted in you physically striking another person and a significant safety concern for others.
- We considered the level of disruption that was demonstrated in your actions that occurred during a university sponsored-event.

As a result of these considerations and review of other cases with similar behaviors, we have determined the following sanctions to be appropriate:

SUSPENSION. Effective immediately, you are suspended from Northwestern University for one semester and will not be eligible to return until Summer Semester 2020. During the period of suspension, you may not register for classes, submit course work, receive academic credit, attend class, remain in University housing, utilize any University services, or participate in any function or event sponsored by the University or any of its departments, groups, or organizations (unless specifically authorized). You will therefore be withdrawn from all classes during the period of your suspension, and a hold will be placed on your account preventing your enrollment. You are also banned, during your suspension, from entering, visiting, or being present on University property or facilities. This sanction will be noted permanently on your record in the Office of the Vice President for Student Affairs (but not on your transcript). If you do not reenroll in the University within two years of the end of the suspension term, you may not reenter the University without acceptance of a formal application by the Office of Admission and approval of the Vice President for Student Affairs, or designee, (and completion of any other conditions that may have been imposed for reentry). If you have satisfied all degree requirements, you will not be awarded your degree until the period of suspension is over and you have met all conditions for reenrollment or reapplication. You may not participate in commencement exercises until the period of suspension is over. If a disciplinary suspension and an academic withdrawal occur simultaneously, the two leaves of absence are to be effective consecutively, and not concurrently, unless otherwise determined by the Dean of Students.

DISCIPLINARY PROBATION. Upon your return to the Northwestern campus, you will be placed on disciplinary probation for one year following the date of your return. During this time, you are expected to reflect upon your choices and behavior and demonstrate the ability to abide by community standards and expectations. Any further violation of any university policy during this probationary period may result in more serious sanctions.

INTERVENTION/EDUCATION - You are required to attend, participate in good faith, and

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

complete the Specialized Education Program for the Prevention of Abusive and Controlling Behaviors at the Center for Contextual Change at your own expense. You can contact Peg Duros, Clinical Director at the Center for Contextual Change, at pegd@centerforcontextualchange.org to schedule your evaluation. Prior to your evaluation, you must provide the Center for Contextual Change a copy of this letter. You are required to sign a release for the staff at the Center for Contextual Change to verify with Northwestern's Office of Student Conduct and Vice President for Student Affairs that you completed an evaluation, followed, and completed all of their recommendations for education, intervention, and treatment. The staff at the Center for Contextual Change must also be able to knowledgeably provide their assessment of your readiness to return. Please note that the verification is to be completed using the "Provider Report Form" attached to this letter, which must be submitted at the time you file your Petition to Return.

PROBATION CURRICULUM: As a part of your probation, you will be required to meet with a professional staff member at the Northwestern Law School once a month during the first two semesters you return to Northwestern. The expectations and requirements for the probation curriculum will be discussed with you in your return meeting.

PETITION TO RETURN: You are required to submit a Petition To Return essay that outlines your readiness to return to the Northwestern University community. The essay may be no shorter than 1250 words, and should respond to the following issues and questions: 1) Reflect on the incident that occurred, and associated behaviors while at Northwestern University. 2) Describe what you did while away from the University, and relate what you learned about yourself, about your behaviors, and about your role in a community. 3) Discuss the specific behavioral changes you have made. 4) Demonstrate a specific, concrete plan for maintaining those changes upon a return to Northwestern. 5) Provide your intended graduation date and your plans for moving successfully toward graduation while avoiding future conduct concerns. This essay must be submitted to Christine DePilla, Assistant Director of Student Conduct, between June 1 and June 12, 2020 if you plan to return to Northwestern in Summer Semester 2020.

RETURN MEETING: Upon submission of your Petition to Return and prior to your approval to return, you will need to schedule a return meeting with Ms. DePilla. The goal of this meeting is to confirm that you have completed all sanctions while on suspension, and to discuss your petition and your plan to return to the Northwestern community. A determination will be made about your return after this meeting.

***Interim Action:***

The interim suspension as outlined below remains in effect until the case is finalized (including during an appeal period).

*You are not permitted to attend class, and are excluded from University property and University events (both on and off campus). Additionally, you may not submit course work, take final exams, submit final papers/projects, register for class, receive academic credit, attend class, participate in co-curricular activities, conduct research, publish work associated with research conducted at Northwestern, participate in employment at Northwestern, or receive a University degree.*

**Appeal Information:**

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

You have a right to request an appeal of this decision and/or the assigned sanctions based on the following three grounds:

- New information discovered after the hearing that could not have reasonably been available at the time of the hearing and is of a nature that could materially change the outcome
- Procedural errors within the student conduct process that may have substantially affected the fairness of the hearing
- An outcome (findings or sanctions) that was manifestly contrary to the weight of the information presented during the case (i.e., obviously unreasonable and unsupported by the great weight of information)

If you would like to request an appeal, please do so by contacting Lucas Christain, Assistant Dean and Director of Student Conduct, at lucas.christain@northwestern.edu outlining your grounds for appeal by Tuesday, December 24, 2019 at 5:00PM. If you choose not to request an appeal within the above timeframe, this decision will be final and is not subject to further review.

**Conclusion:**

The mission of student conduct is to promote integrity, civility, respect, and accountability within the University community. The outcome of this hearing will hopefully encourage you to reflect on and learn from this experience.

The student conduct process at Northwestern University is cumulative and progressive in nature. Further violations of university policies will likely result in more significant sanctions.

A copy of this letter will be kept on file in our office pursuant to our record retention and reporting policy (http://www.northwestern.edu/student-conduct/conduct-records/recordsretention/index.html).

Sincerely,

Christine DePilla

Christine DePilla
Assistant Director, Office of Student Conduct

CC: Heather Cohen, Assistant Director of Student Conduct

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

Northwestern

STUDENT CONDUCT

# Center for Contextual Change
# Provider Report Instructions

**Student:** Give this form to your provider during your initial session with them. It is YOUR responsibility to ensure that the provider completes and returns this form at the conclusion of your work with them.

**Provider:** Please return this form when your work with the student is concluded.

- We can only accept basic information about your work with the student, so please do not provide any diagnostic or treatment records.
- Given the rigor and challenges of the academic and social environment to which the student will return, we would like to know whether you feel the student is **prepared to return to Northwestern University.**
- The form may be sent back to the Office of Student Conduct via any of three methods:
  - FAX it to 847.467.1193
  - E-mail a scanned copy to student-conduct@northwestern.edu
  - Mail it to Office of Student Conduct; 601 University Place; Scott Hall Room 35; Evanston IL 60208

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

Northwestern

STUDENT CONDUCT

# Center for Contextual Change
# Provider Report

**Student Name:**________________________________________

**Clinician and Facility Information**

Agency/Facility:________________________________________
Clinician(s):___________________________________________
Address:_____________________________________________
Phone:______________________________________________
E-mail:______________________________________________

1. Did you receive and review documentation from our office regarding the nature of the student's behaviors and their disciplinary outcomes?
   ☐Yes ☐No

2. Did the student complete an evaluation with you?
   ☐Yes ☐No

3. Did the student complete any recommendations provided to them as a result of the evaluation?
   ☐Yes ☐No

4. Has the student terminated treatment with you or your program?
   ☐Yes ☐No
   *If "Yes," was the termination mutual and planned?* ☐Yes ☐No

5. Do you believe the student is prepared to return to Northwestern University?
   ☐Yes ☐No

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

# Exhibit 24

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

During Fall 2019 semester, I was involved in a physical altercation while at a law school student organization dinner, for which I served a 1 semester interim suspension for Fall 2019 during the duration of the student conduct investigation and hearing process, and also a 1 semester suspension for Spring 2020 as a disciplinary sanction issued by student conduct following the results of an appeal. I should not have engaged in any physical or verbal altercations while attending a student organization event, and deeply regret my actions and behaviors which led to creating the incident, and any other associated negative effects on myself or any other individual in attendance.

During the time that I was suspended, I seriously reflected on the nature of my actions and the incident which I became involved in creating. Having my educational opportunity and gift placed in jeopardy during this incident was one of the most personally and professionally devastating experiences in my entire life. It deeply impacted me in a manner which cemented the recognition of the precious opportunity which I have been graciously given by Northwestern to pursue my educational career and dreams. I will never again jeopardize my career or future by taking any actions which could harm the health or safety of another individual.

My actions and mindset were not representative of my normal self or state of mental health, as I was dealing with several personal and family related matters. However, I should not have placed myself in a position wherein my words or actions could endanger the safety or well-being of other students at any time, and I made several poor decisions which created the situation for which I was disciplined. I fully recognize the unacceptable nature and inappropriateness of my actions and behaviors during the incident in question, and fully accept responsibility for the associated outcomes.

During this time, I completed a Specialized Education Program for the Prevention of Abusive and Controlling Behaviors at the Center for Contextual Change, along with a forensic threat assessment evaluation. From my experiences, I learned that physical altercations are events which are severe in nature, and should never be chosen as a method of solving disputes under any intentional circumstances. Violence is an extremely severe and disruptive reaction to any external stimulus or situation and should be avoided at all costs. Being aware and respectful of the personal safety, physical, and other types of boundaries of other individuals is an issue that I need to be more aware of and actively working to improve. I also learned that in order to be a successful and respected member of my community, I need to lead by example in showing others the conduct and behavior that should be exhibits by Northwestern students and legal professionals.

Before the incident occurred, I was making poor decisions in my personal life which were leading to problems in other areas. These poor choices includes not getting enough sleep or having a regular sleep schedule; not regularly praying, or strictly observing some of the other tenants of my religion; and not being engaged in regular physical exercise nor eating a regular, balanced or healthy diet. Additionally, I was not strictly adhering to my medication or medical treatment regiment, and was not fully appreciating the necessity or results of following my doctors treatment plan and recommendations.

Going forward in my life I have started adhering to a regular sleep schedule which is highly structure and enhanced by my religious and spiritual beliefs. As a practicing Muslim, I now pray five times every day, beginning with pre-dawn prayer and ending with prayer sometime after sunset. Regular prayer is an important coping mechanism which helps me reflect and meditate throughout the day, in order to stay mentally healthy and productive in my activities. Additionally, adhering to this prayer schedule helps me structure my life in a regular

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

manner, during which I sleep and awaken at roughly the same time every day, which also helps me sleep better at night due to tiredness from my daily activities.

I work out three times per week at the local gym for Northwestern students, which helps me stay motivated to be productive and efficient in all areas of my life. Additionally, lifting weights is an extremely effective outlet for physical aggression throughout the week, which helps me regulate my mood. In order to meet my physical fitness goals, I eat a structured diet and follow a planned meal regiment. I am also regularly seeing my therapist on a weekly basis, and am regularly taking my medication as prescribed by my psychologist, with whom I meet on a monthly basis.

In addition to regularly attending classes during the week, I plan to go to the gym three days per week, in addition to maintaining a regular prayer and sleep schedule. I now fully appreciate the severity violence and engaging in other dangerous behaviors, like physical altercations, which put at risk the health and safety of other members of the community. I have also gained a lasting understanding the importance of regular sleep, regular physical exercise, and especially adhering to my mental health treatment plans and taking my medication regularly as prescribed. I am fully positioned to succeed and excel in my educational and professional career, as well maintain a healthy mental health and well-being.

Regularly meeting with my therapist, psychologist, and additionally Susie Spies-Roth, will allow me to maintain a constant and positive trajectory during my education, and will allow me to quickly address situations, behaviors, and outcomes which may become a problem early on, rather than later when they may deteriorate or become severe.

I am graduating in Spring 2023, and now that I fully appreciate the severity violence and other physical altercations, in addition to understanding the importance of regular sleep, regular physical exercise, and taking my medication regularly as prescribed, I am fully positioned to succeed and excel in my educational and professional career. My class schedule will be enhanced by my additional prayer, and physical fitness regimen, which will allow me to stay focused and motivated in completing my education and being an active and contributing member of the Northwestern community and the legal profession.

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

# Exhibit 25

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

**From:** **Lucas Christain** lucas.christain@northwestern.edu
**Subject:** Petition To Return Follow-Up
**Date:** July 10, 2020 at 12:32 PM
**To:** Fahad Syed FahadSyed2021@nlaw.northwestern.edu
**Cc:** Susan Michelle Spies Roth susan-roth@law.northwestern.edu

Dear Fahad,

Thank you for meeting with me yesterday, July 9, 2020 to discuss your petition to return from disciplinary suspension. You have completed all of the necessary sanctions to return to campus, as such your return from disciplinary suspension is approved.

This message is intended to reiterate our discussion and also ensure that Susie Spies-Roth, associate dean of students, who will serve as your primary contact in the Pritzker School of Law, is aware of the on-going expectations associated with your original sanction letter, issued on December 19, 2019. The following expectations were outlined in that letter and remain active:

- **DISCIPLINARY PROBATION:** Upon your return to the Northwestern campus, you will be placed on disciplinary probation for one year following the date of your return. During this time, you are expected to reflect upon your choices and behavior and demonstrate the ability to abide by community standards and expectations. Any further violation of any university policy during this probationary period may result in more serious sanctions.
- **PROBATION CURRICULUM:** As a part of your probation, you will be required to meet with a professional staff member at the Northwestern Law School once a month during the first two semesters you return to Northwestern. The objective of this monthly meeting is to ensure you have support as you acclimate back into the Law School.
  - Susie Spies-Roth, associate dean of students in the Pritzker School of Law will assist you with meeting this expectation. Directions for establishing these meetings are outlined below.

During our meeting we also discussed the importance of you remaining compliant with the recommendations associated with the forensic threat assessment you completed with Dr. Brenzinger. Additionally we discussed the need for you to keep the necessary releases active and up-to-date so that Dr. Michelle Hoy-Watkins, director of threat assessment at Northwestern, is able to confirm your continued compliance with the recommendations of the forensic threat assessment.

Finally, you are expected to outreach to Susie Spies-Roth, associate dean of students in the Pritzker School of Law to schedule a reinstatement meeting by Friday, July 17. During this meeting Susie will assist you with the process of becoming registered for classes and scheduling meetings that will satisfy the requirements of your probationary curriculum.

If you have any additional questions, please let me or Susie know. We are both invested in supporting you so that you can have a positive transition back into the academic environment.

Sincerely,

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

lucas

**Lucas J. Christain**
*(Pronouns: he, him, his)*
*Assistant Dean, Director of Student Conduct*
*Office of Student Conduct*

**Northwestern University**
038 Scott Hall
601 University Place
Evanston, IL 60208
P: (847) 467-5078
F: (847) 467-5537

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

# Exhibit 26







 

c do you want to start with?
Friend Requests
You're in control of who can send you friend requests.
Who can send you friend requests?
Friends of friends
Back
Next
n see wha
months ago
data settir
ook
preferences
book

Phone Number and Email
Tip: It's common for people to have the same name, so we have a few ways people can find each other on Facebook.
Choose who can look you up by your phone number and email address.
Phone number
Friends
Email
Friends
Back
Next

Posts and Stories
You decide who you want to see your posts and stories.
Future Posts
Choose who you'd like to see your future posts. That audience will be who can see your posts until you change it. You can always change it when you make a new post.
Friends
Stories
Control who can see your Stories. Stories are visible for 24 hours on Facebook and Messenger.
Custom
Limit Past Posts

## Search Engines

Search engines (like Google) can link to your profile to help people find you more easily.

If you turn this off, your profile can still be found on Facebook if people search for your name.

Do you want search engines outside of Facebook to link to your profile? 

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

# Exhibit 27

# Official Northwestern Pritzker Class of 2023 Admitted Students Page

Private group · 279 members

REDACTED

+ Invite

About Discussion Members Events Media Files

What's on your mind, Fahad?

Room Photo/Video Tag People

New Activity

REDACTED REDACTED shared a link.
August 5, 2020 ·

**About**

Welcome to the Northwestern Pritzker School of Law!

This group is open to all JD/JD-MBA students in Northwestern Pritzker Law's Class of 2023. ...
**See More**

**Private**
Only members can see who's in the group and what they post.

9+
Fahad
Official Northwestern Pritzker Class of 2023 Admitted Students Page
+ Invite
What's on your mind, Fahad?
Room
Photo/Video
Tag People
New Activity
REDACTED
REDACTED shared a link.
August 5, 2020 ·
Hey 1Ls, its REDACTED for the next year.
Just stopping by to promote two things.
1. Thanks for your tuition letter. You should also sign on ours which is going to the President of the University and Trustees along with your letter. Most upperclassmen have signed on and are using their names. ... See More
DOCS.GOOGLE.COM
Tuition Letter Signing Form
About
Welcome to the Northwestern Pritzker School of Law!
This group is open to all JD/JD-MBA students in Northwestern Pritzker Law's Class of 2023. ... See More
Private
Only members can see who's in the group and what they post.
Visible
Anyone can find this group.
General Group
59

9+
Fahad
Official Northwestern Pritzker Class of 2023 Admitted Students Page
Private group · 279 members
REDACTED
+ Invite
About
Discussion
Members
Events
Media
Files
About This Group
Welcome to the Northwestern Pritzker School of Law!
This group is open to all JD/JD-MBA students in Northwestern Pritzker Law's Class of 2023. ... See More
Private
Only members can see who's in the group and what they post.
Visible
Anyone can find this group.
General Group
History
58

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

# Exhibit 28

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

*Factual Summary*

**Information Provided by** REDACTED

Heather Cohen and Ish Orkar interviewed REDACTED on August 27, 2020. REDACTED provided the following information:

*Background*

- REDACTED is a first year law student at Pritzker. She said the fall semester started on August 24, 2020.

*Events of August 21-23, 2020*

- REDACTED said Friday, August 21 into the early hours of Sunday, August 23[2] she was in the GroupMe chat and observed "friction" between Fahad and other members of the group.
- REDACTED said she is a "skeptical" person who likes doing her "due diligence" so she googled Fahad. She said she found his Facebook profile and noticed the profile indicated that Fahad started law school in 2019. She said according to the profile, Fahad would have been a 2L, so she wondered if Fahad was actually who he was claiming to be in the group.[3]

[2] REDACTED provided these dates in the initial interview, however, supporting documentation supports that REDACTED timeline is off by one day. REDACTED originally stated these incidents occurred from Thursday, August 20 - Saturday, August 22, 2020. In a follow-up interview, REDACTED confirmed the correct dates are from Friday, August 21 – Sunday, August 23, 2020.

[3] REDACTED posted this information to the GroupMe chat, raising her suspicions to the group. (Attachments, page 11)

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

- 
- she scrolled up through the thread and saw Fahad's response to the information she had posted. REDACTED described her post as "publically available information," and she believed the rest of the class should have been aware of this information.
- REDACTED said shortly thereafter, at about 1:00 a.m. on Saturday, REDACTED said she then called to see what was going on.
- REDACTED said Fahad kept getting angry that she called him at 1:00 a.m. She said he took offense to that, and kept saying that because she called him at 1:00 a.m. she clearly wanted to fight him.
- REDACTED said that over the course of the 15 minute call, she recalled saying "Is this Fahad?" when she first called Fahad was mostly yelling and going into "tirades" about the time at which she called him.
- REDACTED said that Fahad hung up on that call She explained that Fahad now had her phone number since she had called him.

FILED DATE: 1/12/2021 1:37 PM    2021CH00106

**Additional Information Provided by** REDACTED

Heather Cohen and Ish Orkar interviewed REDACTED on October 29, 2020. REDACTED provided the following information:

*Events of August 21-23, 2020*

- When asked how she accessed Fahad's Facebook profile information, REDACTED said that she searched for his name, clicked on his Facebook, and shared what was available.
- When asked about her NU Kids on the Block '23 group chat posts. (Attachments, page 11) REDACTED said after posting Fahad's Facebook profile information, she wrote "assumed identity" and "psyop" to convey that "maybe someone is messing with us."

- When asked if she recorded the phone calls between her and Fahad, REDACTED said that she did. She explained that she recorded them for her own purposes

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

# Exhibit 29

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

Group Chat Screenshot 21/27

Group Chat Screenshot 22/27

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

# Exhibit 30

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

Student Affairs

Northwestern University
36 Scott Hall
601 University Place
Evanston, Illinois 60208

Phone 847-491-8430
Fax 847-467-2523

northwestern.edu/studentaffairs

August 23, 2020

Fahad Syed
Sent electronically to fahad-syed@law.northwestern.edu

**PERSONAL AND CONFIDENTIAL**

Dear Fahad:

This letter serves as official notification that you are placed on Interim Suspension, effective immediately. Northwestern University's Interim Suspension policy is outlined on page 110 of the Northwestern Student Handbook (https://www.northwestern.edu/student-conduct/about-us/student-handbook/assets/student-handbook.pdf).

**Interim Suspension**



FILED DATE: 1/12/2021 1:37 PM 2021CH00106



As a result of this Interim Suspension, you are not permitted to attend class virtually or in person, and are excluded from University property, including the residence halls and University events (both on and off campus). Additionally, you may not submit course work, take final exams, submit final papers/projects, register for class, receive academic credit, attend class, participate in co-curricular activities, conduct research, publish work associated with research conducted at Northwestern, participate in employment at Northwestern, or receive a University degree until the Interim Suspension is lifted or any underlying University investigation is resolved.

Your academic Dean will be notified of this Interim Suspension and your inability to participate in classes and course work during this time.

**No-Contact Directive**

Effective immediately, and until further notice, you are expected to have no contact with REDACTED ,

FILED DATE: 1/12/2021 1:37 PM   2021CH00106

This includes all forms and means of contact, either by you or through others acting on your behalf, including personal contact or by phone, e-mail, text message, or social media. This also includes making electronic outreaches to or statements about this person through blogs or other social media, "tagging" them in comments, or through online message boards or other internet sites. You are also expected to remove yourself as this person's "friend," contact, follower, or similar connection on any social networking site.You are not permitted to be in the immediate vicinity around, enter into, or be present in their place of residence, at any time. Place of residence is defined as residence hall floor, off-campus house, or off-campus apartment building or floor. Should you unknowingly enter the other student's place of residence, you are expected to immediately remove yourself and not return.

A No-Contact Directive is not considered disciplinary action and does not become part of a student's conduct record. However, failure to abide by a No-Contact Directive may result in disciplinary action and/or sanctions, creating a conduct record.

**Contact Restriction**

You are also restricted from having any contact, electronic, in-person, or otherwise with any Northwestern Law Students. This restriction remains active until further notice.

**Investigation and Resolution**

Interim actions are taken upon receipt of reports, but prior to the resolution of allegations. You will receive separate written notice regarding each of the specific allegations reported to the Office of Equity and Office of Community Standards. During the investigation you will have the ability to respond to each allegation, provide relevant information and evidence, and propose witnesses for the investigators to speak with. The University has consolidated these allegations into a single investigation which will be managed jointly by both the Office of Community Standards and the Office of Equity.

The University retains the right to postpone a hearing and/or appeal through the University Hearing and Appeals System (UHAS) if the University determines the respondent's presence in the University community would significantly disrupt educational or other activities. (Pg. 111, Northwestern Student Handbook) The University will evaluate the status of the case as additional information becomes available. Any request to postpone the investigation will be considered, balancing the need for a prompt outcome with the need to ensure a fair, thorough, and equitable student conduct process and outcome.

Any exception to the restrictions outlined above must be explicitly authorized by me or my designee. For the purposes of this matter, Mona Dugo, Interim Dean of Students, will serve as my designee. If you violate these restrictions without approval, you will be subject to removal or intervention by University Police and may face arrest for trespassing or other actions.

If you have any questions about your Interim Suspension, please contact Interim Dean of Students, Mona Dugo, via e-mail: mona.dugo@northwestern.edu

Sincerely,

FILED DATE: 1/12/2021 1:37 PM 2021CH00106

Julie A. Payne-Kirchmeier, Ph.D., CASP
Vice President for Student Affairs