# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

FAHAD SYED,

      Plaintiff, | Case No. 21-cv-00267

  v. | Hon. Mary Rowland
             | Magistrate Judge Maria Valdez

NORTHWESTERN UNIVERSITY,

      Defendant.

**DEFENDANT NORTHWESTERN UNIVERSITY'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER,
<u>PRELIMINARY INJUNCTION, AND EXPEDITED DISCOVERY</u>**

Scott L. Warner
Karen L. Courtheoux
scott.warner@huschblackwell.com
karen.courtheoux@huschblackwell.com
Husch Blackwell LLP
120 South Riverside Plaza, Suite 2200
Chicago, IL 60606
(312) 655-1500

*Attorneys for Northwestern University*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................... iii

FACTUAL BACKGROUND ................................................................................................. 3

    A.   Plaintiff's Misconduct in Fall 2019 ................................................................ 3

    B.   Investigation and Sanction Regarding November 1, 2019 Incident ........................... 3

    C.   Plaintiff's Additional Misconduct in 2020 .................................................. 5

    D.   Investigation and Sanction Regarding 2020 Misconduct .............................. 7

    E.   Plaintiff's Contemporaneous Misconduct Toward Other Northwestern Employees ... 8

ARGUMENT ......................................................................................................................... 9

I.   Legal Standard ......................................................................................................... 9

II.   The Court Should Deny the Motion in its Entirety ................................................. 10

    A.   Plaintiff Has Not Demonstrated That He Is Likely To Succeed on the Merits. ......... 10

        1.   Northwestern Based Its Decision to Expel Plaintiff Solely on Legitimate, Non-Discriminatory Reasons. ................................................................... 10

        2.   Plaintiff Is Unlikely to Prevail on His Discrimination Claims ........................ 11

            a.   Plaintiff Is Unlikely to Prevail on a Claim of Sex-Based Discrimination.. 11

            b.   Plaintiff Is Unlikely to Prevail on a Claim of Disability-Based Discrimination. ................................................................... 12

        3.   Any Constitutional or Other Purported Claims Have No Merit. ...................... 13

        4.   Northwestern's Decision to Expel Plaintiff Is an Academic Decision Entitled to Judicial Deference ......................................................... 14

    B.   Plaintiff Has Not Shown He Has No Adequate Remedy at Law ............................. 16

    C.   Plaintiff Has Not Shown Irreparable Harm. ................................................... 16

    D.   The Balance of Harms Undoubtedly Favors Northwestern. ................................ 19

    E.   There is No Basis for Awarding Expedited Discovery ........................................ 19

CONCLUSION......................................................................................................... 20

CERTIFICATE OF SERVICE ................................................................................. 21

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Arjo, Inc. v. Handicare USA, Inc.*, No. 18 C,
   2554, 2018 WL 5298527 (N.D. Ill. Oct. 25, 2018)..................................................17

*Bd. of Curators of Univ. of Mo. v. Horowitz*,
   435 U.S. 78 (1978) .................................................................................................14

*Bedrossian v. Nw. Mem'l Hosp.*,
   409 F.3d 840 (7th Cir. 2005) ................................................................................16

*Bernina of Am., Inc. v. Fashion Fabrics Int'l, Inc.*,
   No. 01 C 585, 2001 WL 128164 (N.D. Ill. Feb. 9, 2001).......................................9

*Bhd. of Locomotive Engineers & Trainmen v. Union Pac. R.R. Co.*,
   2011 WL 221823 (N.D. Ill. Jan. 24, 2011) ...........................................................18

*Bilut v. Northwestern Univ.*,
   269 Ill.App.3d 125 (1st Dist. 1994) ......................................................................18

*Bloch v. Hillel Torah North Suburban Day School*,
   100 Ill.App.3d 204 (Ill. 1981) ..............................................................................18

*Brumfield v. City of Chicago*,
   735 F.3d 619 (7th Cir. 2013) ................................................................................13

*Collins v. Northwestern Univ.*,
   164 F.Supp.3d 1071 (N.D. Ill. 2016) (dismissing..................................................13

*Cox v. City of Chicago*,
   868 F.2d 217 (7th Cir. 1989) ................................................................................10

*Despard v. Bd. of Trustees of Indiana Univ.*, No. 1:14-cv-1987,
   2015 WL 49446112 (S.D. Ind. Aug. 18, 2015) ...............................................12-13

*Doe v. Columbia Coll.*,
   933 F.3d 849 (7th Cir. 2019) ...........................................................................11, 14

*Fenje v. Feld*,
   398 F.3d 620 (7th Cir. 2005) ................................................................................15

*Goodman v. Illinois Dep't Fin. & Prof'l Reg.*,
   430 F.3d 432 (7th Cir. 2005) ................................................................................10

*Hall v. Nat'l Collegiate Athletic Ass'n*,
    985 F. Supp. 782 (N.D. Ill. 1997) ...................................................................... 18

*Heller v. Hodgin*,
    928 F. Supp. 789 (S.D. Ind. 1996) ...................................................................... 18

*Holert v. University of Chicago*
    751 F. Supp. 1294 (N.D. Ill. 1990) ............................................................... 14, 15

*Long v. Bd. of Educ., Dist. 128*,
    167 F.Supp.2d 988 (N.D. Ill. 2001) ................................................................. 9, 10

*Martin v. Helstad*,
    699 F.2d 387 (7th Cir. 1983) .............................................................................. 15

*Mazurek v. Armstrong*,
    20 U.S. 968 (1997) .............................................................................................. 10

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*,
    194 F.R.D. 618 (N.D. Ill. 2000) ......................................................................... 19

*Novak v. Bd. of Trustees of S. Ill. Univ.*,
    777 F.3d 966 (7th Cir. 2015) .............................................................................. 12

*Parker by Parker v. Trinity High School*,
    823 F. Supp. 511 (N.D. Ill. 1993) ...................................................................... 19

*Remer v. Burlington Area School Dist.*,
    286 F.3d 1007 (7th Cir. 2002) ............................................................................ 15

*Reynolds v. Menard, Inc.*,
    365 Ill. App. 3d 812 (1st Dist. 2006) ................................................................. 14

*Roland Mach. Co. v. Dresser Indus., Inc.*,
    749 F.2d 380 (7th Cir. 1984) .............................................................................. 16

*Saud v. DePaul University*
    No. 19-cv-3945, 2019 WL 5577239, at *9 (N.D. Ill. Oct. 29, 2019) ................... 16

*Seaga Mfg. Inc. v. Intermatic Mfg., Ltd., 13 C 50041*,
    2013 WL 773037 (N.D. Ill. Feb. 28, 2013) ........................................................ 16

*Slovinec v. DePaul Univ.*,
    332 F.3d 1068 (7th Cir. 2003) ............................................................................ 13

*Stokley-Van Camp, Inc. v. Coca-Cola Co.*,
    No. 86 C 6159, 1987 WL 6300 (N.D. Ill. Jan. 30 1987) ..................................... 17

iv

*Students v. United States Dep't of Educ.*,
    2016 WL 6134121 (N.D. Ill. Oct. 18, 2016), *report and recommendation adopted sub nom.*
    *Students & Parents for Privacy v. United States Dep't of Educ.*, No. 16-4945, 2017 WL
    6629520 (N.D. Ill. Dec. 29, 2017 ........................................................................................... 18

*Traffic Tech Inc. v. Kreiter*,
    No. 14-cv-7528, 2015 WL 9259544 (N.D. Ill. Dec. 18, 2015) ............................................. 17

*Tylicki v. St. Ong*,
    297 Fed. Appx. 65 (2d Cir. 2008) ........................................................................................ 13

**Statutes**

20 U.S.C. § 1681 ......................................................................................................................... 1
20 U.S.C. § 1232g ....................................................................................................................... 3
29 U.S.C. § 701 ........................................................................................................................... 1
42 U.S.C. § 12101 ....................................................................................................................... 1

Plaintiff Fahad Syed is a former law student at Defendant Northwestern University ("Northwestern" or "University") who was expelled after engaging in multiple instances of violent, threatening, and harassing conduct. He now seeks a mandatory injunction ordering Northwestern to readmit him into the very environment in which he caused significant harm to Northwestern students, staff members, and guests. Plaintiff's request should be denied.

Plaintiff's request takes the form of an "Application for Temporary Restraining Order, Preliminary Injunction, and Expedited Discovery" ("Motion" or "Mot."). Plaintiff has not filed any underlying complaint, but his Motion indicates that he purports to assert claims under: (1) the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA"); (2) Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq. ("Section 504"); and (3) Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, et seq. ("Title IX"). Mot., Dkt. #9, at 3.

First, Northwestern's decision to expel Plaintiff was based on legitimate, non-discriminatory reasons. Specifically, Plaintiff repeatedly engaged in serious misconduct, as detailed in two separate University investigations and resolution processes, which both included appeals. Accordingly, Plaintiff cannot demonstrate a likelihood of success on the merits on any disability or sex discrimination claim.

Second, there is no emergency here. Plaintiff contends that he will suffer irreparable harm for which he has no remedy at law if his expulsion remains in place. But Plaintiff's purported harm is neither imminent nor irremediable. Indeed, ***Plaintiff has not completed even one class at Northwestern***. That is because Plaintiff has been suspended in one form or another since November 2019 (his first semester as a student), when he was suspended on an interim basis pending the outcome of the University's investigation of an allegation that Plaintiff punched

another student in the face at a University event in the fall of 2019. Plaintiff was then suspended as a sanction until the summer of 2020 based upon the outcome of that investigation.

Almost immediately after Plaintiff returned to the University in August 2020 following this disciplinary suspension, he was interim suspended again pending the outcome of another investigation into additional allegations of serious misconduct; namely, allegations that Plaintiff had (1) retaliated against a student who reported his November 2019 misconduct and (2) threatened and harassed another student on the basis of that student's gender identity. The appeal process in this second investigation concluded on January 21, 2021, and Plaintiff is now expelled from the University. Among other things, any alleged harm relates to a time during which Plaintiff has been suspended as a result of his own misconduct and does not provide a basis for the mandatory order of readmission that he seeks.

Finally, the harm to Northwestern associated with reinstating Plaintiff, who has engaged in a pattern of egregious violent, threatening, and harassing conduct toward Northwestern students, staff members, and visitors, far outweighs the harm to Plaintiff associated with waiting until his case may be adjudicated on the merits to determine if he is entitled to any relief. Northwestern cannot allow Plaintiff to continue to harm or threaten its students, employees, and visitors.

In short, Plaintiff has failed to make any showing that he is entitled to the extraordinary, mandatory relief he seeks in the form of a court order directing Northwestern (1) to overturn the well-reasoned academic judgments it has reached and (2) to reinstate Plaintiff despite the serious harm he has caused the Northwestern community. For these reasons and as explained below, the Court should deny Plaintiff's request for a temporary restraining order, preliminary injunction, and expedited discovery.

## FACTUAL BACKGROUND

### A.    Plaintiff's Misconduct in Fall 2019

Plaintiff entered the Northwestern Pritzker School of Law ("Law School") in or about August 2019 as a first-year law student. Mot. at 7. In November 2019, the University's Office of Student Conduct received a police report from the Northwestern University Police Department ("NUPD"), reporting that Plaintiff had physically assaulted a guest at the National Muslim Students Conference held at the Law School on November 1, 2019 by punching the guest in the face ("November 1, 2019 incident"). *See* Christain Aff., **Exhibit 1**, ¶ 6.[1] Northwestern determined that the allegation against Plaintiff, as described in the NUPD police report, involved conduct that endangered or threatened to endanger the health, safety, or well-being of another person. *Id.* ¶ 7. Accordingly, and pursuant to the procedures in Northwestern's Student Handbook, Northwestern placed Plaintiff on Interim Suspension, effective November 6, 2019. *Id.* During his Interim Suspension, Plaintiff was precluded from attending class, being on University property, or attending University events, pending the outcome of the University's investigation into the November 1, 2019 incident. *Id.*

### B.    Investigation and Sanction Regarding November 1, 2019 Incident

Northwestern's Office of Student Conduct conducted an investigation into the November 1, 2019 incident, collecting information to determine whether Plaintiff engaged in conduct that violated the University's Student Handbook that was in effect during the 2019-2020 academic year. *Id.* ¶¶ 8-10. More specifically, the Office of Student Conduct investigated whether Syed had violated the following Student Handbook provisions:

---

[1] Accompanying this Response are Exhibits 1-6. Exhibits 1 and 6 are affidavits that have exhibits of their own. To the extent exhibits contain personally identifiable information about students other than Plaintiff, that information has been redacted pursuant to the Family Educational Rights and Privacy Act, 20 U.S.C.§ 1232g, to protect their privacy.

> Endangering Self or Others: Any action (or threat of action) that endangers or threatens to endanger the health, safety, or well-being of any person (including oneself). Severity and/or persistence may be considered.
>
> Violations of Other Policies: Actions that violate federal, state, or local laws or ordinances or that violate other University policies may also be violations of the Student Code of Conduct.

*See id.* In the course of its investigation, Northwestern interviewed Plaintiff twice and also interviewed four witnesses, including the student from another Chicago law school whom Plaintiff was accused of assaulting during the November 1, 2019 incident. *Id.* ¶ 9.

As allowed for in the University's Student Handbook, Plaintiff chose to have the allegations regarding the November 1, 2019 incident resolved through an Administrative Hearing. *Id.* ¶ 11. In accordance with Northwestern's written procedures, Northwestern held an Administrative Hearing on December 9, 2019 to determine whether Plaintiff had violated the Student Handbook provisions stated above. *Id.* ¶ 12. The Hearing Officers determined that it was more likely than not, based on the evidence collected during the investigation, that Plaintiff struck the guest in the face in the manner described by the guest. *Id.* The Hearing Officers also found that, as a result, Plaintiff had violated the "Endangering Self or Others" provision of the Student Handbook but had not violated the "Violations of Other Policies" provision. *Id.* Based on these findings, Plaintiff was (a) suspended for one semester (and was not eligible to return until Summer 2020), (b) informed that he would be placed on disciplinary probation for one year following the date of his return to the University, (c) required to participate in a Specialized Education Program for the Prevention of Abusive and Controlling Behaviors at the Center for Contextual Change, (d) required to meet with a University staff member once a month during the first two semesters after returning to the University as part of a probation curriculum, and (e) required to submit a Petition

to Return essay outlining his readiness to return to the University community and meet with a University staff member to discuss it. *Id.*

Plaintiff appealed the University's determination using the applicable University procedures. *Id.* ¶ 13. As part of his appeal, Plaintiff asserted that he had been discriminated against based upon his disability and other characteristics. *Id.* ¶ 15; Tamburro Aff., **Exhibit 6**, ¶ 5. As provided in those procedures, Northwestern convened an Appellate Panel to consider Plaintiff's appeal. After reviewing the relevant materials and considering Plaintiff's appeal arguments, the Appellate Panel determined that there were insufficient grounds to grant Plaintiff's appeal. *See* Christain Aff., Exhibit 1, ¶¶ 13-14. As a result, the Appellate Panel found no grounds to alter or amend the findings or sanctions assigned during the Administrative Hearing, and Plaintiff's suspension went into effect. *Id*. In addition, the Office of Equity reviewed Plaintiff's allegations of discrimination and found them to be without support. *See* Tamburro Aff, Exhibit 6, ¶ 6.

### C.     Plaintiff's Additional Misconduct in 2020

After completing the required sanctions described above, the University permitted Plaintiff to return to the University starting in Fall 2020. Within weeks, the University received allegations that Plaintiff had (1) engaged in misconduct directed at another University student from August 21-23, 2020 and (2) engaged in additional acts of misconduct by sending threatening messages on or about June 18, 2020 to a University student who had been involved in reporting the November 1, 2019 incident to the University and by sharing copies of the Office of Student Conduct's confidential investigation report regarding that incident. Christain Aff., Exhibit 1, ¶¶ 16-17. More specifically, the University received the following allegations regarding Plaintiff's conduct:

- On or around August 21, 2020, Plaintiff joined a first-year Law GroupMe chat titled "NU Kids on the Block '23" and directed the following statements at another Northwestern student and other law students in the group, including at least one comment about the other student's gender identity:

- o "You ugly trashy peace of garbage?"
- o "@[] I can't tell what to call you? He she it ?"[2]
- o "Disgusting?"
- o "@[] Trashy? Ugly? Don't ever call me out in your pathetic useless life"
- o "@[] you are a creepy little freak don't ever stalk me again you nasty little creature"
- o "@[] Why you embarrassing your mother by posting her pic up in here fool?"
- o "@]\ Creepy little stalker. You better not have been saving my picture in you're little creep collage you got in your closed you freak"
- o "People want to keep getting nasty then they can keep it up. I'm not about to be disrespected by a bunch of cowards"
- o "Come say it to my face"
- o "It's not a problem for me to hurt some rat faced kids feelings if they want to get nasty. I believe those people understand my point of view."

- On or around August 22, 2020, Plaintiff directed the following messages at the same other student, threatening the safety and welfare of this other student:

  - o "come get stomped out pussy"
  - o "So we can settle this"
  - o "Call me again and you better let me know a time and place so we can meet up"
  - o "You have my number tough guy"
  - o "Come get something"

- On or around August 23, 2020, Plaintiff directed statements toward the same other student based on the other student's gender identity, including:

  - o "Don't play with me like I'm your little cousin who you can mollest[sic]"
  - o "Pussy"
  - o "...CUNT"
  - o "...CUNT"
  - o "Come get stomped out pussy"
  - o "Creepy ass child molester..."
  - o "With your deep ass disgusting child of the lambs voice...Go buy some lotion from CVS creepshow"

*Id.* ¶ 18.

The University also received the following additional allegations regarding Plaintiff's conduct relating to the November 1, 2019 incident described above:

---

[2] An abbreviated reference to the name of the student who was the target of these communications from Plaintiff has been redacted both here and in the Affidavit of Lucas Christain, included as Exhibit 1 hereto.

- On or around June 18, 2020, Plaintiff sent the following messages to another University student who was a reporting party associated with the November 1, 2019 incident, threatening to retaliate against him for his role in reporting:

    o "That was a neat little story you and your boyfriend made up []"
    o "You buck tooth little slimy fuck"
    o "Im gonna have you disbarred"
    o "You slitery little two face backstabbing duchebag"
    o "Mark my word"
    o "You're a pudgy balding lying deceiteful scumbag am I'm going to ruin your life and career by exposing you for what you are you rat"
    o "Sleep well you cheese eating rat bastard that court summons is on the way"

- Plaintiff is alleged to have shared copies the confidential investigative report from a University hearing related to a November 1, 2019 incident with one or more individuals without authorization. Additionally, it has been alleged that this occurred after Fahad was instructed by the Office of Community Standards that these documents and the information included in them is confidential and not to be shared outside of the student conduct process.

*Id.* ¶ 19.

### D. Investigation and Sanction Regarding 2020 Misconduct

As a result of the allegations described above, the University's Office of Equity and Office of Community Standards conducted an investigation into whether Plaintiff's alleged conduct violated the University's anti-harassment provision of the Policy on Institutional Equity and certain provisions of the 2019-2020 Student Handbook. *Id.* ¶¶ 19-22. In the course of its investigation, Northwestern interviewed Plaintiff as well as five other witnesses. *Id.* ¶ 21. The University investigated the above allegations using the appropriate written procedures. *Id.* ¶ 22. Following Northwestern's investigation of the allegations described above, it issued a letter setting forth the University's findings regarding these allegations. *Id.* ¶ 23. The University found Plaintiff responsible for violating the anti-harassment provision of the University's Policy on Institutional Equity and for violating multiple provisions of the Student Handbook. *Id.*

7

Then, on December 18, 2020, a Sanctioning Panel convened to determine appropriate sanctions consistent with the applicable process. *Id.* ¶ 24. The Sanctioning Panel determined that Plaintiff should be expelled from the University and precluded from attending the University in the future. That sanction decision was reflected in a December 22, 2020 letter to Plaintiff. *Id.* The key factors that led the Sanctioning Panel to arrive at the sanction of expulsion included the nature of the conduct in which Plaintiff was found to have engaged, Plaintiff's previous disciplinary history, and a determination that Plaintiff's conduct could not be remediated. *Id.* Plaintiff submitted an internal appeal of this decision. On January 21, 2021, the University informed Plaintiff that his appeal was denied. *Id.* ¶ 25.

### E. Plaintiff's Contemporaneous Misconduct Toward Other Northwestern Employees

In addition to the conduct described above for which Plaintiff has been disciplined, Plaintiff has also engaged in other persistent, threatening, and harassing behaviors toward a number of University employees, including the Interim Dean of Students, Mona Dugo, and the Deputy Chief of Northwestern Police and a Northwestern University Detective. *See* Nov. 4, 2020 Letter from Behavioral Consultation Team, attached as **Exhibit 2**. In just one week, Plaintiff sent hundreds of text messages to employees' personal cell phones, including inappropriate, intimidating, threatening, and abusive statements, such as the following:

- "You old useless hag . . . I can't wait to see you get fired"
- "I swear to Allah on my dead mother I'm going to make it rain on you"
- "I'm going to ruin you . . . ruin you"
- "I want your house and car and everything you own . . . [t]hat's gonna be mine soon old lady"
- "Bitch"
- "You crossed a red line with this harassment, old lady. Don't ever in your life disrespect my religion you godless apostate"
- "You deserve no respect Mona"
- "Make sure you and you're (sic) old coven of useless discriminating ignorant degenerates are never able to work in this country again"

8

- "Go away from the university and never show your ugly face here again"
- "Finally found someone who can shove your bullshit right back down your ignorant discriminating throat huh?"
- "I'm coming at you in an individual capacity too tho (sic) Mona"
- "You are an obstacle for me. Nothing more. A dumb inanimate object that is in my way."

*Id*.

Plaintiff's conduct toward Ms. Dugo, in particular, led her to file a Petition for a Stalking No Contact Order directed at Plaintiff on November 5, 2020. A copy of the Dugo Petition is attached as **Exhibit 3**. The Dugo Petition details just some of the hundreds of disturbing text messages and other communications that Plaintiff has directed at Ms. Dugo, causing her to fear for her own safety and that of her family. *Id.* at 8-9. The Dugo Petition resulted in the Circuit Court of Cook County issuing an Emergency Stalking No Contact Order ("Emergency Order") directed at Plaintiff on November 5, 2020. *See* Nov. 5, 2020 Order, attached as **Exhibit 4**. On November 17, 2020, Plaintiff violated the Emergency Order by contacting Ms. Dugo and was arrested. On November 24, 2020, Ms. Dugo's Emergency Order was extended and remains in effect. *See* Nov. 24, 2020 and Jan. 6, 2021 Disposition Orders, included in **Exhibit 5**.

## ARGUMENT

I. **Legal Standard**

Courts apply the same standard for analyzing motions for temporary restraining orders and preliminary injunctions. *See Bernina of Am., Inc. v. Fashion Fabrics Int'l, Inc.*, No. 01 C 585, 2001 WL 128164, at *1 (N.D. Ill. Feb. 9, 2001). A plaintiff seeking preliminary injunctive relief must establish by "clear showing" that: "(1) his case has a reasonable likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) he will suffer irreparable harm if the injunction is not granted." *Long v. Bd. of Educ., Dist. 128,* 167 F.Supp.2d 988, 990 (N.D. Ill. 2001) (denying motion for temporary restraining order brought by high school student who was

suspended from participation in athletic program). If the Court determines that the plaintiff has satisfied those requirements, then the Court must "consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted," balancing that harm against "the irreparable harm the moving party will suffer if relief is denied." *Id.* The plaintiff "bears the burden of persuasion" with regard to each factor. *See Cox v. City of Chicago*, 868 F.2d 217, 222 (7th Cir. 1989). If the plaintiff fails to meet even one of the prerequisites, then the injunction must be denied. *Id.* In considering a request for a temporary restraining order, courts should take into account that "[a] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *See Goodman v. Illinois Dep't Fin. & Prof'l Reg.*, 430 F.3d 432, 437 (7th Cir. 2005) (citing *Mazurek v. Armstrong*, 20 U.S. 968, 972 (1997)).

## II.     The Court Should Deny the Motion in its Entirety.

Plaintiff has failed to satisfy his burden with respect to any of the elements required for the extraordinary injunctive relief he seeks. Northwestern's decisions to suspend Plaintiff for having punched a student from another school in the face and then to expel him for vicious, targeted harassment of his classmates were based solely on his conduct, not on his sex, disability, or other improper consideration. For this and other reasons explained below, Plaintiff has no likelihood of success on the merits. He also has an adequate remedy at law in the form of damages, and he has failed to show irreparable harm. By contrast, requiring the University to readmit Plaintiff would cause substantial harm to the students, staff, and community he has already severely impacted.

### A.     Plaintiff Has Not Demonstrated That He Is Likely To Succeed on the Merits.

#### 1.     *Northwestern Based Its Decision to Expel Plaintiff Solely on Legitimate, Non-Discriminatory Reasons.*

10

Northwestern's reasons for dismissing Plaintiff from the University were based solely on his conduct and the harm it caused, not on his membership in any protected category. As Plaintiff's own exhibits and those attached hereto demonstrate, Northwestern conducted thorough, well-documented investigations into all of the allegations that led to Plaintiff first being suspended and later expelled. The University also followed the applicable procedures in deciding that Plaintiff violated various University policies, imposing sanctions, and considering Plaintiff's appeals. All of this provides ample evidence of the legitimate, non-discriminatory reasons for Northwestern's well-reasoned decisions with respect to Plaintiff's misconduct and its consequences. There is no indication that Plaintiff's disability or sex factored into Northwestern's investigation into either of these incidents or its determination of appropriate sanctions. Northwestern's decisions were not only legitimate and non-discriminatory, but also reasonable and necessary for the maintenance of a safe learning and working environment.

2. ***Plaintiff Is Unlikely to Prevail on His Discrimination Claims.***

a. **Plaintiff Is Unlikely to Prevail on a Claim of Sex-Based Discrimination.**

More specifically, Plaintiff has failed to allege – let alone make the required showing – that Northwestern discriminated against him on the basis of his sex. Plaintiff unsuccessfully purports to allege that he was subject to sex-based discrimination under Title IX. Mot. at 3. To state a claim under Title IX, a plaintiff must allege (1) the educational institution received federal funding, (2) plaintiff was excluded from participation in or denied the benefits of an educational program, and (3) the educational institution in question discriminated against plaintiff based on gender." *See Doe v. Columbia Coll.*, 933 F.3d 849, 855 (7th Cir. 2019). Northwestern does not dispute that it receives federal funding or that Plaintiff was excluded from participation in its programs due to his expulsion for misconduct. As explained above, however, Northwestern did not discriminate

11

against Plaintiff on the basis of his sex. Where a decision was made without regard for a plaintiff's sex or gender, there can be no Title IX violation. *See id.* Because Northwestern has shown that its decisions were wholly unrelated to Plaintiff's sex, and in the absence of a scintilla of evidence from Plaintiff to the contrary, Plaintiff has no chance of success on any claim of sex-based discrimination.

**b.  Plaintiff Is Unlikely to Prevail on a Claim of Disability-Based Discrimination.**

Plaintiff likewise has shown no basis for the Court to conclude that he is likely to prevail on a claim of disability-based discrimination under either the ADA or Section 504. For Plaintiff to successfully state a *prima facie* case of disability discrimination under either of those statutes, Plaintiff would have to show: "(1) that he suffers from a disability as defined in the statutes, (2) that he is qualified to participate in the program in question, and (3) that he was either excluded from participating in or denied the benefit of that program based on his disability." *Novak v. Bd. of Trustees of S. Ill. Univ.*, 777 F.3d 966, 974 (7th Cir. 2015).

Even assuming Plaintiff has a disability and experienced the adverse action of expulsion, his disability discrimination claims are still without merit. In light of Plaintiff's persistent misconduct during the course of his entire time as a student, it is clear that Plaintiff was not qualified to participate in the University's academic program. Indeed, Plaintiff punched a Law School guest in the face, engaged in a disturbing pattern of threatening and harassing communications with classmates, and engaged in similar modes of highly inappropriate communication with Northwestern staff members. Plaintiff's pattern of harassing communications persisted even after one staff member obtained a personal stalking no-contact order against Plaintiff, resulting in his arrest. Plaintiff therefore is not qualified under the disability laws because he does not meet the University's standards of conduct.

12

To the extent Plaintiff's position is that he could not be disciplined for conduct that may have been related in some way to his disability, he is wrong. A number of courts have made plain that a university may discipline a student, even if the student's misconduct is the result of a disability. *See Despard v. Bd. of Trustees of Indiana Univ.*, No. 1:14-cv-1987, 2015 WL 49446112, *8 (S.D. Ind. Aug. 18, 2015); *Tylicki v. St. Ong*, 297 Fed. Appx. 65, 67 (2d Cir. 2008); *see also Brumfield v. City of Chicago*, 735 F.3d 619, 630-31 (7th Cir. 2013) (collecting cases applying this principle in the employment context). Contrary to Plaintiff's assertions, Northwestern need not place its community members at risk of harm to accommodate any disability he might have.

Furthermore, even if Plaintiff succeeded in stating a *prima facie* case under the ADA or Section 504, Northwestern's legitimate, non-discriminatory reasons for disciplining Plaintiff are sound and well-documented, as described above. Accordingly, Plaintiff is unlikely to prevail on a claim of disability-based discrimination.

### 3. *Any Constitutional or Other Purported Claims Have No Merit.*

Plaintiff is also unlikely to prevail on any of the other theories referenced in his Motion. For instance, at various points in his Motion, Plaintiff appears to allege that Northwestern violated his constitutional rights. *See, e.g.,* Mot. at 35 (discussing purported violations of Plaintiff's rights under the First Amendment). Plaintiff's allegations in this regard have no likelihood of success on the merits because Northwestern is a private entity, not a state actor. It is well-established that private universities like Northwestern are not subject to such claims. *See, e.g., Slovinec v. DePaul Univ.*, 332 F.3d 1068, 1069 (7th Cir. 2003) (affirming dismissal with prejudice on ground that defendant was a private university against which plaintiff could not bring constitutional claims); *Collins v. Northwestern Univ.*, 164 F.Supp.3d 1071, 1077 (N.D. Ill. 2016) (dismissing Section 1983 claims on same basis).

To the extent Plaintiff seeks to allege that Northwestern falsely imprisoned him, he cannot make the required showing for that theory. *See* Mot. at 8. Under Illinois law, a claim of "false imprisonment" requires Plaintiff to show that he was restrained by the defendant and that the defendant acted without having reasonable grounds to believe that the plaintiff committed an offense. *See Reynolds v. Menard, Inc.*, 365 Ill. App. 3d 812 (1st Dist. 2006). To the extent Plaintiff seeks to attribute the offending conduct to students from Northwestern and other law schools in attendance at the November 1, 2019 event, he fails to show that it was Northwestern that restrained him. Even if the Motion is construed to allege that Northwestern security or medical professionals restrained Plaintiff, based upon Plaintiff's own allegations and the information adduced through Northwestern's investigation, Northwestern professionals had reasonable grounds to believe that Plaintiff committed the offense of assault and battery in connection with the November 1, 2019 incident. *See id.* at 8-9. In sum, any false imprisonment claim is entirely without merit.

### 4. *Northwestern's Decision to Expel Plaintiff Is an Academic Decision Entitled to Judicial Deference.*

In addition to all of the reasons set forth above, Plaintiff has not established a likelihood of success on the merits because Northwestern's decision to expel Plaintiff was an academic decision entitled to judicial deference. As courts in the Seventh Circuit have consistently observed, the academic decisions of universities are entitled to significant deference and cannot be disturbed absent evidence of arbitrary and capricious conduct. *See Doe v. Columbia Coll. Chicago*, 933 F.3d 849, 858 (7th Cir. 2019) (applying academic deference to student disciplinary decisions and finding that defendant college would not be liable "even if we find it exercised its academic judgment unwisely; rather it must have disciplined a student without any rational basis"); *see also Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 90 (1978). Notably, in *Holert v. University of Chicago*, the court explicitly declined to intervene where a private university

14

expelled a student following a pattern of harassment of another student. 751 F. Supp. 1294 (N.D. Ill. 1990). The *Holert* court explained its deference to the defendant university's determinations:

> A private university may prescribe the moral, ethical and academic standards that its students must observe; it is not the court's function to decide whether student misbehavior should be punished or to select the appropriate punishment for transgressions of an educational institution's ethical or academic standards.

*Id.* at 1301. Accordingly, the court held that the university had acted within its right to expel Plaintiff for his conduct, emphasizing that university disciplinary action should remain free of judicial intervention. *See id.*

Plaintiff has not established any reason for this Court to substitute its academic judgment for that of Northwestern, particularly not under the facts of this case. Indeed, the Seventh Circuit has previously vindicated a school's prerogative in expelling a student based on a reasonable belief that the student posed a threat to students and school officials: "[T]he school district's interest in providing for a safe and stable learning environment free of distraction and fear certainly justified the permanent expulsion of M.R. from its schools." *Remer v. Burlington Area School Dist.*, 286 F.3d 1007, 1014 (7th Cir. 2002) (affirming judgment as a matter of law for the defendant where there was "ample evidence" that expelled student M.R. had participated in a conspiracy to conduct an assault on students and school officials). And the Seventh Circuit has held that decisions like the one Plaintiff challenges here are particularly entitled to deference where a student's conduct relates to the personal qualities required for success in the professional field in which that student is studying. *See, e.g., Martin v. Helstad*, 699 F.2d 387 (7th Cir. 1983) (approving revocation of student's admission to law school for omission of criminal history on his application); *Fenje v. Feld*, 398 F.3d 620, 625 (7th Cir. 2005) (affirming dismissal of action brought by former medical resident who was dismissed for material omissions from his application).

15

**B.      Plaintiff Has Not Shown He Has No Adequate Remedy at Law.**

Plaintiff likewise has failed to show that he lacks an adequate remedy at law. The Seventh Circuit has interpreted this element as requiring the plaintiff to show that he will not be made whole if he prevails on the merits and is awarded damages. *See Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984). Indeed, in *Saud v. DePaul University*, the Court found that the plaintiff, a former employee of the defendant, had not shown that he had no adequate remedy at law in part because an injunction could have been issued after final judgment in the case, if he prevailed, with monetary compensation available for "harms suffered in the intervening time." No. 19-cv-3945, 2019 WL 5577239, at *9 (N.D. Ill. Oct. 29, 2019). Particularly in light of the fact that Plaintiff has already been out of school for such a length of time, and has never even completed a single course at Northwestern, a similar remedy would be available to Plaintiff if he were somehow to prevail on the merits of his claims.

On this point, Plaintiff states only that, if Northwestern is "not immediately restrained," then it will proceed "to take further disciplinary action against plaintiff, which, in all likelihood, will result in his permanent expulsion from the university." *See* Mot., 46. This expulsion, in turn, "would result in a further delay in Plaintiff's education." *Id.* Plaintiff's argument here, which primarily concerns educational delay, presages his argument with respect to the required "irreparable harm" and does not bear on whether he has an adequate remedy at law. Moreover, Plaintiff has already been expelled, and that expulsion has now been affirmed on appeal. In short, Plaintiff has not remotely shown that he has no adequate remedy at law.

**C.      Plaintiff Has Not Shown Irreparable Harm.**

Plaintiff has not satisfied his burden of demonstrating irreparable harm. Irreparable harm is harm that cannot be prevented or fully rectified by the final judgment after trial. *Seaga Mfg. Inc.*

16

*v. Intermatic Mfg., Ltd.,* 13 C 50041, 2013 WL 773037, *4 (N.D. Ill. Feb. 28, 2013). Irreparable harm must be "imminent." *Bedrossian v. Nw. Mem'l Hosp.*, 409 F.3d 840, 844 (7th Cir. 2005). Plaintiff's purported "harm" is neither irreparable nor imminent.

Plaintiff cites several purported "irreparable injuries," which fall into three categories, none of which meet the standard for irreparable harm. *See generally* Mot. at 42-44. First, Plaintiff alleges several formulations of the notion that his education or degree conferral will be delayed or disrupted if the Court does not award emergency injunctive relief. Plaintiff cites: "a substantial risk that [he] will be unable to attend school before the merits of this action are concluded and a permanent injunction is entered," *id.* at 42-43; a "disruption" in his studies, *id.* at 43-44; that his expulsion "delayed [his] fulfillment of his requirements for a degree;" and that he will effectively lose the benefit of ten weeks of coursework he had completed prior to his 2019 suspension. *Id.* at 43-44.

As an initial matter, the timing of Plaintiff's motion relative to these purported injuries is fatal to his claim of irreparable harm. Plaintiff's purported injuries are either stale or completely in the past. Plaintiff has barely attended school at Northwestern since the Fall 2019 incident, has not attended whatsoever since August 2020, and has not completed a single course. Plaintiff's purported educational delay has been in effect since his suspension in 2019; it is not new or imminent. *See id.* A significant delay in filing a motion for preliminary injunction "undermines the moving party's argument that it will suffer irreparable harm without an injunction." *Arjo, Inc. v. Handicare USA, Inc.*, No. 18 C 2554, 2018 WL 5298527, *9 (N.D. Ill. Oct. 25, 2018); *Stokley-Van Camp, Inc. v. Coca-Cola Co.*, No. 86 C 6159, 1987 WL 6300, at *3 (N.D. Ill. Jan. 30 1987) (finding that three-month delay in moving for a preliminary injunction "indicates a lack of need for the extraordinary remedy of a preliminary injunction"). Indeed, "[i]f the [alleged] damage is

done, allegations of past irreparable harm, no matter how plausible, are insufficient to support a preliminary injunction." *See Arjo*, 2018 WL 5298527 at *9 (citing *Traffic Tech Inc. v. Kreiter*, No. 14-cv-7528, 2015 WL 9259544, at *17 (N.D. Ill. Dec. 18, 2015)) (internal quotations omitted).

Furthermore, Plaintiff's cases in support of his claim of irreparable harm – none of which arise in the Seventh Circuit – are inapplicable. Courts in this circuit have rejected similar entreaties by aggrieved former students. *See Hall v. Nat'l Collegiate Athletic Ass'n*, 985 F. Supp. 782, 800-801 (N.D. Ill. 1997) (finding that college student who was deemed ineligible and lost his athletic scholarship for his first year at Bradley University had failed to present evidence that one-season delay would harm plaintiff's college basketball career); *see also Heller v. Hodgin*, 928 F. Supp. 789, 798-99 (S.D. Ind. 1996) (finding that high school student who was suspended from school for one semester had failed to show irreparable harm). Furthermore, to the extent Plaintiff seeks to pursue a claim of wrongful expulsion, Illinois courts have recognized a remedy of monetary damages under a breach of contract theory. *See, e.g., Bilut v. Northwestern Univ.*, 269 Ill.App.3d 125, 133 (1st Dist. 1994) (citing *Bloch v. Hillel Torah North Suburban Day School*, 100 Ill.App.3d 204, 206 (Ill. 1981)).

Plaintiff also claims present "psychological harm" and diminution of "the quality of his life." But both psychological harm and many interpretations of decline of quality of life are routinely compensated through an award of damages. Indeed, emotional suffering is "commonly compensated by monetary awards" in our legal system. *Students v. United States Dep't of Educ.*, No. 16-CV-4945, 2016 WL 6134121, at *37 (N.D. Ill. Oct. 18, 2016), *report and recommendation adopted sub nom. Students & Parents for Privacy v. United States Dep't of Educ.*, No. 16-CV-4945, 2017 WL 6629520 (N.D. Ill. Dec. 29, 2017) (citing *Bhd. of Locomotive Engineers &*

*Trainmen v. Union Pac. R.R. Co.*, 2011 WL 221823, at *5 (N.D. Ill. Jan. 24, 2011)). In sum, Plaintiff fails to meet his burden of showing "irreparable harm."

> **D.** **The Balance of Harms Undoubtedly Favors Northwestern.**

To the extent the Court also considers the balance of harms, the hardship to Northwestern if this Court were to issue a mandatory injunction ordering Plaintiff's reinstatement far outweighs the alleged "irreparable harm" Plaintiff would suffer – which, as explained above, is not cognizable. After thorough investigations and disciplinary proceedings, Northwestern has found Plaintiff responsible for numerous acts of misconduct that not only violate its policies but also jeopardize the safety of Northwestern's students and staff. Courts have found that the balance of harms favors defendant educational institutions in cases where there is far less evidence of a plaintiff's history of threatened or actual harm to his classmates and school staff. *See, e.g., Parker by Parker v. Trinity High School*, 823 F. Supp. 511 (N.D. Ill. 1993) (finding that preliminary injunction requiring the return of students expelled for misconduct would "have some effect . . . on the perception and certainty of teacher authority").

> **E.** **There is No Basis for Awarding Expedited Discovery.**

Finally, Plaintiff fails to show any need for expedited discovery in this case. Courts should not grant parties leave to engage in expedited discovery without a showing of necessity. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618 (N.D. Ill. 2000). Courts must also protect defendants from unfair expedited discovery. *Id.* Where a plaintiff seeks expedited discovery in the context of a request for a preliminary injunction, courts should "examine the discovery request . . . on the entirety of the record to date and the *reasonableness* of the request in light of all of the surrounding circumstances." *See id.* at 624. Plaintiff has shown no reasonable basis for awarding expedited discovery. He has yet to file a complaint, and he has failed to carry

19

his burdens to justify a temporary restraining order or preliminary injunction – let alone expedited discovery.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant Northwestern University respectfully requests that the Court deny Plaintiff's Application for Temporary Restraining Order, Preliminary Injunction, and Expedited Discovery in its entirety and grant such further relief as the Court may deem just and proper.

DATED: January 22, 2021     Respectfully submitted,

             HUSCH BLACKWELL LLP

             /s/ Scott L. Warner
             Scott L. Warner
             Karen L. Courtheoux
             scott.warner@huschblackwell.com
             karen.courtheoux@huschblackwell.com
             Husch Blackwell LLP
             120 South Riverside Plaza, Suite 2200
             Chicago, IL 60606
             (312) 655-1500

             *Attorneys for Northwestern University*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing **RESPONSE IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND EXPEDITED DISCOVERY** was served electronically via ECF notification to all parties and/or counsel of record:

*Fahad Syed*
*244 E. Pearson St. – Apt. 711*
*Chicago, IL 60611*
*(773) 564-0325*
*Syed.216@gmail.com*

on or before the 22nd day of January 2021.

/s/ Scott L. Warner
Scott L. Warner