IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FAHAD SYED,<br><br>Plaintiff,<br><br>v.<br><br>NORTHWESTERN UNIVERSITY, et. al.<br><br>Defendants. | Case No. 21-cv-00267<br><br>Judge Mary M. Rowland |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Fahad Syed brings this action alleging various state and federal claims, including discrimination and due process violations, against a wide variety of defendants. The claims arise from his expulsion from Northwestern's law school and related events. Syed has moved for a temporary restraining order (TRO) and preliminary injunction against Northwestern University. Syed seeks to be reenrolled in the program while the lawsuit is pending. He also requests expedited discovery and for Northwestern to be prohibited from using certain evidence at his expulsion proceedings. For the reasons stated below, Syed's motions [9, 10, 82] are denied.

### **STANDARD**

"A preliminary injunction is an extraordinary remedy." *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1044 (7th Cir. 2017). *See also Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020) ("a preliminary injunction is an exercise of a very far-reaching power, never to be indulged [] except in a case clearly demanding it.") (cleaned up). When reviewing a pro se motion, as in this case, the

Court is conscious that a "document filed pro se is 'to be liberally construed.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

The party seeking a preliminary injunction must make an initial threshold showing that: (1) it has some likelihood of succeeding on the merits; (2) it will suffer irreparable harm if the injunction is not granted; and (3) there is no adequate remedy at law. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the U.S.A., Inc.*, 549 F.3d 1079 (7th Cir. 2008). *See also Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). Demonstrating a likelihood of success is "a significant burden," though "at such a preliminary stage, the applicant need not show that it definitely will win the case." *Id.* (noting that the "better than negligible" standard has been retired). "A 'strong' showing thus does not mean proof by a preponderance…[b]ut it normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id*. If the moving party fails to demonstrate "any one of the[] three threshold requirements, [the court] must deny the injunction." *Girl Scouts of Manitou,* 549 F.3d at 1086.

If the moving party makes the initial showing, the court then balances the irreparable harm that the moving party would endure without a preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief. *Id*. "This Circuit employs a sliding scale approach for this balancing: if a plaintiff is more likely to win, the balance of harms can weigh less heavily in its favor, but the less likely a plaintiff is to win the more that balance would need to weigh in its favor." *GEFT Outdoors, LLC v. City of*

*Westfield*, 922 F.3d 357, 364 (7th Cir. 2019), cert. denied sub nom. 140 S. Ct. 268, 205 L. Ed. 2d 137 (2019) (internal citations and quotations omitted). Finally, the court asks "whether the preliminary injunction is in the public interest, which entails taking into account any effects on non-parties." *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018). "Ultimately, the moving party bears the burden of showing that a preliminary injunction is warranted." *Id*. *See also Inventus Power, Inc. v. Shenzhen Ace Battery Co.*, 2020 WL 3960451, at *4 (N.D. Ill. July 13, 2020) (stating that the standard for issuing a TRO is the same as for preliminary injunction).

## BACKGROUND

The facts herein are taken from Syed's Motion for Preliminary Injunction (Dkt. 9, "Mot."), his proposed Reply (Dkt. 90-1), and Northwestern's Response. (Dkt. 26, "Resp.").[1] In support of his motion, Syed submitted an affidavit (Dkt. 9-1) and several exhibits.[2] Northwestern submitted affidavits by Lucas Christain, the University's Assistant Dean of Students & Director of Community Standards (Dkt. 26-1), and Karen Tamburro, the Director of Equal Opportunity & Access and the Deputy Title IX Coordinator (Dkt. 26-17), along with supporting exhibits.[3] The Court makes

---

[1] Given the voluminous evidence from sworn affidavits and exhibits submitted by the parties, the Court does not believe an evidentiary hearing is necessary. *See Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1171 (7th Cir. 1997); *Promatek Indus., LTD v. Equitrac Corp.*, 300 F.3d 808, 814 (7th Cir. 2002). Syed's Motion for a Hearing [13] is denied

[2] Syed has also filed numerous exhibits unattached with any docket entry. As the Court has informed Syed, it will not consider such unattached exhibits. *See* Minute Entry, Dkt. 75.

[3] "Affidavits are ordinarily inadmissible at trials but they are fully admissible in summary proceedings, including preliminary-injunction proceedings." *Ty, Inc.*, 132 F.3d at 1171.

3

"factual determinations on the basis of a fair interpretation of the evidence before the court." *Darryl H. v. Coler*, 801 F.2d 893, 898 (7th Cir. 1986). However, these findings are preliminary and "do not bind the district court as the case progresses." *Mich. v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 782 (7th Cir. 2011). Syed discusses many events and parties in his Motion. The Court limits itself to those facts most relevant to the injunctions Syed seeks.

Syed is a 31-year-old Muslim man with brown skin living in Chicago. Mot. ¶ 1. He has bipolar disorder, ADHD, anxiety, and depression. *Id.* His bipolar disorder sometimes manifests as "psychotic episodes" triggered by stress, resulting in anger and paranoia. *Id.* at ¶ 9. In winter of 2017, he was accepted to attend law school at Northwestern University. *Id.* at ¶ 12. He was originally to enroll in the fall of 2018, however, in the spring of that year the University opened an investigation into his application, which he subsequently cleared. *Id.* at ¶ 13-14. As a result, he enrolled in the fall of 2019 instead. *Id.* at ¶ 15. Tragically, the same semester he began school, Syed's mother passed away from ovarian cancer. *Id.* at ¶ 17.

On November 1, 2019, a week after his mother's death, Syed attended an event at the school's Chicago campus. *Id.* at ¶ 24. According to a police report from the Northwestern University Police Department, Syed punched another attendee in the face while at the event. Resp. at 3. Syed states that he was attacked unprovoked by another student who targeted Syed because of his mental disability. Mot. ¶ 25. He was then detained by Northwestern police and involuntarily admitted to Northwestern Memorial Hospital. *Id.* at ¶ 26-27.

4

In response to the incident, Northwestern placed Syed on interim suspension, pending the outcome of an investigation. Resp. at 3. The University interviewed five witnesses, including Syed and the student he allegedly attacked. *Id*. On December 9, consistent with the University's Student Handbook, an administrative hearing on the event took place. *Id*. at 4. The hearing officers determined that it was more likely than not that Syed had punched the other attendee and that he had violated a provision of the Student Handbook in the process. *Id*; Mot. ¶ 34. As a result, he was suspended for a semester, placed on disciplinary probation for a year following his return to school, and required to complete several programs and tasks. Resp. at 4. Syed appealed the ruling, but an appellate panel denied his appeal. *Id*. at 5.

In July of 2020, Syed returned to class. Mot. ¶ 36. Soon thereafter, troubling reports of Syed's conduct were sent to the University. The University was told that Syed had, over the summer, sent threatening messages to a student who had reported the November 1 incident. Resp. at 6-7. The University also received allegations that Syed had sent threatening and abusive messages to a student on a class-wide group chat. *Id*. at 5-6. Syed says that he was harassed by the student, who he says cyberstalked him, posted his private personal information to the group chat, and sent disparaging comments about him to the group. Mot. ¶¶ 41-50.

After their exchange on the group chat, Syed sent the student his personal number. Mot. ¶ 52. The student called Syed at 1:08 AM and talked in a manner that Syed found intimidating. *Id*. at ¶ 52. Syed states that the student recorded him on the phone call without his permission and then shared the recording with

5

Northwestern officials. *Id.* at ¶¶ 53-54. Syed also asserts that the student orchestrated other students' harassment of Syed, both online and in disciplinary hearings. *Id.* at ¶¶ 55-64.

On August 23, 2020, in response to these allegations, the University again placed Syed on interim suspension. *Id.* at ¶ 70. In response, Syed filed complaints with the federal Department of Education, the Illinois Department of Human Rights, and the Illinois Guardianship and Advocacy Commission. *Id.* at ¶ 72. Syed also filed a police report with the Chicago Police Department related to the recording of his phone call. *Id.* at ¶ 83.

In the following months, Northwestern states that Syed sent hundreds of harassing and threatening messages to several University employees. Resp. at 8. Syed states that he was simply informing them of the discrimination he was suffering from and requesting that they stop. Mot. ¶ 108. On November 5, in response to the harassment and threats, Interim Dean of Students Mona Dugo obtained an Emergency Stalking No Contact Order directed at Syed. Resp. at 9. On November 19, Syed was arrested based on Dugo's allegation that he had violated the order. Mot. ¶ 108.

While he was suspended, Northwestern investigated whether Syed's communication with students violated provisions of the Student Handbook and other policies. Resp. at 7. Northwestern interviewed Syed and four other individuals. Dkt. 26-7, Ex. F at 3. Based on the investigation, the University determined that Syed had violated the relevant provisions. *Id.* On December 18, a panel convened to determine

the appropriate sanctions for Syed. *Id.* at 8. The panel determined that Syed should be expelled and prohibited from reenrolling at Northwestern. *Id.* Syed was informed of the decision by letter on December 22. *Id.* Syed submitted an appeal that was denied on January 21. *Id.* He then moved for a preliminary injunction in state court, and Northwestern removed.

**ANALYSIS**

Syed requests a preliminary injunction and temporary restraining order requiring Northwestern to permit him to reenroll in the law school and attend class or participate in some alternative learning format. He has also requested expediated discovery and for the Court to prohibit Northwestern from using certain recordings in his expulsion proceedings. In order to succeed, Syed must make an initial threshold showing that: (1) his claims have some likelihood of succeeding on the merits; (2) he will suffer irreparable harm if the injunction is not granted; and (3) he has no adequate remedy at law. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the U.S.A., Inc.*, 549 F.3d 1079 (7th Cir. 2008).

In his Amended Complaint [97], Syed raises over a hundred claims against Northwestern. Most of these claims are not discussed in the instant motion and so are deemed waived. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("The obligation to raise the relevant arguments rests squarely with the parties."); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (waiver applies "where a party fails to develop arguments related to a discrete issue."). Instead, Syed's motion focuses, to varying degrees, on the following claims: First

Amendment retaliation; Fourteenth Amendment equal protection violation; false imprisonment; eavesdropping; and violations of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA"); Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq.; and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, et seq. The Court evaluates each of these claims against the standards for a preliminary injunction

### A. Constitutional Claims

Syed argues that Northwestern violated his constitutional rights by retaliating against him for his speech in violation of the First Amendment and by violating his right to equal protection under the law under the Fourteenth Amendment. He asserts that the University suspended him in retaliation for his objecting to discrimination. Similarly, his right to equal protection was violated because he was disciplined for messages on a group chat when other students were not. Neither claim is likely to succeed on the merits because Northwestern is a private university and so not subject to constitutional claims. *See Collins v. Nw. Univ.*, 164 F. Supp. 3d 1071, 1076 (N.D. Ill. 2016).

Syed argues that Northwestern can be sued for constitutional violations because it acted under color of state law through the Northwestern Police Department. But the mere involvement of a university police department does not automatically transform the school into a state actor. *See id.* Here, Syed's allegations and relief sought are related to Northwestern's internal disciplinary process, not any public

8

police function. Northwestern is not a state actor here. As a result, these claims are unlikely to succeed and cannot serve as the basis for a temporary injunction.

### B. State Law Claims

Syed also articulates state law claims as a basis for a temporary injunction. He asserts a false imprisonment claim based on the events at the 2019 student event and his subsequent involuntary commitment. He also asserts an eavesdropping claim based on the recording of a phone call with another student without his consent.

Whether or not Syed is likely to succeed on these claims, he has offered no arguments as to why he lacks an adequate remedy at law for them. In order to satisfy this element, the plaintiff must show that he cannot be made whole if he is awarded damages at trial. *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984). Damages are routinely awarded for false imprisonment and eavesdropping claims. *See, e.g., Selective Ins. Co. of S.C. v. City of Paris*, 681 F. Supp. 2d 975, 983 (C.D. Ill. 2010), amended in part, No. 07-CV-2224, 2010 WL 11553255 (C.D. Ill. May 27, 2010) (describing award of nominal damages for even brief false imprisonments); *Thomas v. Pearl*, 793 F. Supp. 838, 840 (C.D. Ill. 1992), aff'd, 998 F.2d 447 (7th Cir. 1993) (describing damages as the remedy for eavesdropping under Illinois law). If Syed were to win on these claims at trial, damages would provide an adequate remedy. What is more, it is unclear how an injunction now could mitigate these alleged violations that occurred years ago.

Syed argues that damages are inadequate because he cannot recover the time he will spend out of school during litigation. But that argument is irrelevant to these

claims, which concern harms arising prior to Northwestern's disciplinary process. Syed has failed to demonstrate that he lacks an adequate remedy at law for these state law claims. They cannot serve as the basis for a preliminary injunction.

### C. Federal Discrimination Claims

Finally, Syed claims that Northwestern, through its disciplinary process, discriminated against him based on his disability and gender in violation of the ADA, Section 504, and Title IX.[4] In order for a claim of disability or gender discrimination to succeed, the plaintiff must establish that they belong to the protected category and that they were discriminated against because of their gender or disability. *See Doe v. Columbia Coll. Chicago*, 933 F.3d 849, 854 (7th Cir. 2019) (gender); *Novak v. Bd. of Trustees of S. Illinois Univ.*, 777 F.3d 966, 974 (7th Cir. 2015) (disability). Given the record before the Court, it is unlikely that Syed will establish that he was discriminated against because of his gender or disability.

Syed offers no direct or circumstantial evidence that Northwestern was motivated by discriminatory animus in suspending him. Instead, the facts as both he and Northwestern describe them strongly suggest that he was suspended because the administration believed him to be a threat to campus safety based on his previous assault and harassment of students. Syed insists that this view is wrong because he did not actually commit the acts of which he was accused. For example, he states that

---

[4] In his proposed Reply, Syed also raises claims of religious and racial discrimination. "A reply brief . . . is not the proper vehicle to raise new arguments not presented in an opening brief." *White v. United States*, 23 F. App'x 570, 571 (7th Cir. 2001). However, these causes of actions fall short for the same reasons.

10

he never attacked anyone and was instead assaulted by students. He also states that the University relied on improperly obtained audio in making its decision.

The relevant question, however, is not whether Northwestern's disciplinary process reached the right conclusion or consulted all the appropriate evidence. It is whether the process was corrupted by a discriminatory motive. Putting Syed's conclusory statements to the side, the record does not suggest that Northwestern's given reasons for expelling him were pretextual. The University's decision to punish Syed and not the student with which he exchanged messages, for example, is easily explained by the language Syed uses in the text messages and his probationary status. The facts do not give rise to an inference of gender discrimination, even if the other party was a woman.

Alternatively, Syed seems to suggest that he cannot be held accountable for acts that were caused by his disability. Federal law, however, does not prohibit individuals from being punished for misconduct arising from their disability, so long as the individual is not being punished for the disability itself. *See Brumfield v. City of Chicago*, 735 F.3d 619, 630–31 (7th Cir. 2013). Northwestern expelling Syed because it believes he assaulted and harassed other students, does not violate the ADA or Section 504. Syed has failed to establish a likelihood of success for his discrimination claims.

Syed has failed to make the initial threshold showing for any of his claims, and so the Court will not grant preliminary injunction or temporary restraining order against Northwestern.

**D. Expedited Discovery**

Syed also requests expedited discovery, seemingly necessary due to ongoing litigation in state court. When evaluating a request for expedited discovery, the Court considers "the entirety of the record to date and the reasonableness of the request considering all the surrounding circumstances." *Strike 3 Holdings, LLC v. Doe*, No. 1:20-CV-06528, 2020 WL 6701105, at *1 (N.D. Ill. Nov. 13, 2020). At this point, Syed's request is not reasonable. If Syed requires discovery for a state court matter, he must petition the state court.

**E. Recordings**

Syed has also requested that the Court prohibit Northwestern from using certain recordings as evidence in its expulsion proceedings. According to Northwestern, those proceedings have already taken place and Syed has been expelled. The Court has also declined to order a preliminary injunction or temporary restraining order. As a result, this request is denied.

## CONCLUSION

For the stated reasons, Plaintiff Syed's Motions for Preliminary Injunction, Temporary Restraining Order, and Expedited Discovery [9, 10] are denied. Syed's Motion to Suppress Recordings [82] is also denied. Syed's Emergency Motion for a Hearing [13] is denied. And Syed's Second Motion for Excess Pages [90] is granted. The Clerk of the Court shall mail a copy of this opinion to the plaintiff.

E N T E R:

Dated: May 6, 2021

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge